IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 20-755 (RGA) |
| LIQUIDIA TECHNOLOGIES, INC., | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Plaintiff United Therapeutics Corporation*

OF COUNSEL:

Douglas H. Carsten
Joshua Mack
WILSON SONSINI GOODRICH & ROSATI
12235 El Camino Real
San Diego, CA  92130
(858) 305-2300

Adam W. Burrowbridge
WILSON SONSINI GOODRICH & ROSATI
1700 K Street NW, Fifth Floor
Washington, DC  20006
(202) 973-8800

William C. Jackson
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue NW
Washington, DC  20005
(202) 237-2727

August 26, 2020

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

II.    SUMMARY OF THE ARGUMENT ............................................................................. 1

III.   STATEMENT OF FACTS ........................................................................................... 2

IV.   ARGUMENT .............................................................................................................. 6

     A.     Legal Standards.................................................................................................. 6

     B.     Liquidia's Invalidity Counterclaim and Defense Should be Dismissed for
         Failure to State a Claim under Rule 12(b)(6)...................................................... 10

     C.     Alternatively, Liquidia's Invalidity Counterclaim Defense Should be
         Dismissed for Lack of Jurisdiction under Rule 12(b)(1) ..................................... 13

V.    CONCLUSION............................................................................................................ 14

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*BASF Corp. v. Aristo Inc.*,
  872 F. Supp. 2d 758 (N.D. Ind. 2012) ...............................................................................8

*Cedars-Sinai Med. Ctr. v. Watkins*,
  11 F.3d 1573 (Fed. Cir. 1993)...........................................................................................13

*Diamond Sci. Co. v. Ambico, Inc.*,
  848 F.2d 1220 (Fed. Cir. 1988)...................................................................................1, 6, 7

*Hologic, Inc. v. Minerva Surgical, Inc.*,
  957 F.3d 1256 (Fed. Cir. 2020)...........................................................................................7

*HTC Corp. v. IPCom GmbH & Co.*,
  671 F. Supp. 2d 146 (D.D.C. 2009) ....................................................................................8

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*,
  153 F.3d 1318 (Fed. Cir. 1998).......................................................................................9, 14

*In re NAHC, Inc. Sec. Litig.*,
  306 F.3d 1314 (3d Cir. 2002)...............................................................................................9

*In re Wellbutrin SR/Zyban Antitrust Litig.*,
  281 F. Supp. 2d 751 (E.D. Pa. 2003) ..................................................................................8

*Intel Corp. v. U.S. Int'l Trade Comm'n*,
  946 F.2d 821 (Fed. Cir. 1991)...................................................................................7, 8, 13

*Juniper Networks, Inc. v. Palo Alto Networks, Inc.*,
  15 F. Supp. 3d 499 (D. Del. 2014).................................................................................7, 13

*Kos Pharm., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004) ................................................................................................8

*Lamson v. U.S.*,
  101 Fed. Cl. 280 (Fed. Cl. 2011) ...............................................................................9, 13, 14

*Leading Tech. Composites v. MV2, LLC*, No. CCB-19-1256,
  2020 WL 790601 (D. Md. Feb. 18, 2020) ..........................................................................8

*LifeScan Scotland, Ltd. v. Shasta Tech, LLC*, No. 11-cv-04494 EJD,
  2012 WL 2979028 (N.D. Cal. July 19, 2012)......................................................................9

*Mag Aerospace Indus., Inc. v. B/E Aerospace, Inc.*,
  816 F.3d 1374 (Fed. Cir. 2016)................................................................................7, 11, 12

*Oneida Indian Nation of N.Y. v. Cnty. of Oneida*,
  414 U.S. 661 (1974).............................................................................................................9

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000) ............................................................... 9

*Port-A-Pour, Inc. v. Peak Innovations, Inc.*, No. 13-cv-01511-WYD-BNB,
    2015 WL 292913 (D. Colo. Jan. 20, 2015) ........................................ 8

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014) ............................................................... 9

*Shamrock Techs., Inc. v. Medical Sterilization, Inc.*,
    903 F.2d 789 (Fed. Cir. 1990) ....................................................... 7, 12

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ........................................................................ 9, 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ........................................................................... 8

*Wells v. Kessler Corp.*, No. 17-cv-02709-AGF,
    2018 WL 1251928 (E.D. Mo. Mar. 12, 2018) .................................... 8

