IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-755-RGA |
| | ) | |
| LIQUIDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant Liquidia Technologies, Inc*

OF COUNSEL:
Sanya Sukduang
Jonathan Davies
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202) 842-7800

Erik Milch
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5640
(703) 546-8000

Ivor Elrifi
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Lauren Krickl
Deepa Kannappan
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Dated: September 9, 2020

# TABLE OF CONTENTS

**Page**

I.  NATURE AND STAGE OF PROCEEDINGS ............................................................. 1

II.  SUMMARY OF THE ARGUMENT ....................................................................... 1

III.  STATEMENT OF FACTS ............................................................................... 2

    A.  Tyvaso® and LIQ861 Are Fundamentally Different Products............................ 2

    B.  UT Waited 14 Years To Obtain Patent Claims Directed to Treprostinil Dry Powder Formulations and Only After Liquidia Filed Its LIQ861 NDA............... 4

    C.  Dr. Roscigno Joined Liquidia to Oversee Clinical Trials, Has Negligible Ownership Interest, and Recently Resigned .................................................. 4

    D.  Dr. Roscigno Has Not Worked at UT or Lung Rx for Over 13 Years ................. 6

IV.  ARGUMENT .............................................................................................. 6

    A.  Resolution of Assignor Estoppel is Premature and Inappropriate at this Stage ................................................................................................. 6

    B.  UT Fails to State a Basis for Dismissal of Liquidia's Affirmative Defense.......... 9

    C.  Assignor Estoppel Does Not Apply ......................................................... 9

        1.  Dr. Roscigno and Liquidia Are Not In Privity........................................ 10

            a.  Liquidia did not avail itself of Dr. Roscigno's knowledge of Tyvaso®.......................................................................... 11

            b.  Dr. Roscigno does not control Liquidia...................................... 14

            c.  Dr. Roscigno's equity stake in Liquidia is negligible................. 16

            d.  UT made no effort to address the majority of the Shamrock factors..................................................................................... 17

        2.  The Balance of the Equities Compels a Finding of No Assignor Estoppel.................................................................................... 18

    D.  UT Fails to State a Basis for Dismissal Under 12(b)(1) ..................................... 19

V.  CONCLUSION............................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acushnet Co. v. Dunlop Maxfli Sports Corp.*,
   No. 98-717-SLR, 2000 WL 987979 (D. Del. June 29, 2000) ................................ 14, 15, 17, 18

*Affymetrix, Inc. v. Illumina, Inc.*,
   No. 04-904 JJF, 2005 WL8170962 (D. Del. Sept. 16, 2005) ..................................... 7, 8, 9, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................. 10

*BASF Corp. v. Aristo, Inc.*,
   872 F. Supp. 2d 758 (N.D. Ind. 2012) ............................................................................... 14, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................. 10

*Bell v. Hood*,
   327 U.S. 678 (1946) .................................................................................................................. 20

*Cobra Capital LLC v. Stover Indus., Inc.*,
   No. 06 C 2822, 2007 WL 844635 (N.D. Ill. Mar. 14, 2007) ..................................................... 9

*Davis v. Wells Fargo*,
   824 F.3d 333 (3d Cir. 2016) ..................................................................................................... 20

*Devon Drive Lionville, LP v. Parke Bancorp, Inc.*,
   No. 2:15-cv-3435, 2016 WL 7475816 (E.D. Pa. Dec. 29, 2016) ............................................... 8

*Diamond Sci. Co. v. Ambico, Inc.*,
   848 F.2d 1220 (Fed. Cir. 1988) ......................................................................................... *passim*

*Dresser, LLC v. VRG Controls, LLC*,
   No. 18 C 1957, 2019 WL 3244503 (N.D. Ill. Jul. 16, 2019) ..................................................... 7

*Fiber Sys. Int'l v. Applied Optical Sys., Inc.*,
   No. 2:06-CV-473, 2008 WL 4482410 (E.D. Tex. Sept. 29, 2008) .......................................... 14

*Hologic, Inc. v. Minerva Surgical, Inc.*,
   957 F.3d 1256 (Fed. Cir. 2020) ........................................................................................... 7, 15

*HWB, Inc. v. Braner, Inc.*,
   869 F. Supp. 579 (N.D. Ill. 1994) ........................................................................................... 14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Illumina, Inc. v. Ariosa Diagnostics, Inc.*,
    No. C 14-01921 SI, 2014 WL 3897076 (N.D. Cal. Aug. 7, 2014) ...........................................7

*Intel Corp. v. U.S. Int'l Trade Comm'n*,
    946 F.2d 821 (Fed. Cir. 1991)................................................................................11, 15, 16

*Juniper Networks, Inc. v. Palo Alto Networks, Inc.*,
    15 F. Supp. 3d 499 (D. Del. 2014).....................................................................7, 12, 15, 16

*Juniper Networks, Inc. v. Palo Alto Networks, Inc.*,
    881 F. Supp. 2d 603 (D. Del. 2012)..............................................................................6, 7, 8

*Kulick v. Pocono Downs Racing Ass'n*,
    816 F.2d 895 (3d Cir. 1987).............................................................................................20

*Lamson v. U.S.*,
    101 Fed. Cl. 280 (Fed. Cl. 2011) ......................................................................................20

*Leading Tech. Composites, Inc. v. MV2 LLC*,
    No. CCB-19-1256, 2020 WL 790601 (D. Md. Feb. 18, 2020).......................................14, 15

*MAG Aerospace Indus., Inc. v. B/E Aerospace, Inc.*,
    816 F.3d 1374 (Fed. Cir. 2016).........................................................................................14

*Shamrock Techs., Inc. v. Med. Sterilization, Inc.*,
    903 F.2d 789 (Fed. Cir. 1990)..................................................................................... *passim*

*Stubnitz–Greene Spring Corp. v. Fort Pitt Bedding Co.*,
    110 F.2d 192 (6th Cir. 1940) ............................................................................................16

*Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
    785 F.3d 625 (Fed. Cir. 2015)...........................................................................................10

*Victaulic Co. v. Tieman*,
    499 F.3d 227 (3d Cir. 2007)................................................................................................8

