IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 20-755-RGA-JLH |
| LIQUIDIA TECHNOLOGIES, INC., | ) ) | ███████ **PUBLIC -** |
| Defendant. | ) ) | **REDACTED VERSION** |

## <u>LETTER TO THE HONORABLE JUDGE HALL FROM NATHAN R. HOESCHEN</u>

OF COUNSEL:
Sanya Sukduang
Jonathan Davies
Douglas W. Cheek
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202) 842-7800

Erik Milch
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5640
(703) 546-8000

Ivor Elrifi
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Lauren Krickl
Deepa Kannappan
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Dated: May 28, 2021

Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*



Nathan R. Hoeschen
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
(302) 298-0709 – Direct
nhoeschen@shawkeller.com

May 28, 2021

**BY CM/ECF & HAND DELIVERY**
The Honorable Jennifer L. Hall
United States District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801



PUBLIC -
REDACTED
VERSION

Re:     *United Therapeutics Corporation v. Liquidia Technologies, Inc.,*
        C.A. No. 20-755-RGA

Dear Judge Hall:

Liquidia respectfully seeks this Court's assistance regarding United Therapeutics Corporation ("UTC")'s refusal to search for, collect, or produce documents and things relating to its development of a dry powder inhalation formulation of treprostinil, including its co-development work with MannKind Corporation ("MannKind"), in response to Liquidia's Requests for Production ("Requests") Nos. 10, 13, 45, 65.  The dispute falls under three more specific categories:  (1) documents and things relating to experimental work for the dry powder formulation developed by or for UTC (Requests 10 and 13); (2) a sample of the UTC-MannKind powder formulation (Request 45); and (3) documents and things sufficient to show UTC's plans to market a powder formulation (Request 65).  The parties exchanged numerous correspondence and conducted several meet-and-confers, the latest on May 18, 2021, but no resolution was reached.

**Requests 10 and 13** seek documents and things "relating to any experimental work conducted by or for Plaintiff relating to the development of a powder inhalation formulation of treprostinil," and "wherein the powder particle size is less than 5 micrometers in diameter," respectively.  (Ex. 1 at pp. 8-9.)  UTC responded that it "will not produce documents responsive to th[ese] Request[s]," asserting that documents and information relating to the development of a powder inhalation formulation of treprostinil "are not relevant or reasonably calculated to lead to the discovery of any information related to the claim or defense of any party in this action."  (Ex. 2 at pp. 18, 21-22.)  Over the course of several conferences and written exchanges,[1] UTC continues to refuse to produce these relevant documents.  (Ex. 7 at Jan. 4, 2021 Dykhuis Email; *id.* at Feb. 23, 2021 Dykhuis Email.)

**Request 45** seeks "[o]ne gram of treprostinil salt powder made in accordance with the '793 patent."  (Ex. 1 at p. 16.)  UTC stated that it "will not produce any recent, irrelevant powder samples involving MannKind that may or may not exist," and "does not intend to investigate, collect, or produce any powder samples developed with MannKind."  (Ex. 7 at Jan. 4, 2021 Dykhuis Email; *id.* at Feb. 23, 2021 Dykhuis Email.)  Importantly, UTC has not expressly stated

---

[1]  Ex. 3, Sept. 23, 2020 Krickl Letter; Ex. 4, Sept. 30, 2020 Mack Letter; Ex. 5, Oct. 8, 2020 Krickl Letter; Ex. 6, Oct. 16, 2020 Mack Letter.

SHAW KELLER LLP
Page 2

that such samples are outside its control, nor that if requested, MannKind would refuse to provide such samples.  (*See id.* at Jan. 20, 2021 Krickl Email.)

**Request 65** initially sought "[d]ocuments and things sufficient to show Plaintiff's product lifecycle management plans for TYVASO®, including but not limited to Plaintiff's plans (if any) to market any pulmonary hypertension treatment that might affect Plaintiff's sales of TYVASO®, including but not limited to REMODULIN®, ORENITRAM®, and an inhaled powder formulation of treprostinil."  (Ex. 1 at p. 20.)  UTC responded that it "will not produce documents responsive to this Request."  (Ex. 2 at p. 77.)  Subsequently, Liquidia narrowed Request 65 to "[d]ocuments and things sufficient to show Plaintiff's plans (if any) to market an inhaled powder formulation of treprostinil."  (Ex. 7 at Dec. 8, 2020 Krickl Email.)  Nonetheless, UTC continued to object to production of documents and things responsive to Request 65, asserting that the requested information relates to "future plans."  (Ex. 7 at Jan. 4, 2021 Dykhuis Email; *see also id.* at Feb. 23, 2021 Dykhuis Email; *see also id.* at April 21, 2021 Burrowbridge Email.)

The requested documents and things relating to treprostinil powder formulation developed by or for UTC are relevant to the claims and defenses in this litigation.  UTC's First Amended Complaint asserts infringement of U.S. Patent No. 10,716,793 ("the '793 patent") (*see* D.I. 16 at ¶¶ 69-83), and ██████████████████████████████████████████████████ Asserted claims 4, 6, and 7 expressly recite methods of treating pulmonary hypertension where the inhalation device is a "dry powder inhaler" or where the formulation is a "powder":

> **4.** The method of claim **1**, wherein the inhalation device is a dry powder inhaler.
>
> **6.** The method of claim **4**, wherein the formulation is a powder.
>
> **7.** The method of claim **6**, wherein the powder comprises particles less than 5 micrometers in diameter.

These requested documents and sample are relevant to Liquidia's defenses of patent invalidity for lack of enablement and/or inadequate written description under 35 U.S.C. § 112.  More specifically, the '793 patent has an earliest priority date of May 15, 2006, and purports to cover dry powder formulations of treprostinil administered by dry powder inhalers.  Other than a single statement ('793 patent, 7:22-26), the '793 patent discloses no dry powder formulation, no specific dry powder inhaler, and no clinical data demonstrating the use of a dry powder formulation of treprostinil to treat pulmonary hypertension.  Indeed, it was not until September 2018 that UTC and MannKind announced their collaboration to develop and commercialize "a dry powder formulation of treprostinil . . . for the treatment of pulmonary arterial hypertension."[2]  And on April 19, 2021, UTC announced the submission if its New Drug Application ("NDA") to the FDA

---

[2] "United Therapeutics and MannKind Announce Collaboration for Pulmonary Hypertension Products," UNITED THERAPEUTICS CORPORATION (Sept. 4, 2018), *available at* https://s1.q4cdn.com/284080987/files/doc_news/2018/09/1/United-Therapeutics-And-MannKind-Announce-Collaboration-For-Pulmonary-Hyper-20180904-0600.pdf.

SHAW KELLER LLP

Page 3

directed to the dry powder formulation developed by MannKind.[3]  UTC's efforts to develop a dry powder formulation of treprostinil with MannKind are thus relevant to whether the inventors of the '793 patent were in possession of the now-claimed subject matter.  Further, the requested discovery is relevant to enablement, even if UTC/Mannkind's efforts post-date the filing date of the '793 patent.  *E.g., Plant Genetic Sys. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1344 (Fed. Cir. 2003) (affirming lack of enablement when "[r]eport of a success after [priority date] indicates failure or difficulty in or before [priority date]").  In sum, UTC's recent efforts to develop an inhaled powered formulation of treprostinil with a third party, as opposed to already being in possession of such a formulation based on the '793 patent, are relevant to the issues of both written description and enablement.

Requests 10, 13, 45, and 65 are also relevant to UTC's argument that Liquidia cannot challenge the validity of the '793 patent due to assignor estoppel.  In its motion to dismiss Liquidia's counterclaim regarding invalidity of the '793 patent, UTC asserted that Dr. Robert Roscigno (a named inventor of the '793 patent and a former employee of Liquidia) acquired knowledge relevant to treprostinil powder formulations during his time at UTC.  (*See, e.g.,* D.I. 38 at 9 (noting "Dr. Roscigno's experience with UT's patented ['793 patent] inhaled dry powder treprostinil formulation"); *see also id.* at 6 (asserting that "Dr. Roscigno provided 'knowledge and assistance' regarding patented subject matter (dry powder treprostinil) after being hired by Liquidia").)  Based on this alleged experience and Dr. Roscigno's prior employment with Liquidia, UTC asserted that Liquidia is estopped from challenging validity of the '793 patent.  Liquidia seeks discovery into UTC's attempts to develop an inhaled powder formulation of treprostinil.  Such evidence is likely to lead to the discovery of relevant and admissible evidence that Dr. Roscigno had no knowledge of, experience with, or inventive contribution to any dry powder formulation of treprostinil or its use prior to the filing of the '793 patent.  If Dr. Roscigno and the other inventors of the '793 patent had developed a treprostinil dry powder formulation, UTC would not have had to turn to a third party, MannKind, over a decade after Dr. Roscigno's departure, to develop such a product.  (*See* D.I. 37 at 12.)  The requested discovery is directly relevant to UTC's assignor estoppel defense.

UTC has not identified any reason why collection and production of the requested documents and things would be unduly burdensome or not proportional to the needs of the case.  UTC, despite being asked by Liquidia, has also not asserted that such discovery is outside its possession, custody, or control.  UTC's wholesale refusal to produce—let alone conduct a reasonable search for—the requested discovery is therefore unjustified.

Liquidia respectfully requests that the Court order UTC to produce the requested discovery concerning treprostinil powder formulations developed by or for UTC in response to Requests 10, 13, 45, and 65.  We appreciate your consideration in this matter.

---

[3] "United Therapeutics Announces Submission of Tyvaso DPI™ New Drug Application to FDA," UNITED THERAPEUTICS CORPORATION (Apr. 19, 2021), *available at* https://s1.q4cdn.com/284080987/files/doc_news/2021/04/2021-04-19-DPI-submission-PR-FINAL-formatted.pdf.

SHAW KELLER LLP

Page 4

Respectfully submitted,

*/s/ Nathan R. Hoeschen*

Nathan R. Hoeschen (No. 6232)

cc: Clerk of the Court (by hand delivery)
   All counsel of record (by e-mail)

# EXHIBIT 1

REDACTED IN ITS ENTIRETY

# EXHIBIT 2

REDACTED IN ITS ENTIRETY

# EXHIBIT 3



By email

Lauren Krickl
T: +1 650 843 5065
lkrickl@cooley.com

September 23, 2020

Jack B. Blumenfeld
Michael J. Flynn
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

Douglas H. Carsten
Joshua Mack
Wilson Sonsini Goodrich & Rosati
12235 El Camino Real
San Diego, CA 92130

Adam W. Burrowbridge
Wilson Sonsini Goodrich & Rosati
1700 K Street NW, Fifth Floor
Washington, DC 20006

William C. Jackson
Boies Schiller Flexner LLP
1401 New York Avenue NW
Washington, DC 20005

**Re:**   *United Therapeutics Corporation v. Liquidia Technologies, Inc.*, C.A. No. 20-755:  UT's RFP Responses

Counsel:

We write concerning United Therapeutic Corporation's ("UT's") September 3, 2020 objections and responses to Liquidia Technologies, Inc.'s ("Liquidia's") First Set of Requests for Production ("RFPs").  We appreciate UT's willingness to confer on a number of Liqudia's requests, but UT's refusal to provide the requested documents and/or samples for the RFPs noted below significantly prejudices Liquidia and its ability to assess UT's assertions regarding infringement and validity.

UT's refusal to produce documents responsive to RFP Nos. 10 and 13 is unfounded.  Both requests pertain to "experimental work conducted by or for Plaintiff relating to . . . a powder inhalation formulation of treprostinil."  UT inexplicably states that "documents and information 'relating to . . . a powder inhalation formulation of treprostinil'" are "not relevant" to this case, despite the facts that UT accuses Liquidia's LIQ861 **powder** product of infringement and asserts patent claims directed to **powder** formulations.  In fact, UT's Reply in support of its Motion to Dismiss specifically calls out the relevance of powder formulations claimed in U.S. Patent No. 10,716,793 ("the '793 patent").  (*See* D.I. 38 at 6 (referring to the "patented subject matter (dry powder treprosintil)"); *see also id.* at 9-10 (stating that the '793 patent "discloses an inhaled dry powder treprostinil formulation")).)  Please confirm that UT will collect and produce documents responsive to RFP Nos. 10 and 13.  Alternately, please clarify whether UT no longer asserts the claims of the '793 patent directed to powder formulations of treprostinil.

Regarding RFP No. 12, UT refuses to produce responsive documents relating to administration of treprostinil with "a soft mist inhaler, pulsed ultrasonic nebulizer, or pressurized metered dose inhaler."  This request is relevant to claims 3-5 of the '793 patent, which were asserted in UT's First Amended Complaint.  Please confirm that UT is no longer asserting these claims.  If UT is asserting these claims against Liquidia, then the documents requested by RFP No. 12 are relevant and the requested documents should be produced.



September 23, 2020
Page 2

UT states that it will not produce a sample responsive to RFP No. 43, which requests "[o]ne gram of treprostinil salt made according to the process identified as the 'Former Process' in Example 6 of [U.S. Patent Nos. 9,595,066 ("the '066 patent") and 9,604,901 ("the '901 patent")]."  However, this request is highly relevant to the issues in this case, and UT provides no explanation for its refusal to produce. During prosecution of the '066 and '901 patents, the applicant distinguished the treprostinil product made from the "Former Process" to overcome the examiner's prior art rejections.  ('066 File History, 08/24/2016 Amendment and Request for Reconsideration at pp. 4-6 (noting that "[t]he differences [in impurity profiles between the current commercial process and the former process based on Moriarty 2004] are not merely academic, but critical to the successful manufacture of a clinical product"); '901 File History, 08/11/2016 Amendment and Request for Reconsideration at pp. 4-5 (same).)  The sample requested in RFP No. 43 is therefore relevant to assessing the validity of the product-by-process claims recited in '066 and '901 patents and the veracity of UT's arguments to the U.S. Patent & Trademark Office ("USPTO").  Please confirm that UT will produce the sample requested in RFP No. 43.

Relatedly, in response to RFP No. 48 regarding a sample prepared according to the Moriarty process, UT states that it will produce "one gram of treprostinil salt used to manufacture TYVASO® inhalation solution." But RFP No. 48 specifically requests a sample of treprostinil made according to the former process based on Moriarty, not a sample of treprostinil made according to the current manufacturing process.  As noted, the applicant distinguished the claims of the '066 and '901 patents from the Moriarty process during prosecution.  The sample requested in RFP No. 48 is therefore relevant to evaluating the validity of the '066 and '901 patents and the veracity of UT's arguments to the USPTO.  Please confirm that UT will produce a sample of treprostinil made by the Moriarty process as requested in RFP No. 48.

UT's response to RFP No. 45 is likewise confounding—UT states that it will produce "one gram of treprostinil salt used to manufacture TYVASO® inhalation **solution**" in response to the request for "one gram of treprostinil salt **powder** made in accordance with the '793 patent."  Please confirm whether UT will produce a sample responsive to RFP No. 45, as the asserted claims of the '793 patent are directed to methods of treatment administering a **powder** formulation.  If UT is unwilling to provide such a sample, please explain the basis for such refusal.

Additionally, UT's bases for refusing to produce documents responsive to RFP Nos. 19-20, 23, 35, 53, 59-60, 62-63, 65, 71, and 79 are unjustified.  For example, UT states that it will not produce documents responsive to RFP No. 19 because this request allegedly "seeks documents and information that are publicly available."  But the mere fact that information may be publicly available does not alleviate UT's requirement to produce relevant documents.  Nor does the fact that the requested documents may "contain proprietary business information, trade secrets, or other confidential information" (*see, e.g.,* RFP No. 20) excuse UT's obligation to produce relevant documents, as a Protective Order has been entered in this case.  (*See* D.I. 33.)  Production is warranted because these requests are relevant to Liquidia's defenses, including non-infringement, patent invalidity, and the state of the art.

Regarding RFP No. 23, UT refuses to produce documents and things concerning "UTC's decision regarding whether or not to disclose the PTAB's Final Written Decision concerning [U.S. Patent No. 8,497,393] in association with the '901 and '066 patents," asserting that this request is "based on a false premise."  An alleged "false premise" does not provide a basis to withhold relevant documents.  Further, UT cannot unilaterally decide whether a premise is "false," particularly without explanation.  Please confirm that UT will produce documents responsive to RFP No. 23.

RFP No. 35 pertains to "scientific advisory board meetings or other meetings with key opinion leaders ('KOLs') held between 1996 and 2009" regarding treprostinil products.  UT does not explain why this information would be unduly burdensome to collect and produce, and it is relevant to the patent invalidity and the state of the art.  Please confirm that UT will produce documents responsive to RFP No. 35.



September 23, 2020
Page 3

RFP No. 53 requests "[a]ll documents concerning any steps Plaintiff has taken to enforce the Patents-in-Suit or Related Patents and Applications, either in the United States or abroad."  RFP No. 65 requests documents "sufficient to show Plaintiff's product lifecycle management plans for TYVASO®."  In response to both requests, UT refuses to produce responsive documents because the requests allegedly seek "documents protected against disclosure by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity."  However, UT has not established that *every* document responsive to these requests would be privileged or otherwise protected from disclosure.  In particular, documents relating to UT's plans to develop and market new formulations of treprostinil, new routes of delivering treprostinil, and other treatments for pulmonary hypertension (as covered by RFP No. 65) are not necessarily privileged, and in fact are likely non-privileged.  Please confirm that UT will produce non-privileged documents responsive to these requests.

RFP No. 59 requests "[a]ll documents concerning Plaintiff's patent licensing policies, practices, procedures, or programs."  RFP No. 60 requests documents relating to "any license, offer to license, license negotiations, or a prospective license of any of the Patents-in-Suit or Related Patents and Applications."  This information is relevant to validity, settlement, and UT's valuation of the Patents-in-Suit.  UT has not articulated its specific basis for refusing to produce these documents.  Please confirm that UT will produce documents responsive to these requests.

Moreover, in response to RFP Nos. 7, 73, and 76-77, UT states that it "will not produce documents unrelated to the Patents-in-Suit in this litigation."  But these requests seek information regarding the Patents-in-Suit and "Related Patents and Applications," which includes patents and applications related to the Patents-in-Suit or claiming priority to the Patents-in-Suit.  Please confirm that UT will collect and produce the requested information concerning the Related Patents and Applications, including U.S. Patent Nos. 8,497,393; 9,339,507; 9,358,240; and 10,376,525—each of which is listed in the Orange Book as covering TYVASO®—as well as U.S. Patent Nos. 8,242,305 (to which the '066 and '901 patents claim priority) and 9,156,786 (to which the '066 patent claims priority).  And under RFP No. 77, UT agrees to produce documents concerning communications with the USPTO, but should also produce the requested communications with foreign patent offices, because this is also relevant to claim construction, patent invalidity, and non-infringement.

We believe that the above-described issues are ripe for a meet-and-confer, along with the RFPs for which UT indicated it is willing to meet and confer (Nos. 14-18, 21-22, 46, and 74).  Please provide your availability to discuss by September 29, 2020.


Sincerely,

Lauren Krickl

# EXHIBIT 4

# WILSON SONSINI

Wilson Sonsini Goodrich & Rosati
Professional Corporation

12235 El Camino Real
San Diego, California 92130-3002

O: 858.350.2300
F: 858.350.2399

JOSHUA MACK
Email: jmack@wsgr.com
Direct dial: 858.350.2224

September 30, 2020

**VIA ELECTRONIC MAIL**

Lauren Krickl
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Email: lkrickl@cooley.com

>       Re:   *United Therapeutics Corp. v. Liquidia Technologies, Inc.*,
>             C.A. No. 20-755

Dear Ms. Krickl:

We write in response to your letter of September 23, 2020, regarding UT's objections and responses ("Responses") to Liquidia's First Set of Requests for Production ("Requests"). As outlined more fully below, none of UT's responses are deficient. Nevertheless, UT's offer to meet and confer remains open so that—if Liquidia provides additional information necessary to clarify and justify the relevance its requests, to the extent possible—the parties can productively discuss any potential remaining issues. Without prejudice to any of the objections identified in its objections and responses, UT addresses below each of the Requests identified in your letter.

**Requests 10 and 13.** UT's objections to Requests 10 and 13 are proper. Request 10 seeks "All documents and things relating to any experimental work ... relating to the development of a powder inhalation formulation of treprostinil." Request 13 seeks similar documents relating to treprostinil powders having a diameter of less than 5 micrometers.[1] Among other objections, UT noted that neither Request 10 nor 13 sought relevant subject matter, explaining that "the development of a powder inhalation formulation of treprostinil" is not relevant or reasonably calculated to lead to the discovery of any information related to a claim or defense in this case. The Requests cannot relate to the '066 and '901 patents[2] because

---

[1] Request 13 appears cumulative to Request 10. If Liquidia intends to pursue Request 13, please identify what is allegedly not redundant and what, if any, unique documents Liquidia seeks. Absent that information, UT will consider all issues relating to Request 13 resolved.

