IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 20-755 (RGA) (JLH) |
| LIQUIDIA TECHNOLOGIES, INC., | ) ) | |
| Defendant. | ) ) | |

**SECOND AMENDED COMPLAINT**

Plaintiff United Therapeutics Corporation ("UTC"), by its undersigned attorneys, for its

Second Amended Complaint against Liquidia Technologies, Inc. ("Liquidia") and Robert

Roscigno ("Dr. Roscigno"), alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for patent infringement arising under the patent laws of the

United States, Title 35, United States Code, Sections 100 *et seq.*, involving United States Patent

Nos. 9,593,066 ("the '066 patent") (attached as Exhibit A hereto), 9,604,901 ("the '901 patent")

(attached as Exhibit B hereto), and 10,716,793 ("the '793 patent") (attached as Exhibit C hereto)

(collectively, the "Patents-in-Suit"); for misappropriation of trade secrets under the North

Carolina Trade Secrets Protection Act, N.C. Gen. Stat. §§66-152 *et seq.*; for misappropriation of

trade secrets under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.;* and for

unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1.

2.      The patent claims in this action arise out of Liquidia's submission of New Drug

Application No. 213005 under § 505(b)(2) of the Federal Food, Drug and Cosmetic Act

("Liquidia's 505(b)(2) Application") to the United States Food and Drug Administration

1

("FDA") seeking approval, prior to the expiration of the '066 patent, the '901 patent, and the '793 patent, to manufacture, market, and sell a generic copy of UTC's TYVASO® (treprostinil) Inhalation Solution, 0.6 mg/ml that is approved by FDA for treatment of pulmonary arterial hypertension ("Liquidia's Proposed Generic Product").

3.      The related claims for misappropriation of trade secrets and unfair and deceptive trade practices arise out of Dr. Roscigno's work as an executive and inventor for United Therapeutics Corporation and subsidiary Lung Rx, Inc. ("Lung Rx"), including as a named inventor of the '793 patent and related to the TYVASO® product. Subsequently, Defendant Liquidia employed Dr. Roscigno as a Senior Vice President, Product Development, where he was instrumental in pushing Liquidia's Proposed Generic Product through clinical trials to submission of Liquidia's 505(b)(2) Application to the FDA.  During the still on-going discovery period for the patent claims in this action, UTC has discovered documents produced by Liquidia containing UTC's confidential information and trade secrets that, based upon information and belief, were taken by Dr. Roscigno and then used to obtain a competitive advantage in developing, testing, and seeking approval for Liquidia's Proposed Generic Product.

## THE PARTIES

4.      UTC is a corporation organized and existing under the laws of the State of Delaware and having a place of business at 1040 Spring Street, Silver Spring, Maryland 20910. UTC is a biotech company focused on the development and commercialization of products designed to address the needs of patients with chronic and life-threatening conditions.  UTC continues to research and develop treatments for cardiovascular and pulmonary diseases, pediatric cancers, and other orphan diseases.

5.      Upon information and belief, Liquidia is a corporation organized and existing under the laws of the State of Delaware, with a registered office at 51 Little Falls Drive, Wilmington, Delaware 19808, and a principal place of business at 419 Davis Drive, Suite 100, Morrisville, North Carolina 27560.

6.      Upon information and belief, to manufacture Liquidia's Proposed Generic Product, Liquidia purchases the treprostinil sodium active pharmaceutical ingredient ("API") from third-party manufacturer Yonsung Fine Chemicals Co., LTD ("Yonsung"), operating out of South Korea.  Upon information and belief, Liquidia will import treprostinil sodium API from Yonsung into the United States.

7.      Upon information and belief, Liquidia's Proposed Generic Product delivers treprostinil through a dry powder inhaler ("DPI") that is manufactured by Plastiape SpA ("Plastiape").  Upon information and belief, Plastiape has a principal place of business at Via Primo Maggio, 8 Osnago, 23875 Italy.  Upon information and belief, Plastiape is a wholly-owned subsidiary of Berry Global Group, Inc.  Upon information and belief, Berry Global Group, Inc. has a principal place of business at 101 Oakley Street, Evansville, Indiana 47710.

8.      Upon information and belief, Dr. Robert Roscigno was employed by Liquidia as recently as July 2020, and is currently residing within the United States.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to the provisions of 28 U.S.C. §§ 1331, 1338(a)-(b), 1836(c), 2201, and 2202.

10.      This Court has jurisdiction over the North Carolina misappropriation of trade secrets claim and North Carolina unfair trade practices claim pursuant to supplemental jurisdiction under 28 U.S.C. § 1367(a).

