IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED THERAPEUTICS CORPORATION,

Plaintiff,

v.

LIQUIDIA TECHNOLOGIES, INC.,

Defendant.

C.A. No. 20-755 (RGA)

**JOINT SUBMISSION REGARDING**
**REMAINING TERMS FOR CLAIM CONSTRUCTION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff United Therapeutics Corporation*

OF COUNSEL:

Douglas H. Carsten
Arthur P. Dykhuis
Jiaxiao Zhang
Katherine M. Pappas
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA 92612
(949) 851-0633

SHAW KELLER LLP
Karen E. Keller (#4489)
Jeff Castellano (#4837)
Nathan R. Hoeschen (#6232)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendant Liquidia Technologies, Inc.*

OF COUNSEL:

Sanya Sukduang
Jonathan Davies
Douglas W. Cheek
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202) 842-7800

Adam W. Burrowbridge
Timothy M. Dunker
Joshua M. Revilla
McDermott Will & Emery LLP
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8000

William C. Jackson
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
(202) 237-2727

Bill Ward
Boies Schiller Flexner LLP
725 S Figueroa Street, 31st Floor
Los Angeles, CA 90017
(213) 995-5745

Ivor Elrifi
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Deepa Kannappan
Lauren Krickl
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Erik Milch
Cooley LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5640
(703) 546-8000

June 21, 2021

**TABLE OF CONTENTS**

**Page**

JOINT INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Plaintiff's Position Regarding Statements Withdrawn from PTAB Proceedings .......... 2

A. POSAs Wouldn't Rely On Withdrawn Statements .......... 2

1. UTC's Statements and Withdrawals Have All Been Public .......... 3

2. Withdrawn Attorney Arguments Should Not Be Given Weight .......... 3

3. No One Has Relied Upon Any Withdrawn Statements .......... 5

4. Unclaimed Elements Should Not Effect Prosecution Disclaimer .......... 6

CONCLUSION .......... 6

II. Defendant's Position Regarding UTC's Disclaimer Made in the PTAB Proceedings .......... 7

A. The Standard for Effective Withdrawal is High .......... 7

B. UTC's Attempted Withdrawal is Not a Matter of Right and is Unresolved .......... 8

C. UTC Continues to Argue that the Process for Making the "Pharmaceutical Batch" Excludes Purification Before Salt Formation .......... 8

D. UTC Continues to Argue that the '901 Claims Exclude Isolation .......... 9

1. UTC's Original Construction Is Binding Disclaimer .......... 9

2. The Board and Liquidia Relied on UTC's Disclaimer Position .......... 10

3. UTC's Sole Basis for Withdrawal is Dr. Ruffolo's Uncredible Opinion .......... 10

4. UTC's Withdrawal Is Not Sufficiently Clear As UTC Continues To Substantively Rely On Its Original Construction in the IPR .......... 10

CONCLUSION .......... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AVX Corp. v. Greatbatch Ltd.*,
IPR2014-01361, Paper 30 (P.T.A.B. Dec. 30, 2015)....4

*Aylus Networks, Inc. v. Apple, Inc.*,
856 F.3d 1353 (Fed. Cir. 2017)....5, 6, 7, 10

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
713 F.3d 1090 (Fed. Cir. 2013)....6, 10

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*,
249 F.3d 1341 (Fed. Cir. 2001)....6

*Galderma Labs., L.P. v. Amneal Pharms. LLC*,
806 F. App'x 1007 (Fed. Cir. 2020)....3, 4, 10

*Greatbatch Ltd. v. AVX Corp.*,
2015 WL 1383656 (D. Del. Mar. 20, 2015)....6

*Hakim v. Cannon Avent Group, PLC*,
479 F.3d 1313 (Fed. Cir. 2007)....7, 9

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.*,
887 F.2d 1050 (Fed. Cir. 1989)....6

*Intex Recreation Corp. v. Bestway Inflatables & Material Corp.*,
IPR2016-00180, Paper 33 (P.T.A.B. May 26, 2017)....4

*Luv N' Care, Ltd. v. Koninklijke Philips Elecs. N.V.*,
No. 2:11-cv-512-RSP, 2013 WL 3471269 (E.D. Tex. Jul. 9, 2013)....7, 9, 11

