## MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE  19899-1347
(302) 658-9200 TELEPHONE · (302) 658-3989 FAX

MICHAEL J. FLYNN
(302) 351-9661
mflynn@morrisnichols.com

Original filing date: September 20, 2021
Redacted filing date: September 27, 2021

The Honorable Jennifer L. Hall                    *Via E-Filing*
United States District Court for the District of Delaware
844 N. King Street                    REDACTED - PUBLIC VERSION
Wilmington, DE 19801

Re: *United Therapeutics Corp. v. Liquidia Techs., Inc.*, C.A. No. 20-755-RGA-JLH

Dear Judge Hall:

UTC writes in response to Liquidia's letter seeking to compel testimony pursuant to Fed. R. Civ. P. 30(b)(6). Liquidia's letter brief is wrong on the facts and the law. Liquidia complains of "UTC's refusal to provide a witness to testify as to certain topics" in Liquidia's Rule 30(b)(6) notice—but UTC has agreed to provide a witness to testify on UTC's knowledge of the underlying facts for *every* topic in dispute. Liquidia is not satisfied, and instead seeks UTC's legal contentions and expert opinion. For example, Liquidia seeks the testimony of a corporate deponent comparing *non-asserted* patents and/or a single embodiment of UTC's patented processes with the scope of asserted claims. *See e.g.,* Topics 5-8 (seeking "any difference" between asserted claims and the '393 patent); Topics 13-15 (seeking identification of all impurities "resulting from" certain processes). In essence, Liquidia seeks a UTC deponent to interpret the scope and meaning of the claims of one patent and compare them to the scope and meaning of another patent not asserted in this litigation. Those issues, however, are the purview of expert and opinion testimony, not proper topics for a Rule 30(b)(6) witness. *See Axiohm IPS, Inc. v. Epson Am., Inc.*, C.A. No. 00-420-SLR, Tr. at 4 (D. Del. Mar. 28, 2001) ("we don't do contention depositions in this district") (Ex. A).

UTC has already agreed to designate a witness to testify about facts known or reasonably available concerning, *e.g.*, the asserted patent's conception, reduction to practice, synthesis, and manufacture of UTC's treprostinil. Topic Nos. 1-2, 9, 12, 16. Liquidia is unsatisfied and moves to prematurely seek expert testimony via UTC's corporate representative. *See, e.g., Tiegel Manu Co. v. Globe-Union, Inc.*, C.A. No. 84-483-WKS, Tr. at 14 (D. Del. Oct. 5, 1984) ("a lay person shouldn't be required to formulate a party's contention in response to deposition questioning") (Ex. B); *Catalina Mktg. Corp. v. LDM Grp.*, No. 4:09CV01114 ERW, 2009 WL 3712030, at *1 (E.D. Mo. Nov. 5, 2009) ("The Court finds that topic 9 calls for expert testimony, and therefore sustains Plaintiff's objection to the topic."). According to Liquidia, this information is needed for its "non-infringement defense" and its "invalidity defenses under 35 U.S.C. § 112" (Mot. at 1)—but those inquiries are governed by *the asserted claims* and *patent disclosures* as understood *by a person of skill in the art*, not as understood by UTC's 30(b)(6) fact witness. For example the topics in dispute would require UTC's witness to interpret claim language, opine on claim scope, and provide testimony concerning UTC's legal contentions. Requiring UTC to produce a fact witness to testify on those issues is impermissible as it would require the designated witness "to know every fact pertaining to every contention". *Pharmacia & Upjohn Co. v. Sicor, Inc.*, C.A. No. 04-833-KAJ, Tr. at 37 (D. Del. Oct. 11, 2005) (Ex. C).  Such depositions are "not fair." *See Chalumeau Power Sys. LLC v. Alcatel-Lucent USA, Inc.*, C.A. No. 11-1175-RGA, Tr. at 27-28 (D. Del. Oct. 4, 2013) (Ex. D).

The Honorable Jennifer L. Hall                                             Page 2
September 20, 2021

**Topic Nos 5-8**:

Each of Topics 5-8 seek UTC's witness to interpret and compare the claims of the '066 and '901 patents with the claims of the '393 patent, which is not even asserted against Liquidia. *See* Topic 5 (seeking testimony of differences between claim 1 of the '393 patent and claim 1 of the '066 patent); Topic 6 (differences between claim 9 of the '393 patent and claim 1 of '066 patent); Topic 7 (differences between claim 1 of '393 patent and claim 1 of '901 patent); Topic 8 (claim 9 of '393 patent and claim 1 of '901 patent). By definition, those topics would require UTC's fact witnesses to interpret the various patent claims and opine on their scope and meaning.

While Liquidia seeks to paint these topics as simple factual questions, its explanation of relevance reveals Liquidia goal—seeking legal contentions. This is precisely the sort of topics that Judge Andrews refused to compel in *Purdue Pharma* when he denied defendants' motion to compel responses to certain 30(b)(6) topics concerning (1) comparisons among claimed inventions (*e.g.* "The differences, if any, between and/or among the claimed inventions of U.S. Patent Nos. 9,060,976, 8,309,060, 9,492,391, and 9,492,389."), and (2) written description support for claims, stating "[t]hese are contention deposition topics, and are therefore not permitted." *Purdue Pharma L.P. v. Intellipharmaceutics Int'l, Inc.*, C.A. No. 17-392-RGA, D.I. 105 (D. Del. Apr. 15, 2018) (Ex. E).

With Topic Nos. 5-8 (as well as Nos. 13-15), Liquidia continues to seek legal and/or expert testimony regarding claim scope, claim interpretation, and ultimately expert opinions on synthetic processes described and claimed in the asserted patents. In essence, Liquidia seeks to prove its invalidity theories through corporate testimony comparing nuanced language in the various patents. Indeed, UTC has already agreed to provide a witness regarding conception and reduction to practice of the claimed inventions of the '066 and '901 patents (Topic Nos. 1-2), facts relating to Examples 1-6 of the '066 and '901 patents (Topic 12), facts concerning how UTC has synthesized treprostinil API, including "the Moriarty process" to the extent UTC has used that process (Topic 16), and non-privileged facts regarding the manufacturing process for the treprostinil used in Tyvaso® as described in UTC's NDA No. 022387 for Tyvaso (Topic 9). Liquidia is not satisfied, and instead seeks expert testimony linking particular factual information and claim language in order to define the scope of particular claims—in other words, legal contentions that are not the proper subject of Rule 30(b)(6) deposition testimony. But, "it [is] extremely difficult to distinguish between 'facts' (not protected) and the issue of why those facts have legal consequences, which usually has a work-product (lawyer's mental impressions) dimension." *Trustees of Bos. Univ. v. Everlight Elecs. Co.*, No. 12-CV-11935-PBS, 2014 WL 5786492, at *4 (D. Mass. Sept. 24, 2014) (denying contention topic as "not [] appropriate").

**Topic Nos. 13-14 (Topic No. 15 by footnote)**:

Liquidia argues that topic nos. 13-14 (and by footnote, 15[1]) seek factual testimony underlying its non-infringement and § 112 positions. Liquidia fails to note, however, that UTC has agreed to provide corporate testimony on non-privileged facts regarding the synthesis and manufacture of treprostinil according to processes used by UTC to manufacture treprostinil API over time (*i.e.*, UTC is not limiting testimony based on one particular process used at a given time-point, but will provide testimony for each process used including how that has changed over time), including known facts

---

[1] UTC already agreed to provide testimony regarding "the identified impurities and the manufacture of treprostinil as recited in NDA No. 022387." D.I. 178 Ex. A at 19.

The Honorable Jennifer L. Hall                                                    Page 3
September 20, 2021

relating to impurities with respect to those processes UTC has used. In other words, UTC has agreed to provide a witness with respect to all the underlying factual issues in topics 13-15, but resists providing a witness to interpret and apply the claim language as Liquidia apparently seeks. That is because when "information sought is more appropriately" discoverable through "expert discovery" a party "may properly resist a Rule 30(b)(6) deposition." *Trustees of Bos. Univ.*, 2014 WL 5786492, at *4. To the extent Liquidia seeks factual testimony regarding R&D or technical aspects of particular embodiments, UTC has agreed to provide a witness on the facts underlying those topics—and Liquidia has deposed the inventors themselves already.[2]

Liquidia's letter brief fails to explain how testimony falling under topics 13-15 (not otherwise already addressed) would inform its purported § 112 or non-infringement arguments. Its failure to do so is telling: Liquidia is seeking UTC's legal contentions and interpretations of patent claims rather than merely the factual details of the synthesis process. The topic scope above and beyond the testimony UTC has agreed to provide is not actually factual testimony, and instead would be corporate testimony interpreting claim language—claim language properly the subject of expert testimony regarding *inter alia* how a person of ordinary skill would understand and apply the teachings of the patents and interpret the scope of their claims.

**Topic No. 4**:

Liquidia argues in its letter that "during the meet-and-confers, UTC stated that it **would not** provide any testimony regarding research and development efforts b**y the named inventors** on dry powder formulations of treprostinil." (Emphasis in original). This is simply wrong, as evidenced by both UTC's written objections and responses to Liquidia's 30(b)(6) notice. Moreover, in the meet-and-confers UTC agreed to provide corporate testimony regarding "research and development efforts relating to dry powder formulations of treprostinil reasonably around the priority date of the '793 patent." The carve-out UTC imposes is not *identity* based (*i.e.,* the work of the named inventors) but rather *time* based (*i.e.,* around the priority date of the patents). UTC designates a witness to testify "reasonably around the priority date" due to this Court's prior ruling on Liquidia's motion to compel regarding Mannkind documents and information relating to post-priority work separate from the asserted '793 patent. The Court has already ruled that later work to develop a powder formulation, like the work UTC did with MannKind, is not relevant to the issues in the litigation. *See* D.I. No. 111; *see* Ex. A at 9-10. Liquidia's effort to seek reconsideration of that prior ruling, albeit through a different discovery vehicle, should be rejected.

**Topic No. 19**:

Liquidia's motion to compel testimony on Topic 19 is surprising, especially considering that during the meet and confer sessions UTC agreed to give Liquidia a witness on the commercial success of Tyvaso®. In addition, UTC has agreed to produce a witness on Liquidia's Topic 20 ("The unit sales of Tyvaso®, and all revenues, gross profits, and net profits from the sale of Tyvaso® from the time it was first marketed."), so once again UTC is left to wonder what relevant factual information Liquidia believes it is entitled to but not already receiving.

UTC respectfully requests that the Court deny Liquidia's motion to compel, and grant UTC a protective order to preclude questioning of UTC's corporate designee with respect to Topic Nos. 4-8, 13-15 and 19.

---

[2] Liquidia deposed all four inventors on the '066 and '901 patents last week, Sept. 14-17, 2021.

The Honorable Jennifer L. Hall                                                    Page 4
September 20, 2021

Respectfully,

Michael Flynn (# 5333)
*Counsel for United Therapeutics Corp.*

cc:     Clerk of the Court
        All counsel of record

EXHIBIT A

Page 1

```
                IN THE UNITED STATES DISTRICT COURT

                IN AND FOR THE DISTRICT OF DELAWARE


    AXIOHM IPB, INC.,                :
                                     :      CIVIL ACTION
            Plaintiff,               :
                                     :
         v.                          :
                                     :
    EPSON AMERICA, INC. and          :
    SEIKO EPSON CORPORATION,         :
                                     :      NO. 00-420-SLR
            Defendants.              :
    ---------------------------------:
    SEIKO EPSON CORPORATION, and     :
    EPSON AMERICA, INC.,             :
                                     :
            Counterclaimants,        :
                                     :
         v.                          :
                                     :
    AXIOHM IPB, INC., and AXIOHM     :
    TRANSACTION SOLUTIONS, INC.,     :
                                     :
            Counterclaim Defendants. :
                         - - -

                    Wilmington, Delaware
              Thursday, March 29 2001 at 2:00 p.m.
                      JUDGE'S DECISION

                         - - -

    BEFORE:      HONORABLE SUE L. ROBINSON, Chief Judge

                         - - -

    APPEARANCES:


           MORRIS NICHOLS ARSHT & TUNNELL
           BY:  JULIA HEANEY, ESQ.

                    and


                              Brian P. Gaffigan
                              Official Court Reporter
```

Page 2

```
    APPEARANCES:  (Continued)


           McDERMOTT WILL & EMERY
           BY:  DONNA M. TANGUAY, ESQ. and
                MICHAEL D. SWITZER, ESQ.
                (Washington, District of Columbia)

                Counsel for Axiohm IPB, Inc. and
                Axiohm Transaction Solutions, Inc.


           CONNOLLY BOVE LODGE & HUTZ
           BY:  ARTHUR G. CONNOLLY, III, ESQ.

                    and

           HOGAN & HARTSON L.L.P.
           BY:  STUART LUBITZ, ESQ. and
                JAI RHO, ESQ.
                (Los Angeles, California)

                Counsel for Seiko Epson Corporation
                and Epson America, Inc.



                    - oOo -

                P R O C E E D I N G S

        (Judge's opinion excerpted from proceedings.)

        THE COURT:  Okay.  I'm ready to make my decision.

        First of all, let me start out by saying that as
    far as I'm concerned, what should have happened in this case
    is you should have had documents production, should have
    used your 30(b)(6) depositions at the beginning of discovery
    to make sure that you have documents and that you have
    individual witnesses identified.  It's hard for me to believe
```

Page 3

that we're at the very end of discovery and you are still
calling out 30(b)(6) depositions. I mean it's rare and I
think they're certainly less helpful than an individual
deposition and I certainly would hate to think that is what
you are counting on.

Given that background, number one, it seems to me
that at this point if Axiohm really wants to find out about
the conception and reduction to practice, it's time you asked
the inventors. Forget the 30(b)(6). So I'm denying that
request for relief.

Number two, about this third party. It was my
understanding from what Mr. Switzer said that they have
produced all documents. If there is an outstanding request
and the defendant has not, then the defendant needs to,
but with respect to the deposition testimony, forget the
30(b)(6). We've got two individuals who are identified on
the documents that have been produced. I'm going to order
that those depositions be scheduled and be taken.

