IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 20-755 (RGA) (JLH) |
| LIQUIDIA TECHNOLOGIES, INC., | ) ) | **REDACTED −** |
| Defendant. | ) ) | **PUBLIC VERSION** |

**BRIEF IN OPPOSITION TO DEFENDANT'S MOTION SEEKING LEAVE TO MOVE FOR SUMMARY JUDGMENT OF INVALIDITY OF THE '066 AND '901 PATENTS FOR COLLATERAL ESTOPPEL AND OF INVALIDITY OF THE '901 PATENT**

OF COUNSEL:

William C. Jackson
GOODWIN PROCTER LLP
1900 N Street NW
Washington, DC 20036
(202) 346-4216

Huiya Wu
Joel Broussard
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 813-8800

Harrison Gunn
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

Bill Ward
BOIES SCHILLER FLEXNER LLP
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017
(213) 995-5745

Douglas Carsten
Art Dykhuis
Jiaxiao Zhang

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff United Therapeutics Corporation*

Katherine Pappas
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA  92615
(949) 851-0633

Adam W. Burrowbridge
Joshua Revilla
Timothy M. Dunker
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street
Washington, DC  20001-1531
(202) 756-8797

Amy Mahan
MCDERMOTT WILL & EMERY LLP
200 Clarendon Street, Floor 58
Boston, MA  02116-5021
(617) 535-4000

Original Filing Date: November 23, 2021
Redacted Filing Date: December 1, 2021

TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 1

II.     STATUS OF THE PROCEEDINGS ......................................................................... 1

III.    SUMMARY OF ARGUMENT .................................................................................. 2

IV.     FACTUAL BACKGROUND .................................................................................... 3

V.      ARGUMENT ............................................................................................................. 5

        A.      Liquidia's Proposed Motion for Partial Summary Judgment Would
                Unnecessarily Waste Resources ................................................................... 6

        B.      Genuine Disputes of Material Fact Regarding Validity of the '066 and
                '901 Patents Preclude Summary Judgment.................................................... 8

                1.      Collateral Estoppel Does Not Apply To The '066 And '901 Patents......... 8

                2.      There Are Genuine Disputes Of Material Fact As To Validity Of
                        The '901 Patent ...................................................................................... 14

VI.     CONCLUSION ....................................................................................................... 17

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Applied Materials, Inc. v. Gemini Research Corp.*,
  835 F.2d 279 (Fed. Cir. 1987)..................................................................................9

*Bourns, Inc. v. United States*,
  537 F.2d 486 (Ct. Cl. 1979) .....................................................................................8

*Boyer v. Taylor*,
  C.A. No. 06-694-GMS, 2012 WL 1132786 (D. Del. Mar. 30, 2012) ......................7

*Cipla Ltd. v. Sunovion Pharm. Inc.*,
  No. 15-424-LPS, D.I. 301 (D. Del. Aug. 14, 2017) (Ex. 5)....................................15

*Continental Can Co. USA, Inc. v. Monsanto Co.*,
  948 F.2d 1264 (Fed. Cir. 1991)...............................................................................16

*Cuozzo Speed Techs, LLC v. Lee*,
  136 S.Ct. 2131 (2016)...............................................................................................3

*Exxon Corp. v. Nat'l Foodline Corp.*,
  579 F.2d 1244 (CCPA 1978) ....................................................................................2

*Green Edge Enterprises, LLC v. Rubber Mulch Etc.*,
  620 F.3d 1287 (Fed. Cir. 2010)...............................................................................15

*Interconnect Planning Corp. v. Feil*,
  774 F.2d 1132 (Fed. Cir. 1985)................................................................................9

*Invitrogen Corp. v. Biocrest Mfg.*,
  424 F.3d 1374 (Fed. Cir. 2005).................................................................................3

*Liquidia Technologies, Inc. v. United Therapeutics Corp.*,
  IPR2020-00769 (P.T.A.B. Mar. 30, 2020) ...............................................................3

*Liquidia Technologies, Inc. v. United Therapeutics Corp.*,
  IPR2020-00769, Paper 7 (P.T.A.B. Oct. 13, 2020) ..................................................4

*Liquidia Techs., Inc. v. United Therapeutics Corp.*,
  IPR2020-00770, Paper No. 46 (Nov. 8, 2021) .......................................................17

*Montana v. United States*,
  440 U.S. 147 (1979)...................................................................................................8

*Neology, Inc. v. Fed. Signal Corp.*,
C.A. No. 11-672-LPS-MPT, 2012 WL 4342070 (D. Del. Sept. 21, 2012) ...............................8

*Ohio Willow Wood Co. v. Alps South LLC*,
735 F.3d 1333 (Fed. Cir. 2013) ...................................................................................11, 12

*Par Pharm., Inc. v. TWI Pharm., Inc.*,
773 F.3d 1186 (Fed. Cir. 2014) ..............................................................................................15

*Purdue Pharma L.P. v. Endo Pharm. Inc.*,
438 F.3d 1123 (Fed. Cir. 2006) ..............................................................................................12

*Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*,
739 F.2d 624 (Fed. Cir. 1984) ..................................................................................................7

