IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED THERAPEUTICS
CORPORATION,

               Plaintiff,

      v.

LIQUIDIA TECHNOLOGIES, INC.,

               Defendant.

)
)
)
)
)
)
)
)
)
)
)

C.A. No.  20-755-RGA

**REDACTED -
PUBLIC VERSION**

**BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF THE '066 AND '901 PATENTS FOR COLLATERAL ESTOPPEL**

OF COUNSEL:

William C. Jackson
GOODWIN PROCTER LLP
1900 N Street NW
Washington, DC 20036
(202) 346-4216

Douglas H. Carsten
Arthur Dykhuis
Jiaxiao Zhang
Katherine Pappas
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA 92612
(949) 851-0633

Adam W. Burrowbridge
Joshua Revilla
Timothy M. Dunker
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8000

Original Filing Date: January 28, 2022
Redacted Filing Date: February 4, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff
United Therapeutics Corporation*

TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ......................................... 2

III.    SUMMARY OF ARGUMENT ........................................................................... 2

IV.     COUNTERSTATEMENT OF FACTS .............................................................. 3

        A.      The Inventions Have Improved Impurity Characteristics and Provide New
                Functional Utility Through an API Stable at Ambient Temperature ..................... 3

        B.      The Asserted Claims Include Unadjudicated, Materially Different
                Limitations ............................................................................................................... 5

        C.      The Validity Issues in this Case Were Not Decided in the '393 IPR ................... 6

V.      LEGAL STANDARDS ....................................................................................... 7

        A.      Summary Judgment of Collateral Estoppel ............................................................ 7

        B.      Process Claims and Product-by-Process Claims Have Fundamentally
                Different Validity Analyses, Yet Both Require Factual Determinations .............. 8

VI.     ARGUMENT ....................................................................................................... 9

        A.      Liquidia's Motion is Procedurally Barred ............................................................ 9

                1.      Liquidia failed to timely disclose its collateral estoppel defense .............. 9

                2.      Liquidia failed to provide an adequate explanation of its defense............. 9

        B.      Liquidia Addressed the Wrong Question and Has Not Proved That "the
                Issue of Invalidity Common to Each Action is Substantially Identical" .............. 10

        C.      Differences Between the Claims and Evidence Impact the Validity
                Analysis and Raise New Triable Issues of Material Fact ..................................... 11

                1.      The Process/Method Claims Require a Materially Different
                        Validity Analysis ....................................................................................... 11

                2.      Limitations Defining the Claimed Product Materially Alter the
                        Validity Analysis ....................................................................................... 13

                3.      Determining the Level of Skill in the Art and Addressing
                        Secondary Considerations Preclude Collateral Estoppel.......................... 20

VII.    CONCLUSION................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amgen Inc. v. F. Hoffman-La Roche Ltd.*,
   580 F.3d 1340 (Fed. Cir. 2009)........................................................................................8

*B & B Hardware, Inc. v. Hargis Industries, Inc.*,
   575 U.S. 138 (2015)..........................................................................................................8

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*,
   402 U.S. 313 (1971)..........................................................................................................9

*Bourns, Inc. v. U. S.*,
   537 F.2d 486 (Ct. Cl. 1976) ...........................................................................................12

*Clearstream Wastewater Systems, Inc. v. Hydro-Action, Inc.*,
   206 F.3d 1440 (Fed. Cir. 2000)........................................................................................7

*Custom Accessories, Inc. v. Jeffrey-Allan Industries, Inc.*,
   807 F.2d 955 (Fed. Cir. 1986)........................................................................................20

*Daiichi Sankyo Co., Ltd. v. Apotex, Inc.*,
   501 F.3d 1254 (Fed. Cir. 2007).......................................................................................20

*Evonik Degussa GmbH v. Materia Inc.*
   53 F.Supp.3d 778 (D. Del. 2014).................................................................................7, 15

*Finnigan Corp. v. Int'l Trade Comm'n.*,
   180 F.3d 1354 (Fed. Cir. 1999)......................................................................................13

*Greenliant Sys., Inc. v. Xicor LLC*,
   692 F.3d 1261 (Fed. Cir. 2012)........................................................................................9

*Horizon Medicines LLC v. Dr. Reddy's Labs., Inc.*,
   2021 WL 616067 (D.N.J. Feb. 17, 2021) .......................................................................10

*Innogenetics, N.V. v. Abbott Laboratories*,
   512 F.3d 1363 (Fed. Cir. 2008).......................................................................................18

*Interconnect Planning Corp. v. Feil*,
   774 F.2d 1132 (Fed. Cir. 1985)....................................................................7, 10, 12, 17

*Jackson Jordan, Inc. v. Plasser Am. Corp.*,
   747 F.2d 1567 (Fed. Cir. 1984)........................................................................................9

*Karns v. Shanahan,*
   879 F.3d 504 (3d. Cir. 2018).................................................................................8

*Knoll Pharmaceutical Co., Inc. v. Teva Pharmaceuticals USA, Inc.,*
   367 F.3d 1381 (Fed. Cir. 2004)...........................................................................7

*Markman v. Westview Instruments,*
   52 F.3d 967 (Fed. Cir. 1995)...............................................................................8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)............................................................................................7

*In re Ochiai,*
   71 F.3d 1565 (Fed. Cir. 1995).............................................................................8

*Ohio Willow Wood Co. v. Alps South, LLC,*
   735 F.3d 1333 (Fed. Cir. 2013)..............................................................7, 10, 11

*Par Pharm. Inc. v. Twi Pharms., Inc.,*
   773 F.3d 1186 (Fed. Cir. 2014)..........................................................................13

*Purdue Pharma L.P. v. Endo Pharm. Inc.,*
   438 F.3d 1123 (Fed. Cir. 2006)..........................................................................15

