IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 20-755 (RGA) |
| v. | ) ) | REDACTED - PUBLIC VERSION |
| LIQUIDIA TECHNOLOGIES, INC., | ) ) | |
| Defendant. | ) | |

**PLAINTIFF UNITED THERAPEUTICS CORPORATION'S BRIEF
IN SUPPORT OF MOTION FOR PRESUMPTION UNDER 35 U.S.C § 295**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

OF COUNSEL:

William C. Jackson
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue NW
Washington, DC 20005
(202) 237-2727

*Attorneys for Plaintiff United Therapeutics
Corporation*

Bill Ward
BOIES SCHILLER FLEXNER LLP
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017
(213) 995-5745

Douglas Carsten                    Adam W. Burrowbridge
Art Dykhuis                        Joshua Revilla
Jiaxiao Zhang                      Timothy M. Dunker
Katherine Pappas                   MCDERMOTT WILL & EMERY LLP
MCDERMOTT WILL & EMERY LLP         The McDermott Building
18565 Jamboree Road, Suite 250     500 North Capitol Street
Irvine, CA 92615                   Washington, DC 20001-1531
(949) 851-0633                     (202) 756-8797

Originally Filed: February 22, 2022
Redacted Version Filed: March 8, 2022

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ................................................... 2

III.    SUMMARY OF ARGUMENT .................................................................................... 2

IV.     STATEMENT OF FACTS .......................................................................................... 3

        A.      Liquidia Opposed UTC discovery of the actual process through
                Interrogatories and RFPs requesting intermediate samples ..................... 4

        B.      Liquidia opposed UTC's discovery of the actual process from API
                manufacturer Yonsung under the Hague Convention ............................. 6

        C.      Liquidia opposed UTC's discovery of the actual process through
                deposition of Liquidia witnesses, including 30(b)(6) testimony ........... 8

        D.      Liquidia opposed UTC discovery of the actual process through subpoenas
                of third-party API broker LGM ......................................................... 10

        E.      Liquidia *continues* to produce only handpicked self-serving Yonsung
                documents beyond the close of fact discovery ................................... 11

V.      LEGAL STANDARD ................................................................................................ 12

VI.     ARGUMENT .............................................................................................................. 13

        A.      There is a "Substantial Likelihood" That Liquidia's Proposed Product is
                Made By the '066 Patented Process ..................................................... 13

                1.      Liquidia's Proposed Product is Made by Claims 1, 2, 3 and 6 ............... 13

                2.      Liquidia's Proposed Product is Made by Claims 8 and 9 ...................... 16

        B.      UTC's Reasonable Efforts to Determine the Actual Manufacturing Process
                of Liquidia's Proposed Product were Ultimately Unsuccessful ................ 18

        C.      Liquidia's Refusal to Cooperate by Securing Discovery of Yonsung's
                Accused Process Prejudiced UTC Supporting Burden Shifting Under §
                295 ................................................................................................... 19

VII.    CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Creative Compounds, LLC v. Starmark Lab'ys,*
   651 F.3d 1301, 1314 (Fed. Cir. 2011) ........................................................................ 13

*Dasso Int'l, Inc. v. MOSO N. Am., Inc.,*
   C.A. No. 17-1574-RGA, 2021 WL 4427168 (D. Del. Sept. 27, 2021) ....................... 12, 18, 19

*LG Display Co. v. AU Optronics Corp.,*
   709 F. Supp. 2d 311 (D. Del. 2010) .................................................................... 12, 13

*Nutrinova Nutrition Specialties and Food Ingredients GmbH v. Int'l Trade Com'n,*
   224 F.3d 1356 (Fed. Cir. 2000) ......................................................................... 12, 20

**STATUTES**

35 U.S.C. § 295 ..................................................................................................... 1

## I.    INTRODUCTION

This is the quintessential Section 295 case. Plaintiff United Therapeutics Corporation ("UTC") has alleged infringement of the '066 patent titled "Process To Prepare Treprsotinil[.]" UTC alleges that the manufacturing process for Liquidia's treprostinil product LIQ861 ("Proposed Product"), as well as the Proposed Product itself, infringes the '066 patent. UTC left no stone unturned in its effort to discover the actual manufacturing process for the Proposed Product. UTC diligently sought to investigate that process from its first written discovery requests served over sixteen months ago through the relevant third-party fact depositions completed last month. At every turn Liquidia opposed UTC's discovery efforts, using its foreign third-party supplier as a shield to discovery, while simultaneously obtaining other favorable documents from that third party, and thus using the third party as a discovery sword as well.

