IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) |
| | ) |
| Plaintiff, | ) C.A. No.: 1:20-cv-00755-RGA |
| | ) |
| v. | ) REDACTED - PUBLIC VERSION |
| | ) |
| LIQUIDIA TECHNOLOGIES, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**DECLARATION OF F. DEAN TOSTE IN SUPPORT OF PLAINTIFF'S MOTION**

**FOR RELIEF UNDER § 295**

OF COUNSEL:

William C. Jackson
**GOODWIN PROCTER LLP**
1900 N Street NW
Washington, DC 20036
(202) 346-4216

Douglas H. Carsten
Arthur Dykhuis
Jiaxiao Zhang
Katherine Pappas
**MCDERMOTT WILL & EMERY LLP**
18565 Jamboree Road, Suite 250
Irvine, CA 92612
(949) 851-0633

Adam W. Burrowbridge
Joshua Revilla
Timothy M. Dunker
**MCDERMOTT WILL & EMERY LLP**
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8000

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Plaintiff*
*United Therapeutics Corporation*

Originally Filed:  February 22, 2022
Redacted Version Filed:  March 8, 2022

I, F. Dean Toste, Ph.D. declare as follows:

## I.   INTRODUCTION

1.      I submit this declaration in support of UTC's Motion under § 295.  If called as a witness, I would testify to the same.

2.      I have been retained by counsel for United Therapeutics Corporation ("UTC") to serve as an expert in the above-captioned litigation adverse to Liquidia Technologies, Inc. ("Liquidia").

3.      I have submitted three reports in this matter, which are attached hereto as **Exhibit 1** (Initial Opening Report, signed October 15, 2021), **Exhibit 2** (Supplemental Opening Report, signed November 15, 2021), and **Exhibit 3** (Reply Report, signed December 10, 2021), (collectively my "Reports").

## II.   QUALIFICATIONS

4.      My curriculum vitae details my professional experience; the most current version of my CV is attached hereto as **Exhibit 4**.  I provide below further details about my experience that may be pertinent to this matter.

5.      I am currently the Gerald E. K. Branch Distinguished Professor in the Department of Chemistry at the University of California, Berkeley.  I am also Faculty Scientist in the Chemical Science Division at the Lawrence Berkeley National Lab, in Berkeley, CA.

6.      I received a Doctor of Philosophy degree in Organic Chemistry from Stanford University in 2000.  I received a Master of Science degree in Organic Chemistry from the University of Toronto in 1995, and a Bachelor of Science degree in Chemistry and Biochemistry from the University of Toronto in 1993.

7.      I am an elected member of the United States National Academy of Science and Fellow of the American Academy of Arts and Sciences and an elected Fellow of the Royal Society of Canada Academy of Sciences.  I have over 35 national and international honors including the Nobel Laureate Signature, Cope Scholar, E.J. Corey and Creativity in Organic Synthesis Awards from the American Chemical Society, the Horst-Parcejus Preis from the German Chemical Society, the Mukaiyama Award Society of Synthetic Organic Chemistry Japan, the Merck Award from the Royal Society of Chemistry in the UK, and the Thieme Prize from the International Union of Pure and Applied Chemistry.

8.      I have published over 300 papers in peer-reviewed journals and 10 books/book chapters.  In 2011, I was listed as one of the top 100 chemists in the world by Thomson Reuters based on impact of these works.  I have presented over 300 invited and plenary lectures at universities and conferences throughout the world.

9.      I have served and currently serve as a consultant for several pharmaceutical companies, including Novartis and Merck.  I was a member of the Global Chemistry Advisory Board at GlaxoSmithKline and am currently serving on the Scientific and Technology Advisory Council at Dow Chemical.  I was one of the founding associate editors for Chemical Science, the flagship journal of the Royal Science Chemistry and served in this role from 2010-2019.  I currently serve as associate editor for the American Chemical Society journal, Chemical Reviews, one of the highest impact journals covering general topics in chemistry.  I have served as a reviewer for several funding agencies and currently serve as a permanent member of an US National Institutes of Health study section (SBCB).

10.      I have over 20 years of experience in chemistry and organic chemistry, including in chemical synthesis and enantioselective catalysis.  I have taught several courses ranging from

general chemistry to graduate level courses in organic and organometallic chemistry. Since 2015, I have designed and taught a laboratory course that focuses on advanced techniques in synthesis and purification.

11.     I have mentored over 50 graduate students who have earned Ph.D. degrees, over 110 postdoctoral fellows and over 70 visiting scholars. Most of these group alumni now hold faculty positions in academia or senior positions in industry, including for example, professorships in chemistry departments at MIT, the California Institute of Technology, and the University of Cambridge, and Director positions at Merck and Genentech.

## III.     SUMMARY OF OPINIONS

12.     It is my opinion that, based on the API Liquidia uses for manufacture of Liquidia's NDA Product, Liquidia's Proposed Product infringes at least Claim 1 of the '066 Patent. Further, my analyses with respect to Claim 1 apply equally to asserted Claims 2, 3, and 6 to the extent that they depend from Claim 1 ("The pharmaceutical composition of claim 1, wherein…"). *See* **Exhibit 1** at ¶ 99. These analyses are laid out in my attached Reports, which applied the traditional burden for the patentee to establish infringement by a preponderance of the evidence.

