IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Redacted - Public Version |
| v. | ) ) ) | C.A. No. 20-755-RGA-JLH |
| LIQUIDIA TECHNOLOGIES, INC., | ) ) ) | ███████████████ |
| Defendant. | ) | |

## LETTER TO THE HONORABLE JENNIFER L. HALL
## FROM NATHAN R. HOESCHEN

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant Liquidia
Technologies, Inc*

OF COUNSEL:
Sanya Sukduang
Jonathan Davies
Douglas W. Cheek
Adam Pivovar
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202) 842-7800

Erik Milch
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5640
(703) 546-8000

Ivor Elrifi
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Deepa Kannappan
Lauren Krickl
Brittany Cazakoff
Kyung Taeck Minn
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Dated: March 10, 2022



Nathan R. Hoeschen
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
(302) 298-0709 – Direct
nhoeschen@shawkeller.com

March 10, 2022

**BY CM/ECF & HAND DELIVERY**
The Honorable Jennifer L. Hall
United States District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

      Re:    *United Therapeutics Corporation v. Liquidia Technologies, Inc.,*
             C.A. No. 20-755-RGA

Dear Judge Hall:

      I write in response to a question posed by the Court at the hearing on Liquidia's Motion for Summary Judgment (D.I. 281) earlier today.  During the hearing, the Court inquired whether Liquidia had dropped its assertion of issue preclusion in its supplemental invalidity contentions dated Sept. 27, 2021.

      We confirm that Liquidia's Sept. 27, 2021 invalidity contentions maintain Liquidia's issue preclusion argument.  Attached as Exhibit A is an excerpt of those contentions, which was also attached as Exhibit 43 to Liquidia's reply brief in support of its motion for summary judgment (D.I. 303), with the relevant portions highlighted in yellow.  Further, attached as Exhibit B is another excerpted copy of those contentions, with additional relevant portions highlighted in green, which discuss the same factual evidence relied on by Liquidia in its summary judgment briefing.[1]

      Counsel are available should the Court have further questions.

                      Respectfully submitted,

                      */s/ Nathan R. Hoeschen*

                      Nathan R. Hoeschen (No. 6232)

cc:    Clerk of the Court (by CM/ECF & hand delivery)
       All counsel of record (by CM/ECF & e-mail)

---

[1]  Liquidia originally attached a full copy of the Sept. 27, 2021 contentions to its summary judgment reply brief, but re-filed an excerpted copy per United Therapeutic Corporation's ("UTC's") request.  *See* Ex. C (Feb. 18-21, 2022 Emails between M. Flynn and N. Hoeschen).

# Exhibit A

# EXHIBIT 43



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED THERAPEUTICS CORPORATION, | |
| Plaintiff, | C.A. No. 20-755-RGA-JLH |
| v. | ███████████████████████ |
| LIQUIDIA TECHNOLOGIES, INC., | |
| Defendant. | |

**DEFENDANT LIQUIDIA TECHNOLOGIES, INC.'S
FIRST SUPPLEMENTAL INVALIDITY CONTENTIONS**

form salts after storage; this step is not novel or an improvement.  Phares 2005 thus inherently discloses preparation of a pharmaceutical product from the treprostinil salt after storage.

### (5)    Claim Element 8[g]

| 8[g] | *wherein the pharmaceutical product comprises treprostinil or a pharmaceutically acceptable salt thereof.* |
|------|------------------------------------------------------------------------------------------------------------|

*See* explanation under independent claim 1.  Section II.C.1.a.(1).

### d.    Dependent Claim 9 Would Have Been Obvious

| 9 | *A pharmaceutical product prepared by the process of claim 8.* |
|---|---------------------------------------------------------------|

*See* explanation under independent claims 1 and 8.  Sections II.C.1.a and II.C.1.c.

## 2.    Claims 1-3, 6, and 8-9 Would Have Been Obvious Over Moriarty 2004 in Combination with Phares 2005

### a.    Motivation to Combine Moriarty 2004 with Phares 2005

#### (1)    UTC is Precluded from Disputing the Motivation to Combine Moriarty and Phares 2005

UTC's argument concerning motivation to combine Moriarty with Phares 2005 is precluded because the issue was fully and fairly tried in a previous action involving substantially similar claims and was adversely resolved against UTC.  For issue preclusion to apply, the unadjudicated and previously adjudicated claims need not be identical.  *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (applying issue preclusion to parent patent with substantially similar claim as invalidated child patent).  Rather, "it is the identity of the *issues* that were litigated that determines whether [issue preclusion] should apply."  *Id.* (emphasis in original).  "If the differences between the unadjudicated patent claims and adjudicated patent claims *do not materially alter the question of invalidity*, [issue preclusion] applies."  *Id.*

