IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | **Redacted - Public Version** |
| v. | ) ) | C.A. No. 20-755-RGA-JLH |
| LIQUIDIA TECHNOLOGIES, INC., | ) ) | ███████████████████ |
| Defendant. | ) | |

## BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRESUMPTION UNDER 35 U.S.C. § 295

OF COUNSEL:

Sanya Sukduang
Jonathan Davies
Douglas W. Cheek
Adam Pivovar
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
(202) 842-7800

Erik Milch
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5640
(703) 546-8000

Ivor Elrifi
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant Liquidia Technologies, Inc.*

Lauren Krickl
Deepa Kannappan
Brittany Cazakoff
Kyung Taeck Minn
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000


March 8, 2022

TABLE OF CONTENTS

Page

I.      INTRODUCTION .............................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................. 1

        A.      Liquidia Cooperated with UTC's Discovery Directed at Yonsung ...................... 1

                1.      UTC Received Over 13,000 Pages of Yonsung Documents .................... 2

                2.      Liquidia Promptly Agreed to Produce Samples .......................... 4

                3.      Liquidia Did Not Oppose UTC's Properly Narrowed Discovery
                        Under the Hague Convention ....................................................... 5

                4.      Liquidia Provided Interrogatory Responses Identifying the API
                        Batches Corresponding to Intermediate Batches ................................ 6

                5.      UTC Never Specifically Identifies What Additional Discovery of
                        the Production Process It Allegedly Lacks ...................................... 7

        B.      Liquidia 30(b)(6) Testimony Confirms It Lacks Corporate Knowledge of
                Yonsung's Manufacturing Process Beyond the Open Portion of the DMF .......... 8

        C.      Non-Parties LGM and GlobePharm Complied with UTC's Subpoenas .............. 8

        D.      Liquidia Sought Discovery from UTC on the Same Intermediates,
                Impurities, and Samples of Intermediates and UTC Refused to Produce ........... 10

III.    ARGUMENT .................................................................................................. 10

        A.      Legal Standard ........................................................................... 10

        B.      UTC Does Not Show A Substantial Likelihood of Infringement ...................... 12

                1.      Accused Process Does Not Meet the Claimed Impurities
                        Comparison ............................................................................ 12

                2.      Treprostinil Sodium Is Not Stored at Ambient Temperature .................. 15

        C.      UTC Knows and Understands the Accused Process ............................................ 18

        D.      UTC Cannot Use § 295 To Overcome Its Poor Claim Drafting ........................ 20

IV.     CONCLUSION ............................................................................................... 20

<u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Alcon Rsch. Ltd. v. Barr Lab'ys, Inc.*,
    745 F.3d 1180 (Fed. Cir. 2014) ...................................................................17

*Aventis Pharms., Inc. v. Barr Lab'ys, Inc.*,
    411 F. Supp. 2d 490 (D.N.J. 2006) ..............................................................12

*Creative Compounds, LLC v. Starmark Lab'ys*,
    651 F.3d 1303 (Fed. Cir. 2011)....................................................................11

*Dasso Int'l, Inc. v. MOSO N. Am., Inc.*,
    No. 17-1574-RGA, 2021 WL 3476197 (D. Del. July 25, 2021) ...........................11

*LG Display Co. v. AU Optronics Corp.*,
    709 F. Supp. 2d 311 (D. Del. 2010)......................................................... 10-11

*Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*,
    77 F.3d 1364 (Fed. Cir. 1996).......................................................................11

*Nutrinova Nutrition Specialties & Food Ingredients GmbH v. Int'l Trade Comm'n*,
    224 F.3d 1356 (Fed. Cir. 2000)........................................................... 10-11, 18

*Syngenta Crop Protection, LLC v. Willowood, LLC*,
    No. 15-274, 2017 WL 1133378 (M.D.N.C. Mar. 24, 2017)............................ 11-12

