# EXHIBIT A

**Page 1**

```
 1            IN THE UNITED STATES DISTRICT COURT
 2            IN AND FOR THE DISTRICT OF DELAWARE
 3
 4   UNITED THERAPEUTICS
     CORPORATION,                    )
 5   --------------------Plaintiff,  )
                                     )  Case No.
 6       vs.                         )  20-CV-755-RGA-
                                     )  JLH
 7   LIQUIDIA TECHNOLOGIES, INC.,    )
 8   --------------------Defendant.  )
 9
10          TRANSCRIPT OF SUMMARY JUDGMENT
11
12          SUMMARY JUDGMENT had before the
13   Honorable Jennifer L. Hall, U.S.M.J., via Zoom
14   on the 10th of March, 2022.
15
16                    APPEARANCES
17        MORRIS NICHOLS ARSHT & TUNNELL LLP
              BY: MICHAEL FLYNN, ESQ.
18
19                      -and-
20        MCDERMOTT WILL & EMERY
              BY: ADAM BURROWBRIDGE, ESQ.
21                WILLIAM JACKSON, ESQ.
                  EDWARD PROCTOR, ESQ.
22
23                          Counsel for Plaintiff
24
25
```

**Page 2**

```
 1            SHAW KELLER LLP
                  BY: KAREN KELLER, ESQ.
 2
 3                    -and-
 4   COOLEY LLP
          BY: SANYA SUKDUANG, ESQ.
 5            JONATHANTH DAVIES, ESQ.
 6                    Counsel for Defendant
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 3**

```
 1            THE COURT:  Good afternoon, everyone.
 2            MS. KELLER:  Good afternoon, Your
 3   Honor.
 4            MR. FLYNN:  Good afternoon, Your
 5   Honor.
 6            THE COURT:  We are here today for a
 7   motion on summary judgment.  This is United
 8   Therapeutics Corporation versus Liquidia,
 9   20-755-RGA.
10       We have a court reporter on the line
11   today.  The court reporter is Deanna Warner.
12       May I have appearances, please, for the
13   plaintiff, starting with Delaware counsel.
14            MR. FLYNN:  Good afternoon, Your
15   Honor.  Michael Flynn from Morris Nichols, and
16   I'm joined today by William Jackson, Edward
17   Proctor, and Adam Burrowbridge from McDermott,
18   Will, and Emery, and Mr. Burrowbridge will be
19   arguing.
20            THE COURT:  Great.  Good afternoon to
21   all of you.
22       May I have appearances, please, for
23   Liquidia, starting with Delaware counsel.
24            MS. KELLER:  Good afternoon, Your
25   Honor.  It's Karen Keller from Shaw Keller.
```

**Page 4**

```
 1   With me today, who will be arguing, is
 2   Mr. Sanya Sukduang and also Mr. Jonathan
 3   Davies, who I now see there, and also on the
 4   line from Liquidia is Rusty Schindler.
 5            THE COURT:  Good afternoon to all of
 6   you.  So we've allotted 15 minutes for each
 7   side for the argument today.  I do have some
 8   questions, and I have a little time this
 9   afternoon, so if we go over that, that's okay.
10   I want to make sure you get a chance to say
11   what you want to say and a chance for me to get
12   my questions answered too.
13       I can see on my Zoom screen, as I'm sure
14   you all can see, we have three pages of folks
15   dialled in today.  We did have a number of
16   requests for the dial-in information.  I'll
17   remind everyone who's present at the hearing
18   today that unless you're an attorney of record
19   in this case, you shouldn't be speaking at all
20   on the record today.  I also remind everyone
21   that if you are not speaking, you need to stay
22   on mute.  If we have any issues with folks
23   getting feedback or talking who aren't supposed
24   to be talking, we'll have to deal with that in
25   an appropriate way.
```

5

02:36PM
1    We're going to give each side a chance to
2    argue.  When it's your turn, there's no need to
3    stand unless you're more comfortable standing.
4    You're welcome to if that's what you're used
5    to, but it's fine if you sit.
6         I can tell you that while it looks like
7    I'm in my courtroom, I'm in fact here in my
8    office in front of my three screens full of
9    notes with a stack of your briefs in front of
02:36PM 10   me.  If it looks like I may not be looking
11   right at you while you're talking, I may in
12   fact be looking at you on a different screen,
13   or I may be consulting my notes or your
14   briefing.  It may also come to be that I turn
02:36PM 15   off my camera for a moment so I can maximize
16   screen space here as well.
17        So that's all I have a say.  This is
18   Defendant's motion.  We'll hear from Defendant.
19   Go ahead, counsel, when you're ready.
02:36PM 20        MR. SUKDUANG:  Thank you, Your Honor.
21   I'm going to share my screen if that's okay
22   with you.
23        Can you all see that?  I just want to
24   confirm.
02:37PM 25        THE COURT:  Yes, we can see it.

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

6

1         MR. SUKDUANG:  Can I begin, Your
2    Honor?
3         THE COURT:  Yes.
4         MR. SUKDUANG:  Thank you, Your Honor.
02:37PM 5    Sanya Sukduang for Liquidia, and I do want to
6    address our slides we have here today, but as
7    you indicated earlier, you do have some
8    questions, so, please, if there's someplace
9    you'd like me to start, let me know.
02:37PM 10        Otherwise, I would like to set out kind
11   of the legal framework we have here for
12   collateral estoppel.  As you can see,
13   collateral estoppel is really based on the
14   identity of issues, whether the issues from one
02:37PM 15   litigation are the same in a second litigation,
16   and that's what we have here with respect to
17   the '393 final decision from the PTAB affirmed
18   by the Federal Circuit.
19        Collateral estoppel doesn't require
02:37PM 20   identical claims.  It doesn't require the same
21   claims.  It doesn't require the same claim
22   terms, and you'll see in UTC's briefing and in
23   their slides today that they identify certain
24   claim terms that are in the '066 or '901 that
02:38PM 25   are not in the '393 patent.  That's not

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

7

1    material to the issue.  It's whether the issues
2    are the same and whether the claims are
3    substantially identical.  And the Ohio Willow
4    Wood case addresses that and the Allergan v
02:38PM 5    Sandoz case addresses that.
6         UTC also argues under the case law that
7    we are improperly using the '393 patent as
8    prior art and then transposing the '393 as
9    prior art to apply to the '066 and '901.
02:38PM 10   That's not true.  The '303 is not prior art.
11   What is relevant is the decision by the PTAB
12   on the '393 patent, which is a product-by-process
13   claim that has a certain process to make that
14   claim.  It is that decision, not the '393
02:38PM 15   patent itself, that provides collateral
16   estoppel.
17        UTC also argues in their brief, and
18   you'll hear today, that to establish collateral
19   estoppel, we, Liquidia, need to run through a
02:39PM 20   complete obviousness analysis for the '066 and
21   '901.  Again, that is incorrect.  The Ohio
22   Willow Wood and the Allergan v Sandoz case that
23   we cited in the brief address this point
24   directly.  In both those cases there was a
02:39PM 25   prior patent litigation case on patent number

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

8

1    one.  That patent was held invalid as obvious.
2    In a subsequent litigation, the patent owner
3    comes in, asserts a different patent in both
4    cases, and that patent owner was collaterally
02:39PM 5    estopped, not based on using that prior patent
6    as prior art but because the issues of
7    obviousness were identical between the two
8    cases and the claims were substantially
9    identical.  In both those cases, and in fact in
02:39PM 10   any collateral estoppel that you'll read
11   regarding obviousness, neither the district
12   court nor the Federal Circuit ran through the
13   complete obviousness analysis that UTC asserts
14   here, and what they were trying to do is
02:40PM 15   establish that we need to relitigate these
16   issues, and that's what collateral estoppel is
17   supposed to stop.
18        The other important issue here is the
19   claims are product-by-process claims, and for a
02:40PM 20   product-by-process claim, the only relevant
21   inquiry is the product itself.  If the product
22   is not novel and obvious, the claims go down.
23   The process steps are irrelevant, and the only
24   time you look at the process step is if it
02:40PM 25   creates a product that is functionally or

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

9

1  structurally different from the prior art.
2        Here, as you'll discuss and see in our
3  briefs, the process steps are the same.  The
4  issue as to whether they create a structurally
02:40PM 5  or functionally different product has already
6  been litigated, and UTC lost on that issue.
7        I provided here, Your Honor, claim one of
8  each of the three patents.  There are several
9  undisputed facts that really define this issue
02:40PM 10  and render collateral estoppel appropriate.
11        Number one, they're all
12  product-by-process claims.
13        Number two, all three patents claim the
14  exact same product, treprostinil or a
02:41PM 15  pharmaceutically acceptable salt of
16  treprostinil.  That's identified in the blue
17  underlining.
18        The third undisputed fact is that all
19  three claims require the exact same process to
02:41PM 20  make that product.  It's alkylation of
21  benzidine triol, hydrolysis of that
22  intermediate, and then salt formation when you
23  contact the intermediate after hydrolysis with
24  a base.  Those are the three steps that make
02:41PM 25  the product across all three patents.  And

10

1  you'll see in the briefs UTC doesn't really
2  address that the process is the same across all
3  three patents because that is determinative of
4  the issue.
02:41PM 5        If you look at what happened in the '393
6  IPR, UTC argues here in the '066 in summary
7  judgment that the process steps of alkylation,
8  hydrolysis, and salt formation create a product
9  that is structurally and functionally different
02:42PM 10  from either the prior art or the '393 based on
11  an impurity profile.  UTC made that exact same
12  argument before the PTAB.  They argued that
13  based on the specification and the process
14  steps recited in the claims, the challenged
02:42PM 15  claims of the '393 patent have an impurity
16  profile different over the prior art.
17        The PTAB looked at that exact issue that
18  UTC argued then and trying to relitigate now
19  and said that those process steps do not lead
02:42PM 20  to a structurally or functionally different
21  product.  UTC is estopped from arguing that
22  these process steps render a different product
23  between itself and the prior art of the '393.
24        UTC points in claim one of the '066
02:42PM 25  patent to this "whereby" clause step.  What

11

1  this step does -- actually, it's not a step.
2  It's a result of the alkylation, hydrolysis,
3  and sublimation process.  So when you run
4  through those three steps, this is the natural
02:43PM 5  result.  What this phrase says is that the
6  intermediate that is used to make the final
7  product is less pure.  That's just basic
8  medicinal chemistry.  That is what every single
9  company does.  They use an intermediate and
02:43PM 10  then they purify that intermediate by some
11  means.  In this means, the salt -- it's a salt
12  formation step, so that issue is addressed by
13  the PTAB.
14        UTC argues this claim statement is not in
02:43PM 15  the '393.  That's incorrect as well.  When you
16  look at claim nine, claim nine is alkylation,
17  hydrolysis, and salt formation, just like the
18  '066.
19        Claim 16, which depends from claim nine,
02:43PM 20  says you do not purify the compound of Formula
21  6.  The compound of Formula 6 is the
22  intermediate.  So when you don't purify the
23  intermediate and then you follow hydrolysis and
24  salt formation, that final product is going to
02:44PM 25  be more pure than the intermediate you started

12

1  with.  That's basic chemistry.  There's no
2  dispute about that.
3        Even though the '393 patent didn't use
4  the words "starting batch" or the exact
02:44PM 5  phraseology of claim one in the '066, the same
6  results happen.  This happens when you perform
7  these three steps, and there is no difference
8  in claim scope between the three patents.
9        UTC argues in its opposition brief that
02:44PM 10  the '393 IPR decision never addressed the
11  impurity profiles of the products.  Again, that
12  is incorrect.  We saw in the earlier slide that
13  UTC made this argument directly, that the
14  process steps -- they argue the process steps
02:44PM 15  result in a different impurity profile.  That
16  was rejected.
17        The PTAB went even further, and on this
18  slide they said even the existence of impurity
19  differences between the prime treprostinil and
02:44PM 20  the '393 treprostinil, that evidence does not
21  support a determination that there is a
22  functionally different product.  So even if
23  there's a different impurity profile based on
24  alkylation, hydrolysis, and salt formation, the
02:45PM 25  PTAB already decided that that does not create

13

1    a structurally functional difference.
2    Therefore, you do not consider the process
3    steps in this analysis.
02:45PM 4         UTC points to storage at ambient
5    temperature as a structurally and functionally
6    different feature of the claimed process in the
7    '066 -- the claimed product and the '393.  If
8    you look at claim one, claim one does not
9    require storage of any sorts, so that's
02:45PM 10   inapplicable to claim one.  Claim six depends
11   from claim one.  It's a pharmaceutical
12   composition of claim one and, importantly, the
13   pharmaceutical composition of claim six is not
14   stored at ambient temperature.  It's the
02:45PM 15   isolated salt, the intermediate, that is used
16   to make the final pharmaceutical composition.
17        And the inquiry, Your Honor -- this,
18   again, comes back to product-by-process claims
19   and process steps.  It's not the intermediates
02:46PM 20   that are at issue.  It is what is the final
21   product, and, here, the final products are the
22   same.  They are not required to be stored at
23   ambient temperature.
24        UTC argues that the claims of the '066
02:46PM 25   and '901 are narrower and, therefore, they're

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

14

1    distinct and different from the '393 product.
2    Again, that's incorrect.  They're all
3    treprostinil and treprostinil free acid.  Claim
4    two of the '393 has a specific purity
02:46PM 5    limitation of 99.5 percent.  Dr. Toste, UTC's
6    expert, said claim one of the '066 doesn't have
7    any purity requirement.  UTC's counsel in the
8    pretrial conference that happened last week
9    went further and said there is no purity
02:46PM 10   limitation in any of the asserted claims of the
11   patent.  So the '066 and '901 is not more
12   narrow than the '393.
13        UTC provided declarations from a
14   Dr. Walsh and a Dr. Fawzi.  Dr. Walsh is a
02:47PM 15   named inventor on the '066 and '901 patents.
16   His declaration is not supported by any
17   documents.  It's just a blanket inventor
18   testimony.  Under the case law, that cannot
19   create a genuine issue of disputed fact, and
02:47PM 20   even the issues that he does raise --
21        Go ahead, Your Honor.
22        THE COURT:  No, I don't have a
23   question.
24        MR. SUKDUANG:  Sorry.  Cleaner,
02:47PM 25   greener, a more efficient manufacturing

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

15

1    process, that's a result of the process, not of
2    the product.  That doesn't differentiate the
3    product.  And moreover, the PTAB already
4    addressed those and said those do not create a
02:47PM 5    functional or functionally different product
6    than what was the prior art.  You can disregard
7    that.
8         Dr. Fawzi relitigates issues and ignores
9    important evidence.  He recalculates data that
02:47PM 10   the PTAB specifically considered and rejected
11   presented by UTC to say that the claimed
12   product is different over the prior art.  And,
13   importantly, he ignores evidence.  One of the
14   key factors here is that we are under a
02:48PM 15   regulated system by the FDA, and under the
16   Hatch-Waxman Act, UTC is required to list in
17   the Orange Book patents that they believe cover
18   the product.  In this instance, they submit
19   them in 3542 forms.  When they do that, UTC
02:48PM 20   submitted all three patents, and they checked a
21   box that said the patents cover the drug
22   substance.  That's the API, not the drug
23   product, which is the API plus the components,
24   the excipients.  So when UTC argues that the
02:48PM 25   word "product" in the '393 means something

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

16

1    different than pharmaceutical composition or
2    pharmaceutical batch in the '066 or '901, they
3    already told the FDA that there's no difference
4    in that.
02:48PM 5         There's a different box they could have
6    checked on those 3542 forms that say the
7    patents cover the drug products.  The drug
8    product, as I noted, is the API plus
9    excipients, and they chose not do that, so
02:49PM 10   they're recognizing here that all three patents
11   cover the API.
12        Additionally, there is only one API in
13   Tyvaso:  Treprostinil.  If UTC believed that
14   the API from the '066 and '901 were
02:49PM 15   structurally or functionally different than the
16   '393, then it could not have listed all three
17   patents in the Orange Book because those would
18   be different APIs, and if they were different
19   APIs, they cannot cover the same API in Tyvaso.
02:49PM 20        They also tell the FDA that regardless
21   whether they used the process of '393, '066,
22   '901 or you use the old process, the product is
23   the same in terms of purity profile.  They're
24   equivalent.  Again, recognizing to the FDA that
02:49PM 25   the process doesn't matter.  The products are

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

17

1 the same, and collateral estoppel applies
2 because of that.
3 They treated the products of all three
4 patents the same during prosecution. They --
02:50PM 5 during the '393 IPR, they submitted the
6 Williams and Ruffolo declarations to say that
7 if you follow the alkylation, hydrolysis, and
8 salt formation steps in the '393, you get a
9 different impurity profile, and therefore, it's
02:50PM 10 structurally and functionally different. That
11 was rejected by the PTAB.
12 They submitted those exact same
13 declarations in the '066 and '901 to support
14 the exact same argument, that the prior art is
02:50PM 15 different from the claimed product. If the
16 product of the '066 and '901 was different than
17 the '393, UTC could not have submitted those
18 declarations. They could not have relied on
19 those declarations in the same point in the
02:50PM 20 '393 and the '066 and '901 because those
21 products would have been different and thus the
22 arguments in the '393 would not have been
23 applicable. The fact that they did submit
24 those declarations in all of these proceedings
02:50PM 25 establishes that UTC knows the products are the

18

1 same.
2 The inventors testified that the products
3 are the same, and then, finally, when you look
4 at the certificates of analysis to make these
02:51PM 5 products, the API, the treprostinil, on the
6 left-hand side is the certificate of analysis
7 from 2014. That is just after the '393 patent
8 issued. On the right side is a certificate of
9 analysis from 2019. That's just after the '066
02:51PM 10 and '901 patents issued. When you follow those
11 process steps of alkylation, hydrolysis, and
12 salt formation, UTC is telling us that the
13 products are the same because the specification
14 required for both, regardless of the time
02:51PM 15 frame, is the same.
16 For these reasons, Your Honor, because
17 the issues are the same between what was
18 decided by the PTAB and affirmed by the Federal
19 Circuit, the products are the same, and the
02:51PM 20 process steps do not lead to structurally or
21 functionally different products, collateral
22 estoppel should apply.
23 THE COURT: Let me ask some questions
24 here, and I -- UTC says that you all haven't
02:52PM 25 been really clear about what issue you're

19

1 saying is the same. Let's make sure that we're
2 really precise on the record. What is the
3 issue to be precluded?
4 I heard some of your argument to be
02:52PM 5 suggesting that the issue is that the product
6 is invalid. That could be a possibility. It
7 could be that the product is invalid in view of
8 the two references or however many there were
9 before the PTAB. Another possibility is that
02:52PM 10 the issue that was decided was whether the
11 product formed through the disclosed process
12 results in a product that is the same
13 functionally and structurally as the prior art
14 product. I hear more of your arguments
02:52PM 15 directed toward the last one, but be precise on
16 the record for us. What's the issue that you
17 think should not be relitigated?
18 MR. SUKDUANG: The issue -- there is
19 one issue that should not be relitigated, and
02:53PM 20 the other points that we made go to that issue,
21 so I'll answer your question.
22 The issue is the validity of the product
23 claims, the products claimed by the
24 product-by-process patents across all three.
02:53PM 25 That's the treprostinil or the treprostinil

20

1 pharmaceutically acceptable salt.
2 The argument with respect to the process
3 that comes up because in the PTAB, UTC argued
4 that those process steps of alkylation,
02:53PM 5 hydrolysis, and salt formation result in a
6 product that is structurally and functionally
7 different than the prior art. That's an issue
8 that UTC raised.
9 They are relitigating that exact same
02:53PM 10 issue here in obviousness. They are arguing
11 that when you follow alkylation, hydrolysis,
12 salt formation, that those process steps lead
13 to a structurally and functionally different
14 product over the prior art.
02:54PM 15 On the issue of validity of the product
16 claims, the sub-issue of whether they can
17 relitigate the structural or functional aspect
18 based on the process step is also an argument
19 that they made and lost and collateral estoppel
02:54PM 20 applies.
21 The only reason why we bring up the
22 structural functional is because UTC comes in
23 and says you have to look at the process steps.