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
    868 F. Supp. 2d 376 (D. Del. 2012) ................................................... 6

## RULES

17 C.F.R. § 240.3b-7 .................................................................................... 10

Fed. R. Civ. P. 12(b)(1) ............................................................................. 1, 2

Fed. R. Civ. P. 12(b)(6) .......................................................................... 1, 2, 6

Plaintiff United Therapeutics Corporation ("UT") moves under Fed. R. Civ. P. 12(b)(6), or, alternatively, under Fed. R. Civ. P. 12(b)(1), to dismiss Defendant Liquidia Technologies, Inc.'s ("Liquidia") counterclaim for a declaration of invalidity of U.S. Patent No. 10,716,793 (the "'793 patent") and related defenses (*see* D.I. 23 at pp. 10-11, 16-18) under the doctrine of assignor estoppel.

## I.   NATURE AND STAGE OF PROCEEDINGS

On June 4, 2020, UT filed a complaint for patent infringement ("Complaint") against Liquidia based on the notice of paragraph IV certification letter that UT received from Liquidia on or about April 27, 2020. D.I. 1 ¶¶ 18-19. UT amended its Complaint on July 22, 2020 to add infringement claims for the newly issued '793 patent. D.I. 16. On August 5, 2020, Liquidia filed an Answer to the Amended Complaint and Counterclaims. D.I. 23.

## II.   SUMMARY OF THE ARGUMENT

Assignor estoppel bars Liquidia from asserting that the '793 patent is invalid because Dr. Robert Roscigno, a named inventor on the '793 patent who assigned his rights in the patent to UT, is in privity with Liquidia by virtue of his role as Liquidia's Senior Vice President, Product Development and his substantial equity interest in Liquidia. Assignor estoppel is "an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity … [and] operates to bar other parties in privity with the assignor…." *Diamond Sci. Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed. Cir. 1988). This case presents the classic assignor estoppel scenario.

The Court should dismiss Liquidia's invalidity counterclaims and defenses directed to the '793 patent under Federal Rule of Civil Procedure 12(b)(6). In the alternative, if the Court chooses not to take judicial notice of the additional facts that demonstrate assignor estoppel for the motion

to dismiss under Rule 12(b)(6), UT requests the Court to dismiss the counterclaims directed to invalidity of the '793 patent under Federal Rule of Civil Procedure 12(b)(1), which permits the Court to look outside the pleadings and dismiss a claim for lack of subject matter jurisdiction if the claim is insubstantial, implausible, or frivolous. Here, in light of the assignor estoppel doctrine, it is plain that Liquidia will never be able to prevail on its assertion that the '793 patent is invalid, and its counterclaim and defense to that effect should be dismissed.

## III.   <u>STATEMENT OF FACTS</u>

On June 4, 2020, UT filed a complaint for patent infringement against Liquidia based on the notice of paragraph IV certification letter that UT received from Liquidia on or about April 27, 2020. D.I. 1 ¶¶ 18-19. Liquidia seeks to obtain FDA approval and market its infringing product prior to patent expiration for UT's product, Tyvaso® (treprostinil) Inhalation Solution. *Id.* ¶¶ 2, 18-20. Because UT filed the Complaint within 45 days after receipt of Liquidia's notice letter, FDA will stay approval of Liquidia's infringing product for 30 months until October 24, 2022. *See id.* ¶ 21; D.I. 20, Ex. A at 2. Liquidia requested an extension to answer the Complaint and answered the Complaint and asserted counterclaims against UT on July 16, 2020. D.I. 11.

On July 21, 2020, the United States Patent & Trademark Office ("USPTO") issued the '793 patent to UT. D.I. 16-1, Ex. C. The '793 patent lists seven inventors, including Dr. Robert Roscigno. *Id.* Dr. Roscigno, along with all the other co-inventors of the '793 patent, assigned his interest in the '793 patent to UT. *Id.*; *see also* RJN No. 1 at REEL: 021148 FRAME: 005.[1] Specifically, Dr. Roscigno assigned all his interest in the parent application of the '793 patent, U.S. Patent Application No. 11/748,205, to UT on June 18, 2007. RJN No. 1 at REEL: 021148

---

[1] RJN Nos. 1-9 are documents included with UT's Motion for Judicial Notice and the Declaration of Joshua Mack, filed concurrently with this Motion to Dismiss.