**Statutes**

35 U.S.C. § 271(e)(1).................................................................................................10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Other Authorities**

Fed. R. Civ. P.
  12(b)(1) ................................................................................................................... *passim*
  12(b)(6) ................................................................................................................... *passim*
  12(f).......................................................................................................................7, 9
  12(g)(2) ...................................................................................................................9
  12(h)(2) ...................................................................................................................9

The Court should deny Plaintiff United Therapeutics Corporation's ("UT's" or "Plaintiff's") Motion under Rules 12(b)(1) and (6) to Dismiss Defendant's Invalidity Counterclaim and Defenses ("UT's motion") directed to the invalidity of U.S. Patent No. 10,716,793 ("the '793 patent"). UT's motion is a backdoor attempt at summary judgment that is premature and inappropriate at this early stage given the fact-intensive inquiry required to find assignor estoppel. (*See* D.I. 20, ¶11.) Regardless, even accepting UT's allegations, UT has not met its burden under either rule for dismissal of Liquidia Technologies, Inc.'s ("Liquidia's") counterclaim and defenses because (1) Liquidia and Dr. Roscigno are not in privity and (2) the equities compel a finding that assignor estoppel should not apply.

## I.       NATURE AND STAGE OF PROCEEDINGS

On June 4, 2020, Plaintiff filed a complaint accusing Liquidia of infringing U.S. Patent Nos. 9,593,066 and 9,604,901, which are directed to product-by-process claims comprising treprostinil. (D.I. 1, ¶¶ 13, 15; D.I. 16-1, Exs. A, B.) The '793 patent, which purports to claim methods of treatment using powder formulations of treprostinil, issued on July 21, 2020, and UT asserted it the next day. (D.I. 16-1, Ex. C; D.I. 16, ¶ 17.) On August 5, 2020, Liquidia filed an Answer to the Amended Complaint and asserted various defenses and counterclaims, including an affirmative defense and counterclaim for invalidity of the '793 patent. (D.I. 23, pp. 10-11; *see also id.*, Counterclaims ¶¶ 36-43.) On August 26, 2020, UT filed the instant motion to dismiss under Fed. R. Civ. P. 12(b)(6) or alternatively under Fed. R. Civ. P. 12(b)(1). (D.I. 29 at 1.) Discovery is still in its early stages, with fact discovery not set to close until September 17, 2021. (*See* D.I. 20, Ex. A at 2.)

## II.      SUMMARY OF THE ARGUMENT

1.      Assignor estoppel is a fact-intensive inquiry that is inappropriate and premature for resolution at this early stage on the pleadings. The Court should deny UT's motion to dismiss for

this reason alone.

2.     Even accepting UT's allegations, assignor estoppel does not apply because Liquidia and Dr. Roscigno are not "in privity," and UT has not carried its burden to prove otherwise.  The documents UT relies upon establish that Dr. Roscigno, who is no longer a Liquidia employee, never had control of or a significant ownership stake in Liquidia.  They further establish that Dr. Roscigno's work at Lung Rx, Inc. was on UT's nebulized **liquid** treprostinil solution, Tyvaso®, which is fundamentally different from Liquidia's **dry powder** treprostinil formulation, LIQ861, and was nonetheless conducted over eight years before Dr. Roscigno became a Liquidia employee. As the case progresses, discovery will establish that others at Liquidia, and not Dr. Roscigno, made the decision to develop LIQ861 and developed its formulation and delivery method.

3.     Equities also require that assignor estoppel not be applied.  It would be unfair to apply assignor estoppel here and prevent Liquidia from challenging the validity of the '793 patent given (1) the length of time between Dr. Roscigno leaving Lung Rx and joining Liquidia and (2) the fact that UT waited 14 years to obtain the '793 patent claims reciting powder formulations, and **only after** Liquidia filed its New Drug Application ("NDA") for LIQ861.  Until the '793 patent issued, all of UT's earlier patents in the '793 patent family were directed to nebulized liquid solutions unrelated to LIQ861.

4.     UT's Rule 12(b)(1) motion is similarly deficient as it relies upon the same set of allegations as its 12(b)(6) motion and should likewise be denied.

## III.    STATEMENT OF FACTS

### A.     Tyvaso® and LIQ861 Are Fundamentally Different Products

While UT heavily relies on Dr. Roscigno's prior work on Tyvaso® in support of its motion, UT never describes his contribution to Tyvaso® and ignores the substantial differences in formulation, dosage, and delivery between the two products.  (D.I. 29 at 3-4, 10, 12-13.)  The

2

Prospectus submitted as UT's Request for Judicial Notice ("RJN") No. 3 describes Tyvaso® as "*delivered by a nebulizer*, a device that converts a *liquid formulation into mist*, and require between four and nine doses per day."  (*See* D.I. 31-1[1] at 32 (emphases added).)  "Nebulizers require regular care and maintenance . . . which compromise the portability of the device and the quality of life of patients.  (*Id.*)  In contrast, Liquidia's LIQ861 product is "a *dry powder formulation* of treprostinil [that] was designed using Liquidia's proprietary PRINT® technology to enhance deep-lung delivery using a convenient, palm-sized, disposable *dry powder inhaler* (DPI)."  (D.I. 23, Counterclaims ¶¶ 2-3 (emphasis added), *see also* D.I. 31-1 at 32 ("LIQ861 . . . will be the first-to-market inhaled dry powder treprostinil that can be delivered using a convenient, palm-sized, disposable DPI.").)  "LIQ861 is also more convenient to use than currently approved inhaled therapies, including TYVASO®[,] as LIQ861 is more conveniently administered and contained in a small carrying pouch as opposed to a nebulizer."  (D.I. 23, Counterclaims ¶ 3.)

Liquidia developed its own proprietary PRINT® particle engineering technology, which allows for the production of drug particles of a "precise size and highly uniform shape" (D.I. 23, Counterclaims ¶ 2), "enabl[ing]" the creation of LIQ861—"the first clinically tested formulation that stabilizes treprostinil in an inhaled dry powder formulation."  (D.I. 31-1 at 123 (further explaining that "*in vitro* studies suggest that the uniformity of size and shape allow our inhaled particles to target delivery into the lungs while depositing less in the upper airways").  The differences between Tyvaso® and LIQ861 extend further to the administered dosages of the drugs. LIQ861 can be administered to patients "at doses approximately twice as high as the maximum recommended dosage of Tyvaso" and "can also be administered in fewer breaths."  (D.I. 31-1 at

---

[1] As discussed in § IV.A, below, the Court should not take judicial notice of the nearly 1,000 pages appended to UT's motion.  To the extent the Court does consider these documents, they further support the lack of privity between Dr. Roscigno and Liquidia.