[2] The asserted patents are U.S. Patent Nos. 9,593,066 ("the '066 patent"), 9,605,901 ("the '901 patent"), and 10,716,793 ("the '793 patent").

**WILSON
SONSINI**

Lauren Krickl
September 30, 2020
Page 2

those patents relate to methods of making treprostinil generally and are not limited to treprostinil powders.  Indeed, Liquidia has not even tried to explain how the subject matter of Requests 10 or 13 relate to those patents.

Instead, Liquidia's letter only identifies the '793 patent as a purported basis of relevance. And even then, the letter still fails, as it does not mention any claims or defenses at issue. Liquidia did not identify how the experimental documents allegedly relate to infringement.  Nor could it, as infringement issues will involve the patent's claims and analysis of Liquidia's product, *not* experimental work performed by UT.  Likewise, Liquidia did not identify how the requested documents relate to Liquidia's claims of invalidity, which involve a comparison of the patent's claims and public prior art.  Liquidia's failure to identify a basis for relevance in response to UT's objections is particularly problematic when Liquidia bears that burden.  *See, e.g.*, *Delaware Display Grp. LLC v. Lenovo Grp. Ltd.*, No. 13-2108-RGA, 2016 U.S. Dist. LEXIS 21461, at *6 (D. Del. Feb. 23, 2016) ("Generally, a party moving to compel discovery bears the burden of demonstrating the relevance of the requested information.") (citing *Inventio AG v. ThyssenKrupp Elevator Am. Corp.*, 662 F. Supp. 2d 375, 381 (D. Del. 2009)).

In addition to Liquidia's failure to establish relevance, Liquidia is barred from asserting that the '793 patent is invalid under the doctrine of assignor estoppel, thus eliminating invalidity as a potential basis for relevance and providing yet another reason the documents are not discoverable.[3]  *See generally* D.I. 29 (UT's Motion to Dismiss).

**Request No. 12.**  UT's objections to Request 12 are also proper.  Like Requests 10 and 13, Request 12 seeks all documents relating to experimental work, with the further requirement that the experimental work relate to "administration of an inhalation formulation of treprostinil with a soft mist inhaler, pulsed ultrasonic nebulizer, or pressurized metered dose inhaler." Again, Liquidia has failed to sufficiently explain a basis for relevance.  Liquidia's letter only identifies the '793 patent, claims 3-5, but does not name any claims or defenses to which the requested documents allegedly relate.  The documents certainly have no clear relationship to invalidity or infringement, which will involve analysis of prior art and Liquidia's product, not UT's experimental work.  Moreover, UT's infringement contentions are not due until October 16. *See* D.I. 20, ¶3(g)(ii).  Until Liquidia is able to review those contentions and the disclosure of asserted claims, it is premature to rely on particular claims to allege relevance, as it is possible that not all claims will be asserted.  Indeed, Liquidia implicitly recognized this, stating only that "*If* UT is asserting these claims against Liquidia, *then* the documents … are relevant."  Krickl Letter at 1 (emphasis added).  Additionally, the requested documents cannot be justified by alleged relevance to invalidity because those defenses to the '793 patent are barred by assignor estoppel.

**Request 43.**  UT's objections to Request 43 are also proper.  Request 43 seeks a sample "made according to" a process described in the '066 and '901 patent specifications.  As an initial

---

[3] Even if Liquidia believes that assignor estoppel does not apply, it would be premature to produce documents whose sole relevance would be mooted by a ruling in UT's favor.

**WILSON
SONSINI**

Lauren Krickl
September 30, 2020
Page 3

matter, the Request is problematic because it is not clear what "made according to" means in this context, where Liquidia is citing a patent specification, not patent claims. In addition, Liquidia's letter again fails to establish the relevance of the requested sample or to address UT's other objections. For example, it is not clear how the sample would allow Liquidia to "assess[] the validity of the product-by-process claims" in the '066 and '901 patents. Krickl Letter at 2.

Moreover, the specification of the '066 and '901 patents was written around twelve years ago and the "Former Process" disclosed therein necessarily predates the patent applications. UT cannot produce samples that do not exist or cannot be located with reasonable diligence due to the passage of time. *See, e.g., Orexo AB v. Actavis Elizabeth LLC*, No. 14-829-SLR/SRF, 2015 U.S. Dist. LEXIS 156913, at *3-4 (D. Del. Nov. 20, 2015) (finding no error in a ruling accepting "defendant's representations that it has no intermediate samples of its ANDA product for production and, therefore, could not be compelled to produce something not in its possession, custody or control"); *Harris v. Advance Am. Cash Advance Ctrs., Inc.*, 288 F.R.D. 170, 172 (S.D. Ohio 2012) ("Defendant is not required to create documents in response to plaintiff's requests for discovery."); Richard L. Marcus et al., 8B Fed. Practice & Proc. § 2210 (3d ed. 2020) ("A document or thing is not within the possession, custody, or control of a party if it does not exist. Production cannot be required of a document no longer in existence nor of one yet to be prepared.").

Lastly, Liquidia's request is not "proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1) (discovery must be both relevant and proportional). Liquidia propounded *four* separate Requests regarding impurity profiles. *See* Requests 3-6. Request 43 is thus not proportional to the needs of the case at least because it is cumulative, not relevant, not important to resolving the issues, and the burden of the discovery is outweighed by its likely benefit (none). *Cf. Von Schwab v. AAA Fire & Cas. Ins. Co.*, No. 1:14-cv-00183-CMA-NYW, 2015 WL 1840123, at *2 (D. Colo. Apr. 21, 2015) (discovery directed at irrelevant matters "imposes a *per se* undue burden").

**Request 48.** UT's objections to Request 48 are also proper. Similar to Request 43, Request 48 seeks a sample of treprostinil salt made according to the process described in a 2004 article by Moriarty et al. This Request suffers the same flaws as Request 43, exacerbated by the fact that Request 48 seeks a sample of a process described in 2004—about 16 years ago. Due to the flaws in this Request, UT cooperatively offered to produce a sample of Tyvaso® (treprostinil) Inhalation Solution. To the extent Liquidia is not content with that sample, UT refers Liquidia to the objections and explanation above with respect to Request 43.

**Request 45.** UT's objections to Request 45 are also proper. Like Requests 43 and 48, Request 45 again seeks a sample of treprostinil salt. In response, UT agreed to produce a gram of treprostinil salt used to manufacture Tyvaso® (treprostinil) Inhalation Solution. Despite this, Liquidia's letter states that UT's responses are allegedly "confounding" and demands a treprostinil salt "powder" (Krickl Letter at 2) without precisely defining that term and ignoring the fact that UT is currently marketing treprostinil extended-release tablets (Orenitram®), an injection (Remodulin®), and an inhalation solution (Tyvaso®), not an inhaled powder product.

**WILSON
SONSINI**

Lauren Krickl
September 30, 2020
Page 4

Further, unlike Requests 43 and 48, Liquidia has not offered *any* explanation of relevance for the sample sought by this Request, and this silence speaks volumes. UT has no obligations to produce documents, information or material that lacks relevance to the claims and defenses in the litigation. In addition, like the previous requests, this Request is problematic because it is not clear what "made according to" means in this context, where Liquidia is citing an entire patent, not patent claims. This problem is compounded by the fact that the '793 patent is generally directed to the administration of treprostinil, as opposed to, for example, methods of synthesis. Finally, this Request is not proportional to the needs of the case at least because it is not relevant and there is no benefit that could outweigh the burden of any production beyond what UT has already offered.

**Request 19.** UT's objections to Request 19 are proper. Request 19 seeks claim construction briefing from prior litigation, but the discovery is neither appropriate nor proportional to the needs of this case. Liquidia has again failed to identify any alleged relevance. Even if Liquidia contends that UT's previous claim construction positions in other cases were relevant, Liquidia has not explained why any other parties' positions would be relevant to this case. Moreover, proportionality considers, among other factors, "the parties' relative access to relevant information." Fed. R. Civ. P. 26(b)(1). Liquidia cannot establish that the requested discovery is proportional to the needs of the case when it has access to the allegedly relevant information simply by using PACER. There is no reason for UT to produce materials that are equally accessible to Liquidia. *See, e.g., Zimmer Surgical, Inc. v. Stryker Corp.*, No. 16-679-RGA-MPT, *slip op.* at 3 (D. Del. May 8, 2018) ("Stryker's motion to compel production of publicly-available prosecution files is denied and neither party is required to further search for and produce information from publicly-available prosecution files because the files are publicly available and the requesting party may obtain such files on its own from the respective patent office(s)."). As in *Zimmer*, Liquidia may obtain any briefing it desires from the relevant court.

**Request 20.** UT's objections to Request 20 are also proper. Request 20 purports to demand every single one of a host of unidentified expert reports from nine (9) litigations—or maybe more. *See* Request 20 ("including but not limited to"). Liquidia has not explained the relevance of *any* of the requested expert reports, let alone "All" of them, as requested. Liquidia has also not explained why UT should produce any experts reports that were publicly filed. *See id.* (seeking "expert reports served *or filed*") (emphasis added). Moreover, UT intends to comply with the protective orders in the other cases identified by Liquidia. To the extent Liquidia still contends that production is appropriate, please identify (in addition to alleged relevance on a case-by-case, expert-by-expert, and report-by-report basis) the language in the protective orders from each case that you contend allows production of a third party's confidential information.

**Request 23.** UT's objections to Request 23 are proper. Request 23 seeks documents relating to an alleged "decision" to disclose, or not, the PTAB's Final Written Decision ("FWD") regarding the '393 patent[4] in connection with prosecution of the '066 and '901 patents. The '066 patent issued on March 14, 2017. The '901 patent issued on March 28, 2017. The PTAB's

---

[4] The '393 patent is U.S. Patent No. 8,497,393.

**WILSON
SONSINI**

Lauren Krickl
September 30, 2020
Page 5

FWD did not issue until March 31, 2017, three days later. UT cannot make a "decision" regarding whether to disclose something when prosecution is closed and the patents in question have already issued. Liquidia's false premise justifies UT's objections and inability to produce documents.

 **Request 35.** UT's objections to Request 35 are also proper. Request 35 seeks "[a]ll" documents "concerning" certain meetings that may have occurred between 1996 and 2009, a thirteen-year window. The latest date in the requested range is 2009, 11 years ago, and the earliest date is 24 years ago. This Request is thus facially improper, as it seeks an overly broad set of documents for an overly broad date range that ended over a decade ago. Liquidia, moreover, has not shown "good cause" for seeking the requested materials, which are not discoverable pursuant to the Court's Orders. *See* D.I. 20 at 3(g)(i) ("Unless otherwise agreed to by the parties or as set forth herein, the parties agree to follow the Court's Default Standard."); Delaware Default Standard at 4(e) ("Absent a showing of good cause, follow-up discovery shall be limited to a term of 6 years before the filing of the complaint, except that discovery related to asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited."). All of the requested documents fall outside the permitted range for discovery.

 The Request is also not proportional to the needs of the case, as Liquidia has again failed to offer any meaningful explanation for relevance, stating in conclusory fashion only that it would be relevant to patent invalidity and the state of the art. Without more, merely stating that the information is relevant to invalidity does not justify production of the documents under the Federal Rules, and there is no reason to produce the vast set of materials requested by Liquidia—to the extent they exist—to illustrate the "state of the art," which can much more easily be proven by reliance on public materials, such as articles, textbooks, treatises, and the like (as is typical). *See* Fed. R. Civ. P. 26(b)(1) (proportionality).

 **Requests 53 and 65.** UT's objections to Requests 53 and 65 are proper. Request 53 seeks documents relating steps UT "has taken to enforce the Patents-in-Suit or related patents and applications in the United States or abroad." Request 65 seeks documents regarding "product lifecycle management plans for TYVASO®." There are several problems with both Requests. As Liquidia's letter noted, UT objected to Requests 53 and 65 because they seek "documents protected against disclosure by the attorney-client privilege, the work-product doctrine, the common interest privilege, or any other applicable privilege or immunity." Krickl Letter at 3. UT maintains these objections on the basis of privilege. To the extent Liquidia contends that some documents within the scope of these requests are not protected, please explain what those documents might be (excluding those that are publicly available and thus need not be produced, such as litigation filings). Without additional information regarding what non-privileged materials Liquidia seeks, UT cannot further evaluate Liquidia's request.

 In addition, Request 53 is not relevant or proportional. Liquidia has failed to identify any alleged relevance for the enforcement materials sought by Request 53. Documents relating to the enforcement steps UT may have taken outside the United States appear especially unrelated to the claims at issue in this case. The lack of any relevance stands in contrast to the

**WILSON
SONSINI**

Lauren Krickl
September 30, 2020
Page 6

high burden demanded by Request 53 as written, which broadly seeks "*[a]ll* documents concerning *any* steps Plaintiff has taken to enforce the Patents-in-Suit *or Related Patents and Applications*, either in the United States *or abroad*. (emphasis added). As a result, the full scope of Request 53 is simply not proportional to the needs of the case.

Likewise, Request 65 also seeks materials that are not proportional to the needs of the case and, again, the lack of proportionality is compounded by Liquidia's failure to offer any alleged relevance for Request 65. The Request does not appear directed to either infringement (involving technical information regarding Liquidia's proposed product) or invalidity (involving the prior art), but rather is directed to UT's future plans. If Liquidia maintains this Request, please identify the alleged relevance of the documents sought.

**Requests 59 and 60.** UT's objections to Requests 59 and 60 are also proper. Request 59 seeks patent licensing practices and policies, and Request 60 seeks documents regarding licenses or offers to license. Liquidia's letter asserts that "[t]his information is relevant to validity, settlement, and UT's valuation of the Patents-in-Suit" (Krickl Letter at 3), but this assertion is unsupported and incorrect. Liquidia has not explained, for example, how patent licensing policies are relevant to validity; "settlement" is not a claim or defense of a party in this case; and Liquidia has not connected UT's valuation of the asserted patents to any claim or defense, let alone UT's valuation of "Related ... Applications."

Regarding Request 59, UT also objected on the basis of privilege. To the extent Liquidia maintains Request 59, please identify what non-privileged documents Liquidia believes may exist and their alleged relevance so that we may consider your position.

Regarding Request 60, even if any materials were relevant, the requested materials are not proportional to the needs of the case. Liquidia has broadly requested "[a]ll" documents and things "relating" to any license, or offer to license, or license negotiations, or prospective licenses. But paired with this breadth is the fact that the licensing materials would have little to no importance in resolving the key issues in this case. As a result, the likely benefit (little to nothing) of discovery of these documents cannot outweigh the burden and expense of collecting and producing such a broad set of materials.

**Requests 7, 73, and 76-77.** UT's objections to Requests 7, 73, and 76-77 are proper as well. Liquidia asserts that "these requests seek information regarding the Patents-in-Suit and 'Related Patents and Applications.'" Krickl Letter at 3, But Request 73 seeks documents relating to objective indicia "for any claim of the Patents-in-Suit" only and does not mentioned Related Patents or Applications. UT therefore considers this issue moot as to Request 73.

Request 7 seeks documents concerning "investigations or analyses regarding the Patents-in-Suit or Related Patents and Applications." Request 76 seeks documents created, reviewed, or relied upon during prosecution. And Request 77 seeks documents "concerning" communications with the USPTO *or* any foreign patent office. For each, there is no reason, and Liquidia has not articulated any reason, why documents relating to Related Patents and Applications are allegedly relevant. The Related Patents and Applications are not asserted in

**WILSON SONSINI**

Lauren Krickl
September 30, 2020
Page 7

this case and do not relate to any claim or defense of a party. Further, there are three asserted patents but many more Related Patents and Applications. The further the requested materials stray from the asserted patents, the less relevance and probative value they could possibly have, and thus their importance decreases as well. At the same time, the burden to collect these materials is a multiple of the burden for only the asserted patents. As a result, the full scope of these Requests is not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

Regarding Request 77, Liquidia is free to obtain any publicly available correspondence with foreign patent offices that it desires, but UT is not obligated to produce those materials. *See* Request 19, *supra*. UT also disagrees that the materials are relevant. Not all patent office correspondence relates to claim construction, and Liquidia has not explained how UT's correspondence with foreign patent offices—necessarily about foreign patents or applications— has any relation to non-infringement in this case, which involves different patents and Liquidia's product.

\* \* \*

As described above, UT disagrees that any of its objections and responses are improper. UT fully intends to provide *relevant*, responsive, non-privileged documents, but discovery is not unrestricted. *See Delaware Display*, 2016 U.S. Dist. LEXIS 21461 at \*6 ("a party's right to discovery is not without limits.") (citing *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999)). As a result, while UT plans on fulsome productions to Liquidia, it does not intend to withdraw its objections.

To the extent the above explanation does not obviate Liquidia's concerns, in order to enable a meaningful meet and confer we ask that Liquidia write to clarify the scope and relevance of its Requests before any conference of the parties.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Joshua Mack

cc:    All counsel of record

# EXHIBIT 5



Lauren Krickl                                                                    By email
T: +1 650 843 5065
lkrickl@cooley.com


October 8, 2020

Jack B. Blumenfeld                          Adam W. Burrowbridge
Michael J. Flynn                            Wilson Sonsini Goodrich & Rosati
Morris, Nichols, Arsht & Tunnell LLP        1700 K Street NW, Fifth Floor
1201 North Market Street                    Washington, DC 20006
P.O. Box 1347
Wilmington, DE 19899                        William C. Jackson
                                            Boies Schiller Flexner LLP
Douglas H. Carsten                          1401 New York Avenue NW
Joshua Mack                                 Washington, DC 20005
Wilson Sonsini Goodrich & Rosati
12235 El Camino Real
San Diego, CA 92130


**Re:**   *United Therapeutics Corporation v. Liquidia Technologies, Inc.*, C.A. No. 20-755:  UT's RFP
          Responses

Counsel:

We write in response to your letter dated September 30, 2020, regarding UT's objections and responses to
Liquidia's First Set of Requests for Production ("Requests").  As noted in our initial letter dated September
23, 2020 ("Sept. 23 Letter"), we believe the issues outlined below are ripe for a meet-and-confer.  Please
provide your availability to discuss by October 13, 2020.

**Requests 10 and 13.**  As explained in our Sept. 23 Letter, Requests 10 and 13[1] are directly relevant to
UT's allegation that Liquidia infringes U.S. Patent No. 10,716,793 ("the '793 patent"), which expressly
claims methods of treatment administering **powder** formulations.   (*E.g.,* '793 patent, claims 6-7.)
Importantly, and as you are no doubt aware, UT's pending motion to dismiss has no impact on UT's
obligations to collect, review, and produce responsive documents.   *See, e.g., Standard Chlorine of
Delaware, Inc v. Sinibaldi,* 821 F. Supp. 232, 261 (D. Del. 1992) ("Defendants' argument that they are
entitled to a protective order staying discovery as to them during the pendency of their motion to dismiss is
without merit.") (citing *Willemijn Houdstermaatschappij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429,
1441 (D. Del. 1989) ("unless and until it is granted a stay, defendant should be required to conduct discovery
as if no motion had been filed at all.")); *see also Bristol-Myers Squibb Co. et al. v. Mylan Pharms. Inc. et
al.*, Civ. No. 09-651-LPS, 2011 WL 13371929, at *7 n.5 (D. Del. Jul. 18, 2011) ("A party cannot unilaterally
absolve itself of its obligation to participate in discovery") (citing *Standard Chlorine*, 821 F. Supp. at 261
and *Willemijn*, 707 F. Supp. at 1441).  As such, UT's pending motion cannot shield UT from providing the
requested discovery.

---

[1] Request 13 is not cumulative of Request 10.  Request 13 seeks unique documents relating to experimental
work on particle size, and is directly relevant to claim 7 of the '793 patent.  UT's response suggests that
there is no meaningful difference between claim 6 (reciting "wherein the formulation is a powder") and claim
7 (reciting "wherein the powder comprises particles less than 5 micrometers in diameter") of the '793 patent.