11.     Venue is proper in this Court under 28 U.S.C. § 1400(b) and 28 U.S.C. §§ 1391(c).

12.     Upon information and belief, this Court has personal jurisdiction over Liquidia because it is a corporation organized and existing under the laws of the State of Delaware with a registered agent in the State of Delaware.  Further, upon information and belief, Liquidia has publicly stated its intent to engage in commercializing Liquidia's Proposed Generic Product throughout the United States without any limitation.  Upon information and belief, Liquidia will manufacture, market, distribute, and/or sell Liquidia's Proposed Generic Product throughout the United States, including in Delaware, and will derive substantial revenue therefrom.  Upon information and belief, upon approval of Liquidia's 505(b)(2) Application, Liquidia will place Liquidia's Proposed Generic Product into the stream of commerce with the reasonable expectation or knowledge and the intent that such products will ultimately be purchased and used by consumers in Delaware.

## **BACKGROUND**

13.     UTC holds New Drug Application No. 022387, which has been approved for TYVASO® (treprostinil) Inhalation Solution, 0.6 mg/ml, which UTC markets and sells under the registered trademark TYVASO®.

14.     TYVASO® is a pharmaceutical product initially approved by FDA in the United States in July 2009 and is indicated for the treatment of pulmonary arterial hypertension. Pulmonary arterial hypertension is a rare disease affecting the pulmonary vasculature and results in high pressure in the pulmonary arteries, which increases strain on the right ventricle of the heart, thereby leading to heart failure and death.

15.     TYVASO® is an inhalable product approved for sale in a 0.6 mg/mL concentration.

16.     The '066 patent, entitled "Process to prepare treprostinil, the active ingredient in Remodulin®," was duly and legally issued by the United States Patent and Trademark Office on March 14, 2017, and is scheduled to expire on December 15, 2028.  The named inventors are Hitesh Batra, Sudersan M. Tuladhar, Raju Penmasta, and David A. Walsh.

17.     UTC is the lawful owner of the '066 patent by assignment of all right, title and interest in and to the '066 patent, including the right to bring infringement suits thereon.

18.     The '901 patent, entitled "Process to prepare treprostinil, the active ingredient in Remodulin®," was duly and legally issued by the United States Patent and Trademark Office on March 28, 2017, and is scheduled to expire on December 15, 2028.  The named inventors are Hitesh Batra, Sudersan M. Tuladhar, Raju Penmasta, and David A. Walsh.

19.     UTC is the lawful owner of the '901 patent by assignment of all right, title and interest in and to the '901 patent, including the right to bring infringement suits thereon.

20.     The '793 patent, entitled "Treprostinil Administration by Inhalation," was duly and legally issued by the United States Patent and Trademark Office on July 21, 2020, and is scheduled to expire on May 14, 2027.  The named inventors are Horst Olschewski, Robert Roscigno, Lewis J. Rubin, Thomas Schmehl, Werner Seeger, Carl Sterritt, and Robert Voswinckel.

21.     UTC is the lawful owner of the '793 patent by assignment of all right, title and interest in and to the '793 patent, including the right to bring infringement suits thereon.

22.     TYVASO® and its FDA approved manufacture and uses are covered by one or more claims of the '066 patent, the '901 patent, and the '793 patent, which have been listed in

connection with TYVASO® in the FDA's *Approved Drug Products with Therapeutic Equivalents* publication (also known as the "Orange Book").

## ACTS GIVING RISE TO THIS ACTION

23.     Liquidia notified UTC by letter dated April 24, 2020, which was delivered to UTC on or about April 27, 2020 ("Liquidia's Notice Letter"), that it had submitted NDA No. 213005 to the FDA seeking approval to engage in the commercial manufacture, use and/or sale of Liquidia's Proposed Generic Product prior to the expiration of the'066 patent and the '901 patent.

24.     Liquidia's Notice Letter included a statement pursuant to 21 U.S.C. § 355(b)(3)(D)(ii) and 21 C.F.R. § 314.52(c)(6) purporting to recite Liquidia's "factual and legal basis" for its opinion that the '066 patent and the '901 patent are invalid, unenforceable, and/or are not, and will not, be infringed by the commercial manufacture, use or sale of Liquidia's Proposed Generic Product.  That statement did not include anything beyond conclusory statements as to why the claims of the '066 patent and the '901 patent were allegedly invalid.  The statement also did not include anything beyond conclusory statements regarding alleged non-infringement.

25.     Upon information and belief, Liquidia submitted Liquidia's 505(b)(2) Application to FDA seeking approval to commercially manufacture, market, use, and sell generic copies of UTC's TYVASO® (treprostinil) Inhalation Solution, 0.6 mg/mL prior to the expiration of the '066 patent and the '901 patent.

26.     UTC commenced this action before the expiration of forty-five days from the date it received Liquidia's Notice Letter.