*Paradox Sec. Sys. Ltd. v. ADT Sec. Servs., Inc.*,
710 F. Supp. 2d 590 (E.D. Tex. 2008)....4, 7, 9

*Power Integrations, Inc. v. On Semiconductor Corp.*,
396 F. Supp. 3d 851 (N.D. Cal. 2019)....3

*Schlumberger Tech. Corp. v. BICO Drilling Tools, Inc.*,
2018 WL 4520021 (S.D. Tex. Sept. 20, 2018)....6

*Serrano v. Telular Corp.*,
111 F.3d 1578 (Fed. Cir. 1997)....6

*Springs Window Fashions LP v. Novo Indus., L.P.*,
323 F.3d 989 (Fed. Cir. 2003)....................3, 8, 9

*Trend Micro Inc. v. Cupp Computing AS*,
IPR2019-00767, 2020 WL 5031970 (P.T.A.B. Aug. 25, 2020)....................5, 8, 10

*Wargaming Group Ltd. v. Game and Tech. Co.*,
IPR2017-01082, 2018 WL 4278986 (P.T.A.B. Sept. 7, 2018)....................5, 10

**Other Authorities**

37 C.F.R. §§ 42.23(b) ....................4

37 C.F.R. § 42.51(b)(1)....................2, 4

# JOINT INTRODUCTION

Pursuant to the Court's Minute Entry of June 4, 2021, Plaintiff United Therapeutics Corporation ("UTC") and Defendant Liquidia Technologies, Inc. ("Liquidia" ) respectfully submit this Joint Submission Regarding Remaining Terms For Claim Construction, which further addresses the implications of UTC's withdrawal of certain statements made before the Patent Trial and Appeal Board ("PTAB" or "Board") in *inter partes* review ("IPR") proceedings. The parties have also attached as Joint Exhibit J1 a copy of the Joint Paper ("Joint Paper") submitted to the PTAB in IPR2020-00770 regarding U.S. Patent No. 9,604,901 ("the '901 patent") (Paper 29, Joint Paper Concerning Petitioner's Request to Strike Portions of Patent Owner's Paper Nos. 12 and 25 and Exhibits 2002 and 2025), as well as the attached exhibits (J2–J7), for the Court's consideration.

# ARGUMENT

## I. Plaintiff's Position Regarding Statements Withdrawn from PTAB Proceedings

UTC unambiguously withdrew certain attorney arguments made in IPR proceedings "out of an abundance of caution and in compliance with 37 C.F.R. § 42.51(b)(1)(iii)," which imposes a duty of candor with the Tribunal. (Ex. D33 at 9 n.2.) Nevertheless, Liquidia argues that UTC's withdrawn arguments constitute disavowal or disclaimer. The relevant test is whether a POSA reviewing the file history as a whole would consider those prior-but-withdrawn statements to constitute a clear and unmistakable disavowal of claim scope. A POSA would not. First, UTC publicly withdrew the statements at the earliest opportunity—in its next filing. Second, withdrawn arguments are not given weight by the PTAB. Third, the statements are inconsistent with the evidence before the PTAB. Fourth, no one actually relied upon the statements. The Court should not find disclaimer where it does not exist.

### A. POSAs Wouldn't Rely On Withdrawn Statements

A POSA would understand the phrases "pharmaceutical batch" and "contacting the solution comprising treprostinil from step (b) with a base to form a salt of treprostinil" according to their plain and ordinary meaning to allow for standard work-up, including isolation of treprostinil. The Court has already found that the file history statements in connection with "process" did not give rise to any similar disclaimer.

After Liquidia had argued certain UTC's statements were inconsistent with UTC's position before this Court, UTC formally, conspicuously, unambiguously, and promptly withdrew several erroneous statements in the IPR proceedings suggesting the claims require no isolation:

> Because statements made in the [Patent Owner's Response] suggesting that the '901 patent requires that treprostinil not be isolated before forming a salt are inaccurate and inconsistent with the claims, specification and prosecution history, UTC hereby withdraws those statements. To be clear, the claims do not require isolation, but also do not require omission of an isolation step.