Number three, and number four, the communications
between Foreign Patent Offices and our own Patent Office, I'm
only going to require that the prosecution files and publicly
available records be produced. I am under the impression
that what Mr. Switzer wants is documents that are generally
not produced, at least not until patents issue, and I'm not
going to go behind the regular rule and allow basically those

Page 4

kinds of documents to be produced prior to the time they
would be publicly available anyway.

With respect to the licenses, again it seems to
me that if the license agreements themselves do not cover
either the patents or the products, then they are not covered
by a request for such license agreements. Now, if in fact
there are other business arrangements where people are
practicing the invention and there is nothing specifically in
place, I think that has to be covered by a different kind of
request. So long as the specific question or request for
production has been appropriately responded to, and it
sounds as though it has, then I'm not going to order anything
further.

With respect to defendants' complaints, we don't
do contention depositions in this district, and the word
"entitled" is not generally one that I embrace, so that is
denied.

Number two, I think it makes sense for you all,
in order to get this done congenially and orderly, to extend
the discovery deadline until the end of April just for the
purpose of getting your depositions in. Within one week of
today, you need to have agreed among yourselves how you're
going to do that. And if you are having problems, then I
will entertain a further conference with you all, but it
seems to me as though at this point in time, with the end of

File: 3H28AXI1.V1      CondenseIt™      2:00 p.m. Telephone Conference

Page 5

1  discovery looming, it's time for you all to get in gear and
2  get this done.
3          With respect to these folks who are not in this
4  country, I just want you to know that it is my belief, and
5  I'm not sure what I heard, if these individuals are employed,
6  whether they're directors or officers or anything else,
7  they'd better make themselves available not necessarily in
8  this country but someplace.  If they're not in any way
9  related, then that is a problem for the person who wants to
10 take their deposition.
11         With respect to the software, I don't know,
12 apparently the software has been produced.  Axiohm intends
13 to supplement all of these things by the end of this month,
14 which after all is Friday.  With respect to the prior art, I
15 want to make sure Axiohm understands, I don't care whether
16 it's literally reproduced, but if it's not identified by
17 April 18, it will not be used or usable in summary judgment
18 or at trial.  So you had better make sure whatever prior art
19 you intend to rely on through the case that you identify it
20 before the end of discovery.
21         Likewise, willful infringement.  If in fact,
22 Axiohm, you intend to rely on the opinions of counsel,
23 generally this is not an issue that we address at the end
24 of discovery, you have to let Epson know by March 30.
25 Otherwise, you will be precluded from using that, and that

Page 6

1  will give an opportunity for discovery before the end of
2  discovery comes about.  So March 30, which is after all,
3  what is it, Friday, is your deadline.  This is something that
4  should have been addressed prior to this.
5          With respect to the damages, the complaint about
6  damages, what can I say when a party says we've produced
7  related materials?  All I can say is if there are outstanding
8  contentions, they have to be replied to.
9          I think that addresses everything.  If you all
10 are having problems with the depositions, you let me know.
11 We'll schedule something next week.
12         Is there anything further we can address?
13         MS. TANGUAY: No.  Thank you, your Honor.
14         THE COURT: All right.  Thank you.  Good-bye.
15         MR. RHO:  Can we ask the court reporter for an
16 expedited transcript of this judge's decision?
17         THE COURT: Well, if you identify yourself, I
18 will order it.
19         MR. RHO:  Yes.  Jai Rho.  And I would like that
20 sent.
21         THE COURT:  All right.  Thank you.
22         (Telephone conference ended at 3:05 p.m.)
23
24
25

Axiohm v Epson, et al., Civil 00-420 (SLR)

EXHIBIT B

1           IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF DELAWARE

3

4   TIEGEL MANU CO.,              )
                                  )
                  Plaintiff,      )
5                                 )
                                  )
6       v.                        )     Civil Action No. 84-483
                                  )
7   GLOBE-UNION, INC.,            )
                                  )
                  Defendant.      )
8

9

10                               Wilmington, Delaware
                                 October 5, 1984
                                 2:25 o'clock p.m.

11

12  BEFORE:

13           THE HON. WALTER K. STAPLETON, Chief Judge

14                 A P P E A R A N C E S

15  For Plaintiff:

16           COLLINS J. SEITZ, JR., ESQUIRE
             Connolly, Bove, Lodge & Hutz
17           FRANK J. BENASUTTI, ESQUIRE
             C. FREDERICK KOENIG, III, ESQUIRE

18

19  For Defendant:

20           MARY B. GRAHAM, ESQUIRE
             Morris, Nichols, Arsht & Tunnell
21           GARY CLARK, ESQUIRE [By conference telephone]
             JAN WEIR, ESQUIRE [By conference telephone]

22

23

24

25

[No response.]

THE COURT:  I view the noticed discovery as being contention discovery.  It has been the consistent position of this Court that a lay person shouldn't be required to formulate a party's contention in response to deposition questioning and that not even a lawyer should be required to formulate trial strategy and contentions in immediate response to questions on deposition.  And it has accordingly been the consistent practice to require that contention discovery, which is clearly permissible and very constructive in narrowing the issues, but to confine it to interrogatories to a party, period.

Now, we appear to have a time problem here, although I am not sure whether we have a time problem or not.  When did you say you are prepared -- what did you say your turnaround time on interrogatories would be, Mr. Clark?

MR. CLARK:  Your Honor, of course it would depend on the number and the scope of them, but I think that within a matter of -- if they were served on us, for instance, on Monday, I think by Thursday or Friday we could probably have answers for them, assuming that they are of a scope limited to the issues raised on preliminary injunction.

MR. BENASUTTI:  Your Honor, I might just add one thing to this, and I think I covered it in my papers,

EXHIBIT C

— SHEET 1 —

```
                                                    1
1              IN THE UNITED STATES DISTRICT COURT

2              IN AND FOR THE DISTRICT OF DELAWARE

3                          - - -

4   PHARMACIA & UPJOHN COMPANY,      :  CIVIL ACTION

5                                    :
         Plaintiff and
6        Counter-defendant,          :

7   v.                               :

8   SICOR INC., and SICOR            :
    PHARMACEUTICALS INC.,
9                                    :
         Defendants and             :  NO. 04-833 (KAJ)
10        Counter-Claimants.

11                   Wilmington, Delaware

12            Tuesday, October 11, 2005 at 3:00 p.m.
                    TELEPHONE CONFERENCE
13
                           - - -
14
    BEFORE:      HONORABLE KENT A. JORDAN, U.S.D.C.J.
15
                           - - -
16  APPEARANCES:

17
              MORRIS NICHOLS ARSHT & TUNNELL
18            BY:  MARYELLEN NORIEKA, ESQ.

19            and

20  McDONNELL BOEHNEN HULBERT & BERGHOFF, LLP
              BY:  DANIEL A. BOEHNEN, ESQ.,
21                 JOSHUA R. RICH, ESQ., and
                   GRANTLAND G. DRUTCHAS, ESQ.
22                 (Chicago, Illinois)

23                 Counsel for Pharmacia & Upjohn
                   Company
24
25                      Brian P. Gaffigan
                        Registered Merit Reporter
```

```
                                                    2
1   APPEARANCES:  (Continued)

2
              ASHBY & GEDDES
3             BY:  JOHN G. DAY, ESQ.

4             and

5   SONNENSCHEIN NATH & ROSENTHAL, LLP
6             BY:  REID L. ASHINOFF, ESQ. and
                   DAVID R. BAUM, ESQ.
7                  (New York, New York)

8             and

9   SONNENSCHEIN NATH & ROSENTHAL, LLP
10            BY:  JORDAN A. SIGALE, ESQ.
                   (Chicago, Illinois)
11
                   Counsel for Sicor Inc. and Sicor
12                 Pharmaceuticals Inc.

13
14                   - oOo -

15              P R O C E E D I N G S

16      (REPORTER'S NOTE:  The following telephone

17  conference was held in chambers, beginning at 3:00 p.m.)

18      THE COURT:  Hi, this is Judge Jordan.  Who do I

19  have on the line?

20      MS. NOREIKA:  Good afternoon, Your Honor.  It's

21  Maryellen Noreika from Morris Nichols for plaintiff

22  Pharmacia; and I have with me, Dan Boehnen and Joshua Rich

23  of the McDonnell Boehnen firm in Chicago.

24      MR. BOEHNEN:  Also with us in Chicago is Grant

25  Drutchas.
```

```
                                                    3
1       MS. NOREIKA:  Oh.  I apologize, Grant.

2       THE COURT:  All right.  Who do I have on for

3   Sicor?

4       MR. DAY:  Good afternoon, Your Honor.  On behalf

5   of Sicor, you have John Day from Ashby & Geddes as local

6   counsel; and from the Sonnenschein firm in New York, Reid

7   Ashinoff and David Baum; and from Sonnenschein's office in

8   Chicago, Jordan Sigale.

9       THE COURT:  All right.

10      MR. ASHINOFF:  Good afternoon, Your Honor.

11      THE COURT:  Good afternoon.  Well, by my count,

12  this is the fifth time we're getting together in this case

13  because we have discovery issues.  So this is not a good

14  record, ladies and gentlemen, but we're going to plow

15  through what we've got here.

16      Before we start, however, I have a question

17  for the folks at Sicor, and that is, I got the in camera

18  submission that you sent over.  Did you send a version,

19  redacted, if you thought necessary, of your legal argument

20  to the opposing counsel?

21      MR. ASHINOFF:  Your Honor, what we served on

22  the opposing counsel is a motion that we filed and a

23  privilege log that listed the privilege material that the

24  Court got.  What we served in camera on the Court was the

25  short discussion of the substance of the privileged material
```

```
                                                    4
1   and the actual privileged material.  We did not serve copies

2   of the discussion and description of the privilege material

3   or the actual material on our adversary.

4       THE COURT:  All right.  I need to have you

5   identify yourself for the record.

6       MR. ASHINOFF:  It's Reid Ashinoff.  I'm sorry,

7   Your Honor.

8       THE COURT:  All right.  Mr. Ashinoff, that's not

9   going to cut it.  I'm going to quote to you what I said in

10  our last teleconference on the 19th of September.  Page 24

11  of the transcript:

12      "You can certainly submit your documents in

13  camera and your legal arguments ought to be submitted so

14  that the other side can respond to them."

15      Later on the same page:

16      "In short, you give me the documents but you

17  give your arguments to the attorney side, too, so they can

18  respond unless it's something genuinely extraordinary that

19  you think will get past me; all right?"

20      And what I was trying to communicate there and

21  what I will reemphasize is I'm not going to let you give me

22  legal argument without an opportunity for them to respond to

23  legal argument.

24      MR. ASHINOFF:  Your Honor, I don't think we cite

25  any law at all in the material we submitted in camera.  What
```

SHEET 9

**33**

1 representation from you folks that you have checked with the
2 folks he just named, an affirmation that in fact you have
3 inquired of and heard from these people that there are no
4 lab notebooks belonging to this inventor. And that's all
5 I'm hearing he is asking for. Are you telling me you got an
6 issue with that?
7     MR. BOEHNEN: To me, Your Honor, no, sir. And I
8 understand, just to restate it, I believe he is referring to
9 the Oblon firm, Jake Wood, which is JA Kemp & Co. in the
10 U.K, and --
11     MR. SIGALE: And the Nerviano Consulting firm
12 (phonetic) where many of these inventors found gainful
13 employment.
14     MR. BOEHNEN: -- the people in the Nerviano
15 Medical Sciences Facility as well as Pfizer itself.
16     THE COURT: Right. Okay.
17     MR. BOEHNEN: No, not a problem. We'll be happy
18 to do that.
19     THE COURT: Done.
20     MR. SIGALE: If I might, I'd prefer to have the
21 notebooks.
22     THE COURT: Well, I'm sure everybody would
23 prefer the notebooks were there because then we wouldn't be
24 having this fight at all. So obviously if the notebooks are
25 there, they'll be produced, but if they're not, you will get

**34**

1 an affirmation of what was done to look for them with these
2 other folks, right?
3     MR. BOEHNEN: Yes, sir.
4     MR. ASHINOFF: Your Honor, just to go back half
5 a step. On the foreign patent material that Mr. Boehnen,
6 Ms. Noreika say is now being collected, given that we plan
7 to try to go abroad and take the inventors on November 7th,
8 can we get some date not too late in October when that
9 material will be produced to us so we have the time to
10 assimilate it before we take the inventors?
11     THE COURT: Mr. Boehnen.
12     MR. BOEHNEN: We have already begun making every
13 effort to get that to them as soon as possible. Let's see.
14 We can start a rolling production to them by the end of next
15 week and I think we hope to have it to them by the end of
16 October.
17     THE COURT: All right. End of October it is.
18 And a rolling production is a good idea.
19     MR. ASHINOFF: Thank you.
20     THE COURT: Okay. Then we had the dispute about
21 the 30(b)(6) categories.
22     MR. ASHINOFF: And I'm going to let Mr. Sigale
23 address that, Your Honor.
24     MR. SIGALE: Your Honor, we propounded a number
25 of categories in a 30(b)(6) notice that asks for the factual

**35**

1 contentions underlying legal contentions I need to
2 understand and I thought this was an efficient way to do it.
3 For instance, if we take category number six. We asked for
4 the facts concerning Pharmacia's allegation that licensing
5 and adoption of the ready-to-use formula is evidence that
6 the patent satisfied the obviousness requirement.
7     I need to know what facts those are. That is
8 not a contention request. It is what licensing are you
9 talking about? What adoption are you talking about? What
10 are the circumstances about that licensing? And I thought
11 this was an efficient way to get that. I can go through a
12 couple other categories but I can assure you I'm not looking
13 for legal contentions, that is a waste of time. A lay
14 witness is not going to be able to give that to me, but
15 facts they certainly can.
16     THE COURT: All right. Mr. Boehnen, is this
17 yours again?
18     MS. NOREIKA: Your Honor, this is Maryellen
19 Noreika. I'll respond to this issue.
20     THE COURT: Okay.
21     MS. NOREIKA: Sicor, there doesn't seem to be
22 any disagreement that depositions are not the appropriate
23 means by which to obtain contentions. Instead, they're
24 saying, well, we're just seeking facts. But as the topic
25 that Mr. Sigale just read indicates, these are seeking