*Remediation Constructors, Inc. v. United States*,
68 Fed. Cl. 162 (2005) (denying summary judgment on Sept. 30, 2005,
because "the fact that a trial [was] scheduled to commence on October 24,
2005, a piecemeal approach to resolving this action is not an efficient use of
judicial resources.") ...................................................................................................................6

*Scott v. Harris*,
550 U.S. 372 (2007) ...................................................................................................................8

*Taylor v. Rederi A/S Volo*,
374 F.2d 545 (3rd Cir. 1967) ....................................................................................................8

*TQ Delta, LLC v. 2Wire Inc*,
No. 13-1835-RGA, 2021 WL 2671296 (D. Del. June 29, 2021) .......................................8, 11

*Wishkin v. Potter*,
476 F.3d 180 (3d Cir. 2007) ......................................................................................................8

**Other Authorities**

Katherine Rhoades, *Do Not Pass Go, Do Not Stop for Summary Judgment: The
U.S. District Court for the District of Delaware's Seemingly Disjunctive Yet
Efficient Procedures in Hatch-Waxman Litigation* ...................................................................2

## I.    <u>INTRODUCTION</u>

Liquidia's proposal to file a motion for partial summary judgment is impractical, prejudicial, and only serves to increase the burden on the Court rather than provide an efficient means of resolving this action.  This Hatch-Waxman patent infringement case involves three asserted patents.  The '066 and '901 patents relate to pharmaceutical compositions, pharmaceutical batches, and the related manufacturing processes.  The '793 patent relates to a method of treatment for patients suffering from pulmonary hypertension.  Because the parties agreed to a highly accelerated schedule, trial is set to occur only a couple months after the close of expert discovery.  Even if the Court were to grant leave to file Liquidia's proposed partial summary judgment motion, review the briefing, and then grant summary judgment, the Court would still have to hold a trial in this case encompassing all three patents because Liquidia's motion would not include '066 patent, claim 8; '901 patent, claim 6; or '793 patent, claims 1, 4, or 6-8.  Additionally, Liquidia's motion is substantively flawed.  It grossly overreaches by attempting to procedurally short-circuit UTC's validity defenses and replace this Court's judgment with the views from a different forum involving different patents, different issues, and different evidence under a different standard of proof.  Liquidia's motion should be denied.

## II.    <u>STATUS OF THE PROCEEDINGS</u>

Liquidia filed its motion for leave on November 2nd, in the middle of expert discovery and less than five months from trial. Opening expert reports were served on October 15, 2021. Scheduling Order (D.I. 20) at Exhibit A.  Rebuttal expert reports were served November 12, 2021. *Id.*  Reply expert reports are due December 10, 2021, and the deadline for completion of expert discovery is January 14, 2021.  *Id.*  The joint proposed final pretrial order is due February 28, 2022, the pretrial conference is scheduled for March 4, 2022, and the trial is slated to begin on March 28, 2022.  *Id.*  At the same time, due to the accelerated schedule set for this case, there also remains

outstanding fact discovery, including depositions of LGM Pharma, LLC and named inventors, as well as discovery of documents from parties and third parties.

On October 8, 2021, the PTAB issued its final written decision in the IPR of the '901 patent. UTC filed a motion for reconsideration on November 8, 2021, and, if necessary, plans to appeal the PTAB's decision.

## III.   <u>SUMMARY OF ARGUMENT</u>

Liquidia's proposed partial summary judgment motions will not resolve the case and would create the practical problem of briefing the summary judgment issues either prior to the close of expert discovery or on the eve of trial. This approach makes little sense for the Court or the parties. Expert discovery is not set to close until January 2022, a mere two months before trial. Liquidia's request to brief summary judgment either: (a) would have to occur before the conclusion of expert discovery, which would prevent the Court from reviewing all facts and inferences in UTC's favor; or (b) would have to occur after the conclusion of expert discovery, which would impinge on the parties' trial preparations and the trial itself. Even if the Court were to grant Liquidia's proposed partial summary judgment motion, the parties would still need to prepare fifteen experts for trial on all three patents and all asserted prior art references. Paradoxically, summary judgment briefing in this case would serve to *increase* the workload just before trial, rather than decrease it. *See* Liquidia Br. at 10 (citing *Exxon Corp. v. Nat'l Foodline Corp.*, 579 F.2d 1244, 1246 (CCPA 1978) ("The basic purpose of summary judgment procedure is one of judicial economy[.]"); *see also* Katherine Rhoades, *Do Not Pass Go, Do Not Stop for Summary Judgment: The U.S. District Court for the District of Delaware's Seemingly Disjunctive Yet Efficient Procedures in Hatch-Waxman Litigation*, 14 NW. J. TECH. & INTELL. PROP. 81 (2016) (noting summary judgment is uncommon in Hatch-Waxman litigation in this district).