*Purdue Pharma L.P. v. Mylan Pharms. Inc.,*
   2017 WL 2569604 (D. Del. June 13, 2017)............................................10, 11, 12

*Purdue Pharma L.P. v. Mylan Pharms. Inc.,*
   2017 WL 784989 (D. Del. Mar. 1, 2017) ..........................................................13

*Reeves v. Sanderson Plumbing Prods., Inc.,*
   530 U.S. 133 (2000)............................................................................................7

*Ruiz v. A.B. Chance Co.,*
   234 F.3d 654, (Fed. Cir. 2000).....................................................................13, 20

*SkyHawke Techs., LLC v. Deca Int'l Corp.,*
   828 F.3d 1373 (Fed. Cir. 2016)............................................................................8

*Syntex (U.S.A.) LLC v. Apotex, Inc.,*
   407 F.3d 1371 (Fed. Cir. 2005)..........................................................................13

*Torpharm, Inc. v. Ranbaxy Pharmaceuticals, Inc.,*
   336 F.3d 1322 (Fed. Cir. 2003)............................................................................8

*TrustId, Inc. v. Next Caller Inc.,*
   2021 WL 3015280 (D. Del. July 6, 2021) ............................................................8

*Westwood Chem., Inc. v. United States,*
    525 F.2d 1367 (Ct. Cl. 1975) ..................................................................................9, 10, 13, 20

**Statutes**

35 U.S.C. § 282.................................................................................................................................7

**Other Authorities**

Fed. Rule Civ. Proc. 8(c) .............................................................................................................9

## I.       <u>INTRODUCTION</u>

Liquidia seeks to misapply collateral estoppel to invalidate two of the three patents in this suit—barely more than six weeks from trial by the time its motion is fully briefed—by ignoring significant claim limitations not previously adjudicated. Liquidia glosses over disputed issues of material fact that prevent application of a conclusion reached in a different forum employing a different burden of proof addressing different claims of a different patent. At bottom, Liquidia's argument is built on an erroneous application of law and incorrect assertions of disputed facts.

The core question for the Court is whether there are "differences between the unadjudicated patent claims and adjudicated patent claims" that "materially alter the question of validity." The answer here is yes. Liquidia sidesteps this question, focusing instead on alleged *similarities* between a product it contends is a proxy for previously-adjudicated '393 patent claims and a product allegedly embodying the claims asserted here while ignoring the undisputed *differences* between the *claims* of these patents and their impact on the invalidity analysis. Indeed, Liquidia sought to initiate an *inter partes* review (IPR) of the '066 patent at issue here based on the same art and arguments it now claims have preclusive effect. The Board held that Liquidia failed to clear the lenient burden required for IPR institution because it ignored claim limitations just like it does here. Thus, Liquidia seeks to shirk its burden of proving invalidity by clear and convincing evidence and force UTC to affirmatively prove validity by identifying differences in claim scope that impact the validity analysis. These legal errors doom Liquidia's motion.

An analysis under the proper legal framework reveals that the undisputed differences in the asserted claims materially impact the invalidity analysis. Some asserted claims are an entirely different statutory class of invention compared to the previously adjudicated claims. All asserted claims contain express limitations absent from the previously adjudicated claims. These differences must be accounted for as part of an invalidity analysis, and thus preclude application

1

of collateral estoppel. Moreover, determining how differences in the claims impact the invalidity analysis requires, in part, resolving hotly contested material facts. These are issues that should be resolved at trial with a full and fair opportunity to address factual disputes.

## II.   NATURE AND STAGE OF THE PROCEEDINGS

Liquidia's motion for leave requested summary judgment only of product-by-process claims. Yet Liquidia moved for summary judgment on *all* asserted claims, including method claims. This is improper. Determining validity for method claims is an altogether different analysis than is undertaken for determining validity of product-by-process claims, which makes Liquidia's motion futile. *See* § 4(C)(1), *infra*. Second, Liquidia's collateral estoppel argument effectively circumvents 35 U.S.C. § 315(e)(2)'s prohibition on asserting the same prior art in district court that was raised (or reasonably could have been raised) in its '901 patent IPR petition. Indeed, Liquidia failed to prove obviousness of method claims 6 and 7 in the '901 patent IPR (Flynn Dec.[1] Ex. 1) at 62), and now Liquidia pivots to collateral estoppel where it would be barred by § 315(e)(2) from making the underlying arguments.

## III.   SUMMARY OF ARGUMENT

Liquidia's argument fails for three primary reasons. First, the validity of the process claims at issue here is different from the validity issue litigated in the '393 IPR because the '393 patent IPR addressed only product-by-process claims. The invalidity analyses for process versus product-by-process claims are fundamentally different. Second, limitations of the unadjudicated claims of the '066 and '901 patents not present in the previously adjudicated claims of a different patent materially alter the validity analysis. For example, unadjudicated limitations impart structural and functional characteristics on the claimed products that must be considered for purposes of

---

[1] The Declaration of Michael Flynn ("Flynn Dec.") is filed concurrently with this brief.

determining validity. Third, determining whether the additional limitations materially alter the validity analysis requires resolving disputed issues of material fact.

Liquidia baldly asserts that the claimed products are the "same" as the '393 product, but that is the wrong analysis. Liquidia provides no analysis of the proper inquiry—how these new claims limitations are wholly immaterial to the validity analysis. Liquidia simply ignores the claim language in favor of out-of-context statements about particular commercial embodiments and treats the '393 patent itself as prior art. As the '393 IPR panel noted, the "challenged claims contain no limitations relating to the impurity profile of the recited product, 'and it is the claims ultimately that define the invention.'" D.I. 282 Ex. 4 ("'393 FWD") at 18; *id.* at 42 ("the '393 patent itself does not discuss any of the individual impurities"). Yet the claims at issue here have that very limitation. *E.g.*, '066 patent, cl. 1 ("whereby a level of one or more impurities found in the starting batch of treprostinil is lower"). At the summary judgment stage, when drawing all reasonable inferences in favor of the nonmoving party, and not making credibility determinations or weighing evidence, genuine issues of material fact preclude collateral estoppel.