The result is an unlevel playing field where Liquidia represents that it has "no corporate knowledge" concerning the process used to make its Proposed Product and the only entity that possesses this knowledge—i.e. Yonsung Fine Chemicals Co., Ltd. ("Yonsung"), Liquidia's supplier—is outside the Court's discovery powers and UTC's reach. Despite its best efforts, UTC has been unable discover the actual process accused of infringement. UTC's diligence has, however, resulted in the production of a limited number of manufacturing records. While insufficient to determine the actual process used by Liquidia to make its Proposed Product, the documents are sufficient to show, at minimum, a "substantial likelihood" of infringement. UTC moves conditionally to shift the burden of proof on infringement of the '066 patent to Liquidia under 35 U.S.C. § 295. The plain language of the statute and the facts of this case compel shifting the burden of proof to Liquidia, and requiring Liquidia to bear "the burden of establishing that [its] product was not made by the ['066 patent's] process[.]" 35 U.S.C. § 295.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

In June 2020, UTC initiated this lawsuit alleging that Liquidia's Proposed Product infringes UTC's U.S. patents covering Tyvaso®, including U.S. Patent No. 9,593,066 (the "'066 patent"). Fact depositions relevant to this motion were recently taken. Trial is set for March 28, 2022.

## III.     SUMMARY OF ARGUMENT

UTC is entitled to the statutory presumption that Liquidia's product is made by the processes claimed in the '066 patent. Under Section 295, the burden of proving infringement shifts from the patentee to the accused infringer when there is a "substantial likelihood" the accused product was made by the patented process and the patentee has made a "reasonable effort" to determine the process actually used. Both conditions are more than satisfied here.

First, UTC is able to show a "substantial likelihood" that Liquidia's Proposed Product was made by the '066 patented process. The active pharmaceutical ingredient ("API") for Liquidia's Proposed Product is manufactured by Yonsung in Korea and is outlined in the DMF that Yonsung filed with the FDA. Dr. Toste analyzed available portions of Yonsung's Drug Master File ("DMF"), No. 27680, as well as available batch-specific analytical data to assess Yonsung's synthetic process and whether Yonsung's testing data made available to UTC shows infringement. Dr. Toste concluded that Yonsung's manufacturing process meets the limitations of claim 1 of the '066 patent at least with respect to 15-*epi*-treprostinil. For the same reasons, at least the preamble of dependent claims 2, 3, and 6 use the '066 patented process. *See* Toste Dec.[1] and Exs. 1-3 thereto. Utilizing a different method of analyzing the limited data available, Dr. Colin Nuckolls offered opinions on infringement of all asserted claims of the '066 patent (claims 1-3, 6, 8-9). *See* Flynn

---

[1] The Declaration of F. Dean Toste, Ph.D. ("Toste Dec."), the Declaration of Michael Flynn ("Flynn Dec."), and the Declaration of John Kim ("Kim Dec.") are filed concurrently with this brief.

Dec. Ex. B at ¶¶ 1-5; *see also* Flynn Dec. Ex. C at 1-6.

Second, despite UTC's reasonable efforts to determine the process used to make Liquidia's Proposed Product, UTC was unable to determine the actual process used. For example, Liquidia failed to provide documents sufficient to show each impurity present throughout the steps of its manufacturing process. Despite UTC's best efforts it was unable to determine where each impurity is generated and reduced/removed during the manufacturing process that synthesizes Liquidia's treprostinil sodium API.[2] Similarly, despite its reasonable efforts, UTC was only able to secure limited information concerning the storage temperatures used throughout the manufacturing and shipping of Liquidia's Proposed Product—all issues relevant to infringement of the '066 claims.

Third, UTC is prejudiced by Liquidia's refusal to cooperate in securing meaningful discovery concerning the accused process. Liquidia resisted meaningful discovery concerning its foreign manufacturer and third-party partners throughout this litigation, and thwarted UTC's efforts at every turn. Liquidia acquiesced only after numerous interventions from this Court. Even then Liquidia used the foreign and third-party status of its partners as a shield to UTC obtaining meaningful discovery and also a sword allowing Liquidia to obtain the documents necessary to its claims. Such prejudice is why § 295, along with other discovery sanctions, exist.

## IV.    STATEMENT OF FACTS

The API used in Liquidia's Proposed Product is manufactured by Yonsung, a third-party based in the Republic of Korea. *See* D.I. 120. A "very high level" description of the process to manufacture the API of the Proposed Product is described in Yonsung's DMF. *See also* Flynn Dec. Ex. D at 30:18-31:9. This description is insufficient to determine the actual process used by

---

[2] Liquidia contends that the synthetic origin of the accused impurity itself must be known in order to establish infringement.  *See* Toste Dec. at ¶¶ 12-13.