13.     Liquidia argues that the synthetic origin of the accused impurity itself must be known in order to show infringement, *i.e.*, that to establish infringement the patentee must be able to trace the accused impurity back to its formation during a particular synthetic step by way of a particular chemical mechanism. Under Liquidia's theory, shifting of the burden under § 295 is appropriate because UTC has not been able to determine the actual process by which Yonsung makes the treprostinil sodium API with respect to the tracking of such particular impurities and their origins, but it is substantially likely that the accused process infringes.

## IV.     LEGAL STANDARDS

3

14.     I am not an attorney.  Plaintiff's counsel has informed me of legal standards relating to patent infringement and, for the purposes of this declaration, regarding the § 295 statute.  I have applied my understanding of these legal principles to my analysis and opinions.

15.     To be clear, the opinions that I offered in my reports in this case (**Exhibits 1-3**) were based on the legal standards and allocation of burden as described therein, *i.e.*, that the Plaintiff bears the burden of proving patent infringement by a preponderance of evidence (**Exhibit 1** at ¶ 21).

### A.  <u>35 U.S.C. § 295</u>

16. Plaintiff's Counsel has informed me that 35 U.S.C. § 295 provides:

> In actions alleging infringement of a process patent based on the importation, sale, offer for sale, or use of a product which is made from a process patented in the United States, if the court finds—
>     **(1)** that a substantial likelihood exists that the product was made by the patented process and
>     **(2)** that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine, the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made.

17.     Plaintiff's Counsel has informed me that the "substantial likelihood" language appearing in the above prong (1) is a standard requiring less than would be needed to prove infringement at trial under the traditional burden to establish that a product in question was in fact made by the patented process ("preponderance of the evidence" or "more likely than not"), but is more than a slight possibility that the product was made by the patented process.

18.     Stated differently, I understand that with respect to (1) the patentee need only present evidence to support a reasonable conclusion that the imported product was made by the patented process.

19.     As relevant here, I also understand from counsel that it is an act of direct infringement to file an NDA with the FDA for an NDA product where the scope of the NDA approval sought includes approval for a product claimed in a patent (*see* **Exhibit 1** at ¶ 23).

20.     Other applicable legal standards as I have been informed and understand them from plaintiff's counsel can be found in my Opening Expert Report, **Exhibit 1** at ¶¶ 20-27.

## V.  THERE IS A SUBSTANTIAL LIKELIHOOD LIQUIDIA'S PRODUCT INFRINGES OF CLAIM 1 OF THE '066 PATENT

21.     I wrote Opening and Reply reports on infringement (*see* **Exs. 1-3**), and in my opinion Liquidia's Proposed Product will infringe Claim 1 of the '066 patent.  As laid out in my Opening Report (**Ex. 1**, ¶ 64), below is a chart summarizing my opinions regarding infringement:

| Claim 1 | Liquidia's NDA Product |
|---|---|
| A pharmaceutical composition comprising treprostinil or a pharmaceutically acceptable salt thereof, said composition prepared by a process comprising | Non-limiting preamble; "comprising" indicates there may be additional components of the composition ("composition comprising") and of the process ("process comprising"). |
| providing a starting batch of treprostinil having one or more impurities resulting from prior alkylation and hydrolysis steps, | |
| forming a salt of treprostinil by combining the starting batch and a base, isolating the treprostinil salt, and preparing a pharmaceutical composition comprising treprostinil or a pharmaceutically acceptable salt thereof from the isolated treprostinil salt, whereby | |
| a level of one or more impurities found in the starting batch of treprostinil is lower in the pharmaceutical composition, and wherein | |
| said alkylation is alkylation of benzindene triol. | |

22.   As ████████████████████████████ █ ████████████
███████████████████████████████████████████
████ ████ ██████████ █████████ █ ██████ █ ███████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████



23.   Based on the foregoing, and as described more fully in my Reports (**Exs. 1-3**), it is my opinion that it is more likely than not that the manufacture and sale of Liquidia's Proposed

---

[1] Striped bars indicate the impurity was ████████████ in the sample.

Product will infringe at least claim 1 of the '066 patent, and more broadly speaking, Liquidia is seeking approval to infringe the '066 patent.

## VI.  SAMPLES WOULD HAVE PROVIDED MATERIAL INFORMATION ON YONSUNG'S MANUFACTURING PROCESS

24.     I understand from Plaintiff's Counsel that samples of Liquidia's ███ as well as other ███████████████████████████ from the preceding synthetic steps from the manufacture of Yonsung's **TN** API were requested from Liquidia and/or Yonsung, but not ultimately produced to UTC in this litigation.  I also understand from Plaintiff's Counsel that no witnesses (from Liquidia or otherwise) were able to provide testimony in this matter regarding Yonsung's manufacturing process with respect to impurities in the precursor intermediates; for example to provide testimony regarding Yonsung's analytical testing practices, procedures, or reported results for the precursor intermediates (such as ██████████████ .