The *issue* of a motivation to combine Moriarty and Phares 2005 was already litigated and decided in the '393 IPR and affirmed by the Federal Circuit.  *SteadyMed*, IPR2016-00006, Paper

82 at 47, *aff'd*, *United Therapeutics v. SteadyMed*, 702 F. App'x 990 (2017).  The '393 and '066 Patent claims are substantially similar.  Both patents require a process of (i) alkylating a benzindene triol; (ii) hydrolyzing the product of step (i); (iii) contacting the product of step (ii) with a base to form a treprostinil salt; (iv) isolating the salt of treprostinil; and (v) optionally reacting the treprostinil salt from step (iii) to form treprostinil.  The only differences are that the '066 Patent claims include impurity limitations as to the starting batch and pharmaceutical composition.  These differences are immaterial, because they are not excluded from the claims of the '393 Patent and are nonetheless disclosed by the exact same combination of Moriarty and Phares 2005 that invalidated the '393 Patent.

Particularly for product-by-process claims, the product—not the process— controls.  *In re Thorpe*, 777 F.2d 695, 697 (Fed. Cir. 1985); *Amgen*, 580 F.3d at 1369.  UTC conceded that the '393 and '066 Patents claim the same product.  *See* Amendment and Request for Reconsideration (U.S. App. No. 14/849,981) (Aug. 24, 2016) at 4  (UTC citing certificates of analysis for the product claimed in the '393 Patent, and relied upon by UTC's experts, to argue that "a pharmaceutical batch produced according to a salt formation process as covered by claim 1 [of the '066 Patent] is different from the product produced by the process described in Moriarty 2004.").  Thus, the storage issues claimed in the '066 Patent claims 6 and 8 would be the same for both patents' products.

In sum, UTC has "not provided any explanation regarding *how* the [additional] limitations" of the '066 Patent are "patentably significant" to the motivation to combine Moriarty and Phares 2005 "in view of the obviousness determination regarding the claims of the ['393] patent."  *Ohio Willow Wood*, 735 F.3d at 1343 (emphasis in original).  Thus, issue preclusion should apply.

### (5)   Claim Element 8[f]

| 8[f] | *(e) optionally reacting the salt of treprostinil with an acid to form treprostinil.* |
|------|-------------------------------------------------------------------------------------|

The step of reacting the foregoing salt of treprostinil with an acid to form the treprostinil in claim 1 of the '901 Patent is optional. Therefore, no disclosure in Phares 2005 is required to demonstrate the obviousness of this claim element. Even so, this step was generally known in the art and would have been obvious to a POSA. *See* Schoffstall 2004 at 201-02; Wiberg 1960 at 112. The '901 Patent itself admits that step (e) is merely a "simple acidification with diluted hydrochloric acid" step, and is thus not a novel step. '901 Patent at 17:5-8.

### 2.   Claims 1-4, 6, and 8 Would Have Been Obvious Over Moriarty 2004 in Combination with Phares 2005

#### a.   Motivation to Combine Moriarty 2004 with Phares 2005

##### (1)   UTC is Precluded From Disputing the Motivation to Combine Moriarty and Phares 2005

UTC's argument concerning motivation to combine Moriarty with Phares 2005 is precluded because the issue was fully and fairly tried in a previous action involving substantially similar claims and was adversely resolved against UTC. For issue preclusion to apply, the unadjudicated and previously adjudicated claims need not be identical. *Ohio Willow Wood*, 735 F.3d at 1342 (applying issue preclusion to parent patent with substantially similar claim as invalidated child patent). Rather, "it is the identity of the *issues* that were litigated that determines whether [issue preclusion] should apply." *Id.* (emphasis in original). "If the differences between the unadjudicated patent claims and adjudicated patent claims ***do not materially alter the question of invalidity***, [issue preclusion] applies." *Id*.

The *issue* of a motivation to combine Moriarty and Phares 2005 was already litigated and decided in the '393 IPR and affirmed by the Federal Circuit. *SteadyMed*, IPR2016-00006, Paper 82 at 47, *aff'd*, *United Therapeutics v. SteadyMed*, 702 F. App'x 990 (2017). The '393 and '901

Patent claims are substantially similar.   Both patents require a process of (i) alkylating a benzindene triol; (ii) hydrolyzing the product of step (i); (iii) contacting the product of step (ii) with a base to form a treprostinil salt; (iv) isolating the salt of treprostinil; and (v) optionally reacting the treprostinil salt from step (iii) to form treprostinil.   The only differences are that the '901 Patent claims include an impurity limitation and amount of treprostinil.   These differences are immaterial, because they are not excluded from the claims of the '393 Patent and are nonetheless disclosed by the exact same combination of Moriarty and Phares 2005 that invalidated the '393 Patent.