**Legislative Materials**

S. REP. NO. 100-83 (1987) ..............................................................................19

**Statutes**

35 U.S.C. § 295 ................................................................................... *passim*

**Table of Exhibits**

| Ex. 1 | Drug Master File No. 27680 (Open Portion) (LIQ00000001 – LIQ00000624) |
|---|---|
| Ex. 2 | Drug Master File No. 27680 (Closed Portion) (LIQ00573512 – LIQ00573791) |
| Ex. 3 | FDA Letter of Tentative Approval (LIQ02818821 - LIQ02818855) |
| Ex. 4 | NDA 213005 Section 3.2.S.2.2 Description of Manufacturing Process and Process Controls (LIQ00037007) |
| Ex. 5 | Excerpted translation of test order and certificate of analysis for ███████ (Original: LIQ00579812 - LIQ00579814) (Translation: UTC_LIQ00236722 - UTC_LIQ00236724) (Certification: UTC_LIQ00236926) |
| Ex. 6 | Excerpted translation of test order and certificate of analysis for ███████ (Original: LIQ00578995) (Translation: UTC_LIQ00236186) (Certification: UTC_LIQ00236278) |
| Ex. 7 | Excerpted translation of test order and certificate of analysis for ███████ (Original: LIQ00579612) (Translation: UTC_LIQ00236370) (Certification: UTC_LIQ00236422) |
| Ex. 8 | Douglas W. Cheek email titled "RE: United Therapeutics v. Liquidia (20-755): Correspondence re Liquidia's RFP Responses," sent February 1, 2021 |
| Ex. 9 | Plaintiff's First Set of Requests for Production of Documents to Liquidia Technologies, Inc. (1-67), served October 1, 2020 |
| Ex. 10 | Jiaxiao Zhang email titled "RE: United Therapeutics v. Liquidia (20-755): Correspondence re Liquidia's RFP Responses," sent September 1, 2021 |
| Ex. 11 | Defendant Liquidia Technologies, Inc.'s Responses and Objections to Plaintiff's First Set of Requests for Production of Documents (1-67), served November 2, 2020 (excerpted) |
| Ex. 12 | Douglas W. Cheek Response Letter to UTC regarding UTC's First Set of Requests for Production, served January 15, 2021 |
| Ex. 13 | Transcript from the January 21, 2022 Deposition of Hamilton J. Lenox, in *United Therapeutics Corporation v. Liquidia Technologies, Inc.,* Case No. 20-755 (excerpted) |
| Ex. 14 | William C. Jackson email titled "RE: United Therapeutics v. Liquidia: Meet and Confer re Letter of Request," sent June 15, 2021 |
| Ex. 15 | Defendant Liquidia Technologies, Inc.'s First Supplemental Responses to Plaintiff United Therapeutics Corporation's Third Set of Interrogatories (Nos. 11-12), served October 27, 2021 |
| Ex. 16 | United Therapeutics Corporation's Supplemental Objections and Responses to Defendant's Second Set of Interrogatories (Nos. 8-13) and Fourth Set of Interrogatories (Nos. 15-16), served September 28, 2021 |
| Ex. 17 | United Therapeutics Corporation's Objections and Responses to Defendant's Fifth Set of Interrogatories (Nos. 17-19), served September 13, 2021 |
| Ex. 18 | United Therapeutics Corporation's Objections and Responses to Defendant's Sixth Set of Interrogatories (Nos. 20-21), served September 15, 2021 |
| Ex. 19 | Transcript from the September 14, 2021 Deposition of David Walsh, Ph.D., in *United Therapeutics Corporation v. Liquidia Technologies, Inc.,* Case No. 20-755 (excerpted) |

| Ex. 20 | Transcript from the September 14, 2021 Deposition of Sudersan Tuladhar, Ph.D., in *United Therapeutics Corporation v. Liquidia Technologies, Inc.,* Case No. 20-755 (excerpted) |
|---|---|
| Ex. 21 | Transcript from the September 17, 2021 Deposition of Hitesh Batra, Ph.D., in *United Therapeutics Corporation v. Liquidia Technologies, Inc.,* Case No. 20-755 (excerpted) |
| Ex. 22 | Transcript from the October 29, 2021 Deposition of Jeffrey Kindig, in *United Therapeutics Corporation v. Liquidia Technologies, Inc.,* Case No. 20-755 (excerpted) |
| Ex. 23 | Sanya Sukduang email titled "RE: United Therapeutics v. Liquidia (20-755): Liquidia's 30(b)(6) Witnesses," sent October 6, 2021 |
| Ex. 24 | Transcript from the September 22, 2021 Discovery Dispute Hearing before Magistrate Judge Hall, in *United Therapeutics Corporation v. Liquidia Technologies, Inc.,* Case No. 20-755 (excerpted) |
| Ex. 25 | Non-Party LGM Pharma's Motion to Quash Subpoenas and to Transfer to District Court of Delaware and Incorporated Memorandum of Law, entered on S.D. Fla. docket on August 2, 2021 |
| Ex. 26 | Transcript from the October 7, 2021 Deposition of Todd Battistoni, in *United Therapeutics Corporation v. Liquidia Technologies, Inc.,* Case No. 20-755 (excerpted) |
| Ex. 27 | Jonathan Davies email titled "RE: UTC v. Liquidia - LGM Pharma production," sent December 29, 2021 |
| Ex. 28 | Jiaxiao Zhang email titled "RE_ United Therapeutics v. Liquidia (20-755)_ Deponent Availability," sent September 21, 2021 |
| Ex. 29 | Lauren Krickl email titled "RE: United Therapeutics v. Liquidia (20-755): deficient Liquidia discovery responses," sent September 24, 2021 |
| Ex. 30 | United Therapeutics Corporation's Objections and Responses to Liquidia's First Set of Requests for the Production of Documents and Things to Plaintiff (Nos. 1-80), served September 3, 2020 |
| Ex. 31 | Transcript from the December 30, 2021 Deposition of F. Dean Toste, Ph.D, in *United Therapeutics Corporation v. Liquidia Technologies, Inc.,* Case No. 20-755 (excerpted) |
| Ex. 32 | Rebuttal Expert Report of Dr. Jeffrey Winkler on the Issue of Non-Infringement and Addressing the Expert Reports of Drs. Nuckolls and Toste, submitted November 12, 2021 |
| Ex. 33 | Transcript from the September 16, 2021 Deposition of Jeffrey Kindig, in *United Therapeutics Corporation v. Liquidia Technologies, Inc.,* Case No. 20-755 (excerpted) |
| Ex. 34 | Chart depicting the levels of █████████████████████████ ██████████████████████████████████████ |
| Ex. 35 | Yonsung Fine Chemicals Co., Certificate of Analysis for ███████, date issued October 18, 2021 (LIQ02816003-LIQ02816004) |
| Ex. 36 | Transcript from the January 4, 2022 Deposition of Colin Nuckolls, Ph.D, in *United Therapeutics Corporation v. Liquidia Technologies, Inc.,* Case No. 20-755 (excerpted) |