24 Well, you would have to if they actually did
02:54PM 25 create an issue of patentability, but they

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158 E-mail: deanna@speedbudget.biz

21

1    didn't.  The PTAB already decided that.  UTC
2    cannot come in and say alkylation, hydrolysis,
3    and salt formation steps in their brief, in
4    their argument today, or later on at trial that
5    those three steps lead to something different.
6    We covered those.
7         So again, to answer your question
8    precisely, it is -- the -- it is whether the
9    product of the '066 and '901, the product,
10   because it's a product-by-process, is novel and
11   nonobvious.  They lost that issue already, and
12   that is collateral estoppel.  The sub-arguments
13   go with that.
14        I hope that answers your question, Your
15   Honor.
16        THE COURT:  I think I understand.  So
17   just to get it clear in my mind, you're saying
18   you've already -- the products are the same
19   that are claimed in both the '393 and the
20   patents before the Court.  The '393 product
21   claim was invalid.  The other side says that
22   there are some additional process limitations
23   here, and your answer to that is it's the same
24   product that was already determined not to
25   incorporate process limitations.  Is that

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158 E-mail: deanna@speedbudget.biz

22

1    essentially it?
2         MR. SUKDUANG:  On the different
3    process steps that UTC says are in the '066 and
4    '901, our response is there are not different
5    process steps.  It's alkylation, hydrolysis,
6    and salt formation.  So the product is the
7    same.  The process steps are the same.  The
8    PTAB already determined that those process
9    steps do not lead to a different product, and
10   therefore, here, UTC is collaterally estopped
11   from arguing those process steps lead to a
12   different product, and, as a result, collateral
13   estoppel applies.
14        THE COURT:  Let me ask you this:  Why
15   is this coming up now, six weeks before trial?
16        MR. SUKDUANG:  Actually, Your Honor,
17   it came up because of the scheduling order.  So
18   in the scheduling order, the parties had to
19   request -- so summary judgment was not a matter
20   of right in our case.  Summary judgment had to
21   be requested by Judge Andrews.  We requested
22   summary judgment from Judge Andrews on two
23   separate issues, and he granted us leave to
24   file summary judgment on one of those issues.
25        We filed our brief within that time frame

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158 E-mail: deanna@speedbudget.biz

23

1    after being granted leave.  UTC asked for an
2    extension of time to respond because we're in
3    expert discovery.  So it's coming up now,
4    timewise, because we followed what the schedule
5    and UTC requested, which we granted, an
6    extension of time.
7         So usually in summary judgment, as well,
8    it comes up, you know, just before trial as
9    well to try to eliminate issues that could be
10   tried but otherwise are legal issues, and
11   here --
12        THE COURT:  Let me ask about that
13   just a little bit.  So normally that happens
14   because the parties know that it's a dispute
15   that's going to get raised in the case.  So I
16   read your brief.  You point out that you put in
17   your initial invalidity contentions something
18   about issue preclusion, and we went and looked
19   at that.
20        I've got some notes on it.  It only
21   refers to claim one.  It doesn't refer to any
22   of the dependent claims or the process claims,
23   which I understand you now to be challenging,
24   and I didn't read it to squarely raise estoppel
25   or issue preclusion.  It certainly doesn't say

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158 E-mail: deanna@speedbudget.biz

24

1    anything about estoppel or issue preclusion in
2    those words, but it also doesn't discuss the
3    elements, and then when you serve your first
4    supplemental invalidity contentions, that whole
5    argument about issue preclusion is not in
6    there, I didn't see, so one might take from
7    that that you had given up on that argument.
8    Why shouldn't the Court take that?
9         MR. SUKDUANG:  We never gave up that
10   argument.  The issue is in our answer to our
11   complaint -- to UTC's complaint, the issue came
12   up throughout the course of litigation and,
13   importantly, in expert discovery we raised
14   this, in expert reports.  For UTC -- and
15   finally, as I noted, we had to seek leave from
16   the Court to request summary judgment, so UTC's
17   argument that this was never raised, this was
18   not an issue, I think, really is an attempt by
19   them -- and I think they do it in just a
20   paragraph to say you should just ignore this,
21   Your Honor, because it's not raised.
22        It was raised.  It was addressed in our
23   expert reports.  In fact, if UTC is correct and
24   they never thought it was raised, how do they
25   have Dr. Fawzi's expert report from the case?

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158 E-mail: deanna@speedbudget.biz

25

1   And remember, they submitted a declaration
2   which was two or three paragraphs trying to
3   correct something, but they also attached his
4   original expert report, and they cite that
02:59PM  5   original expert report in response to the
6   summary judgment, our summary judgment.
7       For UTC to say they were not aware of
8   this, they could not have put those issues in
9   Dr. Fawzi's expert report months and months ago
03:00PM 10  if they said we waived it, it wasn't an issue,
11  that they never knew what we were talking
12  about.  They knew exactly what we're talking
13  about.  This issue came up throughout the
14  course of the case.  It was raised as a
03:00PM 15  possibility for summary judgment, and that's
16  why the schedule allows leave for summary
17  judgment.
18      As I noted at the end, we did request
19  summary judgment.  We laid these issues out
03:00PM 20  extremely carefully, and UTC, at that point,
21  when they opposed our request for leave, argued
22  the issue on the merits.  They never said to
23  Judge Andrews, "Hold on, Your Honor.  This is
24  brand new.  We never knew about it.  What's
03:00PM 25  going on?"  They could have done that there.

26

1   They did not because they knew it was coming,
2   and they put those issues in Dr. Fawzi's expert
3   report.
4       THE COURT:  All right.  Let me ask
03:00PM  5   you about one thing I don't think I heard you
6   talk about, which is not the product-by-process
7   claims but actually the process claims.  Are
8   you giving up on that argument?
9       MR. SUKDUANG:  We're not giving up on
03:01PM 10  the argument, Your Honor.  We had 15 minutes.
11      THE COURT:  Fair enough.  Wise.
12  Wise.
13      Let me ask you about -- let me ask you
14  about the different burden of proof that the
03:01PM 15  PTAB applied to the question of validity than
16  the burden that's before the Court here.  My
17  recollection from issue preclusion in law
18  school was that you had to have the same burden
19  of proof before issue preclusion would apply.
03:01PM 20  That wasn't the other side's number one
21  argument, and I could understand why that would
22  be, given that they probably thought they were
23  arguing to Judge Andrews, who's going to be the
24  fact finder in this case, and it might not have
03:01PM 25  been a good look, but I did read them to fair

27

1   raise it.
2       MR. SUKDUANG:  Yes, Your Honor, on
3   the burden of proof issue, this is an issue
4   where the PTAB decision was -- was affirmed in
03:02PM  5   total by the Federal Circuit.  So if you look
6   at this issue, for instance, previously, the
7   PTAB looked at claim construction under a
8   different standard than district courts.  The
9   PTAB will look at claim construction and IPRs
03:02PM 10  under the broadest reasonable interpretation.
11  District courts use the Phillips standard.
12      When the PTAB looked at those issues of
13  claim construction, issued a final written
14  decision, and affirmed by the Federal Circuit,
03:02PM 15  that claim construction applies.  That's the
16  claim construction that goes forward.  Parties
17  aren't allowed to reargue claim construction at
18  the district court saying that the claim
19  construction should be different under the
03:02PM 20  Phillips standard because it's been affirmed.
21  That's the construction.
22      THE COURT:  First of all, that's not
23  what I was asking about.  I wasn't aware that
24  was the law.  What I was more asking about was
03:03PM 25  the burden of proof.

28

1       MR. SUKDUANG:  Yes, I was getting to
2   that, so I'm going to analogize.
3       So the burden of proof at the PTAB is
4   preponderance of the evidence, and that was the
03:03PM  5   burden of proof for the final written decision
6   and then affirmed by the Federal Circuit.
7   Here, it's clear and convincing for invalidity.
8   We're applying collateral estoppel, so
9   collateral estoppel is we bear the burden,
03:03PM 10  because it's summary judgment, of establishing
11  that the issues are the same.
12      The issues here are the same.  The
13  arguments are the same, and UTC has made no
14  argument that if you change the burden all of a
03:03PM 15  sudden the claims become valid, and so when you
16  look at the identity of issue, the identity of
17  issue was obviousness of a product-by-process
18  claim affirmed by the Federal Circuit.  That
19  decision provides collateral estoppel effect
03:03PM 20  going forward no matter what they're looking
21  at.
22      THE COURT:  Do you think that all the
23  Federal Circuit affirmed was that the PTAB
24  didn't err by finding by a preponderance of the
03:04PM 25  evidence that the claims were invalid?  Isn't

29

1  that all that the Federal Circuit finding
2  shows?  It doesn't mean they approved it beyond
3  a reasonable doubt, for example.
4       MR. SUKDUANG:  Right.  That's the --
03:04PM 5  the Federal Circuit doesn't need to say they
6  proved it further than what was required, but
7  the fact of the matter is, there is a final
8  decision by an appellate court and no longer
9  appealed, and we're not aware of any case, and
03:04PM 10  I don't think UTC cites one, where collateral
11  estoppel doesn't apply because the burdens are
12  different.
13       THE COURT:  Isn't that in the
14  restatement of judgment?
03:04PM 15       MR. SUKDUANG:  I'm not aware of that,
16  Your Honor.
17       THE COURT:  Okay.
18       MR. SUKDUANG:  So but here, our
19  position is you have the same evidence.  You
03:04PM 20  have the same claims, the same process steps
21  decided and affirmed by the Federal Circuit,
22  and what UTC is trying to argue is that all of
23  that was wrong.
24       THE COURT:  Okay.  Let me ask you
03:05PM 25  this about the process claim.  It's more of a

30

1  comment than a question, but maybe you'll
2  find -- I'm sure you'll have a comment in
3  response.
4       One of your arguments is that you say
03:05PM 5  that UTC is estopped from litigating the
6  validity of claim six of the '901, the process
7  claim, because of a PTAB ruling about the '393
8  patent, but there's another PTAB ruling out
9  there that deals with claim six of the '901
03:05PM 10  patent, and it just seemed ironic to me that
11  you wanted us to follow a different PTAB
12  decision about a different patent in different
13  claims in your argument about collateral
14  estoppel when there's one out there that goes a
03:06PM 15  different way, and I think that's also a
16  restatement of judgment that the Court can take
17  into account that there might be inconsistent
18  prior judgments.  That was argued by the other
19  side, but it was just a comment I had.  If you
03:06PM 20  have anything to say in response, I'll allow
21  some time.
22       MR. SUKDUANG:  Let me address, first,
23  the '901.  I think you're referring to, in the
24  '901 IPR, the storage limitation as a different
03:06PM 25  result.  Is that what you're commenting on?

31

1       THE COURT:  My understanding is that
2  the PTAB did not find every claim of the '901
3  are --
4       MR. SUKDUANG:  That answers the
03:06PM 5  question for me.
6       So with respect to the '901, claim six,
7  which is the storage claim, they found that
8  that claim was not invalid because of a claim
9  construction that storage was required for
03:06PM 10  three months.  Okay.  That issue was different.
11  The storage of the intermediate was required
12  for three months, the salt, the intermediate
13  before you make the final product.
14       Here, the reason why that decision from
03:07PM 15  the PTAB on the '901 doesn't change collateral
16  estoppel is because collateral estoppel on that
17  claim is based on the product, and claim six --
18       Let me back up, Your Honor, I apologize.
19  Claim six of the '901 is a method of preparing
03:07PM 20  a product.  It's that process.  Our argument on
21  collateral estoppel is based on the fact that
22  the PTAB, the PTAB, in the '393 stated
23  explicitly that the process was obvious, and we
24  believe that applies to the '901 claim six.
03:07PM 25       Now to your question about the '901 claim

32

1  six and the IPR -- so I'm sorry.  I want to
2  make sure I come back.
3       THE COURT:  I'm tracking.
4       MR. SUKDUANG:  Okay.  So with respect
03:08PM 5  to the IPR decision on the '901, that process
6  step, that storage of the intermediate at
7  ambient temperature, again, that is just a
8  result of alkylation, hydrolysis, and salt
9  formation.  Nowhere does UTC argue at the PTAB,
03:08PM 10  at the '901, in their summary judgment
11  opposition, or at the court that somehow
12  storage happens for -- somehow differently than
13  following those three steps.  They never argue
14  that you have to do something extra to make
03:08PM 15  that intermediate store at ambient temperature,
16  so that is a result of those three steps and
17  doesn't make that claim, for collateral
18  estoppel purposes, those steps nonobvious when
19  those steps are just the result -- that storage
03:09PM 20  is just the result of those three steps.
21       So we acknowledge, Your Honor, that those
22  are process claims, not product-by-process
23  claims of the '393 patent, but we do note in
24  our brief, in response to your question, that
03:09PM 25  those process steps were argued, and the PTAB

---

33

1  says that those process steps were obvious over
2  the prior art.
3  THE COURT:  Okay.  One question.  You
4  mentioned a few minutes ago that -- it was in
03:09PM 5  your pleadings, the issue of issue preclusion
6  was in the pleadings.  Where can I find that?
7  MR. SUKDUANG:  I don't have the pin
8  right now, but I think it's one of the
9  affirmative defenses.  Issue preclusion, I
03:10PM 10  believe, is one of the affirmative defenses.
11  THE COURT:  Why don't you look for
12  that while we hear from the other side.  I'll
13  give you the chance to have the last word.
14  Mr. Burrowbridge.
03:10PM 15  MR. BURROWBRIDGE:  Thank you, Your
16  Honor.  I'd just like to quickly follow up on a
17  few questions that you had raised.
18  First, on the issue of waiver, collateral
19  estoppel was not raised in their answer and
03:10PM 20  by --
21  THE REPORTER:  I'm sorry to
22  interrupt, sir.  It's hard for me to hear you.
23  You're very low.
24  MR. BURROWBRIDGE:  Is this better?
03:10PM 25  THE COURT:  I think that was the

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

---

34

1  court reporter.  You did sound like you were in
2  a tunnel.
3  MR. BURROWBRIDGE:  Is this better
4  now?
03:11PM 5  THE COURT:  Yes, it is.
6  MR. BURROWBRIDGE:  I will restate
7  what I said, which is on the waiver point you
8  raised, they have not raised collateral
9  estoppel in their answer, and I invite counsel
03:11PM 10  to find it and point it to us and the Court.
11  They also have not raised it in their
12  expert reports.  Counsel asked how was our
13  expert able to respond to their expert's
14  opinions.  Well, their expert opined on
03:11PM 15  underlying issues that relate to other issues
16  in the case.  Dr. Winkler, their expert, never
17  raised collateral estoppel, never raised
18  elements of collateral estoppel, and our expert
19  never had the opportunity to opine or respond
03:11PM 20  on issues of collateral estoppel.
21  You've also raised the issue of, well, if
22  there are different standards, doesn't that
23  preclude collateral estoppel, and you're right,
24  Your Honor, and counsel said that we hadn't
03:11PM 25  argued that in our briefs.  That's absolutely

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

---

35

1  incorrect.  On page eight of our brief, we cite
2  three cases, B and B Hardware, Skyhawk Tech,
3  and Trucks ID from this court.  B and B
4  Hardware Your Honor might know from the Supreme
03:12PM 5  Court, Skyhawk Tech is from the Federal
6  Circuit, and Trucks ID, again, from the
7  District of Delaware.
8  B and B Hardware says issues are not
9  identical if the second action involves
03:12PM 10  application of a different legal standard, even
11  though the factual setting of both suits may be
12  the same.  Exactly the issue we have here, Your
13  Honor.  For submit for that definitive reason
14  that collateral estoppel wouldn't apply on
03:12PM 15  these facts.
16  Your Honor, beyond that, Liquidia ignores
17  the correct standard.  They ignore disputed
18  issues of material fact.  They ignore the
19  differences in the claim and only focus on the
03:12PM 20  similarities in the claim.  They ignore the
21  findings of the '066 IPR.
22  Your Honor asked questions about the '901
23  IPR, but there's also an '066 IPR that I'll
24  walk through, and the '066 IPR panel found that
03:12PM 25  the invalidity analysis of the '393's final

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

---

36

1  written decision doesn't apply to the '066
2  patent.
3  Liquidia also ignores uncontested facts
4  of its own best cases.  In Ohio Willow Wood and
03:13PM 5  In Re:  Thorpe, both of those cases, the facts
6  of the cases were such that there were
7  uncontested issues of difference in the claim
8  language or differences in invalidity questions
9  or, for In Re:  Thorpe, which is a
03:13PM 10  product-by-process case, differences between
11  the prior product and the claimed product.
12  That's absolutely not the facts of this
13  case.  There are myriad issues of disputed
14  fact.  We have a declaration that is -- two
03:13PM 15  declarations supported by substantial evidence
16  that support those issues of material fact,
17  Your Honor.
18  The differences between the prior art in
19  the '066 patent and the '393 patent that have
03:13PM 20  never been considered and materially alter the
21  issue of validity as well as disputed issues of
22  material fact precludes summary judgment here.
23  Your Honor, I'm happy to answer your
24  questions throughout the presentation.  I
03:14PM 25  prefer to answer your questions, if you have

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

**37**

1  questions, rather than provide a presentation.
2      THE COURT:  I'll jump in where I have
3  a relevant question.
4      MR. BURROWBRIDGE:  Great.  Thank you,
03:14PM 5  Your Honor.
6      THE COURT:  You don't want to say too
7  much.  I get it, but go ahead.  I'm interested
8  to see your presentation.
9      MS. KELLER:  Adam, this is Karen
03:14PM 10  Keller.
11      MR. BURROWBRIDGE:  Are you able to
12  see it now?
13      MS. KELLER:  Yes.
14      MR. BURROWBRIDGE:  The slides still
03:15PM 15  are not moving.  Here we go.  Great.
16      Okay.  So as I mentioned, Liquidia
17  ignores the correct legal standard.  Often, in
18  cases, there's not a clean statement of law as
19  to what the correct legal standard is.  Here,
03:15PM 20  it's clear that the correct legal standard to
21  whether collateral estoppel applies in a patent
22  case is not whether the claims are
23  substantially identical but whether the issue
24  of invalidity common to each action is
03:15PM 25  substantially identical.  When you apply that

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

**38**

1  proper legal standard, Liquidia cannot win.
2  They also cannot win if you provide the proper
3  legal standard for obviousness or
4  product-by-process claims.
03:15PM 5      Your Honor, counsel has walked through
6  all the similarities.  Over and over and over,
7  he stated that there are three steps that are
8  the same across all three patents, but under
9  the proper legal standard, you don't look at
03:16PM 10  the similarities in the claims.  You look at
11  the differences in claims.  The proper question
12  is whether the differences in claims raise a
13  unique issue of invalidity.
14      The slide here shows highlighting of the
03:16PM 15  '066 patent that was asserted in this case IPR
16  as compared to the '393 patent that was
17  adjudicated in the '393 IPR.  So the highlights
18  are distinct limitations that were not
19  previously considered.  This, again, has
03:16PM 20  highlighting to show that distinct limitations
21  that haven't been considered by the '393 IPR
22  but, it shows the '066 a claims one, six, and
23  eight.
24      THE COURT:  So can I ask -- and I get
03:16PM 25  there's different words, and I get their point

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

**39**

1  that it doesn't really matter if there's
2  different words.  What you have to look at and
3  see if, basically, the claim covers,
4  essentially, the same thing or, as the Federal
03:16PM 5  Circuit says more eloquently than I am, that
6  there's some difference that might affect the
7  invalidity determination.
8      So I guess the question for you is,
9  they've pointed out that they think that,
03:17PM 10  regardless of the difference in words that you
11  used in the product-by-process claims before
12  the Court here and the product-by-process
13  claims that were in the '393 IPR, that both
14  cover a product, and why shouldn't you have to
03:17PM 15  come forward with some evidence that the
16  product that the claims here cover is different
17  than the product that the claims in the '393
18  cover?  And if you can't, then the PTAB's
19  finding that the product is not substantially
03:17PM 20  and functionally different than the product in
21  the prior art should stand and, therefore, the
22  product-by-process claims here are invalid.
23      You understand what I'm talking about
24  because you all are two weeks away from trial,
03:18PM 25  so let me know what your answer is to that.

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

**40**

1      MR. BURROWBRIDGE:  I completely
2  follow.
3      Your Honor, an initial point, which is we
4  discussed the product-by-process claims for a
03:18PM 5  good bit, and for a good reason, but they also
6  moved, we think, improperly on the process
7  claims.