FRAME: 005. Accordingly, the '793 patent is assigned to UT, as is shown on the face of the patent. D.I. 16-1, Ex. C.; *see also* D.I. 16 ¶ 18. The day after the '793 patent issued, UT filed its First Amended Complaint, alleging that Liquidia's product also infringes claims of that patent. *See generally* D.I. 16 ¶¶ 69-83.

On August 5, 2020, Liquidia filed an Answer to the Amended Complaint and Counterclaims. D.I. 23. Included in the Answer and Counterclaims are allegations by Liquidia that the '793 patent is invalid. Liquidia alleges that "[o]ne or more claims of the '066, '901, and '793 patents are invalid for failure to satisfy the conditions of patentability in 35 U.S.C. §§ 101 *et seq.,* including, but not limited to §§ 101, 102, 103, and/or 112." *Id.* at p. 10. Liquidia specifically alleges:

> **the claims of the '793 patent are invalid under §§ 102 and/or 103** at least over Plaintiff's prior art patents and publications, including U.S. Patent Nos. 6,756,033 and 6,521,212, disclosing methods for treating pulmonary hypertension by administering a single event dose of a 15 to 90 microgram inhalation formulation of treprostinil, including liquid and powder formulations of treprostinil, in 1 to 3 breaths; (7) **at least claims 1, 4, and 6-8 of the '793 patent are invalid under § 112** as indefinite and lacking written description and enablement support at least with respect to administration of a "powder"; and (8) the claims of **the '793 patent are invalid for obviousness-type double patenting** over Plaintiff's prior issued patents, including U.S. Patent Nos. 6,756,033 and 6,521,212, disclosing and claiming methods for treating pulmonary hypertension by administering a single event dose of a 15 to 90 microgram inhalation formulation of treprostinil, including liquid and powder formulations of treprostinil, in 1 to 3 breaths.

*Id.* at pp. 10-11 (emphasis added). Liquidia's Answer and Counterclaims to the Amended Complaint further requests a declaratory judgment that the '793 patent is invalid. *Id.* at pp. 16-18, 24.

Dr. Robert Roscigno was once the President and Chief Operating Officer at Lung Rx., Inc., a wholly owned subsidiary of Plaintiff United Therapeutics Corporation ("UT") and instrumental in the development of a UT product, Tyvaso® (treprostinil) Inhalation Solution ("Tyvaso®"). In

connection with that work, Dr. Roscigno is a listed inventor on a number of patents related to

Tyvaso®, including the '793 patent. As an employee of Lung Rx, Dr. Roscigno assigned to UT his

ownership in the '793 patent. Dr. Roscigno switched teams and until quite recently was the Senior

Vice President, Product Development for Liquidia with a significant equity interest in Liquidia.[2]

*E.g.*, RJN No. 3 at 6 (listing Dr. Roscigno as Liquidia's Senior Vice President, Product

Development).  Liquidia charged Dr. Roscigno with developing the accused product in this case,

a product intended to directly compete with Tyvaso® and piggyback on Tyvaso®'s FDA approval.

In the public stock offering prospectus issued by Liquidia on March 20, 2019 (the "Prospectus"),

Liquidia describes the role of Dr. Roscigno at Liquidia and also references his work at UT on

Tyvaso®:

> Dr. Robert Roscigno[] previously served as the executive vice president of
> GeNO, LLC, where he led the clinical development team working on a
> novel nitric oxide delivery system, and before that **he served as the
> president and chief operating officer of Lung Rx, Inc., where he was
> part of the team responsible for bringing Tyvaso through Phase 3
> development**, and he previously served in multiple leadership positions at
> United Therapeutics and its subsidiaries, contributing to the successful
> development and worldwide commercialization of Remodulin™, which is
> treprostinil administered through subcutaneous or intravenous infusion, for
> the treatment of PAH.

*Id.* (emphasis added)*.* The Prospectus further describes the role of Dr. Roscigno at both UT and

Liquidia:

> **Dr. Robert Roscigno has been our Senior Vice President, Product
> Development since December 2017. He served as our Senior Vice
> President, Research and Development from March 2016 until**

---

[2] Public sources indicate that Dr. Roscigno remains a Liquidia employee, but in preparing the letter filed with the Court on August 21, 2020 (D.I. 26), Liquidia stated that Dr. Roscigno is no longer employed at Liquidia. For this motion, this is irrelevant for two reasons. First, that purported fact is not part of the record. Second, even assuming that Dr. Roscigno has departed, assignor estoppel is an equitable doctrine, and Liquidia cannot escape the consequences of leveraging the benefits of Dr. Roscigno's expertise to design and develop its product by terminating his employment on the eve of anticipated approval.