123; *see also* D.I. 23, Counterclaims ¶¶ 3-4.)  These differences led Liquidia to file an NDA, not

an Abbreviated NDA ("ANDA"), and thus Liquidia did not "piggyback" on Tyvaso®'s

development, as UT contends.  (D.I. 23, Counterclaims ¶ 4; D.I. 29 at 4.)

**B.     UT Waited 14 Years To Obtain Patent Claims Directed to Treprostinil Dry Powder Formulations and Only After Liquidia Filed Its LIQ861 NDA**

The '793 patent did not issue until July 21, 2020, over 14 years after the May 2006 filing

date of Provisional Application No. 60/800,016.  (D.I. 16-1, Ex. C, '793 patent at front cover.)

Before the '793 patent, UT obtained three earlier patents in this family—U.S. Patent Nos.

10,376,525; 9,339,507; and 9,358,240.  (*Id.*)  The claims of these patents are directed to nebulized

liquid formulations of treprostinil, like UT's Tyvaso®, and do not cover Liquidia's dry powder

LIQ861.  The '793 patent, which contains only a single mention of dry powder formulations,

claims, for the first time, methods of treatment administering a formulation comprising treprostinil

"wherein the formulation is a ***powder***."  (*Id.* at Col. 18:40-41 (emphasis added); *see also id.* at Col.

7:22-26.)  UT filed the '793 patent application on January 31, 2020, just seven days after Liquidia

filed its NDA for LIQ861.  (*Id.* at front cover; D.I. 26 at 1.)

**C.     Dr. Roscigno Joined Liquidia to Oversee Clinical Trials, Has Negligible Ownership Interest, and Recently Resigned**

UT cites no evidence regarding numerous factors relevant to this Court's assignor estoppel

analysis, including, for example, the alleged role Dr. Roscigno played in developing Tyvaso®; Dr.

Roscigno's contribution to the '793 patent; the reason Liquidia hired Dr. Roscigno; the timing of

Liquidia's development of LIQ861; and the nature of Dr. Roscigno's responsibilities at Liquidia

with respect to LIQ861.  While UT points to a method of treatment patent application filed by

Liquidia (D.I. 29 at 5), discovery will establish that others at Liquidia, and not Dr. Roscigno,

developed the dry powder formulation and delivery system for LIQ861.  Further discovery will

show that in September 2015, Liquidia hired Dr. Roscigno to help supervise the safety and efficacy

clinical trials for regulatory approval of LIQ861.  This is supported by the facts that Dr. Roscigno presented the Phase 1 results for LIQ861 at the PVRI Annual World Congress and was quoted in Liquidia's 8K for his statements regarding the LIQ861 Phase 3 clinical trial.  (*See* D.I. 29 at 6 (citing D.I. 31-1 at 278, 336-337).)  It is also consistent with his immediately preceding role as the "the executive vice president of GeNO, LLC, where he ***led the clinical development*** team working on a novel nitric oxide delivery system."  (*See id.* at 4 (citing D.I. 31-1 at 36 (emphasis added)).)

UT alleges that Dr. Roscigno "has a significant ownership interest in Liquidia."  (D.I. 29 at 11.)  But even relying on UT's cited documents, Dr. Roscigno owns only a negligible share of Liquidia stock.  The alleged grants of equity stakes to Dr. Roscigno that UT relies on add up to 174,531shares, which was ***less than 1%*** of Liquidia's total outstanding shares as of March 20, 2019.  (*See id.* at 5; *cf.* D.I. 31-1 at 39 (listing 18,519,469 outstanding shares).)  This, of course, assumes Dr. Roscigno has not sold any of his shares, which would reduce his percent ownership even further.  Additionally, Liquidia's Prospectus identifies the percent ownership as of March 2019 for nine "Named Executive Officers and Directors"—this list does not include Dr. Roscigno, and only one of these individuals (the CEO) has an ownership interest of over 1%.  (D.I. 31-1 at 189.)  It thus follows that Dr. Roscigno's ownership interest is no higher than that of any of the nine individuals identified as "principal stockholders."  (*See id.*)  Further, UT chose to rely on a 2019 Prospectus instead of later publicly available information regarding Liquidia's outstanding stock at the time UT asserted the '793 patent.  As discovery progresses, it will show that as of the July 22, 2020, filing of UT's amended complaint asserting the '793 patent, Dr. Roscigno's ownership stake in Liquidia is less than 1%.  Finally, as indicated by UT, Dr. Roscigno is no longer employed by Liquidia; he voluntarily resigned in July 2020 to take a new position at another company.  (*See* D.I. 29 at 4 n.2.)

### D.       Dr. Roscigno Has Not Worked at UT or Lung Rx for Over 13 Years

Dr. Roscigno last worked for UT prior to March 2005—over 15 years ago, and over a decade before he was employed by Liquidia.  (*See* D.I. 31-1 at 160.)  After UT, he worked for two years at a UT subsidiary called Lung Rx, which he left in July 2007.  (*Id.*)  Importantly, Dr. Roscigno did not immediately join Liquidia after leaving UT and Lung Rx; instead, he obtained over eight years of intervening work experience as an independent consultant and as the Executive Vice President of Global Clinical Affairs at GeNO, LLC.  (*See id.*)  At GeNO, his work focused on inhaled nitric oxide drug products, and his consulting work allowed him to advise "various companies in the pharmaceutical industry . . . as a subject matter expert in PAH [pulmonary arterial hypertension]."  (*Id.*)  UT alleges that Dr. Roscigno was "instrumental in the development of [Tyvaso®]," but identifies no facts to support this conclusion.  (*See* D.I. 29 at 3.)  Dr. Roscigno, is listed as only one of seven inventors of the '793 patent, and UT has not identified any specific inventive contribution by Dr. Roscigno to this patent, let alone any contribution to a powder inhaled formulation of treprostinil.  (*See* D.I. 16-1, Ex. C, '793 patent at front cover.)