October 8, 2020
Page Two

Requests 10 and 13 are also relevant to U.S. Patent Nos. 9,593,066 ("the '066 patent) and 9,604,901 ("the '901 patent"), because UT alleges that Liquidia's LIQ861 **powder** product (or an intermediate in its manufacture) "is covered by" not only the '793 patent, but also the '066 and '901 patents.  (*See* D.I. 16 at ¶¶ 36, 53, 70; *see also id.* at ¶ 6 (describing "Liquidia's Proposed Generic Product" as "deliver[ing] treprostinil through a dry powder inhaler ('DPI')").)  The requested documents are thus relevant to UT's infringement claims relating to the '066 and '901 patents.

Finally, as UT knows, validity is not limited to "a comparison of the patent's claims and public prior art." (Mack Letter at 2.)  Here, the requested documents relating to "experimental work" are relevant to numerous claims and defenses at issue, including conception, reduction to practice, and Liquidia's § 112 defenses. Requests 10 and 13 are also relevant to obviousness, because UT may have relied on prior art processes to develop the alleged invention, as well as non-infringement, because Liquidia cannot infringe if it is practicing those prior art methods.  Further, the requested experimental work relating to powder formulations is relevant to UT's contention in its pending motion to dismiss that Dr. Robert Roscigno acquired knowledge relevant to powder formulations during his time at UT.  (*See, e.g.,* D.I. 38 at 6 (asserting that "Dr. Roscigno provided 'knowledge and assistance' regarding patented subject matter (dry powder treprostinil) after being hired by Liquidia"); *see also id.* at 9 (noting "Dr. Roscigno's experience with UT's patented inhaled dry powder treprostinil formulation").)  Accordingly, Requests 10 and 13 are highly relevant to multiple issues in this case, and responsive documents should be produced.

**Request 12.**  Similar to Requests 10 and 13, Request 12 seeks documents relevant to conception, reduction to practice, undue experimentation, obviousness (*e.g.*, whether UT relied on prior art processes), and infringement.  The fact that UT's infringement contentions are not due until October 16 is of no moment, because UT's First Amended Complaint broadly alleges infringement of "one or more claims of the '066 patent, the '901 patent, and the '793 patent."  (*See, e.g.,* D.I. 16, ¶ 19.)  The lack of specificity in UT's pleadings regarding which claims are asserted should not interfere with Liquidia's ability to obtain relevant discovery.  Also, as noted above, UT's pending motion to dismiss does not absolve UT's discovery obligations.  Please confirm that UT will produce documents responsive to Request 12.

**Request 43.**  UT complains that the phrase "made according to" is not clear (Mack Letter at 2-3), but UT used this exact language to describe its former process for making treprostinil during prosecution of the '066 and '901 patents.  ('066 File History, 07/19/2016 Notice of Related Proceedings at Declaration of Robert M. Williams at ¶ 94 n.1 (referring to "treprostinil prepared **according to** the '393 process" versus "batches of treprostinil **made according to** the prior art process [Moriarty]") (emphasis added); *see also id.* at ¶ 92 ("Indeed, Dr. Winkler's conclusion is contradicted by the impurity data actually measured for the treprostinil product **made** by both the '393 patent process and the prior art process **according to** Moriarty") (emphasis added); '901 File History, 07/19/2016 Notice of Related Proceedings at Declaration of Robert M. Williams at ¶¶ 94 n.1 (same), 92 (same).)  As such, UT's objection is without merit.

The requested sample made according to the former process would indeed allow Liquidia to assess the validity of the product-by-process claims, because the '066 patent and the '901 patent both recite specific limitations relating to the claimed product's impurity profile.  ('066 patent, claim 1 (". . . "whereby a level of one or more impurities found in the starting batch of treprostinil is lower in the pharmaceutical composition . . ."); '901 patent, claim 1 ("A pharmaceutical batch consisting of treprostinil or a salt thereof and impurities resulting from [various process steps]."); )  As explained in our Sept. 23 Letter, UT relied on distinctions between treprostinil made according to the claimed process and treprostinil made according to the former process to overcome rejections during prosecution.  Therefore, the requested sample will help determine whether the product made according to the former process is in fact different from the claimed product—the very basis for patentability asserted during prosecution.



October 8, 2020
Page Three

UT further claims that it "cannot produce samples that do not exist or cannot be located with reasonable diligence due to the passage of time." (Mack Letter at 3.) But the mere passage of time does not alleviate UT's obligation to search for and produce responsive samples, and certainly does not establish that the samples do not exist. UT had possession of samples made according to the former process just four years ago, in July 2016, as evidenced by the declarations analyzing the samples submitted during prosecution of the '066 and '901 patents. (*See* '066 File History, 08/24/2016 Amendment and Request for Reconsideration at p. 4 ("Because the assignee [UT] used both processes, the assignee had the opportunity to analyze the resulting pharmaceutical products as reflected in certificates of analysis. In the IPR, Dr. Williams and Dr. Ruffolo used these certificates of analysis to explain that a pharmaceutical batch produced according to a salt formation process as covered by claim 1 is different from the product produced by the process described in Moriarty 2004."); *see also* '901 File History, 08/11/2016 Amendment and Request for Reconsideration at p. 4 (same).) UT thus should still have at least documentation relating to the samples analyzed in 2016. Please confirm that UT has conducted a reasonable search to determine whether the requested sample exists, and if so, confirm UT will produce the requested sample.

Moreover, Request 43 is not cumulative of Requests 3-6; Request 43 seeks a sample, while Requests 3-6 seek various "documents and things" relating to impurity profiles. Each request seeks different discovery relevant to validity of the '066 and '901 patent claims that UT put at issue during prosecution.

**Request 48.** The sample "prepared according to the process disclosed in [Moriarty]" is relevant for the same reasons explained above for Request 43. The fact that this process was described in a 2004 publication (Moriarty) does not mean that UT stopped using this process in 2004. In fact, UT confirmed during prosecution that it had used the Moriarty 2004 process to make commercial batches of treprostinil prior to the alleged invention of the '066 and '901 patents. ('066 File History, 08/24/2016 Amendment and Request for Reconsideration at p. 4 ("Prior to the current commercial process, the assignee used a process based on Moriarty 2004"); '901 File History, 08/11/2016 Amendment and Request for Reconsideration at p. 4 (same).) Accordingly, confirm UT will produce the sample requested in Request 48.

**Request 45.** UT's refusal to produce "[o]ne gram of treprostinil salt powder made in accordance with the '793 patent" remains baseless. The requested powder sample is directly relevant, as explained at length in the Sept. 23 Letter and above, to at least claims 6 and 7 of the '793 patent, which require that the formulation is a powder (claim 6) and a powder comprising particles less than 5 micrometers in diameter (claim 7). The sample is also relevant because UT alleges that Liquidia's powder product infringes all three Patents-in-Suit. (*See* D.I. 16 at ¶¶ 36, 53, 70.) If UT stands by its position that the term "powder" is unclear (Mack Letter at 3), then UT should dismiss its claims alleging infringement of the '793 patent, as the asserted claims are invalid under §112. If UT has never made a "powder" treprostinil formulation as claimed in the '793 patent, then UT should so state. Otherwise, please confirm that UT will produce the requested sample.

**Request 19.** The identified prior litigations involved patents sharing the same specification, covering similar subject matter, and/or using some of the same claim terms as one or more of the Patents-in-Suit. Thus, both UT's constructions and UT's responses to third party constructions in these prior litigations are highly relevant. *See, e.g., Pfizer Inc., et al. v. Mylan Inc., et al.*, No. 15-26-SLR, 2016 WL 2641470, at *3 (D. Del. May 5, 2016) (relying on claim construction brief from prior litigation); *Personalized Media Comm'ns, LLC v. TCL Corp., et al.*, No. 2:17-CV-433-JRG, 2018 WL 3207436, at *9 (E.D. Tex. Jun. 29, 2018) (same). The fact that some claim construction briefings may be publicly available does not relieve UT of its duty to respond to this Request, or at least identify where those public documents may be found. *See, e.g., Blue Spike, LLC v. Vizio, Inc.*, 8:17-cv-01172-DOC-KESx, 2018 WL 8646477, at *4 (C.D. Cal. Aug. 31, 2018) (order plaintiff to provide "a listing of online Pacer dockets, accompanied by specific docket cites, indicating where those public [claim construction] documents may be found").



October 8, 2020
Page Four

**Request 20.**  Similar to claim construction briefings, expert reports served and filed in prior litigation involving related patents are relevant to the validity of the Patents-in-Suit.  *See, e.g., Infernal Technology, LLC v. Microsoft Corp.*, No. 2:18-CV-00144-JRG, 2019 WL 5388442, at *1 (E.D. Tex. May 3, 2019) (granting motion to compel expert report from prior litigation).  At minimum, UT should produce expert reports assessing the validity of patents related to the Patents-in-Suit, such as U.S. Patent Nos. 8,497,393 ("the '393 patent"), which shares the same specification as the '066 and '901 patents, as well as 9,339,507 and 9,358,240, which share the same specification as the '793 patent.

**Request 23.**  The plain language of 37 CFR § 1.56 does not specify when an applicant/patentee's duty of disclosure, candor, and good faith to the Patent Office terminates.  (*See* Manual of Patent Examining Procedure ("MPEP") at § 2001 (citing 37 CFR 1.56).)  But regardless of any affirmative duty to disclose the Patent Trial and Appeal Board's Final Written Decision invalidating the '393 patent, the requested information is relevant due to the similarities between the '393 patent and the Patents-in-Suit.

**Request 35.**  The requested documents concerning meetings regarding treprostinil products are relevant to "prior art" and "the conception and reduction to practice of the inventions claimed in [the Patents-in-Suit]"—which are express exceptions to the 6-year discovery cut-off date cited by UT.  (*See* Mack Letter at 5.)  Collectively, the Patents-in-Suit claim an earliest priority date of December 17, 2006—nearly 14 years ago—and thus UT should produce the requested documents dating back at least to 2006, and in fact earlier to capture documents relevant to conception and reduction to practice.  If UT prefers to agree that each Patent-in-Suit is accorded only its filing date, and not an earlier priority date, we would consider narrowing this Request.

**Requests 53 and 65.**  Contrary to UT's assertion, Liquidia's Sept. 23 Letter provided examples of non-privileged materials it seeks in connection with Request 65—"documents relating to UT's plans to develop and market new formulations of treprostinil, new routes of delivering treprostinil, and other treatments for pulmonary hypertension."  (Sept. 23 Letter at 3.)  Such documents are relevant to damages, and UT's First Amended Complaint seeks "[a] judgment awarding UTC damages or other monetary relief."  (D.I. 16 at p. 18.)  Regarding Request 53, the requested documents relating to steps taken by UT to enforce the Patents-in-Suit or related patents and applications outside the U.S. are likewise relevant to issues such as damages and claim construction.  *See, e.g., GE Healthcare Bio-Scis. AB v. Bio-Rad Labs., Inc.*, No. 1:14-CV-07080-LTS-SN, 2015 WL 7582967, at *2 (S.D.N.Y. Nov. 25, 2015) ("the profits that Bio-Rad allegedly obtained from the sales to foreign customers would be relevant to the determination of a reasonable royalty"); *see also Starhome GmbH v. AT & T Mobility LLC*, 743 F.3d 849, 858 (Fed. Cir. 2014) (noting that statements made before foreign patent offices can be relevant to claim interpretation).

**Requests 59 and 60.**  The requested documents relating to UT's patent licensing policies and practices (Request 59) and any license of the Patents-in-Suit (Request 60) are directly relevant to UT's claim for damages in this case.  (D.I. 16 at p. 18.)  *See, e.g., Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp 1116, 1120 (S.D.N.Y. 1970) (stating that "[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit" is relevant to "the determination of the amount of a reasonable royalty for a patent license").

**Requests 7, 73, 76-77.**  The Requests seeking information regarding patents and applications related to the Patents-in-Suit are relevant to numerous issues in this case, including claim construction, prosecution history estoppel, obviousness, and non-infringement.  Additionally, correspondence with foreign patent offices are relevant to—or may run counter to—arguments UT may present in this litigation.  Again, the public availability of such documents does not remove UT's obligation to conduct a reasonable search and to produce responsive documents.



October 8, 2020
Page Five

Liquidia reiterates its request for UT counsel to provide its availability to meet and confer regarding the above-described issues by October 13, 2020.

Sincerely,

Lauren Krickl

# EXHIBIT 6

# WILSON SONSINI

Wilson Sonsini Goodrich & Rosati
Professional Corporation

12235 El Camino Real
San Diego, California 92130-3002

O: 858.350.2300
F: 858.350.2399

JOSHUA MACK
Email: jmack@wsgr.com
Direct dial: 858.350.2224

October 16, 2020

**VIA ELECTRONIC MAIL**

Lauren Krickl
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Email: lkrickl@cooley.com

> Re:   *United Therapeutics Corp. v. Liquidia Technologies, Inc.,*
>        **C.A. No. 20-755**

Dear Ms. Krickl:

We write in response to your letter of October 8, 2020 regarding UT's objections and responses ("Responses") to Liquidia's First Set of Requests for Production ("Requests"). Yet again, Liquidia's latest letter still fails to establish relevance or otherwise address UT's objections.

**Requests 10 and 13.**  Requests 10 and 13 relate to experimental work performed by UT.  Like its first letter, Liquidia's second letter fails to explain a valid basis for the alleged relevance of these requests.

As an initial matter, UT understands this dispute to center on Request 10 only, as your letter does not adequately explain what, if any, subject matter is sought by Request 13 that is not already sought by Request 10.  Request 10 seeks "[a]ll documents and things" concerning experimental work relating to powder inhalation forms of treprostinil and Request 13 appears to seek the same information, "wherein the powder particle size is less than 5 micrometers in diameter."  But Request 10 does not appear to carve out or otherwise exclude any responsive documents based on particle size.  Thus, despite Liquidia's unexplained assertion that Request 13 seeks "unique" documents, Request 13 appears included within and therefore redundant to Request 10.[1]  To the extent Liquidia intended Request 10 as limited to powders having particle

---

[1] UT disagrees with Liquidia's assertion that this position "suggests that there is no meaningful difference between claims 6 ... and claim 7 ... of the '793 patent."  Oct. 8, 2020 Letter at 1, n.1.

**WILSON**
**SONSINI**

Lauren Krickl
October 16, 2020
Page 2

size greater than or equal to 5 micrometers in diameter so as to distinguish it from Request 13, please confirm that intended scope for Request 10.

Putting the redundant nature of Requests 10 and 13 aside, Liquidia's other arguments fail to demonstrate any relevance to the requested materials. For example, the requested documents are not relevant to infringement of the asserted patents[2] just because Liquidia says so. Even though *Liquidia's* proposed product infringes all three patents, that does not mean that *UT's* experimental work is relevant. Indeed, the discovery relevant to UT's infringement claims is information about Liquidia's proposed product, not development of UT's products. If Liquidia maintains that Requests 10 and 13 have any alleged relevance to UT's infringement claims, please identify how Liquidia could possibly use UT's powder experimental development documents to try to disprove infringement of any elements of the asserted claims.

Other alleged bases for relevance in Liquidia's letter include "numerous claims and defenses at issue, including conception, reduction to practice, and Liquidia's § 112 defenses," and "obviousness." But Liquidia's second letter fails to explain how UT's confidential development documents would be relevant to the issue of obviousness, which generally involves public prior art. The other alleged issues are likewise unavailing for Liquidia. While UT reserves the right to establish an earlier date for conception and reduction to practice—which themselves are not "claims" or "defenses"—Liquidia has not yet served its invalidity contentions or otherwise fully explained any alleged basis for invalidity involving alleged prior art that could make an earlier conception and reduction to practice relevant to any claims of invalidity. The other issue listed in Liquidia's second letter, § 112 defenses, does not provide a basis for alleged relevance because Liquidia's defense will depend on the asserted claims and specifications of the asserted patents, not UT's development efforts.

Liquidia's also letter asserts relevance to a contention in UT's pending motion to dismiss. But Requests 10 and 13 are far broader than Dr. Roscigno's involvement in development work at UT. And in any event this contention is not relevant to assignor estoppel, which is concerned with Dr. Roscigno's role at Liquidia, not his role at UT. *E.g.*, *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 839 (Fed. Cir. 1991).

Indeed, Liquidia is estopped from alleging any invalidity positions with respect to the '793 patent, and so none of these documents are related to a claim or defense in this action. It is undisputed that Liquidia used Dr. Roscigno's "knowledge and assistance" to develop Liquidia's infringing product, and UT expects the Court to dismiss Liquidia's invalidity defense, therefore mooting Liquidia's requests. While this is an independent reason that the requested discovery is objectionable, it is not the only reason as explained above. Furthermore, the case law cited by Liquidia were decided before the 2015 amendments to Rule 26 regarding proportionality. *See* Fed. R. Civ. P. 26(b)(1); *see also id.*, Committee Notes on Rules—2015 Amendment. Even if there were a kernel of relevance somewhere within Requests 10 and 13, production at this time is not

---

[2] The asserted patents are U.S. Patent Nos. 9,593,066 ("the '066 patent"), 9,605,901 ("the '901 patent"), and 10,716,793 ("the '793 patent").

WILSON
SONSINI

Lauren Krickl
October 16, 2020
Page 3

proportional to the needs of the case.  We continue to believe that not only is production
premature at this time, but so is raising this issue with the Court.  The discovery requests should
be withdrawn or, at the very least, tabled for the time being.  *E.g.*, *Moore v. Mann*, No. 3:CV-13-
2771, 2015 WL 672444, at *1 (M.D. Pa. Feb. 17, 2015) (granting motion to stay discovery pending
resolution of motion to dismiss).

**Request No. 12.**  As explained above with respect to Requests 10 and 13, Request 12 is
not directed to relevant subject matter.  Aside from merely asserting relevance, Liquidia has not
explained how UT's other confidential development work is allegedly relevant to either
infringement or invalidity claims.  *See* Requests 10 and 13, *supra*.  Liquidia's proposed product,
public prior art, and the patents themselves are relevant to infringement and invalidity, not UT's
confidential development work.  Further, as mentioned in our previous letter, disputing the full
scope of Request 12 is premature in view of the pending Motion to Dismiss.

**Request 43.**  It is still not clear whether Liquidia is requesting samples made according
to every detail in the specification or according to any particular claim of the '066 or '901
patents.  Citation to the prosecution histories does not clarify Liquidia's intended meaning.
Please confirm what Liquidia believes the scope of this Request to be.  Regardless, UT disagrees
that any sample sought by Request 43 would be  relevant and proportional to the needs of the
case for at least the reasons in our previous letter.  Sept. 30, 2020 Mack Letter at 3 .  Apparently
Liquidia has a theory that, historically, not one impurity measured lower in the pharmaceutical
composition than in the starting batch of treprostinil.  *See* Oct. 8, 2020 Letter  at 2 (quoting
claims of the '066 and '901 patents).  But Liquidia has not cited any basis that its theory is
plausible or justifies discovery.  *See* Fed. R. Civ. P. 26(b)(1) (requiring discovery to be
proportional to the needs of the case).  Nor has Liquidia explained why it cannot test its theory,
at least initially, by reviewing documents sought and produced pursuant to Requests 3-6, which
seek historical data on impurity profiles.

Liquidia's letter mentions "documentation relating to the samples analyzed in 2016."
Please confirm whether Liquidia is narrowing Request 43 to such documentation so that we may
consider Liquidia's revised position in view of its other Requests, including Requests 3-6.

**Request 48.**  The sample requested in Request 48 is irrelevant and objectionable for
the same reasons as those explained above with respect to Request 43.  Please confirm whether
Liquidia is narrowing Request 48 to documentation relating to analysis of any product samples
made prior to the invention of the '066 and '901 patents.

**Request 45.**  Despite the alleged "at length" explanation from Liquidia, which is more
conclusory than lengthy (and substantively flawed), the requested powder sample is not
relevant.  It does not prove or disprove alleged infringement *by Liquidia's product* nor prove or
disprove any claims regarding the validity of UT's asserted patents, as explained above.
Liquidia's letter also states that the "sample is also relevant because UT alleges that Liquidia's
powder product infringes all three Patents-in-Suit."  In other words, Liquidia seems to be
asserting that the properties of *UT's* product are somehow relevant to whether *Liquidia's*
product infringes a patent.  This distillation of Liquidia's conclusory assertions demonstrates

**WILSON**
**SONSINI**

Lauren Krickl
October 16, 2020
Page 4

that Liquidia's stance is non-sensical.  Simply stating that something is relevant does not make it so.  Regarding Liquidia's other statements, UT never took the position that "powder" itself was unclear, and whether UT has ever made a formulation as claimed in the '793 patent is beside the point; what matters is whether the requested sample is relevant and proportional to the needs of the case.  Liquidia has failed to demonstrate that it is.