27.     Upon information and belief, Liquidia's Proposed Generic Product contains the same active compound, treprostinil, as UTC's approved TYVASO® product.

28.     Upon information and belief, Liquidia's 505(b)(2) Application seeks approval from the FDA to market Liquidia's Proposed Generic Product for the same indication as UTC's approved TYVASO® product.

29.     Upon information and belief, Liquidia's 505(b)(2) Application refers to and relies upon UTC's NDA No. 022387 for TYVASO® (treprostinil) Inhalation Solution, 0.6 mg/ml.

30.     Upon information and belief, Liquidia intends to commercially manufacture, sell, offer for sale, and/or import Liquidia's Proposed Generic Product upon, or in anticipation of, FDA approval.

31.     According to Liquidia's Notice Letter, Liquidia's 505(b)(2) Application contained a "Paragraph IV" certification pursuant to 21 U.S.C. § 355(b)(2)(A)(iv) stating that in Liquidia's opinion the '066 and the '901 patents are invalid, unenforceable, and/or would not be infringed by the commercial manufacture, use or sale of Liquidia's Proposed Generic Product.

32.     Upon information and belief, as of the date of Liquidia's Notice Letter, Liquidia was aware of the statutory provisions and regulations set forth in 21 U.S.C. § 355(b)(3)(D)(ii) and 21 C.F.R. § 314.52(c)(6).

33.     In Liquidia's Notice Letter, Liquidia offered confidential access to certain information regarding Liquidia's 505(b)(2) Application on the terms and conditions set forth in that letter ("Liquidia's Offer of Confidential Access").  Liquidia requested that UTC accept Liquidia's Offer of Confidential Access before receiving access to information regarding Liquidia's 505(b)(2) Application.  Liquidia's Offer of Confidential Access contained sweeping, unreasonable restrictions that differ materially from restrictions found under protective orders. For example, Liquidia's Offer of Confidential Access required that UTC's outside counsel "do not engage, either formally or informally, in any patent prosecution for UTC and/or are involved

in the subject matter related to treprostinil, and/or provide any FDA counseling, litigation or other work before or involving FDA."

34.    Under 21 U.S.C. § 355(c)(3)(D)(i)(III), an "offer of confidential access shall contain such restrictions . . . on the use and disposition of any information accessed, as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information."

35.    UTC attempted to negotiate with Liquidia to obtain relevant information from Liquidia's 505(b)(2) Application under restrictions "as would apply had a protective order been issued."  Those negotiations were unsuccessful.  For example, Liquidia continued to insist that attorneys representing UTC and in-house counsel and the staff of such counsel agree not to be engaged in the drafting of submissions related to compositions, treatment methods, or formulations containing treprostinil to the FDA or to provide any FDA counseling related to such matters, though such restrictions have not been present in any prior protective order relating to any other UTC treprostinil-containing product, such as REMODULIN® (treprostinil) Injection. *See United Therapeutics Corp. v. Sandoz, Inc.*, 3:12-cv-01617-PGS-LHG, Protective Order, Docket No. 32 (D.N.J. Sept. 12, 2012); *United Therapeutics Corp. v. Teva Pharmaceuticals USA, Inc.*, 3:14-cv-05498-PGS-LHG, Protective Order, Docket No. 24, Discovery Confidentiality Order (D.N.J. Nov. 25, 2014); *United Therapeutics Corp. v. Sandoz, Inc.*, 3:14-cv-05499-PGS-LHG, Stipulated Protective Order and Cross Use Agreement (D.N.J. Jan. 15, 2015.).  UTC objected to this provision of Liquidia's Offer of Confidential Access as unreasonable and in violation of 21 U.S.C. § 355(j)(5)(C)(i)(III).

36.    UTC is not aware of any other means of obtaining information regarding Liquidia's Proposed Generic Product within the 45-day statutory period.  Without such

information, UTC will use the judicial process and the aid of discovery to obtain, under appropriate judicial safeguards, such information as is required to confirm its allegations of infringement and to present to the Court evidence that Liquidia's Proposed Generic Product falls within the scope of one or more claims of the '066 and '901 patents.

37.     Upon information and belief, Liquidia's Proposed Generic Product is intended to deliver treprostinil through a DPI utilizing capsules in amounts from 26.5-106 mcgs of treprostinil, and doses from 26.5-212 mcgs of treprostinil.  Upon information and belief, the contents of each capsule of Liquidia's Proposed Generic Product "can be inhaled in 1-2 breaths."

38.     Dr. Roscigno was employed by UTC or its subsidiary Lung Rx, Inc. from 1997−2007.  By 2003, Dr. Roscigno was tasked with leading the company's development of an inhaled treprostinil treatment for pulmonary hypertension, including pulmonary arterial hypertension (PAH).  Dr. Roscigno was deeply involved in clinical development efforts to bring TYVASO® to market, and was specifically tasked with participating in protocol design for clinical studies and coordinating development of an inhaled treprostinil program, which formed the basis of the FDA's approval of UTC application for TYVASO®.