(Ex. D33; Ex. J1.) UTC's withdrawn statements are outliers, and are not being relied upon. UTC proffered plain and ordinary meaning constructions for the terms. One of the benefits of the invention is that it allows for the elimination of certain work-up steps. That benefit remains consistent with UTC's construction. The '901 patent claims do not *require* isolation, nor do they *preclude* it. (Ex. 2 at 17:8–10 ("the treprostinil salts *can be* synthesized…without isolation.").)

**1. UTC's Statements and Withdrawals Have All Been Public**

Any person or POSA reading the entire file history and the IPR docket entries will see UTC's withdrawal, and has and will have ample notice of UTC's position. The proper inquiry is not those statements in a vacuum, but "the record as a whole in assessing claim scope." *Galderma Labs., L.P. v. Amneal Pharms. LLC*, 806 F. App'x 1007, 1010–11 (Fed. Cir. 2020) (finding no disclaimer "where those statements were clearly and expressly rejected by the Patent Office," making the record clear to POSAs "that Patent Owner's arguments were rejected, those arguments do not impact claim scope"); *Power Integrations, Inc. v. On Semiconductor Corp.*, 396 F. Supp. 3d 851, 866 (N.D. Cal. 2019) ("Because PI's argued claim scope was expressly rejected by the PTAB, this Court holds that prosecution disclaimer does not apply here."). Indeed, UTC's conspicuous withdrawal avoids any impression that it is attempting to adopt different constructions in different fora. Any competitor or interested member of the public viewing UTC's prosecution, IPR, and district court statements would easily locate these clarifying withdrawals. *Cf. Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) (holding applicant "to the restrictive claim construction that was argued during prosecution" because it "never retracted any [erroneous] statements distinguishing [the art]").

**2. Withdrawn Attorney Arguments Should Not Be Given Weight**

There is no reason to believe that the now-withdrawn arguments will be given weight before the PTAB. The PTAB allows a patent owner to withdraw evidence it no longer intends to

rely on, and the Board has authority to decide the weight to give submitted evidence in reaching its decision. *See PTAB Consolidated Trial Practice Guide* (Nov. 2019) ("TPG") at 51. The PTAB does not rely on or expect responses to, or discovery on, withdrawn statements. 37 C.F.R. §§ 42.23(b), 42.51(b)(1)(ii); *Intex Recreation Corp. v. Bestway Inflatables & Material Corp.*, IPR2016-00180, Paper 33 at 7 n.5 (P.T.A.B. May 26, 2017) (noting in Final Written Decision that Patent Owner had withdrawn certain arguments made earlier in the proceedings), Paper 30, Ex. B, 3–4 (P.T.A.B. Apr. 10, 2017) (stating that the withdrawn Patent Owner Response arguments "are no longer applicable"); *AVX Corp. v. Greatbatch Ltd.*, IPR2014-01361, Paper 30 at 3 n.6 (P.T.A.B. Dec. 30, 2015); *see also* MPEP 714.03(a) (authorizing corrective filings). Similar to *Intex* in which the withdrawn statements "are no longer applicable," UTC corrected and withdrew its previous statements, negating any effect they may have had. (Ex. D33; Ex. J1.) While Liquidia's Motion to Strike seeks to capitalize on UTC's error and exclude additional material, the statements that UTC withdrew were specifically identified to the PTAB and Liquidia. (Ex. J1.) There is no reason for the PTAB or anyone else to rely on the attorney arguments that UTC has withdrawn.

Liquidia's disclaimer arguments and case law do not address these circumstances. None of Liquidia's cited cases involve the PTAB relying on or finding prosecution disclaimer based on mistaken—and promptly and conspicuously withdrawn—arguments during IPR proceedings, because prosecution disclaimer must be "both clear and unmistakable" to a POSA while "look[ing] at the record as a whole in assessing claim scope." *Galderma*, 806 F. App'x at 1011. Unlike cases where a court declined to recognize a withdrawal, UTC promptly corrected any inconsistent IPR statements. *Cf. Paradox Sec. Sys. Ltd. v. ADT Sec. Servs., Inc.*, 710 F. Supp. 2d 590 (E.D. Tex. 2008) ("refus[ing] to simply ignore" inventor's subsequent and extended arguments "in light of a single remark made in response to an office action"). There is no reason to give weight to

withdrawn statements, let alone credit them over the testimony and evidence actually before the Board. Liquidia is simply wrong that UTC continues to rely on its withdrawn IPR statements. Nor is there any evidence the PTAB will rely on the withdrawn statements.[1]