**36**

1 contentions: All facts regarding Pharmacia's allegations
2 regarding copying, commercial success, failure of others.
3 There is a topic asking for the data Pharmacia contends
4 shows secondary considerations and the conclusions a person
5 skilled in the art would draw from that data. There is a
6 topic asking for a witness to testify about Pharmacia's
7 response to a contention interrogatory on secondary
8 considerations.
9     THE COURT: Okay.
10     MS. NOREIKA: I mean the wording of these
11 topics.
12     THE COURT: I think I have your position. I
13 have other folks who need my attention at 4:00 o'clock so
14 let me tell you, having read this, what my impression is.
15     I think there is some good force to the argument
16 being made by Pharmacia that the inserting of the word
17 "facts" doesn't make this less of an effort to get at what
18 is essentially the legal position of the party, although you
19 may get the benefit as well of saying, well, these are the
20 pieces of specific evidence.
21     So in the first instance, and on an expedited
22 basis, not a 30-day turnaround, if you want the chance to
23 answer these as contention interrogatories, I'm going to
24 direct that you accept them as such and you answer them
25 forthwith. You know, the sort of thing that you get a

Tuesday, October 11, 2005

SHEET 10

37

1 couple of weeks to respond to.
2         And then if you folks on the Sicor side want to
3 do some follow-up deposition discovery, targeted at
4 inquiring about specific facts that are revealed in the
5 context of these interrogatory responses, you're free to
6 do that.
7         I take the point that Pharmacia is making here,
8 which is it's so broadly worded, it can't help but really be
9 a circumstance where somebody is asked to know every fact
10 pertaining to every contention and that's a little bit much
11 to put on a deponent.
12         So that is the resolution to that. You want to
13 treat them as contention interrogatory attorneys. Done.
14 Answer them in two weeks.
15         And then if you have some follow-up and more
16 targeted and specific 30(b)(6) effort you want to make,
17 Sicor, you follow up on it that way.
18         MR. ASHINOFF: Thank you, Your Honor.
19         THE COURT: Now, let me tell you one last thing.
20 And this is for you, Mr. Ashinoff, in the discussions that
21 you are going to be having with your client, to the extent
22 again that this is helpful.
23         And again, we're treading here carefully and
24 I'm very careful when we talk about the attorney-client
25 privilege. I want to assure you I have not made lightly

38

1 the decision I made about how to approach the bifurcation
2 request. To the extent it's helpful in your discussing
3 with your client my understanding of the Knorr opinion, I
4 view Knorr-Bremse as saying no adverse inference can be
5 drawn from either failing to get an opinion or declining to
6 produce it; that you are entitled to get your opinion and
7 to stay silent about it.
8         Viewing it that way, I have never yet heard
9 anybody make a reasoned argument to me why it could be
10 put before a jury after the Knorr-Bremse opinion that an
11 opinion was received but not tendered. And in the absence
12 of that, I'm inclined to think there probably isn't a
13 reasoned argument. That the only reason for putting it
14 in front of a jury would be so they draw an adverse
15 inference, which with what Knorr-Bremse says could not
16 happen.
17         So I give that to you as my best reading of
18 Knorr, in the absence of people having really been able to
19 put it forth, but I think it only fair, since people are
20 trying to grope around and make a decision, that they grope
21 a little less blindly. I hope that is helpful to you.
22         MR. ASHINOFF: It is, Your Honor. And it
23 actually comports with literally a 100-year old doctrine
24 in federal law in other appellate courts to the extent of
25 saying that to force somebody to assert the privilege in

39

1 front of a jury is reversible error and that comports with
2 what Your Honor is saying.
3         THE COURT: Okay. Well, I thank you for your
4 time today. I hope it has been helpful in getting some
5 things worked out. Let me tell you real quickly what I'm
6 looking for as a date in February because this is going to
7 appear in a revised scheduling order that we'll put out.
8 I'm going to see you folks for argument on February 3rd
9 instead of January 19th. That's a Friday. All right?
10         MR. BOEHNEN: Your Honor, one quick point for
11 Pharmacia.
12         THE COURT: Yes.
13         MR. BOEHNEN: Can we have a new date when our
14 briefs in opposition to bifurcation will be due? I would
15 suggest two weeks after they produced papers to us if they
16 chose to rely upon them.
17         THE COURT: Mr. Ashinoff, you're fine with that,
18 I assume.
19         MR. ASHINOFF: Yes, as long as Mr. Boehnen
20 doesn't in the interim try to put my witness in the chair
21 and force us to go through all kinds of contortions about
22 privilege.
23         THE COURT: Well, I'm sure everybody wants to be
24 efficient here, or at least I would like to think so.
25         Mr. Boehnen, you take that point, I'm sure.

40

1         MR. BOEHNEN: Yes, sir.
2         MR. ASHINOFF: Your Honor, one last comment on
3 what Your Honor last said, and I apologize for this.
4         This law firm has an annual weekend once a year
5 where it gathers its partners and their spouses and et
6 cetera and it happens to be February 1st through 4th of
7 2006.
8         THE COURT: Okay. That is enough said. I will
9 not trample on a firm tradition. If it's the 1st through
10 the 4th, then I'm shifting you guys to the next day I can
11 give you. And I think it's, yes, the next day I can give
12 you is the 9th and that's when I will set you down. We'll
13 do this at 10:00 a.m. on February 9th.
14         Can you do that, Mr. Boehnen?
15         MR. BOEHNEN: Yes, sir.
16         THE COURT: Okay.
17         MR. ASHINOFF: Thank you very much, Your Honor.
18         MR. SIGALE: Your Honor, I'm sorry. This is
19 Mr. Sigale. We left open the claim construction dates. You
20 were suggesting December 12th for the opening brief. The
21 opposition brief would be due?
22         THE COURT: It will follow the ordinary course:
23 Two weeks for answer, one week for reply.
24         MR. SIGALE: Right, which would be the 26th of
25 December; and inasmuch as I don't observe Christmas, I would

United States District Court for the District of Delaware
Before the Honorable Kent A. Jordan

# EXHIBIT D

1

```
 1            IN THE UNITED STATES DISTRICT COURT

 2            FOR THE DISTRICT OF DELAWARE

 3  CHALUMEAU POWER SYSTEMS  :
    LLC,                     :
 4          Plaintiff,       : No. 1:11-cv-01175-RGA
        v.                   :
 5                           :
    ALCATEL-LUCENT USA, INC.,:
 6  et al.,                  :
          Defendants.        :
 7

 8            Friday, October 4, 2013
              3:00 p.m.
 9
              Pretrial
10            Courtroom of Judge Richard G. Andrews

11            844 King Street
              Wilmington, Delaware
12

13  BEFORE:   THE HONORABLE Richard G. Andrews,
              United States District Court Judge
14

15  APPEARANCES:

16            FARNAN LLP
              BY:  MICHAEL FARNAN, ESQ.
17
                   -and-
18
              LEE, JORGENSEN, PYLE & KEWALRAMANI, PC
19            BY:  MICHAEL LEE, ESQ.

20                 On behalf of Plaintiff

21

22

23

24
```

2

```
 1  APPEARANCES CONTINUED:

 2            MORRIS, NICHOLS, ARSHT & TUNNEL LLP
              BY:  JACK BLUMENFELD, ESQ.
 3
                   -and-
 4
              GOODWIN PROCTER LLP
 5            BY:  LANA SHIFERMAN, ESQ.

 6                 On behalf of Defendants

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

3

```
 1            THE COURT:  Mr. Farnan, you have

 2  Mr. Lee with you.  Were you at the claim

 3  construction?

 4            MR. LEE:  I was not.

 5            THE COURT:  So Mr. Jorgensen was

 6  there.

 7            MR. LEE:  That's correct.

 8            THE COURT:  Mr. Blumenfeld, you

 9  have Ms. Shiferman?  Is that the pronounciation?

10            MS. SHIFERMAN:  Yes, Your Honor.

11            THE COURT:  And you were at the

12  claim construction I remember.

13            MS. SHIFERMAN:  I was.

14            THE COURT:  I got thrown off a bit

15  because of the way this was scheduled, and then

16  there was a certain amount of repetition in the

17  pleadings that were filed but I didn't actually

18  realize that right away so I was busy cursing

19  that there were extra pleadings, but I got over

20  that.

21            So I have read everything.  There

22  was one thing I was kind of interested in

23  hearing from you all on.  The others seem to be

24  pretty cut and dry.  But on this interrogatory,
```

4

```
 1  whatever it is, the revenue information on these

 2  Omni switches in the 7000 and 9000 family,

 3  Mr. Lee, you're the one who is requesting the

 4  information.  What is your theory as to why you

 5  should get the sales information for these Omni

 6  switches?

 7            MR. LEE:  That's how they're sold,

 8  Your Honor.  They're sold as a family.

 9            THE COURT:  What does that mean?

10  Because I understood from what Alcatel wrote

11  that they're kind of like my family, some in

12  Delaware but some are out of state.  So, yes,

13  we're a family but we don't necessarily travel

14  together.  Or in this particular case, these

15  switches are sold independently of what gives

16  them Power over Ethernet technology.

17            MR. LEE:  The switches are

18  marketed as either having or not having PoE

19  technology.  So I downloaded this from the

20  website.  It says, with or without Power over

21  Ethernet.  The whole family is offered with or

22  without Power over Ethernet.