Beyond the practical challenges the Court and the parties would face in litigating the

validity of nine patent claims on an incomplete record, Liquidia's proposed summary judgment motion is legally flawed and rests on disputed issues of material fact. First, Liquidia erroneously asserts that collateral estoppel bars the parties from litigating hotly contested issues of material fact that have never previously been considered in *any* forum. Specifically, in adjudicating the validity of the '393 patent claims, the PTAB did not resolve, much less consider, the validity of the claims in the '066 and '901 patents. The patents-in-suit have distinct claims giving rise to evidence, issues, and arguments not previously considered by the PTAB. The '066 and '901 patents claims are "presumed valid independently," 35 U.S.C. §282, and Liquidia bears the burden of demonstrating otherwise by clear and convincing evidence. *Cuozzo Speed Techs, LLC v. Lee*, 136 S.Ct. 2131, 2144 (2016) ("[I]n district court, a challenger must prove invalidity by 'clear and convincing evidence.'"); *Invitrogen Corp. v. Biocrest Mfg.*, 424 F.3d 1374, 1378 (Fed. Cir. 2005) ("That standard of proof also applies in the summary judgment context."). The burden of proof in the IPR proceeding, by contrast, is merely a preponderance of the evidence. *Cuozzo Speed Techs* 136 S.Ct. at 2144. Liquidia cannot wave away the distinct factual issues in this case on a unique evidentiary record merely by relying on the PTAB's ruling in a different case involving different patent claims assessed according to a different standard of proof.

With trial set for March, the Court will soon consider the issues, patents, factual and expert testimony, and prior art references in this case. Liquidia has failed to establish good cause to seek partial summary judgment before the parties have completed all discovery, and which will not obviate the need for a trial in any event. Accordingly, UTC respectfully requests that the Court deny Liquidia's motion for leave to file partial summary judgment motions.

## IV.   FACTUAL BACKGROUND

On March 30, 2020 Liquidia petitioned the PTAB for IPR of the '066 patent. *Liquidia Technologies, Inc. v. United Therapeutics Corp.*, IPR2020-00769 (P.T.A.B. Mar. 30, 2020). After

considering the papers and the Moriarty and Phares prior art references Liquidia relied upon, the PTAB declined to institute IPR on any claim because it determined that Liquidia had "not established a reasonable likelihood that it would prevail in showing that at least one of the challenged claims [was] unpatentable." *Liquidia Technologies, Inc. v. United Therapeutics Corp.*, IPR2020-00769, Paper 7, at 16 (P.T.A.B. Oct. 13, 2020), attached hereto as Ex. 1.

In this case, the parties have exchanged opening and rebuttal expert reports that confirm the existence of disputed issues of material fact related to the validity of the claims at issue in Liquidia's proposed motions.  Dr. Winkler has provided an expert report on behalf of Liquidia opining that the '066 and '901 patents are invalid.  And Dr. Fawzi, an expert retained by UTC in this case, has offered an expert report in response expressing the opinion that the patents are valid. *Compare* Winkler Op. Rep. at ¶ 115 ("Because the '393 patent was found invalid due to its claimed product not being novel over the prior art, it is my opinion that the product-by-process claims of the '066 and '901 patents, claiming the same product, are also invalid."), *with* Fawzi Reb. Rep. at ¶ 12 ("I conclude that the claimed pharmaceutical products and pharmaceutical batches of the '066 and '901 patents do not comprise the same products as claimed in the '393 patent, and therefore the asserted claims of the '066 and '901 patents are not invalid in view of the '393 patent because they have different limitations than the '393 patent.").  As Dr Fawzi stated, "I disagree with the analyses and conclusions in Dr. Winkler's report."  Fawzi Reb. Rep. at ¶ 11.  For example, the '393 patent claims on which Dr. Winkler's product-by-process opinion relies do not contain limitations relating to impurities. '393 Patent, claim 1; Winkler Exp. Rep. at ¶ 88, Section VII. The claims of the '066 and '901 patents, by contrast do.  '066 Patent at 17:54-63; '901 Patent at 17:24-31.  While Dr. Fawzi identifies these factual distinctions, Dr. Winkler does not.  *See* Fawzi Reb. Rep. at ¶ 12.  Dr. Fawzi notes that there are structural differences, such as the quantity and

characterization of impurities, between the pharmaceutical products and batches made according to the '066 and '901 patents and the products made according to the prior art process. *Id.* at ¶ 13. Dr. Winkler disagrees.  Dr. Fawzi also notes his factual disagreements with Dr. Winkler.  For example, he concludes that "Phares does not contain a working synthesis of (+)-treprostinil, or even a working synthesis of (–)-treprostinil, the enantiomer whose synthetic description Dr. Winkler relies upon." *Id.* at ¶ 14.  As another example, Dr. Fawzi opines that "Dr. Winkler does not point to any reference to show that a POSA would have been concerned with the 'white needle' problem posited by Dr. Winkler, and Phares provides no indication that its diethanolamine salts would actually solve the 'white needle' problem." *Id.* at ¶ 15.

Another expert, Dr. Mody, offered a report on secondary considerations of nonobviousness for the '066 and '901 patents. Specifically, Dr. Mody opined on commercial success, long felt but unmet need, and industry praise, as well as their nexus to the '066 and '901 patents. Dr. Mody states that it was her opinion that Tyvaso had demonstrated commercial success and satisfied a long felt but unmet need for an oral inhalation solution in the treatment of pulmonary hypertension. Mody Com. Success Rep. ¶46. While none of the reports offered by Liquidia addressed secondary considerations, Liquidia's experts may address those issues in their reply reports due on December 10, 2021.  And in any event, those experts reserved their rights to rebut such statements, which indicates their future intention to do so and the likelihood for additional disputes of material fact. *Id.* at ¶ 4.