## IV.   COUNTERSTATEMENT OF FACTS

### A.   The Inventions Have Improved Impurity Characteristics and Provide New Functional Utility Through an API Stable at Ambient Temperature

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████. In May 2002, FDA approved Remodulin. ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

3



*See* Walsh Dec. ¶ 13.[2] UTC discovered that through use of the innovative technique it could eliminate almost all observable impurities. *See* Flynn Dec. Ex. 3 at 71:11-18. This new synthetic route allows for meaningfully more pure pharmaceutical compositions and products and intermediate forms having increased stability without degradation. *See id.* at 32:7-14; Walsh Dec. ¶¶ 10-14; Flynn Dec. Ex. 4 at UTC_LIQ00141428-437.

This means that, for example, if the sample being analyzed is more pure than the reference standard it is tested against, then that can cause a purity assay figure above 100%.  Walsh Dec. ¶ 15. The '393 IPR did *not* analyze the nature and level of impurities present in the treprostinil product, only absolute purity with respect to a reference standard. *See also* Flynn Dec. Ex. 6.

---

[2] The Declaration of David A. Walsh ("Walsh Dec.") is filed concurrently with this brief.

**B.    The Asserted Claims Include Unadjudicated, Materially Different Limitations**

The asserted claims of the '066 and '901 patents include numerous limitations explicitly narrowing the claims relative to those in the '393 patent. The following underlined limitations were not previously litigated or considered in the '393 IPR include:

- A "pharmaceutical composition" . . . "providing a starting batch of treprostinil having one or more impurities resulting from prior alkylation and hydrolysis steps" . . . "whereby a level of one or more impurities found in the starting batch of treprostinil is lower in the pharmaceutical composition" ('066 Patent, Cls. 1-7);

- a "pharmaceutical composition" . . . "wherein the isolated salt is stored at ambient temperature" (*id.*, Cl. 6);

- a "process of preparing a pharmaceutical product" . . . by "forming a salt of treprostinil stable at ambient temperature, storing the Treprostinil salt at ambient temperature, and preparing a pharmaceutical product from Treprostinil salt after storage" (*id.*, Cl. 8);

- the pharmaceutical product prepared by the process of claim (*id.*, Cl. 9);

- a "pharmaceutical batch" consisting of "impurities resulting from [claimed steps]" ('901 Patent, Cl. 1); and

- a "method of preparing a pharmaceutical product from a pharmaceutical batch as claimed in claim 1, comprising storing a pharmaceutical batch of a salt of treprostinil as claimed in claim 1 at ambient temperature, and preparing a pharmaceutical product from the pharmaceutical batch after storage." (*id.*, Cl. 6).

These limitations implicate every asserted claim and require comparing the claims-at-issue to the prior art in a manner never contemplated by the '393 FWD.

The USPTO has determined during examination and in adversarial proceedings that these claims create validity issues distinct from those that apply to the '393 patent. During prosecution, the Examiner considered every argument presented in the '393 IPR and determined that there was "no basis" to conclude that Moriarty and/or Phares teach the impurity profile recited in the asserted

claims.[3] *See* Flynn Dec. Ex. 7 at 3143; Flynn Dec. Ex. 8 at 6776. Moreover, Liquidia attacked both

the '901 and '066 patents in IPR petitions asserting the same references used in the '393 IPR. The

Board denied institution on the '066 patent explaining that the prior art did not suggest a

limitation—the change in impurities—not present in the '393 patent claims. Flynn Dec. Ex. 6 at

13-15. Similarly, the Board concluded that two claims of the '901 patent, with limitations distinct

from the '393 patent, were not invalid over the same prior art asserted in the '393 IPR.

### C.    The Validity Issues in this Case Were Not Decided in the '393 IPR

The Board only considered the "product" resulting from the '393 claims' product-by-

process steps, and those claims had no limitations regarding the impurities present in the claimed

"product" and instead focused on the treprostinil compound itself. D.I. 282 Ex. 4 ('393 FWD) at

18 ("the challenged claims contain no limitations relating to the impurity profile of the recited

product, 'and it is the claims ultimately that define the invention.'") (citation omitted). The Board

used the broadest reasonable interpretation standard in construing the '393 claims, and in so doing

rejected the proposed construction of "product" as "having the impurity profile conferred by

performance of the recited process steps." '393 FWD at 13.

The Board determined that the "product" of the adjudicated claims in the '393 patent did

not require any particular impurity profile conferred by the recited process steps. *See* '393 FWD

at 34. Indeed, only two dependent claims of the '393 patent had *any* limitation on purity of the

then-claimed treprostinil "product." The broad '393 patent claims proved fatal to validity before

---

[3] Liquidia states that "UTC did not inform the Examiner … of the '393 FWD." Br. (D.I. 292) at 9. The FWD was not issued until *after* the issuance of the '901 and '066 patents, so it could not be shared with the Examiner. UTC did, however, provide the Examiner with the evidence and arguments from the IPR. *See, e.g.*, Flynn Dec. Ex. 7 at UTC_LIQ00000072-73, UTC_LIQ00000095-96, UTC_LIQ00001115-1116, UTC_LIQ00003163-3165; Flynn Dec. Ex. 8 at UTC_LIQ00003580-81, UTC_LIQ00003725-26, UTC_LIQ00004742-45, UTC_LIQ00006821-23; Fawzi Dec. Ex. 2 at ¶¶68-73.

the Board because those claims covered batches of treprostinil "product" with a purity percentage similar to prior art product. *See* '393 FWD at 25.