Yonsung because it is not determinative of key aspects of the process. For example, the '066 patent include limitations regarding the reduction of impurities and regarding storage of the API during manufacture of the pharmaceutical product.  Those details are not found in the DMF.

**A.    Liquidia Opposed UTC discovery of the actual process through Interrogatories and RFPs requesting intermediate samples**

Over sixteen months ago, on October 1, 2020, UTC served written requests for production ("RFPs") on Liquidia seeking discovery of the process for manufacturing the Proposed Product including seeking samples of the ███████████████ Flynn Dec. Ex. E at *e.g.*, RFP Nos. 2, 7, 15, 41, 55, 56. Liquidia refused to provide documents sufficient to show the actual process or samples of ████ Flynn Dec. Ex. F at 3. After months of correspondence, in January 2021, UTC sought a definitive response regarding the ████ "[b]ecause it relates to the potential for international discovery." Flynn Dec. Ex. G at 6. Liquidia responded in relevant part that "UT incorrectly maintains that Liquidia has an obligation to produce samples of Yonsung's ████ which Liquidia has repeatedly explained are outside of its possession, custody or control." Flynn Dec. Ex. H at 2. UTC promptly met and conferred with Liquidia. *See* Flynn Dec. Ex. G at 2-5.

Because Liquidia refused to provide UTC the requested ████ UTC sought discovery directly from Yonsung through the Hague convention. *See* Kim Dec. Given the known difficulties of receiving discovery through the Hague, UTC continued its efforts to obtain discovery from Liquidia regarding details of Yonsung's process for synthesizing API for the Proposed Product. At first, Liquidia's ability to request and receive documents from Yonsung seemed promising. However, as described below, after 6 months of attempting to discover the actual process Yonsung uses, it became clear that Liquidia was only willing to provide self-selected documents.

On March 4, 2021, UTC propounded a set of interrogatories to Liquidia, which sought (in relevant part) information regarding synthesis and testing of the treprostinil API and intermediates,

relationships among Liquidia and third parties (including Yonsung), and impurities testing. *See* Flynn Dec. Ex. I, at Nos. 3, 5, 7, 8, 10. Liquidia's initial responses to these interrogatories largely deferred to *68,120 pages* of "documents from which UTC may ascertain the information responsive to this interrogatory." *See* Flynn Dec. Ex. J at 4. Despite its volume, the production was largely non-responsive to contested issues. Liquidia's "supplementation" nearly 6 months later (after close of fact discovery) was similarly unhelpful. *See, e.g.*, Flynn Dec. Ex. K at 4-5 (string-citing further documents under Rule 33(d) without explanation); *see also id.,* Ex. L at 3 (Ultimately explaining; Liquidia "does not possess sufficient information" to identify impurities resulting from recited steps from manufacture of the API—nor individuals with knowledge).

On March 29, 2021, UTC propounded another set of RFPs to Liquidia, seeking documents concerning impurity testing in intermediates from Yonsung's API synthesis, as well as specific documentation regarding *inter alia* purification steps and batch-naming conventions. *See* Flynn Dec. Ex. M, at Nos. 68-77. Contemporaneously, UTC emailed Liquidia because Liquidia had still not produced documents it agreed to provide in response to RFPs served in October 2020 (6 months prior). *See* Flynn Dec. Ex. N at 7-9. UTC followed up on April 9, providing further clarification of UTC's concerns that, for example, UTC had not received the entirety of Yonsung's DMF (*see* Flynn Dec. Ex. N at 3-5), and that Liquidia had not produced batch documentation reflecting impurity testing on intermediates ██████████████ from the manufacture of API for Liquidia's Proposed Product (*id.* at 7). UTC followed up again on April 19 requesting a response (*id.* at 4), and Liquidia replied that it had produced "portions" of the DMF and testing documentation within its possession, custody or control (*id.* at 3). On April 26, UTC sought a meet-and-confer, stating that UTC may pursue discovery directly from Yonsung via the Hague process. Flynn Dec. Ex. N at 2.