25.     As discussed in my Reply Report (**Ex. 3**, at ¶¶ 26-27), samples of these intermediates would have allowed for more specific and fulsome analysis of ██████████ ██████████ used to make the API for Liquidia's Proposed Product, and would have allowed me to more thoroughly assess infringement, but "[w]ithout access to samples of Yonsung's intermediates for use in independent analytical testing, my conclusions are necessarily limited by the analytical testing methods employed by Yonsung, i.e., the limited data produced by Liquidia." (**Ex. 3**, ¶ 27).

26.     For example, when considering application of the first impurity limitation ("providing a starting batch of treprostinil having one or more impurities resulting from prior alkylation and hydrolysis steps") with the impurities lowering limitation ("a level of one or more impurities found in the starting batch of treprostinil is lower in the pharmaceutical composition"), my analysis was necessarily restricted to considering and opining on the related substance

8



27.

A.



---

[3] HPLC conditions that may be varied in order to obtain improved peak resolution include, for example, variations to the solvent system used to move the analytes through the HPLC instrument, the stationary phase used to separate the analytes, and the temperature and pressure which is applied to the system.

███████████████████████████████████████████████████████████

████████████████████████████████████████████████. Specific examples of

this type of analysis can be found in T. Zuang et. al. (*J. Pharm. Biomed. Anal* **2018,** *152*, 188;

attached as **Exhibit 5**), which states that impurities "present in pilot batches in the range of 0.08-

0.22% based upon HPLC analysis…were enriched in the mother liquor" (page 188), and in Y. Li

et al. (*J. Pharm. Biomed. Anal* **2010,** *52*, 493; attached as **Exhibit 6**), which states "…there is a

benefit from understanding the fate of the impurities in the mother liquors as well.   Understanding

the impurity profile in the wash helped confirm the amount of impurities that could be removed…"

(page 498). ████████ ████ █████████████████████████████████████

████████████████████████████████████████████████.   Given that

Liquidia/Yonsung did not produce documents analyzing the mother liquor, and I was not provided

with precursor intermediate samples, I was unable to provide any analysis of mother liquor to

inform my infringement opinions.

      **B.**  **Samples of ████████████████ Were not Produced, but Would Have Enabled my Analysis of the Origin of ████████████ in Yonsung's Process**

    32. ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████ ███ ██ ████ █ ████████████████████████████████████

█████████████████████████ █ ███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████ ███ █████████████

███████████████████████████████████████████████████████



**C. Liquidia Failed to Produce Samples Material to the Analyses of Impurities Beyond** ▮▮▮▮▮▮▮▮▮▮

34.     As discussed above in the context of the impurity ▮▮▮▮▮▮▮▮ having samples in hand allows for tracking and analyzing particular impurities throughout the synthetic process, and one running the analysis themselves is able to vary the HPLC conditions as-necessary in order to most accurately detect and quantify impurities of interest in the sample.

35.     As discussed in my Reply Report (**Ex. 3**, ¶ 26, fn 3), typically a POSA has the opportunity to control an experiment's conditions necessary to identify, characterize, and quantify each individual impurity present throughout the synthetic process.

13

36.



38.     Because Liquidia did not produce any samples of ████ independent testing or analyses of the impurities present in the starting batch of treprostinil as recited in the '066 claim 1 was not possible.  **Ex. 3**, ¶ 26.  Further, because Liquidia did not produce samples of other

precursor intermediates ███████████, nor analytical data regarding testing of mother liquor from Yonsung's manufacture of the **TN**, independent testing or analyses of the origin and fate of particular impurities generated and removed during Yonsung's process was not possible.

## VII.    CONCLUSION

In my opinion, for all the reasons discussed above and in my Reports (**Exs. 1-3**), it is substantially likely that Liquidia will infringe at least Claim 1 of the '066 patent (and claims 2, 3, and 6 to the extent they depend from claim 1 (as described in **Ex. 1** at ¶ 99)) by importing and/or using the treprostinil sodium API from Yonsung in its Proposed Product, and accordingly that the burden-shifting presumption described in the § 295 statute should apply.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on _Feb. 22, 2022_ at

_Berkeley, CA_ .

By _____

F. Dean Toste

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 8, 2022, upon the following in the manner indicated:

Karen E. Keller, Esquire                           *VIA ELECTRONIC MAIL*
Jeff Castellano, Esquire
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

Sanya Sukduang, Esquire                           *VIA ELECTRONIC MAIL*
Jonathan Davies, Esquire
Douglas W. Cheek, Esquire
Adam Pivovar, Esquire
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004-2400
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

Erik Milch, Esquire                               *VIA ELECTRONIC MAIL*
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA  20190-5640
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

Ivor Elrifi, Esquire                              *VIA ELECTRONIC MAIL*
COOLEY LLP
55 Hudson Yards
New York, NY  10001-2157
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

Lauren Krickl, Esquire                                    *VIA ELECTRONIC MAIL*
Deepa Kannappan, Esquire
Brittany Cazakoff, Esquire
Kyung Taeck Minn, Esquire
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*


                                        */s/ Sarah E. Simonetti*

                                        _____
                                        Sarah E. Simonetti (#6698)

2