Particularly for product-by-process claims, the product—not the process— controls.  *In re Thorpe*, 777 F.2d at 697; *Amgen*, 580 F.3d at 1369.  UTC conceded that the '393 and '901 Patents claim the same product.  *See* Amendment & Request for Reconsideration (U.S. App. No. 14/754,932) (Aug. 11, 2016) at 4-5 (UTC citing certificates of analysis for the product claimed in the '393 Patent, and relied upon by UTC's experts, to argue that the "pharmaceutical batch" of the '901 Patent "is different from the product produced by the process described in Moriarty 2004.").  Thus, the storage issues claimed in the '901 Patent claim 6 would be the same for both patents' products.

In sum, UTC has "not provided any explanation regarding *how* the [additional] limitations" of the '901 Patent are "patentably significant" to the motivation to combine Moriarty and Phares 2005 "in view of the obviousness determination regarding the claims of the ['393] patent."  *Ohio Willow Wood*, 735 F.3d at 1343 (emphasis in original).  Thus, issue preclusion should apply.

### (2)   A POSA Nonetheless Would Have Been Motivated to Combine Moriarty and Phares 2005

For the reasons stated above in Section II.C.a.(2), a POSA would have been motivated to form the treprostinil diethanolamine salt of Phares 2005 from the treprostinil free acid of Moriarty.

# Exhibit B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UNITED THERAPEUTICS
CORPORATION,

               Plaintiff,

   v.

LIQUIDIA TECHNOLOGIES, INC.,

               Defendant.

C.A. No. 20-755-RGA-JLH

**HIGHLY CONFIDENTIAL**

## DEFENDANT LIQUIDIA TECHNOLOGIES, INC.'S
## FIRST SUPPLEMENTAL INVALIDITY CONTENTIONS

form salts after storage; this step is not novel or an improvement. Phares 2005 thus inherently discloses preparation of a pharmaceutical product from the treprostinil salt after storage.

### (5) Claim Element 8[g]

| 8[g] | *wherein the pharmaceutical product comprises treprostinil or a pharmaceutically acceptable salt thereof.* |
|------|-----------------------------------------------------------------------------------------------------------|

*See* explanation under independent claim 1. Section II.C.1.a.(1).

### d. Dependent Claim 9 Would Have Been Obvious

| 9 | *A pharmaceutical product prepared by the process of claim 8.* |
|---|----------------------------------------------------------------|

*See* explanation under independent claims 1 and 8. Sections II.C.1.a and II.C.1.c.

### 2. Claims 1-3, 6, and 8-9 Would Have Been Obvious Over Moriarty 2004 in Combination with Phares 2005

#### a. Motivation to Combine Moriarty 2004 with Phares 2005

##### (1) UTC is Precluded from Disputing the Motivation to Combine Moriarty and Phares 2005

UTC's argument concerning motivation to combine Moriarty with Phares 2005 is precluded because the issue was fully and fairly tried in a previous action involving substantially similar claims and was adversely resolved against UTC. For issue preclusion to apply, the unadjudicated and previously adjudicated claims need not be identical. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (applying issue preclusion to parent patent with substantially similar claim as invalidated child patent). Rather, "it is the identity of the *issues* that were litigated that determines whether [issue preclusion] should apply." *Id.* (emphasis in original). "If the differences between the unadjudicated patent claims and adjudicated patent claims *do not materially alter the question of invalidity*, [issue preclusion] applies." *Id.*

The *issue* of a motivation to combine Moriarty and Phares 2005 was already litigated and decided in the '393 IPR and affirmed by the Federal Circuit. *SteadyMed*, IPR2016-00006, Paper

82 at 47, *aff'd*, *United Therapeutics v. SteadyMed*, 702 F. App'x 990 (2017).  The '393 and '066 Patent claims are substantially similar.   Both patents require a process of (i) alkylating a benzindene triol; (ii) hydrolyzing the product of step (i); (iii) contacting the product of step (ii) with a base to form a treprostinil salt; (iv) isolating the salt of treprostinil; and (v) optionally reacting the treprostinil salt from step (iii) to form treprostinil.  The only differences are that the '066 Patent claims include impurity limitations as to the starting batch and pharmaceutical composition.  These differences are immaterial, because they are not excluded from the claims of the '393 Patent and are nonetheless disclosed by the exact same combination of Moriarty and Phares 2005 that invalidated the '393 Patent.