| Ex. 37 | Liquidia Raw Material Specification - Treprostinil Sodium (LIQ00083696 – LIQ00083699) |
|---|---|
| Ex. 38 | Quality Agreement between Liquidia Technologies, Inc., LGM Pharma LLC, and Yonsung Fine Chemicals Co., executed July 2019 (LIQ00572529) |
| Ex. 39 | Temperature logger data for GMP Fridge 1430 (LIQ02798682) |
| Ex. 40 | Temperature logger data for GMP Fridge 2175 (LIQ02798683) |
| Ex. 41 | LGM SOP 50-01 (LGM_00503-509) |
| Ex. 42 | LGM SOP 50-07 (LGM_00498-502) |
| Ex. 43 | LGM Pharma Temperature Logger Data (LGM_001092 – LGM_001096) |
| Ex. 44 | LGM Pharma Transfer and Receipt Log for Treprostinil Sodium (LGM_000467) |
| Ex. 45 | ██████████ (LIQ00573977) |
| Ex. 46 | Translation of ██████████ (LIQ02819049 – LIQ02819050) |
| Ex. 47 | Batch production record for ██████████ (LIQ00580016 – LIQ00580032) |
| Ex. 48 | Translation of batch production record for ██████████ (LIQ02819051 – LIQ02819068) |
| Ex. 49 | ███████████████████████████ ███████████████ (UTC_LIQ00264211 – UTC_LIQ00264213) |
| Ex. 50 | Transcript from the January 19, 2022 Deposition of Hugh Smyth, Ph.D., in *United Therapeutics Corporation v. Liquidia Technologies, Inc.,* Case No. 20-755 (excerpted) |
| Ex. 51 | Transcript from the September 9, 2021 Deposition of Benjamin Maynor, Ph.D. in *United Therapeutics Corporation v. Liquidia Technologies, Inc.,* Case No. 20-755 (excerpted) |

## I.      INTRODUCTION

Knowing it cannot meet its burden of establishing infringement of the '066 patent, UTC now seeks to have Liquidia disprove what UTC cannot prove.[1]  UTC's failure to establish infringement is not due to any lack of information and cooperation by Liquidia, but instead because Liquidia does not infringe—these circumstances cannot support the application of the punitive burden shifting UTC now seeks.  UTC's motion fails both because it cannot demonstrate a substantial likelihood of infringement and because UTC's claims that they were unable to discern Yonsung Fine Chemicals Co., Ltd.'s ("Yonsung") manufacturing process for treprostinil sodium and storage conditions are not credible given the voluminous discovery produced to UTC on these precise issues.  Indeed, UTC's own expert and § 295 motion declarant, Dr. Toste, admitted he had "***detailed information*** about the synthesis of … treprostinil sodium," from Yonsung's DMF as well as "batch production records, quality control testing documentation, and certificates of analysis from Yonsung and Liquidia[.]"  (D.I. 314, Ex. 1, ¶¶ 62-63 (emphasis added).)  The discovery UTC alleges it lacks relates to (1) impurity information, which is not part of "the actual process used to manufacture" treprostinil sodium API, and which has already been produced, (2) storage information, which has already been produced, and (3) a sample of an intermediate used to make treprostinil sodium, which neither ████ Liquidia or Yonsung possess.  Because UTC fails both prongs of 35 U.S.C. § 295, it should retain the burden of proving infringement.

## II.     FACTUAL BACKGROUND

### A.      Liquidia Cooperated with UTC's Discovery Directed at Yonsung

Yonsung is not a defendant in this litigation, and UTC, despite being aware of Yonsung's

---

[1] Liquidia acknowledges the Court's discretion to entertain UTC's present motion.  That being said, UTC first raised its § 295 position in September 2021.  In Liquidia's view, UTC's motion is untimely as it is beyond the period for dispositive motions and motions in limine.

role since September 2020, never attempted to make them a party.  UTC admits that Liquidia and Yonsung have a mere "customer/supplier relationship." Ex. 12, 2.  Nonetheless, Liquidia, through its counsel, produced documents from Yonsung.  Rather than blocking relevant discovery, Liquidia *facilitated* the production of discovery from Yonsung, and UTC's contrary allegations are false.

### 1.    UTC Received Over 13,000 Pages of Yonsung Documents

As part of the over 2.8 million pages of document discovery produced to UTC in this action, Liquidia facilitated the production of 13,895 pages of documents from Yonsung, which provide the details of Yonsung's accused API manufacturing process.  This production included Yonsung's complete DMF (both open (applicant) and closed (restricted) portions), complete executed batch production records for all treprostinil sodium batches produced for Liquidia, certificates of analysis ("COAs") for treprostinil sodium and intermediates, documentation on the characterization and testing of impurities, stability testing and analysis for treprostinil sodium, and documents providing the storage conditions for treprostinil sodium.  Dr. Toste and UTC's other '066 infringement expert, Dr. Nuckolls, reviewed and relied upon this data to support their infringement opinions.  (D.I. 314, Ex. 1, ¶¶ 62-63; *see also* D.I. 313, Ex. B, ¶¶ 80-105.)



---

[2] All references to "Ex. 1" through "Ex. 50" are to exhibits attached to this Brief in Opposition to Plaintiff's Motion for Presumption Under 35 U.S.C. § 295, unless otherwise noted.  Parenthetical bates numbers next to exhibit cites are pin cites to specific pages in the exhibits.

---

[3] Liquidia's New Drug Application ("NDA") for LIQ861 was tentatively approved by the FDA on November 5, 2021.   (*See* Ex. 3; *see also* https://liquidia.com/news-releases/news-release-details/fda-grants-tentative-approval-liquidias-yutrepiatm-treprostinil (last visited Mar. 8, 2022).) Liquidia's description of the manufacture of treprostinil sodium API in its NDA relies solely on the disclosure provided by reference to Yonsung's DMF.  (*See* Ex. 4 (LIQ00037007).)  Given that this information in the DMF was sufficient for FDA approval, it is not credible that it is somehow insufficient for UTC to understand the manufacturing process.