8      THE COURT:  I get your argument on
9  that.  Just talk about the product-by-process
03:18PM 10  claims.
11      MR. BURROWBRIDGE:  Just to make one
12  other quick point on the process claims, the
13  process claims were never considered in the
14  '393 because they were product-by-process
03:18PM 15  claims, so the only process claims that were
16  considered were if they were structurally and
17  functionally different.  But the process claims
18  at issue in the asserted claims have to be
19  compared to the prior art on a
03:18PM 20  limitation-by-limitation basis, and, again,
21  that's something that the '393 panel has never
22  done.
23      THE COURT:  I have a question about
24  that too.  We'll get to that in a second.
03:18PM 25  Answer the question about the

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

41

1  product-by-process claims.
2         MR. BURROWBRIDGE:  Yes, Your Honor.
3  So we do have evidence.  We have very
4  strong evidence that limitations in the
03:18PM 5  asserted patents change the scope of the claims
6  such that the invalidity analysis of the '066
7  and '901 is different than the invalidity
8  analysis for the '393.
9         THE COURT:  Why didn't you put a
03:19PM 10 final point on that.
11        MR. BURROWBRIDGE:  I will, Your
12 Honor.
13        THE COURT:  You have evidence that
14 the product made by the claimed process is
03:19PM 15 patent before the Court is different than the
16 product made by the '393 patent?
17        MR. BURROWBRIDGE:  Correct, Your
18 Honor, but let me walk through it slowly.
19        So the first point is there are at least
03:19PM 20 two elements that are clearly distinct and
21 clearly change the invalidity analysis.  And,
22 again, the invalidity, the question of
23 invalidity between the '393 patent and the
24 prior art and the '066 and the prior art, that
03:19PM 25 is the relevant legal question for purposes of

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

42

1  collateral estoppel under Purdue Pharma.
2         I hope you can see my slides, Your Honor,
3  but the two first bullets on the slide, those
4  are the two limitations that most clearly
03:19PM 5  change the invalidity analysis.  So there is a
6  whereby cause, whereby a level of one or more
7  impurities found in the starting batch is lower
8  in the pharmaceutical composition.  And then
9  the second bullet actually has two different
03:20PM 10 limitations but they're somewhat related:
11 stored at ambient temperature and stable at
12 ambient temperature.  I'm so confident that
13 these two -- that these two limitations alter
14 the invalidity analysis for the '066 patent as
03:20PM 15 opposed to the '393 patent because the IPR --
16 the '066 IPR considered that exact issue.
17        So we've talked about the '901 IPR, where
18 two claims were found valid.  There's an '066
19 IPR that wasn't instituted, and in the '066
03:20PM 20 IPR, the '066 panel was aware of the '393
21 patent, was aware of the '393 final written
22 decision, was aware of Moriarty and Thayers,
23 the two prior art publications found to
24 invalidate the '393 patent, and in spite of all
03:20PM 25 of that, the '066 panel found that not a single

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

43

1  claim of the '066 patent would be found to be
2  unpatentable, and that's under a lower
3  threshold -- that's under a reasonable
4  likelihood standard just to institute the IPR.
03:21PM 5  They didn't institute the IPR.  Whereas in the
6  '393 IPR, everything was --
7         THE COURT:  Move on from the '066
8  because I've got to tell you, if you're trying
9  to make the argument it's different burdens of
03:21PM 10 proof and final judgments matter, pointing to
11 that is not your best one.
12        MR. BURROWBRIDGE:  No, Your Honor.
13 What I'm pointing to here is that what
14 the '066 panel looked at as far as the merits
03:21PM 15 go were these two claim limitations.  They
16 looked at the whereby clause and they looked at
17 the storage and stability limitations, and when
18 they looked -- it's Exhibit 6 to UTC's briefs,
19 is the institution denial from the '066 panel.
03:21PM 20        And it does the analysis.  It does all of
21 the work, and it shows all of the work.  What
22 it does is it compares the '066, these specific
23 claims, to the exact prior art that was at
24 issue in the '393 final written decision, and
03:22PM 25 what it finds is that Thayers, that reached

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

44

1  impurity reduction from the starting batch.
2  The starting batch is a claim limitation that
3  you can see here in the first bullet that is
4  unique to the '066 patent and is not in the
03:22PM 5  '393 patent.
6         Also, Your Honor, it found that Thayers
7  does not teach the storage and the stability
8  limitations in the second bullet, and, again,
9  those are limitations only found in the '066
03:22PM 10 patent, not found in the '393 patent.  So the
11 '066 IPR panel looked at these exact claim
12 limitations that counsel has failed to mention
13 so far.  It's -- these limitations raise
14 distinct issues of invalidity such that
03:22PM 15 collateral estoppel cannot apply on the claim
16 limitations in this case.
17        Your Honor, these limitations also
18 provide structural structure and functional
19 differences to the claimed product of the '066
03:23PM 20 patent.  Dr. Fawzi, UTC's expert, has explained
21 that through his expert reports.  We cited to
22 that in our papers.  We rely on the papers for
23 the merits of it, and we'll prove it up at
24 trial, but for purposes of this motion, whether
03:23PM 25 or not the limitations alter the structure and

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

45

1 function of the product, that alone is a
2 question of fact, and that question of fact
3 alone is sufficient to preclude summary
4 judgment.
03:23PM 5      Your Honor, again, the proper analysis
6 here is to compare the prior art to the '066
7 patent and the prior art to the '393 patent and
8 to see if there is a difference in the question
9 of validity.
03:23PM 10      THE COURT: I understand your point
11 on that, in terms of the ultimate determination
12 of obviousness. What I'm challenged by, and
13 maybe you all don't even agree with each other,
14 is this language in the Ohio Willow Wood case
03:24PM 15 that says that you're supposed to look at
16 whether differences between the un-adjudicated
17 claims materially alter the question of
18 validity.
19      So I don't know what that means. There's
03:24PM 20 a bunch of things it could mean. It might mean
21 that you look to see if any additional
22 difference in the claims, in the un-adjudicated
23 claims, would make it nonobvious, but that's --
24 like you said, that's essentially treating the
03:24PM 25 prior claims as prior art, and, of course,

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

46

1 that's not the case. But you might read Willow
2 Wood to say that. You might also read it to
3 mean that you look to see, at least, if the
4 patentee has argument as to why the additional
03:24PM 5 limitations in the un-adjudicated claims make
6 them nonobvious. Maybe the Court accepts or
7 rejects it, but if there's a different analysis
8 that you go through, then that's enough to say
9 that there's not collateral estoppel.
03:25PM 10      I'm challenged because Ohio Willow Wood
11 says -- suggests that patentees have to explain
12 how differences between the un-adjudicated and
13 adjudicated claims alter the invalidity
14 determination. I get what you're saying, but
03:25PM 15 what am I supposed to take from Ohio Willow
16 Wood? What's the right analysis?
17      MR. BURROWBRIDGE: So I think Your
18 Honor is spot-on with the analysis. The
19 analysis to look at the difference in the
03:25PM 20 claims and see if those differences in claim
21 limitations alter the invalidity analysis.
22      Here, Your Honor, as I was walking
23 through, the difference in the '066 patent are
24 the two claim limitations we previously
03:25PM 25 discussed, the whereby clause where one of the

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

47

1 impurities found in the starting batch is
2 lower, and the stored and stable at ambient
3 temperature differences. Those differences
4 alter the invalidity analysis.
03:26PM 5      THE COURT: Here's where I want to
6 get specific. Based on the PTAB -- again, this
7 is assuming that I think a PTAB decision
8 applying a different burden of proof can have
9 preclusive effect. Say I decide that's the
03:26PM 10 case. The only way I can see how these
11 limitations would alter the validity analysis
12 is if these limitations resulted in a product
13 that is different from the product that was at
14 issue in the '393, and that's what the other
03:26PM 15 side is saying, and I take their point, so is
16 there a difference in the two sets of claims
17 that results in a different product?
18      MR. BURROWBRIDGE: Yes, Your Honor.
19 The answer is that the claimed product of the
03:26PM 20 '066 patent is different than the claimed
21 product of the '393 patent, and, again, it's at
22 least clear from these two limitations.
23      First, it's clear because the impurities
24 of the '066 product requires that at least one
03:27PM 25 impurity from the starting batch is reduced in

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

48

1 the composition. That's a claim limitation
2 that does not exist in the '393 patent.
3      Similarly, when you do the process steps
4 in the '066 patent, you're only doing the
03:27PM 5 process steps -- sorry. Let me try that again.
6 The requirement that the product be stable at
7 ambient temperature requires that impurities
8 are reduced such that it changes the product
9 from a product in the prior art which would not
03:27PM 10 be stable at ambient temperature to a product
11 in the claimed invention which is stable at
12 ambient temperature.
13      Now, to answer Your Honor's question
14 about what if it's the same product as the
03:28PM 15 '393? Well, that's where the difference in
16 invalidity question comes in because the '393
17 IPR never looked at whether the prior art could
18 obviate a composition that's stable at ambient
19 temperature. There is no prior art that
03:28PM 20 obviates stability at ambient temperature. And
21 there's no teaching in Thayers or Moriarty that
22 discloses the whereby clause where one or more
23 impurity from the starting batch is lower in
24 the pharmaceutical composition, and that, Your
03:28PM 25 Honor, is exactly what the '066 IPR panel

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

49

1  found.  They didn't institute because, as the
2  first line here states, petitioner could not
3  sufficiently demonstrate the obviousness of all
4  the claims over Moriarty and Thayers.  That's
03:28PM 5  the difference in the invalidity decision.
6       Here, none of the claims were found
7  invalid over the prior art, Moriarty and
8  Thayers.  When the '393 was looked at and
9  compared to Moriarty and Thayers, each and
03:28PM 10  every claim was rendered invalid.  So the
11  difference in scope of the claimed product is
12  such that the claimed product of the '066
13  patent is patently distinct from the claimed
14  product of the '393 patent.
03:29PM 15       THE COURT:  Okay.
16       MR. BURROWBRIDGE:  An example might
17  be helpful.
18       THE COURT:  Why don't you proceed.
19       MR. BURROWBRIDGE:  So an example,
03:29PM 20  Your Honor, would be if an inventor invented a
21  car that could drive, fly, and float, and in
22  their first patent, they prosecuted -- they
23  only claimed a car that could drive.  When they
24  take that patent, if it were to grant, it would
03:29PM 25  likely be challenged, and the PTAB would find

50

1  that that same car that can drive, fly, and
2  float would be invalid because it was only
3  claimed to drive.  Yet, if they have a
4  continuation application that relies on the
03:29PM 5  same specification and enables the full scope
6  of the car that was originally invented, the
7  same product, the same car that does drive,
8  fly, and float but now they claim those
9  additional limitations, those additional
03:30PM 10  limitations is sufficient to change the
11  invalidity analysis such that now the prior art
12  doesn't disclose teachings that would obviate a
13  car that has all those additional features.
14       THE COURT:  So I think I see what
03:30PM 15  you're saying.  The problem that I have here is
16  that in the original PTAB decision where they
17  only claimed it based on one thing, it was
18  still found that that same product was in the
19  prior art, and, here, we're talking about
03:30PM 20  product-by-process claims, so maybe it would be
21  more helpful to point me to exactly where in
22  the expert declarations there's an expert that
23  says if you follow the process to reach the
24  product in the '066, you get a different
03:31PM 25  product than what's in the '393.  Does that

51

1  make sense?
2       MR. BURROWBRIDGE:  Yes, Your Honor.
3  That makes sense, so I would point you to
4  Dr. Walsh's declaration.  It's DI 292.
03:31PM 5       THE COURT:  Yes.
6       MR. BURROWBRIDGE:  But before I dive
7  into the declaration, Your Honor, I guess I'm
8  concerned.  It's -- it's not doing the proper
9  legal question for purposes of a
03:32PM 10  product-by-product -- or excuse me a
11  product-by-process invalidity inquiry, and
12  that's because the proper inquiry for
13  product-by-process is if the product-by-process
14  claim is the same as or obvious from the prior
03:32PM 15  art.  This is where it becomes a problem
16  because they're attempting to use the '393
17  product as a proxy for the prior art product.
18       First of all, products are not held
19  invalid.  Claims are held invalid.  What the
03:32PM 20  '393 IPR did is they only looked the features
21  claimed in the '393 patent, and they found that
22  that product was invalid over the prior art.
23  But when you do the proper analysis of a
24  product-by-process claim, you need to look at
03:32PM 25  the '066 claimed product and compare it to the

52

1  prior art claimed product.
2       They admit that that is the correct
3  standard in their brief, their reply brief, at
4  page two, as I hope you can see on my slide,
03:32PM 5  but then, they have a little misdirection in
6  the brief.  They say even though you're looking
7  at an analysis that compares to the prior art,
8  Liquidia is correct to focus on the '393, but,
9  Your Honor, that's -- there's no support for
03:33PM 10  that.  There's no support for an invalidity
11  analysis by transitive property where you can
12  treat a patent that an inventor disclosed to
13  the world and has the same priority date as the
14  '066 patent and use that work in that patent to
03:33PM 15  invalidate the inventor's own work.
16       THE COURT:  I get what you're saying.
17  I get what you're saying.  The trouble I'm
18  having, and I don't want to beat a dead horse,
19  is that I'm reading Ohio Willow Wood, and it
03:33PM 20  says you should provide an explanation as to
21  how the conditional limitation in the second
22  un-adjudicated patent is patentably
23  significant, and because this is a
24  product-by-process claim, it seems to me the
03:34PM 25  only way it could be patentably significant is

53

1   if it resulted in different products but the
2   one that's already been adjudicated.  So I
3   understand why they're arguing it the way
4   they're arguing it, and maybe the answer is we
03:34PM 5   just disagree on that.  Maybe that's the wrong
6   way to look at it, and that's fine too, but
7   that's the struggle I'm having.
8        MR. BURROWBRIDGE:  I understand the
9   struggle.  It's an interesting argument.  It's,
03:34PM 10  as far as I can tell, an unprecedented
11  argument.  There's no case law supporting the
12  argument.  All the standards, when they are
13  properly applied, the obviousness standard that
14  the '066 IPR panel applied, that shows that the
03:34PM 15  claims in the product in the '066 patent are
16  valid or at least not unpatentable.
17       But back to Ohio Willow Wood.  I
18  understand Your Honor's question there.  Ohio
19  Willow Wood is an interesting case because in
03:34PM 20  that case, the facts of that case, is that
21  there are no disputes as to the differences.
22  It's uncontested.  When the facts in the case
23  are uncontested, it changes an analysis,
24  perhaps, because when there are no facts to
03:35PM 25  support a difference between a claimed product

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

54

1   and a prior art product, then
2   product-by-process, perhaps, can come into play
3   more easily.
4       But here, there are hotly contested
03:35PM 5   issues of material fact sufficient for denial
6   of summary judgment, certainly, but even at
7   trial, there will be differences that United
8   Therapeutics will show, and what are those
9   differences?  How do we explain the how?
03:35PM 10  You're right.  Ohio Willow Wood says we have to
11  show the how.  The how is what is in the '066
12  IPR denial, and the same two claims at least.
13  And other claims as well, but at least the
14  whereby clause where the impurities are lower
03:35PM 15  from the starting batch to the pharmaceutical
16  composition and where the storage at ambient
17  temperature and stability of the pharmaceutical
18  composition at ambient temperature are unique
19  from each and every previously disclosed prior
03:36PM 20  art, that is certainly sufficient, under
21  collateral estoppel, to change the invalidity
22  analysis.
23       THE COURT:  I understand your point.
24       MR. BURROWBRIDGE:  I guess just
03:36PM 25  another quick point the In Re:  Thorpe is their

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

55

1   other case.  This is their product-by-process
2   case, and this demonstrates exactly what we're
3   saying.  There, again, the proper analysis was
4   to look at the claimed product and compare it
03:36PM 5   to the prior art product, and in that case,
6   again, it was uncontested.  There was no
7   differences shown by Mr. Thorpe.  In that case,
8   it was easy to say that the prior art product
9   and the claimed product were the same because
03:36PM 10  it was uncontested.
11      Again, here, there are numerous factual
12  disputes which we believe we will win on on the
13  merits, as shown in the '066 IPR denial, but
14  those disputes are sufficient to preclude
03:37PM 15  summary judgment, Your Honor.
16      THE COURT:  Very good.  Let me just
17  consult my notes and see if I have any more
18  questions.
19      Yes.  You've made the point that they
03:37PM 20  raised this too late.  They say, look, we
21  didn't raise it too late, but by the way, we're
22  making a legal argument, so you really weren't
23  prejudiced.  You might be prejudiced if you
24  lose, but it's not undue because you could make
03:37PM 25  the same argument now that you would have made

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

56

1   if you had known they were going to make this
2   argument all along.  What's your answer to
3   that?
4       MR. BURROWBRIDGE:  The answer to that
03:37PM 5   is that throughout all fact discovery, we had
6   no idea they were going with a collateral
7   estoppel theory.  We had no way to build or to
8   support our case on this motion or at trial for
9   a collateral estoppel theory.  Our expert had
03:38PM 10  no ability to -- to opine or provide additional
11  facts for purposes of collateral estoppel
12  alone.
13      As a patentee, the only burden that the
14  expert has or that the patentee has is to rebut
03:38PM 15  the patent challenger's evidence, and that's
16  what Dr. Fawzi did.  That's what United
17  Therapeutics did, and that's sufficient to
18  overcome the evidence raised in Dr. Winkler's
19  report.
03:38PM 20      Now we're facing a summary judgment where
21  we didn't have an opportunity to build our case
22  during fact discovery.  We didn't have an
23  opportunity to build our case during expert
24  discovery, and even their opening brief was
03:38PM 25  extremely unclear on what theory they were even

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

57

1  raising.  So, Your Honor, we had, I believe
2  20 pages to defend two patents on a theory
3  never disclosed to us.  If that's not
4  prejudicial, I'm not sure what is, but the
5  inability to build our case and see what they
6  should have disclosed under Federal Rules of
7  Civil Procedure 8(c) in their answer and have a
8  year to build the case the way that they have,
9  to me, Your Honor, it's very clearly
10 prejudicial.
11        THE COURT:  All right.  Go ahead.
12 You can make a final comment.
13        MR. BURROWBRIDGE:  Thank you, Your
14 Honor.
15        THE COURT:  Anything else?
16        MR. BURROWBRIDGE:  Yes, thank you.
17 Just collecting myself a little.
18        THE COURT:  Okay.
19        MR. BURROWBRIDGE:  Just a quick
20 additional point on the prejudice point, which
21 is because we rebutted Dr. Winkler's evidence,
22 that basically deprived us of the opportunity
23 to put on additional evidence.  I might have
24 argued that point, but I want to make that
25 clear.

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

58

1        For my last point, there are numerous
2  factual disputes.  I counted 13 out of 15 of
3  Liquidia's slides raise factual disputes,
4  factual disputes that the experts dispute.
5  It's hotly contested.  There have been
6  depositions.  There are -- Dr. Winkler,
7  Liquidia's expert, has put in hundreds of pages
8  of expert opinion on the issues that have been
9  set forth in the slides, and, Your Honor, if
10 this was a case where obviousness didn't turn
11 on an issue of material fact, they would have
12 moved under summary judgment for obviousness.
13        But there are clearly issues of material
14 fact that go to the heart of the obviousness
15 inquiry, and I raise the obviousness inquiry
16 because that's the inquiry that the '393 panel
17 looked at, so we need to look at the
18 obviousness inquiry for the '066 patent to say
19 that Thayers and Moriarty is different than the
20 obviousness inquiry for the '393 patent in
21 Thayers and Moriarty.
22        Lastly, Your Honor, Dr. Walsh's
23 declaration and Dr. Fawzi's declaration, those
24 are both supported by substantial evidence and
25 raise issues of material fact.

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

59

1        If Your Honor has no further questions.
2        THE COURT:  Let me ask you this.  If
3  the Court was going to accept their argument
4  that you could read Ohio Willow Wood to say
5  that I should be looking to see whether the
6  product claimed by the '066, for example, is
7  different than the product claimed by the '393,
8  is there some patentably significant difference
9  that had you known that was going to be their
10 argument that you might have put forth some
11 expert evidence saying that that wasn't true?