> **December 2017 and our Vice President, Research and Development from September 2015 until March 2016. From January 2009 to September 2015**, Dr. Roscigno served as the executive vice president, global clinical affairs of GeNO, LLC, a pharmaceutical company in the field of inhaled nitric oxide drug products. From July 2007 to January 2009, Dr. Roscigno provided scientific consulting for various companies in the pharmaceutical industry and also worked as a subject matter expert in PAH. **From March 2005 to July 2007, Dr. Roscigno was the president and chief operations officer of Lung Rx, Inc., a subsidiary of United Therapeutics Corporation. Prior to Lung Rx, Inc., Dr. Roscigno served in multiple leadership positions at United Therapeutics Corporation**. Dr. Roscigno graduated from Trinity College with a Bachelor of Science in Biology. He also holds a Doctor of Philosophy in Cell and Molecular Biology from Duke University.

*Id.* at 130 (emphasis added). In fact, despite only starting at Liquidia in September 2015, Liquidia filed a patent application on May 5, 2016, directed to the use of dry powder treprostinil to treat pulmonary hypertension that listed Dr. Roscigno as an inventor. *See id.*; RJN No. 9. By October 2016, Dr. Roscigno and Liquidia had successfully conducted a toxicity study of the infringing product, LIQ861. RJN No. 8 at 99. And by March 2017, Dr. Roscigno and Liquidia had successfully completed a Phase 1 trial of the infringing product in 57 healthy volunteers. *Id.* at 88.

The Prospectus also describes a substantial Liquidia stock grant to Dr. Roscigno:

> On March 7, 2018, we granted incentive stock options to purchase shares of our common stock under the 2016 Plan, with an exercise price equal to $9.31 per share, to each of the following officers . . . Dr. Robert Roscigno, our Senior Vice President, Product Development, for 35,656 shares . . . .

RJN No. 3 at 145. Indeed, Liquidia's S-1 Registration Statement, S-3 and S-4 Statements disclose the significant interest that Dr. Roscigno owns in Liquidia. RJN No. 2 (disclosing the award of 33,333 stock options to Dr. Roscigno, and the award of 8,333 restricted stock units); RJN No. 5 (disclosing the award of 36,000 stock options to Dr. Roscigno); RJN No. 7 (disclosing the award of 25,553 stock options to Dr. Roscigno on September 28, 2016, and the award of 35,656 stock options on March 7, 2019).

In Liquidia's 8-K, dated March 8, 2019, Liquidia included Phase 1 results for LIQ861, which were described as being presented as a poster at the PVRI Annual World Congress in January 2018 by Dr. Roscigno. RJN. No. 4 at 13.

Liquidia's 8-K, dated January 7, 2019, listed Dr. Roscigno as part of Liquidia's "[s]easoned team with relevant commercial and disease area expertise." RJN No. 6 at 8. That 8-K included an extended quote from Dr. Roscigno:

> "Patient demographics and baseline characteristics in the trial suggest that LIQ861 may be attractive across disease severity and may have utility as a first-line prostacyclin," added Robert Roscigno, PhD, Liquidia's Senior Vice President of Product Development and LIQ861 Program Lead. "Interestingly, enrollment of the safety portion of the trial was driven primarily by stronger than anticipated interest from New York Heart Association Functional Class II add-on patients, which may imply that dry-powder delivery could be an alternative to oral delivery in prostacyclin naïve patients. We are pleased with these findings and believe they support the therapeutic potential and versatility of LIQ861 among patients across different functional classes."

*Id.* at 35-36.

## IV.   ARGUMENT

### A.   Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a counterclaim can be dismissed if it fails "to state a claim upon which relief can be granted." In determining whether to dismiss a counterclaim under Rule 12(b)(6), the Court accepts the non-movant's factual statements in the counterclaim as true and determines whether the counterclaimant can make a "plausible claim for relief." *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d 376, 378-79 (D. Del. 2012) (citation omitted).