## IV.    ARGUMENT

### A.       Resolution of Assignor Estoppel is Premature and Inappropriate at this Stage

UT's motion to dismiss is a poorly disguised end run around this Court's requirement that "[n]o case dispositive motions [ ] be filed without leave of Court" and should be denied on that basis alone.  (D.I. 20, ¶ 11.)  Assignor estoppel and the related privity issue require the Court to engage in a fact-heavy balancing of equities that is inappropriate at this stage.  *See, e.g., Juniper Networks, Inc. v. Palo Alto Networks, Inc.*, 881 F. Supp. 2d 603, 608 (D. Del. 2012) (denying motion to strike because assignor estoppel is a "fact-sensitive inquiry that must be resolved outside the pleadings").  Federal Circuit cases cited by UT state that assignor estoppel is not a "broad equitable device susceptible of automatic application," confirming that UT's motion is premature

and should be denied. *See, e.g., Diamond Sci. Co. v. Ambico, Inc.*, 848 F.2d 1220, 1225-26 (Fed. Cir. 1988); *see also Hologic, Inc. v. Minerva Surgical, Inc.*, 957 F.3d 1256, 1268 (Fed. Cir. 2020) (addressing the issue of assignor estoppel at the summary judgment stage).

Applying this rationale, this district court and others have denied motions at the pleadings stage that require a finding of assignor estoppel. *See, e.g., Affymetrix, Inc. v. Illumina, Inc.*, No. 04-904 JJF, 2005 WL8170962, at *2 (D. Del. Sept. 16, 2005) (denying motions to dismiss and strike because "it is premature to resolve the issue of assignor estoppel through [plaintiff's] Motion under Rule 12(b)(6) or Rule 12(f)"); *Juniper*, 881 F. Supp. 2d at 608 (granting-in-part motion to strike affirmative defense of invalidity based on assignor estoppel because factual disputes existed regarding whether the inventor was a founder of the company and whether he was instrumental in developing the allegedly infringing products); *Dresser, LLC v. VRG Controls, LLC*, No. 18 C 1957, 2019 WL 3244503, at *7 (N.D. Ill. Jul. 16, 2019) (denying Rule 12(b)(6) motion to dismiss invalidity counterclaim, holding that "the Court cannot decide assignor estoppel at the pleading stage because the Federal Circuit requires courts to determine whether the infringer availed itself of the inventor's knowledge") (citations omitted); *Illumina, Inc. v. Ariosa Diagnostics, Inc.*, No. C 14-01921 SI, 2014 WL 3897076, at *5 (N.D. Cal. Aug. 7, 2014) (declining to dismiss invalidity counterclaim and defenses because "it is inappropriate to determine the issues of privity and assignor estoppel at this stage in the litigation").

Tellingly, UT does not cite a single case applying assignor estoppel on any early motion to dismiss, including 12(b)(1) or 12(b)(6). The *Juniper* case cited by UT involved a summary judgment motion filed ***after*** the Court had denied a motion to strike based on assignor estoppel as premature. *Juniper Networks, Inc. v. Palo Alto Networks, Inc.*, 15 F. Supp. 3d 499, 507 (D. Del. 2014) ("[T]he court found that issues of material fact precluded resolution of the issue, because

7

privity is determined based upon a balancing of the equities, a fact-sensitive inquiry that must be resolved outside the pleadings"); *see also Juniper*, 881 F. Supp. 2d at 608.  *Diamond Scientific* applied assignor estoppel based on a motion to strike; however, the Federal Circuit made clear that its findings were limited to the undisputed facts of that case, including the fact that the accused company did not contest its privity with the assignor.  *See* 848 F.2d at 1225-26.

Here, the extensive and disputed factual issues underlying the questions of privity and assignor estoppel prevent dismissal on the pleadings.  (*See infra* § IV.C.)  UT's urging that the Court take judicial notice of nearly 1,000 pages of documents beyond the pleadings reinforces that dismissal at this early stage is improper.  (*See* D.I. 29 at 8-9; D.I. 31-1.)  The Court should deny UT's request for judicial notice because UT's arguments are unsupported by the documents and, as discussed herein, rely on cherry-picked citations that lack the context required to appreciate their meaning.  *See Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) (stating that judicial notice "should be done sparingly at the pleadings stage" and "[o]nly in the clearest of cases should a district court reach outside the pleadings for facts necessary to resolve a case at [the pleadings stage]"); *see also Affymetrix*, 2005 WL 8170962, at *1, *3 n.1 (denying plaintiff's request for judicial notice of SEC and USPTO documents submitted to support a motion to dismiss based on assignor estoppel); *Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, No. 2:15-cv-3435, 2016 WL 7475816, at *5-6 (E.D. Pa. Dec. 29, 2016) (declining to take judicial notice when a party requested review of documents "selectively culled from ten separate cases" and agreeing that "it would be improper to consider the documents cherry-picked by Defendants without a more complete and accurate record").  Further, despite appending nearly 1,000 pages, UT cites no support for its assertions that "Dr. Roscigno was . . . instrumental in the development of a UT product, Tyvaso®" or that "Liquidia charged Dr. Roscigno with developing the accused product in this case."  (*See*

D.I. 29 at 3, 4.)

### B.     UT Fails to State a Basis for Dismissal of Liquidia's Affirmative Defense

While UT's motion purports to be a "Motion to Dismiss Defendant's Invalidity Counterclaims and Defenses" (D.I. 28), UT never expressly identifies which of Liquidia's affirmative defenses should be dismissed and instead vaguely points to Liquidia's "related defenses." (D.I. 29 at 1; *see also id.* at 2, 10, 13, 14.)  To challenge Liquidia's affirmative defense of invalidity of the '793 patent, UT should have filed a motion to "strike from a pleading an insufficient defense" under Rule 12(f).  *See, e.g., Cobra Capital LLC v. Stover Indus., Inc.*, No. 06 C 2822, 2007 WL 844635, at *1 n.1 (N.D. Ill. Mar. 14, 2007) ("Technically, affirmative defenses are subject to being stricken under Rule 12(f), not dismissed under Rule 12(b)(6)…").  In failing to do so, UT waived its right to bring a later motion to strike Liquidia's affirmative defenses, and the Court should rule accordingly.  *See* Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").  Regardless of the outcome of UT's motion, Liquidia's affirmative defenses concerning the '793 patent should stand.