**Request 19.**  Liquidia asserts that prior litigations involved "similar" subject matter, had patents that share a specification with the patents in this case, and used "some" of the same claim terms as the asserted patents in this case.  Those allegations do not establish that the full scope of Request 19 is relevant.  In fact, Liquidia's qualified statements only confirm that the request includes irrelevant materials.  Even if relevant, UT is not obligated to identify where claim construction documents may be found.  If Liquidia wants claim construction documents from prior cases, Liquidia or its counsel can find and download those documents for themselves.  *E.g.*, *Zimmer Surgical, Inc. et al v. Stryker Corporation et al*, No. 1:16-cv-00679, slip op. at 3 (D. Del. May 8, 2018) (order denying motion to compel production of publicly-available documents, stating "neither party is required to further search for and produce information from publicly-available prosecution files because the files are publicly available and the requesting party may obtain such files on its own from the respective patent office(s)").  The case cited by Liquidia, *Blue Spike, LLC v. Vizio, Inc.*, No. 8:17-cv-01172-DOC-KESx, 2018 WL 8646477 (C.D. Cal. Aug. 31, 2018), does not require more.  Of course, decisions from the Central District of California are not binding here, and are not persuasive authority, either.  In *Blue Spike*, counsel for the party resisting discovery had already represented to the Court that it would provide additional documents in response to the disputed requests.  *Id.* at *2.  Thus, when the Court addressed claim construction materials, it was merely holding Blue Spike to its prior representation to the Court.  *Id.* at *4 ("Accordingly—***consistent with its representation to the Court***—Blue Spike shall produce responsive documents.") (emphasis added).  UT has made no similar commitment here.

Liquidia has apparently already searched for other cases that it is interested in and has presumably searched the dockets for those cases to assess whether claim construction proceedings occurred.  Rather than engage in letter-writing campaigns, Liquidia should just take the final step—clicking on the documents to download them—if the materials are as "highly relevant" as Liquidia alleges.

**Request 20.**  Based on Liquidia's latest letter, which does not address the multiple objections to production of infringement-related expert reports from other cases, UT understands that Liquidia is narrowing its request to materials relating to validity only.  Still, none of those previous litigations involved the Asserted Patents.  Indeed, the PTAB recently recognized the differences between the patents previously litigated and the '066 and '901 patents when it denied institution of Liquidia's IPR on the '066 patent, and instituted the petition on the '901 patent based on Liquidia "demonstrat[ing] a reasonable likelihood of prevailing with regard to claims 6 and 7" of the '901 patent.

**Request 23.**  We interpret Liquidia's narrow reliance on the "plain language of 37 CFR § 1.56"—i.e., considering only the express language and ignoring how it has been construed, and

**WILSON**
**SONSINI**

Lauren Krickl
October 16, 2020
Page 5

ignoring other code sections and case law—as implicitly conceding that UT had no obligation to
disclose the PTAB's Final Written Decision.  Without a duty to disclose, there can be no decision
whether to disclose, and thus there are no responsive documents.  Even if there was a decision
to be made, we fail to see what non-privileged documents Liquidia speculates might exist.

**Request 35.**  Liquidia's latest letter fails again to adequately support the various
assertions made therein. First, the letter fails to address the fact that Request 35 "seeks an overly
broad set of documents for an overly broad date range."  Sept. 30, 2020 Mack Letter at 5.
Indeed, this request seeks documents going back 24 years.  The difficulty in searching for such
an overly broad request is only compounded by the age of the documents sought.  Second, the
letter fails to explain how the requested materials are "relevant to 'prior art'" and conception and
reduction to practice.  If Liquidia intends to limit this request to documents related to
conception and reduction to practice, please specifically state so, and UT will consider that
request.  Third, the letter fails to address proportionality of the requested materials.  Last, for
clarity, UT does not agree that each patent is only accorded priority to its filing date.

**Requests 53 and 65.**  In our previous letter, we explained that Request 53 is not
relevant or proportional to the needs of the case, including with respect to "Related Patents and
Applications, either in the United States or abroad."  Liquidia's latest letter notably ignores the
proportionality objection altogether.  Regarding relevance, Liquidia asserts that the materials
sought are "relevant to issues such as damages and claim construction."  Liquidia fails to
explain, however, how foreign claim construction proceedings, on presumably different claims,
to the extent they exist, would be relevant to this case.  Liquidia likewise fails to explain how
materials relating to "enforcement" of patent applications would exist.  Lastly, Liquidia also
failed to explain what enforcement documents—other than those that are publicly available to
Liquidia, which UT does not intend to produce—might exist that would also be non-privileged.

Regarding Request 65, Liquidia did not address UT's proportionality objection.  In
addition, Liquidia's sole basis for relevance is "damages," but trial in this matter is set almost
seven months before expiration of the 30-month stay.  Unless Liquidia intends to perform
activities not allowed by the safe harbor and commercialize its proposed product before
receiving FDA approval, Request 65 seems premature.

**Requests 59 and 60.**  Liquidia's latest letter did not address UT's privilege objections
regarding Request 59 or the objections regarding proportionality for Request 60.  The alleged
basis for relevance—damages—is also premature as explained above regarding requests 53 and
65.

**Requests 7, 73, and 76-77.**  In UT's previous letter, we explained that, by its express
terms, Request 73 does not involve "Related Patents and Applications."  For that reason, please
confirm that the alleged issue raised by Liquidia's September 23, 2020 letter is moot as to
Request 73.

Regarding Requests 7 and 76-77, Liquidia's high-level listing of alleged relevance lacks
any helpful detail, fails to connect the full scope of Liquidia's requests to a relevant claim or

WILSON
SONSINI

Lauren Krickl
October 16, 2020
Page 6

defense, and fails to address proportionality—despite the fact that proportionality was raised in our previous letter. The full scope of the requests is simply not justified. Especially relating to related patents and applications, the alleged relevance is weaker, even less important to resolving the issues in the case, and the vanishingly low likelihood of a benefit to production cannot outweigh the burden of collecting and reviewing such broad requests. There is, moreover, no reason that UT must download publicly available documents for Liquidia (as addressed above and in our previous letter).

**Requests 14-18, 21-22, 46, and 74.** UT stated in its September 3, 2020 responses that UT is willing to meet and confer on these requests, but Liquidia has failed to respond to any of the objections listed in its responses. Please state Liquidia's positions regarding why these requests are relevant and proportional so that the parties can have a meaningful discussion during the meet and confer.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Joshua Mack

cc:     All counsel of record

# EXHIBIT 7

| | |
|---|---|
| **From:** | Krickl, Lauren |
| **Sent:** | Tuesday, April 27, 2021 1:55 PM |
| **To:** | 'Burrowbridge, Adam'; Elrifi, Ivor; Sukduang, Sanya; Milch, Erik; Davies, Jonathan; Kannappan, Deepa; Cheek, Douglas William; Eskola, Melissa; Elliott, Debra; Karen Keller; Jeff Castellano; Nate Hoeschen; David Fry |
| **Cc:** | Blumenfeld, Jack; William Jackson; Flynn, Michael J.; Chard, Beth Ann; WSGR - UTC - LIQUIDIA; Carsten, Douglas |
| **Subject:** | RE: United Therapeutics v. Liquidia (20-755): Correspondence |

Adam,

Based on your 4/21 email, we now consider Requests 35 and 53 resolved.  However, we believe the parties are at an impasse regarding the discoverability of documents and samples relating to UT and MannKind's development of a dry powder treprostinil formulation.  This issue is relevant to Requests 10, 13, 45, and 65, as explained further below.  We intend to raise this issue with the Court at the appropriate time.

Requests 10, 13.  The parties are at an impasse regarding the discoverability of documents relating to experimental work concerning the dry powder treprostinil formulation that UT is developing with MannKind.  We will raise this issue with the Court at the appropriate time.

Request 35.  Based on UT's latest response, we agree that the dispute regarding Request 35 is now resolved.

Request 45.  We note that the *Plant Genetic* case makes no distinction between "documents" and "samples" when holding that "[r]eport of a success after [priority date] indicates failure or difficulty in or before [priority date]."  *Plant Genetic Sys. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1344 (Fed. Cir. 2003) (affirming lack of enablement).  The parties are at an impasse regarding the discoverability of dry powder treprostinil samples resulting from UT's collaboration with MannKind.  We intend to raise this issue with the Court at the appropriate time.

Request 53.  Given UT's acceptance of Liquidia's proposed compromise, we consider this dispute resolved.

Request 65.  As we have repeatedly explained, reports of success in developing a powder treprostinil formulation after 2006/2007 are relevant to at least enablement and written description of the '793 patent.  *See Plant Genetic,* 315 F.3d at 1344.  Further, we disagree with UT's characterizations of UT Request 18, which plainly relates to Liquidia's future financial plans for LIQ861.  (*See* Burrowbridge Email re UT's RFPs (Apr. 21, 2021) (proposing revisions to Request 18 that nonetheless pertain to "Liquidia's ***projected*** or ***anticipated*** costs, revenue, sales, and profits from its ***anticipated*** sales of LIQ861") (emphases added).)  As noted previously, UT cannot refuse to produce documents relating to its future plans for a product embodying the asserted patents, while simultaneously seeking documents relating to Liquidia's future financial plans for LIQ861.  The parties are at an impasse regarding the discoverability of "[d]ocuments and things suffient to show Plaintiff's plans (if any) to market an inhaled powder formulation of treprostinil."  We intend to raise this issue with the Court at the appropriate time.

Regards,
Lauren

Lauren Krickl
Direct: +1 650 843 5065

**From:** Burrowbridge, Adam <aburrowbridge@wsgr.com>
**Sent:** Wednesday, April 21, 2021 7:04 PM
**To:** Krickl, Lauren <lkrickl@cooley.com>; Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Cheek, Douglas William <dcheek@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Cc:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>; William Jackson <wjackson@bsfllp.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>; WSGR - UTC - LIQUIDIA <utc-liquidia@wsgr.com>; Carsten, Douglas <Dcarsten@mwe.com>
**Subject:** Re: United Therapeutics v. Liquidia (20-755): Correspondence

**[External]**

Lauren,

We are glad to cross at least requests 74, 43, 46, and 48 off the list. We address Requests 10, 13, 35, 45, 53, and 65 below.

Requests 10, 13.  As you are aware, UT has produced over 2.5 million pages to Liquidia to date. The bulk of those productions were made in previous cases involving treprostinil products, and both the collections and productions in those cases were thorough.  Thus, it is likely Liquidia already has the documents it seeks.  And, as previously stated, UT is not withholding documents on the basis that documents relate to powder formulations.  *See, e.g.*, Dykhuis Email (Feb. 23, 2021).  In any event, while your email mentions disagreement with "UT's positions on these Requests," the sole remaining issue appears to be whether Liquidia is entitled to any documents relating to a MannKind dry powder formulation.  On that issue, UT maintains its objections, which have been covered in UT's discovery responses and the parties' previous correspondence.  We further emphasize that such materials are not relevant or proportional to the needs of the case, especially in view of their attenuated (at best) and non-existent (at worst) relation to the parties' claims and defenses.  *See, e.g.*, Fed. R. Civ. P. 26(b)(1) (requiring proportionality in view of, among other things, "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit").

Request 35.  We continue to believe the issue is not ripe, and that the documents are neither relevant nor proportional to the needs of the case. Nevertheless, in the interest of compromise, UT agrees to perform a reasonable search for meeting minutes or agendas relating to an inhaled form of treprostinil dated from 2003-2009.  We consider this dispute resolved.

Request 45.  UT maintains its objections, including that any MannKind powder samples are neither relevant nor proportional to the needs of the case. We further note that whereas Liquidia has asserted that *documents* that post-date the priority dates of the patents-in-suit are allegedly relevant to §112 defenses, it is not clear how any *samples* would be relevant.

Request 53.  Liquidia Request 53 seeks documents relating to enforcement of foreign patents in foreign courts.  *See, e.g.*, Liquidia's First Set of Requests for Production at 18; Krickl Email (Dec. 8, 2020) ("Liquidia believes Request 53 is resolved with respect to U.S. litigation, but not with respect to foreign litigation[.]").  Liquidia has not yet identified any nonpublic foreign litigation documents that it contends are relevant to this case and that it is unable to obtain from public sources.  By contrast, UT Requests 62-63 seek documents relating to Liquidia patents and applications regarding treprostinil products and the treatment of pulmonary hypertension, and while Liquidia has identified one provisional patent application and its family, we do not know why Liquidia refuses to produce relevant patent applications that involve treprostinil but simply haven't been published yet, which is likely a known, discrete set of documents.  UT is nevertheless amenable to Liquidia's proposed compromise, involving neither party seeking nonpublic documents

pursuant to Liquidia Request 53 and UT Requests 62-63, with the understanding that UT may raise Requests 62-63 in the future after review of Liquidia's document productions and as discovery continues.

<u>Request 65</u>.  For reference, Liquidia has narrowed this Request to:

- <u>RFP 65</u>: "Documents and things sufficient to show Plaintiff's ~~product lifecycle management plans for TYVASO®, including but not limited to Plaintiff's~~ plans (if any) to market ~~any pulmonary hypertension treatment that might affect Plaintiff's sales of TYVASO®, including but not limited to REMODULIN®, ORENITRAM®, and~~ an inhaled powder formulation of treprostinil."

Krickl Email (Dec. 8, 2020).  We do not see how UT's alleged "plans" to market an inhaled powder formulation of treprostinil are relevant to section 112 defenses involving specifications dating back to around 2007.  Moreover, the subject matter sought by UT's Requests are not "plans" as described by Liquidia.  UT Request 18 seeks financial forecasts, which as detailed predictions are different than Liquidia's general "plans" to file an NDA, hopefully obtain FDA approval, and then market a treprostinil product.  UT Request 22 includes market research, and while market research may involve considering how the market may change in the future, market analysis and research includes what the market is at present and was historically.  Thus, Liquidia's attempt to manufacture any tension in UT's positions fails.  Moreover, whereas Liquidia's forecasts are relevant to objective indicia, the materials sought by Liquidia are not relevant.

Liquidia further asserts that "the requested documents, including reports of success or difficulty in developing an inhaled powder formulation, are relevant to at least enablement, written description, and post-date evidence of the state of the art as of 2006/2007."  As narrowed, we do not see how Request 65 would include "reports of success or difficulty"; rather it appears to relate to future plans.  Liquidia has previously stated that "[t]his information is relevant to written description and enablement of the '793 Patent, and in particular, whether any proposed inhaled powder formulation of treprostinil UT intends to market falls within the scope of the '793 patent and also how such plans impact UT's activities to prevent alternative forms of inhaled treprostinil from entering the market."  Krickl Email (Dec. 8, 2020).  But neither that email nor subsequent correspondence has explained how forward-looking "plans" that post-date a patent are relevant to section 112 defenses (even assuming that backward-looking "reports" were), which renders *Plant Genetic Sys. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1344 (Fed. Cir. 2003) beside the point.  *See, e.g.*, Krickl Email (Jan. 20, 2021); Krickl Email (Mar. 23, 2021).   Likewise, we do not see how *In re Suboxone*, 2020 U.S. Dist. LEXIS 219949, at *136 (E.D. Pa. Nov. 24, 2020) applies here; the claims and defenses in an antitrust case are typically different than those in a patent litigation, and you have cited a section regarding a motion to exclude expert opinions that "alleged safety claims were false, misleading, disparaging, fabricated, fraudulent, sham, or deceptive," *see id.*, which issue is irrelevant to Request 65.  UT thus stands on its objections, but remains willing to consider further clarifications or proposed compromises that Liquidia may provide.

Best,
Adam

---

**From:** "Krickl, Lauren" <lkrickl@cooley.com>
**Date:** Tuesday, March 23, 2021 at 5:30 PM
**To:** "Dykhuis, Art" <adykhuis@wsgr.com>, "Elrifi, Ivor" <ielrifi@cooley.com>, "Sukduang, Sanya" <ssukduang@cooley.com>, "Milch, Erik" <emilch@cooley.com>, "Davies, Jonathan" <jdavies@cooley.com>, "Kannappan, Deepa" <dkannappan@cooley.com>, "Cheek, Douglas William" <dcheek@cooley.com>, "Eskola, Melissa" <meskola@cooley.com>, "Elliott, Debra" <ELLIOTTDS@cooley.com>, Karen Keller <kkeller@shawkeller.com>, Jeff Castellano <jcastellano@shawkeller.com>, Nate Hoeschen <nhoeschen@shawkeller.com>, David Fry <dfry@shawkeller.com>
**Cc:** "Blumenfeld, Jack" <JBlumenfeld@MNAT.com>, "Carsten, Douglas" <dcarsten@wsgr.com>, William Jackson <wjackson@bsfllp.com>, "Burrowbridge, Adam" <aburrowbridge@wsgr.com>, "Flynn, Michael J." <michael.flynn@mnat.com>, "Chard, Beth Ann" <BChard@MNAT.com>, WSGR - UTC - LIQUIDIA <utc-

liquidia@wsgr.com>

**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

[External]

Art,

Thank you for your email regarding Liquidia's Requests for Production.  In view of UT's latest responses, Liquidia considers Request 74 resolved.  Liquidia understands that UT has been unable to locate samples responsive to Requests Nos. 43, 46, and 48.  Requests 10, 13, 35, 45, 53, and 65 remain unresolved.

**Requests 10, 13.**  We continue to disagree with UT's positions on these Requests, particularly UT's unwillingness to produce documents concerning its MannKind dry powder treprostinil product when UT is seeking documents from Liquidia related to, for example, "Liquidia's NDA Product" defined as "including but not limited to LIQ861" (UT Requests 18, 19, 23, 24, 53, 59), and believe the parties are at an impasse.

**Request 35.**  Liquidia declines UT's offer to "revisit" the request for documents dated 2003-2005 "to the extent it remains an issue after Liquidia receives and reviews UT's production of documents" from 2006 onward.  The requested documents dated 2003-2005 are relevant regardless of documents dated 2006 onward that UT produces.  As previously explained, such documents are relevant to the issues of conception and reduction to practice, which are both exceptions to the 6-year limit under the Delaware Default Standard.  Liquidia disagrees that the dispute is not ripe.

**Request 45.**  As previously noted, Liquidia understands that UT has not located any samples responsive to Request 45 from 2006-2007.  Thank you for confirming that "UT is not aware of any UT samples after 2007."  However, we continue to disagree with UT's position regarding the production of samples resulting from UT's collaboration with MannKind, and believe the parties are at an impasse regarding that issue.

**Request 53.**  Liquidia notes that UT is currently seeking non-public documents relating to Liquidia's foreign patents and applications, similar to the documents sought by Liquidia's Request 53.  (*See* UT Requests 62-63; *see also* 12/28/2020 UT Letter at 7 ("Please confirm that Liquidia will produce non-public, responsive documents in response to Request 62.").)  Liquidia will agree to not pursue the production of confidential documents responsive to Request 53 at this time with the understanding that Liquidia may raise this issue in the future after review of UT's documents, provided that UT similarly agrees to not pursue production of non-public documents with respect to UT requests 62-63.

**Request 65.**  UT cannot refuse to produce documents "pertain[ing] to future plans" for a product embodying the asserted patents, while at the same time seeking documents relating to Liquidia's future plans for LIQ861.  (*E.g.*, UT's RFP 18 (regarding projected or anticipated costs, revenue, sales, and profits), RFP 23 (same), RFP 22 (regarding market research).)  UT's attempt to distinguish *Plant Genetic* fails because the rule stated in that case is not limited to publications—it applies broadly to "report[s]" of a first success after a certain date as evidence of failure or difficulty prior to that date.  *Plant Genetic Sys. v. DeKalb Genetics Corp.,* 315 F.3d 1335, 1344 (Fed. Cir. 2003).  As previously stated, the requested documents, including reports of success or difficulty in developing an inhaled powder formulation, are relevant to at least enablement, written description, and post-date evidence of the state of the art as of 2006/2007.  *See id.*  The proper citation for the *In re Suboxone* case cited in the Dec. 8, 2020 email is *In re Suboxone*, 2020 U.S. Dist. LEXIS 219949, at *136 (E.D. Pa. Nov. 24, 2020) (discussing the relevance of "Defendant's overall efforts to keep generic buprenorphine/naloxone tablets off the market and switch the market demand from tablets to branded film").  Please advise whether these clarifications change UT's position regarding Request 65, or if the parties remain at an impasse.

* * *

We look forward to UT's prompt response regarding the outstanding Requests.