39.     During this work with UTC and Lung Rx, Dr. Roscigno was exposed to and had access to significant amounts of UTC's confidential information and trade secrets, including: detailed competitively sensitive financial projections and lifecycle management planning for UTC's clinical and research programs; specific know-how regarding obtaining FDA approval for treprostinil sodium drug products indicated for treatment of PAH, including specific methodologies for demonstrating adequate safety data and strategies for how to preempt FDA concerns based on template(s) of UTC's submissions; and non-public subject matter that is the intellectual property of UTC.  This confidential and trade secret information is the property of

UTC, and Dr. Roscigno's transfer and subsequent use of this confidential and trade secret information constituted a violation of his confidentiality obligations to UTC, which were memorialized in his employment agreements.

40.     Upon information and belief, Dr. Roscigno left UTC or Lung Rx in June 2007, and later joined competitor Liquidia Technologies as Senior Vice President, Product Development, where he was instrumental in pushing Liquidia's Proposed Generic Product through clinical trials to submission of Liquidia's 505(b)(2) Application to the FDA.

41.     During discovery for the patent claims in this action, UTC discovered documents produced by Liquidia containing UTC's confidential information and trade secrets.  Based upon information and belief, these documents were taken by Dr. Roscigno and then used to obtain a competitive advantage in developing, testing, and seeking approval for Liquidia's Proposed Generic Product.  These documents were produced with the marking "Highly Confidential" by Liquidia – although the confidential information enclosed being that of UTC, and because of their confidential nature, UTC respects the designations under the Protective Order in this action (D.I. 33 and 66) and therefore treads lightly in describing the contents of these documents. These documents include UTC's confidential and competitively sensitive detailed financial records and forecasts (e.g., LIQ00625109), UTC's confidential regulatory submissions and correspondences (e.g., LIQ00657099-LIQ00657122; LIQ00615690-801), and UTC's confidential and trade secret information regarding drug development and approval efforts, strategies, and confidential protocol development efforts (e.g., LIQ00622158; LIQ00600322). On information and belief, Defendants used UTC's confidential and trade secret information to shortcut their own development and approval processes (*see, e.g.,* LIQ00601768).

42.     UTC made reasonable efforts to maintain the secrecy of their trade secrets by use of a number of measures, including employing intellectual property rights, confidentiality, and non-competition provisions in employment agreements with those exposed to confidential and trade secret information, not publishing certain documents and information publicly to retain their confidentiality and trade secret status, marking documents as "confidential," and reasonably restricting access to confidential, strategic, intellectual property, and trade secret information.

43.     As these documents were only produced by Liquidia on May 10, 2021 (including over 14,000 documents with Dr. Roscigno designated as the Custodian), UTC has only just discovered Dr. Roscigno's breach of UTC's confidential and trade secret information and related breaches and violations.  Accordingly, UTC's investigation into the scope of Dr. Roscigno and Liquidia's misappropriation of UTC's confidential and trade secret information and related breaches and violations is ongoing, and UTC reserves the right to further supplement this pleading.

## COUNT 1: INFRINGEMENT OF THE '066 PATENT
## UNDER 35 U.S.C. § 271(e)
## AGAINST LIQUIDIA

44.     UTC repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

45.     Upon information and belief, Liquidia's Proposed Generic Product or an intermediate in its manufacture is covered by one or more claims of the '066 patent.

46.     Liquidia had knowledge of the '066 patent when it submitted Liquidia's 505(b)(2) Application.

47.     Liquidia's submission of Liquidia's 505(b)(2) Application for the purpose of obtaining approval to engage in the commercial manufacture, use and/or sale of Liquidia's

Proposed Generic Product was an act of infringement of the '066 patent under 35 U.S.C. § 271(e)(2).

48.    Upon information and belief, the commercial manufacture, use, offer for sale, sale and/or importation of Liquidia's Proposed Generic Product would infringe one or more claims of the '066 patent.

49.    Upon information and belief, Liquidia was and is aware of the existence of the '066 patent and acted without a reasonable basis for believing that it would not be liable for infringement of the '066 patent, thus rendering this case "exceptional" under 35 U.S.C. § 285.

50.    UTC will be substantially and irreparably damaged and harmed if Liquidia's infringement of the '066 patent is not enjoined by this Court.  UTC does not have an adequate remedy at law.