Courts and tribunals have cautioned against over reliance on attorney argument during prosecution, and "*Aylus* does not stand for the proposition that Patent Owner's counsel can effect a contemporaneous disavowal of claim scope in *this* proceeding merely by making arguments in *this* proceeding, and without regard to whether there is support in the specification and claim language." *Trend Micro Inc. v. Cupp Computing AS*, IPR2019-00767, 2020 WL 5031970, at *11 (P.T.A.B. Aug. 25, 2020) (internal quotation omitted). In *Trend Micro* the PTAB held that "attempted disavowal of claim scope expressly made during an IPR proceeding" was insufficient to narrow the scope of the claims through claim construction, and was in tension with the AIA. The Board has also refused to give weight to patent owner's IPR efforts to "delineate the scope of the claims for purposes of this proceeding where those statements are not supported by the intrinsic record." *Wargaming Group Ltd. v. Game and Tech. Co.*, IPR2017-01082, 2018 WL 4278986 at *11 (P.T.A.B. Sept. 7, 2018). Rather, under the AIA, a motion to amend the claims is the proper vehicle for "disavowal of claim scope expressly made during an IPR proceeding," since accepting mere argument "would discourage patent owners from using the amendment process." *Trend Micro*, 2020 WL 5031970, at *11. There are no claim amendments or disclaimer here.

**3. No One Has Relied Upon Any Withdrawn Statements**

No one has relied on the withdrawn statements. First, the statements were withdrawn in UTC's next filing. Second, far from relying on them to grant UTC relief, the PTAB referenced

[1] The June 23 hearing will address "Resolution of *Petitioner's* Motion to Strike per Paper No. 29" (Ex. J6, emphasis added), *not* UTC's withdrawal. As noted throughout, although UTC withdrew certain statements, Liquidia seeks to strike additional UTC arguments—relief that is "granted rarely." TPG at 80–81.

such statements and nonetheless rejected UTC's Request for Rehearing. (Ex. D26 at 5.) Third, Liquidia cannot credibly argue it has relied or was harmed. *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1348 (Fed. Cir. 2001) (declining to find disclaimer when it was "apparent to the interested reader that an error was made, such that it would be unfair to enforce the error," and affirming that the claims did not require limitations from erroneous and isolated applicant remarks contradicted by the prosecution history). Liquidia could not have relied on withdrawn statements it identified as *inconsistent* with other UTC statements. (D.I. 75 at 57–60.) *See Biotec*, 249 F.3d at 1348 ("[a] person of reasonable intelligence would not be misled into relying on [an] erroneous statement" contrary to the claims and the specification); *Greatbatch Ltd. v. AVX Corp.*, 2015 WL 1383656, at *4 (D. Del. Mar. 20, 2015) (ignoring dropped arguments in construing claims consistent with intrinsic evidence). Fourth, even if Liquidia had relied on statements for purposes of its *Markman* briefs, that is insufficient—judicially-recognized reliance is taking real-world action such as developing a production or beginning infringing activities, not filing a brief. *See, e.g., Aylus Networks, Inc. v. Apple, Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017); *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013).

#### 4. Unclaimed Elements Should Not Effect Prosecution Disclaimer

A POSA would recognize the withdrawn statements as erroneous and inconsistent with the specification and claims. (D.I. 75 at 62, *et seq.*) Erroneous attorney argument does not create argument-based estoppel. *Serrano v. Telular Corp.*, 111 F.3d 1578, 1583 (Fed. Cir. 1997). "[A]n erroneous remark by an attorney does not control, the claims themselves control." *Schlumberger Tech. Corp. v. BICO Drilling Tools, Inc.*, 2018 WL 4520021, at *8 (S.D. Tex. Sept. 20, 2018); *Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1054 (Fed. Cir. 1989).

## CONCLUSION

UTC's withdrawn statements should not be relied upon in construing the claims.