23            THE COURT:  So the impression I

24  got from Alcatel was that you could buy the
```

5

1  switch with the Power over Ethernet or without
2  the Power over Ethernet.  It wasn't even like
3  when you bought it with, it was one integrated
4  product.  It was something where essentially
5  there's a card or something, so it's like two
6  separate products even though there may be that
7  a fair amount of the time they're used together.
8       MR. LEE:  It's our understanding
9  that when someone buys a switch with the Power
10 over Ethernet functionality, the switch comes
11 with the card in it.  And what we're looking for
12 is the amount of value added to the overall
13 switch by the inclusion of the card versus the
14 exclusion of the card.
15      THE COURT:  But you can also buy
16 the card independently, right?
17      MR. LEE:  People can do that, yes.
18      THE COURT:  Do you know if they do
19 that?
20      MR. LEE:  We haven't conducted
21 discovery on the sales end of it yet, Your
22 Honor, so I don't know exactly how they purchase
23 it.  The chassis which is what they're called --
24      THE COURT:  Right, I saw that.  I

6

1  was actually hoping that you bring a picture or
2  somebody bring a picture of these things because
3  I don't have -- is that a decent picture?
4       MR. LEE:  If you don't mind --
5       MS. SHIFERMAN:  Yes, that's fine.
6       MR. LEE:  It's just off the
7  Internet.  That's the chassis.
8       THE COURT:  So the chassis is like
9  the white thing that looks like --
10      MS. SHIFERMAN:  It's the box.
11      THE COURT:  And the Power over
12 Ethernet is one of these things that slides into
13 it?
14      MR. LEE:  I don't know if it's
15 actually shown there.  It's incorporated into
16 the chassis and sold as a unit.
17      MS. SHIFERMAN:  If I may respond?
18      THE COURT:  You may in a minute.
19 Let me just think.  So your argument is
20 essentially that -- and I take it you don't have
21 any information one way or the other how often
22 they're sold as a unit as opposed to how often
23 they're sold separately?
24      MR. LEE:  We don't have any

7

1  numbers to --
2       THE COURT:  Did you have anything
3  that would give me any hint about that topic?
4       MR. LEE:  Well, we know that they
5  are, in fact, sold that way.  I just don't know
6  what the ratio is of those that are sold with
7  the Power over Ethernet functionality versus
8  those that are sold without the Power over
9  Ethernet functionality.
10      THE COURT:  Do you have a sense of
11 when something is sold separately how much
12 OmniSwitch 9000E sells for and how much, for
13 lack of a better word, the card sells for?
14      MR. LEE:  That's one of the things
15 we're looking for in discovery.  I believe that
16 I've seen documents that are essentially list
17 price sheets.  And like most things, there are
18 other documents that say here is the list price
19 and here is the price we're going to sell it at.
20      THE COURT:  Right.  But the order
21 of magnitude, I'm just curious about.
22      MR. LEE:  I don't know.  I know
23 they are different.  The ones that have the
24 Power over Ethernet functionality are more

8

1  expensive on the list than those that don't.  I
2  just don't recall what the delta is.
3       THE COURT:  Your understanding is
4  Alcatel either has or is willing to provide
5  information about the sales of all of the
6  Ethernet cards whether they come separately or
7  whether they come with the chassis; is that
8  right?
9       MR. LEE:  I believe that we have
10 an upcoming deposition.  I have a list of sales
11 that have been made.  I don't know exactly what
12 they reflect.  Hopefully, the deponent will be
13 able to tell us what it reflects.
14      THE COURT:  Is this Mr.
15 Vasilakis?
16      MR. LEE:  Yes.  What we're looking
17 for here is the uplift that comes in the chassis
18 form when they're installed, whether it's just
19 the pure retail price or an internal transfer
20 price or whatever the uplift is for the chassis
21 to have those versus the chassis that don't have
22 those.
23      THE COURT:  When you say uplift,
24 that's not a terminology I'm familiar with.

9

1    Does that mean how much is added onto the price
2    or do you mean something else?
3             MR. LEE:  More cost.  I come from
4    the chemical industry so uplift is a term of
5    art, I guess.  It's how much more they charge
6    when they put that in.
7             THE COURT:  Okay.  Maybe there's a
8    factual component which we've just been talking
9    about and there's a legal component.  But before
10   we talk about the legal component, let me hear
11   from Ms. Shiferman from a factual component.
12   Because I had the impression there were
13   representations in your letter that essentially
14   that most Ethernet cards are not sold as an
15   integral part with the chassis of this kind.
16   Meaning, most chassis are not sold with an
17   Ethernet card; is that right?
18            MS. SHIFERMAN:  Yes, Your Honor.
19   First of all, I believe it was last week we had
20   a series of depositions.  I believe it was
21   Mr. Deet(ph) that testified that, in fact, it
22   was less than 10 percent of the chassis in these
23   families that are actually sold or bought for
24   use with a Power over Ethernet line card.  These

10

1    are placed and ordered separately and we do not
2    track the information that links a chassis sale
3    with a Power over Ethernet card.  They don't
4    track one to one.
5             It's up to the buyer how many
6    Power over Ethernet ports within the chassis
7    they want to have Power over Ethernet capability
8    for.  So for every one chassis, they can buy one
9    card, they can buy two, they can buy three.
10            THE COURT:  So how does Alcatel
11   track these cards?
12            MS. SHIFERMAN:  So we've tracked
13   sales of the cards and we have produced the
14   revenue associated with the cards.  We track
15   price lists.  We have produced the price list
16   for both the chassis and the line cards.
17            THE COURT:  Does Alcatel get
18   different revenue on a per card basis if they're
19   sole with the chassis than it does if they're
20   sold independently?
21            MS. SHIFERMAN:  The price for the
22   chassis itself?
23            THE COURT:  No, I was talking
24   about the card.

11

1             MS. SHIFERMAN:  The cards are
2    ordered independently so they would have
3    different product numbers, different orders and
4    that's the real issue here which is not only do
5    we believe that the chassis revenue is not
6    relevant to the issues, it is not tracked.  We
7    do not have any way to -- any non-burdensome
8    way.  We would have to go to an IT vendor in
9    order to try to dig out this information.
10            We track revenue for all the
11   chassis sales.  We track revenue for sales of
12   the Power over Ethernet line cards.  And what
13   we've produced is the sales for all the Power
14   over Ethernet line cards.  We do not have a way
15   through our quarrying from our database to
16   actually link the sale of the Power over
17   Ethernet card with a particular chassis.  And
18   it's, again, not a one-to-one link.  It depends
19   on the user how many ports they would like to
20   have Power over Ethernet capabilities.
21            What we believe we've produced is
22   a way to measure that.  First of all, we
23   produced the line card revenue.  We produced the
24   chassis price list and we've produced all the

12

1    unit numbers.  So there's a way to proxy
2    information for them to determine some of that
3    relevance in addition to the testimony of
4    Mr. Vasilakis who will be able to explain all of
5    this information, and including, he will be able
6    to provide testimony regarding the number of
7    Power over Ethernet ports total that we have
8    sold to all of the non-Power over Ethernet
9    ports.  So there's going to be additional
10   testimony that will provide information.
11            THE COURT:  So this witness who
12   testified last week you say said, and I'm
13   simplifying here, 10 percent of the chassis sold
14   in these series more or less are sold with one
15   or more Ethernet cards?
16            MS. SHIFERMAN:  He said less than
17   10 percent have some Power over Ethernet
18   capability -- are used.  He did not say sold
19   with, but he did say can be bought to be used
20   with the Power over Ethernet.
21            THE COURT:  So, Mr. Lee, assuming
22   for the sake of argument that one can figure how
23   many chassis are sold either total -- which
24   obviously they've got that information -- or how

13

1  many chassis are sold contemporaneously as part
2  of a package with Ethernet cards, if you had
3  this information, how would that help you?
4         MR. LEE:  To the extent the card
5  is sold separately and sold to the public, then
6  we can attach an exact value that is being paid.
7         THE COURT:  An exact value to
8  what?
9         MR. LEE:  To the card.  The price
10 that's being paid for the card is a fair market
11 value price.
12        THE COURT:  When they sell a card
13 directly to the customer, presumably that's a
14 fair market value price, right?
15        MR. LEE:  Presumably, if it's not
16 in console.  What we're trying to get at are
17 those that are included in the console whether
18 what we're seeing is internal pricing within
19 Alcatel just uplifting or increasing the price
20 and --
21        THE COURT:  I think I get what
22 you're getting at which is your concern that the
23 pricing when it's sold as a package, it's like
24 anything else, if you bundle two things

14

1  together, you can internally say you can value
2  them differently than maybe they would be if
3  they were sold separately.  That's what you're
4  driving at?
5         MR. LEE:  Exactly, yes.
6         THE COURT:  What would you need in
7  order to figure out if that was actually
8  happening?
9         MR. LEE:  We would need the number
10 of units sold and from what we have seen on some
11 internal price sheets, it appears that there
12 are -- I don't know if they're product numbers
13 or model numbers but some number that's
14 associated with chassis that is unique when the
15 chassis is sold with a Power over Ethernet
16 capability.  That's what at least we've seen in
17 documents when we go through them.
18        THE COURT:  Is this a topic you
19 plan to explore with Mr. Vasilakis?
20        MR. LEE:  Yes, Your Honor.
21        THE COURT:  So then there was some
22 talk in the letters about entire market value
23 rule and small salable unit, but I'm not getting
24 the sense that that is really part of what the

15

1  dispute is about here.
2         MR. LEE:  At this juncture, Your
3  Honor, it's a discovery dispute and --
4         THE COURT:  No.  No.  I'm sorry to
5  cut you off, but I understand it's a discovery
6  dispute and the question of the damages theory
7  is a separate thing.  But I saw that there seems
8  to be a lot of back and forth even if it was a
9  separate thing because whether or not it was
10 ultimately useable in damages theory, it still
11 may lead to admissible evidence so it's not
12 irrelevant.  If part of it is -- let me just
13 step back.  It seems to me like there's two
14 theories you could be advancing.
15        One of which is I think we just
16 heard is the sales numbers we got may not be
17 exactly accurate because some of them were
18 bundled and they may internally shift prices or
19 cost or something so that what they say are the
20 sales isn't actually a 100 percent accurate
21 representation of what the sales are.  That's
22 your one theory, right?
23        MR. LEE:  Correct.
24        THE COURT:  But then I thought

16

1  there was a second theory which I actually
2  thought was that the sales of these cards, the
3  driving sales of chassis or perhaps vice versa,
4  since we know what the infringing products are
5  supposed to be so it must be their driving sales
6  of the chassis and, therefore, you need to find
7  out the chassis because there's some extra stuff
8  that could possibly work into damages theories
9  if they had that kind of market power.  I don't
10 want to make this more complicated than it is.
11 So if really all we're talking about is the
12 first theory and that's it, I'm fine to stop
13 there.
14        MR. LEE:  No, there's an
15 additional theory.  It's not necessarily the one
16 that you've described.  But I believe one of the
17 witnesses last week, and I can't recall which
18 one, testified that the Power over Ethernet
19 functionality that's incorporated in the
20 chassis, at least in his mind, to make it appear
21 throughout Alcatel's perspective that they have
22 a complete product.
23        So sometimes items are included in
24 larger agglomerate of particles that don't

17

necessarily have the dollar values that attached
from a sale, but they also have other marketing
reasons to be there.  I tend to explore that
with Mr. Vasilakis also.  But there is value
that's being added to the overall chassis that
we believe goes beyond the Power over Ethernet
switch cost.

THE COURT:  All right.  I think in
a rough kind of way I understand your theory.
It seems to me that Alcatel has responded on at
least two grounds, one of which had to do with
this damages theory which seems to not actually
be all that germane right at this point, and