## V.    <u>ARGUMENT</u>

Liquidia's motion for leave to file a motion for partial summary judgment should be denied. Motion practice at this stage of the case is impractical and would waste the parties' and the Court's resources. Even if that were not the case, partial summary judgment is not warranted here due to the highly factual inquiries at the center of Liquidia's proposed motions.  And, as discussed in

Section V.B. below, Liquidia's arguments for collateral estoppel seek to impermissibly short-circuit UTC's opportunity to fully and fairly litigate these issues for the first time.

A.   **Liquidia's Proposed Motion for Partial Summary Judgment Would Unnecessarily Waste Resources**

Briefing a motion for partial summary judgment would waste the parties' resources and work against judicial economy.

First, summary judgment briefing is unworkable under the current case schedule. The parties are currently in the middle of expert discovery which will close at the earliest on January 14, 2022, after the completion of about 16 expert depositions.  If partial summary judgment motions were filed only a week later, on January 21, 2022, which would be a compressed schedule, the responsive brief under standard motion practice would be due February 4, 2022 and any reply might then be filed at the earliest a week later, on Feb. 11, 2022.  At that point there would be only 17 days before the joint proposed final pre-trial order is filed for the Court to fully consider and rule on the partial summary judgment motions.  It makes little sense for the parties to brief important summary judgment motions in only three weeks.  But even if briefing were completed in that short time, the Court would have almost no time to rule on the motions, and any rulings by the Court would not promote efficiency for the parties, which would already have committed substantial resources preparing for trial.  *See e.g.*, *Remediation Constructors, Inc. v. United States*, 68 Fed. Cl. 162, 166 (2005) (denying summary judgment on Sept. 30, 2005, because "the fact that a trial [was] scheduled to commence on October 24, 2005, a piecemeal approach to resolving this action is not an efficient use of judicial resources.").

Briefing summary judgment motions earlier is not an option, either. As mentioned, there are about 15 experts to be deposed by mid-January, rendering earlier briefing impractical. Moreover, *fact* discovery is still ongoing in this case, which may reveal additional information

relevant to the validity of the challenged claims.  Because ongoing fact and expert discovery has confirmed the existence of disputed facts, it would be inefficient to engage in summary judgment motion practice prior to the close of expert discovery.  *See e.g.*, *Boyer v. Taylor*, C.A. No. 06-694-GMS, 2012 WL 1132786, at *5 (D. Del. Mar. 30, 2012)(denying a motion for summary judgment because "there [were] many issues pending in [the] case and it [was] far from clear that discovery [was] complete" and because "the plaintiffs' summary judgment motion present[ed] the type of piecemeal adjudication disfavored by federal courts.").

Second, the proposed partial summary judgment motion would be a waste of time because, even if the motion were granted, the rulings would not obviate the need for a trial or even narrow the issues to be tried.  Any ruling on Liquidia's proposed partial summary judgment motion would not remove any patent from the case.  Instead, the trial would still need to proceed on '901 patent, claim 6 and '066 patent, claim 8, which would not be included in Liquidia's proposed motions, and all claims of the '793 patent.  Unless Liquidia withdraws its validity challenges to those asserted claims, the Court would still have to assess the validity of all three patents, even if the Court were to rule in Liquidia's favor on summary judgment.  Thus, engaging in summary judgment practice at this point would ultimately waste judicial resources due to the repetitive nature of the arguments that would be presented at trial were Liquidia to prevail on summary judgment.  *See Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626 (Fed. Cir. 1984) ("The basic purpose of summary judgment procedure is one of judicial economy—to save the time and expense of a full trial when it is unnecessary because the essential facts necessary to decision of the issue can be adequately developed by less costly procedures, as contemplated by the FRCP rules here involved, with a net benefit to society.") (citation omitted).  Summary judgment practice would only needlessly take up the Court's time and focus but will not eliminate any patents or any

prior art from being presented at trial. *See e.g.*, *Taylor v. Rederi A/S Volo*, 374 F.2d 545, 549 (3rd Cir. 1967) ("The trial court may exercise its discretion in denying summary judgment where a part of an action may be ripe for summary judgment but it is intertwined with another claim that must be tried.") (citation omitted); *Neology, Inc. v. Fed. Signal Corp.*, C.A. No. 11-672-LPS-MPT, 2012 WL 4342070, at *2 (D. Del. Sept. 21, 2012) (denying leave to file motion for summary judgment where "[t]he more efficient approach is to allow the case to proceed in accordance with the scheduling order, which was carefully negotiated between the parties").

### B.    Genuine Disputes of Material Fact Regarding Validity of the '066 and '901 Patents Preclude Summary Judgment

Summary judgment under Fed. R. Civ. P. 56 is also inappropriate here due to the genuine disputes of material fact.  The relevant question under Rule 56 is not whether the movant is ultimately right or wrong, but whether, when viewing all facts and reasonable inferences in favor of the nonmovant, there is a genuine dispute of material fact precluding partial summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The validity of the asserted patent claims here involve factual disputes subject to ongoing expert discovery.  Consequently, this is not a dispute amenable to resolution on summary judgment.