## V.   LEGAL STANDARDS

### A.   Summary Judgment of Collateral Estoppel

Liquidia bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). Only if Liquidia carries this burden must UTC "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id. at* 587 (citing Fed. R. Civ. P. 56(e)). Courts must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

When applying collateral estoppel, "it is well settled that each claim of a patent is entitled to a presumption of validity and is to be treated as a complete and independent invention." *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1137 (Fed. Cir. 1985) (citation omitted); 35 U.S.C. § 282 (patents are "presumed valid"). Similarly, it is "presumed that different words used in different claims result in a difference in meaning and scope for each of the claims." *Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*, 206 F.3d 1440, 1446 (Fed. Cir. 2000). "If the scope of a subsequent patent claim differs from that of a prior patent claim, a new issue of patent validity exists[.]" *Evonik Degussa GmbH v. Materia Inc.* 53 F. Supp.3d 778, 791-2, (D. Del. 2014).

Liquidia's burden to prove invalidity by clear and convincing evidence is measured claim-by-claim. *See* 35 U.S.C. § 282; *Knoll Pharma. Co., v. Teva Pharmaceuticals USA, Inc.*, 367 F.3d 1381, 1384 (Fed. Cir. 2004); *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1343 (Fed. Cir. 2013) (examining "*how*" each "limitation changes the invalidity analysis").

To apply collateral estoppel, the Third Circuit requires "(1) the issue sought to be precluded

[is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Karns v. Shanahan*, 879 F.3d 504, at 514 n.3 (3d. Cir. 2018). Under the first factor, "[i]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same." *B & B Hardware v. Hargis Indus.*, 575 U.S. 138, 154 (2015); *SkyHawke Techs. v. Deca Int'l*, 828 F.3d 1373, 1376 (Fed. Cir. 2016); *TRUSTID, Inc. v. Next Caller*, 2021 WL 3015280, at *3 (D. Del. July 6, 2021).

### B.  Process Claims and Product-by-Process Claims Have Fundamentally Different Validity Analyses, Yet Both Require Factual Determinations

Process claims and product-by-process claims have materially distinct validity analyses. *See, e.g., Torpharm, Inc. v. Ranbaxy Pharmas.*, 336 F.3d 1322, 1329-30 (Fed. Cir. 2003) (holding invalid product claims could not collaterally estop process claims). At the outset of any validity analysis, the claims first must be construed to properly determine the scope of the claim. *Markman v. Westview Instruments*, 52 F.3d 967, 996 n.7 (Fed. Cir. 1995).  To determine validity of process claims, courts conduct a "fact-intensive comparison of the claimed process with the prior art." *In re Ochiai*, 71 F.3d 1565, 1571 (Fed. Cir. 1995).  Each process limitation must be taught by the prior art. The validity of product-by-process claims is analyzed based on the claimed product as impacted by the recited process. The trier of fact must determine—as a matter of fact—whether process limitations, which expressly define the product, impart structural or functional differences to the claimed product. *See Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1367, 1370 (Fed. Cir. 2009). When limitations "impart[] structural and functional differences distinguishing the claimed product from the prior art, then those differences are relevant as evidence" to the obviousness inquiry. *Greenliant Sys., Inc. v. Xicor LLC*, 692 F.3d 1261, 1268 (Fed. Cir. 2012) (internal quotes omitted). Once the claims have been properly construed, to assess if collateral

estoppel applies, the fact finder must determine:

> whether the nonlitigated claims present new issues as to the art pertinent to the nonlitigated claims; as to the scope and content of that art; as to the differences between the prior art and the nonlitigated claims; and as to the level of ordinary skill in that art. If none of these inquiries raises any new triable issues, then the obviousness determination in the prior proceeding should be equally applicable to the nonlitigated claims.

*Westwood Chem., Inc. v. United States,* 525 F.2d 1367, 1375 (Ct. Cl. 1975).

## VI.   ARGUMENT

### A.   Liquidia's Motion is Procedurally Barred

#### 1.   Liquidia Failed to Timely Disclose its Collateral Estoppel Defense

Collateral estoppel is "an affirmative defense ordinarily lost if not timely raised." *Arizona v. California*, 530 U.S. 392, 410, 120 (2000).  Liquidia never articulated a collateral estoppel challenge in its answer or invalidity contentions.  This motion should be denied on this independent basis alone.  *See Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971) ("collateral estoppel [is] [an] affirmative defense[] that must be plead[]. Fed. Rule Civ. Proc. 8(c)."); *Jackson Jordan, Inc. v. Plasser Am. Corp.*, 747 F.2d 1567, 1578 (Fed. Cir. 1984) ("If . . . there was a failure to plead collateral estoppel, we question the equity of interjecting this issue at a late stage of trial[.]").

#### 2.   Liquidia Failed to Provide an Adequate Explanation of its Defense

As noted above, the relevant question is whether differences in the asserted claims materially impact the previously-adjudicated invalidity analysis, but Liquidia has not clearly identified the specific ground of invalidity that it relies upon. Rather, Liquidia argues that the asserted patents are "invalid over the Moriarty grounds presented in the '393 FWD."  Br. 14. Yet, the '393 IPR was not instituted on a single reference Moriarty ground ('393 FWD at 7), and the '393 patent was not held to be anticipated by Moriarty (*id.* at 43).  Liquidia admits as much.  Br. 5.  Here, Liquidia has never contended that any prior art publication anticipates the asserted

patents.  Any such argument first raised in reply has been forfeited.  There can be no collateral estoppel where Liquidia has not identified a specific basis of invalidity previously adjudicated and, at best, has articulated an invalidity argument never before raised, whether in this litigation or the '393 IPR.