-5-

## B. Liquidia opposed UTC's discovery of the actual process from API manufacturer Yonsung under the Hague Convention

Based on Liquidia's refusal to provide meaningful discovery of the synthesis and manufacturing process for its Proposed Product, UTC moved for issuance of a Letter of Request pursuant to the Hague Convention on April 30, 2021. This initial request sought documents, samples and/or inspection, and testimony from knowledgeable Yonsung employees. *See* D.I. 81, 82 (Motion and Brief ISO, "Hague Motion"). Finally, only after UTC sought relief from the Court, and after it endured the time and expense of preparing and filing its Hague Motion, Liquidia produced a limited set of documents Liquidia had obtained from Yonsung. Liquidia's apparent effort to moot the Hague Motion included only *some* analytical information for an inexplicable selection of batches and included only select sections of the DMF rather than a complete DMF. Rather than mooting the Hague Motion, Liquidia's production confirmed that Yonsung maintains the type of batch-specific analytical testing UTC had sought for over 6 months. It also showed that Liquidia *was* able to obtain such documents directly from Yonsung upon request. *See* D.I. 99 (UTC Reply ISO Hague Motion) at 3. However, the limited batch-specific analytical documents produced were insufficient to ascertain which intermediate sample's analytics corresponded with which ultimate batch of treprostinil sodium—preventing UTC from assessing the actual process employed to manufacture treprostinil for Liquidia's Proposed Product. UTC was forced to seek such information from Yonsung in Korea through the Hague Convention.

Rather than cooperate with that effort, Liquidia opposed UTC's Hague Motion. D.I. 83. On May 24, 2021, the Hague Motion was referred to Judge Hall (D.I. 100), who ordered the parties to confer further to "narrow[]" the request "and/or reduce the burden on the third party and/or the foreign court". D.I. 107. During the ensuing meet-and-confers, Liquidia reiterated its position that it had already met its discovery obligations under Federal Rules. At the same time, Liquidia stated

that if UTC did not withdraw its Hague Motion that Liquidia would no longer facilitate *any* discovery from Yonsung. Liquidia's demand to provide *only* those documents Liquidia selected was untenable. Consistent with Judge Hall's instructions, UTC sought to narrow the requested discovery to minimize burden on Yonsung and the Korean National Court Administration ("NCA"). *See* D.I. 120 (UTC's Letter Brief).

Because assessing infringement of the '066 Patent's claim 1 requires comparing impurity levels between two different points in manufacturing, UTC needed, at minimum, to compare data from a given "starting batch of treprostinil" ███████ with its corresponding batch of pharmaceutical composition (████. Liquidia agreed that, on the condition that UTC drop its deposition questions to Yonsung, Liquidia would provide a table linking undecipherable ██████ batch numbers with the corresponding ████ batches. In order to obtain this necessary information UTC agreed to remove deposition questions (*see* D.I. 107) and propounded the interrogatory to Liquidia, plus one seeking names of any Liquidia employee that could provide supporting testimony. *See* Flynn Dec. Ex. O.[3] Liquidia's subsequent response to this interrogatory identified only the Yonsung CEO, leaving UTC with no domestic deponent to provide testimony—but again confirming Liquidia's ability to obtain information from Yonsung upon request. Flynn Dec. Ex. P at 6.

On June 21, 2021, the Court granted UTC's Hague Motion (D.I. 123) and then on July 14, 2021, sent the relevant materials to the responsible Korean judicial agency. *See* Kim Dec. at ¶¶ 6, 8. On October 14, 2021, UTC's Korean counsel was informed that the NCA had denied UTC's Letter Request in its entirety. *Id.* at ¶ 17; *see also* D.I. 215.

---

[3] Liquidia's response was "based solely upon the agreement between Liquidia and UTC made in conjunction with narrowing the discovery UTC is seeking from Yonsung in UTC's Hague Request and is not an implicit or explicit concession or admission that individuals employed by Liquidia have access or knowledge regarding the subject matter…" Flynn Dec. Ex. P at 3, 6.

**C.      Liquidia opposed UTC's discovery of the actual process through deposition of Liquidia witnesses, including 30(b)(6) testimony**

While the Hague efforts were ongoing, UTC also pursued domestic discovery of the process used to manufacture Liquidia's Proposed Product. On August 18, 2021, UTC served a Rule 30(b)(6) deposition notice, seeking corporate testimony from Liquidia regarding, *inter alia*:

- "contents of any Drug Master File referenced in Liquidia's NDA" (¶9)
- "the identification, characterization, and properties of each starting, intermediate, and end product (including each regulatory starting material) involved in the manufacture of the product subject to Drug Master File No. 27680" (¶11)
- "[t]he active pharmaceutical ingredient contained in Liquidia's NDA Product and the synthesis and properties thereof" (¶13)
- "[t]he manufacturing process for the products that are the subject of DMF" (¶16)
- "Impurities resulting from alkylation and hydrolysis steps in the manufacturing process described in Yonsung's DMF No. 27680, including their levels or quantities at each stage of manufacturing of Liquidia's NDA Product and its API, and efforts to characterize and quantify those impurities." (¶17)
- "[s]torage and holding conditions at every step of the manufacturing process for Liquidia's NDA Product and its API" (¶18)
- "[t]he holding, storage, and transportation conditions for treprostinil sodium and Liquidia's NDA Product" (¶19)
- "in-process-control and final product testing conducted in the manufacturing process for the products that are the subject of Drug Master File No. 27680" (¶20).