Particularly for product-by-process claims, the product—not the process— controls.  *In re Thorpe*, 777 F.2d 695, 697 (Fed. Cir. 1985); *Amgen*, 580 F.3d at 1369.  UTC conceded that the '393 and '066 Patents claim the same product.  *See* Amendment and Request for Reconsideration (U.S. App. No. 14/849,981) (Aug. 24, 2016) at 4  (UTC citing certificates of analysis for the product claimed in the '393 Patent, and relied upon by UTC's experts, to argue that "a pharmaceutical batch produced according to a salt formation process as covered by claim 1 [of the '066 Patent] is different from the product produced by the process described in Moriarty 2004.").  Thus, the storage issues claimed in the '066 Patent claims 6 and 8 would be the same for both patents' products.

In sum, UTC has "not provided any explanation regarding *how* the [additional] limitations" of the '066 Patent are "patentably significant" to the motivation to combine Moriarty and Phares 2005 "in view of the obviousness determination regarding the claims of the ['393] patent."  *Ohio Willow Wood*, 735 F.3d at 1343 (emphasis in original).  Thus, issue preclusion should apply.

(5)    **Claim Element 8[f]**

| 8[f] | *(e) optionally reacting the salt of treprostinil with an acid to form treprostinil.* |
|------|------|

The step of reacting the foregoing salt of treprostinil with an acid to form the treprostinil in claim 1 of the '901 Patent is optional.  Therefore, no disclosure in Phares 2005 is required to demonstrate the obviousness of this claim element.  Even so, this step was generally known in the art and would have been obvious to a POSA.  *See* Schoffstall 2004 at 201-02; Wiberg 1960 at 112.  The '901 Patent itself admits that step (e) is merely a "simple acidification with diluted hydrochloric acid" step, and is thus not a novel step.  '901 Patent at 17:5-8.

**2.**    **Claims 1-4, 6, and 8 Would Have Been Obvious Over Moriarty 2004 in Combination with Phares 2005**

**a.**    **Motivation to Combine Moriarty 2004 with Phares 2005**

**(1)**    **UTC is Precluded From Disputing the Motivation to Combine Moriarty and Phares 2005**

UTC's argument concerning motivation to combine Moriarty with Phares 2005 is precluded because the issue was fully and fairly tried in a previous action involving substantially similar claims and was adversely resolved against UTC.  For issue preclusion to apply, the unadjudicated and previously adjudicated claims need not be identical.  *Ohio Willow Wood*, 735 F.3d at 1342 (applying issue preclusion to parent patent with substantially similar claim as invalidated child patent).  Rather, "it is the identity of the *issues* that were litigated that determines whether [issue preclusion] should apply."  *Id.* (emphasis in original).  "If the differences between the unadjudicated patent claims and adjudicated patent claims ***do not materially alter the question of invalidity***, [issue preclusion] applies."  *Id*.

The *issue* of a motivation to combine Moriarty and Phares 2005 was already litigated and decided in the '393 IPR and affirmed by the Federal Circuit.  *SteadyMed*, IPR2016-00006, Paper 82 at 47, *aff'd*, *United Therapeutics v. SteadyMed*, 702 F. App'x 990 (2017).  The '393 and '901

114

████████████████

Patent claims are substantially similar. Both patents require a process of (i) alkylating a benzindene triol; (ii) hydrolyzing the product of step (i); (iii) contacting the product of step (ii) with a base to form a treprostinil salt; (iv) isolating the salt of treprostinil; and (v) optionally reacting the treprostinil salt from step (iii) to form treprostinil. The only differences are that the '901 Patent claims include an impurity limitation and amount of treprostinil. These differences are immaterial, because they are not excluded from the claims of the '393 Patent and are nonetheless disclosed by the exact same combination of Moriarty and Phares 2005 that invalidated the '393 Patent.

Particularly for product-by-process claims, the product—not the process— controls. *In re Thorpe*, 777 F.2d at 697; *Amgen*, 580 F.3d at 1369. UTC conceded that the '393 and '901 Patents claim the same product. *See* Amendment & Request for Reconsideration (U.S. App. No. 14/754,932) (Aug. 11, 2016) at 4-5 (UTC citing certificates of analysis for the product claimed in the '393 Patent, and relied upon by UTC's experts, to argue that the "pharmaceutical batch" of the '901 Patent "is different from the product produced by the process described in Moriarty 2004."). Thus, the storage issues claimed in the '901 Patent claim 6 would be the same for both patents' products.