[REDACTED]

### 2.   Liquidia Promptly Agreed to Produce Samples

Liquidia promptly offered to produce API and LIQ861 product samples, sought by UTC, it had in its possession, custody, or control—0.5 grams of its treprostinil sodium API and 0.5 grams of "bulk inhalation powder," five samples of finished encapsulated drug product for each proposed dose of LIQ861, and five proposed dry powder inhalers—on February 1, 2021.  (Ex. 8; Ex. 9, Request Nos. 5-6, 8-11.)  However, UTC did not provide shipping information for these samples until September 1, 2021, more than half a year later.  (*See* Ex. 10.)  It appears that UTC never

performed *any* testing on these samples.  UTC also sought representative samples of ████████ ███████████████████████████████████████████████████ (*See* Ex. 9, Request Nos. 6-7.)  Liquidia made clear that it did not have any samples of ████ .  (*See* Ex. 11, 12-13.)  Further, "Liquidia inquired and Yonsung confirmed that it does not maintain samples of █████." (Ex. 12, 2.)  This fact was also confirmed by a representative of Yonsung's U.S. intermediary, LGM Pharma, who testified that that LGM "████████████████████████████████████████ ████████████████████████████████." (Ex. 13, 16:24-17:11.)

### 3.       Liquidia Did Not Oppose UTC's Properly Narrowed Discovery Under the Hague Convention

UTC also complains that Liquidia initially opposed UTC's discovery pursuant to the Hague Convention.  (D.I. 312, 6.)  Liquidia did not move to quash the request in its entirety, but only to the extent that UTC's requests were duplicative, overbroad, irrelevant, or unduly burdensome. (D.I. 94.)  By the time of UTC's Hague Request, UTC was already in receipt of Yonsung documents, including the complete DMF, and counsel for Liquidia offered to continue facilitating production from Yonsung to avoid duplicate burdensome discovery.  (D.I. 94, 1-2.)  Indeed, Judge Hall questioned "whether the information requested has now been produced[,]" ordered that the parties confer to "narrow[] [the request] to cover only relevant information and/or reduce the burden on the third party and/or the foreign court[,]" and asked "whether three deponents are necessary and whether Plaintiff would be amenable to requesting testimony from a single corporate representative."  (D.I. 107.)  Moreover, the Court stated that "[it] is inclined to substantially narrow" UTC's request for "a representative sample of each of the components used or created during the synthesis of [API] . . . including, without limitation, starting products, intermediates, and end products."  (*Id.*; D.I. 82, Ex. A-2, Request No. 3.)

The parties subsequently conferred and UTC narrowed the scope of its Hague Request to

conform to Judge Hall's order, leaving only one dispute.  (*See* Ex. 14.)  Liquidia did not oppose

UTC's Hague Request after the parties' meet-and-confer, leading to the speedy resolution of the

single-remaining discovery dispute on June 21, 2021, where the Court granted UTC's Hague

Request.  (D.I. 123.)  The request letter executed by Judge Hall did not obligate Yonsung to

produce samples of API or intermediates that do not exist and UTC did not request a Yonsung

facilities inspection.  (D.I. 120-1, Ex. A-2, Request No. 2; D.I. 123.)  Moreover, even after UTC's

Hague request was denied by the Korean authorities as they do "not execute Letters of Request

issued for the purpose of obtaining pre-trial discovery of documents[,]" Liquidia continued to

facilitate the production of discovery from Yonsung.  (D.I. 215.)

### 4.   Liquidia Provided Interrogatory Responses Identifying the API Batches Corresponding to Intermediate Batches

As part of its Hague Request, UTC sought information on how "the batch numbers for

batches of treprostinil sodium correlate with batch numbers for the corresponding batches of

███████████████ used in the manufacture of that batch of treprostinil sodium[.]" (D.I. 82,

Ex. A-1, ¶ 2.)  In a meet-and-confer pursuant to the Court's oral order (D.I. 107), Liquidia's

counsel offered in good faith to facilitate a response to the interrogatory *to assist UTC* in its

discovery efforts and to limit the burden of preparation placed on any Yonsung witness for a

deposition under the Hague.  (*See* Ex. 14.)  Yonsung's CEO, Dr. Chang Young Oh, was also

identified as a person knowledgeable about Yonsung's batch number naming conventions.  (*See*

Ex. 15, 5-6.)  Thus, UTC's allegation that it removed the entirety of its deposition topics are false—

UTC only removed one deposition topic, not the entirety of its deposition questions.  (*See* Ex. 14;

*see also* (D.I. 215, Ex. 1) (showing two deposition topics remaining in the Hague Request).)

Regardless, UTC was provided a thorough response to its interrogatories, facilitating UTC's

discovery efforts.  (*See* Ex. 15, 3-5.)  After UTC's Hague Request was denied, UTC never inquired

as to whether Dr. Oh would be willing to submit to a deposition.

> **5.      UTC Never Specifically Identifies What Additional Discovery of the Production Process It Allegedly Lacks**

UTC never articulates what additional discovery it believes it should have been able to obtain, but generally complains that "while UTC received some Yonsung documents, it did not receive the documents requested showing temperatures as well as each impurity present throughout the API manufacturing process." (D.I. 312, 18.)  As discussed *supra* Section II.A.1, UTC received an enormous amount of discovery, including the documents that define Yonsung's manufacturing process from both a regulatory and infringement perspective and it is unclear what additional discovery UTC believes exists.  Liquidia produced its complete NDA, executed batch records, and specifications for the handling and storage of treprostinil sodium, available temperature logging data from shipments of API and GMP storage at Liquidia, and 30(b)(6) witness testimony from multiple witnesses on Liquidia's manufacturing process, storage conditions, and analytical testing.  (*See e.g.,* Exs. 37, 39-40, 43-44; Ex. 22, 292:20-293:5, 299:3-304:23, 409:19-410:5; Ex. 33, 159:17-160:14; Ex. 51, 100:16-102:23, 121:2-23.) ███████

███████████████████████████████████████████

███████████████████████████████████████████

████    In fact, UTC refused to provide similar information on its own process (allegedly embodying the '066 patent) in response to several of Liquidia's interrogatories.  (Ex. 16, 3-5, 10-11; Ex. 17, 3-7; Ex. 18, 3-6.)  Further, ████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████.  (*See* Ex. 19, 106:5-107:7, 174:8-176:10; Ex. 20, 30:1-20, 33:20-34:3, 36:5-39:16, 62:14-64:3; Ex. 21, 125:18-126:11.)  UTC did not request a

facilities inspection of Yonsung in its issued Hague Request and never sought a facilities inspection of Liquidia.  (D.I. 120-1, Ex. B-2, Requests 1-2; D.I. 123.)