12        MR. BURROWBRIDGE:  Well, we would
13 absolutely have had an opportunity to put
14 forward evidence showing that the different
15 limitations are patentably distinct and having
16 been precluded from putting on that specific
17 evidence, I think, is just additional evidence
18 of prejudice.  And had they disclosed that
19 legal theory and that read of Ohio Willow Wood,
20 we would have had notice and an opportunity.
21 Currently, we have had no notice, no
22 opportunity, and, again, I think it's
23 unprecedented to read Ohio Willow Wood that way
24 because there are issues of material fact that
25 are disputed here, and I think that really does

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

60

1  make sense when the issues might not be
2  disputed.
3        THE COURT:  Understood.  Very good.
4  All right.  Mr. Sukduang, I think you've
5  got about five minutes, five or six minutes
6  extra here, that we'll let you go for.
7        MR. SUKDUANG:  Sure.  A couple of
8  points, Your Honor.
9        You asked Mr. Burrowbridge where in the
10 expert reports at all does anyone say at any
11 particular time whether the process steps of
12 alkylation, hydrolysis, salt formation make a
13 different product.  Mr. Burrowbridge didn't
14 answer that question because none of the expert
15 reports ever addressed that because even in the
16 obviousness context, even in the obviousness
17 context, independent of product-by-process,
18 independent of collateral estoppel, none of the
19 experts can argue that those three steps result
20 in a different product.
21        If you go to page five of
22 Mr. Burrowbridge's UTC slides, the two things
23 he points to that create a different product in
24 the '066 in UTC's mind are not elements of the
25 product.  The "whereby one or more impurities"

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

61

```
 1  is a result of the process step.  The claimed
 2  product doesn't have to have any level of
 3  impurity.  There's no impurity limitation.
 4  Mr. Burrowbridge said that to the Court on
 5  Friday, their expert said that.  Importantly,
 6  as you point out, when you follow that out to
 7  the '393 patent, you get the exact same result.
 8  They don't dispute that.
 9         When you look at the storage at ambient
10  temperature, that is the intermediate.  That is
11  not the final product.  Again, when you look at
12  the product, the elements that UTC points to
13  are not elements of the final product.  That is
14  the issue for product-by-process claims.  Those
15  things they point to are not process steps,
16  which are the only things you can look at in a
17  product-by-process if they create structural
18  functional differences.  Okay.  So there's no
19  differences in the product at all.
20         On the issue of being surprised, Your
21  Honor, on November 13, 2020, November 13, 2020,
22  we had our preliminary invalidity contentions
23  due to UTC.  That's Exhibit 42 of our summary
24  judgment brief.  In Exhibit 42, page 115, we
25  say explicitly the '066 and '901 patents are
```

62

```
 1  invalid for claiming the same product as
 2  invalidated patent 8,497,393.  That's in
 3  November 2020.  This case was filed back in May
 4  or April of 2020.  We go through that entire
 5  analysis, exactly what we're arguing here in
 6  summary judgment.
 7         THE COURT:  Wait a second.  It's not
 8  exact, is it?  It goes through one claim for
 9  each patent; right?
10         MR. SUKDUANG:  But all the other
11  claims are dependent.  They're not arguing --
12  remember, these are product-by-process claims,
13  and these are preliminary contentions.  UTC has
14  never argued that the other process, the other
15  limitations, somehow make the product different
16  because they're not.  So we disclosed it in
17  November 2020, this issue.  They addressed
18  that.  Mr. Burrowbridge is claiming surprise.
19  The only reason UTC is surprised is they didn't
20  read our preliminary invalidity contentions.
21         Also in our answer paragraphs, DI 23
22  paragraph 66 and --
23         THE COURT:  Let me just ask you about
24  that, though.  Let me pull up Exhibit 42.
25         One might read this argument to be saying
```

63

```
 1  that claim one of the '066 and claim one of the
 2  '901 are invalid just for the same reasons that
 3  claim one of the '393 is invalid.  I'm not
 4  seeing elements of collateral estoppel set
 5  forth here.  Can you -- any comment on that?
 6         MR. SUKDUANG:  With respect to
 7  preliminary invalidity contentions, these are
 8  the factual basis and the legal basis that lead
 9  to the issue.  Collateral estoppel is a legal
10  issue, is a legal issue.  You need to establish
11  these different elements within the legal
12  issue.  That's what this invalidity contention
13  does.  It establishes each of the elements that
14  we cite almost nearly verbatim in our summary
15  judgment brief.
16         THE COURT:  Wait.  There's a paper
17  that comes before the summary judgment brief,
18  though, which is the supplemental invalidity
19  contentions, and this argument is not in there.
20  One might think that you had dropped it.
21         MR. SUKDUANG:  I think, Your Honor,
22  given the fact that we put it in our
23  preliminary contentions, that it's in our
24  answer, that we had 30(b)(6) topics and we
25  asked UTC's witnesses, UTC's witnesses, about
```

64

```
 1  the '393, particularly Mr. Batra, the corporate
 2  witness, the '393 patent, the product, what is
 3  made, all of these issues, when you look at
 4  them all together, this issue was never
 5  dropped.  And we brought it up in summary
 6  judgment, and we brought it up -- excuse me --
 7  in our request for leave for summary judgment
 8  back in September or October of 2021 as
 9  required by the Court.  This is a legal issue.
10  Mr. Burrowbridge, I'm sorry.
11         Do you have any further questions on
12  that, Your Honor?
13         THE COURT:  Where is it in your
14  answer?
15         MR. SUKDUANG:  66 and 87.  Again,
16  it's the same issues of notifying that --
17  again, it's the pleading standard that the '066
18  and '901 claim the same product that the '393
19  was invalidated.  Those are issues that result
20  in collateral estoppel.  So for UTC to really
21  claim surprise, Your Honor, to really claim
22  surprise, and -- they are not.  This issue has
23  come up through fact depositions, expert
24  depositions, expert reports, in our -- in our
25  preliminary contentions, in our other
```

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

65

1  contentions. We've talked about it in
2  meet-and-confers. Mr. Burrowbridge might not
3  have been involved in all those
4  meet-and-confers but his other counsel was. It
5  is really disingenuous to say this is a
6  surprise, given everything that has gone on in
7  this case.
8        THE COURT: I'm going to still give
9  you, Mr. Sukduang, a chance to have a final
10  word.
11        But, Mr. Burrowbridge, we're all sitting
12  here today. Is what he's saying about it
13  coming up at meet-and-confers and everybody
14  knowing that this is what's going on accurate?
15        MR. BURROWBRIDGE: No, Your Honor,
16  that's not accurate. It's not in their answer.
17  It's not in their invalidity contentions. It's
18  not hard to put the words "collateral estoppel"
19  down in a way that's transparent and show us
20  the factors and show us the case limitations
21  and rely on it for collateral estoppel. It
22  wasn't raised in the meet-and-confer, Your
23  Honor, no.
24        THE COURT: Mr. Sukduang, you can
25  proceed.

66

1        MR. SUKDUANG: You don't need to put
2  the words "collateral estoppel" in.
3        On the issue of burden, Your Honor, there
4  is a case we cite on the different burdens.
5  It's the XY case. The Transover Genetics, and
6  I apologize. I'm going to be looking away from
7  you.
8        THE COURT: That's a curious case,
9  isn't it?
10        MR. SUKDUANG: Right, and it's
11  supported by other cases. Let me cover the XY
12  case first.
13        The XY case said specifically that the
14  different burdens between the board and the
15  district court don't preclude issue preclusion.
16  On the cases that Mr. Burrowbridge pointed to,
17  B and B Holdings, the Court knows that was a
18  PTAB versus a district court. They said that
19  different burden doesn't change. Trust ID,
20  which is a district court case, a Delaware
21  district court case, the reason why issue
22  preclusion didn't apply there is because the
23  board's final written decision was on appeal.
24  It was not yet final so that the application of
25  collateral estoppel could not be made because

67

1  the decision was not yet final. The Court said
2  there that a PTAB decision by itself is not
3  final. You have to appeal it. So there's --
4  and the B and B case is a Supreme Court case.
5        The Stark -- I think it's Skyhawk. The
6  same thing. Different burdens didn't preclude
7  collateral estoppel.
8        THE COURT: Wait a second. So the B
9  and B case is interesting because it talked
10  about how the Eighth Circuit screwed up because
11  it found that collateral estoppel couldn't
12  apply because of the different burdens of
13  proof, but the Eighth Circuit was wrong. The
14  burdens of proof are the same. The Supreme
15  Court doesn't say in B and B that burdens of
16  proof don't matter, it didn't matter in that
17  case; right?
18        MR. SUKDUANG: Well, that case
19  doesn't support Mr. Burrowbridge's point that
20  burdens of proof don't make a different, and
21  importantly, when you look at the XY case, that
22  looks back at the B and B case. I'm sorry,
23  looks at the -- yeah, the B and B case. It's
24  page 1294 of the XY decision.
25        THE COURT: XY is interesting. So

68

1  XY, the patent gets invalidated by the PTAB, so
2  one wonders -- this is a philosophical comment,
3  so you don't have to answer, but one wonders
4  why the Federal Circuit didn't say the patent
5  is invalid and it's cancelled so we're all
6  done. I don't know why they had to invoke
7  principles of collateral estoppel, but it is
8  what it is.
9        MR. SUKDUANG: One argument to that,
10  Your Honor, is to clarify the position that --
11  that judicial officers such as myself may hold,
12  that different burdens of proof prevent
13  collateral estoppel. They've negated that
14  argument. That's why.
15        So you're right. The PTAB could have
16  said this issue is moot. We can't take what
17  the Federal Circuit could have, should have,
18  would have done. We have to take what they
19  actually did.
20        The Ohio Willow Wood case -- and you
21  pointed this out, and you're exactly right.
22  The case says you have to look at the elements
23  if they make a material difference to the
24  validity analysis. And that's the crux that
25  you've been talking to Mr. Burrowbridge about.

69

1       Here, you have to apply that language,
2   whether the claim elements impart a material
3   difference to the validity analysis, and
4   overlay that a product-by-process claims.  The
03:53PM 5   only limitation that is applicable here is a
6   product claim, and the case law is clear that
7   you only look at the process steps if they
8   create a structurally or functionally different
9   product.
03:53PM 10      When you look at that analysis, and Ohio
11  Willow Wood is right, and you're looking at
12  that correctly.  And we're applying that here
13  to the product-by-process claims.  The issue as
14  to whether the steps of alkylation, hydrolysis,
03:54PM 15  and salt formation make a materially different
16  analysis of validity only if they create a
17  structural or functional difference.  So you
18  combine Ohio Willow Wood with the case law on
19  product-by-process, which we do on slide three,
03:54PM 20  and you apply that language that you identify
21  in Ohio Willow Wood to product-by-process
22  claims and the product-by-process claims,
23  collateral estoppel applies.
24      And importantly, to come back to this
03:54PM 25  point because it is fundamental, there is not a

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

70

1   single element, a single feature, of the
2   product of the '066 or '901 that they say is
3   structure -- that they can actually point to
4   that is structurally or functionally different
03:54PM 5   from the product in the '393.  Everything they
6   point to is not of the final product, which is
7   of the claim.  Storage is not of the final
8   product.  This impurity difference is just a
9   result of when you follow those three steps.
03:55PM 10  And Mr. Burrowbridge does not dispute claim
11  nine and claim 16, when you follow that
12  process, you get that result.
13      For those reasons, Your Honor, I think I
14  covered your questions.  If I haven't, I
03:55PM 15  apologize, and I don't mean to avoid them.  I
16  might not have remembered them all.  If you
17  have any further questions, please let me know.
18      THE COURT:  I don't, and for the
19  record, I think you all did an incredible job
03:55PM 20  at figuring out what I was trying to ask and
21  answering what I was trying to ask, so thank
22  you.
23      We'll conclude today's argument.  I want
24  to go back and take a look at my notes in light
03:55PM 25  of arguments that were made today and take

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

71

1   another look at the briefs.  I understand you
2   all have trial coming up in a couple weeks, and
3   you're probably interested to know whether or
4   not the motion will be granted or denied
03:56PM 5   because it could have some impact on how you
6   all are going to spend your weekend.