Assignor estoppel is "an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity . . . [and] operates to bar other parties in privity with the assignor, such as a corporation founded by

the assignor." *Diamond Sci.*, 848 F.2d at 1224. The Federal Circuit explained that assignor estoppel prevents "an injustice against the assignee to allow the assignor to make that representation at the time of the assignment (to his advantage) and later to repudiate it (again to his advantage)." *Hologic, Inc. v. Minerva Surgical, Inc.*, 957 F.3d 1256, 1265 (Fed. Cir. 2020) (quoting *Diamond Sci.*, 848 F.2d at 1224) (internal quotations omitted).

For assignor estoppel to apply, Dr. Roscigno—who assigned his interest in the '793 patent—needs to be in privity with Liquidia, the party challenging the patent. *Id.* The Federal Circuit identified factors to consider when determining whether privity exists for assignor estoppel in *Shamrock Technologies, Inc. v. Medical Sterilization, Inc.*, 903 F.2d 789 (Fed. Cir. 1990):

> (1) the assignor's leadership role at the new employer; (2) the assignor's ownership stake in the defendant company; (3) whether the defendant company changed course from manufacturing non-infringing goods to infringing activity after the inventor was hired; (4) the assignor's role in the infringing activities; (5) whether the inventor was hired to start the infringing operations; (6) whether the decision to manufacture the infringing product was made partly by the inventor; (7) whether the defendant company began manufacturing the accused product shortly after hiring the assignor; and (8) whether the inventor was in charge of the infringing operation.

*Mag Aerospace Indus., Inc. v. B/E Aerospace, Inc.*, 816 F.3d 1374, 1380 (Fed. Cir. 2016) (citing *Shamrock*); *see also Shamrock Techs.*, 903 F.2d at 794 (finding privity between employer and inventor hired as Vice President with responsibilities for developing accused product); *Juniper Networks, Inc. v. Palo Alto Networks, Inc.*, 15 F. Supp. 3d 499, 508 (D. Del. 2014) (finding privity between employer and employee granted title of "founder").

Further, privity exists between an assigning inventor and a party infringing a patent when "the ultimate infringer availed itself of the inventor's 'knowledge and assistance' to conduct infringement." *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 839 (Fed. Cir. 1991) (quoting *Shamrock Techs.*, 903 F.2d at 794). Indeed, even consultants or contractors will be found to be in

-7-

privity with the infringer when that consultant or contractor plays a "significant role" in the infringing product. *BASF Corp. v. Aristo Inc.*, 872 F. Supp. 758, 776 (N.D. Ind. 2012); *Leading Tech. Composites v. MV2, LLC*, No. CCB-19-1256, 2020 WL 790601, at *4 (D. Md. Feb. 18, 2020) (finding privity and, thus, assignor estoppel between accused infringer and its "contractor" where the accused infringer "availed itself of [the contractor's] knowledge and assistance to conduct the allegedly infringing operations."). The "critical time" to look at to determine privity is when the infringing product was developed. *Intel*, 946 F.2d at 839 (quoting determination of ALJ).

The '793 Patent is identified in and attached as an exhibit to the First Amended Complaint. D.I. 16; D.I. 16-1, Ex. C. As such, it is appropriate for the Court to rely on the patent when ruling on a motion to dismiss. *E.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Courts can also take judicial notice of other documents that are matters of public record, like filings with the USPTO. *See Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 705 n.5 (3d Cir. 2004) (taking judicial notice of public records available on the USPTO and FDA websites); *HTC Corp. v. IPCom GmbH & Co.*, 671 F. Supp. 2d 146, 150 n.3 (D.D.C. 2009) ("The Court takes judicial notice of the PTO pleadings. A court may take judicial notice of court documents and other public records."); *see also In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751, 754 n.2 (E.D. Pa. 2003) (taking judicial notice of information from FDA website). Accordingly, the Court can take judicial notice of patent assignments. *E.g.*, *Port-A-Pour, Inc. v. Peak Innovations, Inc.*, No. 13-cv-01511-WYD-BNB, 2015 WL 292913, at *2 (D. Colo. Jan. 20, 2015); *see also Wells v. Kessler Corp.*, No. 17-cv-02709-AGF, 2018 WL 1251928, at *3 (E.D. Mo. Mar. 12, 2018) (taking judicial notice of USPTO records).