### C.     Assignor Estoppel Does Not Apply

If the Court considers UT's 12(b)(6) motion on the merits, UT bears the burden of proving privity exists between Dr. Roscigno and Liquidia and the balance of equities favors application of assignor estoppel.  *See, e.g., Affymetrix*, 2005 WL8170962, at *2 ("The burden of demonstrating that the counterclaimant has failed to state a claim upon which relief may be granted rests on the movant.") (citation omitted).  And in evaluating UT's arguments, the Court must view the factual allegations in a light most favorable to Liquidia.  *See, e.g., id.* ("When considering a motion to dismiss, a court must accept as true all allegations in the counterclaim and must draw all reasonable

factual inferences in the light most favorable to the non-moving party.") (citations omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That UT is forced to cobble together an attack on Liquidia's pleading by asking that the Court consider nearly 1,000 pages of disparate documents only serves to highlight that Liquidia's counterclaim and defense are both plausible and substantial. Even if the Court chooses to consider documents outside the pleadings, the documents relied on by UT fail to demonstrate that privity exists between Dr. Roscigno and Liquidia such that assignor estoppel could be equitably applied. In fact, those documents establish that (1) Liquidia and Dr. Roscigno are not in privity and (2) the balance of the equities compels a finding of no assignor estoppel.

### 1.    Dr. Roscigno and Liquidia Are Not In Privity

UT fails to carry its burden to establish that Liquidia and Dr. Roscigno are in privity. As UT recognizes, the Federal Circuit identified eight factors that inform the determination of privity for assignor estoppel:

> (1) the assignor's leadership role at the new employer; (2) the assignor's ownership stake in the defendant company; (3) whether the defendant company changed course from manufacturing non-infringing goods to infringing activity[2] after the inventor was hired; (4) the assignor's role in the infringing activities; (5) whether the inventor was hired to start the infringing operations; (6) whether the decision to manufacture the infringing product was made partly by the inventor; (7) whether the defendant company began manufacturing the accused product shortly after hiring the assignor; and (8) whether the inventor was in charge of the infringing operation.

---

[2] Several of the *Shamrock* factors depend upon the existence of "infringing activit[ies]" or "infringing operation[s]." As an initial matter, no such infringing activity has occurred here, because Liquidia and Dr. Roscigno's activities with respect to the clinical trials for LIQ861 are "reasonably related to the development and submission of information" for FDA approval and thus are protected by the safe harbor under 35 U.S.C. § 271(e)(1). Also, the claims of the '793 patent are method of treatment claims, and UT has not proffered any evidence that either Liquidia or Dr. Roscigno has "encourage[d], recommend[ed], or promote[d] [direct] infringement" by physicians or patients. *See, e.g., Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015).

*Shamrock Techs., Inc. v. Med. Sterilization, Inc.*, 903 F.2d 789, 794 (Fed. Cir. 1990); (*see also* D.I. 29 at 7). UT's motion makes general and unsupported allegations regarding Dr. Roscigno's past work and position at Liquidia without drawing any clear connection to the *Shamrock* factors. Indeed, even under a generous interpretation of UT's briefing, UT fails to address the majority of the *Shamrock* factors, including at least factors (3) and (5)-(8). This failure is not surprising, as these factors are highly factual in nature and do not favor UT. At most, UT alleges that Liquidia is in privity with Dr. Roscigno given (1) his "pivotal role" in developing Liquidia's LIQ861 product intended to compete with Tyvaso®, (2) his "executive-level" position, and (3) his "substantial equity stake" in Liquidia. (*See* D.I. 29 at 10.) But these conclusory allegations and the documents UT relies on do not establish privity between Liquidia and Dr. Roscigno.

### a.   Liquidia did not avail itself of Dr. Roscigno's knowledge of Tyvaso®

UT alleges that Liquidia hired Dr. Roscigno because of his experience with Tyvaso®, but the evidence does not support that Liquidia "availed itself of [Dr. Roscigno's] 'knowledge and assistance' to conduct the [alleged] infringement." (*See* D.I. 29 at 3-4, 10-13.) *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 839 (Fed. Cir. 1991) (quoting *Shamrock*, 903 F.2d at 794).

UT identifies no evidence that Liquidia relied on Dr. Roscigno's knowledge relating to Tyvaso® to conduct the allegedly infringing activities relating to LIQ861. Instead, UT points to statements, taken out of context, from Liquidia's Prospectus that allegedly "tout Dr. Roscigno's previous experience with treprostinil while at UT" (*see* D.I. 29 at 10; *see also id.* at 11), but ignores that these statements are just part of a larger overview of Dr. Roscigno's professional experience, which extends to many other subject areas. (*See* D.I. 31-1 at 36, 160.) For example, after leaving the UT subsidiary Lung Rx in 2007, but before joining Liquidia in 2015, Dr. Roscigno spent over eight years in various roles, including "serv[ing] as the executive vice president, global clinical

affairs of GeNO, LLC, a pharmaceutical company in the field of inhaled nitric oxide drug products," "provid[ing] scientific consulting for various companies in the pharmaceutical industry," and "work[ing] as a subject matter expert in PAH." (*Id.* at 160.)  During his six years at GeNO, Dr. Roscigno "led the clinical development team," a role consistent with the role he was hired to fill at Liquidia.  (*See id.* at 36.)  UT completely ignores these intervening eight years.

The fact that Dr. Roscigno did not immediately join Liquidia after leaving UT/Lung Rx cannot be overlooked.  Notably, in cases relied upon by UT, the assignor left his employment and shortly thereafter joined the company to which assignor estoppel applied.  *See, e.g., Diamond Sci.*, 848 F.2d at 1222 ("In 1974 [assignor] left Diamond, where he had become a vice-president, and formed his own company, appellant Ambico, Inc."); *Shamrock*, 903 F.2d at 790 ("[assignor] left Shamrock in July 1983 and joined MSI as Vice President in charge of Operations"); *Juniper*, 15 F. Supp. 3d at 506 ("[assignor] left Juniper in February 2005 to start PAN [defendant]").  UT cites no case applying assignor estoppel where the assignor joins the allegedly infringing company a decade after leaving the plaintiff company.