Best,
Lauren

4

Lauren Krickl
Direct: +1 650 843 5065

---

**From:** Dykhuis, Art <adykhuis@wsgr.com>
**Sent:** Tuesday, February 23, 2021 9:02 AM
**To:** Krickl, Lauren <lkrickl@cooley.com>; Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Cheek, Douglas William <dcheek@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Cc:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Carsten, Douglas <dcarsten@wsgr.com>; William Jackson <wjackson@bsfllp.com>; Burrowbridge, Adam <aburrowbridge@wsgr.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>; WSGR - UTC - LIQUIDIA <utc-liquidia@wsgr.com>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

**[External]**

---

Lauren, we received your latest email regarding Liquidia's Requests for Production and have addressed each of the Requests below. If questions remain after reviewing our positions, please let us know.

**Requests 10, 13.** We disagree with the allegation about what UT has allegedly "attempted" to do and do not find such statements helpful.

Regarding your request for confirmation, as previously stated, UT will conduct a reasonable search for potentially responsive documents relating to research and development, including experimental work, relating to the subject matter of the patents-in-suit, including powder formulations. We said that on the meet and confer on October 30, 2020, and we also stated in our email of January 4, 2021 that:

> Request 1 seeks documents relating to, among other things, "research and development." Requests 10 and 13 redundantly seek "experimental work" relating to powder formulations. And UT has previously stated that it would not withhold documents from production in response to Request 1 on the basis that the documents were also responsive to Requests 10 and 13. *See, e.g.,* Dykhuis Email (Nov. 25, 2020).

In addition, UT also agreed to produce documents collected and produced in previous cases and has already started producing those documents. Those productions are likely to contain responsive documents, and UT does not intend to use references to work on a powder formulation or a date cutoff in 2007 (for example) as a basis to withhold documents previously produced (even though UT disagrees with the relevance and proportionality of the materials Liquidia seeks). Thus, we do not see what genuine dispute remains regarding Requests 10 and 13, whether relating to powder formulations or other research and development or experimental work.

At some point, however, materials become too attenuated from any potential relevance or proportionality. UT disagrees that any recent Mannkind work is relevant to the claims and defenses in this case. As a result, to the extent any such documents are within UT's possession, custody, or control, UT does not intend to collect or produce documents relating to any recent work with Mannkind.

**Request 53.** As stated in our email of January 4, 2021, UT refers Liquidia to UT's previous correspondence on Requests 14, 18, 19, and 20 regarding whether and which documents UT has, and has not, agreed to reasonably search for and produce subject to its objections. Regarding Request 53, UT maintains its objections, as previously addressed in correspondence on this Request, including objections to relevance and proportionality, and does not intend to collect or produce documents from foreign litigations.

**Request 65.** Liquidia has narrowed this Request, but the narrowed version still pertains to future plans. Liquidia cited *Plant Genetic Sys. v. DeKalb Genetics Corp.,* 315 F.3d 1335, 1344 (Fed. Cir. 2003), but that case addressed the use of publications from 1990 as evidence of the state of the art in 1987. As an example of why *Plant Genetic* does not decide the issue here, whether UT plans to market an inhaled powder formulation of treprostinil does not bear on the state of the art in 2006/2007 or on enablement of the patents in suit. You also refer to past "attempts to address this issue, including … explaining its relevance." But, as we noted in our January email, we disagree that the *In Re Suboxone* case you cited governs here, and we did not find the quotation in Liquidia's December 8, 2020 email in the case Liquidia cited. *See* Dykhuis Email (Jan. 4, 2021); Krickl Email (Dec. 8, 2020) (citing *In Re Suboxone*, 421 F. Supp. 3d. 12, 53 (E.D. Pa. 2019)).

**Request 35.** UT has already agreed to produce conception and reduction to practice documents and documents relating to research and development. UT has also previously agreed to perform a reasonable search with respect to documents dating back to 2006, despite the limits in Default Standard ¶4(e). UT further stated that it is willing to revisit Liquidia's request for documents dated in 2003-2005 to the extent it remains an issue after Liquidia receives and reviews UT's production of documents, located after a reasonable search, for 2006 and onward. And UT has agreed to produce productions from previous cases, which may contain documents from the 2003-2005 time frame. UT does not believe this is a ripe dispute at this time.

**Request 74.** Correct, the agreement in UT's November 6, 2020, email pertained to US litigations.

**Request 46.** For the reasons previously stated, UT remains unable to produce "the requested DPI." Liquidia's email below appears to try to re-define the Request for the DPI "disclosed and claimed in the '793 patent" to "any DPI used when reducing the '793 patent to practice," but that is not what Request 46 states. Nevertheless, because the Request states, "disclosed … in the '793 patent," the Request appears directed to something that existed when the applications to which the '793 patent claims priority were filed in 2006 and 2007 (i.e., when the specification was written). Upon a reasonably diligent search, UT has not been able to locate any sample DPIs dating back to the 2006/2007 time frame. UT therefore considers this Request resolved.

**Request 45.** Liquidia's email of December 8, 2020, stated that "Liquidia does not seek '*any* sample powder that *could* be used with the claimed method'—it seeks a sample of the powder expressly ***described in the specification*** and expressly claimed by claim 6 of the '793 patent." Krickl Email (Dec. 8, 2020) (emphasis added). Assuming that that statement reflects Liquidia's intention with Request 45, the request sought a sample dating back to 2006/2007 when the priority applications leading to the '793 patent were filed. As stated previously, UT has not located powder treprostinil samples from that time frame. *See, e.g.*, Dykhuis Email (Nov. 25, 2020).

Liquidia's latest email asserts, however, that "Request 45 is not limited to that time frame" and that both UT and Mannkind samples are relevant, regardless of their age. We disagree that samples after 2007 would be relevant. As to UT samples, and especially in view of the passage of time, UT is not aware of any UT samples after 2007. As to Mannkind samples, to the extent any exist and are within UT's possession, custody, or control, UT does not intend to investigate, collect, or produce any powder samples developed with MannKind (for the reasons already discussed in the parties' correspondence on this issue, including but not limited to the ambiguity of the Request, lack of relevance, and lack of proportionality).

Thanks,

Art

Arthur P. Dykhuis ▪ Wilson Sonsini Goodrich & Rosati, PC
12235 El Camino Real, San Diego, CA 92130-3002
Phone: (858) 350-2390 ▪ Fax: (858) 350-2399

**From:** Krickl, Lauren <lkrickl@cooley.com>
**Sent:** Monday, February 8, 2021 2:55 PM
**To:** Dykhuis, Art <adykhuis@wsgr.com>; Mack, Joshua <jmack@wsgr.com>; Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Cheek, Douglas William <dcheek@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Cc:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Carsten, Douglas <dcarsten@wsgr.com>; William Jackson <wjackson@bsfllp.com>; Burrowbridge, Adam <aburrowbridge@wsgr.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>; WSGR - UTC - LIQUIDIA <utc-liquidia@wsgr.com>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

[External]
Counsel,

Please let us know when we can expect a response regarding Liquidia's outstanding requests for production.

Thank you,
Lauren

Lauren Krickl
Direct: +1 650 843 5065

**From:** Krickl, Lauren
**Sent:** Wednesday, January 20, 2021 10:33 AM
**To:** 'Dykhuis, Art' <adykhuis@wsgr.com>; Mack, Joshua <jmack@wsgr.com>; Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Cheek, Douglas William <dcheek@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Cc:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Carsten, Douglas <dcarsten@wsgr.com>; William Jackson <wjackson@bsfllp.com>; Burrowbridge, Adam <aburrowbridge@wsgr.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>; WSGR - UTC - LIQUIDIA <utc-liquidia@wsgr.com>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

Art,

Thank you for your email.  In view of UT's latest responses, Liquidia considers Requests 7, 15, 17, 74, 76, and 77 resolved.  However, Liquidia continues to disagree with UT's positions regarding Requests 10, 13, 46, 53, 65, 35, 43, 45, and 48.  Please advise whether the below responses resolve any of UT's concerns, or if the parties are at an impasse with respect to those Requests.  Liquidia also disagrees that the length of the parties' discussions relates to "problems stemming from Liquidia's requests"—Liquidia has diligently attempted to address UT's concerns regarding the Requests for nearly four months, and has made multiple compromises as part of that process.

**Requests 10, 13.**  For the past several months, UT has attempted to circumvent its discovery obligations concerning patents and claims it has asserted against Liquidia.  Please confirm that, in response to Request 1, UT will also specifically search for research and development of powder formulations of treprostinil.

With respect to UT's collaboration with Mannkind, our December 8, 2020 email was not the first time this was raised.  Indeed, during the parties' October 30, 2020 meet and confer, Liquidia specifically discussed UT's collaboration

with MannKind.  Moreover, these documents are highly relevant to several issues including UT's allegations of assignor estoppel and Liquidia's § 112 defenses, which have also been previously addressed.  (Oct. 8, 2020 Krickl Letter at 2 (discussing relevance of Requests 10 and 13 to § 112 defenses); D.I. 37 at 12 (discussing UT's collaboration with MannKind in connection with the issue of assignor estoppel).)  It appears the parties are at an impasse with respect to UT's work with MannKind on the development of powder formulations of treprostinil.

**Request 46.**  Liquidia remains perplexed as to why UT objects to producing "[o]ne dry powder inhaler ('DPI') disclosed and claimed in the '793 patent."  As noted, claim 4 of the '793 patent recites "[t]he method of claim 1, wherein the inhalation device is a dry powder inhaler."  This claimed DPI is the "particular DPI" sought by Request 46.  If UT did not actually use a DPI when reducing the '793 patent to practice, please so state so that the parties can resolve this issue.  Lastly, the requested DPI (which is part of the "contents of the specification") is relevant to written description and enablement because it would allow Liquidia to assess whether undue experimentation is required to practice at least claims 4, 6, and 7 of the '793 patent.  Please confirm whether UT will produce the requested DPI.

**Request 53.**  We have limited the further documents sought by Request 53 to those relating to foreign litigations with the understanding that UT has previously agreed to produce invalidity/validity contentions, prior art, claim construction briefings, and invalidity/validity expert reports from Hatch-Waxman litigation involving the Patents-in-Suit and U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240, in response to Requests 14, 18, 19, and 20, respectively.  Based on UT's latest response, we understand that UT is refusing to produce documents responsive to the revised Request 53, which seeks "[a]ll documents concerning any steps Plaintiff has taken to enforce foreign counterparts of the Patents-in-Suit or U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240, abroad."  (*See* Dec. 8, 2020 Krickl Email.)  Liquidia maintains that the relative ease of access for these documents is greater for UT than it is for Liquidia.  Thus, it appears the parties are at an impasse with respect to the production of documents relating to foreign litigations.

**Request 65.**  UT's attempts to develop an inhaled powder formulation of treprostinil are relevant to enablement even if they post-date the filing date of the patent.  *E.g., Plant Genetic Sys. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1344 (Fed. Cir. 2003) (affirming lack of enablement when "[r]eport of a success after [priority date] indicates failure or difficulty in or before [priority date]").  Despite our repeated attempts to address this issue, including narrowing the request and explaining its relevance, the parties continue to be at an impasse.

**Request 35.**  Thank you for confirming that UT will produce meeting minutes or related documentation dated 2006-2009 in response to Request 35.  However, Liquidia maintains its position that the requested documents from 2003-2005 are relevant to conception and reduction to practice of the Patents-in-Suit.  The '066 and '901 patents are both entitled "Process to prepare treprostinil, the active ingredient in Remodulin®," and Remodulin® was first approved by the FDA in 2002.  Accordingly, Liquidia believes the parties are at an impasse regarding the requested documents dated 2003-2005.  Further, Liquidia's December 8, 2020 email does not "equate" good cause and relevance; it merely notes that a showing of good cause is not required for the requested documents because they are "related to" asserted prior art or conception and reduction practice.

**Request 74.**  Liquidia simply seeks confirmation that the agreement in UT's November 6, 2020 email (and copied in the January 4, 2021 email) pertains to U.S. litigation.  This appears to be the only reasonable interpretation of UT's agreement, and Liquidia believes this Request is resolved.

**Samples (Requests 43, 45, 48).**  Liquidia understands that UT has not located any samples responsive to Request 45 from 2006-2007.  However, Request 45 is not restricted to that time frame—it seeks "[o]ne gram of treprostinil salt powder made in accordance with the '793 patent."  As previously noted, the requested sample is directly relevant to UT's claim of infringement and Liquidia's invalidity defenses (including § 112 defenses) regarding the '793 patent, which expressly claims a "powder" formulation.  Please confirm that UT will search for samples of powder treprostinil formulations developed after 2007.  If no such samples exist, please so state.

To the extent that any of the samples responsive to Request 45 are made by MannKind, those samples would be relevant.  Further, MannKind is UT's collaboration partner on the powder treprostinil formulation product, and UT has

not expressly stated that such samples are outside its control, nor that if requested, MannKind would refuse to provide such samples to UT.  Please confirm that UT will request the relevant samples from MannKind.

Moreover, Liquidia continues to disagree that a sample "made in accordance with the '793 patent" is vague or ambiguous in any way.  The fact that the preamble to claim 1 of the '793 patent is directed to a method of treatment does not remove the fact that claim 1 also explicitly requires a "formulation comprising treprostinil," and that claim 6 is limited to a "formulation [that] is a powder."  As such, Liquidia's request for a sample of the powder "made in accordance with the '793 patent" is clear based on the explicit wording of the asserted claims.  If UT never made a powder formulation of treprostinil that would fall within the scope of claims 1 or 6, please so state such that this issue may be resolved.  If UT did, however, make such a powder formulation, please produce a sample.

* * *

Please let us know if you have any questions.

Best,
Lauren

Lauren Krickl
Direct: +1 650 843 5065

**From:** Dykhuis, Art <adykhuis@wsgr.com>
**Sent:** Monday, January 4, 2021 9:13 PM
**To:** Krickl, Lauren <lkrickl@cooley.com>; Mack, Joshua <jmack@wsgr.com>; Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Cheek, Douglas William <dcheek@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Cc:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Carsten, Douglas <dcarsten@wsgr.com>; William Jackson <wjackson@bsfllp.com>; Burrowbridge, Adam <aburrowbridge@wsgr.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>; WSGR - UTC - LIQUIDIA <utc-liquidia@wsgr.com>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

**[External]**

Lauren,

In your email, you reference the amount of time that it has taken to meet and confer over Liquidia's discovery requests.  The length of the parties' discussions has more to do with the problems stemming from Liquidia's requests than anything else. Regardless, below are responses regarding the requests listed in your email of December 8.

**Request 7.** UT's original responses agreed to produce as to the patents-in-suit. UT now agrees, subject to the qualifications in its objections and responses, to produce as to the '393, '507, and '240 patents as well.

**Request 76.** UT's original responses agreed to produce as to the patents-in-suit. UT now agrees, subject to the qualifications in its objections and responses, to produce as to the '393, '507, and '240 patents as well, and also reiterates its objection to producing prosecution materials that are publicly available. *See* UT's Objs. and Resps. (Sept. 3, 2020) at 87.

**Request 77.** UT's original responses agreed to produce as to the patents-in-suit. UT now agrees, subject to the qualifications in its objections and responses, to produce as to the '393, '507, and '240 patents as well, and also reiterates its objection to producing prosecution materials that are publicly available. *See id.* at 88.

**Requests 10, 13.** UT has previously stated that Requests 10 and 13 do not appear to seek unique information beyond what UT has already agreed to produce in response to Request 1. For example, Request 1 seeks documents relating to, among other things, "research and development." Requests 10 and 13 redundantly seek "experimental work" relating to powder formulations. And UT has previously stated that it would not withhold documents from production in response to Request 1 on the basis that the documents were also responsive to Requests 10 and 13. *See, e.g.*, Dykhuis Email (Nov. 25, 2020). For the first time, however, Liquidia stated in its email of December 8, 2020, that it now also seeks documents relating to any present day or recent efforts by MannKind. As an initial matter, UT cannot produce documents not within its possession, custody, or control and has objected on that basis. Further, the requested documents are not relevant, and Liquidia has not explained how any recent efforts with MannKind (e.g., 2018-2020) would have relevance to any obviousness or section 112 defenses that must be predicated upon prior art or patent specifications filed around 2007 or 2008. For at least these reasons, UT will not produce any recent, irrelevant documents involving MannKind that may or may not exist. Nevertheless, as previously stated, UT expects to produce documents in response to these requests located from its efforts to address Request 1. Thus, because these Requests appear to be redundant with Request 1, and although UT will only perform one reasonable search in satisfaction of all three Requests, UT agrees to produce relevant, non-privileged documents relating to "experimental work" (i.e., research and development) from around the time of the priority dates of the patents-in-suit within its custody and control located after a reasonable search.

**Request 46.** Liquidia's latest email states that "Liquidia is entitled to the requested DPI to determine whether the DPI disclosed and claimed by the '793 patent is adequately described and enabled." This is incorrect, as we understand that defenses involving written description and enablement depend upon the contents of the specification and abilities of the person of ordinary skill in the art. Liquidia keeps saying it seeks "the" requested DPI, but as previously explained, the claims of the '793 patent are method of treatment claims. *See, e.g.*, '793 patent, claim 1 ("A method of treating..."). Claim 4 requires "a dry powder inhaler" and has no express limitation to any particular DPI. Similarly, the portion of the specification cited in Liquidia's latest email states that "The inhalation device can also be a dry powder inhaler." '793 patent, 7:22. Hence UT's previous statement, "To the extent Liquidia intended to seek *any* DPI that *could* be used to infringe the methods claimed in the '793 patent, it should have said so," which Liquidia's latest email denies as the meaning of Request 46. As a result, in addition to UT's other objections, the vagueness and ambiguity of Request 46 preclude UT from producing any samples, or even searching for samples, in response to Request 46.

**Request 53.** Thank you for confirming that the only documents sought by Request 53 are those relating to foreign litigations. UT does not intend to search for and produce documents relating to enforcement of foreign patents. If Liquidia thinks the burden of investigating, for example, filings in litigations in foreign countries on foreign patents not asserted here, it can do so itself, and can obtain copies of filings as it sees fit. Regarding Liquidia's statement on what UT has allegedly agreed to, UT refers Liquidia to UT's previous correspondence on Requests 14, 18, 19, and 20. *See, e.g.*, Dykhuis Email (Nov. 6, 2020) (agreeing only to produce certain prior art and claim construction briefing that Liquidia could not otherwise locate on its own and identifies to UT, and subject to other objections).

**Request 65.** As narrowed by Liquidia, this Request seeks "plans" to market an inhaled formulation of treprostinil. As previously stated, written description and enablement depend on the specification of the '793 patent, not present-day plans for the future. The case and page cited by Liquidia relates to an antitrust issue and does not require the production of future marketing plans and, in any event, we did not see the alleged quotation. To the extent Liquidia maintains this request, please clarify the alleged relevance of future plans to written description or enablement.

**Request 15.** Until UT reviews the documents before production, it cannot say with complete certainty that relevance and privilege are the only objections that would apply. But at this time, in general, UT expects that it would withhold documents pursuant to relevance or privilege.

**Request 17.** Confirmed.

**Request 35.** Liquidia's October 8, 2020 letter states, "Collectively, the Patents-in-Suit claim an earliest priority date of December 17, 2006—nearly 14 years ago—and thus UT should produce the requested documents dating back at least to 2006, and in fact earlier to capture documents relevant to conception and reduction to practice." UT has already agreed to produce conception and reduction to practice documents. Still, to the extent that, following a reasonable search, UT is able to locate any meeting minutes or related documentation, and those documents relate to prior art identified in Liquidia's invalidity contentions, UT will produce meeting minutes or related documentation dated in calendar years 2006-2009 so long as no other objections apply after review of any such documents located after such a search (e.g., privilege, work product, third party confidentiality, etc.). This would go back to January 2006, well before the December 2006 date identified by Liquidia in correspondence on this very request. If, after reviewing whatever UT is able to locate and produce, Liquidia believes 2003-2005 documents are relevant, UT is willing to further discuss those years at that time.

In addition, we will clarify—again—that UT has not "refus[ed] to produce documents responsive to Request 35." Such a stance misstates the parties' exchanges and appears intended solely to alter the record. Of course, the paragraph above agrees to produce documents. But UT has also already agreed to produce document sets in response to other requests that are likely to contain any docs responsive to Request 35, if they still exist. As we stated in our previous correspondence,

> UT has already agreed to produce documents relating to conception and reduction to practice. And above UT agreed to produce documents produced in previous cases, subject to its objections and ongoing review. It is likely that, to the extent the meeting minutes Liquidia seeks even exist anymore, they're most likely to be found in the previous productions that Liquidia will receive. Thus, there is no merit to the accusation that UT has "refused" to produce responsive documents. Indeed, it is not even clear what documents Liquidia thinks are being withheld.