## COUNT 2: INFRINGEMENT OF THE '066 PATENT UNDER 35 U.S.C. §§ 271(a)-(c) and (g) AGAINST LIQUIDIA

51.    UTC repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

52.    Upon information and belief, upon FDA approval of Liquidia's 505(b)(2) Application, Liquidia will engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Liquidia's Proposed Generic Product which will result in infringement of one or more claims of the '066 patent.

53.    Liquidia's 505(b)(2) Application and Liquidia's intention to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Liquidia's Proposed Generic Product upon receiving FDA approval prior to the expiration of the '066 patent creates an actual and justiciable controversy with respect to infringement of the '066 patent.

54.     Upon information and belief, upon FDA's approval of Liquidia's 505(b)(2) Application, Liquidia's commercial manufacture, use, sale, offer for sale, and/or importation into the United States of Liquidia's Proposed Generic Product will directly infringe one or more claims of the '066 patent, and will indirectly infringe by actively inducing infringement by others, under 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), 35 U.S.C. § 271(c), and/or 35 U.S.C. § 271(g).

55.     Upon information and belief, Liquidia's Proposed Generic Product or an intermediate in its manufacture as described in and/or directed by Liquidia's proposed labeling, Liquidia's 505(b)(2) Application, applicable drug master file ("DMF"), and/or other corporate documents for Liquidia's Proposed Generic Product would infringe one or more claims of the '066 patent.

56.     Upon information and belief, Liquidia will induce others to infringe one or more claims of the '066 patent under 35 U.S.C. § 271(b) by, among other things, actively and knowingly aiding and abetting others to infringe, including, but not limited to the manufacturer of Liquidia's Proposed Generic Product, or its API, or other subsequent purchasers, distributors, or users thereof, which product or its manufacture constitutes direct infringement of one or more claims of the '066 patent.  Upon information and belief, Liquidia's aiding and abetting includes Liquidia's engagement of, contracting of, and/or encouragement of others to engage in the manufacture, use, sale, or importation of infringing products pursuant to Liquidia's 505(b)(2) Application.

57.     Upon information and belief, Liquidia will also contributorily infringe one or more claims of the '066 patent under 35 U.S.C. § 271(c) in that Liquidia will make, use, sell, offer to sell, and/or import Liquidia's Proposed Generic Product and/or the API thereof, which

Liquidia knows has no substantial non-infringing uses.  Upon information and belief, subsequent purchasers, distributors, or users thereof will also directly infringe one or more claims of the '066 patent.

58.    Upon information and belief, Liquidia will also infringe one or more claims of the '066 patent under 35 U.S.C. § 271(g) by importing, selling, offering to sell or using Liquidia's Proposed Generic Product or the API or an intermediate thereof which is neither materially changed by subsequent process nor a trivial or non-essential component of another product.

59.    Upon information and belief, Liquidia was and is aware of the existence of the '066 patent and acted without a reasonable basis for believing that it would not be liable for infringement of the '066 patent, thus rendering this case "exceptional" under 35 U.S.C. § 285.

60.    UTC will be substantially and irreparably damaged and harmed if Liquidia's infringement of the '066 patent is not enjoined by this Court.  UTC does not have an adequate remedy at law.

## COUNT 3: INFRINGEMENT OF THE '901 PATENT UNDER 35 U.S.C. § 271(e) AGAINST LIQUIDIA

61.    UTC repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

62.    Upon information and belief, Liquidia's Proposed Generic Product or an intermediate in its manufacture is covered by one or more claims of the '901 patent.

63.    Liquidia had knowledge of the '901 patent when it submitted Liquidia's 505(b)(2) Application.

64.    Liquidia's submission of Liquidia's 505(b)(2) Application for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, and/or offer for sale of

Liquidia's Proposed Generic Product was an act of infringement of the '901 patent under 35 U.S.C. § 271(e)(2).

65.     Upon information and belief, the commercial manufacture, use, offer for sale, sale and/or importation of Liquidia's Proposed Generic Product would infringe one or more claims of the '901 patent.

66.     Upon information and belief, Liquidia was and is aware of the existence of the '901 patent and acted without a reasonable basis for believing that it would not be liable for infringement of the '901 patent, thus rendering this case "exceptional" under 35 U.S.C. § 285.

67.     UTC will be substantially and irreparably damaged and harmed if Liquidia's infringement of the '901 patent is not enjoined by this Court.  UTC does not have an adequate remedy at law.

<u>**COUNT 4: INFRINGEMENT OF THE '901 PATENT**</u>
<u>**UNDER 35 U.S.C. §§ 271(a)-(c) and (g)**</u>
<u>**AGAINST LIQUIDIA**</u>

68.     UTC repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

69.     Upon information and belief, upon FDA approval, Liquidia will manufacture, market, sell, offer to sell, import, and distribute Liquidia's Proposed Generic Product which will result in infringement of one or more claims of the '901 patent.