## II. Defendant's Position Regarding UTC's Disclaimer Made in the PTAB Proceedings

UTC assumes, incorrectly, that the PTAB has accepted its attempted withdrawal. Regardless, its delayed[2] "withdrawal"—untethered to the intrinsic record—is anything but clear: UTC continues to tout the benefits of excluding purification and isolation steps prior to salt formation to overcome prior art in the IPR, while simultaneously arguing here that those steps are not necessarily excluded from the claims.

### A. The Standard for Effective Withdrawal is High

To withdraw disclaimers made in prosecution, "the prosecution history must be sufficiently clear to inform the examiner that the previous disclaimer, and the prior art that it was made to avoid, may need to be re-visited." *Hakim v. Cannon Avent Group, PLC*, 479 F.3d 1313, 1318 (Fed. Cir. 2007). IPR statements have the same disclaimer effect as prosecution statements (*Aylus Networks, Inc. v. Apple, Inc.*, 856 F.3d 1353 (Fed. Cir. 2017)), thus *Hakim* should apply here. Court's applying *Hakim* have held the patentee to an exacting standard, designed to prevent self-serving "withdrawals." For example, where a patentee "re-argue[s] the same positions" after "withdrawal," and its "statements were not 'sufficiently clear' to rescind its prior disclaimer," its withdrawal fails. *Luv N' Care, Ltd. v. Koninklijke Philips Elecs. N.V.*, No. 2:11-cv-512-RSP, 2013 WL 3471269, at *9-10 (E.D. Tex. Jul. 9, 2013). A "single remark," like UTC's "withdrawal" in its IPR sur-reply UTC block quoted above, is not enough to overcome "the extended period of time over which the inventor continued to vehemently argue a limiting construction." *Paradox Sec. Sys. Ltd.*, 710 F. Supp. 2d at 602-03 (Markman order). Here, UTC made numerous express statements across multiple IPR submissions supported by the intrinsic record and expert testimony—these were not a "mere

---

[2] Rather than immediately inform the Board and Liquidia that it intended to "withdraw" statements, UTC waited until its IPR ***sur-reply***, coinciding with its claim construction ***reply*** brief—when it became apparent its statements negated UTC's infringement position on the '901 patent.

mistake." *Springs Window Fashions*, 323 F.3d at 996 (where "statements distinguishing [the prior art] were detailed, consistent, and repeated[, a] reasonable competitor would have believed that the applicant's disclaiming statements were not a mere mistake.").

**B. UTC's Attempted Withdrawal is Not a Matter of Right and is Unresolved**

UTC's position that the PTAB will not rely on its statements implies that its attempted withdrawal is fait accompli—it is not. *Trend Micro*, 2020 WL 5031970, at *11 (PTO not required to accept statements made by patentee as true if contradicted by claims and specification). In fact, the Board stated it "is unlikely to rule on the [attempted withdrawal] dispute before the hearing," and invited "the parties [to] use a portion of their time during the oral argument to address the matter." J6. Thus, the Board could continue to rely on UTC's "withdrawn statements." Regardless of how the PTAB treats UTC's statements, this "court [can] hold the patentee to the distinction . . . pressed" previously. *Springs Window Fashions*, 323 F.3d at 995.

**C. UTC Continues to Argue that the Process for Making the "Pharmaceutical Batch" Excludes Purification Before Salt Formation**

UTC obscures the issue before the Court on "pharmaceutical batch," which is whether the '901 claims exclude purification, including column chromatography, before salt formation. To overcome the IPR prior art, UTC argued that "the POSA must have been motivated to combine the prior art ***in the way claimed in the '901 patent*** (e.g., not purified before salt formation)." D7,[3] 58 (emphasis in original); *see also id.*, 25. During the *Markman* hearing UTC argued that it "withdr[e]w" this statement. 6/04/21 Hr'g Tr., 45:17-20. ***Yet, UTC continues to advocate this position before the PTAB to support validity***. UTC has ***not*** withdrawn IPR statements asserting that the claims improve efficiency because "purification by column chromatography is eliminated." J2,[4]

[3] Citations to "D" and "P" exhibits refer to the parties' claim construction appendix (D.I. 76-79).
[4] Exs. J2 to J5 are UTC's IPR Patent Owner Response, Sur-Reply, and Pinal Declarations, with