then the other was essentially we can't produce
the kind of information that would actually be
helpful to the theory you're pursuing.  I
recognize you don't have access to their
records.  Do you have comment on that response?

MR. LEE:  I do.  In Exhibit G to
the letter that you received yesterday, there
were some interrogatory responses.  They were in
the brief for a different purpose.

THE COURT:  Okay.

MR. LEE:  And this is what Alcatel

18

submitted.  And there was a portion of their
response to Interrogatory 4, which is what we're
talking about here, that was redacted out.  But
this is Alcatel's initial response to us whom we
sought sales and revenue information for all of
the PoE accused products.

THE COURT:  Hold on.  I'm trying
to find Exhibit G.  What are you directing my
attention to?

MR. LEE:  There's a section of the
page that is redacted out.

THE COURT:  Page 9, this exciting
thing?

MR. LEE:  Yes.  The portion that
is redacted out says this, Defendants state that
revenue, cost and profit information is not
tracked on a product-by-product basis.  Further
responding, defendants state that there is no
specific revenue, cost and profit information
specific to the accused PoE products.  This
isn't chassis specific, Your Honor.  This is
across all accused products.  That was their
initial response.

Months later, we eventually got a

19

table from them that shows all of the sales of
the other PoE models, but not the chassis.  So
to the extent that they say that it's overly
burdensome to get this information or that they
don't have it, they apparently have access to it
enough to formulate the table for the PoE cards
and just as easily could have at the same time
done it for chassis but they opted not to.
That's at least our position.

MS. SHIFERMAN:  That doesn't
really address the point, Your Honor.  We can
pull together a list of every single chassis
sold and give you the total revenue, but that
would be completely over inclusive because only
a small percentage, something less than 10
percent and we will have more testimony on that,
actually are sold for use with a Power over
Ethernet card.  You can't link that.

THE COURT:  You said you've only
had less than 10 percent.  You said, presumably
Mr. Vasilakis will have more --

MS. SHIFERMAN:  More detail, yes.

THE COURT:  If he can say it's 8
percent or whatever, it seems like he must be

20

getting these figures from some figures that
Alcatel generates internally, right?

MS. SHIFERMAN:  They're estimates
based on customer information.  They are not a
count.  We cannot link -- we know how many total
Power over Ethernet cards we sell.  We know the
total number of ports in all the chassis
combined because we know the chassis have X
number of ports.  That's how they're made.  We
know that certain number of them are sold to
have a Power over Ethernet card simply because
we know the number of cards sold, and that's
what Mr. Vasilakis can testify on, and that's
how we know some of the percentages and we know
what our customers tell us.

What we cannot do from our
financial databases is coordinate or parse out
without some new program or a third-party vendor
doing it or figuring out how to do it say this
chassis was sold to be used with two cards or
three cards or one card.  All we know is we sold
this many chassis and they had a total number, X
number of ports.  Some of them were used for a
Power over Ethernet and we know that number,

21

1  which we've produced both units and revenue.
2          THE COURT:  Can you say that last
3  sentence again?
4          MS. SHIFERMAN:  So for the cards
5  itself, we've produced how many cards and we've
6  produced the revenue associated with those
7  cards.
8          THE COURT:  I thought you said
9  something else, the sentence before that.
10         MS. SHIFERMAN:  That's what we
11 cannot do.  We cannot say how many or which of
12 the chassis were linked with that card without a
13 third-party vendor trying to somehow create or
14 manually create a program to link the two.
15 There's no invoice data that comes out of the
16 system to allow us to make the link.
17         THE COURT:  Are these products
18 eventually sold mostly to individual consumers?
19         MS. SHIFERMAN:  Individuals as in
20 you and I?
21         THE COURT:  Yes.
22         MS. SHIFERMAN:  No, these are
23 enterprise products for businesses.
24         THE COURT:  So people aren't

22

1  buying one chassis and one card at a time.
2  They're probably buying --
3          MS. SHIFERMAN:  It would depend on
4  the size of the business and their need.
5          THE COURT:  Well, how much does
6  one chassis sell for, ballpark?
7          MS. SHIFERMAN:  I think it's
8  somewhere like a couple of thousand dollars.  It
9  could be less.  I have a figure of 1200 euros in
10 mind for one of them.
11         THE COURT:  How much does the card
12 cost?
13         MS. SHIFERMAN:  A small percentage
14 of that.  I honestly do not know, a couple of
15 hundred dollars.
16         THE COURT:  I'm sorry, Mr. Lee,
17 but when you were talking about this blacked-out
18 portion and you said, then they've produced
19 something or another, what was it that they
20 produced?
21         MR. LEE:  I --
22         THE COURT:  Because I think what
23 you were saying is their protestations that they
24 can't produce stuff has to be taken with a grain

23

1  of salt.
2          MR. LEE:  I can say that that was
3  there initial objection and then they produced
4  an Appendix A and an Appendix B.  Appendix A
5  reflected, it appeared, almost line by line
6  every sale that had been made since the
7  beginning of the open window of the infringement
8  period to some time in 2013.  They had a product
9  number, a model number and number of units sold,
10 price per unit and that type of thing.  They
11 were able to produce all of that,
12 notwithstanding what was said in the redacted
13 out portion.
14         THE COURT:  Right.  But the way
15 you've just described the table doesn't seem
16 like that table if it included these 7000 or
17 9000 chassis, that that would actually provide
18 you with any useful information.
19         MR. LEE:  That table was for the
20 cards.
21         THE COURT:  Well, no -- all
22 right.  Well, I will tell you what I'm inclined
23 to do which kind of fits in with some of the
24 rest of what I'm inclined to do, which is it

24

1  seems to me that based on the representation
2  that the deponent the other day said that only
3  10 percent of these things or less were linked,
4  and given the representation that the linkage
5  isn't exactly at hand for Alcatel, it does seem
6  to me that it seems likely that the burden on
7  Alcatel to produce this kind of information
8  seems unlikely to be worth the effort to
9  undertake that project.
10         Let me just ask, Mr. Lee, when you
11 got the print-out of Exhibit A and Exhibit B,
12 did this include sales of the cards?  That's
13 what you said they were of, right?
14         MR. LEE:  Of cards or other
15 accused products, non-chassis products.
16         THE COURT:  Okay.  Were you
17 noticing a lot of variation in the sales price?
18         MR. LEE:  Percentage-wise there's
19 a considerable variation, 30 or 40 percent.
20         MS. SHIFERMAN:  These are very
21 different products with different sizes and
22 capabilities.
23         THE COURT:  I guess what I was
24 wondering is I don't know how these cards are

25

1  identified.  But let's assume they are called
2  Power over Ethernet Card No. 1.  I take it by
3  what you've said about the detail that you've
4  gotten so far, you can look and see whether they
5  are normally sold for $300 each, but there's
6  some percentage of them which were sold for $50
7  each.  In other words, the underlying theory you
8  have here is that the information you're
9  getting, not casting any aspersions on Alcatel,
10 is not accurate.  And it seems to me that before
11 we start exploring whether that's the case, it
12 would be nice to know whether, in fact, there's
13 some objective indication that that information
14 you've gotten is not accurate.  Do either of you
15 understand?
16         MS. SHIFERMAN:  The information
17 has been pulled from the system so --
18         THE COURT:  No.  No.  I'm not
19 casting --
20         MS. SHIFERMAN:  Right.  And it can
21 be compared to the actual price list which we've
22 also produced.  So to the extent that there's a
23 question on what it is advertised or listed for
24 as compared to what the card is sold for if

26

1  there is a discount or other change, they have
2  the information in hand to make that comparison.
3         THE COURT:  So you at least
4  understood what I was suggesting.  Do you
5  understand, Mr. Lee?
6         MR. LEE:  Yes, I understood.
7         THE COURT:  So a couple of things,
8  I came in here thinking there's no way I was
9  giving you this chassis information, but I've
10 learned something from the discussion.  But I
11 think right now it's actually premature.  I
12 think you're chasing a theory which there could
13 be factual support for but it's not there right
14 now.  And I think in the next few days when you
15 depose Mr. Vasilakis, you'll be able to explore
16 the topic from him as to whether there's a
17 factual underpinning for this.  Apparently,
18 you've been deposing some other people too.  So
19 I'm kind of inclined to think that the sale of
20 the chassis is irrelevant.  But I will be open
21 to persuasion that it is relevant.
22         On the other hand on the Alcatel
23 side of we can't produce this material, I've
24 heard Ms. Shiferman.  Is there any actual

27

1  declaration or anything else from somebody at
2  Alcatel that says we can't do this?
3         MS. SHIFERMAN:  We have not gotten
4  a declaration from an IT person.
5         THE COURT:  Why don't you all do
6  the deposition of Mr. Vasilakis and whatever
7  else you have in the near future, and you can
8  talk to each other about whether there really is
9  something worthwhile pursuing here or not, both
10 from whether you got some addition that you're
11 getting information that's going to essentially
12 prejudice your damages calculation because of
13 bookkeeping things or whatever.  You could be
14 thinking about how if I do say that sounds
15 relevant, the question of how much would it
16 actually cost you to produce it.  Okay?
17         MS. SHIFERMAN:  Yes.
18         THE COURT:  I believe that takes
19 care of that.  According to my list of things,
20 there were three other matters on the table and
21 I will tell you what I think about them, which
22 is one of them was on the 30(b)(6) depositions
23 Topics 8 to 10, which all I have is their
24 contention deposition topics, and I think

28

1  Mr. Blumenfeld cited Judge Stapleton.  I say
2  Mr. Blumenfeld, maybe Ms. Shiferman.  But I'm
3  sure Mr. Blumenfeld probably likes citing Judge
4  Stapleton.  It's pretty hard to find anything
5  you can cite better than Judge Stapleton.  So
6  I'm going to quash those three topics.  And I
7  think the only thing that actually -- off the
8  record.
9         (Discussion held off the record.)
10        THE COURT:  So back on the record.
11 So this issue has come up for me before and I do
12 think that contention depositions are not fair
13 to whomever's being asked to formulate these
14 things.  And I don't think changing -- I forget
15 what the exact language change you made but
16 actually that's come up before me too.
17         MR. BLUMENFELD:  Basis of fact --
18         THE COURT:  Yes.  So on Topic 7
19 which is the one about when did Alcatel first
20 know about your patent, I see that they've
21 answered it in interrogatory.  It seems to me
22 unlikely to be very productive to have some
23 corporate witness, but it also seems to me it's
24 not going to take very long so I will let you do

29

1  No. 7.  And I presume there is some corporate
2  witness who can be found who will know how it
3  was that Alcatel learned about the patent.
4  Presumably, the same person that provided the
5  information of the interrogatory answer.
6        Then the other thing was what the
7  deposition of Mr. Vridge(ph) and I've heard some
8  Delaware lawyers talking about the Apex Doctrine
9  before.  My impression is that basically
10 Mr. Vridge is high enough up in whatever
11 organization exactly he's in so that absent some
12 better showing that has been made so far, I'm
13 not going to permit his deposition.  I do think
14 a few days from now, I guess on Tuesday, when
15 you depose Mr. Vasilakis, if he turns out not to
16 be a fountain of knowledge, that may put things
17 in a different perspective.  But right now based
18 on the documents that have been submitted, I
19 don't think a deposition of Mr. Vridge is
20 appropriate.
21        So does that resolve everything?
22 I see you resolved between yourselves
23 Mr. Vasilakis.  So as far as I'm concerned,
24 that's great.  Is there anything else?

31

1            C E R T I F I C A T I O N
2        I, Taneha Carroll, Professional
3  Court Reporter, certify that the foregoing is a
4  true and accurate transcript of the foregoing
5  proceeding.
6        I further certify that I am neither
7  attorney nor counsel for, nor related to nor
8  employed by any of the parties to the action in
9  which this proceeding was taken; further, that I am
10 not a relative or employee of any attorney or
11 counsel employed in this case, nor am I financially
12 interested in this action.
13
14
15