### 1.    Collateral Estoppel Does Not Apply To The '066 And '901 Patents

Liquidia first argues that collateral estoppel applies to prevent UTC from asserting the '066 and '901 patents are valid.  Collateral estoppel only bars a party from relitigating an issue that it had a full and fair opportunity to litigate in a previous action. *TQ Delta, LLC v. 2Wire Inc*, No. 13-1835-RGA, 2021 WL 2671296, at *3-4 (D. Del. June 29, 2021) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979).  In the context of patent litigation, collateral estoppel can reach "unadjudicated claims where it was shown that the adjudicated and unadjudicated claims presented *identical* issues." *Id.* (emphasis added) (quoting *Bourns, Inc. v. United States*, 537 F.2d 486, 492

(Ct. Cl. 1979)).  If the issue resolved in the prior litigation is not the same issue presented in the later case, then collateral estoppel does not apply.  Put differently, "collateral estoppel" applies only if the same issue has already been fully and fairly litigated by the party to be estopped.  *See Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1135 (Fed. Cir. 1985) (collateral estoppel could not be applied to summary judgment for invalidity when the patent claims were subsequently changed by reissue and the reissue claims were unadjudicated in the first action, yet asserted in the second action).  Liquidia bears the burden of demonstrating that the issues in the previous and current actions are identical.  *See Applied Materials, Inc. v. Gemini Research Corp.*, 835 F.2d 279, 281 (Fed. Cir. 1987) (vacating a summary judgment applying collateral estoppel to a finding that claims from a continuation application did not materially differ from the rejected claims of a prior application due to district court err in failing to account for the presumption of validity).

Liquidia cannot meet that burden.

Liquidia cannot show that the issues in the '393 IPR and the current litigation are identical. As an initial matter, the claims of the '393 patent are not identical to those in the '066 and '901 patents.  Indeed, although the PTAB found the claims of the '393 patent unpatentable, the PTAB denied institution of the '066 patent—finding none of the claims unpatentable—and the PTAB's recent Final Written Decision ("FWD") regarding the '901 patent did not find all claims of that patent unpatentable, either.  Thus, the very PTAB decisions on which Liquidia relies demonstrate there are different issues involved in the '393, '066, and '901 patent claims.

The claim language of the patents also shows how the issues to be litigated are different and not identical, as the case law requires.  For example, the PTAB's Final Written Decision on the '393 patent found that the claimed "product" in the '393 patent did not require a "particular impurity profile that is conferred by the recited process steps."  FWD at 11.  Thus, the claimed

"product" in the '393 patent is distinct from the "pharmaceutical composition" claimed in the '066 patent or the "pharmaceutical batch" claimed in the '901 patent, which do have claim limitations relating to the present impurities. *See, e.g.*, '066 patent, claim 1 ("a starting batch of treprostinil having one or more impurities resulting from prior alkylation and hydrolysis steps"); '901 patent, claim 1 ("A pharmaceutical batch consisting of Treprostinil or a salt thereof and impurities resulting from (a) alkylating a benzindene triol, (b) hydrolyzing the product of step (a)…"). Differences in process steps, which in the '066 and '901 patents explicitly recite relative "impurities," were not considered in the IPR adjudicating the '393 patent. *See, e.g.,* '393 FWD at 19 (stating "'product' is defined by the limitations recited in the challenged claims."); *id.* at 30 ("the record is devoid of any evidence affirmatively suggesting the existence of any structural or functional difference between treprostinil made according to Phares and that made according to the '393 patent.").

The way the PTAB and experts interpret the claims also demonstrates the '393 and '066 and '901 patents present non-identical issues. When comparing the claimed "product" of the '393 patent to the prior art, the Board found that "the *process steps* recited in the *challenged claims* [of the '393 patent] do not impart structural or functional differences to the claimed product[.]" '393 FWD at 29 (emphasis added). By contrast, Dr. Fawzi considered the scope of the '066 and '901 patents' claims, which explicitly include impurity limitations, and the process steps of the challenged claims, and concluded that the process steps *do* impart structural or functional differences. *See e.g.* Fawzi Reb. Rep. at ¶ 12 ("The scope of the '066 and '901 patent claims differ in an important way from those of the '393 patent by reciting additional limitations, including those relating to impurities. These claim limitations, absent from the '393 patent, capture at least structural and functional differences in the products…").