### B. Liquidia Addressed the Wrong Question and Has Not Proved That "the Issue of Invalidity Common to Each Action is Substantially Identical"

"[T]he correct standard for whether collateral estoppel applies in a patent case is not whether the claims are substantially identical, but 'whether the issue of invalidity common to each action is substantially identical.'" *Purdue Pharma L.P. v. Mylan Pharms. Inc.*, 2017 WL 2569604, at *1 (D. Del. June 13, 2017) (quoting *Westwood Chem.*, 525 F.2d 1367 at 1372). Rather than analyze *how* "the differences between the unadjudicated patent claims and adjudicated patent claims" impact the validity analysis, Liquidia erroneously focuses on the *similarities* between the claims at-issue. D.I. 282 at 5 ("The '066 and '901 patents describe and claim the same treprostinil product made by the same process as the '393 patent."); *see also id.* at 6, 7, 11-13, 15-17, 19. Liquidia's failure to address the how is fatal to its argument. *Willow Wood*, 735 F.3d at 1342. Only by ignoring unique claims can Liquidia argue—over fifty times—that all the subject matter is the "same." Merely saying it, *ad nauseum*, does not make it so. Even if asserted claims cover the "same product" as the '393 patent claims, that is not the legally relevant inquiry; the '393 patent is not prior art. *See Interconnect Planning Corp.*, 774 F.2d at 1137 ("The original claims, whether valid or invalid, are not prior art").

Notably, courts do "not read *Willow Wood* to relieve [the movant] for summary judgment of invalidity . . . asserting the collateral estoppel effect of a prior judgment, from the various burdens it must bear to prevail on that motion." *Horizon Med. v. Dr. Reddy's Labs.*, 2021 WL

616067, at *3 (D.N.J. Feb. 17, 2021).[4] Liquidia's failure to prove by clear and convincing evidence that the claim limitations of the '066 and '901 patents "do not materially alter the question of validity" is dispositive. These differences materially alter the question of validity and preclude summary judgment.

### C.   Differences Between the Claims and Evidence Impact the Validity Analysis and Raise New Triable Issues of Material Fact

#### 1.   The Process/Method Claims Require a Materially Different Validity Analysis

The '393 IPR panel considered only product-by-process claims, a special class of product claims, and never considered the process and method limitations at issue in this case: claim 8 of the '066 patent and claim 6 of the '901 patent. By law, the Board ignored any process steps in the previously adjudicated product claims unless those processes explicitly defined the product or imparted structural limitations on the claimed product. *E.g.*, '393 FWD at 28-29 (explaining the "general rule" of focusing on the product and not the process of making it); *A.K. Stamping Co. v. Instrument Specialties Co.*, 106 F.Supp.2d 627, 661 n.8. Every limitation of the process claims must be considered, regardless of impact on the final product. *Purdue Pharma*, 2017 WL 2569604, at *1. Further, limitations not present in the '393 patent claims include:

"A process of preparing a pharmaceutical product" . . . by "forming a salt of treprostinil stable at ambient temperature, storing the Treprostinil salt at ambient temperature, and preparing a pharmaceutical product from Treprostinil salt after storage" ('066 Patent, Cl. 8)

"A method of preparing a pharmaceutical product from a pharmaceutical batch as claimed in claim 1, comprising storing a pharmaceutical batch of a salt of treprostinil as claimed in claim 1 at ambient temperature, and preparing a pharmaceutical product from the pharmaceutical batch after storage." ('901 patent, Cl. 6)

The fact that that these limitations must be considered is fatal to Liquidia's collateral estoppel

---

[4] In *Willow Wood* it was "without dispute" that the asserted claims were not materially different from the invalidated claims. *Willow Wood*, 735 F.3d at 1342.  Here, there is very much a dispute; the claims are undeniably different in scope.

argument, especially at summary judgment. The issues are simply not the same.

Liquidia states blithely that "the additional limitations regarding storing . . . at ambient temperature and preparing . . . after storage . . . do not materially alter the question of invalidity *because* these claims are still *substantially similar* to the invalidated claims—all require the process steps of alkylation, hydrolysis, and salt formation." Br. (D.I. 292) at 19 (emphasis added, internal quotes omitted). Liquidia cannot prove sameness of the invalidity analysis by highlighting similarity and ignoring distinctions in the claims. *See Purdue Pharm.*, 2017 WL 2569604, at *1 ("the correct standard for whether collateral estoppel applies in a patent case is not whether the claims are substantially identical"). The issue is not the similarity but whether the additional limitations materially alter the validity analysis. *Id.* Neither Liquidia nor the '393 IPR examined the "stab[ility]," "temperature," "storing" and "preparing" limitations in light of the prior art. '066, Cl. 8; '901, Cl. 6. To be clear, the relevant validity analysis is to the prior art, not the '393 patent. *See Bourns, Inc. v. U. S.*, 537 F.2d 486, 493 (Ct. Cl. 1976) ("A domino approach in which each successively narrower claim is compared with the one before it, not with the prior art, is inappropriate since it improperly gives prior-art effect to the subject matter of an invalid claim.").