D.I. 165 ¶¶ 9, 11, 13 16, 17 18, 19, 20. Liquidia refused to designate a corporate witness on the scope of these topics and maintained that it "does not have corporate knowledge" regarding Yonsung's DMF and the manufacturing process of its API in Korea. *See* D.I. 179 (UTC letter brief regarding 30(b)(6)). UTC continued to press Liquidia for discovery of Yonsung's process and in September (after the close of fact discovery), Liquidia argued in briefing to the court:

> UTC cannot place blame on Liquidia if it cannot meet its burden of proof . . . Liquidia has never manufactured treprostinil sodium, no Liquidia employee has had access to the restrict portions of Yonsung's DMF, and no Liquidia employee has knowledge of Yonsung's process such that corporate testimony can be provided as to the impurities, synthesis, and manufacture of the API[.]

D.I. 181. Liquidia agreed to provide a declaration that it had no corporate knowledge of these

topics (*see* Sept. 22, 2022 Hrg. Tr. at 41:10-61:4), and two days later UTC provided a draft declaration to Liquidia to that effect. *See* Flynn Dec. Ex. Q at 11-12, and Ex. R. However, Liquidia reneged (*see* Flynn Dec. Ex. Q at 4-11); ultimately sending UTC a letter reiterating that Liquidia lacked knowledge. Ex. Flynn Dec. S at 1 ("regarding Yonsung DMF and the process Yonsung performs in Korea[,] [w]e repeatedly stated that Liquidia does not have corporate knowledge"). Rather than signing the proposed declaration acknowledging Liquidia's lack of corporate knowledge (Flynn Dec. Ex. R), after the close of fact discovery and only the ***week before*** UTC's opening infringement expert reports were due, Liquidia agreed to provide a representative to testify on these issues central to UTC's infringement case (Flynn Dec. Ex. Q at 7; Flynn Dec. Ex. S at 4).



██████████████████████████████████████████████████████

████████████████████████████████████████████████

### D. Liquidia opposed UTC discovery of the actual process through subpoenas of third-party API broker LGM

In July 2021, two months prior to the close of fact discovery, UTC also subpoenaed third-party LGM seeking documents and deposition testimony relating to LGM's work as a third-party intermediary between Liquidia and Yonsung. Flynn Dec. Ex. U; D.I. 139. Counsel for Liquidia stepped in to dually represent LGM and Liquidia; counsel for Liquidia/LGM first moved to quash the subpoenas in Florida in August, then, after transfer to this Court and briefing and argument in September 2021—this Court denied the motion to quash in part. *See* D.I. 170, 171, 177, 182, 184; 9/22/21 Hrg. Tr. at 3:1-32:21. Accordingly, LGM/Liquidia then began producing documents, but due to apparent holes in its productions (for example, there were no documents reflecting actual storage conditions for the API handled by LGM), UTC was forced to again seek the court's intervention to compel complete discovery. *See* D.I. 232, 233, 235, 237, 242 (*see also* D.I. 279, 11/18/21 Tr.). Tellingly, when opposing UTC's motion to compel LGM, counsel for Liquidia/LGM argued that *Liquidia* was prejudiced by UTC having not deposed LGM in time for Liquidia to rely on LGM testimony for Liquidia's rebuttal non-infringement expert reports. D.I. 237 at 3. Liquidia was well aware of LGM's activities as the intermediary between Liquidia and Yonsung; Liquidia could have subpoenaed LGM itself or, as LGM's counsel, facilitated compliance *during fact discovery*. After LGM completed its productions, UTC promptly took LGM's deposition in January 2022. *See* Flynn Dec. Ex V. ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██   ████████████—yet counsel for Liquidia/LGM proceeded with a 30-minute "cross-examination" of LGM outside the scope of direct testimony, eliciting self-serving testimony on LGM's use of refrigerators for holding API, which maps onto what counsel for Liquidia/LGM contends is the only claimed "storage." This was unsurprising, given that LGM's representative testified it had collected and produced documents in concert with counsel for Liquidia and prepared for the deposition for over seven hours with Liquidia's counsel. *Id.* at 9:8-11:5, 20:16-21:8.