In sum, UTC has "not provided any explanation regarding *how* the [additional] limitations" of the '901 Patent are "patentably significant" to the motivation to combine Moriarty and Phares 2005 "in view of the obviousness determination regarding the claims of the ['393] patent." *Ohio Willow Wood*, 735 F.3d at 1343 (emphasis in original). Thus, issue preclusion should apply.

### (2)   A POSA Nonetheless Would Have Been Motivated to Combine Moriarty and Phares 2005

For the reasons stated above in Section II.C.a.(2), a POSA would have been motivated to form the treprostinil diethanolamine salt of Phares 2005 from the treprostinil free acid of Moriarty.

c.    **Claims Reciting "Therapeutically Effective Amount" Are Indefinite**

Asserted Claims 3 and 4 of the '901 Patent are directed to pharmaceutical products comprising a "therapeutically effective amount" of treprostinil or "salt treprostinil."  "[T]he language of the claims must make it clear what subject matter they encompass."  *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1562 (Fed. Cir. 1996).  "The requirement that the claims 'particularly point[] out and distinctly claim[]' the invention is met when a person experienced in the field of the invention would understand the scope of the subject matter that is patented when the claim is read in conjunction with the rest of the specification."  *S3 Inc. v. NVIDIA Corp.*, 259 F.3d 1364, 1367 (Fed. Cir. 2001) (quoting *Miles Labs., Inc. v. Shandon Inc.*, 997 F.2d 870, 875 (Fed. Cir. 1993)).  To meet the definiteness requirement, claims 3 and 4 of the '901 Patent, read in light of the specification and prosecution history, must inform with "reasonable certainty" those skilled in the art about the scope of the invention.  *See Nautilus*, 572 U.S. at 901.

Here, however, neither the specification nor prosecution history define or use the term "therapeutically effective amount," which was contained in the original claims of the application.  More specifically, neither the claims, specification, nor prosecution history indicate which condition the "therapeutically effective amount" of treprostinil is intended to treat, which route the amount is to be administered, or the level of treatment (e.g., amelioration of symptoms) the amount is intended to achieve.  Without even guidance as to which indication or route of administration the "therapeutically effective amount" is intended, claims 3 and 4 of the '901 Patent, read in light of the specification and prosecution history, would not apprise a POSA with "reasonable certainty" as to the scope of the invention.  *Nautilus*, 572 U.S. at 901.

Thus, Asserted Claims 3 and 4 of the '901 Patent are invalid as indefinite.

IV.    **THE '066 AND '901 PATENTS ARE INVALID FOR CLAIMING AN OLD**

161

**PRODUCT**

The Asserted Claims of the '066 and '901 Patents are invalid as they are not directed to a novel and nonobvious product. More specifically, claim 1, and dependent claims 2-7 and 9 of the '066 patent, and claim 1 and dependent claims 2-5 of the '901 patent are product-by-process claims are confirmed by ███████████████████████████. *See* ████████████ for '066 Patent (UTC_LIQ00201693 at UTC_LIQ00201695, ███████████); ███████████ for '901 Patent (UTC_LIQ00201698 at UTC_LIQ00201700, ███████). The 393 Patent is the grandparent application of both the '066 and '901 Patents.[26] ████████████████████████████

███████████████████████████████████████████████

███████████████████████████. ████ Dep. Tr. at 75:12-76:5, 79:12-81:8. ███████ further testified that ████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████. *Id.* The claims of both are substantially similar if not nearly identical to those of the '393 Patent as shown below.

| USP 8,497,393 Claim 1 | USP 9,593,066 Claim 1 | USP 9,604,901 Claim 1 |
|---|---|---|
| A product comprising a compound of formula I  or a pharmaceutically acceptable salt thereof, | A pharmaceutical composition comprising treprostinil or a pharmaceutically acceptable salt thereof, | A pharmaceutical batch consisting of treprostinil or a salt thereof |

---

[26] The '393 Patent resulted from U.S. Application No. 13/548,446 ("the '446 Application"). The '066 Patent resulted from a divisional application of U.S. Application No. 13/933,623, which is a continuation application of the '446 Application. The '901 Patent resulted from a continuation application of U.S. Application No. 13/933,623, which is a continuation application of the '446 Application.