**B.**     **Liquidia 30(b)(6) Testimony Confirms It Lacks Corporate Knowledge of Yonsung's Manufacturing Process Beyond the Open Portion of the DMF**

In addition to its RFPs and motion under the Hague Convention, UTC also sought 30(b)(6) testimony from Liquidia on Yonsung's DMF and manufacturing process.  (D.I. 165, ¶¶ 9, 11, 13, 16-20.)  On this point, UTC accuses Liquidia of reneging on signing a declaration stating that Liquidia has no corporate knowledge as to Yonsung's DMF and the manufacture of the API.  (D.I. 312, 8-9.)  However, UTC omits the fact that the declaration it prepared sought to artificially and incorrectly limit Liquidia, which has knowledge regarding the open portion of the DMF.  (*See* Ex. 23.)  UTC was unwilling to compromise on a revised declaration (*see id.*), so Liquidia provided 30(b)(6) witnesses, as expressly permitted by Judge Hall, to confirm the scope of its knowledge (*see* Ex. 24, 57:15-58:9).

**C.**     **Non-Parties LGM and GlobePharm[4] Complied with UTC's Subpoenas**

UTC also served a subpoena on non-parties LGM Pharma, LLC and GlobePharm Consulting, Inc. ("GlobePharm") for documents and testimony on Yonsung's DMF and manufacturing process.  (D.I. 138; D.I. 139.)  Joining counsel for LGM, Liquidia's counsel opposed the LGM subpoena to the extent that it was duplicative, irrelevant, and unduly burdensome.  (*See* Ex. 25.)  Omitted from UTC's brief is the fact that Judge Hall found UTC's requests to LGM for documents and communications relating to Yonsung's DMF and manufacturing process "way too broad" and that the Court was "not entirely persuaded that the documents [were] particularly relevant."  (Ex. 24, 28:2-8, 31:12-13.)  Judge Hall also noted that

---

[4] GlobePharm produced over 2,000 pages of documents, including the DMF (GLOBE0000008-407), in response to UTC's subpoena and UTC never pursued a deposition

"maybe LGM doesn't have any corporate knowledge with some of these topics, and that's fine; that's how they can answer at the deposition." (*Id.*, 32:4-7.) ███████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

To the extent that UTC asserts that Liquidia's counsel acted "in concert with" LGM and Yonsung to produce "self-serving" Yonsung documents beyond the close of fact discovery, UTC mischaracterizes Liquidia's relationship with LGM and Yonsung. (D.I. 312, 10-11.) ██████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ Contrary to UTC's assertion that Liquidia used Yonsung as a "discovery sword and shield," the documents that Liquidia's counsel produced after the fact discovery deadline were all in response to UTC's requests or to supplement expert reports. (*See, e.g.*, Ex. 27; Ex. 28; Ex. 29.) Lastly, the "inexplicably produced additional Yonsung documents in January 2022" that UTC refers to (D.I. 312, 11-12) is a single six-page Yonsung document and its corresponding translation that was produced only because Dr. Nuckolls alleged, relying on a metadata error, that the document was generated in 2021, instead of 2017 when it was actually created. (D.I. 313, Exs. W-X; D.I. 313, Ex. C, ¶ 51 ("I have been informed that the metadata for this document shows that it was last modified on April 27, 2021.").)

**D.      Liquidia Sought Discovery from UTC on the Same Intermediates, Impurities, and Samples of Intermediates and UTC Refused to Produce**

Liquidia propounded interrogatories requesting that UTC describe intermediates and impurities from UTC's manufacturing process analogous to the impurities and intermediates in Yonsung's manufacturing process, but UTC refused to provide this information.  (*See* Ex. 16, 3-5, 10-11; Ex. 17, 3-7; Ex. 18, 3-6.)  Liquidia also requested a sample of ████████████, █ ████████████████████████████████████████████ ███████████ ████████████████████████████████████████████ ███████████ ████████████████████████████████████████████ *See* Ex. 30, 60-61.) ███████████████████████████████████████████████ ████████████████████ (*See* Ex. 21, 24:13-21.)

## III.   ARGUMENT

### A.      Legal Standard

35 U.S.C. § 295 is "a burden shifting mechanism" that punitively transfers "the burden to establish infringement . . . from the patentee alleging infringement to the alleged infringer to disprove infringement."  *LG Display Co. v. AU Optronics Corp.*, 709 F. Supp. 2d 311, 335 (D. Del. 2010) (citing *Nutrinova Nutrition Specialties & Food Ingredients GmbH v. Int'l Trade Comm'n*, 224 F.3d 1356, 1359-60 (Fed. Cir. 2000)).  To trigger § 295, "the patentee must show, by a preponderance of the evidence, that 1) a substantial likelihood exists that the product was made by the patented process, and 2) the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable so to determine."  *Id*.  By its plain language, § 295 applies to process claims, but claims 1, 2, 3, 6, and 9 are product-by-process claims to which § 295 should not apply, and UTC cites no case applying § 295 to product-by-process claims.  Regardless, UTC cannot satisfy either requirement of the § 295 standard.