7       Here's what I propose doing.  I propose
8   that we get back on the record tomorrow
9   afternoon, and I'll be prepared to issue my
03:56PM 10  report and recommendation from the bench, and
11  then at some point after tomorrow, we'll put
12  out a written version, perhaps, that
13  incorporates the transcripts of my ruling.  I'm
14  just looking at my calendar.  If we got back on
03:56PM 15  at 3:00 tomorrow, could I just have one person
16  from each side on -- as many people can dial in
17  as they want, but I only need one person from
18  each side to issue the ruling.  Any issue with
19  that from the plaintiff's side?
03:57PM 20      MR. BURROWBRIDGE:  No, Your Honor,
21  we'll be available at your convenience.
22      THE COURT:  Defense?
23      MR. SUKDUANG:  No, Your Honor.
24      THE COURT:  Great.  We'll put up a
03:57PM 25  dial-in and do this telephonically that way.

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

72

1   That will conclude today's hearing.
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

73

1                    C E R T I F I C A T E

2    STATE OF DELAWARE          )
                                ) ss:
3    COUNTY OF NEW CASTLE       )

4          I, Deanna L. Warner, a Certified
5    Shorthand Reporter, do hereby certify that as
6    such Certified Shorthand Reporter, I was
7    present at and reported in Stenotype shorthand
8    the above and foregoing proceedings in Case
9    Number 20-CV-755-RGA-JLH, *UNITED THERAPEUTICS*
10   *CORPORATION vs. LIQUIDIA TECHNOLOGIES, INC.*,
11   heard on March 10, 2022.
12         I further certify that a transcript of
13   my shorthand notes was typed and that the
14   foregoing transcript, consisting of 73
15   typewritten pages, is a true copy of said
16   SUMMARY JUDGMENT.
17         S I G N E D, O F F I C I A L L Y   S E A L E D, and F I L E D
18   with the Clerk of the District Court, NEW
19   CASTLE County, Delaware, this 14th day of
20   March, 2022.

21
22   _____
           Deanna L. Warner, CSR, #1687
23         Speedbudget Enterprises, LLC


24
25
                DEANNA WARNER, CSR
           202 Ashfield Court, Smyrna, DE 19977
        Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

| # |
|---|

**#1687** [1] - 73:22

| ' |
|---|

**'066** [66] - 6:24, 7:9, 7:20, 10:6, 10:24, 11:18, 12:5, 13:7, 13:24, 14:6, 14:11, 14:15, 16:2, 16:14, 16:21, 17:13, 17:16, 17:20, 18:9, 21:9, 22:3, 35:21, 35:23, 35:24, 36:1, 36:19, 38:15, 38:22, 41:6, 41:24, 42:14, 42:16, 42:18, 42:19, 42:20, 42:25, 43:1, 43:7, 43:14, 43:19, 43:22, 44:4, 44:9, 44:11, 44:19, 45:6, 46:23, 47:20, 47:24, 48:4, 48:25, 49:12, 50:24, 51:25, 52:14, 53:14, 53:15, 54:11, 55:13, 58:18, 59:6, 60:24, 61:25, 63:1, 64:17, 70:2
**'303** [1] - 7:10
**'393** [73] - 6:17, 6:25, 7:7, 7:8, 7:12, 7:14, 10:5, 10:10, 10:15, 10:23, 11:15, 12:3, 12:10, 12:20, 13:7, 14:1, 14:4, 14:12, 15:25, 16:16, 16:21, 17:5, 17:8, 17:17, 17:20, 17:22, 18:7, 21:19, 21:20, 30:7, 31:22, 32:23, 36:19, 38:16, 38:17, 38:21, 39:13, 39:17, 40:14, 40:21, 41:8, 41:16, 41:23, 42:15, 42:20, 42:21, 42:24, 43:6, 43:24, 44:5, 44:10, 45:7, 47:14, 47:21, 48:2, 48:15, 48:16, 49:8, 49:14, 50:25, 51:16, 51:20, 51:21, 52:8, 58:16, 58:20, 59:7, 61:7, 63:3, 64:1, 64:2, 64:18, 70:5
**'901** [34] - 6:24, 7:9, 7:21, 13:25, 14:11, 14:15, 16:2, 16:14, 16:22, 17:13, 17:16,

17:20, 18:10, 21:9, 22:4, 30:6, 30:9, 30:23, 30:24, 31:2, 31:6, 31:15, 31:19, 31:24, 31:25, 32:5, 32:10, 35:22, 41:7, 42:17, 61:25, 63:2, 64:18, 70:2

| 1 |
|---|

**10** [1] - 73:11
**10th** [1] - 1:14
**115** [1] - 61:24
**1294** [1] - 67:24
**13** [3] - 58:2, 61:21
**14th** [1] - 73:19
**15** [3] - 4:6, 26:10, 58:2
**16** [2] - 11:19, 70:11

| 2 |
|---|

**20** [1] - 57:2
**20-755-RGA** [1] - 3:9
**20-CV-755-RGA** [1] - 1:6
**20-CV-755-RGA-JLH** [1] - 73:9
**2014** [1] - 18:7
**2019** [1] - 18:9
**2020** [5] - 61:21, 62:3, 62:4, 62:17
**2021** [1] - 64:8
**2022** [3] - 1:14, 73:11, 73:20
**23** [1] - 62:21
**292** [1] - 51:4

| 3 |
|---|

**30(b)(6** [1] - 63:24
**3542** [2] - 15:19, 16:6
**393's** [1] - 35:25
**3:00** [1] - 71:15

| 4 |
|---|

**42** [3] - 61:23, 61:24, 62:24

| 6 |
|---|

**6** [3] - 11:21, 43:18
**66** [2] - 62:22, 64:15

| 7 |
|---|

**73** [1] - 73:14

| 8 |
|---|

**8(c** [1] - 57:7
**8,497,393** [1] - 62:2
**87** [1] - 64:15

| 9 |
|---|

**99.5** [1] - 14:5

| A |
|---|

**ability** [1] - 56:10
**able** [2] - 34:13, 37:11
**absolutely** [3] - 34:25, 36:12, 59:13
**accept** [1] - 59:3
**acceptable** [2] - 9:15, 20:1
**accepts** [1] - 46:6
**account** [1] - 30:17
**accurate** [2] - 65:14, 65:16
**acid** [1] - 14:3
**acknowledge** [1] - 32:21
**act** [1] - 15:16
**action** [2] - 35:9, 37:24
**Adam** [2] - 3:17, 37:9
**ADAM** [1] - 1:20
**additional** [10] - 21:22, 45:21, 46:4, 50:9, 50:13, 56:10, 57:20, 57:23, 59:17
**additionally** [1] - 16:12
**address** [4] - 6:6, 7:23, 10:2, 30:22
**addressed** [6] - 11:12, 12:10, 15:4, 24:22, 60:15, 62:17
**addresses** [2] - 7:4, 7:5
**adjudicated** [8] - 38:17, 45:16, 45:22, 46:5, 46:12, 46:13, 52:22, 53:2
**admit** [1] - 52:2
**affect** [1] - 39:6
**affirmed** [9] - 6:17, 18:18, 27:4, 27:14, 27:20, 28:6, 28:18,

28:23, 29:21
**afternoon** [9] - 3:1, 3:2, 3:4, 3:14, 3:20, 3:24, 4:5, 4:9, 71:9
**ago** [2] - 25:9, 33:4
**agree** [1] - 45:13
**ahead** [4] - 5:19, 14:21, 37:7, 57:11
**alkylation** [14] - 9:20, 10:7, 11:2, 11:16, 12:24, 17:7, 18:11, 20:4, 20:11, 21:2, 22:5, 32:8, 60:12, 69:14
**Allergan** [2] - 7:4, 7:22
**allotted** [1] - 4:6
**allow** [1] - 30:20
**allowed** [1] - 27:17
**allows** [1] - 25:16
**almost** [1] - 63:14
**alone** [3] - 45:1, 45:3, 56:12
**alter** [8] - 36:20, 42:13, 44:25, 45:17, 46:13, 46:21, 47:4, 47:11
**ambient** [16] - 13:4, 13:14, 13:23, 32:7, 32:15, 42:11, 42:12, 47:2, 48:7, 48:10, 48:12, 48:18, 48:20, 54:16, 54:18, 61:9
**analogize** [1] - 28:2
**analysis** [33] - 7:20, 8:13, 13:3, 18:4, 18:6, 18:9, 35:25, 41:6, 41:8, 41:21, 42:5, 42:14, 43:20, 45:5, 46:7, 46:16, 46:18, 46:19, 46:21, 47:4, 47:11, 50:11, 51:23, 52:7, 52:11, 53:23, 54:22, 55:3, 62:5, 68:24, 69:3, 69:10, 69:16
**AND** [1] - 1:2
**Andrews** [4] - 22:21, 22:22, 25:23, 26:23
**answer** [22] - 19:21, 21:7, 21:23, 24:10, 33:19, 34:9, 36:23, 36:25, 39:25, 40:25, 47:19, 48:13, 53:4, 56:2, 56:4, 57:7, 60:14, 62:21, 63:24, 64:14, 65:16, 68:3
**answered** [1] - 4:12
**answering** [1] - 70:21
**answers** [2] - 21:14, 31:4

**API** [8] - 15:22, 15:23, 16:8, 16:11, 16:12, 16:14, 16:19, 18:5
**APIs** [2] - 16:18, 16:19
**apologize** [3] - 31:18, 66:6, 70:15
**appeal** [2] - 66:23, 67:3
**appealed** [1] - 29:9
**appearances** [2] - 3:12, 3:22
**APPEARANCES** [1] - 1:16
**appellate** [1] - 29:8
**applicable** [2] - 17:23, 69:5
**application** [3] - 35:10, 50:4, 66:24
**applied** [3] - 26:15, 53:13, 53:14
**applies** [7] - 17:1, 20:20, 22:13, 27:15, 31:24, 37:21, 69:23
**apply** [12] - 7:9, 18:22, 26:19, 29:11, 35:14, 36:1, 37:25, 44:15, 66:22, 67:12, 69:1, 69:20
**applying** [3] - 28:8, 47:8, 69:12
**appropriate** [2] - 4:25, 9:10
**approved** [1] - 29:2
**April** [1] - 62:4
**argue** [6] - 5:2, 12:14, 29:22, 32:9, 32:13, 60:19
**argued** [9] - 10:12, 10:18, 20:3, 25:21, 30:18, 32:25, 34:25, 57:24, 62:14
**argues** [7] - 7:6, 7:17, 10:6, 11:14, 12:9, 13:24, 15:24
**arguing** [10] - 3:19, 4:1, 10:21, 20:10, 22:11, 26:23, 53:3, 53:4, 62:5, 62:11
**argument** [34] - 4:7, 10:12, 12:13, 17:14, 19:4, 20:2, 20:18, 21:4, 24:5, 24:7, 24:10, 24:17, 26:8, 26:10, 26:21, 28:14, 30:13, 31:20, 40:8, 43:9, 46:4, 53:9, 53:11, 53:12, 55:22, 55:25, 56:2, 59:3, 59:10, 62:25, 63:19, 68:9, 68:14, 70:23

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
03/14/2022 03:57:32 PM   Phone:  (302) 893-1158   E-mail: deanna@speedbudget.biz

20 of 29 sheets

**arguments** [6] - 17:22, 19:14, 21:12, 28:13, 30:4, 70:25
**ARSHT** [1] - 1:17
**art** [40] - 7:8, 7:9, 7:10, 8:6, 9:1, 10:10, 10:16, 10:23, 15:6, 15:12, 17:14, 19:13, 20:7, 20:14, 33:2, 36:18, 39:21, 40:19, 41:24, 42:23, 43:23, 45:6, 45:7, 45:25, 48:9, 48:17, 48:19, 49:7, 50:11, 50:19, 51:15, 51:17, 51:22, 52:1, 52:7, 54:1, 54:20, 55:5, 55:8
**aspect** [1] - 20:17
**asserted** [4] - 14:10, 38:15, 40:18, 41:5
**asserts** [2] - 8:3, 8:13
**assuming** [1] - 47:7
**attached** [1] - 25:3
**attempt** [1] - 24:18
**attempting** [1] - 51:16
**attorney** [1] - 4:18
**available** [1] - 71:21
**avoid** [1] - 70:15
**aware** [7] - 25:7, 27:23, 29:9, 29:15, 42:20, 42:21, 42:22

**B**

**base** [1] - 9:24
**based** [10] - 6:13, 8:5, 10:10, 10:13, 12:23, 20:18, 31:17, 31:21, 47:6, 50:17
**basic** [2] - 11:7, 12:1
**basis** [3] - 40:20, 63:8
**batch** [9] - 12:4, 16:2, 42:7, 44:1, 44:2, 47:1, 47:25, 48:23, 54:15
**Batra** [1] - 64:1
**bear** [1] - 28:9
**beat** [1] - 52:18
**become** [1] - 28:15
**becomes** [1] - 51:15
**begin** [1] - 6:1
**bench** [1] - 71:10
**benzidine** [1] - 9:21
**best** [2] - 36:4, 43:11
**better** [2] - 33:24, 34:3
**between** [12] - 8:7, 10:23, 12:8, 12:19, 18:17, 36:10, 36:18, 41:23, 45:16, 46:12,

53:25, 66:14
**beyond** [2] - 29:2, 35:16
**bit** [2] - 23:13, 40:5
**blanket** [1] - 14:17
**blue** [1] - 9:16
**board** [1] - 66:14
**board's** [1] - 66:23
**book** [2] - 15:17, 16:17
**box** [2] - 15:21, 16:5
**brand** [1] - 25:24
**brief** [15] - 7:17, 7:23, 12:9, 21:3, 22:25, 23:16, 32:24, 35:1, 52:3, 52:6, 56:24, 61:24, 63:15, 63:17
**briefing** [2] - 5:14, 6:22
**briefs** [6] - 5:9, 9:3, 10:1, 34:25, 43:18, 71:1
**bring** [1] - 20:21
**broadest** [1] - 27:10
**brought** [2] - 64:5, 64:6
**build** [1] - 56:7, 56:21, 56:23, 57:5, 57:8
**bullet** [3] - 42:9, 44:3, 44:8
**bullets** [1] - 42:3
**bunch** [1] - 45:20
**burden** [13] - 26:14, 26:16, 26:18, 27:3, 27:25, 28:3, 28:5, 28:9, 28:14, 47:8, 56:13, 66:3, 66:19
**burdens** [10] - 29:11, 43:9, 66:4, 66:14, 67:6, 67:12, 67:14, 67:15, 67:20, 68:12
**burrowbridge** [1] - 3:17
**BURROWBRIDGE** [29] - 1:20, 33:15, 33:24, 34:3, 34:6, 37:4, 37:11, 37:14, 40:1, 40:11, 41:2, 41:11, 41:17, 43:12, 46:17, 47:18, 49:16, 49:19, 51:2, 51:6, 53:8, 54:24, 56:4, 57:13, 57:16, 57:19, 59:12, 65:15, 71:20
**Burrowbridge** [12] - 3:18, 33:14, 60:9, 60:13, 61:4, 62:18, 64:10, 65:2, 65:11, 66:16, 68:25, 70:10
**Burrowbridge's** [2] -

60:22, 67:19
**BY** [1] - 1:17

**C**

**calendar** [1] - 71:14
**camera** [1] - 5:15
**cancelled** [1] - 68:5
**cannot** [6] - 14:18, 16:19, 21:2, 38:1, 38:2, 44:15
**car** [6] - 49:21, 49:23, 50:1, 50:6, 50:7, 50:13
**carefully** [1] - 15:20
**case** [59] - 4:19, 7:4, 7:5, 7:6, 7:22, 7:25, 14:18, 22:20, 23:15, 24:25, 25:14, 26:24, 29:9, 34:16, 36:10, 36:13, 37:22, 38:15, 44:16, 45:14, 46:1, 47:10, 53:11, 53:19, 53:20, 53:22, 55:1, 55:2, 55:5, 55:7, 56:8, 56:21, 56:23, 57:5, 57:8, 58:10, 62:3, 65:7, 65:20, 66:4, 66:5, 66:8, 66:12, 66:13, 66:20, 66:21, 67:4, 67:9, 67:17, 67:18, 67:21, 67:22, 67:23, 68:20, 68:22, 69:6, 69:18
**Case** [2] - 1:5, 73:8
**cases** [11] - 7:24, 8:4, 8:8, 8:9, 35:2, 36:4, 36:5, 36:6, 37:18, 66:11, 66:16
**CASTLE** [2] - 73:3, 73:19
**certain** [2] - 6:23, 7:13
**certainly** [3] - 23:25, 54:6, 54:20
**certificate** [2] - 18:6, 18:8
**certificates** [1] - 18:4
**Certified** [2] - 73:4, 73:6
**certify** [2] - 73:5, 73:12
**challenged** [4] - 10:14, 45:12, 46:10, 49:25
**challenger's** [1] - 56:15
**challenging** [1] - 23:23
**chance** [5] - 4:10,

4:11, 5:1, 33:13, 65:9
**change** [8] - 28:14, 31:15, 41:5, 41:21, 42:5, 50:10, 54:21, 66:19
**changes** [2] - 48:8, 53:23
**checked** [2] - 15:20, 16:6
**chemistry** [2] - 11:8, 12:1
**chose** [1] - 16:9
**circuit** [3] - 27:14, 67:10, 67:13
**Circuit** [14] - 6:18, 8:12, 18:19, 27:5, 28:6, 28:18, 28:23, 29:1, 29:5, 29:21, 35:6, 39:5, 68:4, 68:17
**cite** [4] - 25:4, 35:1, 63:14, 66:4
**cited** [2] - 7:23, 44:21
**cites** [1] - 29:10
**civil** [1] - 57:7
**claim** [78] - 6:21, 6:24, 7:13, 7:14, 8:20, 9:7, 9:13, 10:24, 11:14, 11:16, 11:19, 12:5, 12:8, 13:8, 13:10, 13:11, 13:12, 13:13, 14:3, 14:6, 21:21, 23:21, 27:7, 27:9, 27:13, 27:15, 27:16, 27:17, 27:18, 28:18, 29:25, 30:6, 30:7, 30:9, 31:2, 31:6, 31:7, 31:8, 31:17, 31:19, 31:24, 31:25, 32:17, 35:19, 35:20, 36:7, 39:3, 43:1, 43:15, 44:2, 44:11, 44:15, 46:20, 46:24, 48:1, 49:10, 50:8, 51:14, 51:24, 52:24, 62:8, 63:1, 63:3, 64:18, 64:21, 69:2, 69:6, 70:7, 70:10, 70:11
**claimed** [27] - 13:6, 13:7, 15:11, 17:15, 19:23, 21:19, 36:11, 41:14, 44:19, 47:19, 47:20, 48:11, 49:11, 49:12, 49:13, 49:23, 50:3, 50:17, 51:21, 51:25, 52:1, 53:25, 55:4, 55:9, 59:6, 59:7, 61:1

**claiming** [2] - 62:1, 62:18
**claims** [72] - 6:20, 6:21, 7:2, 8:8, 8:19, 8:22, 9:12, 9:19, 10:14, 10:15, 13:18, 13:24, 14:10, 19:23, 20:16, 23:22, 26:7, 28:15, 28:25, 29:20, 30:13, 32:22, 32:23, 37:22, 38:4, 38:10, 38:11, 38:12, 38:22, 39:11, 39:13, 39:16, 39:17, 39:22, 40:4, 40:7, 40:10, 40:12, 40:13, 40:15, 40:17, 40:18, 41:1, 41:5, 42:18, 43:23, 45:17, 45:22, 45:23, 45:25, 46:5, 46:13, 46:20, 47:16, 49:4, 49:6, 50:20, 51:19, 53:15, 54:12, 54:13, 61:14, 62:11, 62:12, 69:4, 69:13, 69:22
**clarify** [1] - 68:10
**clause** [5] - 10:25, 43:16, 46:25, 48:22, 54:14
**clean** [1] - 37:18
**cleaner** [1] - 14:24
**clear** [8] - 18:25, 21:17, 28:7, 37:20, 47:22, 47:23, 57:25, 69:6
**clearly** [5] - 41:20, 41:21, 42:4, 57:9, 58:13
**Clerk** [1] - 73:18
**collateral** [50] - 6:12, 6:13, 6:19, 7:15, 7:18, 8:10, 8:16, 9:10, 17:1, 18:21, 20:19, 21:12, 22:12, 28:8, 28:9, 28:19, 29:10, 30:13, 31:15, 31:16, 31:21, 32:17, 33:18, 34:8, 34:17, 34:18, 34:20, 34:23, 35:14, 37:21, 42:1, 44:15, 46:9, 54:21, 56:6, 56:9, 56:11, 60:18, 63:4, 63:9, 64:20, 65:18, 65:21, 66:2, 66:25, 67:7, 67:11, 68:7, 68:13, 69:23
**collaterally** [2] - 8:4, 22:10
**collecting** [1] - 57:17

combine [1] - 69:18
comfortable [1] - 5:3
coming [5] - 22:15, 23:3, 26:1, 65:13, 71:2
comment [6] - 30:1, 30:2, 30:19, 57:12, 63:5, 68:2
commenting [1] - 30:25
common [1] - 37:24
company [1] - 11:9
compare [3] - 45:6, 51:25, 55:4
compared [3] - 38:16, 40:19, 49:9
compares [1] - 43:22, 52:7
complaint [2] - 24:11
complete [2] - 7:20, 8:13
completely [1] - 40:1
components [1] - 15:23