Similarly, the Court can take judicial notice of a company's filings with the SEC. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (taking judicial notice of SEC filings); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (noting that the court may consider on a motion to dismiss documents filed with the SEC). Indeed, when a litigant cannot reasonably dispute a fact, it is appropriate for the court to take judicial notice of that fact. *See, e.g.*, *LifeScan Scotland, Ltd. v. Shasta Tech, LLC*, No. 11-cv-04494 EJD, 2012 WL 2979028, at *6 n.1 (N.D. Cal. July 19, 2012) ("[I]n their objection to LifeScan's request for judicial notice, Instacare and Pharmatech object generally to its SEC filings, websites, and press releases being used to prove the truth of the statements they contain as hearsay. . . . As a party to this action, Instacare's admissions are not hearsay.").

Alternatively, "frivolous claims may also be dismissed under [Rule] 12(b)(1) on jurisdictional grounds so long as jurisdictional dismissals for frivolousness are confined to cases that are very plain." *Lamson v. U.S.*, 101 Fed. Cl. 280, 287 n.6 (Fed. Cl. 2011) (internal quotations omitted, citations omitted). Indeed, the Supreme Court has held that dismissing a claim for lack of subject matter jurisdiction is appropriate "when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation of N.Y. v. Cnty. of Oneida*, 414 U.S. 661, 666 (1974) (internal quotations omitted)). "'[W]holly insubstantial and frivolous' claims do not merit federal jurisdiction. A 'question may be plainly unsubstantial ... because it is obviously without merit.'" *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1328 (Fed. Cir. 1998) (citations omitted).

### B.    Liquidia's Invalidity Counterclaim and Defense Should be Dismissed for Failure to State a Claim under Rule 12(b)(6)

It is beyond dispute that (a) Dr. Roscigno is one of the '793 patent named inventors, and (b) Dr. Roscigno assigned all his rights in the patent to UT. The only issue is whether Liquidia is in privity with Dr. Roscigno such that assignor estoppel also bars Liquidia from challenging the validity of the '793 patent. Liquidia is, in fact, in privity with Dr. Roscigno given his pivotal role in developing Liquidia's product intended to compete with Tyvaso®, his executive-level position, and his substantial equity stake in Liquidia.

As Liquidia's securities filings state, Dr.  Roscigno is Liquidia's Senior Vice President, Product Development, or at least was until days ago. RJN No. 3 at 6; *see supra* n.2. Liquidia's SEC filings tout Dr. Roscigno's previous experience with treprostinil while at UT. *Id.* (stating that Dr. Roscigno "served as the president and chief operating officer of Lung Rx, Inc., where he was part of the team responsible for bringing Tyvaso® through Phase 3 development"). Indeed, by publicly disclosing Dr. Roscigno as one of the company's executive officers under federal securities law, Liquidia represented that Dr. Roscigno was an "officer who performs a policy making function or any other person who performs similar policy making functions for the registrant." 17 C.F.R. § 240.3b-7; *see also* RJN Nos. 2 & 5 (SEC Form 4 submissions identifying Dr. Roscigno in Box 5 as a Liquidia "officer"); RJN No. 3 at 129-130 (listing Dr. Roscigno as one of Liquidia's six "executive officers.").

Liquidia's emphasis on Dr. Roscigno's prior experience with Tyvaso® at UT is not surprising because it dovetails with his vital role in developing a competing product for Liquidia. Dr. Roscigno is described by Liquidia as the "LIQ861 Program Lead," which is the infringing product in this action. Liquidia filed a patent application, naming Dr. Roscigno as an inventor, that is directed to dry powder treprostinil to treat pulmonary hypertension within eight months of Dr.

Roscigno's start at Liquidia. RJN No. 9. Five months after filing this patent application, in October 2016, Dr. Roscigno and Liquidia successfully conducted a preclinical study of infringing product LIQ861. RJN No. 8 at 99. And by March 2017, Dr. Roscigno and Liquidia had successfully completed a Phase 1 trial of the infringing product in 57 healthy volunteers. *Id.* at 88. Indeed, Dr. Roscigno presented the results of the Phase 1 trial of the infringing product at a scientific conference. RJN No. 4 at 13; RJN No. 8 at 88. Thus, Liquidia made Dr. Roscigno a highly placed executive officer, touted his experience developing Tyvaso®, and placed him in charge of developing the infringing product at issue here. As such, Dr. Roscigno played a key role in the development of the infringing product.