But even considering Dr. Roscigno's prior experience with the ***liquid*** Tyvaso® solution, this would not establish that he had knowledge relevant to the development of the ***dry powder*** LIQ861 formulation.  UT's cited documents confirm that Tyvaso® and LIQ861 are fundamentally different products with distinct formulations, dosages, and delivery methods.  (D.I. 31-1 at 32, 123; *see also* D.I. 23, Counterclaims ¶¶ 1-4; *see also supra* § III.A.)  In fact, if Dr. Roscigno's participation in the development of Tyvaso® was truly relevant to dry powder formulations, UT would not have had to turn to a third party, MannKind Corporation, over a decade after Dr. Roscigno's departure, in attempt to develop a dry powder treprostinil product.  (*See* D.I. 31-1 at 47.)  UT, therefore, has not proven that Dr. Roscigno had any knowledge relevant to dry powder

treprostinil formulations from his time at UT over 15 years ago.  Indeed, Dr. Roscigno is only one of *seven* named inventors of the '793 patent, and UT has not identified any inventive contribution by Dr. Roscigno to the claims of the '793 patent.  (*See* D.I. 16-1, Ex. C, '793 patent at front cover.) Absent any facts regarding Dr. Roscigno's knowledge of Tyvaso® that would have been relevant to dry powder formulations, UT cannot show that Liquidia "availed itself" of such knowledge to develop LIQ861.

Perhaps related to *Shamrock* Factor (4), UT claims that Dr. Roscigno was "pivotal" in the development of LIQ861, but cites to no evidence out of the nearly 1,000 pages it seeks judicial notice of, establishing Dr. Roscigno's role in developing LIQ861.  In fact, discovery will show that others at Liquidia developed a dry powder treprostinil formulation ***before*** Dr. Roscigno arrived in September 2015, and that Dr. Roscigno was not hired to develop the LIQ861 formulation or delivery system, but instead assisted with clinical trials related to LIQ861.  (*See, e.g.,* D.I. 31-1 at 278 (noting that Dr. Roscigno presented the Phase 1 clinical trial results for LIQ861 at an international conference), 336-37 (quoting a statement by Dr. Roscigno regarding the Phase 3 clinical trial for LIQ861).)  Further, UT's allegation that Liquidia's development of LIQ861 relied on Dr. Roscigno's special knowledge gained during Tyvaso® development ignores the fact that U.S. Patent Nos. 6,521,212 and 6,756,033, issued in 2003 and 2004, respectively, specifically disclose dry powder formulations of treprostinil for the treatment of PAH.  (*See* D.I. 23, Counterclaims ¶ 40.)[3]

The facts here stand in stark contrast to those of the cases cited by UT, where the assignor was, for example, "hired specifically to develop the [products] that are accused of infringement,"

---

[3] In ruling on the instant motion to dismiss under Rule 12(b)(6), this Court must accept as true all factual allegations in Liquidia's counterclaim.  *See, e.g., Affymetrix*, 2005 WL8170962, at *2.

"needed [ ] to fill in the gaps to build the [allegedly infringing product]," or "provided knowledge and assistance in helping [defendant] to design and manufacture the [accused product]." *MAG Aerospace Indus., Inc. v. B/E Aerospace, Inc.*, 816 F.3d 1374, 1380 (Fed. Cir. 2016); *BASF Corp. v. Aristo, Inc.*, 872 F. Supp. 2d 758, 775-76 (N.D. Ind. 2012); *Leading Tech. Composites, Inc. v. MV2 LLC*, No. CCB-19-1256, 2020 WL 790601, at *4 (D. Md. Feb. 18, 2020); *see also HWB, Inc. v. Braner, Inc.*, 869 F. Supp. 579, 580-82 (N.D. Ill. 1994) (denying summary judgment based on assignor estoppel, "[T]he relevant question is whether the assignor/inventor plays such a significant part in his new employer's infringing operations that his new employer ***could not have initiated*** the infringing operations without the assistance of the assignor/inventor.") (emphasis added); *see also Fiber Sys. Int'l v. Applied Optical Sys., Inc.*, No. 2:06-CV-473, 2008 WL 4482410, at *2 (E.D. Tex. Sept. 29, 2008) (finding no assignor estoppel because it was not clear "whether [defendant] would necessarily require the knowledge and skill of the inventor to carry out the alleged infringement.").

### b.    Dr. Roscigno does not control Liquidia

Perhaps related to *Shamrock* Factor (1), UT notes that Dr. Roscigno's title at Liquidia was "Senior Vice President, Product Development."  (*See* D.I. 29 at 1, 4-6, 10.)  Dr. Roscigno's title, however, is not sufficient to establish assignor estoppel as the Court needs to look at the level of control Dr. Roscigno had at Liquidia.  *See Acushnet Co. v. Dunlop Maxfli Sports Corp.*, No. 98-717-SLR, 2000 WL 987979, at *3 (D. Del. June 29, 2000) (finding no assignor estoppel when the assignor was a "Vice President of Research and Development" at the defendant corporation because, *inter alia*, "he holds no sway over defendant's finances or strategic decisions").  As observed by this Court:

> [T]he Federal Circuit [has] found privity to exist where the assignor either ***controlled the corporation in question*** or had a significant financial stake in the

> corporation's success.  Extending privity in such situations makes sense because it
> furthers the policy goal of assignor estoppel.  That is, it prevents an assignor from
> perpetrating in a ***corporate guise*** the very injustice the doctrine precludes him or
> her from accomplishing in a personal capacity."