Dykhuis Email (Nov. 25, 2020). Notwithstanding UT's original discovery responses, it should be clear to Liquidia by now that it will be receiving documents from UT that would fall within the scope of Request 35. Liquidia's assertion that UT is "selectively" producing documents is also incorrect. For example, Liquidia is already getting productions from multiple previous cases, conception and reduction to practice and R&D documents in response to Request 1, and yet more documents pursuant to other requests.

We continue to disagree with Liquidia's claims for "good cause." Liquidia's latest email did not address how its view appears to equate good cause and relevance, thus causing the exception to swallow the rule.

**Request 74.** UT's November 6, 2020 email stated,

> With that understanding, in the interest of compromise and to avoid burdening the Court, UT agrees to produce trial/hearing transcripts relating to invalidity issues and development of the subject matter of the patents-in-suit (or the '393, '[507], or '240 patents) to the extent that such documents exist, are not publicly available, and are found in its possession, custody, or control after a reasonably diligent search of its files.

Please let us know what, if any, confirmation Liquidia is requesting. Regarding foreign litigations, Liquidia should also identify what alleged hearings/witnesses/transcripts it seeks. As noted above with respect to Request 53, UT does not intend to search for documents relating to foreign litigations.

**Samples (Requests 43, 45, 48).** Regarding Requests 43 and 48, Liquidia states that "UT has, however, previously agreed to produce manufacturing records relating to the impurity profile of such previously-made samples." UT refers Liquidia to its objections and responses to Request 3, which agree to produce documents subject to various objections and qualifications.

Regarding Request 45, we are confused. Liquidia's letter states, "Please confirm whether UT agrees to produce, or at least conduct a reasonable search for, the requested powder sample." Liquidia's request is vague and ambiguous for referring to a sample "made in accordance with the '793 patent," as previously explained. Regardless, UT's previous correspondence stated, "To the extent Liquidia intended to request *any* sample powder that *could* be used with the claimed method, it should have said so. In any event, the '793 application was filed in 2007 and claims priority to a provision[al] filed in 2006, and UT has not located any samples from that time frame." It is therefore unclear what more Liquidia is asking for.

To the extent Liquidia seeks treprostinil powder samples made by MannKind, UT cannot produce documents or things not within its possession, custody, or control and has objected on that basis. Further, the requested samples are not relevant, and Liquidia has not explained why or how recent (*e.g.*, 2018-2020) frame samples would be relevant or proportional to the needs of the case. UT will not produce any recent, irrelevant powder samples involving MannKind that may or may not exist.

We also note that Liquidia's newest revision to Request 45—"a sample of the powder expressly described in the specification and expressly claimed by claim 6 of the '793 patent"—is not the request that was served.

While the response above should be sufficient, we also address a few statements in Liquidia's letter that are incorrect. First, Liquidia's letter makes a statement about the subject matter of the '793 patent. We have stated repeatedly why it is problematic for Request 45 to refer to a sample "made in accordance with the '793 patent." As alluded to in UT's November 25, 2020 email, the '793 patent is entitled, "Treprostinil Administration by Inhalation," and claim 1 recites a "method of treating pulmonary hypertension." Thus, the focus is on the method of treatment, hence our reference to "describ[ing] a method of treatment." It is not clear what Liquidia intended with its additive paraphrasing and distortion of UT's email (UT did not use the word "directed" or make the quoted statements in terms of a powder formulation of treprostinil), to which UT objects, but if Liquidia seeks information on the contents of the '793 patent, Liquidia should consult the '793 patent itself.

Liquidia's letter also states, "It is clear from your response that neither UT, nor the named inventors, disclosed or made a treprostinil salt powder formulation made in accordance with the '793 patent." This statement suffers from the same vagueness and ambiguity as Request 45 itself (*e.g.*, "made in accordance with the '793 patent"), which problem has already been described in UT's correspondence. Thus, even if UT was inclined to fully address Liquidia's statement, it could not. If the phrase "made in accordance with the '793 patent" is ignored, UT refers Liquidia to its previous email, which explained that UT has not located powder samples from the 2006-2007 time frame, and which does not justify the conclusions Liquidia appears to be drawing. UT also refers Liquidia to the discovery process in general, and evidence to be disclosed and located in this case.

* * *

Please let us know if you have any further questions.

Best,

Art

Arthur P. Dykhuis ▪ Wilson Sonsini Goodrich & Rosati, PC
12235 El Camino Real, San Diego, CA 92130-3002
Phone: (858) 350-2390 ▪ Fax: (858) 350-2399

**From:** Krickl, Lauren <lkrickl@cooley.com>
**Sent:** Tuesday, December 29, 2020 4:47 PM
**To:** Dykhuis, Art <adykhuis@wsgr.com>; Mack, Joshua <jmack@wsgr.com>; Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Cheek, Douglas William <dcheek@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Cc:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Carsten, Douglas <dcarsten@wsgr.com>; William Jackson <wjackson@bsfllp.com>; Burrowbridge, Adam <aburrowbridge@wsgr.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>; WSGR - UTC - LIQUIDIA <utc-liquidia@wsgr.com>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

[External]
Counsel,

We have not heard from UTC regarding the below requests in over a month.  Please advise when we can expect a response on these issues, which have been in discussion for nearly three months.

Thanks,
Lauren

Lauren Krickl
Direct: +1 650 843 5065

**From:** Krickl, Lauren
**Sent:** Tuesday, December 8, 2020 3:58 PM
**To:** 'Dykhuis, Art' <adykhuis@wsgr.com>; Mack, Joshua <jmack@wsgr.com>; Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Cheek, Douglas William <dcheek@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Cc:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Carsten, Douglas <dcarsten@wsgr.com>; William Jackson <wjackson@bsfllp.com>; Burrowbridge, Adam <aburrowbridge@wsgr.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>; WSGR - UTC - LIQUIDIA <utc-liquidia@wsgr.com>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

Art,

Liquidia's responses to your 11/25 email are set forth below.  Liquidia believes that outstanding issues remain as to Requests 7, 10, 13, 15, 17, 35, 45, 46, 65, 74, 76, and 77.  We look forward to UT's prompt response.

**Request 11** – Request 11 was inadvertently listed in my 11/13 email.

**Request 73.**  In light of UT's agreement to produce responsive documents, Liquidia considers this Request resolved.

**Requests 7, 76, 77.**  Similar to Liquidia's narrowing of Requests 14-20 and 74, Liquidia agrees to narrow Requests 7, 76, and 77 as shown below (bold emphasis indicates narrowed subject matter).  Please advise whether UT agrees to produce the requested information relating to the Patents-in-Suit as well as the three identified Related Patents.

- RFP 7: All documents concerning investigations or analyses regarding the Patents-in-Suit or **U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240.**

- **RFP 76**: All documents and things created, reviewed, or relied upon in connection with the preparation, filing, or prosecution of the Patents-in-Suit and **U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240**.
- **RFP 77**: All documents and things comprising or concerning communications with the United States Patent and Trademark Office or any foreign patent office relating to the Patents-in-Suit and **U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240**.

**Request 12.**  Because UT's Infringement Contentions served on 10/16 do not assert claims 2, 3, or 5 of the '793 patent, and with the understanding that UT will not "exclude documents located by its search for documents in response to other Requests, such as Request 1, that involve the inhalers identified in Request 12," Liquidia considers this Request resolved for the time being.  Liquidia reserves the right to seek the documents requested by Request 12 if UT asserts claims 2, 3, or 5 of the '793 patent at a later time.

**Requests 10, 13.**  As explained during the meet-and-confer, Requests 10 and 13 are not commensurate in scope with Request 1, which seeks "[a]ll documents and things related to the conception, reduction to practice, design, and research and development of any subject matter claimed in the Patents-in-Suit, including, but not limited to invention disclosures, notebooks, workbooks, laboratory notebooks, investigations, summaries, meeting notes or minutes, reports, presentations, evaluations, analyses, test data, and analytical data."  In contrast, Requests 10 and 13 seek "***experimental work***" relating to a "***powder***" inhalation formulation of treprostinil."  While some of the documents called for by Requests 10 and 13 may fall within the scope of Request 1, Requests 10 and 13 seek documents beyond those reflecting conception and reduction to practice, and would include work UT has conducted with Mannkind.  And as explained in Liquidia's 10/8 Letter, Request 13 is not cumulative of Request 10.  (*See* 10/8 Letter at footnote 1.)  Please confirm whether UT agrees to affirmatively search for and produce the requested experimental work relating to powder formulations beyond that underlying conception and reduction to practice; otherwise, Liquidia believes the parties are at an impasse.

**Request 46.**  Liquidia does not seek "*any* DPI that *could* be used to infringe the methods claimed in the '793 patent"—it only seeks a sample of the "dry powder inhaler" expressly described in the specification and expressly claimed by asserted claim 4 of the '793 patent.  ('793, 7:22-26, claim 4.)  The fact that the asserted claims are methods of treatment claims does not change the fact that UT asserts a method claim that specifically requires the use of a DPI, and UT cannot use the recited "method" of treatment to avoid producing documents and things required by the asserted claims.  Indeed, UT's Infringement Contentions make clear that UT contends that the "inhalation device" recited in claim 1 of the '793 patent (a method of treatment claim) covers the use of a DPI.  (Oct. 16, 2020 Infringement Contentions, Appendix C at 3-4; *see also id.* at 6-8.)  Accordingly, Liquidia is entitled to the requested DPI to determine whether the DPI disclosed and claimed by the '793 patent is adequately described and enabled.  Please confirm whether UT agrees to produce, or at least conduct a reasonable search for, the requested DPI.

**Request 53.**  As UT has agreed to produce invalidity/validity contentions, prior art, claim construction briefings, and invalidity/validity expert reports from Hatch-Waxman litigation involving the Patents-In-Suit and U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240, in response to Requests 14, 18, 19, and 20, respectively, Liquidia believes Request 53 is resolved with respect to U.S. litigation, but not with respect to foreign litigation (for which UT has not yet agreed to produce any documents).  Liquidia is willing to narrow Request 53 to "[a]ll documents concerning any steps Plaintiff has taken to enforce **foreign counterparts of** the Patents-in-Suit or **U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240**, ~~either in the United States or~~ abroad."  Please advise whether UT agrees to produce such documents.  Further, if UT does not produce documents responsive to the narrowed Requests 14, 18, 19, and 20, as agreed, Liquidia reserves the right to address Request 53 with the Court..

**Requests 59, 60, 65.**  As previously explained, these Requests are relevant due to UT's request for "[a] judgment awarding UTC damages or other monetary relief" in this case.  (D.I. 16 at 18.)  UT's position that damages discovery is "premature" is inconsistent with its own RFPs, which seek various information relating to Liquidia's "anticipated" or "potential" sales.  (*See* Nov. 11, 2020 RFPs at Requests 18, 23-24; *see also* UT's Nov. 18 Letter at 4 (asserting that Requests 18 and 24 are relevant to "injunctive remedies")).)  UT cannot have it both ways.

However, in the interest of compromise and to assuage UT's proportionality concerns, Liquidia is willing to table Requests 59 and 60 until a later date.  Liquidia is willing to narrow Request 65 as follows (eliminated portions of the request indicated with bold/strikethrough):

- RFP 65: "Documents and things sufficient to show Plaintiff's ~~product lifecycle management plans for TYVASO®, including but not limited to Plaintiff's~~ plans (if any) to market ~~any pulmonary hypertension treatment that might affect Plaintiff's sales of TYVASO®, including but not limited to REMODULIN®, ORENITRAM®, and~~ an inhaled powder formulation of treprostinil."

This information is relevant to written description and enablement of the '793 Patent, and in particular, whether any proposed inhaled powder formulation of treprostinil UT intends to market falls within the scope of the '793 patent and also how such plans impact UT's activities to prevent alternative forms of inhaled treprostinil from entering the market.  *In re Suboxone*, 421 F. Supp. 3d 12, 53 (E.D. Pa. 2019) (discussing the relevance of "Defendant's overall efforts to keep generic buprenorphine/naloxone tablets off the market and switch the market demand from tablets to branded film").

In light of these clarifications, please advise whether UT is willing to produce documents responsive to narrowed Request 65.

**Request 15.**  We appreciate UT's response regarding Request 15.  Provided that the "objections" referred to are limited to relevance and privilege, then Liquidia agrees that the issue is resolved.  Please confirm whether that is the case.

**Request 16.**  Request 16—which has been narrowed multiple times—seeks "Plaintiff's responses to **RFPs and RFAs** regarding patent invalidity/validity served in any Hatch-Waxman litigation involving U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240."  Liquidia disagrees that RFP responses have no bearing on the claims or defenses here.  However, in the interest of compromise, Liquidia is willing to narrow this Request for a third time, to "Plaintiff's responses to **RFAs** regarding patent invalidity/validity served in any Hatch-Waxman litigation involving U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240."  Liquidia therefore considers this Request resolved.

**Request 17.**  We appreciate UT's willingness to produce relevant "deposition transcripts relating to invalidity issues and development of the subject matter of the patents-in-suit."  In doing so, please confirm that UT will not withhold transcripts that include testimony related to invalidity issues and development of subject matter relevant to the Patents-in-Suit but also additional subject matter.  With that confirmation, Liquidia would agree that the disputes relating to this Request would be resolved.

**Request 18.**  Thank you for the clarification; this Request is resolved.

**Request 20.**  Thank you for the clarification; this Request is resolved.

**Request 35.**  The narrowed Request 35 seeks "[a]ll documents and things concerning scientific advisory board meetings or other meetings with key opinion leaders ("KOLs") held between 2003 and 2009, including, but not limited to, agendas, materials disseminated to the board members, meeting notes, presentations, and correspondence regarding any treprostinil product(s), including but not limited to TYVASO®."  Now that Liquidia has asserted specific prior art references, please confirm that UT will produce documents responsive to this request, as suggested but not confirmed in the 11/25 email.  As UT is aware, "key opinion leader" (KOL) is a standard term referring to individuals and organizations whose opinions are respected by others in the relevant community, such that UT sought the benefit of their expertise regarding the development and/or use of treprostinil products, including TYVASO®.  Individuals within UT will readily understand this term.

Liquidia's position is not "extreme."  Request 35 does not seek "*all* documents older than 6 years" with no contemplated cut-off date—it just seeks documents and things concerning specific subject matter regarding meetings held between 2003 and 2009.  Liquidia maintains that UT's refusal to produce documents responsive to Request 35 provides basis for Liquidia to move to exclude any documents pre-dating June 4, 2014 that UT attempts to rely on absent a showing of good cause.  More specifically, UT cannot selectively produce documents dated more than 6 years ago that advance its litigation

positions, while withholding other documents that would be relevant to Liquidia's claims and defenses.  Moreover, such a motion to exclude would follow a meet and confer process, not an "indeterminate" or "needless" delay.

UT has in fact refused to produce documents responsive to Request 35.  (*See* Sept. 3, 2020 UT Responses to RFPs at pp. 45-46 (for Request 35, stating that "UTC will not produce documents or things responsive to this Request").)  The fact that UT agreed to produce some documents responsive to **other** Requests does not change this.

Although Liquidia's last email noted that "good cause" would exist for the requested documents, such a showing is not required because the requested documents are "related to" asserted prior art or the conception or reduction to practice of the asserted patents.  (Delaware Default Standard, ¶4.e.)  The phrase "related to" means at least "relevant," as defined under Fed. R. Evid. 401 as evidence that has "any tendency to make a fact [of consequence to the determination of the action] more or less probable than it would be without the evidence."  This is a liberal standard that covers the requested information.

Please advise whether UT is willing to search for and produce any documents response to the narrowed Request 35 in light of Liquidia's above explanations.

**Request 74.**  The narrowed Request 74 seeks "[a]ll transcripts (and exhibits thereto) of any court or deposition testimony by any fact or expert witness deposed or testifying on behalf of Plaintiff in any U.S. or foreign litigation involving the Patents-in-Suit or U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240."  Liquidia agrees to identify any foreign litigations that contain responsive documents.  Liquidia understands that, according to your 11/6 email, UT has agreed to produce trial/hearing transcripts in **U.S. litigation** relating to invalidity issues and development of the subject matter of the patents-in-suit (or the '393, '607, or '240 patents).  Please confirm whether that is accurate; if so, Liquidia considers this Request resolved.

**Samples (Requests 43, 45, 48).**  Thank you for confirming that UT has been unable to locate any samples responsive to Request 43 ("One gram of treprostinil salt made according to the process identified as the "Former Process" in Example 6 of the '066 and '901 patents.") or 48 (a one gram sample of treprostinil made according to Moriarty).  UT has, however, previously agreed to produce manufacturing records relating to the impurity profile of such previously-made samples.

Regarding Request 45, we thank you for confirming that the '793 patent is "not" directed to a "method of manufacturing" a powder formulation of treprostinil.  Liquidia does not seek "*any* sample powder that *could* be used with the claimed method"—it seeks a sample of the powder expressly described in the specification and expressly claimed by claim 6 of the '793 patent.  ('793, 7:22-26, claim 6.)  The fact that the asserted claims are methods of treatment claims does not change the fact that UT asserts that its claims cover the use of a powder formulation.  (*See* Oct. 16, 2020 Infringement Contentions, Appendix C at pp. 1-10 (contending that Liquidia's "powder drug product" infringes the asserted claims of the '793 patent).)  It is clear from your response that neither UT, nor the named inventors, disclosed or made a treprostinil salt powder formulation made in accordance with the '793 patent.  Moreover, to the extent UT contends that any treprostinil powder formulation it has developed with Mannkind is not a powder formulation of treprostinil falling within the scope of claim 6, please so state.  Otherwise, such a sample should be produced.

Accordingly, Liquidia is entitled to the requested sample of treprostinil salt powder to determine whether the powder formulation disclosed and claimed by the '793 patent is adequately described and enabled.  Please confirm whether UT agrees to produce, or at least conduct a reasonable search for, the requested powder sample.

* * *

Please advise whether UT has any further questions regarding the above issues.  We look forward to your prompt response.

Best,
Lauren

16

Lauren Krickl
Direct: +1 650 843 5065

---

**From:** Dykhuis, Art <adykhuis@wsgr.com>
**Sent:** Wednesday, November 25, 2020 4:42 PM
**To:** Krickl, Lauren <lkrickl@cooley.com>; Mack, Joshua <jmack@wsgr.com>; Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Cc:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Carsten, Douglas <dcarsten@wsgr.com>; William Jackson <wjackson@bsfllp.com>; Burrowbridge, Adam <aburrowbridge@wsgr.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>; WSGR - UTC - LIQUIDIA <utc-liquidia@wsgr.com>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

---

[External]

---

Lauren,

Thanks for sending Liquidia's positions. The first paragraph of your email lists Requests 7, 10-13, 46, 53, 65, 59-60, 73, and 76-77. Liquidia's November 3 email after the meet and confer did not address those Requests, and Liquidia did not provide substantive comment for those Requests in your November 13 email, either. Nevertheless, UT addresses each of these additional requests below, followed by the ones addressed in your email as having "outstanding issues."

**Request 11** – Request 11 was not identified in Liquidia's letters of September 23 or October 8, nor was it addressed on the parties' meet and confer. We are unaware of any alleged issue with Request 11.

**Request 73** – we understood this Request was resolved during the meet and confer, as UT stated it would produce responsive documents on which it intends to rely relating to objective indicia for the asserted patents. Please let us know what alleged issue remains, if any.

**Requests 7, 76, 77** – UT's written discovery responses already agreed to provide documents responsive to these Requests. As outlined in the UT's previous letters, these Requests are overly broad. During the meet and confer, Liquidia stated it would consider narrowing these Requests. Please let us know if Liquidia is willing to do so.

**Request 12 –** Request 12 seeks documents relating to experimental work for a soft mist inhaler, pulsed ultrasonic nebulizer, and pressurized metered dose inhaler. Those three items are recited in '793 patent, claims 2, 3, and 5. Those claims are not asserted against Liquidia. *See* UT's Infringement Contentions at 2. In addition, UT has already agreed to produce documents in response to Request 1. UT does not intend to exclude documents located by its search for documents in response to other Requests, such as Request 1, that involve the inhalers identified in Request 12, but UT also does not intend to perform an independent search only for Request 12, as the corresponding claims are not asserted. During the meet and confer, we understood Liquidia would revisit this Request. Please let us know the result of Liquidia's reconsideration and what alleged issue remains, if any.