70.     Liquidia's 505(b)(2) Application and Liquidia's intention to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Liquidia's Proposed Generic Product upon receiving FDA approval of Liquidia's 505(b)(2) Application prior to the expiration of the '901 patent creates an actual and justiciable controversy with respect to infringement of the '901 patent.

71.     Upon information and belief, upon FDA's approval of Liquidia's 505(b)(2) Application, Liquidia's commercial manufacture, use, sale, offer for sale, and/or importation into the United States of Liquidia's Proposed Generic Product will directly infringe one or more claims of the '901 patent, and will indirectly infringe by actively inducing infringement by others, under 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), 35 U.S.C. § 271(c), and/or 35 U.S.C. § 271(g).

72.     Upon information and belief, Liquidia's Proposed Generic Product or an intermediate in its manufacture as described in and/or directed by Liquidia's proposed labeling, Liquidia's 505(b)(2) Application, applicable DMF, and/or other corporate documents for Liquidia's Proposed Generic Product would infringe one or more claims of the '901 patent.

73.     Upon information and belief, Liquidia will induce others to infringe one or more claims of the '901 patent under 35 U.S.C. § 271(b) by, among other things, actively and knowingly aiding and abetting others to infringe, including, but not limited to the manufacturer of Liquidia's Proposed Generic Product, or its API, or other subsequent purchasers, distributors, or users thereof, which product or its manufacture constitutes direct infringement of one or more claims of the '901 patent.  Upon information and belief, Liquidia's aiding and abetting includes Liquidia's engagement of, contracting of, and/or encouragement of others to engage in the manufacture, use, sale, or importation of infringing products pursuant to Liquidia's 505(b)(2) Application.

74.     Upon information and belief, Liquidia will also contributorily infringe one or more claims of the '901 patent under 35 U.S.C. § 271(c) in that Liquidia will make, use, sell, offer to sell, and/or import Liquidia's Proposed Generic Product and/or the API thereof, which Liquidia knows has no substantial non-infringing uses.  Upon information and belief, subsequent

purchasers, distributors, or users thereof will also directly infringe one or more claims of the '901 patent.

75.     Upon information and belief, Liquidia will also infringe one or more claims of the '901 patent under 35 U.S.C. § 271(g) by importing, selling, offering to sell or using Liquidia's Proposed Generic Product or the API or an intermediate thereof which is neither materially changed by subsequent process nor a trivial or non-essential component of another product.

76.     Upon information and belief, Liquidia was and is aware of the existence of the '901 patent and acted without a reasonable basis for believing that it would not be liable for infringement of the '901 patent, thus rendering this case "exceptional" under 35 U.S.C. § 285.

77.     UTC will be substantially and irreparably damaged and harmed if Liquidia's infringement of the '901 patent is not enjoined by this Court.  UTC does not have an adequate remedy at law.

<u>**COUNT 5: INFRINGEMENT OF THE '793 PATENT<br>UNDER 35 U.S.C. § 271(e)<br>AGAINST LIQUIDIA**</u>

78.     UTC repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

79.     Upon information and belief, Liquidia's Proposed Generic Product is covered by one or more claims of the '793 patent.

80.     Liquidia's maintenance of Liquidia's 505(b)(2) Application for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, and/or offer for sale of Liquidia's Proposed Generic Product is an act of infringement of the '793 patent under 35 U.S.C. § 271(e)(2).

81.     Upon information and belief, the commercial manufacture, use, offer for sale, sale and/or importation of Liquidia's Proposed Generic Product would infringe one or more claims of the '793 patent.

82.     Upon information and belief, Liquidia was and is aware of the existence of the '793 patent and acted without a reasonable basis for believing that it would not be liable for infringement of the '793 patent, thus rendering this case "exceptional" under 35 U.S.C. § 285.

83.     UTC will be substantially and irreparably damaged and harmed if Liquidia's infringement of the '793 patent is not enjoined by this Court.  UTC does not have an adequate remedy at law.

**COUNT 6: INFRINGEMENT OF THE '793 PATENT
UNDER 35 U.S.C. §§ 271(a)-(c)
AGAINST LIQUIDIA**

84.     UTC repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

85.     Upon information and belief, upon FDA approval, Liquidia will manufacture, market, sell, offer to sell, import, and distribute Liquidia's Proposed Generic Product which will result in infringement of one or more claims of the '793 patent.

86.     Liquidia's 505(b)(2) Application and Liquidia's intention to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Liquidia's Proposed Generic Product upon receiving FDA approval of Liquidia's 505(b)(2) Application prior to the expiration of the '793 patent creates an actual and justiciable controversy with respect to infringement of the '793 patent.