16-17; *see also id.*, 78 (touting the same benefit as objective indicia of non-obviousness); J3, ¶¶95, 256, 258 (expert citing "no purification steps between alkylation and salt formation" as a difference from the prior art); J4, 29 (citing lack of evidence that "modification of the [prior art], namely, changing purification steps" would produce "a pharmaceutical batch"), 30 (lack of motivation to eliminate the "intermediate purification" steps "before forming the . . . salt" of the prior art). Because it continues to make the same arguments to preserve validity, and UTC has not contended otherwise here, UTC's attempted withdrawal is not "sufficiently clear" to rescind its prior disclaimer or provide notice that its arguments to overcome prior art have changed. *Luv N' Care*, 2013 WL 3471269, at *9-10; *Hakim*, 479 F.3d at 1318; *Paradox*, 710 F. Supp. 2d at 602-03. Thus, Liquidia's construction of "pharmaceutical batch" should be adopted.

### D. UTC Continues to Argue that the '901 Claims Exclude Isolation

#### 1. UTC's Original Construction Is Binding Disclaimer

UTC ***reiterated its position more than 16 times across 3 IPR filings***; the position is not simply an "outlier." *See, e.g.*, D5, 35-36, 70-71; D6, 2-5; D7, 5-6, 11, 29-34, 53, 56-57, 62, 67. Its IPR expert, Dr. Pinal, repeatedly argued (without being withdrawn) a lack of motivation to eliminate the isolation step in combining prior art. J3, ¶¶90, 157-60, 256, 258, 291; *see also* D.I. 75 at 57-61; D8, ¶¶158-59; D7, 66-67; D29, 25-26. These "were detailed, consistent, and repeated" disclaimer statements, not merely attorney argument or a "mistake."[5] *Springs Window Fashions*, 323 F.3d at

---

UTC's attempted withdrawal in black. Statements in yellow are UTC's continued arguments relying on the "withdrawn" statements ***that UTC refused to withdraw***—evidencing the lack of clarity in UTC's "withdrawal." UTC has no basis to say that any other reasonable competitor or the public would understand it withdrew its IPR arguments based on this record.

[5] *Trend Micro* and *Wargaming* are inapposite. In both cases, the Board refused counsel's attempt to disclaim subject matter to save claims in an ***IPR***, because the IPR process encourages claim amendments instead. 2020 WL 5031970, at *11; 2018 WL 4278986, at *11. The Board clarified that disclaimer binds the patentee, not the Board. *Id.* (citing *Tempo Lighting*, 742 F.3d at 978). These cases do not opine that a district court cannot hold a patentee to their previous disclaimers.

996; *Aylus*, 856 F.3d at 1359, 1360 ("relevant remarks" for disclaimer include "all express representations made by *or on behalf of* the applicant") (emphasis added).

**2. The Board and Liquidia Relied on UTC's Disclaimer Position**

Liquidia relied on the UTC's disclaimer in its claim construction briefing here, and in its last IPR paper (*e.g.*, Ex. J8, 15-17, 21-22)—as a basis for "lawful conduct," i.e. Liquidia's product not infringing UTC's patents. *Biogen*, 713 F.3d at 1095. In its Decision Denying Rehearing Request on Institution, the Board quoted UTC's position that the Board erred "[b]ecause the recited steps are different from those disclosed in [the prior art] (no isolation of treprostinil after alkylation and hydrolysis steps before forming a salt." D26, 5. Contrary to UTC's out-of-context quote, above, ***the Board recognized that the claims required elimination of isolation*** and rejected UTC's argument because it found that the prior art could be combined to eliminate isolation. *Id.*, 4-5.[6]

**3. UTC's Sole Basis for Withdrawal is Dr. Ruffolo's Uncredible Opinion**

UTC's sole basis for withdrawal is Dr. Ruffolo's *supplemental* opinion. P5, ¶¶12-23.[7] Dr. Ruffolo was asked whether he reviewed documents or consulted with UTC in the IPR ***before*** UTC submitted statements it now attempts to withdraw. D30, 22:9-24:21, 28:24-31:16. UTC blocked these questions as privileged. *Id.*[8] If Dr. Ruffolo did review UTC's IPR statements before filing, his later opinions here are not credible. Regardless, this extrinsic evidence cannot overturn the plain and ordinary meaning of the term, compelled by the intrinsic evidence excluding isolation.