16       _____
17       Taneha Carroll
18       Professional Reporter and Notary Public
19
20
21
22
23
24

30

1        MS. SHIFERMAN:  No, Your Honor.
2        MR. LEE:  I think that's it, Your
3  Honor.
4        THE COURT:  All right.  So we're
5  done.  Off the record.
6        (The proceedings ended at
7  3:40 p.m.)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

able                                          changing

| A |
|---|

**able**  (8:13) (12:4) (12:5) (23:11) (26:15)
**absent**  (29:11)
**access**  (17:17) (19:5)
**according**  (27:19)
**accurate**  (15:17) (15:20) (25:10) (25:14) (31:4)
**accused**  (18:6) (18:20) (18:22) (24:15)
**across**  (18:22)
**action**  (31:9) (31:13)
**actual**  (25:21) (26:24)
**actually**  (3:17) (6:1) (6:15) (9:23) (11:16) (14:7) (15:20)
(16:1) (17:12) (17:15) (19:17) (23:17) (26:11) (27:16) (28:7)
(28:16)
**added**  (5:12) (9:1) (17:5)
**addition**  (12:3) (27:10)
**additional**  (12:9) (16:15)
**address**  (19:11)
**admissible**  (15:11)
**advancing**  (15:14)
**advertised**  (25:23)
**again**  (11:18) (21:3)
**agglomerate**  (16:24)
**alcatel**  (4:10) (4:24) (8:4) (10:10) (10:17) (13:19) (17:10)
(17:24) (20:2) (24:5) (24:7) (25:9) (26:22) (27:2) (28:19)
(29:3)
**alcatel-lucent**  (1:5)
**alcatel's**  (16:21) (18:4)
**all**  (3:23) (8:5) (9:19) (11:10) (11:13) (11:22) (11:24)
(12:4) (12:8) (16:11) (17:8) (17:13) (18:5) (18:22) (19:1)
(20:7) (20:21) (23:11) (23:21) (27:5) (27:23) (30:4)
**allow**  (21:16)
**almost**  (23:5)
**also**  (5:15) (17:2) (17:4) (25:22) (28:23)
**amount**  (3:16) (5:7) (5:12)

| - |
|---|

**-and-**  (1:17) (2:3)

| A |
|---|

**andrews**  (1:10) (1:13)
**another**  (22:19)
**answer**  (29:5)
**answered**  (28:21)
**any**  (6:21) (6:24) (7:3) (11:7) (23:18) (25:9) (26:24) (31:9)
(31:11)
**anything**  (7:2) (13:24) (27:1) (28:4) (29:24)
**apex**  (29:8)
**apparently**  (19:5) (26:17)
**appear**  (16:20)
**appearances**  (1:15) (2:1)
**appeared**  (23:5)
**appears**  (14:11)
**appendix**  (23:4)
**appropriate**  (29:20)
**are**  (4:12) (4:15) (4:17) (7:5) (7:6) (7:8) (7:16) (7:17)
(7:23) (7:24) (9:14) (9:16) (9:23) (10:1) (11:1) (12:14)
(12:18) (12:23) (13:1) (13:16) (13:17) (14:1) (14:12) (15:19)
(15:21) (16:4) (16:23) (18:8) (19:17) (20:4) (20:10) (21:17)
(21:22) (24:20) (24:24) (25:1) (25:5) (28:12)
**aren't**  (19:17)
**argument**  (6:19) (12:22)
**arsht**  (2:2)
**art**  (9:5)
**ask**  (24:10)
**asked**  (28:13)
**aspersions**  (25:9)
**associated**  (10:14) (14:14) (21:6)
**assume**  (25:1)
**assuming**  (12:21)
**attach**  (13:6)
**attached**  (17:1)
**attention**  (18:9)
**attorney**  (31:8) (31:11)

**away**  (3:18)

| B |
|---|

**back**  (15:8) (15:13) (28:10)
**ballpark**  (22:6)
**based**  (20:4) (24:1) (29:17)
**basically**  (29:9)
**basis**  (10:18) (18:17) (28:17)
**because**  (3:15) (4:10) (6:2) (9:12) (15:9) (15:17) (16:7)
(19:14) (20:8) (20:11) (22:22) (27:12)
**been**  (8:11) (9:8) (23:6) (25:17) (26:18) (29:12) (29:18)
**before**  (1:13) (9:9) (21:9) (25:10) (28:11) (28:16) (29:9)
**beginning**  (23:7)
**behalf**  (1:20) (2:6)
**being**  (13:6) (13:10) (17:5) (28:13)
**believe**  (7:15) (8:9) (9:19) (9:20) (11:5) (11:21) (16:16)
(17:6) (27:18)
**better**  (7:13) (28:5) (29:12)
**between**  (29:22)
**beyond**  (17:6)
**bit**  (3:14)
**blacked-out**  (22:17)
**blumenfeld**  (2:2) (3:8) (28:1) (28:2) (28:3) (28:17)
**bookkeeping**  (27:13)
**both**  (10:16) (21:1) (27:9)
**bought**  (5:3) (9:23) (12:19)
**box**  (6:10)
**brief**  (17:22)
**bring**  (6:1) (6:2)
**bundle**  (13:24)
**bundled**  (15:18)
**burden**  (24:6)
**burdensome**  (19:4)
**business**  (22:4)
**businesses**  (21:23)
**busy**  (3:18)
**but**  (3:17) (3:19) (3:24) (4:12) (4:13) (5:15) (7:20) (9:9)
(12:19) (14:13) (14:23) (15:5) (15:7) (15:24) (16:16) (17:2)
(17:4) (18:3) (19:2) (19:8) (19:13) (22:17) (23:18) (25:1)
(25:5) (26:9) (26:10) (26:13) (26:20) (28:2) (28:15) (28:23)
(29:17)
**buy**  (4:24) (5:15) (10:8) (10:9)
**buyer**  (10:5)
**buying**  (22:1) (22:2)
**buys**  (5:9)

| C |
|---|

**calculation**  (27:12)
**called**  (5:23) (25:1)
**came**  (26:8)
**can**  (5:15) (5:17) (10:8) (10:9) (12:19) (12:22) (13:6)
(14:1) (19:11) (19:23) (20:13) (21:2) (23:2) (25:4) (25:20)
(27:7) (28:5) (29:2)
**cannot**  (20:5) (20:16) (21:11)
**can't**  (16:17) (17:14) (19:18) (22:24) (26:23) (27:2)
**capabilities**  (11:20) (24:22)
**capability**  (10:7) (12:18) (14:16)
**card**  (5:5) (5:11) (5:13) (5:14) (5:16) (7:13) (9:17) (9:24)
(10:3) (10:9) (10:18) (10:24) (11:17) (11:23) (13:4) (13:9)
(13:10) (13:12) (19:18) (20:11) (20:21) (21:12) (22:1)
(22:11) (25:2) (25:24)
**cards**  (8:6) (9:14) (10:11) (10:13) (10:14) (10:16) (11:1)
(11:12) (11:14) (12:15) (13:2) (16:2) (19:6) (20:6) (20:12)
(20:20) (20:21) (21:4) (21:5) (21:7) (23:20) (24:12) (24:14)
(24:24)
**care**  (27:19)
**carroll**  (31:2) (31:17)
**case**  (4:14) (25:11) (31:12)
**casting**  (25:9) (25:19)
**certain**  (3:16) (20:10)
**certify**  (31:3) (31:7)
**chalumeau**  (1:3)
**change**  (26:1) (28:15)
**changing**  (28:14)

**charge**

charge  (9:5)
chasing  (26:12)
chassis   (5:23) (6:7) (6:8) (6:16) (8:7) (8:17) (8:20) (8:21)
(9:15) (9:16) (9:22) (10:2) (10:6) (10:8) (10:16) (10:19)
(10:22) (11:5) (11:11) (11:17) (11:24) (12:13) (12:23) (13:1)
(14:14) (14:15) (16:3) (16:6) (16:7) (16:20) (17:5) (18:21)
(19:2) (19:8) (19:12) (20:7) (20:8) (20:20) (20:22) (21:12)
(22:1) (22:6) (23:17) (26:9) (26:20)
chemical  (9:4)
cite  (28:5)
cited  (28:1)
citing  (28:3)
claim  (3:2) (3:12)
combined  (20:8)
come   (8:6) (8:7) (9:3) (28:11) (28:16)
comes   (5:10) (8:17) (21:15)
comment  (17:18)
compared  (25:21) (25:24)
comparison  (26:2)
complete  (16:22)
completely  (19:14)
complicated  (16:10)
component   (9:8) (9:9) (9:10) (9:11)
concern  (13:22)
concerned  (29:23)
conducted  (5:20)
considerable  (24:19)
console  (4:13) (16:16) (13:17)
construction  (3:3) (3:12)
consumers  (21:18)
contemporaneously  (13:1)
contention  (27:24) (28:12)
continued  (2:1)
coordinate  (20:17)
corporate  (28:23) (29:1)
correct   (3:7) (15:23)
cost   (9:3) (15:19) (17:7) (18:16) (18:19) (22:12) (27:16)
could   (4:24) (15:14) (16:8) (19:7) (22:9) (26:12) (27:13)
counsel  (31:8) (31:12)
count  (20:5)
couple  (22:8) (22:14) (26:7)
court   (1:1) (1:13) (3:1) (3:5) (3:8) (3:11) (3:14) (4:9)
(4:23) (5:15) (5:18) (5:24) (6:8) (6:11) (6:18) (7:2) (7:10)
(7:20) (8:3) (8:14) (8:23) (9:7) (10:10) (10:17) (10:23)
(12:11) (12:21) (13:7) (13:12) (13:21) (14:6) (14:18) (14:21)
(15:4) (15:24) (17:8) (17:23) (18:7) (18:12) (19:19) (19:23)
(21:2) (21:8) (21:17) (21:21) (21:24) (22:5) (22:11) (22:16)
(22:22) (23:14) (23:21) (24:16) (24:23) (25:18) (26:3) (26:7)
(27:5) (27:18) (28:10) (28:18) (30:4) (31:3)
courtroom  (1:10)
create   (21:13) (21:14)
curious  (7:21)
cursing  (3:18)
customer  (13:13) (20:4)
customers  (20:15)
cut   (3:24) (15:5)

**D**

damages   (15:6) (15:10) (16:8) (17:12) (27:12)
data  (21:15)
database  (11:15)
databases  (20:17)
day  (24:2)
days  (26:14) (29:14)
decent  (6:3)
declaration  (27:1) (27:4)
deet  (9:21)
defendants   (1:6) (2:6) (18:15) (18:18)
delaware   (1:2) (1:11) (4:12) (29:8)
delta  (8:2)
depend  (22:3)
depends  (11:18)
deponent   (8:12) (24:2)
depose   (26:15) (29:15)

**extra**

deposing  (26:18)
deposition   (8:10) (27:6) (27:24) (29:7) (29:13) (29:19)
depositions   (9:20) (27:22) (28:12)
described   (16:16) (23:15)
detail  (19:22) (25:3)
determine  (12:2)
did   (7:2) (12:18) (12:19) (24:12) (28:19)
didn't  (3:17)
different   (7:23) (10:18) (11:3) (17:22) (24:21) (29:17)
differently  (14:2)
dig  (11:9)
directing  (18:8)
directly  (13:13)
discount  (26:1)
discovery   (5:21) (7:15) (15:3) (15:5)
discussion  (26:10) (28:9)
dispute   (15:1) (15:3) (15:6)
district   (1:1) (1:2) (1:13)
doctrine  (29:8)
documents   (7:16) (7:18) (14:17) (29:18)
does   (4:9) (9:1) (10:10) (10:17) (10:19) (22:5) (22:11)
(24:5) (29:21)
doesn't   (19:10) (23:15)
doing  (20:19)
dollar  (17:1)
dollars   (22:8) (22:15)
done   (19:8) (30:5)
don't   (4:13) (5:22) (6:3) (6:4) (6:14) (6:20) (6:24) (7:5)
(7:22) (8:1) (8:2) (8:11) (8:21) (10:3) (14:12) (16:9) (16:24)
(17:17) (19:5) (24:24) (27:5) (28:14) (29:19)
downloaded  (4:19)
driving   (14:4) (16:3) (16:5)
dry   (3:24)

**E**

each   (25:5) (25:7) (27:8)
easily  (19:7)
effort  (24:8)
either   (18:8) (8:4) (12:23) (25:14)
else   (9:2) (13:24) (21:9) (27:1) (27:7) (29:24)
employed   (31:9) (31:12)
employee  (31:11)
end  (5:21)
ended  (30:6)
enough   (19:6) (29:10)
enterprise  (21:23)
entire  (14:22)
esq   (1:16) (1:19) (2:2) (2:5)
essentially   (5:4) (6:20) (7:16) (9:13) (17:14) (27:11)
estimates  (20:3)
ethernet   (4:16) (4:21) (4:22) (5:1) (5:2) (5:10) (6:12)
(7:7) (7:9) (7:24) (8:6) (9:14) (9:17) (9:24) (10:3) (10:6)
(10:7) (11:12) (11:14) (11:17) (11:20) (12:7) (12:8) (12:15)
(12:17) (12:20) (13:2) (14:15) (16:18) (17:6) (19:18) (20:6)
(20:11) (20:24) (25:2)
euros  (22:9)
even   (5:2) (5:6) (15:8)
eventually   (18:24) (21:18)
every   (10:8) (19:12) (23:6)
everything   (3:21) (29:21)
evidence  (15:11)
exact   (13:6) (13:7) (28:15)
exactly   (5:22) (8:11) (14:5) (15:17) (24:5) (29:11)
exciting  (18:12)
exclusion  (5:14)
exhibit   (17:19) (18:8) (24:11)
expensive  (8:1)
explain  (12:4)
explore   (14:19) (17:3) (26:15)
exploring  (25:11)
extent   (13:4) (19:3) (25:22)
extra   (3:19) (16:7)

fact                                                          itself

## F

fact   (7:5) (9:21) (25:12) (28:17)
factual   (9:8) (9:11) (26:13) (26:17)
fair   (5:7) (13:10) (13:14) (28:12)
familiar   (8:24)
families   (9:23)
family   (4:2) (4:8) (4:11) (4:13) (4:21)
far   (25:4) (29:12) (29:23)
farnan   (1:16) (3:1)
few   (26:14) (29:14)
figure   (12:22) (14:7) (22:9)
figures   (20:1)
figuring   (20:19)
filed   (3:17)
financial   (20:17)
financially   (31:12)
find   (16:6) (18:8) (28:4)
fine   (6:5) (16:12)
first   (9:19) (11:22) (16:12) (28:19)
fits   (23:23)
for   (1:2) (4:5) (5:11) (7:12) (7:13) (7:15) (8:17) (8:20)
(9:23) (10:8) (10:16) (10:21) (11:10) (11:11) (11:13) (12:2)
(12:22) (13:10) (17:22) (18:5) (19:6) (19:8) (19:17) (20:23)
(21:4) (21:23) (22:6) (22:10) (23:19) (24:5) (25:5) (25:6)
(25:23) (25:24) (26:13) (26:17) (28:11) (31:8)
foregoing   (31:3) (31:4)
forget   (28:14)
form   (8:18)
formulate   (19:6) (28:13)
forth   (15:8)
found   (29:2)
fountain   (29:16)
friday   (1:8)
from   (3:23) (4:10) (4:19) (4:24) (9:3) (9:11) (11:15)
(14:10) (17:2) (19:1) (20:1) (20:16) (25:17) (26:10) (26:16)
(27:1) (27:4) (27:10) (29:14)
functionality   (5:10) (7:7) (7:9) (7:24) (16:19)
further   (18:17) (31:7) (31:10)
future   (27:7)

## G

generates   (20:2)
germane   (17:13)
get   (4:5) (10:17) (13:16) (13:21) (19:4)
getting   (13:22) (14:23) (20:1) (25:9) (27:11)
give   (7:3) (19:13)
given   (24:4)
gives   (4:15)
giving   (26:9)
goes   (17:6)
going   (7:19) (12:9) (27:11) (28:6) (28:24) (29:13)
goodwin   (2:4)
got   (3:14) (3:19) (4:24) (12:24) (15:16) (18:24) (24:11)
(27:10)
gotten   (25:4) (25:14) (27:3)
grain   (22:24)
great   (29:24)
grounds   (17:11)
guess   (9:5) (24:23) (29:14)

## H

had   (9:12) (9:19) (13:2) (16:9) (17:11) (19:20) (20:22)
(23:6) (23:8)
hand   (24:5) (26:2) (26:22)
happening   (14:8)
hard   (28:4)
has   (8:4) (17:10) (22:24) (25:17) (28:11) (29:12)
have   (3:1) (3:9) (3:21) (6:3) (6:20) (6:24) (7:2) (7:10)
(7:23) (8:9) (8:10) (8:11) (8:21) (10:7) (10:13) (10:15)
(11:2) (11:7) (11:8) (11:14) (11:20) (12:7) (12:17) (14:10)
(16:21) (17:1) (17:2) (17:17) (17:18) (19:5) (19:7) (19:16)
(19:21) (20:8) (20:11) (22:9) (25:8) (26:1) (27:3) (27:7)
(27:23) (28:22) (29:18)

haven't   (5:20)
having   (4:18)
hear   (9:10)
heard   (15:16) (26:24) (29:7)
hearing   (3:23)
held   (28:9)
help   (13:3)
helpful   (17:16)
here   (7:18) (7:19) (8:17) (11:4) (12:13) (15:1) (18:3)
(25:8) (26:8) (27:9)
he's   (29:11)
high   (29:10)
him   (26:16)
hint   (7:3)
his   (16:20) (29:13)
hold   (18:7)
honestly   (22:14)
honor   (3:10) (4:8) (5:22) (9:18) (14:20) (15:3) (18:21)
(19:11) (30:1) (30:3)
honorable   (1:13)
hopefully   (8:12)
hoping   (6:1)
how   (4:7) (5:22) (6:21) (6:22) (7:11) (7:12) (9:1) (9:5)
(10:5) (10:10) (11:19) (12:22) (12:24) (13:3) (20:5) (20:9)
(20:14) (20:19) (21:5) (21:11) (22:5) (22:11) (24:24) (27:14)
(27:15) (29:2)
hundred   (22:15)

## I

identified   (25:1)
i'm   (7:21) (8:24) (12:12) (14:23) (15:4) (16:12) (18:7)
(22:16) (23:22) (23:24) (25:18) (26:19) (28:2) (28:6) (29:12)
(29:23)
impression   (4:23) (9:12) (29:9)
inc   (1:5)
inclined   (23:22) (23:24) (26:19)
include   (24:12)
included   (13:17) (16:23) (23:16)
including   (12:5)
inclusion   (5:13)
inclusive   (19:14)
incorporated   (6:15) (16:19)
increasing   (13:19)
independently   (4:15) (5:16) (10:20) (11:2)
indication   (25:13)
individual   (21:18)
individuals   (21:19)
industry   (9:4)
information   (4:1) (4:4) (4:5) (6:21) (8:5) (10:2) (11:9)
(12:2) (12:5) (12:10) (12:24) (13:3) (17:15) (18:5) (18:16)
(18:19) (19:4) (20:4) (23:18) (24:7) (25:8) (25:13) (25:16)
(26:2) (26:9) (27:11) (29:5)
infringement   (23:7)
infringing   (16:4)
initial   (18:4) (18:23) (23:3)
installed   (8:18)
integral   (9:15)
integrated   (5:3)
interested   (3:22) (31:13)
internal   (8:19) (13:18) (14:11)
internally   (14:1) (15:18) (20:2)
internet   (6:7)
interrogatory   (3:24) (17:21) (18:2) (28:21) (29:5)
into   (6:12) (6:15) (16:8)
invoice   (21:15)
irrelevant   (15:12) (26:20)
isn't   (15:20) (18:21) (24:5)
issue   (11:4) (28:11)
issues   (11:6)
items   (16:23)
it's   (5:5) (5:8) (6:6) (6:10) (6:14) (6:15) (8:18) (9:5)
(11:18) (13:15) (13:23) (15:3) (15:5) (15:11) (16:15)
(19:3) (19:23) (22:7) (26:11) (26:13) (28:4) (28:23)
itself   (10:22) (21:5)

i've                                          other