The *Ohio Willow Wood* case cited by Liquidia is not controlling here, as that case dealt with simple claims where there was no real dispute that the prior art (which had been found to invalidate a related patent) would similarly render obvious the asserted patent claim despite trivial differences in claim language. *See* D.I. 225 (Liquidia Br.) at 6-7, 8 (citing *Ohio Willow Wood Co. v. Alps South LLC*, 735 F.3d 1333, 1336 (Fed. Cir. 2013)).   In *Ohio Willow Wood*, the court considered the application of collateral estoppel where the patent claim at issue was directed to, in essence, a sock with a gel lining used for cushioning residual stumps of amputated limbs to minimize discomfort associated with using a prosthetic.   In *ex parte* reexamination proceedings, the patentee was allowed to amend the claims (overcoming prior art) to clarify that the gel coating was only on the interior of the claimed gel liners and excluded any liners with fabric that allowed gel to bleed through to the exterior surface. *Ohio Willow Wood Co.*, 735 F.3d at 1337-1338.   While the litigation was stayed pending reexaminations, another district court found a related (continuation) patent invalid as obvious in view of prior art, finding that it would have been obvious to a person of ordinary skill in the art ("POSA") to select an impermeable fabric such that gel would not bleed through. *Id.* at 1341.   Upon lifting the stay after reexaminations, the district court found there was collateral estoppel based on the other court's obviousness finding because the two claims used slightly different language to describe substantially the same simple invention of a sock with an interior gel liner, and the patent-holder was unable to articulate how any claim limitations were "patentably significant in view of the obvious determination regarding the claims of the [prior litigated] patent." *Id.* at 1343 (stating that the party had "not provided *any* explanation regarding [how]" the limitations changed invalidity analysis) (emphasis added); *cf. TQ Delta*, 2021 WL 2671296 at *5-6  (finding an explanation from an expert on the changed scope of asserted

claims and change in motivation to combine was sufficiently more than "mere use of different words" and changed the invalidity analysis).

Unlike *Ohio Willow Wood*, the differences in claim language between the previously litigated '393 patent and the now asserted '066 and '901 patents are material to the question of validity. For example, for the '393 patent, the Board "observe[d] that the challenged claims contain no limitations relating to the impurity profile of the recited product, 'and it is the claims ultimately that define the invention.'" '393 FWD at 18 (citing *Purdue Pharma L.P. v. Endo Pharm. Inc.,* 438 F.3d 1123, 1136 (Fed. Cir. 2006)). Because the unique claimed process steps in the '066 and '901 patents confer structural and functional distinctions to the claimed inventions over the prior art, the "issues" litigated are distinct and collateral estoppel does not apply. In fact, Liquidia implicitly recognizes that what was claimed in the '393 patent is distinct from what is claimed in the '066 and '901 patents but asserts that those differences should simply be overlooked. *See* D.I. 225 at 8. Dr. Fawzi's opinions, and the opinions of other experts in this case, demonstrate that there are disputes of material fact regarding whether prior art encompasses '066 and '901 patents' claims and whether a POSA would have a reason to combine the prior art with a reasonable expectation of success at reaching the inventions claimed by the '066 and '901 patents. Indeed, when the PTAB denied Liquidia's petition for *inter partes* review of the '066 patent, it considered the same prior art in light of the '066 claims, finding in part that reference Phares "does not suggest 'a level of one or more impurities found in the starting batch of treprostinil is lower in the pharmaceutical composition,' as claim 1 requires." Ex. 1 at 13.

Liquidia also argues that "Dr. Batra is UTC's Rule 30(b)(6) witness on Rule 30(b)(6) Topic Nos. 5-8 and 16 of identifying any differences between the '393 patent and the '901 and '066 patents." D.I. 225 at 3, citing Ex. 4 at 10-12; *see also* D.I. 225 at 5. This is simply wrong. Dr.

Batra was *not* UTC's 30(b)(6) witness on "identifying any differences between the '393 patent and the '901 and '066 patents" because UTC did not agree to present a corporate witness on that subject, as it called for expert and contention testimony. *See* Ex. 2 (UTC's written responses and objections to Liquidia's Rule 30(b)(6) notice), D.I. 178 (Liquidia letter brief regarding Liquidia's 30(b)(6) topics), D. I. 181 (UTC responsive letter brief regarding Liquidia's 30(b)(6) topics); *see also* Ex. 3 (Sept. 22 Mot. Hr'g Tr.) at 32:22-36:24 (arguments and ruling regarding scope of corporate testimony on Liquidia's 30(b)(6) topic nos. 5-8).[1]  Liquidia is apparently attempting to not only mischaracterize Dr. Batra's testimony as supporting Liquidia's substantive conclusions (which it does not) but to further imply that Dr. Batra's testimony somehow limits UTC's positions (which it does not) on the mixed question of law and fact regarding the scope of claim language across different patents.

As Liquidia points out, it petitioned the PTAB to institute an IPR for the '066 patent as well.  Br. At 7.  The PTAB rejected Liquidia's petition after having considered arguments similar to those presented here.  *See* D.I. 225 at 7 ("UTC may argue that…the PTAB did not institute Liquidia's IPR petition of the '066 patent"); *see also* Ex. 1.  Liquidia's argument that "collateral

---

[1] Liquidia fails to point out in its statement of facts that Dr. Batra was not a 30(b)(6) witness designated for the full scope of topics 5-8, and 16.  The Parties briefed this issue as a discovery dispute before Magistrate Judge Hall.  As UTC and the Court have stated, portions of those topics call for expert discovery, not fact testimony from an inventor.  With respect to topic nos. 5-8, the Court stated, "I agree with UTC that it need not provide testimony on the additional information that Liquidia is seeking."  9/22/21 H'rg Tr. at 33:8-11.  Liquidia's topic 16 was likewise limited by UTC's objections: "UTC will provide one or more witnesses to testify concerning how UTC has synthesized treprostinil API."  As the Court noted, on topics 5-8, and as Liquidia understood on topic 16, those matters were seeking expert testimony.  To the extent Liquidia relies on Dr. Tuladhar's statements regarding the content of the patents, Dr. Tuladhar was not a 30(b)(6) witness and admitted to not carefully reviewing the patents prior to his deposition.  Tuladhar Dep. Tr. at 8:11-19, 110:3-5.  Similarly, Liquidia's statement that Dr. Tuladhar admitted that the products claimed by the '066 and '901 patents are identical to the product claimed by the '393 patent is also erroneous as such testimony requires an understanding of patent law, claim scope, and a careful analysis of the products manufactured by claimed inventions—none of which Dr. Tuladhar fully considered in his capacity as a 30(b)(1) witness.