Similarly, Liquidia argues that "the 'storage' limitation is an inherent property of the claimed product of the '066, '901, and '393 patents" Br. (D.I. 292) at 19-20. But, again, the '393 patent is not prior art. *See Interconnect Planning Corp.*, 774 F.2d at 1138 ("The invention must be viewed not with the blueprint drawn by the inventor, but in the state of the art that existed at the time"). The '393 Board never considered "storage" when adjudicating the issue of validity in the '393 IPR. Moreover, the question of "inherency" in the prior art—which Liquidia does not even allege—raises a genuine issue of material fact. *See Purdue Pharma L.P. v. Mylan Pharms. Inc.*, 2017 WL 784989, at *7 (D. Del. Mar. 1, 2017) ("A party must meet a high standard to rely on

inherency in establishing the existence of a claim limitation in the prior art in an obviousness analysis."); *Finnigan Corp. v. Int'l Trade Comm'n.*, 180 F.3d 1354, 1362 (Fed. Cir. 1999) ("Whether a claim limitation is inherent in a prior art reference . . . is also a question of fact."). Because the "stab[ility]," "temperature," "storing" and "preparing" limitations were never considered by the '393 IPR panel, the validity analysis is necessarily altered by the inclusion of these materially different limitations.

Liquidia's challenge also fails as a matter of fact. When evaluating collateral estoppel, "[w]here obviousness is the basis for the prior invalidity holding, an inquiry into the identity of the validity issue is more properly phrased in terms of the factual inquiries mandated by *Graham v. John Deere* [], as a prerequisite to such a validity determination." *Westwood Chem.* 525 F.2d at 1375. Accordingly, "the inquiry should be whether the nonlitigated claims present new issues as to [the *Graham* factors]." *Id.*; *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663 (Fed. Cir. 2000) (vacating obviousness finding because district court failed to make findings of fact and erred in failing to consider secondary considerations); *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1378 (Fed. Cir. 2005) (explaining the *Graham* "factual determinations" needed for a determination of obviousness). Liquidia ignores the *Graham* factors. These "factual determinations" uniformly and materially alter the validity analysis for the unadjudicated asserted process claims due to limitations not previously litigated, considered, or decided in the '393 IPR.

### 2.   Limitations Defining the Claimed Product Materially Alter the Validity Analysis

Liquidia takes the same legally impermissible shortcuts with the product-by-process claims as it does with the process claims. Liquidia ignores the factual *Graham* factors relating to the unadjudicated asserted claims and asserts that "*SteadyMed* decided the identical invalidity issue here." Br. (D.I. 292) at 12 (capitalization corrected). But the claims are undeniably different and,

in fact narrower. *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, No. 12-1138-SLR, n.34 (D. Del. Jun. 30, 2014) (holding "the issue of invalidity common to each action is not substantially identical" where new claims are narrower) (citation omitted)); *Msm Investments Co., LLC v. Carolwood Corp.*, 70 F.Supp.2d 1044, 1051 (N.D. Cal. 1999) (holding that narrower claims "raise new questions concerning the adequacy of the prior art to anticipate these claims"). Instead of analyzing whether the differences in the claims affect the invalidity analysis, Liquidia makes irrelevant assertions, like stating that the patents "share the same specification." *Id.* Liquidia has not and cannot prove—certainly not without resolving disputed issues of material fact—that the validity analysis is not materially impacted by the asserted claims containing limitations never addressed in the '393 IPR.

Limitations in the unadjudicated claims define the claimed product and are not "minor variations." Br. (D.I. 292) at 15.[5] These product limitations materially alter the validity analysis because the '393 IPR panel did not consider claims directed to the subject matter claimed in asserted claims, such as claim 1, and by dependency claims 2-7, of the '066 patent:

> A "pharmaceutical <u>composition</u>" . . . "providing a <u>starting batch of treprostinil having one or more impurities resulting from prior alkylation and hydrolysis steps</u>" . . . "<u>whereby a level of one or more impurities found in the starting batch of treprostinil is lower in the pharmaceutical composition</u>" ('066 Patent, Cls. 1-7).

Claim 1 of the '066 patent explicitly claims a "composition" whereby "a level of one or more impurities found in the starting batch of treprostinil is lower in the pharmaceutical composition," such that the structure of the composition is *required* to be different than it would have been had the patented process steps not been executed in accordance with the claimed invention.  Thus, the "product" claimed by claim 1 of the '393 patent is of a different scope than that of the '066 claim

---

[5] These allegedly "minor variations" were sufficiently material that the Board refused to institute an IPR of the '066 patent based on the same evidence and arguments allegedly giving rise to collateral estoppel. Flynn Dec. Ex. 6 at 13-15.

1. Similarly, claim 1 of the '901, and by dependency all asserted claims of the '901 patent, ensures that the claimed "batch" consists of "impurities." The '393 patent makes no mention of a "starting batch" and had no limitations concerning "impurities." Claim 1 of the '066 patent, however, requires measuring impurities at two different time points and "lower[ing] one or more impurities found in the starting batch"[6] through proper execution of the claimed process steps, thus ensuring the claimed composition has meaningfully improved impurity characteristics over what would have been possible using prior art methods.

The '393 IPR panel specifically determined that the "challenged claims contain no limitations relating to the impurity profile of the recited product, 'and it is the claims ultimately that define the invention.'" '393 IPR FWD at 18 (quoting *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006); *id.* at 42 ("We observe also that the '393 patent itself does not discuss any of the individual impurities"). Rather, the Board only examined the *purity* of the treprostinil molecule claimed in the '393 claims. As Liquidia's expert candidly admits "the notion of purity and impurity profile are different." Flynn Dec. Ex. 9 at 90:18-19, 84:8-92:2. Claims 1-7 of the '066 patent expressly include impurity limitations that improve the claimed composition's impurity profile. Thus, "the scope of [the] subsequent patent claim differs from that of a prior patent claim" such that "a new issue of patent validity exists[.]" *Evonik Degussa GmbH,* 35 F. Supp. 3d at 791-792.