### E. Liquidia *continues* to produce only handpicked self-serving Yonsung documents beyond the close of fact discovery

At any time, Liquidia could have mooted this motion. Instead—for over 14 months—it chose to use its foreign supplier as both a discovery sword and shield. Liquidia produced documents from Yonsung after the close of fact discovery; the first subset being documents responsive to UTC's March 2021 requests seeking Yonsung's batch-specific analytical documentation for intermediates, which Liquidia produced in October 2021 only after UTC's continued insistence. UTC's expert Dr. Toste promptly submitted a supplemental opening report. *See* Toste Dec. Ex. 2. Liquidia's corresponding expert used this as an opportunity to submit an improper reply supporting his own non-infringement position on the "storage" claim term, even though Dr. Toste had provided no opinion on any "storage" claim term and had not provided analyses of the documents that Liquidia's expert was belatedly pointing to for support. Liquidia also inexplicably produced additional Yonsung documents in ***January 2022,*** in an apparent effort

to support its infringement defense. Ex. W; Ex. X.

## V.    LEGAL STANDARD

Pursuant to 35 U.S.C. § 295, the Court "may shift the burden of proving non-infringement to the accused infringer if the [C]ourt finds: '(1) that a substantial likelihood exists that the product was made by the patented process, and (2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine.'" *Dasso Int'l, Inc. v. MOSO N. Am., Inc.*, C.A. No. 17-1574-RGA, 2021 WL 4427168, at *2 (D. Del. Sept. 27, 2021) (quoting 35 U.S.C. § 295); *see also Nutrinova Nutrition Specialties & Food Ingredients GmbH v. Int'l Trade Comm'n*, 224 F.3d 1356, 1359 (Fed. Cir. 2000) (describing this "burden shifting mechanism"). When the statutory requirements are met, "the burden to establish infringement shifts from the patentee alleging infringement to the alleged infringer to disprove infringement." *LG Display Co. v. AU Optronics Corp.*, 709 F. Supp. 2d 311, 335 (D. Del. 2010). To meet the first prong of the statute, "the patentee need only present evidence that would support a reasonable conclusion that the imported product was made by the patented process." *Id.* (citation omitted). Put differently, "the burden for establishing a substantial likelihood of infringement has been described as less than . . . proving successfully at a trial by a fair preponderance of the evidence that a product in question was in fact made by the patented process but would be more than a slight possibility that the product was so made." *Id.*

For the second prong, courts "examine the patentee's discovery efforts and consider whether the patentee followed all of the avenues of discovery likely to uncover the [defendant's] process, including written discovery requests, facility inspections, first-hand observation of the process, independent testing of process samples, the use of experts, and depositions of [defendant's] officials." *Id.* (citation omitted).  As this Court noted, "[c]ourts certainly look

favorably on efforts to obtain discovery from a foreign manufacturer, but these efforts are not dispositive." *Dasso Int'l,* 2021 WL 4427168, at *6 (finding, where Plaintiffs sought documents and inspection of a factory, "further efforts to obtain discovery directly from [Defendant's] Chinese suppliers likely would have been futile, and thus, such efforts are not required to show 'reasonable efforts' to discover the accused process"). Once the § 295 two-pronged test is met "there is a rebuttable presumption that the imported product was made from the patented process[.]" *Creative Compounds, LLC v. Starmark Lab'ys*, 651 F.3d 1301, 1314 (Fed. Cir. 2011).

## VI.   ARGUMENT

### A.   There is a "Substantial Likelihood" That Liquidia's Proposed Product is Made By the '066 Patented Process

Even though UTC's efforts to learn Yonsung's manufacturing process was repeatedly thwarted, two independent experts reviewed available evidence and concluded that, at minimum, there is a substantial likelihood that Yonsung's manufacturing process practices the asserted claims of the '066 patent. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████ *LG Display*, 709 F. Supp. 2d at 335. The asserted claims include additional distinct narrowing limitations addressed below.

### 1.   Liquidia's Proposed Product is Made by Claims 1, 2, 3 and 6

The '066 patent's claim 1 includes limitations requiring comparison of the level of one or

more impurities "found in the starting batch of treprostinil" in the claimed "pharmaceutical composition." Flynn Dec. Ex. A.[4] Assessing infringement of claim 1 (and asserted dependent claims 2-3, 6) thus requires comparison of impurities present in the synthetic intermediates from the manufacture of the claimed pharmaceutical composition in order to determine whether the accused process is practicing the invention within the scope of the claims. *See* D.I. 99 at 3.