████████████████

| | | |
|---|---|---|
| wherein said product is prepared by a process comprising | said composition prepared by a process comprising providing a starting batch of treprostinil having one or more impurities resulting from | and impurities resulting from |
| (a) alkylating a compound of [a genus including benzindene triol] with an alkylating agent to produce a compound [from a genus comprising treprostinil], | prior alkylation and | (a) alkylating a benzindene triol, |
| (b) hydrolyzing the product [] of step (a) with a base | hydrolysis steps, | (b) hydrolyzing the product of step (a) to form a solution comprising treprostinil, |
| (c) contacting the product of step (h) with a base B to form a salt of formula I<sub>s</sub>.  | forming a salt of treprostinil by combining the starting batch and a base, | (c) containing the solution comprising treprostinil from step (b) with a base to form a salt of treprostinil, |
| | isolating the treprostinil salt, | (d) isolating the salt of treprostinil, and |
| | and preparing a pharmaceutical composition comprising treprostinil or a pharmaceutically acceptable salt thereof from the isolated treprostinil salt, | |
| (d) optionally reacting the salt formed in step (c) with an acid to form the compound of formula I. | | (e) optionally reacting the salt of treprostinil with an acid to form treprostinil, and |
| | whereby a level of one or more impurities found in the starting batch of treprostinil is lower in the pharmaceutical composition, and wherein | |

| | said alkylation is alkylation of benzindene triol. | |
|---|---|---|
| | | wherein the pharmaceutical batch contains at least 2.9 g of treprostinil or its salt. |

Although the '393 Patent claims a "product," the '066 Patent claims a "pharmaceutical composition," and the '901 Patent claims a "pharmaceutical batch," all three patents confirm that the "product," "pharmaceutical composition," and "pharmaceutical batch" can comprise only treprostinil or a salt of treprostinil. That is, the claims of the '066 and '901 Patents can comprise the same "product" as claimed in the '393 patent. The prosecution histories of all three patents confirm that they claim the same treprostinil product made by UTC's "new" process. During prosecution of the '393 Patent, UTC overcame the Examiner's anticipation rejection by submitting a declaration of its Executive Vice President of Chemical Research and Development purportedly establishing that "[t]he product of Moriarty 2004 is *physically different* from the product of claims 1 and 10, in which a base addition salt is formed *in situ* with treprostinil that has not been previously isolated." Response to Non-Final Office Action (U.S. Application No. 13/548,446) (Feb. 8, 2013) at 9 (first emphasis added); *see also* Declaration of Dr. David Walsh (U.S. Application No. 13/548,446) (June 5, 2013). In its Patent Owner Preliminary Response during the '393 Patent IPR, UTC submitted two expert declarations that also purportedly established that the product of the pending claims differed from the product of Moriarty 2004. *See* Declaration of Dr. Robert M. Williams, *SteadyMed Ltd.*, IPR2016-00006, Exhibit 2020; Declaration of Dr. Robert R. Ruffolo, *SteadyMed Ltd.*, IPR2016-00006, Exhibit 2022.



Dep. Tr. at 97:12-100:2;

Dep. Tr. at 347:3-8.

████████████████████████████████████████

████████████████ . ██████████   Dep. Tr. at 97:12-100:2.

Before the PTAB issued its Final Written Decision invalidating the '393 Patent, UTC relied on those same expert declarations during prosecution of the '066 and '901 Patents to similarly argue that the claimed products differed from those of Moriarty 2004.  *See* Response to Non-Final Office Action (U.S. Application No. 14/849,981) (Aug. 24, 2016); Response to Non-Final Office Action (U.S. Application No. 14/754,932) (Aug. 11, 2016).  The Examiner of the '066 and '901 Patents only withdrew the obviousness and anticipation rejections after receiving the expert declarations submitted by UTC during the '393 Patent IPR proceeding.  *See* Final Rejection (U.S. Application No. 14/849,981) (Nov. 30, 2016) (withdrawing obviousness and anticipation rejections but maintaining obviousness-type double patenting rejection); Final Rejection (U.S. Application No. 14/754,932) (Oct. 19, 2016) (same).  In withdrawing the obviousness rejection of the '066 Patent, moreover, the Examiner expressly relied on the expert declarations as evidence that the claimed product differed from Moriarty 2004.  *See* Final Rejection (U.S. Application No. 14/849,981) (Nov. 30, 2016) at 2 ("[T]he declarations [submitted by UTC during the '393 Patent IPR proceeding] describe the product of Moriarty to have a different impurity profile from the product [of] the instant claims where [the] salt formation step is present.").