To satisfy the first prong of § 295, the patentee must "present evidence that would support a reasonable conclusion that the imported product was made by the patented process." *LG Display*, 709 F. Supp. 2d at 335 (citation omitted).  The second prong of § 295 requires that the patentee "show it was unable to determine the particular processes used in [the alleged infringer's] production of [the product]." *See Nutrinova*, 224 F.3d at 1360.  Courts have refused to apply § 295 when the patentee was able to determine the process used to produce the allegedly infringing product.  *See id.*; *Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1368 n.6 (Fed. Cir. 1996).  "Whether each of the two prongs of § 295 has been met is not determined subjectively by the plaintiff, but is determined objectively by the court."  *Nutrinova*, 224 F.3d at 1360.

The three cases that UTC relies on in which the Court applied § 295—*Dasso International, Inc. v. MOSO North America, Inc.*, *Creative Compounds, LLC v. Starmark Laboratories*, and *Syngenta Crop Protection, LLC v. Willowood, LLC*—are in stark contrast to the current litigation because the accused infringer in those cases provided ***extremely minimal, if any, documentation*** on the accused process.  In *Dasso* and *Creative Compounds*, the accused infringer provided ***no documentation*** on the accused process.  *See Dasso Int'l, Inc. v. MOSO N. Am., Inc.*, No. 17-1574-RGA, 2021 WL 3476197, at *25 (D. Del. July 25, 2021) ("[P]laintiffs sought documentation of the accused process, which MOSO did not provide."); *Creative Compounds, LLC v. Starmark Lab'ys*, 651 F.3d 1303, 1315 (Fed. Cir. 2011) ("Creative failed to produce documentation regarding the process." (citation omitted)).  And in *Syngenta*, despite providing "some information about the manufacturing process," the accused infringer's supplier "did not provide any ***manufacturing or batch records*** to confirm his testimony, even though he was asked for them and admitted they existed."  *Syngenta Crop Protection, LLC v. Willowood, LLC*, No. 15-274, 2017 WL 1133378, at *8-11 (M.D.N.C. Mar. 24, 2017) ("Because Syngenta has shown a substantial

likelihood of infringement and made reasonable but unsuccessful discovery efforts to obtain Tai He's production records, the Court will shift the burden under § 295 . . . ."). Here, UTC has received voluminous discovery detailing the accused process—discovery which UTC experts, Drs. Toste and Nuckolls, point to in their lengthy infringement expert reports. *See Aventis Pharms., Inc. v. Barr Lab'ys, Inc.*, 411 F. Supp. 2d 490, 513 (D.N.J. 2006) (denying application of § 295 after defendant produced DMF, noting "Plaintiffs do not claim that [manufacturer] has not been subject to discovery . . . Given its extensive arguments based on materials obtained in discovery, Plaintiffs cannot claim that they have not had benefits of the discovery process.").

**B.      UTC Does Not Show A Substantial Likelihood of Infringement**

**1.      Accused Process Does Not Meet the Claimed Impurities Comparison**

As Liquidia's expert Dr. Winkler explains more fully, UTC fails to establish a substantial likelihood that Yonsung's process meets the claimed "impurities" limitations. (Ex. 32, ¶¶ 23-54.) Specifically, UTC fails to establish a substantial likelihood that Yonsung prepares its treprostinil sodium API from a "starting batch of treprostinil [having one] or more impurities resulting from prior alkylation and hydrolysis steps . . . wherein said alkylation is alkylation of benzindene triol."[5] (*Id.*, ¶ 23-36.)  The "impurities" must result from alkylation of benzindene triol ("BTO") and hydrolysis of the resulting intermediate ███████████████████████ (*Id*.)  Impurities contained in the reagents or starting materials cannot constitute "impurities resulting from prior alkylation and hydrolysis steps . . . wherein said alkylation is alkylation of benzindene triol" even if the impurities react with the reagents used during the alkylation and hydrolysis steps.  (*Id.*)

───────────────────

[5] ██████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████

First, as UTC concedes, "Dr. Toste's analyses focused on the impurity ███████

███████" (D.I. 312, 14; *see generally* D.I. 314.)  Dr. Toste acknowledges that the impurity

███████ (or ███████) "results from" alkylation and hydrolysis of the ███████

███████ (D.I. 314, Ex. 1, ¶ 42.)  Dr. Toste further acknowledged that

███████ is different from the claimed "benzindene triol." (*Id.*) (███████ is an impurity observed

in the BTO intermediate that is used in the treprostinil synthesis.").  Because ███████

does not result from alkylation and hydrolysis of benzindene triol, this impurity fails to establish

a substantial likelihood that Yonsung prepares its API from a "starting batch of treprostinil having

one or more impurities resulting from prior alkylation and hydrolysis steps . . . wherein said

alkylation is alkylation of benzindene triol." (Ex. 32, ¶¶ 42-54.)

Dr. Toste states in his declaration and expert reports that alkylation of BTO and hydrolysis

of ███ cannot be "rule[d] out" as the source of ███████. (D.I. 314, ¶¶ 32-33.)

However, as Dr. Winkler explains, epimerization of treprostinil's C-15 alcohol to form ███████

███████ is highly unlikely. (Ex. 32, ¶ 52.)  Dr. Toste even acknowledged in his reply expert

report and deposition that epimerization of ███████ is at least "less likely" to be the source of ███-

███████ than is alkylation and hydrolysis of 15-*epi*-BTO. (D.I. 314, Ex. 3, ¶ 23; *see also*

Ex. 31, 239:20-242:8 (acknowledging alkylation and hydrolysis of ███████ is more likely than

epimerization of ███████).)  Dr. Toste, therefore, fails to establish a substantial likelihood that

Yonsung prepares API from a "starting batch of treprostinil having one or more impurities

resulting from prior alkylation and hydrolysis steps . . . wherein said alkylation is alkylation of

benzindene triol." (Ex. 32, ¶ 52.)