composition [10] - 13:12, 13:13, 13:16, 16:1, 42:8, 48:1, 48:18, 48:24, 54:16, 54:18
compound [2] - 11:20, 11:21
concerned [1] - 51:8
conclude [2] - 70:23, 72:1
conditional [1] - 52:21
confer [1] - 65:22
conference [1] - 14:8
confers [3] - 65:2, 65:4, 65:13
confident [1] - 42:12
confirm [1] - 5:24
consider [1] - 13:2
considered [7] - 15:10, 36:20, 38:19, 38:21, 40:13, 40:16, 42:16
consisting [1] - 73:14
construction [9] - 27:7, 27:9, 27:13, 27:15, 27:16, 27:17, 27:19, 27:21, 31:9
consult [1] - 55:17
consulting [1] - 5:13
contact [1] - 9:23
contention [1] - 63:12
contentions [11] - 23:17, 24:4, 61:22, 62:13, 62:20, 63:7, 63:19, 63:23, 64:25, 65:1, 65:17

contested [2] - 54:4, 58:5
context [2] - 60:16, 60:17
continuation [1] - 50:4
convenience [1] - 71:21
convincing [1] - 28:7
COOLEY [1] - 2:4
copy [1] - 73:15
corporate [1] - 64:1
CORPORATION [2] - 1:4, 73:10
corporation [1] - 3:8
correct [9] - 24:23, 25:3, 35:17, 37:17, 37:19, 37:20, 41:17, 52:2, 52:8
correctly [1] - 69:12
counsel [11] - 1:22, 3:13, 3:23, 5:19, 14:7, 34:9, 34:12, 34:24, 38:5, 44:12, 65:4
Counsel [1] - 2:6
counted [1] - 58:2
COUNTY [1] - 73:3
County [1] - 73:19
couple [2] - 60:7, 71:2
course [3] - 24:12, 25:14, 45:25
COURT [59] - 1:1, 3:1, 3:6, 3:20, 4:5, 5:25, 6:3, 14:22, 18:23, 21:16, 22:14, 23:12, 26:4, 26:11, 27:22, 28:22, 29:13, 29:17, 29:24, 31:1, 32:3, 33:3, 33:11, 33:25, 34:5, 37:2, 37:6, 38:24, 40:8, 40:23, 41:9, 41:13, 43:7, 45:10, 47:5, 49:15, 49:18, 50:14, 51:5, 52:16, 54:23, 55:16, 57:11, 57:15, 57:18, 59:2, 60:3, 62:7, 62:23, 63:16, 64:13, 65:8, 65:24, 66:8, 67:8, 67:25, 70:18, 71:22, 71:24
Court [18] - 21:20, 24:8, 24:16, 26:16, 30:16, 34:10, 35:5, 39:12, 41:15, 46:6, 59:3, 61:4, 64:9, 66:17, 67:1, 67:4, 67:15, 73:18
court [12] - 3:10, 3:11,

8:12, 27:18, 29:8, 32:11, 34:1, 35:3, 66:15, 66:18, 66:20, 66:21
courtroom [1] - 5:7
courts [2] - 27:8, 27:11
cover [9] - 15:17, 15:21, 16:7, 16:11, 16:19, 39:14, 39:16, 39:18, 66:11
covered [2] - 21:6, 70:14
covers [1] - 39:3
create [10] - 9:4, 10:8, 12:25, 14:19, 15:4, 20:25, 60:23, 61:17, 69:8, 69:16
creates [1] - 8:25
crux [1] - 68:24
CSR [1] - 73:22
curious [1] - 66:8

**D**

data [1] - 15:9
date [1] - 52:13
DAVIES [1] - 2:5
Davies [1] - 4:3
dead [1] - 52:18
deal [1] - 4:24
deals [1] - 30:9
Deanna [3] - 3:11, 73:4, 73:22
decide [1] - 47:9
decided [5] - 12:25, 18:18, 19:10, 21:1, 29:21
decision [22] - 6:17, 7:11, 7:14, 12:10, 27:4, 27:14, 28:5, 28:19, 29:8, 30:12, 31:14, 32:5, 36:1, 42:22, 43:24, 47:7, 49:5, 50:16, 66:23, 67:1, 67:2, 67:24
declaration [7] - 14:16, 25:1, 36:14, 51:4, 51:7, 58:23
declarations [8] - 14:13, 17:6, 17:13, 17:18, 17:19, 17:24, 36:15, 50:22
defend [1] - 57:2
defendant [1] - 57:19
Defendant [2] - 1:8, 2:6
defendant's [1] - 5:18
defense [1] - 71:22

defenses [2] - 33:9, 33:10
define [1] - 9:9
definitive [1] - 35:13
Delaware [5] - 3:13, 3:23, 35:7, 66:20, 73:19
DELAWARE [2] - 1:2, 73:2
demonstrate [1] - 49:3
demonstrates [1] - 55:2
denial [4] - 43:19, 54:5, 54:12, 55:13
denied [1] - 71:4
dependent [2] - 23:22, 62:11
depositions [3] - 58:6, 64:23, 64:24
deprived [1] - 57:22
determination [4] - 12:21, 39:7, 45:11, 46:14
determinative [1] - 10:3
determined [2] - 21:24, 22:8
DI [2] - 51:4, 62:21
dial [3] - 4:16, 71:16, 71:25
dial-in [2] - 4:16, 71:25
dialled [1] - 4:15
difference [20] - 12:7, 13:1, 16:3, 36:7, 39:6, 39:10, 45:8, 45:22, 46:19, 46:23, 47:16, 48:15, 49:5, 49:11, 53:25, 59:8, 68:23, 69:3, 69:17, 70:8
differences [19] - 12:19, 35:19, 36:8, 36:10, 36:18, 38:11, 38:12, 44:19, 45:16, 46:12, 46:20, 47:3, 53:21, 54:7, 54:9, 55:7, 61:18, 61:19
different [79] - 5:12, 8:3, 9:1, 9:5, 10:9, 10:16, 10:20, 10:22, 12:15, 12:22, 12:23, 13:6, 14:1, 15:5, 15:12, 16:1, 16:5, 16:15, 16:18, 17:9, 17:10, 17:15, 17:16, 17:21, 18:21, 20:7, 20:13, 21:5, 22:2, 22:4, 22:9, 22:12, 26:14, 27:8, 27:19,

29:12, 30:11, 30:12, 30:15, 30:24, 31:10, 34:22, 35:10, 38:25, 39:2, 39:16, 39:20, 40:17, 41:7, 41:15, 42:9, 43:9, 46:7, 47:8, 47:13, 47:17, 47:20, 50:24, 53:1, 58:19, 59:7, 59:14, 60:13, 60:20, 60:23, 62:15, 63:11, 66:4, 66:14, 66:19, 67:6, 67:12, 67:20, 68:12, 69:8, 69:15, 70:4
differentiate [1] - 15:2
differently [1] - 32:12
directed [1] - 19:15
directly [2] - 7:24, 12:13
disagree [1] - 53:5
disclose [1] - 50:12
disclosed [7] - 19:11, 52:12, 54:19, 57:3, 57:6, 59:18, 62:16
discloses [1] - 48:22
discovery [5] - 23:3, 24:13, 56:5, 56:22, 56:24
discuss [2] - 9:2, 24:2
discussed [2] - 40:4, 46:25
disingenuous [1] - 65:5
dispute [5] - 12:2, 23:14, 58:4, 61:8, 70:10
disputed [6] - 14:19, 35:17, 36:13, 36:21, 59:25, 60:2
disputes [6] - 53:21, 55:12, 55:14, 58:2, 58:3, 58:4
disregard [1] - 15:6
distinct [7] - 14:1, 38:18, 38:20, 41:20, 44:14, 49:13, 59:15
DISTRICT [2] - 1:1, 1:2
District [2] - 35:7, 73:18
district [8] - 8:11, 27:8, 27:11, 27:18, 66:15, 66:18, 66:20, 66:21
dive [1] - 51:6
documents [1] - 14:17
done [4] - 25:25, 40:22, 68:6, 68:18
doubt [1] - 29:3
down [2] - 8:22, 65:19
Dr [17] - 14:5, 14:14,

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
03/14/2022 03:57:32 PM  Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

22 of 29 sheets

15:8, 24:25, 25:9, 26:2, 34:16, 44:20, 51:4, 56:16, 56:18, 57:21, 58:6, 58:22, 58:23

**drive** [5] - 49:21, 49:23, 50:1, 50:3, 50:7

**dropped** [2] - 63:20, 64:5

**drug** [4] - 15:21, 15:22, 16:7

**due** [1] - 61:23

**during** [4] - 17:4, 17:5, 56:22, 56:23

## E

**easily** [1] - 54:3

**easy** [1] - 55:8

**Edward** [1] - 3:16

**EDWARD** [1] - 1:21

**effect** [2] - 28:19, 47:9

**efficient** [1] - 14:25

**eight** [2] - 35:1, 38:23

**Eighth** [1] - 67:10

**eighth** [1] - 67:13

**either** [1] - 10:10

**element** [1] - 70:1

**elements** [11] - 24:3, 34:18, 41:20, 60:24, 61:12, 61:13, 63:4, 63:11, 63:13, 68:22, 69:2

**eliminate** [1] - 23:9

**eloquently** [1] - 39:5

**EMERY** [1] - 1:20

**Emery** [1] - 3:18

**enables** [1] - 50:5

**end** [1] - 25:18

**Enterprises** [1] - 73:23

**entire** [1] - 62:4

**equivalent** [1] - 16:24

**err** [1] - 28:24

**ESQ** [7] - 1:17, 1:20, 1:21, 1:21, 2:1, 2:4, 2:5

**essentially** [3] - 22:1, 39:4, 45:24

**establish** [3] - 7:18, 8:15, 63:10

**establishes** [2] - 17:25, 63:13

**establishing** [1] - 28:10

**estopped** [4] - 8:5, 10:21, 22:10, 30:5

**estoppel** [52] - 6:12,

6:13, 6:19, 7:16, 7:19, 8:10, 8:16, 9:10, 17:1, 18:22, 20:19, 21:12, 22:13, 23:24, 24:1, 28:8, 28:9, 28:19, 29:11, 30:14, 31:16, 31:21, 32:18, 33:19, 34:9, 34:17, 34:18, 34:20, 34:23, 35:14, 37:21, 42:1, 44:15, 46:9, 54:21, 56:7, 56:9, 56:11, 60:18, 63:4, 63:9, 64:20, 65:18, 65:21, 66:2, 66:25, 67:7, 67:11, 68:7, 68:13, 69:23

**evidence** [20] - 12:20, 15:9, 15:13, 28:4, 28:25, 29:19, 36:15, 39:15, 41:3, 41:4, 41:13, 56:15, 56:18, 57:21, 57:23, 58:24, 59:11, 59:14, 59:17

**exact** [13] - 9:14, 9:19, 10:11, 10:17, 12:4, 17:12, 17:14, 20:9, 42:16, 43:23, 44:11, 61:7, 62:8

**exactly** [7] - 25:12, 35:12, 48:25, 50:21, 55:2, 62:5, 68:21

**example** [4] - 29:3, 49:16, 49:19, 59:6

**excipients** [2] - 15:24, 16:9

**excuse** [2] - 51:10, 64:6

**Exhibit** [4] - 43:18, 61:23, 61:24, 62:24

**exist** [1] - 48:2

**existence** [1] - 12:18

**expert** [30] - 14:6, 23:3, 24:13, 24:14, 24:23, 24:25, 25:4, 25:5, 25:9, 26:2, 34:12, 34:13, 34:14, 34:16, 34:18, 44:20, 44:21, 50:22, 56:9, 56:14, 56:23, 58:7, 58:8, 59:11, 60:10, 60:14, 61:5, 64:23, 64:24

**expert's** [1] - 34:13

**experts** [2] - 58:4, 60:19

**explain** [2] - 46:11, 54:9

**explained** [1] - 44:20

**explanation** [1] -

52:20

**explicitly** [1] - 31:23, 61:25

**extension** [2] - 23:2, 23:6

**extra** [2] - 32:14, 60:6

**extremely** [2] - 25:20, 56:25

## F

**facing** [1] - 56:20

**fact** [25] - 5:7, 5:12, 8:9, 9:18, 14:19, 17:23, 24:23, 26:24, 29:7, 31:21, 35:18, 36:14, 36:16, 36:22, 45:2, 54:5, 56:5, 56:22, 58:11, 58:14, 58:25, 59:24, 63:22, 64:23

**factors** [2] - 15:14, 65:20

**facts** [9] - 9:9, 35:15, 36:3, 36:5, 36:12, 53:20, 53:22, 53:24, 56:11

**factual** [6] - 35:11, 55:11, 58:2, 58:3, 58:4, 63:8

**failed** [1] - 44:12

**fair** [2] - 26:11, 26:25

**far** [3] - 43:14, 44:13, 53:10

**Fawzi** [4] - 14:14, 15:8, 44:20, 56:16

**Fawzi's** [4] - 24:25, 25:9, 26:2, 58:23

**FDA** [4] - 15:15, 16:3, 16:20, 16:24

**feature** [2] - 13:6, 70:1

**features** [2] - 50:13, 51:20

**Federal** [14] - 6:18, 8:12, 18:18, 27:5, 27:14, 28:18, 28:23, 29:1, 29:5, 29:21, 35:5, 39:4, 68:4, 68:17

**federal** [2] - 28:6, 57:6

**feedback** [1] - 4:23

**few** [2] - 33:4, 33:17

**figuring** [1] - 70:20

**file** [1] - 22:24

**FILED** [1] - 73:17

**filed** [2] - 22:25, 62:3

**final** [25] - 6:17, 11:6, 11:24, 13:16, 13:20, 13:21, 27:13, 28:5,

29:7, 31:13, 35:25, 41:10, 42:21, 43:10, 43:24, 57:12, 61:11, 61:13, 65:9, 66:23, 66:24, 67:1, 67:3, 70:6, 70:7

**finally** [2] - 18:3, 24:15

**finder** [1] - 26:24

**findings** [1] - 35:21

**fine** [2] - 5:5, 53:6

**first** [12] - 24:3, 27:22, 30:22, 33:18, 41:19, 42:3, 44:3, 47:23, 49:2, 49:22, 51:18, 66:12

**five** [3] - 60:5, 60:21

**float** [3] - 49:21, 50:2, 50:8

**fly** [3] - 49:21, 50:1, 50:8

**Flynn** [3] - 3:15

**FLYNN** [3] - 1:17, 3:4, 3:14

**focus** [2] - 35:19, 52:8

**folks** [2] - 4:14, 4:22

**follow** [11] - 11:23, 17:7, 18:10, 20:11, 30:11, 33:16, 40:2, 50:23, 61:6, 70:9, 70:11

**followed** [1] - 23:4

**following** [1] - 32:13

**FOR** [1] - 1:2

**foregoing** [2] - 73:8, 73:14

**formation** [15] - 9:22, 10:8, 11:12, 11:17, 11:24, 12:24, 17:8, 18:12, 20:5, 20:12, 21:3, 22:6, 32:9, 60:12, 69:15

**formed** [1] - 19:11

**forms** [2] - 15:19, 16:6

**formula** [2] - 11:20, 11:21

**forth** [1] - 58:9, 59:10, 63:5

**forward** [4] - 27:16, 28:20, 39:15, 59:14

**frame** [2] - 18:15, 22:25

**framework** [1] - 6:11

**free** [1] - 14:3

**Friday** [1] - 61:5

**front** [2] - 5:8, 5:9

**full** [2] - 5:8, 50:5

**function** [1] - 45:1

**functional** [7] - 13:1, 15:5, 20:17, 20:22, 44:18, 61:18, 69:17

29:7, 31:13, 35:25, 41:10, 42:21, 43:10, 43:24, 57:12, 61:11, 61:13, 65:9, 66:23, 66:24, 67:1, 67:3, 70:6, 70:7

**functionally** [17] - 8:25, 9:5, 10:9, 10:20, 12:22, 13:5, 15:5, 16:15, 17:10, 18:21, 19:13, 20:6, 20:13, 39:20, 40:17, 69:8, 70:4

**fundamental** [1] - 69:25

## G

**genetics** [1] - 66:5

**genuine** [1] - 14:19

**given** [4] - 24:7, 26:22, 63:22, 65:6

**grant** [1] - 49:24

**granted** [4] - 22:23, 23:1, 23:5, 71:4

**great** [4] - 3:20, 37:4, 37:15, 71:24

**greener** [1] - 14:25

**guess** [3] - 39:8, 51:7, 54:24

## H

**Hall** [1] - 1:13

**hand** [1] - 18:6

**happy** [1] - 36:23

**hard** [2] - 33:22, 65:18

**hardware** [1] - 35:2, 35:4, 35:8

**Hatch** [1] - 15:16

**Hatch-Waxman** [1] - 15:16

**hear** [5] - 5:18, 7:18, 19:14, 33:12, 33:22

**heard** [3] - 19:4, 26:5, 73:11

**hearing** [2] - 4:17, 72:1

**heart** [1] - 58:14

**held** [3] - 8:1, 51:18, 51:19

**helpful** [2] - 49:17, 50:21

**hereby** [1] - 73:5

**highlighting** [2] - 38:14, 38:20

**highlights** [1] - 38:17

**hold** [2] - 25:23, 68:11

**Holdings** [1] - 66:17

**Honor** [66] - 3:3, 3:5, 3:15, 3:25, 5:20, 6:2, 6:4, 9:7, 13:17, 14:21, 18:16, 21:15, 22:16, 24:21, 25:23,

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

03/14/2022 03:57:32 PM

26:10, 27:2, 29:16, 31:18, 32:21, 33:16, 34:24, 35:4, 35:13, 35:16, 35:22, 36:17, 36:23, 37:5, 38:5, 40:3, 41:2, 41:12, 41:18, 42:2, 43:12, 44:6, 44:17, 45:5, 46:18, 46:22, 47:18, 48:25, 49:20, 51:2, 51:7, 52:9, 55:15, 57:1, 57:9, 57:14, 58:9, 58:22, 59:1, 60:8, 61:21, 63:21, 64:12, 64:21, 65:15, 65:23, 66:3, 68:10, 70:13, 71:20, 71:23
**Honor's** [2] - 48:13, 53:18
**Honorable** [1] - 1:13
**hope** [3] - 21:14, 42:2, 52:4
**horse** [1] - 52:18
**hotly** [2] - 54:4, 58:5
**hundreds** [1] - 58:7
**hydrolysis** [16] - 9:21, 9:23, 10:8, 11:2, 11:17, 11:23, 12:24, 17:7, 18:11, 20:5, 20:11, 21:2, 22:5, 32:8, 60:12, 69:14

## I

**ID** [3] - 35:3, 35:6, 66:19
**idea** [1] - 56:6
**identical** [7] - 6:20, 7:3, 8:7, 8:9, 35:9, 37:23, 37:25
**identified** [1] - 9:16
**identify** [2] - 6:23, 69:20
**identity** [3] - 6:14, 28:16
**ignore** [4] - 24:20, 35:17, 35:18, 35:20
**ignores** [5] - 15:8, 15:13, 35:16, 36:3, 37:17
**impact** [1] - 71:5
**impart** [1] - 69:2
**important** [2] - 8:18, 15:9
**importantly** [6] - 13:12, 15:13, 24:13, 61:5, 67:21, 69:24
**improperly** [2] - 7:7, 40:6

**impurities** [6] - 42:7, 47:1, 47:23, 48:7, 54:14, 60:25
**impurity** [13] - 10:11, 10:15, 12:11, 12:15, 12:18, 12:23, 17:9, 44:1, 47:25, 48:23, 61:3, 70:8
**IN** [2] - 1:1, 1:2
**inability** [1] - 57:5
**inapplicable** [1] - 13:10
**INC** [2] - 1:7, 73:10
**inconsistent** [1] - 30:17
**incorporate** [1] - 21:25
**incorporates** [1] - 71:13
**incorrect** [5] - 7:21, 11:15, 12:12, 14:2, 35:1
**incredible** [1] - 70:19
**independent** [2] - 60:17, 60:18
**indicated** [1] - 6:7
**information** [1] - 4:16
**initial** [2] - 23:17, 40:3
**inquiry** [9] - 8:21, 13:17, 51:11, 51:12, 58:15, 58:16, 58:18, 58:20
**instance** [2] - 15:18, 27:6
**institute** [3] - 43:4, 43:5, 49:1
**instituted** [1] - 42:19
**institution** [1] - 43:19
**interested** [2] - 37:7, 71:3
**interesting** [4] - 53:9, 53:19, 67:9, 67:25
**intermediate** [14] - 9:22, 9:23, 11:6, 11:9, 11:10, 11:22, 11:23, 11:25, 13:15, 31:11, 31:12, 32:6, 32:15, 61:10
**intermediates** [1] - 13:19
**interpretation** [1] - 27:10
**interrupt** [1] - 33:22
**invalid** [17] - 8:1, 19:6, 19:7, 21:21, 28:25, 31:8, 39:22, 49:7, 49:10, 50:2, 51:19, 51:22, 62:1, 63:2, 63:3, 68:5
**invalidate** [2] - 42:24,

52:15