Dr. Roscigno also has a significant ownership interest in Liquidia, as stated in Liquidia's SEC filings. Liquidia is a publicly traded company, and Liquidia has granted Dr. Roscigno significant equity. Liquidia has disclosed several grants of equity stakes in Liquidia to Dr. Roscigno. RJN No. 2 (option to purchase 33,333 shares and award of 8,333 restricted shares); RJN No. 5 (option to purchase 36,000 shares); RJN No. 7 (option to purchase 25,553 shares awarded on September 28, 2016, option to purchase 35,656 shares awarded on March 7, 2019). Thus, Liquidia enticed Dr. Roscigno with a significant ownership interest in Liquidia. This ownership interest is entirely consistent with Dr. Roscigno's role at Liquidia—an executive officer critical in developing Liquidia's infringing product.

Such an executive position in Liquidia, with responsibility for development of the infringing product, and a significant ownership in Liquidia, is sufficient to meet the test for similar executives to be in privity with their employers. For example, in *Mag Aerospace*, the Federal Circuit found an accused infringer in privity with an inventor it hired to develop the accused product based, in part, on his prior experience in the area:

> [T]he district court noted that B/E used Mr. Pondelick's knowledge to
> conduct the activities that are now alleged to be infringing; that he was hired
> specifically to develop the toilets that are accused of infringement; and that
> he was the Director of Engineering for B/E during his time as a consultant
> and later became Vice President and General Manager of B/E EcoSystems,
> the division that manufactured the accused toilets. Based on the extent of
> Mr. Pondelick's involvement in the alleged infringing activity and the fact
> that B/E "availed itself of [Mr. Pondelick's] knowledge and assistance" to
> conduct the alleged infringement, we cannot say that the district court
> abused its discretion in finding that assignor estoppel applies.

816 F.3d at 1380 (internal citation omitted). Here too, Dr. Roscigno is the "LIQ861 Program

Lead," the product at issue in this litigation, and Liquidia has "availed itself" of Dr. Roscigno's

expertise gained in developing Tyvaso®. *See* RJN No. 3 at 6; *see also* D.I. 23 at p. 2 ("Liquidia

admits that it submitted New Drug Application No. 213005 under § 505(b)(2) of the Federal Food,

Drug and Cosmetic Act ('Liquidia's NDA') to the United States Food and Drug Administration

('FDA') seeking approval to engage in the commercial manufacture, use and/or sale of LIQ861

(treprostinil) inhalation powder (the 'Liquidia Product' or 'LIQ861 Product')."). Indeed, Liquidia

"availed itself" of Dr. Roscigno's expertise right away, filing a patent application related to its

infringing product within eight months of Dr. Roscigno starting at Liquidia. RJN No. 9.

 *Shamrock Technologies* is also instructive. The *Shamrock* court explained that privity

requires evaluating the relationship between the inventor and employer:

> Privity, like the doctrine of assignor estoppel itself, is determined upon a balance
> of the equities. If an inventor assigns his invention to his employer company A and
> leaves to join company B, whether company B is in privity and thus bound by the
> doctrine will depend on the equities dictated by the relationship between the
> inventor and company B in light of the act of infringement. The closer that
> relationship, the more the equities will favor applying the doctrine to company B.

903 F.2d at 793. *Shamrock* concluded that there was no genuine issue of material fact that privity

existed where, *inter alia*, the inventor in question left his prior employer to take a Vice President

position at the accused infringer, the infringer granted 50,000 shares of stock to the inventor, and

the accused infringer tasked the inventor with developing the accused processes. *Id*. at 794; *see*

*also Juniper Networks*, 15 F. Supp. 3d at 509 (applying estoppel and noting that "the query is whether [the inventor] was closely involved in the development of products and with the [accused infringer]"). Here too, Liquidia leveraged Dr. Roscigno's "knowledge and experience" in developing Tyvaso® to develop the infringing product and rewarded him handsomely for his efforts. *See Intel*, 946 F.2d at 839. Liquidia cannot now distance itself from Dr. Roscigno and his prior work, including his role as an inventor of the '793 patent.

Liquidia cannot reasonably deny Dr. Roscigno's role in the leadership at Liquidia and his role in the development of the infringing product, LIQ861. As such, Liquidia is in privity with Dr. Roscigno, and is estopped from contending that the '793 patent is invalid. Liquidia's defenses and counterclaims directed to invalidity of the '793 patent must be dismissed.