*Id.* (emphases added).  Here, Liquidia is not a "corporate guise" for Dr. Roscigno.  The documents relied upon by UT demonstrate that Dr. Roscigno was not a "named executive" or on the Board of Directors at Liquidia.  (*See, e.g.,* D.I. 31-1 at 165-66, 168-69, 189, 486, 488, 510.)  And UT has failed to present any evidence that Dr. Roscigno had any "sway" over Liquidia's finances or strategic decisions.  Indeed, Dr. Roscigno has resigned from Liquidia, evidencing that he is not using Liquidia as a corporate guise to attack the validity of the '793 patent because he cannot in his personal capacity.  *Acushnet*, 2000 WL 987979, at *3.

The facts here fall far short of those in the cases cited by UT, where the assignor was a founder or C-level executive of the defendant company.  *See, e.g., Diamond Sci.*, 848 F.2d at 1222 (assignor was founder of defendant company); *Juniper*, 15 F. Supp. 3d at 508 (assignors were founders of defendant company); *Intel*, 946 F.2d at 838 (assignor was CEO and major shareholder of defendant company); *Hologic*, 957 F.3d at 1262 (assignor was founder, President, and CEO of defendant company).[4]  UT does not contend that Dr. Roscigno founded Liquidia, that he was ever a C-level executive, or that he otherwise exercised any control over Liquidia as a corporation.  For these reasons, UT has not established that Dr. Roscigno's position within Liquidia is sufficient to demonstrate privity exists.

---

[4] UT identifies two cases finding assignor estoppel when the assignor was a consultant or contractor with the defendant company, but these cases are distinguishable and are not controlling precedent.  (*See* D.I. 29 at 7-8.)  As UT recognizes, the assignor in *BASF Corp.* "played a significant role in the [accused product's] design and operations" and in *Leading Tech.*, it was "undisputed that [defendant] availed itself of [assignor's] knowledge and assistance to develop the accused [product]."  *BASF*, 872 F. Supp. 2d at 776; *Leading Tech.*, 2020 WL 790601, at *4.  Here, conversely, Dr. Roscigno played no role in developing the LIQ861 formulation, nor did Liquidia avail itself of his knowledge to do so.  (*See supra* § IV.C.1.a.)

### c.       Dr. Roscigno's equity stake in Liquidia is negligible

In an attempt to provide facts sufficient to satisfy *Shamrock* Factor (2), UT's motion makes much of Dr. Roscigno's stock ownership in Liquidia, characterizing it as "significant."  (D.I. 29 at 4, 5, 11.)  Such allegations have little meaning as the Court cannot conclude Dr. Roscigno's stock ownership in Liquidia was "significant" without context or a comparator—information that, as noted below, UT could have presented in its brief but chose not to.  Moreover, as discovery progresses, it will establish that Dr. Roscigno had a negligible equity stake in Liquidia while he was employed, and this stake is decreasing.

Even working with UT's allegations and cited documents, Dr. Roscigno's Liquidia stock holdings are insufficient to establish he is in privity with Liquidia.  UT identifies six different awards of stock grants to Dr. Roscigno as of 2019, but does not consider how many options Dr. Roscigno exercised or put these options in the context of the total number of Liquidia shares outstanding as of UT's July 22, 2020, assertion of the '793 patent.  Even taking UT's numbers as true, Dr. Roscigno's equity ownership in Liquidia amounts to 174,531 shares.  (*See* D.I. 29 at 5.)  UT's own cited documents show, however, that as of March 20, 2019, there were at least 18 million outstanding shares of Liquidia stock.  (D.I. 31-1 at 39 (listing 18,519,469 outstanding shares).)  Accordingly, Dr. Roscigno would hold ***less than a 1%*** ownership stake in Liquidia as of this date.  This ownership stake is negligible, especially compared to the ownership stakes held by assignors in cases applying assignor estoppel, including cases cited by UT.  *See, e.g., Intel*, 946 F.2d at 838 (noting that the assignor "owned approximately 40% of [defendant's] stock and was the corporation's largest single shareholder"); *Juniper*, 15 F. Supp. 3d at 508 (noting that the assignor received and exercised an option to purchase 654,520 shares); *see also Stubnitz–Greene Spring Corp. v. Fort Pitt Bedding Co.*, 110 F.2d 192, 195 (6th Cir. 1940) (finding privity between assignor and company of which he was principal stockholder, president, and general manager).  Further, by

submitting the March 20, 2019 Prospectus rather than a more recent document evidencing the outstanding shares of Liquidia stock at either the time of filing the application leading to the '793 patent in January 2020, or the date the patent issued in July 2020, UT artificially inflates Dr. Roscigno's percent stock ownership.  Discovery will reveal that Dr. Roscigno's percent ownership will be diluted even further by October 2020.

Additionally, a document cited by UT identifies nine "Named Executive Officers and Directors" as "principal stockholders"— Dr. Roscigno is not one of them.  (D.I. 31-1 at 189.)  Only one of these individuals—the CEO, Neal Fowler—is listed as having an ownership interest of over 1.0%.  (*Id.*)  These documents indicate that Dr. Roscigno's ownership interest is no higher than that of any of the nine individuals listed.  Therefore, as in *Acushnet*, "the record as it stands reveals no real advantage that would accrue to [Dr. Roscigno] from defendant's assertion of an invalidity defense."  2000 WL 987979, at *3.

### d.    UT made no effort to address the majority of the *Shamrock* factors

Liberally interpreting UT's motion, it, at most, addresses *Shamrock* Factors (1), (2), and (4), remaining silent on the five additional factors the Court should consider in determining whether privity between Dr. Roscigno and Liquidia exists.  *See Shamrock*, 903 F.2d at 794.  (*See also supra* § IV.C.1.)  To the extent the Court addresses UT's motion on the merits, UT's failure to present any evidence related to *Shamrock* Factors (3) whether the defendant company changed course from manufacturing non-infringing goods to infringing activity after the inventor was hired; (5) whether the inventor was hired to start the infringing operations; (6) whether the decision to manufacture the infringing product was made partly by the inventor; (7) whether the defendant company began manufacturing the accused product shortly after hiring the assignor; and (8) whether the inventor was in charge of the infringing operation, is indicative that it cannot meet its

burden of establishing privity now, or in the future.  For this additional reason, UT's motion should be denied.