**Requests 10, 13** – as discussed previously, Request 13 does not appear to seek anything not included within the scope of Request 10. Further, during the meet and confer, UT stated that it would produce documents in response to Request 1, which UT expects to contain documents also responsive to Requests 10 and/or 13, and UT stated that it did not intend to exclude documents it collects pursuant to Request 1 on grounds they are responsive to Requests 10 or 13. As a result, we do not see any remaining issue on these Requests. If Liquidia believes there is subject matter responsive to these Requests and not responsive to Request 1, as Liquidia stated but did not explain on the meet and confer, please let us know. We can be available to discuss if needed.

17

**Request 46** – this Request seeks a sample dry powder inhaler ("DPI") "disclosed and claimed in the '793 patent" and suffers from a lack of clarity similar to Request 45, which is addressed below. The '793 patent claims a method of treatment that can use a DPI. To the extent Liquidia intended to seek *any* DPI that *could* be used to infringe the methods claimed in the '793 patent, it should have said so.

**Request 53 –** during the meet and confer, Liquidia stated that this request seeks "core litigation documents" such as claim construction briefing, expert reports, etc. Those documents are addressed by other requests, so it is not clear what alleged dispute exists for Request 53. In addition, Liquidia stated on the meet and confer that it would consider narrowing this Request. Please let us know if any alleged dispute remains, and if so, what that dispute is, and if Liquidia is willing to narrow this Request to address UT's objections.

**Requests 59, 60, 65 –** these requests were grouped on the meet and confer as relating to damages discovery. Unless Liquidia is already intending to launch at risk, we do not see how damages discovery is not premature. If you disagree, please explain. In addition, Liquidia has never responded to UT's objections to Request 60 as overly broad and not proportional to the needs of the case. For Request 65, please explain how the requested subject matter allegedly relates to damages.

**Request 15** – Liquidia has never explained why it thinks *every single document* in prior productions is relevant. Indeed, it is likely the previous cases against different defendants and with different patents and different proposed products involved documents that are not relevant here. Nevertheless, in the interest of compromise and to avoid burdening the Court with a dispute, UT agrees to produce documents from the identified previous cases located after a reasonable search and subject to review for relevance and other objections. To be clear, UT reserves the right to withhold documents pursuant to its objections as review and re-production of these documents proceeds. We trust this resolves the issue.

**Request 16** – your email below focuses on RFAs, but does not explain why RFPs would be relevant. Requests for Production to UT have no bearing on the claims or defenses here, and Liquidia has not explained otherwise. Regarding RFAs, UT agrees to produce responsive, non-privileged RFAs related to the asserted patents (or the '393, '507, or '240 patents) located after a reasonable search.

**Request 17** – as previously stated, narrowed Request 17 remains overbroad because, for example, "not every deposition transcript has relevance to this case simply because the deposition was taken in a case that included an asserted patent or one of the '393, '607, or '240 patents." For example, not all employee depositions would automatically have relevance here, as they might address topics unique to a previous case. The same goes for certain experts. As a result, UT agreed to "produce deposition transcripts relating to invalidity issues and development of the subject matter of the patents-in-suit." That category may or may not include *all* transcripts of any "Plaintiff employee, former employee, in any Hatch-Waxman litigation involving U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240," but it does include the transcripts for which Liquidia has identified a basis of alleged relevance. If you think there is something relevant beyond what UT has agreed to produce, please describe it. Otherwise, it does not appear that there is any genuine dispute for this Request.

**Request 18** – although this issue is resolved, UT notes that prior art may be included in UT's productions of documents from previous litigations (as addressed above with respect to Request 15).

**Request 20** – UT is treating the asserted patents and the '393, '507, and '240 patents as inclusive criteria and does not intend to use additional patents as exclusive criteria in its search, evaluation, and production.

**Request 35** – there are several points to address. First, UT is not "attempt[ing]" to limit the 6-year discovery cut-off exception to "asserted" prior art. The District of Delaware set that limit in the Default Standard:

Absent a showing of good cause, follow-up discovery shall be limited to a term of 6 years before the filing of the complaint, except that discovery related to *asserted* prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited.

Delaware Default Standard ¶4.e. (emphasis added). Now that Liquidia has identified prior art it is asserting, it is at least possible to evaluate whether any given meeting minutes, to the extent they exist, relate to that prior art.

Second, if Liquidia has an issue with UT's responses and productions, that is a discovery issue that should be addressed after the meet and confer process ends, not after some indeterminate delay by Liquidia. That is particularly true where Liquidia appears to be taking the extreme position that UT should not be able to rely on *any* document older than 6 years if UT has not produced *all* documents older than 6 years. That position simply does not square with the Default Standard in which *the Court*—not UT—set the 6 year limit.  Further, assuming Liquidia's threatened "[motion] to exclude" is a motion in limine or motion to strike around the time of expert discovery, Liquidia's needless delay would be a waiver, not a unilaterally-awarded basis for a needless and more extreme remedy.

Third, characterizing UT's position as a "refusal to produce relevant documents responsive to this request" is plainly incorrect. UT has already <u>agreed to produce</u> documents relating to conception and reduction to practice. And above UT <u>agreed to produce</u> documents produced in previous cases, subject to its objections and ongoing review. It is likely that, to the extent the meeting minutes Liquidia seeks even exist anymore, they're most likely to be found in the previous productions that Liquidia will receive. Thus, there is no merit to the accusation that UT has "refused" to produce responsive documents. Indeed, it is not even clear what documents Liquidia thinks are being withheld.

Fourth, we note that good cause cannot exist simply because a document is allegedly relevant. If that were the case, the exception would swallow the rule. Please let us know if Liquidia has any authority on this issue, or if it has any other explanation to offer regarding any alleged good cause, as we are glad to consider it.

Lastly, please clarify the meaning of "key opinion leader" within the meaning of Liquidia's request.

**Request 74** – UT is willing to further consider Liquidia's request if Liquidia identifies foreign litigations that it contends contain documents such as confidential trial/hearing transcripts relating to invalidity issues and development of the subject matter of the Patents-in-Suit (or the '393, '507, or '240 patents).

**Samples.** UT has not been able to locate any samples responsive to Request 43 or 48, thus mooting any dispute as to those two Requests. Request 45 seeks "One gram of treprostinil salt powder made in accordance with the '793 patent." A major problem with Liquidia's request is that it seeks a sample "made in accordance with" the '793 patent, but the '793 patent describes a method of treatment, not, for example, a method of manufacturing. In an attempt to fix that issue, Liquidia now appears to revise its request to seek a sample of powder "made by UT that falls within the scope of the asserted '793 patent claims." Again, the claims are directed to methods of treatment, so even this redefined request poses problems. To the extent Liquidia intended to request *any* sample powder that *could* be used with the claimed method, it should have said so. In any event, the '793 application was filed in 2007 and claims priority to a provision filed in 2006, and UT has not located any samples from that time frame.

Best,

Art

Arthur P. Dykhuis ▪ Wilson Sonsini Goodrich & Rosati, PC
12235 El Camino Real, San Diego, CA 92130-3002
Phone: (858) 350-2390 ▪ Fax: (858) 350-2399

**From:** Krickl, Lauren <lkrickl@cooley.com>
**Sent:** Friday, November 13, 2020 1:47 PM
**To:** Dykhuis, Art <adykhuis@wsgr.com>; Mack, Joshua <jmack@wsgr.com>; Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Cc:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Carsten, Douglas <dcarsten@wsgr.com>; William Jackson <wjackson@bsfllp.com>; Burrowbridge, Adam <aburrowbridge@wsgr.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>; WSGR - UTC - LIQUIDIA <utc-liquidia@wsgr.com>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

[External]
Art,

Liquidia's positions in response to your November 6 email are set forth below.  We believe, however, that several issues discussed during the October 30 meet-and-confer remain unresolved.  Please confirm whether or not UT will produce documents and/or things responsive to Requests 7, 10-13, 46, 53, 65, 59-60, 73, and 76-77, as outlined in the parties' letters and discussed on October 30.

In addition, the below requests present several outstanding issues:

**Request No. 14.**  Liquidia appreciates UT's willingness to produce documents and things responsive to the narrowed Request, and considers this request resolved.

**Request No. 15.**  As noted in UT's November 6 email, the unique documents sought by Request 15 include any document productions from prior cases not encompassed by RFPs 14, 17, 18, and 74.  These include, at the very least, the production of relevant notebooks and data (which is shared amongst the Patents-in-Suit and the '393, '507, and '240 patents), meeting minutes and memoranda regarding development of the inventions described in the shared specifications.  The fact that these cases were filed 6, 7, or 8 years ago has no bearing on UT's duty to search for and produce such relevant documents.  To the extent UT is asserting that it is conducting its collection of relevant documents from scratch, please so state.  These documents are relevant to the invalidity/validity of the Patents-in-Suit for the reasons explained in the October 8 letter and during the meet-and-confer.  Also, as noted in our November 3 email, any potential overlap in subject matter with other requests does not provide a basis to refuse production.  Setting aside any overlap, please confirm whether or not UT will produce documents responsive to Request 15.

**Request No. 16.**  The RFP and RFA responses covered by this Request are in fact relevant and proportional to the needs of this case.  UT misreads FRCP 36, which merely states that an RFA is a tool used to request admission for purposes of the pending action only.  FRCP 36 does not stand for the proposition that RFA responses in one action are never relevant to another action.  Further, while an RFA response in one case may not function as an admission in a second case, that RFA response may still be relevant in the second case.  And here, admissions regarding the '393, '507, or '240 patents are relevant to the instant action due to the similarities of these patents with the Patents-in-Suit.  As noted, any subject matter overlap among the requests caused by Liquidia's narrowing efforts is not a basis to refuse production.  Nonetheless, to clarify, the unique documents sought by Request 16 are: "Plaintiff's responses to **RFPs and RFAs** regarding patent invalidity/validity served in any Hatch-Waxman litigation involving U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240."

**Request No. 17.**  Liquidia appreciates UT's willingness to produce documents and things responsive to the narrowed Request.  However, please confirm that UT will also produce the deposition transcripts of "a Plaintiff employee, former employee, in any Hatch-Waxman litigation involving U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240."  Deposition transcripts as called for by narrowed RFP 17 would also include depositions of the named inventors of the patents identified herein, which overlap with the named inventors on the Patents-In-Suit.

**Request No. 18**.  Liquidia notes that this Request is not covered by Request 14, which seeks invalidity contentions and interrogatory responses—not prior art itself.  The collection of the requested prior art is no "easier" for Liquidia than it is for UT; in fact, the relative ease of access is likely greater for UT, particularly to the extent any prior art was served but not filed in previous litigations.  However, in the interest of compromise, and based on UT's confirmation that it will produce contentions called for by RFP 14, Liquidia will review those documents and identify and prior art that may subsequently need to be produced by UT.

**Request No. 19**.  Similar to Request No. 18, the claim construction briefings requested here are more easily accessible to UT than to Liquidia.  However, in the interest of compromise, Liquidia appreciates UT's willingness to produce documents and things responsive to the narrowed Request and Liquidia will identify any such documents.

**Request No. 20**.  Liquidia appreciates UT's willingness to produce documents and things responsive to the narrowed Request.  However, please clarify what UT means by the clause "and only for reports addressing those patents," and whether this means that UT will exclude expert reports addressing the '393, '507, and/or '240 patents **plus** other patents.

**Request No. 21**.  Liquidia appreciates UT's willingness to produce documents and things responsive to the narrowed Request and Liquidia will identify any such documents.

**Request No. 22**.  Liquidia appreciates UT's willingness to produce documents and things responsive to the narrowed Request, and considers this request resolved.

**Request No. 35**.  UT's attempt to limit the 6-year discovery cut-off exception to "asserted" prior art is misplaced.  By this Friday, Nov. 13, 2020, Liquidia will have served its initial invalidity contentions "asserting" specific prior art references.  The ongoing nature of Liquidia's development of its invalidity defenses, and which prior art references are "asserted" at any given time, does not relieve UT's obligation to search for and produce documents responsive to Request 35.  At minimum, UT should produce documents responsive to Request 35 that are relevant to the prior art asserted in Liquidia's initial invalidity contentions.  "Good cause" for such documents is readily apparent due to their direct relevance to Liquidia's invalidity defenses.  To the extent UT attempts to rely on documents created beyond the purported 6-year limit, Liquidia will move to exclude such documents relying explicitly on UT's refusal to produce relevant documents responsive to this request.

**Request No. 74**.  To clarify, as to any foreign litigation, and as stated during our meet and confer, Liquidia requests all transcripts (and exhibits thereto) of any court or deposition testimony by any fact or expert witness deposed or testifying on behalf of Plaintiff in any foreign litigation involving **foreign counterparts** to the Patents-in-Suit or U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240.  Please confirm whether or not UT agrees to produce responsive documents from foreign litigation, in light of this clarification.  Apart from that issue, and in the interest of compromise, Liquidia is willing to agree to UT's further narrowing of this already-narrowed request to "trial/hearing transcripts relating to invalidity issues and development of the subject matter of the Patents-in-Suit (or the '393, '607 [sic], or '240 patents)." To the extent those transcripts reveal that a deposition in those foreign proceedings did occur, Liquidia will seek production of that deposition transcript as falling within the scope of RFP 74.

**Samples**.  Liquidia looks forward to UT's update regarding the samples relating to Requests 43 and 48.  Regarding Request 45, Liquidia reiterates that the requested sample of treprostinil salt powder is directly relevant to UT's infringement claims and Liquidia's invalidity defenses (including § 112 defenses) regarding the '793 Patent.  Even though the claims of the '793 Patent are directed to methods of treatment, the '793 Patent specification describes—albeit briefly—compositions where the formulation is a powder administered with a dry powder inhaler.  *See* '793 Patent, 7:22-26.  Moreover, UT has expressly asserted claims 4, 6 and 7 of the '793 Patent, which require that the "inhalation device" of claim 1 is a "dry powder inhaler" (claim 4) and "formulation" of claim 1 is a "powder" (claim 6), and that the "powder" "comprises particles less than 5 micrometers in diameter."  As such, there is absolutely no ambiguity that "treprostinil salt powder made in accordance with the '793 patent" is a sample of treprostinil salt powder made by UT

that falls within the scope of the asserted '793 patent claims.  Please confirm whether this clarification affects UT's position, or if the parties remain at an impasse.

Please advise whether UT has any further questions regarding the above issues.  We look forward to your prompt response.

Best,
Lauren

Lauren Krickl
Direct: +1 650 843 5065

---

**From:** Dykhuis, Art <adykhuis@wsgr.com>
**Sent:** Friday, November 6, 2020 5:42 PM
**To:** Krickl, Lauren <lkrickl@cooley.com>; Mack, Joshua <jmack@wsgr.com>; Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Cc:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Carsten, Douglas <dcarsten@wsgr.com>; William Jackson <wjackson@bsfllp.com>; Burrowbridge, Adam <aburrowbridge@wsgr.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>; WSGR - UTC - LIQUIDIA <utc-liquidia@wsgr.com>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

**[External]**

---

Lauren,

Following up on the parties' meet and confer, held October 30, 2020, and your email from November 3, UT's positions are set forth below.

**Request No. 14**. Liquidia has narrowed this Request to "All documents and things relating to any invalidity/validity contentions or responses to interrogatories regarding patent invalidity/validity in any litigation or proceeding involving the Patents-in-Suit or U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240." UT maintains its objections but, in the interest of compromise and to avoid burdening the Court, agrees to produce invalidity/validity contentions and invalidity/validity contention interrogatory responses for cases in which the Patents-in-Suit or the '393 patent, '507 patent, or '240 patents were asserted, to the extent that such documents exist, are not publicly available, and are found in its possession, custody, or control after a reasonably diligent search of its files.

**Request No. 15**. Liquidia has narrowed this Request to "All documents and things relating to patent invalidity/validity produced by Plaintiff in any Hatch-Waxman litigation involving U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240." Without prejudice to any of UT's other objections, narrowed Request 15 remains overly broad and unclear. During the meet and confer, Liquidia framed this request in terms of previous productions in other cases. Some of the cases were filed 6, 7, 8 years ago. As a result, it should not be assumed that the databases are still maintained or that there are any known, readily segregable portions of past productions that could be produced. Further, narrowed Request 14 covers invalidity contentions, narrowed Requests 17 and 74 cover transcripts of depositions and trials/hearings, and narrowed Request 18 seeks prior art. Please let us know what unique documents narrowed Request 15 seeks.

**Request No. 16**. Liquidia has narrowed this Request to "Plaintiff's responses to any written discovery (including contentions) regarding patent invalidity/validity served in any Hatch-Waxman litigation involving U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240." Without prejudice to any of UT's other objections, narrowed Request 14 above already includes contentions and invalidity/validity contention interrogatories and therefore narrowed Request 16 is

cumulative. In addition, responses to requests for production are not relevant (nor would they be proportional to the needs of the case), and requests for admission are defined by FRCP 36 as "for purposes of the pending action only." As a result, there does not appear to be any discoverable subject matter within the scope of narrowed Request 16 not otherwise covered by other requests, such as narrowed Request 14. To the extent Liquidia contends otherwise, please clarify and identify what materials Liquidia is seeking.

**Request No. 17**. Liquidia has narrowed this Request to "Transcripts of all depositions of a Plaintiff employee, former employee, or expert offered by Plaintiff in any Hatch-Waxman litigation involving U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240." Without prejudice to any of UT's other objections, narrowed Request 17 remains overly broad and not proportional to the needs of the case. For example, infringement expert depositions would implicate third party confidentiality and protective order issues, and not every deposition transcript has relevance to this case simply because the deposition was taken in a case that included an asserted patent or one of the '393, '607, or '240 patents. Nevertheless, in the interest of compromise and to avoid burdening the Court, UT agrees to produce deposition transcripts relating to invalidity issues and development of the subject matter of the patents-in-suit (or the '393, '607, or '240 patents) to the extent that such documents exist, are not publicly available, and are found in its possession, custody, or control after a reasonably diligent search of its files.

**Request No. 18**. Liquidia has narrowed this Request to "All prior art in any Hatch-Waxman litigation involving U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240." Prior art will presumably be identified in the materials sought by narrowed Request 14. In addition, as you know, all prior art in a case is not necessarily produced together, or all the same time, such that it is readily available for production. Rather, it may be interspersed with other materials that are not relevant or discoverable in this action. And even that assumes that production databases are still maintained and reasonably available. As a result, the requested production is not necessarily as "easy" as Liquidia implies, and the more appropriate course is for Liquidia to locate the prior art it desires after reviewing the materials from narrowed Request 14. If the prior art truly is prior art, Liquidia should be able to locate copies of the references from public sources. To the extent Liquidia is unable to obtain copies of prior art and identifies that prior art to UT, and without prejudice to UT's objections, UT conceptually agrees to search for and produce a reasonable number of specific documents to the degree those documents are within its custody and control and located after a reasonably diligent search of its files.

**Request No. 19**. Liquidia has narrowed this Request to "All claim construction briefing filed in any Hatch-Waxman litigation involving U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240." UT maintains its objections and notes that, of the nine cases identified in original Request 19, all but two still include at least one of the identified patents. UT maintains its position that when it comes to publicly available claim construction briefing, Liquidia should simply download the materials it desires from PACER. To the extent Liquidia is unable to obtain copies of the filings, potentially due to filings under seal (if redacted materials were not filed), and Liquidia identifies those documents to UT, UT conceptually agrees to search for and produce a reasonable number of specific documents to the degree those documents are within its custody and control and located after a reasonably diligent search of its files.

**Request No. 20**. Liquidia has narrowed this Request to "All expert reports served by Plaintiff addressing patent invalidity/validity in any Hatch-Waxman litigation involving U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240." UT maintains its objections but, in the interest of compromise and to avoid burdening the Court, agrees to produce invalidity/validity expert reports (to the extent not precluded by third party confidentiality or protective order issues) for cases in which the Patents-in-Suit or the '393 patent, '507 patent, or '240 patents were asserted, and only for reports addressing those patents, to the extent that such documents exist, are not publicly available, and are found in its possession, custody, or control after a reasonably diligent search of its files.

**Request No. 21**. Liquidia has narrowed this Request to "All non-public or withdrawn documents and things from post-grant proceedings involving any of the Patents-in-Suit, including but not limited to, any reexaminations, post-grant reviews, reissues, inter partes review proceedings, opposition proceedings, nullity actions, or court proceedings." UT maintains its objections but, in the interest of compromise and to avoid burdening the Court, agrees to produce the documents called for by narrowed Request 21 that Liquidia identifies to UT and to the extent that such documents exist and are found in its possession, custody, or control after a reasonably diligent search of its files.