87.     Upon information and belief, upon FDA's approval of Liquidia's 505(b)(2) Application, Liquidia's commercial manufacture, use, sale, offer for sale, and/or importation into

18

the United States of Liquidia's Proposed Generic Product will directly infringe one or more claims of the '793 patent, and will indirectly infringe by actively inducing infringement by others, under 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), and/or 35 U.S.C. § 271(c).

88.     Upon information and belief, Liquidia's Proposed Generic Product or an intermediate in its manufacture as described in and/or directed by Liquidia's proposed labeling, Liquidia's 505(b)(2) Application, applicable DMF, and/or other corporate documents for Liquidia's Proposed Generic Product would infringe one or more claims of the '793 patent.

89.     Upon information and belief, Liquidia will induce others to infringe one or more claims of the '793 patent under 35 U.S.C. § 271(b) by, among other things, actively and knowingly aiding and abetting others to infringe, including, but not limited to the manufacturer of Liquidia's Proposed Generic Product, or its API, or other subsequent purchasers, distributors, or users thereof, which product or its manufacture constitutes direct infringement of one or more claims of the '793 patent.  Upon information and belief, Liquidia's aiding and abetting includes Liquidia's engagement of, contracting of, and/or encouragement of others to engage in the manufacture, use, sale, or importation of infringing products pursuant to Liquidia's 505(b)(2) Application.

90.     Upon information and belief, Liquidia will also contributorily infringe one or more claims of the '793 patent under 35 U.S.C. § 271(c) in that Liquidia will make, use, sell, offer to sell, and/or import Liquidia's Proposed Generic Product and/or the API thereof, which Liquidia knows has no substantial non-infringing uses.  Upon information and belief, subsequent purchasers, distributors, or users thereof will also directly infringe one or more claims of the '793 patent.

91.     Upon information and belief, Liquidia was and is aware of the existence of the '793 patent and acted without a reasonable basis for believing that it would not be liable for infringement of the '793 patent, thus rendering this case "exceptional" under 35 U.S.C. § 285.

92.     UTC will be substantially and irreparably damaged and harmed if Liquidia's infringement of the '793 patent is not enjoined by this Court.  UTC does not have an adequate remedy at law.

## COUNT 7: MISAPPROPRIATION OF TRADE SECRETS
## UNDER N.C. Gen. Stat. §§ 66-152 *et seq.*
## AGAINST LIQUIDIA AND DR. ROSCIGNO

93.     UTC repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

94.     UTC is the owner of the information, including the confidential and trade secret information, that constitutes its trade secret information pursuant to the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. §§ 66-152 *et seq.*

95.     UTC made reasonable efforts to maintain the secrecy of their trade secrets by use of several measures including employing confidentiality, intellectual property, and non-competition provisions in their employment agreements, providing clauses in employment agreements specifically delineating that UTC retains the right to its trade secrets, not publishing certain information and documents to retain their confidentiality, marking documents as "confidential", and reasonably restricting access to confidential and trade secret information.

96.     Dr. Roscigno and Liquidia possessed UTC trade secrets including business and technical documents including product development documents, confidential clinical trial documentation, and confidential budget documents, among others, which were kept confidential and which were subject to efforts from UTC to maintain their secrecy and which provided value

to UTC.

97.     Dr. Roscigno's and Liquidia's use, transfer, disclosure, and exploitation of information owned by UTC and constituting its trade secret information as described herein constitutes misappropriation of trade secrets in violation of the North Carolina Trade Secrets Protection Act.  Liquidia's misappropriation was and continues to be willful and malicious.

98.     UTC is entitled to injunctive relief, compensatory and punitive damages in an amount to be determined at trial, and to its reasonable attorneys' fees under N.C. Gen Stat. § 66-154.

**COUNT 8: MISAPPROPRIATION OF TRADE SECRETS
UNDER 18 U.S.C. § 1836 *et seq*.
AGAINST LIQUIDIA AND DR. ROSCIGNO**

99.     UTC repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

100.    UTC is the owner of the information, including the confidential and trade secret information, that constitutes its trade secrets protected under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq*.

101.    Upon information and belief, Liquidia acquired knowledge of the trade secrets by improper means, as they were taken by Dr. Roscigno in violation of *inter alia*, Dr. Roscigno's confidentiality, intellectual property, and non-competition obligations to UTC.  Upon information and belief, Liquidia and Dr. Roscigno knew or had reason to know that the trade secrets were acquired by improper means.

102.    Liquidia's use, disclosure, and exploitation of UTC's trade secret information for use in securing approval of Liquidia's Proposed Generic Product from the FDA constitutes misappropriation of UTC's trade secrets in violation of the Defend Trade Secrets Act.

103.     This misappropriation of UTC's trade secrets is ongoing, including use of UTC's trade secrets on or after May 11, 2016.