**4. UTC's Withdrawal Is Not Sufficiently Clear As UTC Continues To Substantively Rely On Its Original Construction in the IPR**

---

[6] The Board did not "clearly and expressly" reject UTC's disclaimer position. *Cf. Galderma*, 806 F. App'x at 1010-11. Rather, the Board applied UTC's original construction.

[7] UTC's expert chose not to address UTC's IPR statements until his ***supplemental*** declaration even though this evidence was cited in the parties' Joint Clam Construction Chart (D.I. 52-1), which he purportedly reviewed before his first declaration, submitted on February 5, 2021. P4, ¶ 26.

[8] Although Judge Hall upheld these objections, UTC makes this issue relevant again by alleging that all its actions have been "public," and implicates *when* UTC became aware of this issue.

UTC attempts to withdraw select soundbites but continues to rely on the exclusion of isolation prior to salt formation to distinguish the prior art. For example, despite "withdrawing" the statements in black (below), UTC still advocates that the claims exclude isolation to overcome prior art by pointing to the Board's reliance on UTC's no isolation argument (red box below):

The claimed pharmaceutical batches are an improvement over Moriarty and Phares ~~in part because they form a salt without prior isolation of the intermediate treprostinil.~~ Ex.2002, ¶¶87-93; Ex.2002, ¶¶87-88, 90-91, 136-140. Thus, claim 1 states that the recited impurities must be those specific impurities that result from a process in which the salt is formed ~~without isolation of treprostinil intermediate~~ after alkylation and hydrolysis (step (b) of claim 1 forms "a solution comprising treprostinil" which is the starting solution of the directly following step).

The Board recognized this distinction in its Decision, noting that Phares teaches "dissolving treprostinil" and then adding diethanolamine, demonstrating that the intermediate treprostinil was isolated and solid before being dissolved. Dec., 23. Moriarty also teaches isolating a solid form of treprostinil in its final step.

J2, 56-57; *see also*, D7, 66-67 (claiming "additional advantages" of "synthesis without isolation")[9]; *see generally* J2-J5 (yellow highlighting in dozens of pages over two papers and two declarations). Clearly, UTC has not rescinded its disclaimer. *Luv N' Care*, 2013 WL 3471269, at *9-10.

## CONCLUSION

UTC unmistakably construed claim scope before the Board, because it is consistent with the plain language of the claims and the only position it could take in an attempt to preserve the validity of the '901 claims. UTC continues to advocate these positions before the Board and thus, has not met the high standard to withdraw that disclaimer. Thus, the Court should adopt Liquidia's constructions, which are supported by the specification, claims, prosecution history, and UTC's own IPR statements.

---

[9] UTC states in its IPR oral argument slides that "[b]enefits in specification still fall within the scope of the '901 patent claims." J7, Slide 147. UTC defies logic in arguing that the "elimination of certain work-up steps" (*supra* Section I.B.) is a toutable benefit of the claims, while opposing constructions that require exclusion of those steps. *See also*, *supra* n.4.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff United Therapeutics Corporation*

OF COUNSEL:

Douglas H. Carsten
Arthur P. Dykhuis
Jiaxiao Zhang
Katherine M. Pappas
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA 92612
(949) 851-0633

Adam W. Burrowbridge
Timothy M. Dunker
Joshua M. Revilla
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8000

William C. Jackson
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue NW
Washington, DC 20005
(202) 237-2727
Bill Ward
BOIES SCHILLER FLEXNER LLP
725 S Figueroa Street, 31st Floor
Los Angeles, CA 90017
(213) 995-5745

June 21, 2021

SHAW KELLER LLP

*/s/ Nathan R. Hoeschen*
Karen E. Keller (#4489)
Jeff Castellano (#4837)
Nathan R. Hoeschen (#6232)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302)298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendant Liquidia Technologies, Inc.*

OF COUNSEL:

Sanya Sukduang
Jonathan Davies
Douglas W. Cheek
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202)842-7800

Ivor Elrifi
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212)479-6000

Deepa Kannappan
Lauren Krickl
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650)843-5000
Erik Milch
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5640
(703)546-8000