```
i've  (7:16) (26:9) (26:23) (29:7)           material  (26:23)
                                             matters  (27:20)
                  J                          may  (5:6) (6:17) (6:18) (15:11) (15:16) (15:18) (29:16)
jack  (2:2)                                  maybe  (9:7) (14:2) (28:2)
jorgensen  (1:18) (3:5)                      mean  (4:9) (9:1) (9:2)
judge  (1:10) (1:13) (28:1) (28:3) (28:5)    meaning  (9:16)
juncture  (15:2)                             measure  (11:22)
just  (6:6) (6:19) (7:5) (7:21) (8:2) (8:18) (9:8) (13:19)   michael  (1:16) (1:19)
(15:12) (15:15) (19:7) (23:15) (24:10)       mind  (6:4) (16:20) (22:10)
                                             minute  (6:18)
                  K                          model  (14:13) (23:9)
kewalramani  (1:18)                          models  (19:2)
kind  (3:22) (4:11) (9:15) (16:9) (17:9) (17:15) (23:23)   months  (18:24)
(24:7) (26:19)                               more  (7:24) (9:3) (9:5) (12:14) (12:15) (16:10) (19:16)
king  (1:11)                                 (19:21) (19:22)
know  (5:18) (5:22) (6:14) (7:4) (7:5) (7:22) (8:11) (14:12)   morris  (2:2)
(16:4) (20:5) (20:6) (20:8) (20:10) (20:12) (20:14) (20:21)   most  (7:17) (9:14) (9:16)
(20:24) (22:14) (24:24) (25:12) (28:20) (29:2)   mostly  (21:18)
knowledge  (29:16)                           much  (7:11) (7:12) (9:1) (9:5) (22:5) (22:11) (27:15)
                                             must  (16:5) (19:24)
                  L
lack  (7:13)                                                   N
lana  (2:5)                                  near  (27:7)
language  (28:15)                            necessarily  (4:13) (16:15) (17:1)
larger  (16:24)                              need  (14:6) (14:9) (16:6) (22:4)
last  (9:19) (12:12) (16:17) (21:2)          neither  (31:7)
later  (18:24)                               new  (20:18)
lawyers  (29:8)                              next  (26:14)
lead  (15:11)                                nice  (25:12)
learned  (26:10) (29:3)                      nichols  (2:2)
least  (14:16) (16:20) (17:11) (19:9) (26:3)   non-burdensome  (11:7)
lee  (1:18) (1:19) (3:2) (3:4) (3:7) (4:3) (4:7) (4:17) (5:8)   non-chassis  (24:15)
(5:17) (5:20) (6:4) (6:6) (6:14) (6:24) (7:4) (7:14) (7:22)   non-power  (12:8)
(8:9) (8:16) (9:3) (12:21) (13:4) (13:9) (13:15) (14:5) (14:9)   nor  (31:8) (31:12)
(14:20) (15:2) (15:23) (16:14) (17:19) (17:24) (18:10)   normally  (25:5)
(18:14) (22:16) (22:21) (23:2) (23:19) (24:10) (24:14)   not  (3:4) (4:18) (8:24) (9:14) (9:16) (10:1) (11:4) (11:5)
(24:18) (26:5) (26:6) (30:2)                 (11:6) (11:7) (11:14) (11:18) (12:18) (13:15) (14:23) (15:9)
legal  (9:9) (9:10)                          (15:11) (15:16) (16:15) (17:12) (18:16) (19:2) (19:8) (20:4)
less  (9:22) (12:14) (12:16) (19:15) (19:20) (22:9) (24:3)   (22:14) (25:9) (25:14) (25:18) (26:13) (27:3) (27:9)
let  (6:19) (9:10) (15:12) (24:10) (28:24)   (28:12) (28:24) (29:13) (29:15) (31:11)
let's  (25:1)                                notary  (31:18)
letter  (9:13) (17:20)                       noticing  (24:17)
letters  (14:22)                             notwithstanding  (23:12)
like  (4:11) (5:2) (5:5) (6:8) (6:9) (7:17) (11:19) (13:23)   now  (26:11) (26:14) (29:14) (29:17)
(15:13) (19:24) (22:8) (23:16)               number  (12:6) (14:9) (14:13) (20:7) (20:9) (20:10) (20:12)
likely  (24:6)                               (20:22) (20:23) (20:24) (23:9)
likes  (28:3)                                numbers  (7:1) (11:3) (12:1) (14:12) (14:13) (15:16)
line  (9:24) (10:16) (11:12) (11:14) (11:23) (23:5)
link  (11:16) (11:18) (19:18) (20:5) (21:14) (21:16)                  O
linkage  (24:4)                              objection  (23:3)
linked  (21:12) (24:3)                       objective  (25:13)
links  (10:2)                                obviously  (12:24)
list  (7:16) (7:18) (8:1) (8:10) (10:15) (11:24) (19:12)   october  (1:8)
(25:21) (27:19)                              off  (3:14) (6:6) (15:5) (28:7) (28:9) (30:5)
listed  (25:23)                              offered  (4:21)
lists  (10:15)                               often  (6:21) (6:22)
llc  (1:3)                                   okay  (9:7) (17:23) (24:16) (27:16)
llp  (1:16) (2:2) (2:4)                      omni  (4:2) (4:5)
long  (28:24)                                omniswitch  (7:12)
look  (25:4)                                 one  (3:22) (4:3) (5:3) (6:12) (6:21) (7:14) (10:4) (10:8)
looking  (5:11) (7:15) (8:16)                (12:14) (12:22) (15:15) (15:22) (16:15) (16:16) (16:18)
looks  (6:9)                                 (17:11) (20:21) (22:1) (22:6) (22:10) (27:22) (28:19)
lot  (15:8) (24:17)                          ones  (7:23)
                                             one-to-one  (11:18)
                  M                          only  (11:4) (19:14) (19:19) (24:2) (28:7)
made  (8:11) (20:9) (23:6) (28:15) (29:12)   onto  (9:1)
magnitude  (7:21)                            open  (23:7) (26:20)
make  (16:10) (16:20) (21:16) (26:2)         opposed  (6:22)
manually  (21:14)                            opted  (19:8)
many  (10:5) (11:19) (12:23) (13:1) (20:5) (20:22) (21:5)   order  (7:20) (11:9) (14:7)
(21:11)                                      ordered  (10:1) (11:2)
market  (13:10) (13:14) (14:22) (16:9)       orders  (11:3)
marketed  (4:18)                             organization  (29:11)
marketing  (17:2)                            other  (6:21) (7:18) (17:2) (17:14) (19:2) (24:2) (24:14)
```

| others | salable |
|---|---|
| (25:7) (26:1) (26:18) (26:22) (27:8) (27:20) (29:6) | **professional**  (31:2) (31:18) |
| **others**  (3:23) | **profit**  (18:16) (18:19) |
| **our**  (5:8) (11:15) (19:9) (20:15) (20:16) | **program**  (20:18) (21:14) |
| **out**  (4:12) (11:9) (14:7) (16:7) (18:3) (18:11) (18:15) | **project**  (24:9) |
| (20:17) (20:19) (21:15) (23:13) (29:15) | **pronounciation**  (3:9) |
| **over**  (3:19) (4:16) (4:20) (4:22) (5:1) (5:2) (5:10) (6:11) | **protestations**  (22:23) |
| (7:7) (7:8) (7:24) (9:24) (10:3) (10:6) (10:7) (11:12) (11:14) | **provide**  (8:4) (12:6) (12:10) (23:17) |
| (11:16) (11:20) (12:7) (12:8) (12:17) (12:20) (14:15) (16:18) | **provided**  (29:4) |
| (17:6) (19:14) (19:17) (20:6) (20:11) (20:24) (25:2) | **proxy**  (12:1) |
| **overall**  (5:12) (17:5) | **public**  (13:5) (31:18) |
| **overly**  (19:3) | **pull**  (19:12) |
|  | **pulled**  (25:17) |

**sale**

sale  (10:2) (11:16) (17:2) (23:6) (26:19)
sales  (4:5) (5:21) (8:5) (8:10) (10:13) (11:11) (11:13)
(15:16) (15:20) (15:21) (16:2) (16:3) (16:5) (18:5) (19:1)
(24:12) (24:17)
salt  (23:1)
same  (19:7) (29:4)
saw  (5:24) (15:7)
say  (7:18) (8:23) (12:12) (12:18) (12:19) (14:1) (15:19)
(19:3) (19:23) (20:19) (21:2) (21:11) (23:2) (27:14) (28:1)
saying  (22:23)
says  (4:20) (18:15) (27:2)
scheduled  (3:15)
second  (16:1)
section  (18:10)
see  (25:4) (28:20) (29:22)
seeing  (13:18)
seem  (3:23) (23:15) (24:5)
seems  (15:7) (15:13) (17:10) (17:12) (19:24) (24:1) (24:6)
(24:8) (25:10) (28:21) (28:23)
seen  (7:16) (14:10) (14:16)
sell  (7:19) (13:12) (20:6) (22:6)
sells  (7:12) (7:13)
sense  (7:10) (14:24)
sentence  (21:3) (21:9)
separate  (5:6) (15:7) (15:9)
separately  (6:23) (7:11) (8:6) (10:1) (13:5) (14:3)
series  (9:20) (12:14)
sheets  (7:17) (14:11)
shiferman  (2:5) (3:9) (3:10) (3:13) (6:5) (6:10) (6:17)
(9:11) (9:18) (10:12) (10:21) (11:1) (12:16) (19:10) (19:22)
(20:3) (21:4) (21:10) (21:19) (21:22) (22:3) (22:7) (22:13)
(24:20) (25:16) (25:20) (26:24) (27:3) (27:17) (28:2) (30:1)
shift  (15:18)
should  (4:5)
showing  (29:12)
shown  (6:15)
shows  (19:1)
side  (26:23)
simplifying  (12:13)
simply  (20:11)
since  (16:4) (23:6)
single  (19:12)
size  (22:4)
sizes  (24:21)
slides  (6:12)
small  (14:23) (19:15) (22:13)
sold  (4:7) (4:8) (4:15) (6:16) (6:22) (6:23) (7:5) (7:6)
(7:8) (7:11) (9:14) (9:16) (9:23) (10:20) (12:8) (12:13)
(12:14) (12:18) (12:23) (13:1) (13:5) (13:23) (14:3) (14:10)
(14:15) (19:13) (19:17) (20:10) (20:12) (20:20) (20:21)
(21:18) (23:9) (25:5) (25:6) (25:24)
sole  (10:19)
some  (4:11) (4:12) (12:2) (12:17) (14:10) (14:13) (14:21)
(15:17) (16:7) (17:21) (20:1) (20:14) (20:18) (20:23) (23:8)
(23:23) (25:6) (25:13) (26:18) (27:10) (28:22) (29:1) (29:7)
(29:11)
somebody  (6:2) (27:1)
somehow  (21:13)
someone  (5:9)
something  (5:4) (5:5) (7:11) (9:2) (15:19) (19:15) (21:9)
(22:19) (26:10) (27:9)
sometimes  (16:23)
somewhere  (22:8)
sorry  (15:4) (22:16)
sought  (18:5)
sounds  (27:14)
specific  (18:19) (18:20) (18:21)
stapleton  (28:1) (28:4) (28:5)
start  (25:11)
state  (4:12) (18:15) (18:18)
states  (1:1) (1:13)
step  (15:13)
still  (15:10)
stop  (16:12)

**the**

street  (1:11)
stuff  (16:7) (22:24)
submitted  (18:1) (29:18)
suggesting  (26:4)
support  (26:13)
supposed  (16:5)
sure  (28:3)
switch  (5:1) (5:9) (5:10) (5:13) (17:7)
switches  (4:2) (4:6) (4:15) (4:17)
system  (21:16) (25:17)
systems  (1:3)

**T**

table  (19:1) (19:6) (23:15) (23:16) (23:19) (27:20)
take  (6:20) (25:2) (28:24)
taken  (22:24) (31:10)
takes  (27:18)
talk  (9:10) (14:22) (27:8)
talking  (9:8) (10:23) (16:11) (18:3) (22:17) (29:8)
taneha  (31:2) (31:17)
technology  (4:16) (4:19)
tell  (8:13) (20:15) (23:22) (27:21)
tend  (17:3)
term  (9:4)
terminology  (8:24)
testified  (9:21) (12:12) (16:18)
testify  (20:13)
testimony  (12:3) (12:6) (12:10) (19:16)
than  (8:1) (9:22) (10:19) (12:16) (14:2) (16:10) (19:15)
(19:20) (28:5)
that  (3:9) (3:17) (3:18) (3:19) (3:20) (4:9) (4:11) (4:24)
(5:6) (5:9) (5:17) (5:19) (5:24) (6:1) (6:3) (6:9) (6:12)
(6:20) (7:3) (7:4) (7:5) (7:6) (7:8) (7:15) (7:16) (7:18)
(7:23) (8:1) (8:7) (8:9) (8:11) (8:17) (8:21) (9:1) (9:6)
(9:13) (9:14) (9:17) (9:21) (9:23) (10:2) (11:5) (11:22)
(12:2) (12:7) (12:10) (12:22) (12:24) (13:3) (13:6) (13:17)
(13:22) (14:7) (14:11) (14:14) (14:24) (15:7) (15:19) (16:2)
(16:8) (16:9) (16:16) (16:18) (16:21) (16:24) (17:1) (17:3)
(17:5) (17:10) (17:13) (17:15) (17:18) (17:20) (18:3) (18:11)
(18:14) (18:15) (18:18) (18:22) (19:1) (19:3) (19:4) (19:10)
(19:13) (19:16) (19:18) (20:1) (20:10) (20:24) (21:2) (21:9)
(21:12) (21:15) (22:14) (22:19) (22:23) (23:2) (23:6) (23:10)
(23:11) (23:16) (23:17) (23:19) (24:1) (24:2) (24:4) (24:6)
(24:9) (25:3) (25:8) (25:10) (25:13) (25:22) (26:2) (26:19)
(26:21) (27:2) (27:10) (27:14) (27:18) (27:19) (28:7) (28:12)
(28:20) (29:3) (29:4) (29:9) (29:11) (29:12) (29:16) (29:18)
(29:21) (31:3) (31:7) (31:10)
that's  (3:7) (4:7) (6:5) (6:7) (7:14) (8:24) (11:4) (13:10)
(13:13) (14:3) (14:13) (14:16) (15:21) (16:12) (16:19) (17:5)
(19:9) (20:9) (20:12) (20:13) (21:10) (24:12) (25:11) (27:11)
(28:16) (29:24) (30:2)
the  (1:1) (1:2) (1:13) (3:1) (3:2) (3:5) (3:8) (3:9) (3:11)
(3:14) (3:15) (3:16) (3:23) (4:1) (4:2) (4:3) (4:5) (4:9)
(4:17) (4:19) (4:21) (4:23) (4:24) (5:1) (5:2) (5:7) (5:9)
(5:10) (5:11) (5:12) (5:13) (5:14) (5:15) (5:16) (5:18) (5:21)
(5:23) (5:24) (6:6) (6:7) (6:8) (6:9) (6:10) (6:11) (6:16)
(6:18) (6:21) (7:2) (7:6) (7:7) (7:8) (7:10) (7:13) (7:14)
(7:18) (7:19) (7:20) (7:23) (8:1) (8:2) (8:3) (8:5) (8:7)
(8:12) (8:14) (8:17) (8:19) (8:20) (8:21) (8:23) (9:1) (9:4)
(9:7) (9:10) (9:12) (9:15) (9:22) (10:2) (10:5) (10:6) (10:10)
(10:13) (10:14) (10:15) (10:16) (10:17) (10:19) (10:21)
(10:23) (10:24) (11:1) (11:4) (11:5) (11:6) (11:10) (11:12)
(11:13) (11:16) (11:19) (11:23) (11:24) (12:3) (12:6) (12:8)