estoppel is not a basis for an IPR petition" and therefore "that the PTAB did not instate the '066 patent IPR has no bearing on the separate legal issue of collateral estoppel" (D.I. 225 at 8) makes little sense.  Had Liquidia established a reasonable likelihood that the '066 was obvious for the same reason the '393 was—i.e., the underlying rationale behind the collateral estoppel doctrine— the Board would have instituted IPR proceedings.  But it did not.  As the Board appreciated, the '393 patent claims are distinct from those of the '066 patent, and accordingly it embarked on a fresh and divergent analysis of the prior art and its import with respect to validity of the '066 patent's claims.  Ex. 1 at 12-16.  The PTAB's refusal to institute the IPR proceedings on the '066 demonstrates that it did not think Liquidia's arguments sufficiently meritorious to institute review.

Notably, Liquidia faced a lower burden in establishing invalidity in front of the PTAB than it faces here.  In short, the PTAB would have instituted IPR if the PTAB believed that Liquidia had presented a reasonable likelihood that either: (1) the claims of the '066 patent suffer from the same invalidity concerns as those presented in the '393 patent; or (2) the prior art rendered the subject matter of the '066 patent invalid for anticipation or obviousness (regardless of the '393 IPR).  The PTAB's rejection of the petition demonstrates that Liquidia did not meet even this *lower* threshold.  Liquidia is simply wrong that the same "issue" of the validity of the '066 patent's asserted claims' scope was already decided by the '393 patent's Final Written Decision.  Summary judgment based on collateral estoppel is inappropriate and briefing those issues would be a waste of time and resources.

2.    There Are Genuine Disputes Of Material Fact As To Validity Of The '901 Patent

Contrary to Liquidia's assertions, there are several disputed issues of material fact relating to the alleged invalidity of the '901 patent. The parties' experts dispute several factual issues, demonstrating that genuine issues of material fact exist and precluding summary judgment.  Rather

than grapple with the myriad disputed facts at issue, Liquidia's motion for leave attempts to gloss over those disputes by relying on the PTAB's '901 IPR Final Written Decision and pretending that that decision has automatic effect here.  It does not.  UTC has already sought rehearing and intends to appeal if necessary, and the PTAB's decision has certainly not been affirmed by the Federal Circuit.  Moreover, Liquidia does not allege collateral estoppel based the PTAB's '901 Final Written Decision.  *See* D.I. 225 at 10 ("this requested summary judgment motion is not based on collateral estoppel.").  Nor could it.  Only *if* the Federal Circuit affirms the PTAB's decision would it have any collateral effect in this litigation.  As a result, Liquidia's heavy reliance on the PTAB's decision here is misplaced.

This Court's obviousness determination turns on "underlying factual inquires" including "(1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness." *Green Edge Enterprises, LLC v. Rubber Mulch Etc.*, 620 F.3d 1287, 1298 (Fed. Cir. 2010) (affirming denial of summary judgment of invalidity for obviousness due to factual disputes regarding the *Graham* factors).  For example, it is well settled that "[w]hat a reference teaches and whether it teaches toward or away from the claimed invention are questions of fact." *Par Pharm., Inc. v. TWI Pharm., Inc.*, 773 F.3d 1186, 1196-97 (Fed. Cir. 2014).

The record has not been sufficiently developed to address all of the *Graham* factors.  Expert discovery is ongoing, with both parties' experts opining on the scope and content of the prior art, whether a POSA would have a motivation to combine the asserted references, and whether a POSA would have a reasonable expectation of success in doing so.  Indeed, the depth of the experts' disputes is likely to increase once reply reports are served and the experts provide their deposition testimony in this case.  *See, e.g., Cipla Ltd. v. Sunovion Pharm. Inc.*, No. 15-424-LPS, D.I. 301

(D. Del. Aug. 14, 2017) ("The Court is not persuaded that the invalidity issues identified by Defendant are amenable to summary judgment before the parties even have an opportunity to take expert discovery.") (Ex. 5).