Unlike the '066 claims 1-7, the '393 claims are agnostic to any particular impurity profile, thus requiring the trier of fact to examine the factual determinations of whether (1) the scope and content of the prior art concerning a pharmaceutical composition with a lower impurities resulting

---

[6] Liquidia (n.11) misunderstands Dr. Toste. It is not that infringement is limited to impurities in the "starting materials," rather Liquidia infringes because it lowers impurities from the "starting batch of treprostinil." The "starting materials" is not the "starting batch of treprostinil" and the claimed lowering of impurities reduces the impurities in the final product.

from a particular step; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) any secondary considerations. Even if the '393 claims *permit* impurities, the claimed products are not *limited* by those impurities (only "purity"). The limitations of the '066 patent's claims 1-7 are materially narrower than the '393 patent's claims—questions of *which* impurities exist, *how* those impurities were limited, and *what* impurities the claimed "product" would or would not include were not analyzed by the Board. The unadjudicated claims thus alter the validity analysis as compared to the validity inquiry performed by the Board.

Further, expert testimony establishes that new claim limitations capture structural and functional differences in the claimed products. Fawzi Dec.[7] Ex. 2 at 3. Limitations discussed above such as "lower[ing] one or more impurities found in the starting batch," "stab[ility]" and "storage" at "ambient temperature," impart differences in structure and function of the claimed product. For example, "treprostinil itself is a relatively unstable molecule," but treprostinil manufactured under the asserted claims is "much more chemically and thermally stable" and "greatly improved the purity of the final product." Flynn Dec. Ex. 3 at 27:17-34:5; 40:14-43:14; Walsh Dec. ¶¶ 10-12. Specifically, the asserted claims "boast[] numerous improvements" over the prior "Moriarty process" and resulting product providing "exceptionally pure treprostinil with a desirable impurity profile." Fawzi Dec. Ex. 2 at 30. These structural and functional differences in the treprostinil diethanolamine salt "formed in the process exhibited unexpected stability at ambient temperature in contrast to treprostinil itself, which is a compound requiring refrigeration or freezing temperatures for storage and transport." Fawzi Dec. Ex. 2 at 31. The fact that the product resulting from the prior art process would quickly degrade at ambient temperature such that it could not be stored for any practical purpose without refrigeration demonstrates the difference in structure and

---

[7] The Declaration of Mahdi Fawzi ("Fawzi Dec.") is filed concurrently with this brief.

function conferred by the claims of the '066 and '901 patents. *See* Walsh Dec. ¶¶10-12.

The asserted claims "provide[] a product with significantly greater total purity and [a]n improved impurity profile at commercially relevant scales compared to the prior art processes." Fawzi Dec. Ex. 2 at 41. In responding to Liquidia's expert's batch-to-batch analysis, Dr. Fawzi analyzed batches of treprostinil made by the inventors under a UTC-improved former process and batches made under the asserted patents.[8] Upon comparing these products, Dr. Fawzi concluded "there is a greater than 99.99% probability the overall purity" is "truly different" and "do not result from mere chance or batch-to-batch variation." Fawzi Dec. Ex. 2 at 34 (stating also, *e.g.*, the two "differ drastically with respect to the individual impurities in each product's impurity profile."). This analysis confirmed Dr. Fawzi's opinion that the claimed process and products that Liquidia's expert Dr. Winkler contended were representative of claim scope were in fact "structurally distinct from the prior art product." *Id.* at 35. Notably, Liquidia argues there is no difference between the prior art product and the claimed product, ████████████████████████████████ ████████████████████   ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████. *See* Flynn Dec. Ex. 14 at 92:23-93:6; Flynn Dec. Ex. 13 at 44-47.

Dependent claims 2-7 further limit the claimed "pharmaceutical composition" manufactured in claim 1 by adding additional limitations that materially alter the validity analysis as compared to the analysis performed by the '393 Board. For example, claim 2 further requires that the claimed composition "salt is isolated in crystalline from"; claim 3 further requires that the claimed composition "base is selected from the group consisting of sodium, ammonia, potassium,

---

[8] The validity analysis may not use the contributions of the inventors based on their own patent's disclosure. *Interconnect Planning Corp.*, 774 F.2d at 1138.

calcium, ethanolamine, diethanolamine, N-methylglucamine, and choline"; claim further 4 requires the claimed composition "base is diethanolamine"; claim 5 further requires the claimed composition "base is combined with treprostinil that has not been previously isolated"; claim 6 further requires the claimed composition "isolated salt is stored at ambient temperature"; and claim 7 further requires the claimed composition "is a pharmaceutical solution." Each of these limitations further narrow the scope of claim 1 and further narrow the structure of the claimed pharmaceutical composition recited in claim 1.

To assess the validity of these composition claims, the trier of fact must make factual determinations relevant to the obviousness inquiry. *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1378 n.6 (Fed. Cir. 2008) ("What a prior art reference discloses is, of course, a question of fact"). The '393 Board never considered any of these limitations either in the context of the "product" claimed in the '393 patent or in the context of the distinct "pharmaceutical composition" claimed in the '066 patent. Accordingly, the validity analysis of these claims is materially different than what was previously litigated, considered or decided by the '393 Board.

Independent claim 8 of the '066 patent (discussed above) is a process claim and claim 9 claims the resulting product. By "forming a salt of treprostinil stable at ambient temperature" the claims explicitly require that the claimed product is of sufficient structure and purity to not degrade at higher temperatures than would be possible with a prior art product. *See* Flynn Dec. Ex. 3 at 32:7-14; Walsh Dec. 10-12. This is due to the structure of the prior art material, which degrades by forming dimers of the treprostinil compound when exposed to ambient or elevated temperature, leading to more impurities and less yield for the ultimate pharmaceutical product. *Id*. Such an increase in impurities over time due to degradation is drastically minimized, if not negated, by claim 8's process limitations, allowing for claim 9's meaningfully more pure and stable product.