Claim 1 of the '066 patent is directed to "a pharmaceutical composition" prepared by "a process" comprising certain steps. *See* Flynn Dec. Ex. A at 1.

---

[4] Numbered clauses of claims 6 and 8 provided for the Court's convenience.  Flynn Dec. Ex. A.



Dependent Claim 6 recites "The pharmaceutical composition of claim 1, wherein the isolated salt is stored at ambient temperature" and independent claim 8 of the '066 patent (discussed further below) recites "storing the treprostinil salt at ambient temperature." Based on

his review of available evidence, ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

## 2.    Liquidia's Proposed Product is Made by Claims 8 and 9

Independent claim 8 and claim 9 of the '066 Patent include limitations on the stability of the salt of treprostinil formed through recited process steps, storing the treprostinil salt at ambient temperature, and preparing a pharmaceutical product from that treprostinil salt. *See* Flynn Dec. Ex. A at 1. Establishing infringement thus necessitates analysis of the stability of the claimed treprostinil salt as well as the temperature conditions under which it is stored.

Dr. Nuckolls' analyses of independent claim 8 and claim 9 of the '066 patent establishes a

substantial likelihood that Liquidia's Proposed Product is made by the those claims. *See* Flynn

Dec. Ex. B at ¶¶ 170-197. ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████ This claim, however, is broader than claim 6

because it refers to storing "the treprostinil salt" rather than "the isolated salt"—and therefore

includes storage of treprostinil salt along with other components, such as excipients. *Id.* at ¶¶ 181-

182. ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████



Dr. Toste's and Dr. Nuckolls' analyses each demonstrate a substantial likelihood of infringement of the '066 asserted claims. *See, e.g.*, *Syngenta Crop. Prot., LLC v. Willowood, LLC*, 2017 WL 1133378, at *8 (M.D.N.C. Mar. 24, 2017) ("[G]iven Dr. Fortunak's experience and qualifications, his opinion is adequate to make a persuasive showing of substantial likelihood."). Accordingly, UTC has demonstrated a substantial likelihood of infringement of the '066 Patent and has satisfied the first prong of the § 295 burden-shifting test.

**B.     UTC's Reasonable Efforts to Determine the Actual Manufacturing Process of Liquidia's Proposed Product were Ultimately Unsuccessful**

As set forth above, UTC has engaged in more than reasonable efforts to determine the process used for synthesizing the treprostinil sodium API for Liquidia's Proposed Product. UTC diligently pursued discovery of the accused manufacturing process, both from Liquidia and from domestic third party LGM *via* RFPs, interrogatories, depositions of Liquidia witnesses (individual and corporate), and third-party subpoenas, but at every turn Liquidia opposed these efforts. Despite its diligence, UTC was unable to delineate the actual process used to make Liquidia's Proposed Product. For example, while UTC received some Yonsung documents, it did not receive the documents requested showing temperatures as well as each impurity present throughout the API manufacturing process. *See Dasso*, 2021 WL 4427168, at *6 (holding that plaintiffs' efforts were reasonable under § 295 where "Plaintiffs sought documentation of the accused process,

which MOSO did not provide, and sought to inspect at least one Chinese factory, which was opposed by MOSO"). UTC also sought to inspect Yonsung's manufacturing facility (D.I. 82), but Liquidia opposed and represented that Yonsung was not manufacturing its API such that there were no intermediate ███ samples available.  Further, UTC sought samples of the relevant intermediates in the hopes of performing tests to compare the impurities in those intermediates and the impurities in the final product—which would establish Yonsung's manufacturing process and permit UTC to assess infringement of the '066 Patent. *See* Toste Dec.

UTC went a step further, retaining Korean Counsel and pursuing discovery directly from Yonsung through the Hague Convention discovery process. Although not required, "[c]ourts certainly look favorable on efforts to obtain discovery from a foreign manufacturer[.]" *See Dasso*, 2021 WL 4427168, at *6; *Syngenta*, 2017 WL 1133378, at *11 (shifting the burden under § 295 where plaintiff "made reasonable but unsuccessful discovery efforts to obtain Tai He's production records"). The Yonsung documents and samples that UTC sought are required to exist under relevant pharmaceutical manufacturing guidelines, and FDA requires that foreign manufacturers comply with those guidelines. *See* D.I. 120. However, even if Liquidia now asserts that those documents do not exist, that is insufficient to avoid the burden-shifting effect of § 295. *See Dasso*, 2021 WL 4427168, at *6 (rejecting argument that burden should not be shifted because "MOSO did not have responsive documents to produce" reasoning that the "evidence only shows that Plaintiffs' efforts were unsuccessful, not that they were insufficient to meet the reasonableness requirement"). UTC exercised more than "reasonable" efforts to obtain the relevant information and has satisfied the second and final prong of the § 295 burden-shifting test.