By relying on evidence submitted during the '393 Patent IPR proceeding to purportedly establish that the claimed inventions of the '066 and '901 Patents differed from the product described in Moriarty 2004, UTC confirmed that the '066 and '901 Patents claim the same treprostinil product claimed in the '393 Patent.  The PTAB invalidated the claims of the '393 patent, and the Federal Circuit affirmed.  *See SteadyMed Ltd.*, IPR2016-00006, Paper No. 82 at 84; *United Therapeutics Corp. v. SteadyMed Ltd.*, 702 Fed. App'x. 990 (Fed. Cir. 2017) (affirming

████████████████████████

invalidation of '393 Patent).    Because the product of the '393 Patent is not valid, the "pharmaceutical composition" and "pharmaceutical batch" of the '066 and '901 Patents, respectively, are not directed to novel and nonobvious products and thus are invalid product by process claims.    "If the product in a product-by-process claim is the same as or obvious from a product of the prior art, the claim is unpatentable even though the prior product was made by a different process."  *Thorpe*, 777 F.2d at 697; *see also Amgen.*, 580 F.3d at 1366 ("It has long been the case that an old product is not patentable even if it is made by a new process.").    Because the '066 and '901 Patents claim the same treprostinil product claimed by the '393 Patent, which was invalidated by the PTAB in its Final Written Decision and affirmed by the Federal Circuit, the claims of the '066 and '901 Patents are invalid as being directed to the same product as the '393 Patent.



Further, ████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████. More specifically, ██████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████. *See* UTC_OREN_0084429-309 at UTC_OREN_00844304. ██████████████████████████████ ███████████████████████████████████████ ██████████████████████████████████████. *See id.* at UTC_OREN_00844302-303. ████████████████████████ ███████████████████████████████████████



. Moreover,

. *Id.*

(*see* UTC_OREN_00844310-387 at UTC_OREN_00844323),

. *See*

UTC_OREN_00844298-309 at UTC_OREN_00844304.

. *Compare*

UTC_LIQ00214670-671 to UTC_OREN_00844298-309 at UTC_OREN_00844304.

*See* UTC_OREN_00842215-236 at

UTC_OREN_00842235. Finally,

*See* UTC_WAT_00333318-323.

UTC_OREN_00572118-2132.

*Id.* at UTC_OREN_00572124-2125.

████████████████████████████████████ *Id*. at UTC_OREN_00572127 (emphasis added). ███████████████████████████████████████████████████

███████████████████████████████████████████████████ in the '066 and '901 patent.  As such, the product-by-process claims of the '066 and '901 patents are invalid as they claim an old product.

## V.    U.S. PATENT NO. 10,716,793

The '793 Patent issued July 21, 2020 from application No. 16/778,662, filed January 31, 2020.  *See* '793 Patent at 1.  Application No. 16/778,662 is a continuation of 16/536,954, filed on August 9, 2019, which is a continuation of Application No. 15/011,999, filed on February 1, 2016, now Patent No. 10,376,525, which is a division of Application No. 13/469,854, filed on May 11, 2012, now Patent No. 9,339,507, which is a division of Application No. 12/591,200, filed on November 12, 2009, now Patent No. 9,358,240, which is a continuation of Application No. 11/748,205, filed on May 14, 2007, now abandoned.  *Id*.

The '793 Patent is directed to methods of treating pulmonary hypertension where treprostinil is delivered by inhalation.  '793 Patent, Abstract, claims 1-8.  UT's Preliminary Infringement Contentions served on October 16, 2020 assert claims 1, 4, and 6-8 (collectively, "the Asserted Claims") of the '793 Patent.

Asserted Claim 1, the only independent claim, recites the following:

1[a] A method of treating pulmonary hypertension comprising administering by inhalation to a human suffering from pulmonary hypertension a therapeutically effective single event dose of a formulation comprising treprostinil or a pharmaceutically acceptable salt thereof

1[b] with an inhalation device,

*/s/ Douglas W. Cheek*
Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 298-0702
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*
*Liquidia Technologies, Inc.*

OF COUNSEL:
Sanya Sukduang
Jonathan R. Davies
Douglas W. Cheek
COOLEY LLP
1299 Pennsylvania Avenue, NW Suite 700
Washington, DC 20004-2400
(202) 776-2982
(202) 776-2049

Erik Milch
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
(703) 456-8000

Ivor Elrifi
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6840

Lauren Krickl
Deepa Kannappan
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5065
(650) 843-5673

Dated: September 28, 2021

## CERTIFICATE OF SERVICE

I, Nathan R. Hoeschen, hereby certify that on September 28, 2021, this document was

served on the persons listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Michael J. Flynn
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