Finally, Dr. Toste relies on his assertion that "there were significantly different amounts

for ███████ reported in COAs provided by Yonsung and Liquidia reporting on the ███."

(D.I. 314, Ex. 2, ¶¶ 24-25.) ████████████████████████████████████

█████████████████████████████████████████████████████████ Dr. Toste

admitted that even validated HPLC assays can have significant variability in their results.  (*See*

Ex. 31, 157:21-158:11, 279:13-282:1, 303:4-305:20.)  Thus, the observed differences in 15-*epi*-

treprostinil can be easily explained as merely due to the inherent variability in the HPLC assay and

not due to true differences.  Dr. Toste's analysis fails to account for variability inherent in the

HPLC assay as the basis for any observed difference in the ███████████████ in ████

versus treprostinil sodium.  (*See* Ex. 34; Ex. 31, 279:20-282:8.)  Exhibit 34 illustrates the inherent

variability in HPLC measurements that Dr. Toste ignores by providing additional testing data cited

in Dr. Toste's expert report, but not included in the chart in his § 295 declaration.  (D.I. 314, ¶ 22;

D.I. 314, Ex. 2, ¶¶ 24-25, Supplemental Appendix).  Dr. Toste's statements about the experiments

he allegedly "would have" conducted with █████ samples are contradicted by his deposition

testimony where he testified that that neither he nor his graduate students would or could conduct

experiments for UTC.  (*Compare* D.I. 314, ¶¶ 24-38, *with* Ex. 31, 201:2-203:18.)

Dr. Nuckolls' infringement analysis "primarily focused on the 'total impurities'" reported

in Yonsung's COAs.  (D.I. 312, 15.)  Dr. Nuckolls' analysis assumes incorrectly that all impurities

seen in █████ are a result of the alkylation of BTO.  (*See* D.I. 313, Ex. C, ¶ 30.)   Using

Dr. Nuckolls' method, pre-existing impurities contained in the reagents and starting materials used

in alkylation and hydrolysis would be encompassed by the "[T]otal [I]mpurities" reported in

Yonsung's certificates of analysis.  (*Id*.) ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ Because pre-existing impurities have not "resulted from" alkylation of BTO or

14

hydrolysis of ▓▓ (even if they react with the alkylation and hydrolysis reagents), Dr. Nuckolls

fails to establish a substantial likelihood that Yonsung's process prepares API from a "starting

batch of treprostinil having one or more impurities resulting from prior alkylation and hydrolysis

steps . . . wherein said alkylation is alkylation of benzindene triol."  (D.I. 313, Ex. C, ¶¶ 28-39; Ex.

36, 63:20-67:18.)

<strong>2.        Treprostinil Sodium Is Not Stored at Ambient Temperature</strong>

As fully explained by Liquidia's expert Dr. Winkler, UTC cannot establish a substantial

likelihood that Liquidia or Yonsung infringe claims 6, 8, or 9 of the '066 patent because ▓▓▓▓



Claim 6 requires

storage of the isolated treprostinil salt at ambient temperature **before** preparing the

"pharmaceutical composition" of claim 1.   Claims 8 and 9 similarly require storage of the

treprostinil salt at ambient temperature **before** preparing the "pharmaceutical product" of claim 8.

This Court construed the term "ambient temperature" of the '066 patent to be "room temperature

(equal to or less than the range of 15°C to 30°C)."  (D.I. 119.)  UTC is in receipt of voluminous

discovery from Yonsung, LGM, and Liquidia which demonstrate that ▓▓▓▓

This is clearly not storage at

---

[6] UTC's contention that Yonsung and Liquidia "store" treprostinil sodium at ambient temperature
is ▓▓▓▓ . (*See* Ex. 50, 84:3-86:1.)

ambient temperature within the Court's construction.  (D.I. 119.) ███████████



UTC refers vaguely to one shipment of treprostinil sodium from Yonsung that experienced an out-of-specification temperature excursion during shipment to Liquidia.  (D.I. 312, 16.)  As explained more fully by Dr. Winkler, batches from this single shipment are not evidence of infringement.  (Ex. 32, ¶¶ 78-85.)  ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

UTC's other positions regarding Liquidia's alleged infringement of claims 6, 8, and 9 are similarly unavailing.  ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

UTC's unsupported allegation that "Liquidia could sell lots of the Proposed Product stored at ambient temperature" (D.I. 312, 16) has no basis in fact or law.  The infringement inquiry in Hatch-Waxman cases "is focused on a comparison of the asserted patent[s] against the product that is ***likely to be sold*** following ANDA approval," *Alcon Rsch. Ltd. v. Barr Lab'ys, Inc.*, 745 F.3d 1180, 1186 (Fed. Cir. 2014) (emphasis added) (citation and internal quotation marks omitted), not hypothetical infringement that could occur only if the allegedly infringing party was to change its method of manufacture and here, the controlling documents require ████████████████

██████.   Lastly, UTC's allegation that Liquidia stores treprostinil sodium at ambient temperature *during* ████████████████████████████ ignores that the '066 patent requires storage *before* preparation of the pharmaceutical composition. ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