**invalidated** [3] - 62:2, 64:19, 68:1
**invalidity** [31] - 23:17, 24:4, 28:7, 35:25, 36:8, 37:24, 38:13, 39:7, 41:6, 41:7, 41:21, 41:22, 41:23, 42:5, 42:14, 44:14, 46:13, 46:21, 47:4, 48:16, 49:5, 50:11, 51:11, 52:10, 54:21, 61:22, 62:20, 63:7, 63:12, 63:18, 65:17
**invented** [2] - 49:20, 50:6
**invention** [1] - 48:11
**inventor** [4] - 14:15, 14:17, 49:20, 52:12
**inventor's** [1] - 52:15
**inventors** [1] - 18:2
**invite** [1] - 34:9
**invoke** [1] - 68:6
**involved** [1] - 65:3
**involves** [1] - 35:9
**IPR** [29] - 10:6, 12:10, 17:5, 30:24, 32:1, 32:5, 35:21, 35:23, 35:24, 38:15, 38:17, 38:21, 39:13, 42:15, 42:16, 42:17, 42:19, 42:20, 43:4, 43:5, 43:6, 44:11, 48:17, 48:25, 51:20, 53:14, 54:12, 55:13
**IPRs** [1] - 27:9
**ironic** [1] - 30:10
**irrelevant** [1] - 8:23
**isolated** [1] - 13:15
**issue** [75] - 7:1, 8:18, 9:4, 9:6, 9:9, 10:4, 10:17, 11:12, 13:20, 14:19, 18:25, 19:3, 19:5, 19:10, 19:16, 19:18, 19:19, 19:20, 19:22, 20:7, 20:10, 20:15, 20:16, 20:25, 21:11, 23:18, 23:25, 24:1, 24:5, 24:10, 24:11, 24:18, 25:10, 25:13, 25:22, 26:17, 26:19, 27:3, 27:6, 28:16, 28:17, 31:10, 33:5, 33:9, 33:18, 34:21, 35:12, 36:21, 37:23, 38:13, 40:18, 42:16, 43:24, 47:14, 58:11, 61:14, 61:20, 62:17, 63:9, 63:10, 63:12, 64:4, 64:9,

64:22, 66:3, 66:15, 66:21, 68:16, 69:13, 71:9, 71:18
**issued** [3] - 18:8, 18:10, 27:13
**issues** [38] - 4:22, 6:14, 7:1, 8:6, 8:16, 14:20, 15:8, 18:17, 22:23, 22:24, 23:9, 23:10, 25:8, 25:19, 26:2, 27:12, 28:11, 28:12, 34:15, 34:20, 35:8, 35:18, 36:7, 36:13, 36:16, 36:21, 44:14, 54:5, 58:8, 58:13, 58:25, 59:24, 60:1, 64:3, 64:16, 64:19
**itself** [4] - 7:15, 8:21, 10:23, 67:2

## J

**Jackson** [1] - 3:16
**JACKSON** [1] - 1:21
**Jennifer** [1] - 1:13
**JLH** [1] - 1:6
**job** [1] - 70:19
**joined** [1] - 3:16
**Jonathan** [1] - 4:2
**JONATHANTH** [1] - 2:5
**Judge** [4] - 22:21, 22:22, 25:23, 26:23
**judgment** [29] - 3:7, 10:7, 22:19, 22:20, 22:22, 22:24, 23:7, 24:16, 25:6, 25:15, 25:17, 25:19, 28:10, 29:14, 30:16, 32:10, 36:22, 45:4, 54:6, 55:15, 56:20, 58:12, 61:24, 62:6, 63:15, 63:17, 64:6, 64:7
**JUDGMENT** [3] - 1:10, 1:12, 73:16
**judgments** [2] - 30:18, 43:10
**judicial** [1] - 68:11
**jump** [1] - 37:2

## K

**Karen** [2] - 3:25, 37:9
**KAREN** [1] - 2:1
**Keller** [3] - 3:25, 37:10
**KELLER** [6] - 2:1, 2:1, 3:2, 3:24, 37:9, 67:2

**key** [1] - 15:14
**kind** [1] - 6:10
**knowing** [1] - 65:14
**known** [2] - 56:1, 59:9
**knows** [2] - 17:25, 66:17

## L

**laid** [1] - 25:19
**language** [4] - 36:8, 45:14, 69:1, 69:20
**last** [4] - 14:8, 19:15, 33:13, 58:1
**lastly** [1] - 58:22
**late** [2] - 55:20, 55:21
**law** [8] - 7:6, 14:18, 26:17, 27:24, 37:18, 53:11, 69:6, 69:18
**lead** [7] - 10:19, 18:20, 20:12, 21:5, 22:9, 22:11, 63:8
**least** [7] - 41:19, 46:3, 47:22, 47:24, 53:16, 54:12, 54:13
**leave** [6] - 22:23, 23:1, 24:15, 25:16, 25:21, 64:7
**left** [1] - 18:6
**left-hand** [1] - 18:6
**legal** [18] - 6:11, 23:10, 35:10, 37:17, 37:19, 37:20, 38:1, 38:3, 38:9, 41:25, 51:9, 55:22, 59:19, 63:8, 63:9, 63:10, 63:11, 64:9
**less** [1] - 11:7
**level** [2] - 42:6, 61:2
**light** [1] - 70:24
**likelihood** [1] - 43:4
**likely** [1] - 49:25
**limitation** [10] - 14:5, 14:10, 30:24, 40:20, 44:2, 48:1, 52:21, 61:3, 69:5
**limitation-by-limitation** [1] - 40:20
**limitations** [28] - 21:22, 21:25, 38:18, 38:20, 41:4, 42:4, 42:10, 42:13, 43:15, 43:17, 44:8, 44:9, 44:12, 44:13, 44:16, 44:17, 44:25, 46:5, 46:21, 46:24, 47:11, 47:12, 47:22, 50:9, 50:10, 59:15, 62:15, 65:20

**line** [3] - 3:10, 4:4, 49:2
**LIQUIDIA** [2] - 1:7, 73:10
**Liquidia** [10] - 3:8, 3:23, 4:4, 6:5, 7:19, 35:16, 36:3, 37:16, 38:1, 52:8
**Liquidia's** [2] - 58:3, 58:7
**list** [1] - 15:16
**listed** [1] - 16:16
**litigated** [1] - 9:6
**litigating** [1] - 30:5
**litigation** [5] - 6:15, 7:25, 8:2, 24:12
**LLC** [1] - 73:23
**LLP** [3] - 1:17, 2:1, 2:4
**look** [33] - 8:24, 10:5, 11:16, 13:8, 18:3, 20:23, 26:25, 27:5, 27:9, 28:16, 33:11, 38:9, 38:10, 39:2, 45:15, 45:21, 46:3, 46:19, 51:24, 53:6, 55:4, 55:20, 58:17, 61:9, 61:11, 61:16, 64:3, 67:21, 68:22, 69:7, 69:10, 70:24, 71:1
**looked** [13] - 10:17, 23:18, 27:7, 27:12, 43:14, 43:16, 43:18, 44:11, 48:17, 49:8, 51:20, 58:17
**looking** [8] - 5:10, 5:12, 28:20, 52:6, 59:5, 66:6, 69:11, 71:14
**looks** [4] - 5:6, 5:10, 67:22, 67:23
**lose** [1] - 55:24
**lost** [3] - 9:6, 20:19, 21:11
**low** [1] - 33:23
**lower** [5] - 42:7, 43:2, 47:2, 48:23, 54:14

### M

**manufacturing** [1] - 14:25
**March** [3] - 1:14, 73:11, 73:20
**material** [11] - 7:1, 35:18, 36:16, 36:22, 54:5, 58:11, 58:13, 58:25, 59:24, 68:23, 69:2

**materially** [3] - 36:20, 45:17, 69:15
**matter** [8] - 16:25, 22:19, 28:20, 29:7, 39:1, 43:10, 67:16
**maximize** [1] - 5:15
**MCDERMOTT** [1] - 1:20
**McDermott** [1] - 3:17
**mean** [5] - 29:2, 45:20, 46:3, 70:15
**means** [4] - 11:11, 15:25, 45:19
**medicinal** [1] - 11:8
**meet** [4] - 65:2, 65:4, 65:13, 65:22
**meet-and-confer** [1] - 65:22
**meet-and-confers** [3] - 65:2, 65:4, 65:13
**mention** [1] - 44:12
**mentioned** [2] - 33:4, 37:16
**merits** [4] - 25:22, 43:14, 44:23, 55:13
**method** [1] - 31:19
**MICHAEL** [1] - 1:17
**Michael** [1] - 3:15
**might** [17] - 24:6, 26:24, 30:17, 35:4, 39:6, 45:20, 46:1, 46:2, 49:16, 55:23, 57:23, 59:10, 60:1, 62:25, 63:20, 65:2, 70:16
**mind** [2] - 21:17, 60:24
**minutes** [5] - 4:6, 26:10, 33:4, 60:5
**misdirection** [1] - 52:5
**moment** [1] - 5:15
**months** [4] - 25:9, 31:10, 31:12
**moot** [1] - 68:16
**moreover** [1] - 15:3
**Moriarty** [7] - 42:22, 48:21, 49:4, 49:7, 49:9, 58:19, 58:21
**MORRIS** [1] - 1:17
**Morris** [1] - 3:15
**most** [1] - 42:4
**motion** [5] - 3:7, 5:18, 44:24, 56:8, 71:4
**move** [1] - 43:7
**moved** [2] - 40:6, 58:12
**moving** [1] - 37:15
**MR** [58] - 3:4, 3:14, 5:20, 6:1, 6:4, 14:24, 19:18, 22:2, 22:16,

24:9, 26:9, 27:2, 28:1, 29:4, 29:15, 29:18, 30:22, 31:4, 32:4, 33:7, 33:15, 33:24, 34:3, 34:6, 37:4, 37:11, 37:14, 40:1, 40:11, 41:2, 41:11, 41:17, 43:12, 46:17, 47:18, 49:16, 49:19, 51:2, 51:6, 53:8, 54:24, 56:4, 57:13, 57:16, 57:19, 59:12, 60:7, 62:10, 63:6, 63:21, 64:15, 65:15, 66:1, 66:10, 67:18, 68:9, 71:20, 71:23
**MS** [4] - 3:2, 3:24, 37:9, 37:13
**mute** [1] - 4:22
**myriad** [1] - 36:13

### N

**named** [1] - 14:15
**narrow** [1] - 14:12
**narrower** [1] - 13:25
**natural** [1] - 11:4
**nearly** [1] - 63:14
**need** [10] - 4:21, 5:2, 7:19, 8:15, 29:5, 51:24, 58:17, 63:10, 66:1, 71:17
**negated** [1] - 68:13
**never** [18] - 12:10, 24:9, 24:17, 24:24, 25:11, 25:22, 25:24, 32:13, 34:16, 34:17, 34:19, 36:20, 40:13, 40:21, 48:17, 57:3, 62:14, 64:4
**NEW** [2] - 73:3, 73:18
**new** [1] - 25:24
**NICHOLS** [1] - 1:17
**Nichols** [1] - 3:15
**nine** [4] - 11:16, 11:19, 70:11
**none** [3] - 49:6, 60:14, 60:18
**nonobvious** [4] - 21:11, 32:18, 45:23, 46:6
**normally** [1] - 23:13
**note** [1] - 32:23
**noted** [3] - 16:8, 24:15, 25:18
**notes** [6] - 5:9, 5:13, 23:20, 55:17, 70:24, 73:13

**notice** [2] - 59:20, 59:21
**notifying** [1] - 64:16
**novel** [2] - 8:22, 21:10
**November** [4] - 61:21, 62:3, 62:17
**nowhere** [1] - 32:9
**number** [5] - 4:15, 7:25, 9:11, 9:13, 26:20
**Number** [1] - 73:9
**numerous** [2] - 55:11, 58:1

### O

**obviate** [2] - 48:18, 50:12
**obviates** [1] - 48:20
**obvious** [5] - 8:1, 8:22, 31:23, 33:1, 51:14
**obviousness** [18] - 7:20, 8:7, 8:11, 8:13, 20:10, 28:17, 38:3, 45:12, 49:3, 53:13, 58:10, 58:12, 58:14, 58:15, 58:18, 58:20, 60:16
**October** [1] - 64:8
**OF** [4] - 1:2, 1:10, 73:2, 73:3
**office** [1] - 5:8
**officers** [1] - 68:11
**OFFICIALLY** [1] - 73:17
**often** [1] - 37:17
**Ohio** [17] - 7:3, 7:21, 36:4, 45:14, 46:10, 46:15, 52:19, 53:17, 53:18, 54:10, 59:4, 59:19, 59:23, 68:20, 69:10, 69:18, 69:21
**old** [1] - 16:22
**one** [48] - 6:14, 8:1, 9:7, 9:11, 10:24, 12:5, 13:8, 13:10, 13:11, 13:12, 14:6, 15:13, 16:12, 19:15, 19:19, 22:24, 23:21, 24:6, 26:5, 26:20, 29:10, 30:4, 30:14, 33:3, 33:8, 33:10, 38:22, 40:11, 42:6, 43:11, 46:25, 47:24, 48:22, 50:17, 53:2, 60:25, 62:8, 62:25, 63:1, 63:3, 63:20, 68:2, 68:3, 68:9,

71:15, 71:17
**opening** [1] - 56:24
**opine** [2] - 34:19, 56:10
**opined** [1] - 34:14
**opinion** [1] - 58:8
**opinions** [1] - 34:14
**opportunity** [7] - 34:19, 56:21, 56:23, 57:22, 59:13, 59:20, 59:22
**opposed** [2] - 25:21, 42:15
**opposition** [2] - 12:9, 32:11
**orange** [2] - 15:17, 16:17
**order** [2] - 22:17, 22:18
**original** [3] - 25:4, 25:5, 50:16
**originally** [1] - 50:6
**otherwise** [2] - 6:10, 23:10
**overcome** [1] - 56:18
**overlay** [1] - 69:4
**own** [2] - 36:4, 52:15
**owner** [2] - 8:2, 8:4

### P

**page** [5] - 35:1, 52:4, 60:21, 61:24, 67:24
**pages** [4] - 4:14, 57:2, 58:7, 73:15
**panel** [10] - 35:24, 40:21, 42:20, 42:25, 43:14, 43:19, 44:11, 48:25, 53:14, 58:16
**paper** [1] - 63:16
**papers** [2] - 44:22
**paragraph** [2] - 24:20, 62:22
**paragraphs** [2] - 25:2, 62:21
**particular** [1] - 60:11
**particularly** [1] - 64:1
**parties** [3] - 22:18, 23:14, 27:16
**patent** [65] - 6:25, 7:7, 7:12, 7:15, 7:25, 8:1, 8:2, 8:3, 8:4, 8:5, 10:15, 10:25, 12:3, 14:11, 18:7, 30:8, 30:10, 30:12, 32:23, 36:2, 36:19, 37:21, 38:15, 38:16, 41:15, 41:16, 41:23, 42:14, 42:15, 42:21, 42:24,

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz
03/14/2022 03:57:32 PM

25 of 29 sheets

43:1, 44:4, 44:5, 44:10, 44:20, 45:7, 46:23, 47:20, 47:21, 48:2, 48:4, 49:13, 49:14, 49:22, 49:24, 51:21, 52:12, 52:14, 52:22, 53:15, 56:15, 58:18, 58:20, 61:7, 62:2, 62:9, 64:2, 68:1, 68:4

patentability [1] - 20:25

patentably [4] - 52:22, 52:25, 59:8, 59:15

patentee [3] - 46:4, 56:13, 56:14

patentees [1] - 46:11

patently [1] - 49:13

patents [20] - 9:8, 9:13, 9:25, 10:3, 12:8, 14:15, 15:17, 15:20, 15:21, 16:7, 16:10, 16:17, 17:4, 18:10, 19:24, 21:20, 38:8, 41:5, 57:2, 61:25

people [1] - 71:16

percent [1] - 14:5

perform [1] - 12:6

perhaps [3] - 53:24, 54:2, 71:12

person [2] - 71:15, 71:17

petitioner [1] - 49:2

Pharma [1] - 42:1

pharmaceutical [9] - 13:11, 13:13, 13:16, 16:1, 16:2, 42:8, 48:24, 54:15, 54:17

pharmaceutically [2] - 9:15, 20:11

Phillips [2] - 27:11, 27:20

philosophical [1] - 68:2

phrase [1] - 11:5

phraseology [1] - 12:5

pin [1] - 33:7

Plaintiff [2] - 1:5, 1:22

plaintiff [1] - 3:13

plaintiff's [1] - 71:19

play [1] - 54:2

pleading [1] - 64:17

pleadings [2] - 33:5, 33:6

plus [2] - 15:23, 16:8

point [29] - 7:23, 17:19, 23:16, 25:20, 34:7, 34:10, 38:25, 40:3, 40:12, 41:10,

41:19, 45:10, 47:15, 50:21, 51:3, 54:23, 54:25, 55:19, 57:20, 57:24, 58:1, 61:6, 61:15, 67:19, 69:25, 70:3, 70:6, 71:11

pointed [3] - 39:9, 66:16, 68:21

pointing [2] - 43:10, 43:13

points [6] - 10:24, 13:4, 19:20, 60:8, 60:23, 61:12

position [2] - 29:19, 68:10

possibility [3] - 19:6, 19:9, 25:15

precise [2] - 19:2, 19:15

precisely [1] - 21:8

preclude [5] - 34:23, 45:3, 55:14, 66:15, 67:6

precluded [2] - 19:3, 59:16

precludes [1] - 36:22

preclusion [10] - 23:18, 23:25, 24:1, 24:5, 26:17, 26:19, 33:5, 33:9, 66:15, 66:22

preclusive [1] - 47:9

prefer [1] - 36:25

prejudice [2] - 57:20, 59:18

prejudiced [2] - 55:23

prejudicial [2] - 57:4, 57:10

preliminary [6] - 61:22, 62:13, 62:20, 63:7, 63:23, 64:25

prepared [1] - 71:9

preparing [1] - 31:19

preponderance [2] - 28:4, 28:24

present [2] - 4:17, 73:7

presentation [3] - 36:24, 37:1, 37:8

presented [1] - 15:11

pretrial [1] - 14:8

prevent [1] - 68:12

previously [4] - 27:6, 38:19, 46:24, 54:19

prime [1] - 12:19

principles [1] - 68:7

priority [1] - 52:13

problem [2] - 50:15, 51:15

procedure [1] - 57:7

proceed [2] - 49:18, 65:25

proceedings [2] - 17:24, 73:8

process [98] - 7:12, 7:13, 8:19, 8:20, 8:23, 8:24, 9:3, 9:12, 9:19, 10:2, 10:7, 10:13, 10:19, 10:22, 11:3, 12:14, 13:2, 13:6, 13:18, 13:19, 15:1, 16:21, 16:22, 16:25, 18:11, 18:20, 19:11, 19:24, 20:2, 20:4, 20:12, 20:18, 20:23, 21:10, 21:22, 21:25, 22:3, 22:5, 22:7, 22:8, 22:11, 23:22, 26:6, 26:7, 28:17, 29:20, 29:25, 30:6, 31:20, 31:23, 32:5, 32:22, 32:25, 33:1, 36:10, 38:4, 39:11, 39:12, 39:22, 40:4, 40:6, 40:9, 40:12, 40:13, 40:14, 40:15, 40:17, 41:1, 41:14, 48:3, 48:5, 50:20, 50:23, 51:11, 51:13, 51:24, 52:24, 54:2, 55:1, 60:11, 60:17, 61:1, 61:14, 61:15, 61:17, 62:12, 62:14, 69:4, 69:7, 69:13, 69:19, 69:21, 69:22, 70:12

Proctor [1] - 3:17

PROCTOR [1] - 1:21

product [146] - 7:12, 8:19, 8:20, 8:21, 8:25, 9:5, 9:12, 9:14, 9:20, 9:25, 10:8, 10:21, 10:22, 11:7, 11:24, 12:22, 13:7, 13:18, 13:21, 14:1, 15:2, 15:3, 15:5, 15:12, 15:18, 15:23, 15:25, 16:8, 16:22, 17:15, 17:16, 19:5, 19:7, 19:11, 19:12, 19:14, 19:22, 19:24, 20:6, 20:14, 20:15, 21:9, 21:10, 21:20, 21:24, 22:6, 22:9, 22:12, 26:6, 28:17, 31:13, 31:17, 31:20, 32:22, 36:10, 36:11, 38:4, 39:11, 39:12, 39:14, 39:16, 39:17, 39:19, 39:20, 39:22,

40:4, 40:9, 40:14, 41:1, 41:14, 41:16, 44:19, 45:1, 47:12, 47:13, 47:17, 47:19, 47:21, 47:24, 48:6, 48:8, 48:9, 48:10, 48:14, 49:11, 49:12, 49:14, 50:7, 50:18, 50:20, 50:24, 50:25, 51:10, 51:11, 51:13, 51:17, 51:22, 51:24, 51:25, 52:1, 52:24, 53:15, 53:25, 54:1, 54:2, 55:1, 55:4, 55:5, 55:8, 55:9, 59:6, 59:7, 60:13, 60:17, 60:20, 60:23, 60:25, 61:2, 61:11, 61:12, 61:13, 61:14, 61:17, 61:19, 62:1, 62:12, 62:15, 64:2, 64:18, 69:4, 69:6, 69:9, 69:13, 69:19, 69:21, 69:22, 70:2, 70:5, 70:6, 70:8

product-by-process [36] - 7:12, 8:19, 8:20, 9:12, 13:18, 19:24, 21:10, 26:6, 28:17, 32:22, 36:10, 38:4, 39:11, 39:12, 39:22, 40:4, 40:9, 40:14, 41:1, 50:20, 51:11, 51:13, 51:24, 52:24, 54:2, 55:1, 60:17, 61:14, 61:17, 62:12, 69:4, 69:13, 69:19, 69:21, 69:22

product-by-product [1] - 51:10

products [16] - 12:11, 13:21, 16:7, 16:25, 17:3, 17:21, 17:25, 18:2, 18:5, 18:13, 18:19, 18:21, 19:23, 21:18, 51:18, 53:1

profile [6] - 10:11, 10:16, 12:15, 12:23, 16:23, 17:9

profiles [1] - 12:11

proof [13] - 26:14, 26:19, 27:3, 27:25, 28:3, 28:5, 43:10, 47:8, 67:13, 67:14, 67:16, 67:20, 68:12

proper [9] - 38:1, 38:2, 38:9, 38:11, 45:5, 51:8, 51:12, 51:23, 55:3

properly [1] - 53:13

property [1] - 52:11

propose [2] - 71:7

prosecuted [1] - 49:22

prosecution [1] - 17:4

prove [1] - 44:23

proved [1] - 29:6

provide [5] - 37:1, 38:2, 44:18, 52:20, 56:10

provided [2] - 9:7, 14:13

provides [2] - 7:15, 28:19

proxy [1] - 51:17

PTAB [39] - 6:17, 7:11, 10:12, 10:17, 11:13, 12:17, 12:25, 15:3, 15:10, 17:11, 18:18, 19:9, 20:3, 21:1, 22:8, 26:15, 27:4, 27:7, 27:9, 27:12, 28:3, 28:23, 30:7, 30:8, 30:11, 31:2, 31:15, 31:22, 32:9, 32:25, 47:6, 47:7, 49:25, 50:16, 66:18, 67:2, 68:1, 68:15

PTAB's [1] - 39:18

publications [1] - 42:23

pull [1] - 62:24

Purdue [1] - 42:1

pure [2] - 11:7, 11:25

purify [3] - 11:10, 11:20, 11:22

purity [4] - 14:4, 14:7, 14:9, 16:23

purposes [5] - 32:18, 41:25, 44:24, 51:9, 56:11