## C.   Alternatively, Liquidia's Invalidity Counterclaim Defense Should be Dismissed for Lack of Jurisdiction under Rule 12(b)(1)

If the Court should choose not to take judicial notice of the publicly available records discussed above, the Court should still dismiss the invalidity counterclaim and defense related to the '793 patent due to lack of jurisdiction. This Court can dismiss a claim under 12(b)(1) when it is insubstantial, implausible, or frivolous. *See Steel Co.*, 523 U.S. at 89;[3] *Lamson*, 101 Fed. Cl. at 287 n.6. And the Court can look outside the pleadings when determining whether to grant a motion to dismiss under Rule 12(b)(1). *E.g.*, *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993) ("a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony.").

---

[3] In *Steel Co.*, the Supreme Court was addressing a circuit split between the Sixth and Seventh Circuits regarding the interpretation of the Emergency Planning and Community Right–To–Know Act of 1986 (EPCRA). 523 U.S. at 88. Because the Supreme Court found that the statute was ambiguous, and that the respondent prevailed on its claim under one interpretation of EPCRA, the Supreme Court held that the claim was not "frivolous or immaterial," and should not be dismissed under Rule 12(b)(1). *Id.* at 88-89.

In *Lamson*, the plaintiff alleged a Fifth Amendment taking through grant funding. 101 Fed. Cl. at 281. The U.S. government moved to dismiss this claim under Rules 12(b)(1) and 12(b)(6) as being foreclosed based on Supreme Court and Federal Circuit precedent holding that any alleged patent infringement by the U.S. government does not give rise to a cause of action under the Fifth Amendment. *Id.* at 284. The Court of Federal Claims agreed, holding that "Count 2 of plaintiff's complaint—alleging an unconstitutional taking under the Fifth Amendment for patent infringement—should be dismissed for lack of subject matter jurisdiction." *Id.* Because the Court of Federal Claims dismissed the claims under Rule 12(b)(1), it did not reach the parties' arguments regarding 12(b)(6). *Id.* at 287 n.6.  The Federal Circuit has affirmed dismissals under Rule 12(b)(1) where it has found the claim to be "entirely insubstantial." *Hunter Douglas*, 153 F.3d at 1328.

Here, Liquidia's defense and counterclaim for invalidity of the '793 patent are "entirely insubstantial" because Federal Circuit precedent on assignor estoppel bars Liquidia from asserting that the '793 patent is invalid. As discussed above, Liquidia cannot reasonably contest that Dr. Roscigno assigned the '793 patent to UT. Nor can Liquidia reasonably contest that Dr. Roscigno is in privity with Liquidia, given his significant role in developing the infringing product, his position as project leader for the infringing product, his leadership position in the company, and his equity stake in the company. Liquidia's defense and counterclaims simply cannot stand in view of controlling precedent and must be dismissed.

## V.   <u>CONCLUSION</u>

Because Dr. Roscigno is an inventor on the '793 patent, assigned his interest in that patent to UT, and is in privity with Defendant Liquidia, Liquidia is estopped from challenging the validity of the '793 patent. Liquidia's defenses and counterclaims for invalidity of the '793 patent should be dismissed.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Plaintiff United Therapeutics Corporation*

OF COUNSEL:

Douglas H. Carsten
Joshua Mack
WILSON SONSINI GOODRICH & ROSATI
12235 El Camino Real
San Diego, CA  92130
(858) 305-2300

Adam W. Burrowbridge
WILSON SONSINI GOODRICH & ROSATI
1700 K Street NW, Fifth Floor
Washington, DC  20006
(202) 973-8800

William C. Jackson
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue NW
Washington, DC  20005
(202) 237-2727

August 26, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 26, 2020, upon the following in the manner indicated:

Karen E. Keller, Esquire                          *VIA ELECTRONIC MAIL*
Jeff Castellano, Esquire
David M. Fry, Esquire
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

Sanya Sukduang, Esquire                          *VIA ELECTRONIC MAIL*
Jonathan Davies, Esquire
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004-2400
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

Erik Milch, Esquire                              *VIA ELECTRONIC MAIL*
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA  20190-5640
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

Ivor Elrifi, Esquire                             *VIA ELECTRONIC MAIL*
COOLEY LLP
55 Hudson Yards
New York, NY  10001-2157
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

Lauren Krickl, Esquire                                    *VIA ELECTRONIC MAIL*
Deepa Kannappan, Esquire
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)