### 2.   The Balance of the Equities Compels a Finding of No Assignor Estoppel

Not only has UT failed to establish privity exists between Dr. Roscigno and Liquidia, UT did not address the balance of equities such that even if privity existed, assignor estoppel should be applied.  *See Diamond Sci.*, 848 F.2d at 1224-26 (noting that assignor estoppel is "an equitable doctrine" that is not "susceptible of automatic application"); *Shamrock*, 903 F.2d at 793 ("Assignor estoppel is an equitable doctrine that is mainly concerned with the balance of the equities between the parties.") (quotation omitted).  Invoking assignor estoppel here would not advance the policy goals underlying the doctrine, which was designed to "prevent[] the unfairness and injustice of permitting a party to sell something and later to assert that what was sold is worthless."  *Acushnet*, 2000 WL 987979, at *2 (quotation omitted).  As this Court explained in *Acushnet*:

> Moreover, extending the doctrine of assignor estoppel to defendant would punish it for hiring Calabria and using his talents to compete with plaintiff.  Assignor estoppel was not designed to prevent companies from competing for talented employees; rather, it was intended to prevent the assignor (whether acting individually or through another entity) from 'making [a] representation [of the patent's validity] at the time of assignment (to his advantage) and later . . . repudiating it (again to his advantage).'

*Id.*, at *3 (citation omitted).  Here, Dr. Roscigno does not stand to gain any advantage by Liquidia's decision to challenge the validity of the '793 patent, because he is no longer employed by Liquidia, holds a negligible and shrinking ownership share in the company, and his prior work with Tyvaso® is not directly applicable to LIQ861.  (*See infra* § IV.C.1; *see also id.* at §III.A.)

Equity also disfavors application of assignor estoppel in this case given the significant gaps in time associated with the '793 patent issuance and Dr. Roscigno's prior employment at UT.  For instance, the original patent application that Dr. Roscigno and his co-inventors assigned to UT was

filed on May 15, 2006, over 14 years ago, and is overwhelmingly directed to liquid formulations of treprostinil, and contains a single sentence mentioning dry powder formulations in the specification.  (*See* D.I. 16-1, Ex. C, '793 patent at front cover; Col. 7:22-26.)  Further discovery will show that, for over a decade, UT only obtained patent claims directed to nebulized liquid formulations of treprostinil, only to abruptly change course when Liquidia filed its NDA for the dry powder LIQ861 formulation.  (*See supra* § III.B.)  Indeed, UT filed the claims that later issued as the '793 patent ***one week*** after Liquidia filed its NDA for LIQ861.  (*See* D.I. 26 at 1; *see also* D.I. 16-1, Ex. C, '793 patent at front cover; *see also id.* at Col. 18:40-41.)  It would be fundamentally unfair to now estop Liquidia from challenging the validity of the '793 patent claims under these circumstances.  This is especially true given UT's need to collaborate with a third party many years later in attempt to develop a dry powder formulation of treprostinil.  (*See supra* § IV.C.1.a.)

Additionally, there is a ten-year gap between when Dr. Roscigno left UT and was employed by Liquidia and an eight-year gap between his work with Tyvaso® and his Liquidia employment.  (*See supra* §§ III.C-D.)  And during this intervening period, Dr. Roscigno continued to develop expertise in the treatment of PAH, the indication Liquidia seeks for its LIQ861 product.  (*Id.*)  UT has cited no case where assignor estoppel was applied when such a significant gap in time existed between the assignor's original work and his subsequent employment.  The balance of the equities therefore dictates assignor estoppel should not apply.

### D.    UT Fails to State a Basis for Dismissal Under 12(b)(1)

UT's argument for dismissal under Rule 12(b)(1) is merely a final bid to circumvent its burden and limitations under Rule 12(b)(6) and invite the Court to engage in an unpermitted summary judgment exercise on an undeveloped factual record.  (*See* D.I. 29 at 13-14.)  Indeed, the "Supreme Court has authorized courts to dismiss under Rule 12(b)(1) for lack of jurisdiction due

to merits-related defects in only a narrow categories of cases . . . where such a claim is wholly insubstantial or frivolous." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). The Court in *Davis* also stated that "dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id*. (quoting *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 899 (3d Cir. 1987)). No such circumstance exists here as there is no dispute that this Court has subject matter jurisdiction to consider Liquidia's defenses and counterclaims associated with the '793 patent. And importantly, UT does not cite a single case where an alleged infringer's defenses or counterclaims of invalidity were dismissed under 12(b)(1) due to assignor estoppel. The *Lamson* case is inapposite because it involved a Federal Claims decision expressly holding that "an alleged patent infringement by the United States government cannot give rise to a Fifth Amendment claim under the Tucker Act"—facts completely distinct from UT's theory here. *Lamson v. U.S.*, 101 Fed. Cl. 280, 284 (Fed. Cl. 2011). Finally, UT's Rule 12(b)(1) arguments do no more than rely on the same insufficient and unsupported allegations as its 12(b)(6) motion. Thus, contrary to UT's assertion at page 14 of its motion, Liquidia ***can and has*** "reasonably contest[ed] that Dr. Roscigno is in privity with Liquidia." For these same reasons, UT's Rule 12(b)(1) motion should be denied.

## V.    CONCLUSION

For the foregoing reasons, Liquidia respectfully requests that the Court deny UT's motion.

                                        */s/ Nathan R. Hoeschen*
                                        Karen E. Keller (No. 4489)
OF COUNSEL:                             Jeff Castellano (No. 4837)
Sanya Sukduang                          Nathan R. Hoeschen (No. 6232)
Jonathan Davies                         SHAW KELLER LLP
COOLEY LLP                              I.M. Pei Building
1299 Pennsylvania Avenue, NW, Suite 700 1105 North Market Street, 12th Floor
Washington, DC 20004-2400               Wilmington, DE 19801
(202) 842-7800                          (302) 298-0700
                                        kkeller@shawkeller.com
Erik Milch                              jcastellano@shawkeller.com
COOLEY LLP                              nhoeschen@shawkeller.com
11951 Freedom Drive, 14th Floor         *Attorneys for Defendant Liquidia*
Reston, VA 20190-5640                   *Technologies, Inc*
(703) 546-8000

Ivor Elrifi
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Lauren Krickl
Deepa Kannappan
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Dated: September 9, 2020