**Request No. 22**. Liquidia has narrowed this Request to "Unredacted versions of Papers 10, 12, and 31 and Exhibits 2003-2006, 2020, 2037, 2051-2054 from IPR2016-00006 involving U.S. Patent No. 8,497,393, and unredacted versions of Exhibits 2049-2051, 2053, 2055, 2058, 2065-2068, 2071, 2074, 2075, 2083, 2088, 2089, and 2204 from IPR2017-01621 and IPR2017-01622 regarding U.S. Patent Nos. 9,358,240 and 9,339,507, respectively." UT maintains its objections but, in the interest of compromise and to avoid burdening the Court, agrees to produce the expressly identified documents to the extent that such documents exist and are found in its possession, custody, or control after a reasonably diligent search of its files.

**Request No. 35**. Liquidia has narrowed this Request to "All documents and things concerning scientific advisory board meetings or other meetings with key opinion leaders ("KOLs") held between 2003 and 2009, including, but not limited to, agendas, materials disseminated to the board members, meeting notes, presentations, and correspondence regarding any treprostinil product(s), including but not limited to TYVASO®." UT appreciates Liquidia's narrowing of this Request to 2003-2009, instead of back to 1996. Still, without prejudice to UT's other objections, the narrowed Request remains problematic because the exception to the Default Standard's limitation applies to "asserted prior art," and Liquidia has not asserted any prior art yet, nor has Liquidia related the requested documents to any asserted prior art. And UT has already agreed to produce materials related to conception and reduction to practice. Please explain Liquidia's alleged basis for "good cause" to seek materials—aside from conception and reduction to practice materials— beyond the 6 year limit in the Default Standard (or confirm whether Liquidia's only alleged basis for good cause is the potential existence of document databases from cases filed in 2012 that Liquidia speculates might have included documents or things concerning meetings dating back to 2006).

**Request No. 74**. Liquidia has narrowed this Request to "All transcripts (and exhibits thereto) of any court or deposition testimony by any fact or expert witness deposed or testifying on behalf of Plaintiff in any U.S. or foreign litigation involving the Patents-in-Suit or U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240." As an initial matter, it is our understanding that US patents cannot be asserted in foreign jurisdictions. Narrowed Request 74 thus does not include any materials from foreign litigations. In addition, not all fact witnesses or expert witnesses are necessarily relevant to this case, as noted above, and narrowed Request 17 (addressed above) already seeks deposition transcripts.  As a result, UT interprets this request as calling for trial or hearing testimony only. With that understanding, in the interest of compromise and to avoid burdening the Court, UT agrees to produce trial/hearing transcripts relating to invalidity issues and development of the subject matter of the patents-in-suit (or the '393, '607, or '240 patents) to the extent that such documents exist, are not publicly available, and are found in its possession, custody, or control after a reasonably diligent search of its files.

**Samples**. Your email below references Requests 43, 45, and 48 regarding samples. UT continues to believe that samples of UT products are not relevant in this case, and nothing Liquidia stated on the meet and confer shows otherwise. Nevertheless, UT is continuing to investigate whether samples relating to Request 43 (seeking a sample made according to a "former process") and Request 48 (seeking a sample made according to the process described in an article by Moriarty) exist. We will provide an update as soon as we know more. Regarding Request 45—and as noted previously— the '793 patent is generally directed to a method for treating pulmonary hypertension. As a result, it still is not clear what Liquidia means by its request for a treprostinil salt powder "made in accordance with" the '793 patent. If Liquidia is able to clarify, UT is willing to consider the request further.

***

In view of the above responses and compromises, and with the exception of a few alleged issues where we posed questions above or where UT is gathering information, we believe the parties have resolved the issues identified by Liquidia (in the email below and/or during the meet and confer). Please let us know if you have any further questions.

Best,

Art

Arthur P. Dykhuis ▪ Wilson Sonsini Goodrich & Rosati, PC
12235 El Camino Real, San Diego, CA 92130-3002
Phone: (858) 350-2390 ▪ Fax: (858) 350-2399

---

**From:** Dykhuis, Art <adykhuis@wsgr.com>
**Sent:** Wednesday, November 4, 2020 8:05 AM
**To:** Krickl, Lauren <lkrickl@cooley.com>; Mack, Joshua <jmack@wsgr.com>; Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Cc:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Carsten, Douglas <dcarsten@wsgr.com>; William Jackson <wjackson@bsfllp.com>; Burrowbridge, Adam <aburrowbridge@wsgr.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>; WSGR - UTC - LIQUIDIA <utc-liquidia@wsgr.com>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

Lauren,

We are considering the issues discussed during the meet and confer and will consider the bullets below as well. Regarding overlapping requests, it is not clear how narrowing requests would cause them to overlap if they did not already. UT reserves all rights to maintain its objections, including those regarding cumulativeness. In any event, we will let you know UT's positions on the narrowed requests and the requested samples, and we plan to send you our positions by the end of the week as discussed during the meet and confer.

Best,

Art

Arthur P. Dykhuis ▪ Wilson Sonsini Goodrich & Rosati, PC
12235 El Camino Real, San Diego, CA 92130-3002
Phone: (858) 350-2390 ▪ Fax: (858) 350-2399

---

**From:** Krickl, Lauren <lkrickl@cooley.com>
**Sent:** Tuesday, November 3, 2020 11:41 AM
**To:** Dykhuis, Art <adykhuis@wsgr.com>; Mack, Joshua <jmack@wsgr.com>; Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Cc:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Carsten, Douglas <dcarsten@wsgr.com>; William Jackson <wjackson@bsfllp.com>; Burrowbridge, Adam <aburrowbridge@wsgr.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>; WSGR - UTC - LIQUIDIA <utc-liquidia@wsgr.com>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

[External]
Counsel,

We write to memorialize our Oct. 30, 2020 meet-and-confer regarding UT's RFP responses.  As discussed, Liquidia is willing to narrow its Requests as shown below (bold emphasis indicates narrowed subject matter).  To the extent certain of Liquidia's RFPs now cover overlapping subject matter, due to Liquidia's cooperation in narrowing the RFPs, such overlap is not a basis for UT to refuse production of the requested documents.

- <u>Request 14</u> – All documents and things relating to any **invalidity/validity contentions or responses to interrogatories regarding patent invalidity/validity** in any litigation or proceeding involving the Patents-in-Suit or **U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240**.
- <u>Request 15</u> – All documents and things **relating to patent invalidity/validity** produced by Plaintiff in any Hatch-Waxman litigation involving **U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240**.
- <u>Request 16</u> – Plaintiff's responses to any written discovery (including contentions) **regarding patent invalidity/validity served** in any Hatch-Waxman litigation involving **U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240**.
- <u>Request 17</u> – Transcripts of all depositions of a Plaintiff employee, former employee, or expert offered by Plaintiff in any Hatch-Waxman litigation involving **U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240**.
- <u>Request 18</u> – All prior art in any Hatch-Waxman litigation involving **U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240**.
- <u>Request 19</u> – All claim construction briefing filed in any Hatch-Waxman litigation involving **U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240**.
- <u>Request 20</u> – All expert reports **served** by Plaintiff addressing **patent invalidity/validity** in any Hatch-Waxman litigation involving **U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240**.
- <u>Request 21</u> – All **non-public or withdrawn** documents and things from post-grant proceedings involving any of the Patents-in-Suit, including but not limited to, any reexaminations, post-grant reviews, reissues, *inter partes* review proceedings, opposition proceedings, nullity actions, or court proceedings.
- <u>Request 22</u> – **Unredacted versions of Papers 10, 12, and 31 and Exhibits 2003-2006, 2020, 2037, 2051-2054 from IPR2016-00006** involving U.S. Patent No. 8,497,393, and unredacted versions of Exhibits 2049-2051, 2053, 2055, 2058, 2065-2068, 2071, 2074, 2075, 2083, 2088, 2089, and 2204 from IPR2017-01621 and IPR2017-01622 regarding U.S. Patent Nos. 9,358,240 and 9,339,507, respectively.
- <u>Request 35</u> – All documents and things concerning scientific advisory board meetings or other meetings with key opinion leaders ("KOLs") held between **2003** and 2009, including, but not limited to, agendas, materials disseminated to the board members, meeting notes, presentations, and correspondence regarding any treprostinil product(s), including but not limited to TYVASO®.
- <u>Request 74</u> – All transcripts (and exhibits thereto) of any court or deposition testimony by any fact or expert witness deposed or testifying on behalf of Plaintiff in any U.S. or foreign litigation involving the Patents-in-Suit or **U.S. Patent Nos. 8,497,393; 9,339,507; and 9,358,240**.

Additionally, with respect to RFPs 43, 45, and 48, which request samples of treprostinil salt made according to the process identified as the "Former Process" in Example 6 of the '066 and '901 patents, treprostinil salt powder made in accordance with the '793 patent, and treprostinil salt prepared according to the process disclosed in *Moriarty*, respectively, please confirm that UT has determined such samples exist and that it will produce such samples to Liquidia.

As discussed on Friday, please let us know by **this Thursday, Nov. 5**, whether UT agrees to produce documents responsive to the narrowed Requests described above, as well as to Requests 43, 45, and 48.

Thanks,
Lauren

Lauren Krickl
Direct: +1 650 843 5065

---

**From:** Dykhuis, Art <adykhuis@wsgr.com>
**Sent:** Monday, October 26, 2020 1:46 PM
**To:** Krickl, Lauren <lkrickl@cooley.com>; Mack, Joshua <jmack@wsgr.com>; Elrifi, Ivor <ielrifi@cooley.com>; Sukduang,

Sanya <[ssukduang@cooley.com](mailto:ssukduang@cooley.com)>; Milch, Erik <[emilch@cooley.com](mailto:emilch@cooley.com)>; Davies, Jonathan <[jdavies@cooley.com](mailto:jdavies@cooley.com)>; Kannappan, Deepa <[dkannappan@cooley.com](mailto:dkannappan@cooley.com)>; Eskola, Melissa <[meskola@cooley.com](mailto:meskola@cooley.com)>; Elliott, Debra <[ELLIOTTDS@cooley.com](mailto:ELLIOTTDS@cooley.com)>; Karen Keller <[kkeller@shawkeller.com](mailto:kkeller@shawkeller.com)>; Jeff Castellano <[jcastellano@shawkeller.com](mailto:jcastellano@shawkeller.com)>; Nate Hoeschen <[nhoeschen@shawkeller.com](mailto:nhoeschen@shawkeller.com)>; David Fry <[dfry@shawkeller.com](mailto:dfry@shawkeller.com)>
**Cc:** Blumenfeld, Jack <[JBlumenfeld@MNAT.com](mailto:JBlumenfeld@MNAT.com)>; Carsten, Douglas <[dcarsten@wsgr.com](mailto:dcarsten@wsgr.com)>; William Jackson <[wjackson@bsfllp.com](mailto:wjackson@bsfllp.com)>; Burrowbridge, Adam <[aburrowbridge@wsgr.com](mailto:aburrowbridge@wsgr.com)>; Flynn, Michael J. <[michael.flynn@mnat.com](mailto:michael.flynn@mnat.com)>; Chard, Beth Ann <[BChard@MNAT.com](mailto:BChard@MNAT.com)>; WSGR - UTC - LIQUIDIA <[utc-liquidia@wsgr.com](mailto:utc-liquidia@wsgr.com)>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

**[External]**

Lauren – yes, Pacific time.

Thanks,

Art

---

**From:** Krickl, Lauren <[lkrickl@cooley.com](mailto:lkrickl@cooley.com)>
**Sent:** Monday, October 26, 2020 1:16 PM
**To:** Dykhuis, Art <[adykhuis@wsgr.com](mailto:adykhuis@wsgr.com)>; Mack, Joshua <[jmack@wsgr.com](mailto:jmack@wsgr.com)>; Elrifi, Ivor <[ielrifi@cooley.com](mailto:ielrifi@cooley.com)>; Sukduang, Sanya <[ssukduang@cooley.com](mailto:ssukduang@cooley.com)>; Milch, Erik <[emilch@cooley.com](mailto:emilch@cooley.com)>; Davies, Jonathan <[jdavies@cooley.com](mailto:jdavies@cooley.com)>; Kannappan, Deepa <[dkannappan@cooley.com](mailto:dkannappan@cooley.com)>; Eskola, Melissa <[meskola@cooley.com](mailto:meskola@cooley.com)>; Elliott, Debra <[ELLIOTTDS@cooley.com](mailto:ELLIOTTDS@cooley.com)>; Karen Keller <[kkeller@shawkeller.com](mailto:kkeller@shawkeller.com)>; Jeff Castellano <[jcastellano@shawkeller.com](mailto:jcastellano@shawkeller.com)>; Nate Hoeschen <[nhoeschen@shawkeller.com](mailto:nhoeschen@shawkeller.com)>; David Fry <[dfry@shawkeller.com](mailto:dfry@shawkeller.com)>
**Cc:** Blumenfeld, Jack <[JBlumenfeld@MNAT.com](mailto:JBlumenfeld@MNAT.com)>; Carsten, Douglas <[dcarsten@wsgr.com](mailto:dcarsten@wsgr.com)>; William Jackson <[wjackson@bsfllp.com](mailto:wjackson@bsfllp.com)>; Burrowbridge, Adam <[aburrowbridge@wsgr.com](mailto:aburrowbridge@wsgr.com)>; Flynn, Michael J. <[michael.flynn@mnat.com](mailto:michael.flynn@mnat.com)>; Chard, Beth Ann <[BChard@MNAT.com](mailto:BChard@MNAT.com)>; WSGR - UTC - LIQUIDIA <[utc-liquidia@wsgr.com](mailto:utc-liquidia@wsgr.com)>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

[External]
Hi Art,

1pm Pacific on Friday works for us – I'll send a dial-in.  (Please confirm that you were referring to Pacific time.)  We will be prepared to discuss the 10/16/2020 letter then.

Thanks,
Lauren

Lauren Krickl
Direct: +1 650 843 5065

---

**From:** Dykhuis, Art <[adykhuis@wsgr.com](mailto:adykhuis@wsgr.com)>
**Sent:** Monday, October 26, 2020 11:43 AM
**To:** Krickl, Lauren <[lkrickl@cooley.com](mailto:lkrickl@cooley.com)>; Mack, Joshua <[jmack@wsgr.com](mailto:jmack@wsgr.com)>; Elrifi, Ivor <[ielrifi@cooley.com](mailto:ielrifi@cooley.com)>; Sukduang, Sanya <[ssukduang@cooley.com](mailto:ssukduang@cooley.com)>; Milch, Erik <[emilch@cooley.com](mailto:emilch@cooley.com)>; Davies, Jonathan <[jdavies@cooley.com](mailto:jdavies@cooley.com)>; Kannappan, Deepa <[dkannappan@cooley.com](mailto:dkannappan@cooley.com)>; Eskola, Melissa <[meskola@cooley.com](mailto:meskola@cooley.com)>; Elliott, Debra <[ELLIOTTDS@cooley.com](mailto:ELLIOTTDS@cooley.com)>; Karen Keller <[kkeller@shawkeller.com](mailto:kkeller@shawkeller.com)>; Jeff Castellano <[jcastellano@shawkeller.com](mailto:jcastellano@shawkeller.com)>; Nate Hoeschen <[nhoeschen@shawkeller.com](mailto:nhoeschen@shawkeller.com)>; David Fry <[dfry@shawkeller.com](mailto:dfry@shawkeller.com)>
**Cc:** Blumenfeld, Jack <[JBlumenfeld@MNAT.com](mailto:JBlumenfeld@MNAT.com)>; Carsten, Douglas <[dcarsten@wsgr.com](mailto:dcarsten@wsgr.com)>; William Jackson <[wjackson@bsfllp.com](mailto:wjackson@bsfllp.com)>; Burrowbridge, Adam <[aburrowbridge@wsgr.com](mailto:aburrowbridge@wsgr.com)>; Flynn, Michael J.

<michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>; WSGR - UTC - LIQUIDIA <utc-liquidia@wsgr.com>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

**[External]**

Lauren – we can be available this Friday at 1 or 2pm. If either time works, please let us know and circulate a dial-in for the call. In addition, please let us know if (and when) we should expect a further response to our letter of 10/16/2020.

Thanks,

Art

Arthur P. Dykhuis ▪ Wilson Sonsini Goodrich & Rosati, PC
12235 El Camino Real, San Diego, CA 92130-3002
Phone: (858) 350-2390 ▪ Fax: (858) 350-2399

**From:** Krickl, Lauren <lkrickl@cooley.com>
**Sent:** Friday, October 23, 2020 2:14 PM
**To:** Mack, Joshua <jmack@wsgr.com>; Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Cc:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Carsten, Douglas <dcarsten@wsgr.com>; William Jackson <wjackson@bsfllp.com>; Burrowbridge, Adam <aburrowbridge@wsgr.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>; WSGR - UTC - LIQUIDIA <utc-liquidia@wsgr.com>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

**[External]**
Counsel,

Please let us know your availability to meet and confer next week on the issues outlined in the parties' letters regarding UT's RFP responses.

Thank you,
Lauren

Lauren Krickl
Direct: +1 650 843 5065

**From:** Mack, Joshua <jmack@wsgr.com>
**Sent:** Friday, October 16, 2020 3:25 PM
**To:** Krickl, Lauren <lkrickl@cooley.com>; Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Cc:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Carsten, Douglas <dcarsten@wsgr.com>; William Jackson <wjackson@bsfllp.com>; Burrowbridge, Adam <aburrowbridge@wsgr.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>; WSGR - UTC - LIQUIDIA <utc-liquidia@wsgr.com>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

[External]

Counsel,

Please see the attached correspondence.

Regards,

**Josh Mack**
Wilson Sonsini Goodrich & Rosati
12235 El Camino Real
San Diego, CA 92130
Telephone: 858-350-2224

**From:** Krickl, Lauren <lkrickl@cooley.com>
**Sent:** Thursday, October 8, 2020 12:08 PM
**To:** Mack, Joshua <jmack@wsgr.com>; Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Carsten, Douglas <dcarsten@wsgr.com>; William Jackson <wjackson@bsfllp.com>; Burrowbridge, Adam <aburrowbridge@wsgr.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>
**Cc:** Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

[External]
Counsel,

Please see the attached correspondence.

Thank you,
Lauren

Lauren Krickl
Direct: +1 650 843 5065

**From:** Mack, Joshua <jmack@wsgr.com>
**Sent:** Wednesday, September 30, 2020 12:54 PM
**To:** Krickl, Lauren <lkrickl@cooley.com>; Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Carsten, Douglas <dcarsten@wsgr.com>; William Jackson <wjackson@bsfllp.com>; Burrowbridge, Adam <aburrowbridge@wsgr.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>
**Cc:** Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Subject:** RE: United Therapeutics v. Liquidia (20-755): Correspondence

[External]

Counsel,

29

Please see the attached correspondence.

Regards,

**Josh Mack**
Of Counsel
Wilson Sonsini Goodrich & Rosati
12235 El Camino Real
San Diego, CA 92130
Telephone: 858-350-2224

---

**From:** Krickl, Lauren <lkrickl@cooley.com>
**Sent:** Wednesday, September 23, 2020 1:54 PM
**To:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Carsten, Douglas <dcarsten@wsgr.com>; William Jackson <wjackson@bsfllp.com>; Mack, Joshua <jmack@wsgr.com>; Burrowbridge, Adam <aburrowbridge@wsgr.com>; Flynn, Michael J. <michael.flynn@mnat.com>; Chard, Beth Ann <BChard@MNAT.com>
**Cc:** Elrifi, Ivor <ielrifi@cooley.com>; Sukduang, Sanya <ssukduang@cooley.com>; Milch, Erik <emilch@cooley.com>; Davies, Jonathan <jdavies@cooley.com>; Kannappan, Deepa <dkannappan@cooley.com>; Eskola, Melissa <meskola@cooley.com>; Elliott, Debra <ELLIOTTDS@cooley.com>; Karen Keller <kkeller@shawkeller.com>; Jeff Castellano <jcastellano@shawkeller.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; David Fry <dfry@shawkeller.com>
**Subject:** United Therapeutics v. Liquidia (20-755): Correspondence

[External]
Counsel,

Please see the attached correspondence.

Thanks,
Lauren

Lauren Krickl
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
+1 650 843 5065 office
+1 650 849 7400 fax
Email: lkrickl@cooley.com

Cooley is one of Fortune's **100 Best Companies to Work For**

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distr bution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distr bution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distr bution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distr bution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distr bution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distr bution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distr bution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distr bution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distr bution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# EXHIBIT 8

REDACTED IN ITS ENTIRETY