104.     Liquidia's misappropriation of UTC's trade secrets has been intentional, willful, and malicious.

105.     Liquidia's acts as described herein are in or affecting interstate commerce.

106.     If Liquidia's conduct is not remedied, they will continue to misappropriate UTC's trade secrets to their own benefit and to UTC's detriment.

107.     UTC is entitled to injunctive relief, damages in an amount to be proven at trial, exemplary damages and attorneys' fees.

### COUNT 9: UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER N.C. Gen. Stat. § 75-1.1. AGAINST LIQUIDIA

108.     UTC repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

109.     Liquidia's willful and continuous use, disclosure, and exploitation of UTC's trade secret information constitutes both unethical and unscrupulous business practice in violation of N.C. Gen. Stat. § 75-1.1.

110.     Liquidia's misappropriation of UTC's trade secret information has been, and will continue to be, substantially injurious to and on UTC's own business practice.

111.     Liquidia's acts as described herein are in or affecting interstate commerce and constitute unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1.

112.     Due to Liquidia's unfair and deceptive trade practices, UTC is entitled to injunctive relief and to actual damages in an amount to be determined at trial, and treble damages, pursuant to N.C. Gen. Stat. § 75-16.

## PRAYER FOR RELIEF

WHEREFORE, UTC requests the following relief:

1.  A judgment that:

    A.  Liquidia has infringed the '066 patent, the '901 patent, and the '793 patent; and

    B.  declaring that making, using, selling, offering for sale, or importing into the United States of Liquidia's Proposed Generic Product, or any product or compound that infringes one or more of the '066 patent, the '901 patent, and the '793 patent, prior to the expiration dates of the respective patents, will infringe, actively induce infringement of, and contribute to the infringement by others of the '066 patent, the '901 patent, and the '793 patent;

2.  A judgment ordering that the effective date of any FDA approval of Liquidia's NDA No. 213005 permitting Liquidia to commercially manufacture, make, use, offer to sell, sell, market, or import into the United States Liquidia's Proposed Generic Product be not earlier than the latest of the expiration dates of the '066 patent, the '901 patent, and the '793 patent, inclusive of any extension(s) and additional period(s) of exclusivity to which UTC is or may become entitled;

3.  A judgment pursuant to 35 U.S.C. § 271(e)(4)(B) preliminarily and permanently enjoining Liquidia, its officer, agents, servants, employees, parents, subsidiaries, affiliate corporations, other business entities and all other persons acting in concert, participation, or privity with them, their successors, and assigns, from infringing, contributorily infringing, or inducing others to infringe the '066 patent, the '901 patent, and the '793 patent, including engaging in the

commercial manufacture, use, sale, offer to sale and/or importation in the United States of the product that is the subject of Liquidia's 505(b)(2) Application and/or any applicable DMF until the expiration of the '066 patent, the '901 patent, and the '793 patent, inclusive of any extension(s) and additional period(s) of exclusivity to which UTC is or may become entitled;

4.   A judgment awarding UTC damages or other monetary relief, pursuant to 35 U.S.C. §§ 271(e)(4)(c) and 284, if Liquidia engages in commercial manufacture, use, sale, offer to sell and/or importation into the United States of any product that is the subject of Liquidia's 505(b)(2) Application that infringes one or more claims of the '066 patent, the '901 patent, and the '793 patent;

5.   A judgment declaring that, pursuant to 35 U.S.C. § 285, this is an exceptional case and awarding UTC its attorney's fees;

6.   A judgment of damages in an amount to be shown at trial for Dr. Roscigno and Liquidia's misappropriation of UTC's trade secrets;

7.   A judgment trebling the amount of damages for conduct on the part of Liquidia which constitutes Unfair and Deceptive Trade Practices, pursuant to N.C. Gen. Stat. § 75-16;

8.   A judgment awarding UTC punitive damages;

9.   A judgment awarding UTC reasonable attorneys' fees pursuant to N.C. Gen Stat. § 75-16.1 and as otherwise by law provided;

10.   A judgment entering an injunction prohibiting the continued use and exploitation by Liquidia of UTC's confidential and trade secret information;

11.   An award of costs and expenses in this action to UTC; and

12.     Such further and other relief as this Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

OF COUNSEL:

William C. Jackson
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue NW
Washington, DC  20005
(202) 237-2727

Bill Ward
BOIES SCHILLER FLEXNER LLP
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017
(213) 995-5745

Douglas Carsten
Art Dykhuis
Jiaxiao Zhang
Katherine Pappas
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA  92615
(949) 851-0633

Adam W. Burrowbridge
Joshua Revilla
Timothy M. Dunker
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street
Washington, DC  20001-1531
(202) 756-8797

June 4, 2021

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff United Therapeutics Corporation*