(12:11) (12:13) (12:20) (12:21) (12:22) (13:4) (13:5) (13:7)
(13:9) (13:10) (13:12) (13:13) (13:17) (13:19) (13:21)
(13:22) (14:6) (14:9) (14:14) (14:18) (14:21) (14:22) (14:24)
(15:4) (15:6) (15:16) (15:19) (15:21) (15:24) (16:2) (16:4)
(16:6) (16:7) (16:11) (16:15) (16:16) (16:18) (16:19) (17:1)
(17:5) (17:6) (17:8) (17:14) (17:15) (17:16) (17:20) (17:22)
(17:23) (18:6) (18:7) (18:10) (18:12) (18:14) (18:20) (19:1)
(19:2) (19:3) (19:6) (19:7) (19:11) (19:13) (19:19) (19:23)
(20:6) (20:7) (20:8) (20:10) (20:12) (20:14) (21:2) (21:4)
(21:6) (21:8) (21:9) (21:12) (21:14) (21:15) (21:16) (21:17)
(21:21) (21:24) (22:4) (22:5) (22:11) (22:16) (22:22) (23:6)

**their**

| | |
|---|---|

(23:7) (23:12) (23:14) (23:15) (23:19) (23:21) (23:23) (24:1)
(24:2) (24:4) (24:6) (24:8) (24:11) (24:12) (24:16) (24:17)
(24:23) (25:3) (25:7) (25:8) (25:11) (25:16) (25:17) (25:18)
(25:21) (25:22) (25:24) (26:2) (26:3) (26:7) (26:10) (26:14)
(26:16) (26:19) (26:20) (26:22) (27:5) (27:6) (27:7) (27:15)
(27:18) (27:20) (27:22) (28:7) (28:9) (28:10) (28:15) (28:18)
(28:19) (29:3) (29:4) (29:5) (29:6) (29:8) (29:18) (30:4)
(30:5) (30:6) (31:3) (31:4) (31:9)
**their**   (16:5) (17:17) (18:1) (18:22) (22:4) (22:23) (27:23)
**them**   (4:16) (12:2) (14:2) (14:17) (15:17) (19:1) (20:10)
(20:23) (22:10) (25:6) (27:21) (27:22)
**then**   (3:15) (13:5) (14:21) (15:24) (17:14) (22:18) (23:3)
(29:6)
**theories**   (15:14) (16:8)
**theory**   (4:4) (15:6) (15:10) (15:22) (16:1) (16:12) (16:15)
(17:9) (17:12) (17:16) (25:7) (26:12)
**there**   (3:6) (3:16) (3:19) (3:21) (5:6) (6:15) (7:17) (9:12)
(14:11) (14:21) (15:7) (16:1) (16:13) (17:3) (17:4) (17:20)
(18:1) (18:18) (23:3) (26:1) (26:12) (26:13) (26:24) (27:8)
(27:20) (29:1) (29:24)
**therefore**   (16:6)
**there's**   (5:5) (9:7) (9:9) (12:1) (12:9) (15:13) (16:7)
(16:14) (18:10) (21:15) (24:18) (25:5) (25:12) (25:22) (26:8)
(26:16)
**these**   (4:1) (4:5) (4:14) (6:2) (6:12) (9:22) (9:24) (10:11)
(12:14) (16:2) (20:1) (21:17) (21:22) (23:16) (24:3) (24:20)
(24:24) (28:13)
**they**   (5:18) (5:22) (7:4) (7:23) (8:6) (8:7) (8:12) (9:5)
(9:6) (10:3) (10:7) (10:8) (10:9) (11:2) (11:19) (13:12)
(14:2) (14:3) (15:18) (15:19) (16:9) (16:21) (17:2) (17:21)
(19:3) (19:4) (19:5) (19:8) (20:4) (20:22) (22:19) (22:23)
(23:3) (23:8) (23:10) (24:13) (25:1) (25:4) (26:1)
**they're**   (4:7) (4:8) (4:11) (5:7) (5:23) (6:22) (6:23) (8:18)
(10:18) (10:19) (14:12) (20:3) (20:9) (22:2)
**they've**   (12:24) (22:18) (28:20)
**thing**   (3:22) (6:9) (15:7) (15:9) (18:13) (23:10) (28:7)
(29:6)
**things**   (6:2) (6:12) (7:14) (7:17) (13:24) (24:3) (26:7)
(27:13) (27:19) (28:14) (29:16)
**think**   (6:19) (13:21) (15:15) (17:8) (22:7) (22:22) (26:11)
(26:12) (26:14) (26:19) (27:21) (27:24) (28:7) (28:12)
(28:14) (29:13) (29:19) (30:2)
**thinking**   (26:8) (27:14)
**third-party**   (20:18) (21:13)
**this**   (3:15) (3:24) (4:14) (4:19) (8:14) (9:15) (11:9) (12:5)
(12:11) (13:3) (14:18) (15:2) (16:10) (17:12) (17:13) (17:24)
(18:4) (18:12) (18:15) (18:20) (18:21) (19:4) (20:19) (20:22)
(22:17) (24:7) (24:12) (26:9) (26:17) (26:23) (27:2) (28:11)
(31:10) (31:12) (31:13)
**those**   (7:6) (7:8) (8:1) (8:21) (8:22) (13:17) (21:6) (28:6)
**though**   (5:6)
**thought**   (15:24) (16:2) (21:8)
**thousand**   (22:8)
**three**   (10:9) (20:21) (27:20) (28:6)
**through**   (11:15) (14:17)
**throughout**   (16:21)
**thrown**   (3:14)
**time**   (5:7) (19:7) (22:1) (23:8)
**together**   (4:14) (5:7) (14:1) (19:12)
**too**   (26:18) (28:16)
**topic**   (7:3) (14:18) (26:16) (28:18)
**topics**   (27:23) (27:24) (28:6)
**total**   (12:7) (12:23) (19:13) (20:5) (20:7) (20:22)
**track**   (10:2) (10:4) (10:11) (10:14) (11:10) (11:11)
**tracked**   (10:12) (11:6) (18:17)
**transcript**   (31:4)
**transfer**   (8:19)
**travel**   (4:13)
**true**   (31:4)
**try**   (11:9)
**trying**   (13:16) (18:7) (21:13)
**tuesday**   (29:14)
**tunnel**   (2:2)
**turns**   (29:15)

**which**

| | |
|---|---|

**two**   (5:5) (10:9) (13:24) (15:13) (17:11) (20:20) (21:14)
**type**   (23:10)

### U

**ultimately**   (15:10)
**underlying**   (25:7)
**underpinning**   (26:17)
**understand**   (15:5) (17:9) (25:15) (26:5)
**understanding**   (5:8) (8:3)
**understood**   (16:2) (26:4) (26:6)
**undertake**   (24:9)
**unique**   (14:14)
**unit**   (6:16) (6:22) (12:1) (14:23) (23:10)
**united**   (1:1) (1:13)
**units**   (14:10) (21:1) (23:9)
**unlikely**   (24:8) (28:22)
**upcoming**   (8:10)
**uplift**   (8:17) (8:20) (8:23) (9:4)
**uplifting**   (13:19)
**usa**   (1:5)
**use**   (9:24) (19:17)
**useable**   (15:10)
**used**   (5:7) (12:18) (12:19) (20:20) (20:23)
**useful**   (23:18)
**user**   (11:19)

### V

**value**   (5:12) (13:6) (13:7) (13:11) (13:14) (14:1) (14:22)
(17:4)
**values**   (17:1)
**variation**   (24:17) (24:19)
**vasilakis**   (8:15) (12:4) (14:19) (17:4) (19:21) (20:13)
(26:15) (27:6) (29:15) (29:23)
**vendor**   (11:8) (20:18) (21:13)
**versa**   (16:3)
**versus**   (5:13) (7:7) (8:21)
**very**   (24:20) (28:22) (28:24)
**vice**   (16:3)
**vridge**   (29:7) (29:10) (29:19)

### W

**want**   (10:7) (16:10)
**was**   (3:4) (3:5) (3:13) (3:15) (3:16) (3:18) (3:22) (4:24)
(5:3) (5:4) (6:1) (9:19) (9:20) (9:22) (10:23) (14:7) (14:21)
(15:8) (15:9) (16:1) (16:2) (17:14) (18:1) (18:3) (18:22)
(20:20) (22:19) (23:2) (23:12) (23:19) (24:23) (26:4) (26:8)
(27:22) (29:3) (29:6) (31:10)
**wasn't**   (5:2)
**way**   (3:15) (6:21) (7:5) (11:7) (11:8) (11:14) (11:22) (12:1)
(17:9) (23:14) (26:8)
**website**   (4:20)
**week**   (9:19) (12:12) (16:17)
**well**   (7:4) (22:5) (23:21) (23:22)
**were**   (3:2) (3:11) (3:17) (3:19) (9:12) (14:3) (15:17)
(17:21) (20:23) (21:12) (22:17) (22:23) (23:11) (24:3)
(24:13) (24:16) (25:6) (27:20)
**we're**   (4:13) (5:11) (7:15) (7:19) (8:16) (13:16) (13:18)
(16:11) (18:2) (30:4)
**we've**   (9:8) (10:12) (11:13) (11:21) (11:24) (14:16) (21:1)
(21:5) (25:21)
**what**   (4:4) (4:9) (4:10) (4:15) (5:11) (5:23) (7:6) (8:2)
(8:11) (8:13) (8:16) (11:12) (11:21) (13:8) (13:16) (13:18)
(13:21) (14:3) (14:6) (14:10) (14:16) (14:24) (15:19) (15:21)
(16:4) (17:24) (18:2) (18:8) (20:13) (20:15) (20:16) (21:10)
(22:19) (22:22) (23:12) (23:22) (23:24) (24:13) (24:23)
(25:3) (25:23) (25:24) (26:4) (27:21) (28:15) (29:6)
**whatever**   (4:1) (8:20) (19:24) (27:6) (27:13) (29:10)
**when**   (5:3) (5:9) (7:11) (8:18) (8:23) (9:6) (13:12) (13:23)
(14:14) (14:17) (22:17) (24:10) (26:14) (28:19) (29:14)
**where**   (5:4)
**whether**   (8:6) (8:7) (8:18) (13:17) (15:9) (25:4) (25:11)
(25:12) (26:16) (27:8) (27:10)
**which**   (5:23) (9:8) (11:4) (12:23) (13:22) (15:15) (16:1)
(16:17) (17:11) (17:12) (18:2) (21:1) (21:11) (23:23) (23:24)

white                                        you've

(25:6) (25:21) (26:12) (27:21) (27:23) (28:19) (31:10)
**white**  (6:9)
**who**  (4:3) (12:4) (12:11) (29:2)
**whole**  (4:21)
**whom**  (18:4)
**whomever's**  (28:13)
**why**  (4:4) (27:5)
**will**  (8:12) (12:4) (12:5) (12:10) (19:16) (19:21) (23:22)
(26:20) (27:21) (28:24) (29:2)
**willing**  (8:4)
**wilmington**  (1:11)
**window**  (23:7)
**with**  (3:2) (4:20) (4:21) (5:1) (5:3) (5:9) (5:11) (7:6) (8:7)
(8:24) (9:15) (9:16) (9:24) (10:3) (10:14) (10:19) (11:17)
(12:14) (12:19) (12:20) (13:2) (14:14) (14:15) (14:19) (17:4)
(17:11) (19:17) (20:20) (21:6) (21:12) (22:24) (23:18)
(23:23) (24:21)
**within**  (10:6) (13:18)
**without**  (4:20) (4:22) (5:1) (7:8) (20:18) (21:12)
**witness**  (12:11) (28:23) (29:2)
**witnesses**  (16:17)
**wondering**  (24:24)
**word**  (7:13)
**words**  (25:7)
**work**  (16:8)
**worth**  (24:8)
**worthwhile**  (27:9)
**would**  (7:3) (11:2) (11:8) (11:19) (13:3) (14:2) (14:6)
(14:9) (17:15) (19:14) (22:3) (23:17) (25:12) (27:15)
**wrote**  (4:10)

## Y

**yes**  (3:10) (4:12) (5:17) (6:5) (8:16) (9:18) (14:5) (14:20)
(18:14) (19:22) (21:21) (26:6) (27:17) (28:18)
**yesterday**  (17:20)
**yet**  (5:21)
**you**  (3:1) (3:2) (3:8) (3:11) (3:23) (4:4) (4:24) (5:3) (5:15)
(5:18) (6:1) (6:4) (6:18) (6:20) (7:2) (7:10) (8:23) (9:2)
(12:12) (13:2) (13:3) (13:24) (14:1) (14:6) (14:18) (15:5)
(15:14) (16:6) (17:17) (17:18) (17:20) (18:8) (19:13) (19:18)
(19:19) (19:20) (21:2) (21:8) (21:20) (22:17) (22:18) (22:23)
(23:18) (23:22) (24:10) (24:13) (24:16) (25:4) (25:7) (25:14)
(26:3) (26:4) (26:9) (26:14) (27:5) (27:7) (27:10) (27:13)
(27:16) (27:21) (28:5) (28:15) (28:24) (29:15) (29:22)
**you'll**  (26:15)
**your**  (3:10) (4:4) (4:8) (5:21) (6:19) (8:3) (9:13) (9:18)
(13:22) (14:20) (15:2) (15:22) (17:9) (18:21) (19:11) (27:12)
(28:20) (30:1) (30:2)
**you're**  (4:3) (13:22) (14:3) (17:16) (25:8) (26:12) (27:10)
**yourselves**  (29:22)
**you've**  (16:16) (19:19) (23:15) (25:3) (25:14) (26:18)

EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PURDUE PHARMA L.P.,                              )
PURDUE PHARMACEUTICALS L.P.,                     )
THE P.F. LABORATORIES, INC.,                     )
RHODES TECHNOLOGIES, and                         )
GRÜNENTHAL GMBH,                                 )
                                                 )
                    Plaintiffs,                  )
                                                 )
          v.                                     )     C.A. No. 17-392 (RGA)
                                                 )
INTELLIPHARMACEUTICS                             )
INTERNATIONAL INC.,                              )
INTELLIPHARMACEUTICS                             )
CORPORATION, and                                 )
INTELLIPHARMACEUTICS LTD.,                       )
                                                 )
                    Defendants.                  )

[~~PROPOSED~~] **ORDER DENYING DEFENDANTS' REQUESTS**

The Court, having considered the issues raised in Defendants' Letter to the
Honorable Judge Andrews Concerning Discovery *(D.I. 93)* and Plaintiffs' response thereto *(D.I. 98)*,

IT IS HEREBY ORDERED THAT:

1.    Defendants' requests for relief are DENIED;

2.    Defendants' request for a Protective Order is DENIED. The provisions of
the governing Protective Order (D.I. 39) shall continue to apply to the production of documents
and other materials in this litigation. *I think the Protective Order (D.I. 39) is sufficient
to protect Defendants' concerns about improper disclosure.*

3.    The provisions of the Discovery Order (D.I. 36) concerning production of
FDA correspondence shall continue to apply to this litigation, and require Defendant to produce
all such correspondence on the specified timetable. *There is no good cause to
change the Discovery Order.*

4.   Plaintiffs shall not be required to produce a witness to testify concerning

Topics 4-5 and 9-12 of Defendants' Notice of Rule 30(b)(6) Deposition of Plaintiffs (D.I. 64). *These are contention deposition topics, and are therefore NOT permitted.*

SO ORDERED this 16 day of April, 2018.

_____
UNITED STATES DISTRICT JUDGE

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=9/20/2021] [FileNumber=4639723-0
] [6f35bdc58bba1870dbe558228022433066a53f2ed0a36040632ad15879e51f094d9
a5471eb842c9da02f29780f6f399055013f329a74974b340f2acb4ce497a2]]
**Document description:** Exs. A-E
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=9/20/2021] [FileNumber=4639723-1
] [6616b28ca9a9da4dca434840349a96e96aaac852ed03ce33272fc0df8bc825050be
476fe13e0c31de719480bad67ad261eedc1ec33edb8ef6495e2a560a725a5]]