Liquidia's assertion that "UTC's evidence related to the issue of obviousness would be the same" (D.I. 225) is baseless.  Liquidia simply ignores the fact that UTC has independent experts opining on the underlying facts concerning obviousness, including the assertion of the '901 patent's commercial success. *See, e.g., Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1274 (Fed. Cir. 1991) (vacating summary judgment of invalidity for obviousness because disputed fact issues existed regarding secondary considerations, including commercial success). Liquidia's argument also relies on UTC's initial response to Liquidia's Interrogatory No. 1.  But, consistent with the parties' agreement, UTC supplemented that response on September 28, 2021. *See* Ex. 4 at 7-28 (UTC's first supplemental response to Interrogatory No. 1).  Liquidia's Interrogatory No. 1 sought UTC's response to Liquidia's invalidity contentions, which Liquidia supplemented the same day that UTC served its supplemental response to Interrogatory No. 1. (*See* Ex. 4).  Because this September 28, 2021 exchange of supplemental disclosures marked the end of the parties' prior-agreed supplementations, there is no support for Liquidia's argument that UTC's *initial* (not even supplemental) response to Interrogatory No. 1 encapsulated the full scope of UTC's *responsive* validity positions.  And in any event, UTC's responsive expert reports were served on November 12, 2021, which included UTC's experts' opinions responsive to Liquidia's obviousness opinions served October 15, 2021.  UTC intends to rely on those experts' opinions and additional material at trial in this matter.

Liquidia asserts that the Court should ignore the fact that it faces a different—and *higher*—standard of proof than it did before the PTAB.  In Liquidia's words, "UTC had every incentive to

persuade the PTAB of the validity of the '901 patent but failed to do so, and thus even under a clear and convincing evidence standard, UTC's evidence related to the issue of obviousness would be the same." D.I. 225 at 10.  This argument borders on frivolous.  In essence, Liquidia is asserting that whenever a party meets a "preponderance of the evidence" standard, it should also be deemed to meet a "clear and convincing evidence" standard because it had "every incentive to persuade" the relevant decision-maker.  It is unsurprising that Liquidia cites not a single authority for this rule, because none exists.  And in any event, UTC believes that the PTAB's ruling on the '901 IPR is incorrect, and sought Panel Rehearing on November 8, 2021.  To the degree that rehearing request is unsuccessful, UTC intends to appeal the PTAB's Final Written Decision.  *See Liquidia Techs., Inc. v. United Therapeutics Corp.*, IPR2020-00770, Paper No. 46 (Nov. 8, 2021); Liquidia Br. at 9-10, n. 8.  Liquidia's argument is simply a brazen attempt to improperly flip the burden of proof to the patent holder and obfuscate the fact that Liquidia is statutorily estopped from asserting the same invalidity grounds here as those it "raised or reasonably could have raised" in the IPR proceedings.  *See* 35 U.S.C. § 315(e)(2); *see also* D.I. 222 (UTC's letter brief regarding estoppel of Liquidia's '901 invalidity arguments under 35 U.S.C. § 315(e)(2)).

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, UTC respectfully requests that the court deny Liquidia's Motion Seeking Leave to Move for Summary Judgment of Invalidity of the '066 and '901 Patents for Collateral Estoppel and of Invalidity of the '901 Patent (D.I. 224, 225).

OF COUNSEL:

William C. Jackson
GOODWIN PROCTER LLP
1900 N Street NW
Washington, DC 20036
(202) 346-4216

Huiya Wu
Joel Broussard
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 813-8800

Harrison Gunn
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

Bill Ward
BOIES SCHILLER FLEXNER LLP
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017
(213) 995-5745

Douglas Carsten
Art Dykhuis
Jiaxiao Zhang
Katherine Pappas
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA  92615
(949) 851-0633

November 23, 2021

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff United Therapeutics Corporation*

Adam W. Burrowbridge
Joshua Revilla
Timothy M. Dunker
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street
Washington, DC  20001-1531
(202) 756-8797

Amy Mahan
MCDERMOTT WILL & EMERY LLP
200 Clarendon Street, Floor 58
Boston, MA  02116-5021
(617) 535-4000

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 23, 2021, I caused the foregoing to be electronically

filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all

registered participants.

I further certify that I caused copies of the foregoing document to be served on November

23, 2021, upon the following in the manner indicated:

| | |
|---|---|
| Karen E. Keller, Esquire<br>Jeff Castellano, Esquire<br>Nathan R. Hoeschen, Esquire<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Defendant Liquidia*<br>*Technologies, Inc.* | *VIA ELECTRONIC MAIL* |
| Sanya Sukduang, Esquire<br>Jonathan Davies, Esquire<br>Douglas W. Cheek, Esquire<br>COOLEY LLP<br>1299 Pennsylvania Avenue, NW, Suite 700<br>Washington, DC  20004-2400<br>*Attorneys for Defendant Liquidia*<br>*Technologies, Inc.* | *VIA ELECTRONIC MAIL* |
| Erik Milch, Esquire<br>COOLEY LLP<br>11951 Freedom Drive, 14th Floor<br>Reston, VA  20190-5640<br>*Attorneys for Defendant Liquidia*<br>*Technologies, Inc.* | *VIA ELECTRONIC MAIL* |
| Ivor Elrifi, Esquire<br>COOLEY LLP<br>55 Hudson Yards<br>New York, NY  10001-2157<br>*Attorneys for Defendant Liquidia*<br>*Technologies, Inc.* | *VIA ELECTRONIC MAIL* |

Lauren Krickl, Esquire                                    *VIA ELECTRONIC MAIL*
Deepa Kannappan, Esquire
Brittany Cazakoff, Esquire
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

/s/ *Michael J. Flynn*
_____
Michael J. Flynn (#5333)