Rather than proving by clear and convincing evidence that the different claim limitations have no import, Liquidia asserts that "all three patents claim the same product". Br. (D.I. 292) at 11. The claims, however, require specific "impurities" to be "lower" in the claimed "pharmaceutical composition" ('066 Patent, cls. 1-7) and that the claimed intermediate salt of treprostinil be stable at "ambient temperature" (*id.* cls. 8-9). These are structural and functional restrictions upon the product itself and therefore alter the required validity analysis. Moreover, it is Liquidia's burden to prove that the question of validity is "substantially identical" to that adjudicated in the '393 IPR. Liquidia did not even attempt that analysis.

The fact that UTC informed FDA that the treprostinil drug substance it manufactures under the new process is pharmaceutically "equivalent" to treprostinil manufactured by UTC using the prior process fails to establish that the claimed products are the "same." *Cf.* Br. (D.I. 292) at 14, 14 n.10. First, pharmaceutical equivalence and patent claim scope are different concepts; the quality of an active pharmaceutical ingredient can be acceptable in the eyes of the FDA's safety and toxicity framework, while still falling outside of a given patent claim directed towards that API. Thus, equivalence in FDA's eyes says nothing about identicality of patent claim scope. *See* Flynn Dec. Ex. 10 Fawzi Dec. ¶¶8-12. Second, there is ample evidence that "analytically, there is a differentiation" between the treprostinil pharmaceutical products manufactured using the prior process compared to the patented processes.[9] Flynn Dec. Ex. 10 at 266:21-267:3; *see also* Fawzi Dec.; Flynn Dec. Ex. 3 at 28:16-19, 29:10-11, 30: 19-20, 32:7-14, 32:18-33:20, 41:9-12, 44:15-45:2, 71:11-18 ("Salt formation got rid of almost all observable and known impurities"); *see also*

---

[9] Liquidia says because the '393, '066 and '901 patents were all Orange Book listed, "UTC cannot now contend that the 'drug substance' . . . is different among the three patents." Br. at 13. Claims of varying scope can all cover the same drug substance without collapsing into identical claims. For example, a table could meet claims requiring "an end table," "a dining table," and a "foosball table," but that does not mean each of those claimed tables are identical.

Walsh Dec.; Flynn Dec. Ex. 11 at 80:9-20, 346:15–347:1, 347:15-348:4; 350:15-20 ("we have improved our [FDA] specification. … [T]he assay for treprostinil is 98 to 102. Earlier it was 97 to, I believe, 101. So that itself is a change, and that must have gone through a reapproval.").

### 3. Determining the Level of Skill in the Art and Addressing Secondary Considerations Preclude Collateral Estoppel

Without a determination of a POSA's level of skill "a district court cannot properly assess obviousness." *Custom Accessories, Inc. v. Jeffrey-Allan Indus.*, 807 F.2d 955, 962 (Fed. Cir. 1986); *Westwood Chem.* 525 F.2d at 1375. Determining a POSA's level of skill turns on several subsidiary issues of fact. *See Daiichi Sankyo Co., Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007) (examining, *e.g.*, inventor's experience, types of problems in the art, prior art solutions).

The asserted patents are directed to controlling impurities and stability when "synthesi[zing] [treprostinil] on a large scale suitable for commercial production." '066 patent, 1:66-2:3. UTC argues a POSA is "an experienced chemical engineer or process research chemist." Fawzi Dec. Ex. 2 at 12; Walsh Dec. ¶¶ 1-9. Liquidia disagrees. This dispute dictates whether the POSA views the specification, claim scope, and prior art with an eye toward real-world manufacturing concerns or from eyes within the ivory tower.  Especially when compared to the '393 patent, where the reduction of impurities in, and stability of, the API composition is explicitly claimed. Similarly, the commercial success was not at-issue in the '393 IPR and is disputed here. *Ruiz*, 234 F.3d at 667. These threshold issues of genuine material fact preclude summary judgment.

## VII.   **CONCLUSION**

For the foregoing reasons, UTC respectfully requests that the Court deny Liquidia's motion for summary judgment of invalidity of the '066 and '901 patents for collateral estoppel. The motion requires resolution of disputed material facts, and UTC should be entitled to defend the validity of the claims in the imminent trial rather than be estopped based on materially different claims.

OF COUNSEL:

William C. Jackson
GOODWIN PROCTER LLP
1900 N Street NW
Washington, DC 20036
(202) 346-4216

Douglas H. Carsten
Arthur Dykhuis
Jiaxiao Zhang
Katherine Pappas
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA 92612
(949) 851-0633

Adam W. Burrowbridge
Joshua Revilla
Timothy M. Dunker
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8000

Bill Ward, Ph.D.
BOIES SCHILLER FLEXNER LLP
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
(213) 995-5745

January 28, 2021

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff United Therapeutics Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 28, 2022, upon the following in the manner indicated:

Karen E. Keller, Esquire                                      *VIA ELECTRONIC MAIL*
Jeff Castellano, Esquire
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

Sanya Sukduang, Esquire                                    *VIA ELECTRONIC MAIL*
Jonathan Davies, Esquire
Douglas W. Cheek, Esquire
Adam Pivovar, Esquire
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004-2400
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

Erik Milch, Esquire                                          *VIA ELECTRONIC MAIL*
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA  20190-5640
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

Ivor Elrifi, Esquire                                         *VIA ELECTRONIC MAIL*
COOLEY LLP
55 Hudson Yards
New York, NY  10001-2157
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

Lauren Krickl, Esquire                                    *VIA ELECTRONIC MAIL*
Deepa Kannappan, Esquire
Brittany Cazakoff, Esquire
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*


                                        */s/ Michael J. Flynn*
                                        _____
                                        Michael J. Flynn (#5333)