### C.   Liquidia's Refusal to Cooperate by Securing Discovery of Yonsung's Accused Process Prejudiced UTC Supporting Burden Shifting Under § 295

Liquidia has consistently resisted discovery of the accused process. Liquidia: refused to

meaningfully respond to written discovery requests concerning the details of the process; refused to produce *any* Yonsung documents until *after* UTC sought relief from the Court; represented that Liquidia had "no knowledge" of Yonsung's manufacturing process, but then refused to stipulate to that; refused to produce a corporate representative concerning knowledge of Yonsung's manufacturing process until after fact discovery and ordered by the Court; refused to facilitate Yonsung discovery if UTC pursued its Hague Requests; and refused to produce third party LGM documents until ordered to do so by the Court, and then *Liquidia's* counsel prepared LGM's witness and conducted an improper self-serving cross outside the scope of direct.

Most egregiously, Liquidia continued to coordinate with Yonsung to obtain documents to support *Liquidia's own* positions. For example, just last month—four months after the close of fact discovery—Liquidia produced additional self-serving Yonsung documents. Liquidia's approach to third-party discovery—facilitating the production of only documents helpful to Liquidia and thwarting discovery of UTC sought—is improper. Such conduct goes well beyond mere "non-cooperat[ion]." *Nutrinova*, 224 F.3d at 360 ("The statute [§ 295] also has a significant punitive element. It provides the trial court with a potent weapon to use against a non-cooperative defendant. The statute thus works for the benefit of a patentee, but it also serves the needs of the court as a mechanism for enforcing its processes and orders."). UTC requests that Liquidia be prevented from relying on Yonsung and LGM documents and testimony relating to process for manufacturing the Proposed Product that were produced after the close of fact discovery.

## VII.   CONCLUSION

UTC respectfully requests that the Court apply a presumption that Liquidia's Proposed Product is made using UTC's patented process pursuant to 35 U.S.C. § 295.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff United Therapeutics Corporation*

OF COUNSEL:

William C. Jackson
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue NW
Washington, DC  20005
(202) 237-2727

Bill Ward
BOIES SCHILLER FLEXNER LLP
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017
(213) 995-5745

Douglas Carsten
Art Dykhuis
Jiaxiao Zhang
Katherine Pappas
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA  92615
(949) 851-0633

Adam W. Burrowbridge
Joshua Revilla
Timothy M. Dunker
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street
Washington, DC  20001-1531
(202) 756-8797

February 22, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 8, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 8, 2022, upon the following in the manner indicated:

| | |
|---|---|
| Karen E. Keller, Esquire<br>Jeff Castellano, Esquire<br>Nathan R. Hoeschen, Esquire<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Defendant Liquidia*<br>*Technologies, Inc.* | *VIA ELECTRONIC MAIL* |
| Sanya Sukduang, Esquire<br>Jonathan Davies, Esquire<br>Douglas W. Cheek, Esquire<br>Adam Pivovar, Esquire<br>COOLEY LLP<br>1299 Pennsylvania Avenue, NW, Suite 700<br>Washington, DC  20004-2400<br>*Attorneys for Defendant Liquidia*<br>*Technologies, Inc.* | *VIA ELECTRONIC MAIL* |
| Erik Milch, Esquire<br>COOLEY LLP<br>11951 Freedom Drive, 14th Floor<br>Reston, VA  20190-5640<br>*Attorneys for Defendant Liquidia*<br>*Technologies, Inc.* | *VIA ELECTRONIC MAIL* |
| Ivor Elrifi, Esquire<br>COOLEY LLP<br>55 Hudson Yards<br>New York, NY  10001-2157<br>*Attorneys for Defendant Liquidia*<br>*Technologies, Inc.* | *VIA ELECTRONIC MAIL* |

Lauren Krickl, Esquire                                    *VIA ELECTRONIC MAIL*
Deepa Kannappan, Esquire
Brittany Cazakoff, Esquire
Kyung Taeck Minn, Esquire
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*


*/s/ Sarah E. Simonetti*

_____
Sarah E. Simonetti (#6698)