Amy Mahan
MCDERMOTT WILL & EMERY LLP
200 Clarendon Street, Floor 58
Boston, MA 02116-5021
(617) 535-4000
amahan@mwe.com

William C. Jackson
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4216
wjackson@goodwinlaw.com

Bill Ward
BOIES SCHILLER FLEXNER LLP
725 S. Figueroa Street, 31st Floor
Los Angeles, CA 90017
(213) 995-5745
bward@bsfllp.com

Huiya Wu
Joel Broussard
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 459-7270
hwu@goodwinlaw.com
jbroussard@goodwinlaw.com

Adam W. Burrowbridge
Joshua Revilla
Timothy M. Dunker
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street
Washington, DC 20001-1531
(202) 756-8000
aburrowbridge@mwe.com
jrevilla@mwe.com
tdunker@mwe.com

Douglas H. Carsten
Art Dykhuis
Jiaxiao Zhang
Katherine Pappas
MCDEMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA 92615
(949) 851-0633
dcarsten@mwe.com
adykhuis@mwe.com
jiazhang@mwe.com
kpappas@mwe.com

Harrison Gunn
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1064
hgunn@goodwinlaw.com

*/s/ Nathan R. Hoeschen*
Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*
*Liquidia Technologies, Inc.*

# Exhibit C

| From: | Flynn, Michael J. |
|-------|-------------------|
| To: | Nate Hoeschen; Karen Keller |
| Subject: | RE: UTC/LIQ - Liquidia"s MSJ Reply Brief |

Thanks, Nate.  Please serve these corrected versions at your earliest convenience.

_____

**MICHAEL J. FLYNN**

Partner | Morris, Nichols, Arsht & Tunnell LLP

(302) 351-9661 Direct

**mflynn@morrisnichols.com**

---

**From:** Nate Hoeschen <nhoeschen@shawkeller.com>
**Sent:** Monday, February 21, 2022 9:03 AM
**To:** Flynn, Michael J. <mflynn@morrisnichols.com>; Karen Keller <kkeller@shawkeller.com>
**Subject:** [EXT] RE: UTC/LIQ - Liquidia's MSJ Reply Brief

Michael,

I hope you had a pleasant weekend.  We will correct exhibits 33 and 41.  While I don't see anything improper in including contentions, we would be willing to cut down those exhibits to avoid a dispute.  Similarly, while there is no requirement for an attorney declaration in the rules, we would be willing to include one in the interest of avoiding a dispute on these issues.

Best,
Nate

---

**From:** Nate Hoeschen
**Sent:** Friday, February 18, 2022 5:50 PM
**To:** Flynn, Michael J. <mflynn@morrisnichols.com>; Karen Keller <kkeller@shawkeller.com>
**Subject:** RE: UTC/LIQ - Liquidia's MSJ Reply Brief

Michael,

We'll take a look at the issues you've flagged.  Could you let me know where you see a requirement for an attorney declaration in Rule 56?

Have a nice weekend,

-Nate

---

**From:** Flynn, Michael J. <mflynn@morrisnichols.com>
**Sent:** Friday, February 18, 2022 4:10 PM
**To:** Nate Hoeschen <nhoeschen@shawkeller.com>; Karen Keller <kkeller@shawkeller.com>
**Subject:** UTC/LIQ - Liquidia's MSJ Reply Brief

Nate & Karen,

Pursuant to Judge Hall's order yesterday, we'll be submitting hard copies of the briefing on Liquidia's MSJ next week.  In reviewing Liquidia's reply brief, there were a couple of things that concerned us and that we would ask that Liquidia consider correcting in advance of the submission to Judge Hall:

1. Liquidia did not provide an atty declaration attesting to the authenticity of its exhibits, as is standard practice and required under Rule 56;
2. Ex. 33 has errors in the claim language of the '901 patent (as reflected in the Certificate of Correction for that patent);
3. Ex. 41 omits a limitation in claim 8 of the '066 patent; and
4. Exs. 42 and 43 are 450+ pages of Liquidia's invalidity contentions, but Liquidia cites to just a few pages from each document in its brief, in what appears to be an improper attempt to get the entirety of the invalidity contentions into the record.

To avoid UTC from having to present objections to these exhibits, we ask that Liquidia address these issues and file corrected copies supported by an attorney declaration.  Let me know if you'd like to discuss.

- Michael

————————————————————————

**MICHAEL J. FLYNN**
Partner | Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 351-9661 Direct
**mflynn@morrisnichols.com | vcard | bio | www.morrisnichols.com**

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.