### C.     UTC Knows and Understands the Accused Process

Whether the second prong of § 295 has been met is not determined subjectively by the plaintiff but is determined objectively by the court. *See Nutrinova*, 224 F.3d at 1360.   Regardless of UTC's subjective allegations, the voluminous discovery produced to UTC (*see supra* Section II.A.1), was more than enough for UTC to reasonably discern the accused process. UTC does not allege that it could not discern the '066 patent's steps of alkylation, hydrolysis, and salt formation in Yonsung's manufacturing process.   Indeed, Dr. Toste admitted he was provided "detailed" information regarding Yonsung's process from the DMF (D.I. 314, Ex. 1, ¶¶ 62-63), and Dr. Nuckolls admitted that he has sufficient data on Yonsung's manufacturing process, that the DMF identifies impurities, and that he understands Liquidia's ███████. (*See* D.I. 313, Ex. B, ¶¶ 70, 80, 82-84, 86-87, 89-90, 106-118.)   In view of this discovery and UTC's expert's reports, UTC's complaints that they somehow do not understand the process are not credible.   Also, UTC stipulated to partial judgment of non-infringement on the '901 patent's process claims, evidencing UTC's understanding of Yonsung's manufacturing process.   (D.I. 276; D.I. 278

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



Using the information from Liquidia's interrogatory response linking the batch numbers of APIs to intermediates, which Dr. Toste did for testing, as indicated in the Appendices attached to his opening expert report on infringement, a reasonable plaintiff would be able to navigate the batch production records and simply follow their step-by-step procedures to create each intermediate and the final API himself. (D.I. 314, Ex. 1, Section VIII.)

The Senate Judiciary Committee drafting 35 U.S.C. § 295 acknowledged the concern that the statute could be used "to harass U.S. competitors whose operations depend on importing goods from overseas." S. REP. NO. 100-83, at 40 (1987). To alleviate such concerns, Congress pointed to the DMF as a valuable source of information on the accused process to alleviate this concern:

> The DMF is a confidential file, not available to the public or even to the generic company for inspection. The DMF is complied [sic] from information supplied directly to the FDA from the manufacturer and from inspections by FDA personnel in the factories of the manufacturer. ***However, if the file can be obtained by the U.S. courts under a protective order without violating any other provisions of law, it could be used to assist the court in resolving whether the patented process was used in making the goods in question***. It might alleviate the need to rely on indirect forms of evidence, such as chemical analysis, to trace the process used.

*Id.*, at 44 (emphasis added).  Here, the production of Yonsung's DMF "alleviate[s] the need to rely

19

on indirect forms of evidence, such as chemical analysis[.]" *Id.* Clearly, Congress intended the Court and UTC to rely on the DMF in "resolving whether the patented process was used in making the goods in question." *Id.* The fact that the FDA granted tentative approval for LIQ861 relying on the Yonsung DMF, also supports the notion that the DMF discloses Yonsung's manufacturing process. (*See* Ex. 3; Ex. 4 (LIQ00037007).)

Finally, UTC's failure to submit a declaration from Dr. Nuckolls affirmatively stating that he lacks sufficient information on Yonsung's manufacturing process and UTC's admission of non-infringement as to the '901 patent is further proof that UTC was able to understand Yonsung's manufacturing process, further supporting the denial of UTC's motion. (D.I. 276; D.I. 278.)

### D.   UTC Cannot Use § 295 To Overcome Its Poor Claim Drafting

UTC improperly seeks to shift the burden because it lacks proof that Yonsung's process meets certain claim requirements. Under § 295, burden shifting is only appropriate if UTC cannot discern the "process actually used in the production of the product." Here, Liquidia complied with and exceeded § 295's directive. UTC pursued these claims despite knowing that it lacked corresponding evidence and samples from its own process (*see supra* II.A.2, II.D). Section 295 was not enacted to rescue patentees from poorly drafted claims or from a failure to prove infringement despite obtaining, through discovery, the complete process used to make the accused product.

## IV.   CONCLUSION

For the reasons stated above, Liquidia respectfully requests that the Court deny UTC's motion under 35 U.S.C. § 295. To the extent that UTC's motion is denied, statements from UTC's briefing (*see* D.I. 312, 1), Dr. Toste's declaration (*see* D.I. 314, 9-15), and Dr. Nuckolls' reply expert report (*see* D.I. 313, Ex. C, 12) that they have insufficient information or samples to assess infringement amount to an admission that they cannot demonstrate infringement of the '066 patent.

20

/s/ Nathan R. Hoeschen
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant Liquidia
Technologies, Inc.*

OF COUNSEL:
Sanya Sukduang
Jonathan Davies
Douglas W. Cheek
Adam Pivovar
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202) 842-7800

Erik Milch
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5640
(703) 546-8000

Ivor Elrifi
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Deepa Kannappan
Lauren Krickl
Brittany Cazakoff
Kyung Taeck Minn
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Dated: March 8, 2022

## <u>CERTIFICATE OF SERVICE</u>

I, Nathan R. Hoeschen, hereby certify that on March 8, 2022, this document was served

on the persons listed below in the manner indicated:

### <u>BY EMAIL</u>

Jack B. Blumenfeld
Michael J. Flynn
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

William C. Jackson
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4216
wjackson@goodwinlaw.com

Bill Ward
BOIES SCHILLER FLEXNER LLP
725 S. Figueroa Street, 31st Floor
Los Angeles, CA 90017
(213) 995-5745
bward@bsfllp.com

Huiya Wu
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 459-7270
hwu@goodwinlaw.com

Adam W. Burrowbridge
Joshua Revilla
Timothy M. Dunker
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street
Washington, DC 20001-1531
(202) 756-8000
aburrowbridge@mwe.com
jrevilla@mwe.com
tdunker@mwe.com

Douglas H. Carsten
Art Dykhuis
Jiaxiao Zhang
Katherine Pappas
Mandy H. Kim
MCDEMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA 92615
(949) 851-0633
dcarsten@mwe.com
adykhuis@mwe.com
jiazhang@mwe.com
kpappas@mwe.com
mhkim@mwe.com

Harrison Gunn
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1064
hgunn@goodwinlaw.com

*/s/ Nathan R. Hoeschen*
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*
*Liquidia Technologies, Inc.*