put [13] - 23:16, 25:8, 26:2, 41:9, 57:23, 58:7, 59:10, 59:13, 63:22, 65:18, 66:1, 71:11, 71:24

putting [1] - 59:16

## Q

questions [15] - 4:8, 4:12, 6:8, 18:23, 33:17, 35:22, 36:8, 36:24, 36:25, 37:1, 55:18, 59:1, 64:11, 70:14, 70:17

quick [3] - 40:12, 54:25, 57:19

quickly [1] - 33:16

## R

**raise** [9] - 14:20, 23:24, 27:1, 38:12, 44:13, 55:21, 58:3, 58:15, 58:25
**raised** [19] - 20:8, 23:15, 24:13, 24:17, 24:21, 24:22, 24:24, 25:14, 33:17, 33:19, 34:8, 34:11, 34:17, 34:21, 55:20, 56:18, 65:22
**raising** [1] - 57:1
**ran** [1] - 8:12
**rather** [1] - 37:1
**re** [2] - 36:5, 54:25
**Re** [1] - 36:9
**reach** [1] - 50:23
**reached** [1] - 43:25
**read** [11] - 8:10, 23:16, 23:24, 26:25, 46:1, 46:2, 59:4, 59:19, 59:23, 62:20, 62:25
**reading** [1] - 52:19
**ready** [1] - 5:19
**really** [12] - 6:13, 9:9, 10:1, 18:25, 19:2, 24:18, 39:1, 55:22, 59:25, 64:20, 64:21, 65:5
**reargue** [1] - 27:17
**reason** [6] - 20:21, 31:14, 35:13, 40:5, 62:19, 66:21
**reasonable** [3] - 27:10, 29:3, 43:3
**reasons** [3] - 18:16, 63:2, 70:13
**rebut** [1] - 56:14
**rebutted** [1] - 57:21
**recalculates** [1] - 15:9
**recited** [1] - 10:14
**recognizing** [2] - 16:10, 16:24
**recollection** [1] - 26:17
**recommendation** [1] - 71:10
**record** [6] - 4:18, 4:20, 19:2, 19:16, 70:19, 71:8
**reduced** [2] - 47:25, 48:8
**reduction** [1] - 44:1
**refer** [1] - 23:21
**references** [1] - 19:8
**referring** [1] - 30:23
**refers** [1] - 23:21

**regarding** [1] - 8:11
**regardless** [3] - 16:20, 18:14, 39:10
**regulated** [1] - 15:15
**rejected** [3] - 12:16, 15:10, 17:11
**rejects** [1] - 46:7
**relate** [1] - 34:15
**related** [1] - 42:10
**relevant** [4] - 7:11, 8:20, 37:3, 41:25
**relied** [1] - 17:18
**relies** [1] - 50:4
**relitigate** [3] - 8:15, 10:18, 20:17
**relitigated** [2] - 19:17, 19:19
**relitigates** [1] - 15:8
**relitigating** [1] - 20:9
**rely** [2] - 44:22, 65:21
**remember** [2] - 25:1, 62:12
**remembered** [1] - 70:16
**remind** [2] - 4:17, 4:20
**render** [2] - 9:10, 10:22
**rendered** [1] - 49:10
**reply** [1] - 52:3
**report** [7] - 24:25, 25:4, 25:5, 25:9, 26:3, 56:19, 71:10
**reported** [1] - 73:7
**REPORTER** [1] - 33:21
**Reporter** [2] - 73:5, 73:6
**reporter** [3] - 3:10, 3:11, 34:1
**reports** [7] - 24:14, 24:23, 34:12, 44:21, 60:10, 60:15, 64:24
**request** [5] - 22:19, 24:16, 25:18, 25:21, 64:7
**requested** [3] - 22:21, 23:5
**requests** [1] - 4:16
**require** [5] - 6:19, 6:20, 6:21, 9:19, 13:9
**required** [7] - 13:22, 15:16, 18:14, 29:6, 31:9, 31:11, 64:9
**requirement** [2] - 14:7, 48:6
**requires** [2] - 47:24, 48:7
**respect** [5] - 6:16, 20:2, 31:6, 32:4,

63:6
**respond** [3] - 23:2, 34:13, 34:19
**response** [5] - 22:4, 25:5, 30:3, 30:20, 32:24
**restate** [1] - 34:6
**restatement** [2] - 29:14, 30:16
**result** [17] - 11:2, 11:5, 12:15, 15:1, 20:5, 22:12, 30:25, 32:8, 32:16, 32:19, 32:20, 60:19, 61:1, 61:7, 64:19, 70:9, 70:12
**resulted** [2] - 47:12, 53:1
**results** [3] - 12:6, 19:12, 47:17
**Ruffolo** [1] - 17:6
**rules** [1] - 57:6
**ruling** [4] - 30:7, 30:8, 71:13, 71:18
**run** [2] - 7:19, 11:3
**rusty** [1] - 4:4

## S

**salt** [20] - 9:15, 9:22, 10:8, 11:11, 11:17, 11:24, 12:24, 13:15, 17:8, 18:12, 20:1, 20:5, 20:12, 21:3, 22:6, 31:12, 32:8, 60:12, 69:15
**sandoz** [1] - 7:5
**Sandoz** [1] - 7:22
**Sanya** [2] - 4:2, 6:5
**SANYA** [1] - 2:4
**saw** [1] - 12:12
**schedule** [2] - 23:4, 25:16
**scheduling** [2] - 22:17, 22:18
**Schindler** [1] - 4:4
**school** [1] - 26:18
**scope** [4] - 12:8, 41:5, 49:11, 50:5
**screen** [4] - 4:13, 5:12, 5:16, 5:21
**screens** [1] - 5:8
**screwed** [1] - 67:10
**SEALED** [1] - 73:17
**second** [8] - 6:15, 35:9, 40:24, 42:9, 44:8, 52:21, 62:7, 67:8
**see** [25] - 4:3, 4:13, 4:14, 5:23, 5:25,

6:12, 6:22, 9:2, 10:1, 24:6, 37:8, 37:12, 39:3, 42:2, 44:3, 45:8, 45:21, 46:3, 46:20, 47:10, 50:14, 52:4, 55:17, 57:5, 59:5
**seeing** [1] - 63:4
**seek** [1] - 24:15
**sense** [3] - 51:1, 51:3, 60:1
**separate** [1] - 22:23
**September** [1] - 64:8
**serve** [1] - 24:3
**set** [3] - 6:10, 58:9, 63:4
**sets** [1] - 47:16
**setting** [1] - 35:11
**several** [1] - 9:8
**share** [1] - 5:21
**SHAW** [1] - 2:1
**Shaw** [1] - 3:25
**Shorthand** [2] - 73:5, 73:6
**shorthand** [2] - 73:7, 73:13
**show** [5] - 38:20, 54:8, 54:11, 65:19, 65:20
**showing** [1] - 59:14
**shown** [2] - 55:7, 55:13
**shows** [5] - 29:2, 38:14, 38:22, 43:21, 53:14
**side** [11] - 4:7, 5:1, 18:6, 18:8, 21:21, 30:19, 33:12, 47:15, 71:16, 71:18, 71:19
**side's** [1] - 26:20
**SIGNED** [1] - 73:17
**significant** [3] - 52:23, 52:25, 59:8
**similarities** [3] - 35:20, 38:6, 38:10
**similarly** [1] - 48:3
**single** [4] - 11:8, 42:25, 70:1
**sit** [1] - 5:5
**sitting** [1] - 65:11
**six** [12] - 13:10, 13:13, 22:15, 30:6, 30:9, 31:6, 31:17, 31:19, 31:24, 32:1, 38:22, 60:5
**skyhawk** [2] - 35:2, 67:5
**skyhawk** [1] - 35:5
**slide** [6] - 12:12, 12:18, 38:14, 42:3, 52:4, 69:19

**slides** [7] - 6:6, 6:23, 37:14, 42:2, 58:3, 58:9, 60:22
**slowly** [1] - 41:18
**someplace** [1] - 6:8
**somewhat** [1] - 42:10
**sorry** [6] - 14:24, 32:1, 33:21, 48:5, 64:10, 67:22
**sorts** [1] - 13:9
**sound** [1] - 34:1
**space** [1] - 5:16
**speaking** [2] - 4:19, 4:21
**specific** [4] - 14:4, 43:22, 47:6, 59:16
**specifically** [2] - 15:10, 66:13
**specification** [3] - 10:13, 18:13, 50:5
**Speedbudget** [1] - 73:23
**spend** [1] - 71:6
**spite** [1] - 42:24
**spot** [1] - 46:18
**spot-on** [1] - 46:18
**squarely** [1] - 23:24
**ss** [1] - 73:2
**stability** [4] - 43:17, 44:7, 48:20, 54:17
**stable** [6] - 42:11, 47:2, 48:6, 48:10, 48:11, 48:18
**stack** [1] - 5:9
**stand** [2] - 5:3, 39:21
**standard** [15] - 27:8, 27:11, 27:20, 35:10, 35:17, 37:17, 37:19, 37:20, 38:1, 38:3, 38:9, 43:4, 52:3, 53:13, 64:17
**standards** [2] - 34:22, 53:12
**standing** [1] - 5:3
**stark** [1] - 67:5
**start** [1] - 6:9
**started** [1] - 11:25
**starting** [10] - 3:13, 3:23, 12:4, 42:7, 44:1, 44:2, 47:1, 47:25, 48:23, 54:15
**STATE** [1] - 73:2
**statement** [2] - 11:14, 37:18
**STATES** [1] - 1:1
**states** [1] - 49:2
**stay** [1] - 4:21
**Stenotype** [1] - 73:7
**step** [8] - 8:24, 10:25, 11:1, 11:12, 20:18,

32:6, 61:1
**steps** [43] - 8:23, 9:3, 9:24, 10:7, 10:14, 10:19, 10:22, 11:4, 12:7, 12:14, 13:3, 13:19, 17:8, 18:11, 18:20, 20:4, 20:12, 20:23, 21:3, 21:5, 22:3, 22:5, 22:7, 22:9, 22:11, 29:20, 32:13, 32:16, 32:18, 32:19, 32:20, 32:25, 33:1, 38:7, 48:3, 48:5, 60:11, 60:19, 61:15, 69:7, 69:14, 70:9
**still** [3] - 37:14, 50:18, 65:8
**stop** [1] - 8:17
**storage** [14] - 13:4, 13:9, 30:24, 31:7, 31:9, 31:11, 32:6, 32:12, 32:19, 43:17, 44:7, 54:16, 61:9, 70:7
**store** [1] - 32:15
**stored** [4] - 13:14, 13:22, 42:11, 47:2
**strong** [1] - 41:4
**structural** [5] - 20:17, 20:22, 44:18, 61:17, 69:17
**structurally** [15] - 9:1, 9:4, 10:9, 10:20, 13:1, 13:5, 16:15, 17:10, 18:20, 19:13, 20:6, 20:13, 40:16, 69:8, 70:4
**structure** [3] - 44:18, 44:25, 70:3
**struggle** [2] - 53:7, 53:9
**sub** [2] - 20:16, 21:12
**sub-arguments** [1] - 21:12
**sub-issue** [1] - 20:16
**sublimation** [1] - 11:3
**submit** [3] - 15:18, 17:23, 35:13
**submitted** [5] - 15:20, 17:5, 17:12, 17:17, 25:1
**subsequent** [1] - 8:2
**substance** [1] - 15:22
**substantial** [2] - 36:15, 58:24
**substantially** [5] - 7:3, 8:8, 37:23, 37:25, 39:19
**sudden** [1] - 28:15

**sufficient** [6] - 45:3, 50:10, 54:5, 54:20, 55:14, 56:17
**sufficiently** [1] - 49:3
**suggesting** [1] - 19:5
**suggests** [1] - 46:11
**suits** [1] - 35:11
**SUKDUANG** [29] - 2:4, 5:20, 6:1, 6:4, 14:24, 19:18, 22:2, 22:16, 24:9, 26:9, 27:2, 28:1, 29:4, 29:15, 29:18, 30:22, 31:4, 32:4, 33:7, 60:7, 62:10, 63:6, 63:21, 64:15, 66:1, 66:10, 67:18, 68:9, 71:23
**Sukduang** [5] - 4:2, 6:5, 60:4, 65:9, 65:24
**SUMMARY** [1] - 1:10, 1:12, 73:16
**summary** [27] - 3:7, 10:6, 22:19, 22:20, 22:22, 22:24, 23:7, 24:16, 25:6, 25:15, 25:16, 25:19, 28:10, 32:10, 36:22, 45:3, 54:6, 55:15, 56:20, 58:12, 61:23, 62:6, 63:14, 63:17, 64:5, 64:7
**supplemental** [2] - 24:4, 63:18
**support** [8] - 12:21, 17:13, 36:16, 52:9, 52:10, 53:25, 56:8, 67:19
**supported** [4] - 14:16, 36:15, 58:24, 66:11
**supporting** [1] - 53:11
**supposed** [4] - 4:23, 8:17, 45:15, 46:15
**Supreme** [3] - 35:4, 67:4, 67:14
**surprise** [4] - 62:18, 64:21, 64:22, 65:6
**surprised** [2] - 61:20, 62:19
**system** [1] - 15:15

## T

**teach** [1] - 44:7
**teaching** [1] - 48:4
**teachings** [1] - 50:12
**tech** [1] - 35:2
**Tech** [1] - 35:5
**TECHNOLOGIES** [1] -

1:7, 73:10
**telephonically** [1] - 71:25
**temperature** [16] - 13:5, 13:14, 13:23, 32:7, 32:15, 42:11, 42:12, 47:3, 48:7, 48:10, 48:12, 48:19, 48:20, 54:17, 54:18, 61:10
**terms** [4] - 6:22, 6:24, 16:23, 45:11
**testified** [1] - 18:2
**testimony** [1] - 14:18
**Thayers** [9] - 42:22, 43:25, 44:6, 48:21, 49:4, 49:8, 49:9, 58:19, 58:21
**THE** [61] - 1:1, 1:2, 3:1, 3:6, 3:20, 4:5, 5:25, 6:3, 14:22, 18:23, 21:16, 22:14, 23:12, 26:4, 26:11, 27:22, 28:22, 29:13, 29:17, 29:24, 31:1, 32:3, 33:3, 33:11, 33:21, 33:25, 34:5, 37:2, 37:6, 38:24, 40:8, 40:23, 41:9, 41:13, 43:7, 45:10, 47:5, 49:15, 49:18, 50:14, 51:5, 52:16, 54:23, 55:16, 57:11, 57:15, 57:18, 59:2, 60:3, 62:7, 62:23, 63:16, 64:13, 65:8, 65:24, 66:8, 67:8, 67:25, 70:18, 71:22, 71:24
**theory** [5] - 56:7, 56:9, 56:25, 57:2, 59:19
**therapeutics** [3] - 3:8, 54:8, 56:17
**THERAPEUTICS** [2] - 1:3, 73:9
**therefore** [5] - 13:2, 13:25, 17:9, 22:10, 39:21
**they've** [2] - 39:9, 68:13
**third** [1] - 9:18
**Thorpe** [4] - 36:5, 36:9, 54:25, 55:7
**three** [29] - 4:14, 5:8, 9:8, 9:13, 9:19, 9:24, 9:25, 10:3, 11:4, 12:7, 12:8, 15:20, 16:10, 16:16, 17:3, 19:24, 21:5, 25:2, 31:10, 31:12, 32:13,

32:16, 32:20, 35:2, 38:7, 38:8, 60:19, 69:19, 70:9
**threshold** [1] - 43:3
**throughout** [4] - 24:12, 25:13, 36:24, 56:5
**timewise** [1] - 23:4
**today** [14] - 3:6, 3:11, 3:16, 4:1, 4:7, 4:15, 4:18, 4:20, 6:6, 6:23, 7:18, 21:4, 65:12, 70:25
**today's** [2] - 70:23, 72:1
**together** [1] - 64:4
**tomorrow** [3] - 71:8, 71:11, 71:15
**topics** [1] - 63:24
**Toste** [1] - 14:5
**total** [1] - 27:5
**toward** [1] - 19:15
**tracking** [1] - 32:3
**TRANSCRIPT** [1] - 1:10
**transcript** [2] - 73:12, 73:14
**transcripts** [1] - 71:13
**transitive** [1] - 52:11
**transover** [1] - 66:5
**transparent** [1] - 65:19
**transposing** [1] - 7:8
**treat** [1] - 52:12
**treated** [1] - 17:3
**treating** [1] - 45:24
**treprostinil** [10] - 9:14, 9:16, 12:19, 12:20, 14:3, 16:13, 18:5, 19:25
**trial** [8] - 21:4, 22:15, 23:8, 39:24, 44:24, 54:7, 56:8, 71:2
**tried** [1] - 23:10
**triol** [1] - 9:21
**trouble** [1] - 52:17
**trucks** [1] - 35:3
**Trucks** [1] - 35:6
**true** [3] - 7:10, 59:11, 73:15
**Trust** [1] - 66:19
**try** [2] - 23:9, 48:5
**trying** [7] - 8:14, 10:18, 25:2, 29:22, 43:8, 70:20, 70:21
**tunnel** [1] - 34:2
**TUNNELL** [1] - 1:17
**turn** [3] - 5:2, 5:14, 58:10
**two** [24] - 8:7, 9:13,

14:4, 19:8, 22:22, 25:2, 36:14, 39:24, 41:20, 42:3, 42:4, 42:9, 42:13, 42:18, 42:23, 43:15, 46:24, 47:16, 47:22, 52:4, 54:12, 57:2, 60:22
**typed** [1] - 73:13
**typewritten** [1] - 73:15
**Tyvaso** [2] - 16:13, 16:19

## U

**U.S.M.J** [1] - 1:13
**ultimate** [1] - 45:11
**un-adjudicated** [5] - 45:16, 45:22, 46:5, 46:12, 52:22
**unclear** [1] - 56:25
**uncontested** [6] - 36:3, 36:7, 53:22, 53:23, 55:6, 55:10
**under** [14] - 7:6, 14:18, 15:14, 15:15, 27:7, 27:10, 27:19, 38:8, 42:1, 43:2, 43:3, 54:20, 57:6, 58:12
**underlining** [1] - 9:17
**underlying** [1] - 34:15
**understood** [1] - 60:3
**undisputed** [2] - 9:9, 9:18
**undue** [1] - 55:24
**unique** [3] - 38:13, 44:4, 54:18
**united** [3] - 3:7, 54:7, 56:16
**UNITED** [3] - 1:1, 1:3, 73:9
**unless** [2] - 4:18, 5:3
**unpatentable** [2] - 43:2, 53:16
**unprecedented** [2] - 53:10, 59:23
**up** [23] - 20:3, 20:21, 22:15, 22:17, 23:3, 23:8, 24:7, 24:9, 24:12, 25:13, 26:8, 26:9, 31:18, 33:16, 44:23, 62:24, 64:5, 64:6, 64:23, 65:13, 67:10, 71:2, 71:24
**UTC** [48] - 7:6, 7:17, 8:13, 9:6, 10:1, 10:6, 10:11, 10:18, 10:21, 10:24, 11:14, 12:9, 12:13, 13:4, 13:24, 14:13, 15:11, 15:16,

15:19, 15:24, 16:13, 17:17, 17:25, 18:12, 18:24, 20:3, 20:8, 20:22, 21:1, 22:3, 22:10, 23:1, 23:5, 24:14, 24:23, 25:7, 25:20, 28:13, 29:10, 29:22, 30:5, 32:9, 60:22, 61:12, 61:23, 62:13, 62:19, 64:20
**UTC's** [10] - 6:22, 14:5, 14:7, 24:11, 24:16, 43:18, 44:20, 60:24, 63:25

## V

**valid** [3] - 28:15, 42:18, 53:16
**validity** [11] - 19:22, 20:15, 26:15, 30:6, 36:21, 45:9, 45:18, 47:11, 68:24, 69:3, 69:16
**verbatim** [1] - 63:14
**version** [1] - 71:12
**versus** [2] - 3:8, 66:18
**via** [1] - 1:13
**view** [1] - 19:7
**vs** [2] - 1:6, 73:10

## W

**wait** [3] - 62:7, 63:16, 67:8
**waived** [1] - 25:10
**waiver** [2] - 33:18, 34:7
**walk** [2] - 35:24, 41:18
**walked** [1] - 38:5
**walking** [1] - 46:22
**walsh** [2] - 14:14
**Walsh's** [2] - 51:4, 58:22
**Warner** [2] - 3:11, 73:22
**warner** [1] - 73:4
**Waxman** [1] - 15:16
**week** [1] - 14:8
**weekend** [1] - 71:6
**weeks** [3] - 22:15, 39:24, 71:2
**welcome** [1] - 5:4
**whereas** [1] - 43:5
**whereby** [8] - 10:25, 42:6, 43:16, 46:25, 48:22, 54:14, 60:25
**whole** [1] - 24:4
**WILL** [1] - 1:20

**William** [1] - 3:16
**WILLIAM** [1] - 1:21
**Williams** [1] - 17:6
**Willow** [14] - 45:14, 46:10, 46:15, 52:19, 53:17, 53:19, 54:10, 59:4, 59:19, 59:23, 68:20, 69:11, 69:18, 69:21
**willow** [4] - 7:3, 7:22, 36:4, 46:1
**win** [3] - 38:1, 38:2, 55:12
**winkler** [2] - 34:16, 58:6
**Winkler's** [1] - 56:18
**winkler's** [1] - 57:21
**wise** [2] - 26:11, 26:12
**witness** [1] - 64:2
**witnesses** [1] - 63:25
**wonders** [2] - 68:2, 68:3
**wood** [4] - 7:4, 7:22, 36:4, 46:2
**Wood** [14] - 45:14, 46:10, 46:16, 52:19, 53:17, 53:19, 54:10, 59:4, 59:19, 59:23, 68:20, 69:11, 69:18, 69:21
**word** [3] - 15:25, 33:13, 65:10
**words** [7] - 12:4, 24:2, 38:25, 39:2, 39:10, 65:18, 66:2
**world** [1] - 52:13
**written** [7] - 27:13, 28:5, 36:1, 42:21, 43:24, 66:23, 71:12

## X

**XY** [7] - 66:5, 66:11, 66:13, 67:21, 67:24, 67:25, 68:1

## Y

**year** [1] - 57:8

## Z

**zoom** [1] - 4:13
**Zoom** [1] - 1:13