IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED THERAPEUTICS CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LIQUIDIA TECHNOLOGIES, INC., )<br>)<br>Defendant. ) | C.A. No. 20-755-RGA-JLH |

**LETTER TO THE HONORABLE JUDGE RICHARD G. ANDREWS
FROM NATHAN R. HOESCHEN**

OF COUNSEL:
Sanya Sukduang
Jonathan Davies
Douglas W. Cheek
Adam Pivovar
Brittany Cazakoff
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202) 842-7800

Erik Milch
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5640
(703) 546-8000

Ivor Elrifi
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant Liquidia Technologies, Inc*

Deepa Kannappan
Lauren Krickl
Kyung Taeck Minn
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Dated: July 15, 2022

Dear Judge Andrews:

Defendant Liquidia Technologies, Inc. ("Liquidia) submits this letter pursuant to the Oral Order of July 12, 2022 (D.I. 421). The Court should find: (1) the terms "pharmaceutical composition" and "pharmaceutical product" do not carry patentable weight; and (2) regardless, UT-15 treprostinil disclosed in Moriarty is a pharmaceutical composition/product comprising treprostinil. UTC, in post-trial briefing, attempts for the first time through attorney argument to give patentable weight to these terms. UTC's arguments should be rejected.

I.   PREAMBLE TERMS ARE NOT LIMITING IN THE '066 PATENT

The terms "pharmaceutical composition/product" in the preambles of claims 1 and 9 do not carry patentable weight. As a general rule, a preamble does not limit the claim and may only be found limiting if it "recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." *Arctic Cat Inc. v. GEP Power Prods., Inc.*, 919 F.3d 1320, 1327 (Fed. Cir. 2019) (quoting *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (internal quotations omitted). The Federal Circuit has long found that a preamble is not limiting when the claim body recites a structurally complete invention and the preamble is only used to state a purpose or intended use. *Id.* at 1328; *see also Zimmer Surgical, Inc. v. Stryker Corp.*, No. 16-679-RGA, 2018 WL 3038515, at *4 (D. Del. Jun. 19, 2018) (quoting *Catalina*, 289 F.3d at 808). "[W]hether [the preamble] is limiting is assessed in regard to the 'facts of each case in light of the claim as a whole and the invention described in the patent.'" *Sentient Sensors, LLC v. Cypress Semiconductor Corp.*, No. 19-1868 (MN), 2021 WL 289410, at *5 (D. Del. Jan. 28, 2021) (quoting Storage *Tech. Corp v. Cisco Sys., Inc.* 329 F.3d 823, 831 (Fed. Cir. 2003)).

The preambles of claims 1 and 9 do not recite essential structures or steps and do not otherwise give life to the claims. Claims 1 and 9 are product-by-process claims and the only process steps recited are for preparing the treprostinil or treprostinil salt API (drug substance), including alkylation and hydrolysis steps, treprostinil salt formation steps, and final treprostinil or treprostinil salt preparation steps. JTX2, cls. 1, 9 (highlighted version attached hereto). Importantly, the claimed process does not include any additional steps beyond synthesis of treprostinil or its salt. Without the "pharmaceutical composition" or "pharmaceutical product" in the preamble, the claim body would still capture the essential process steps for preparing treprostinil. *See UCB, Inc. v. Actavis Labs. UT, Inc.*, No. 19-474-LPS, 2020 WL 5999446, (D. Del. Feb. 7, 2020) (finding preamble not limiting where the steps in the body of the claim recite a complete process and deletion of the preamble does not affect these steps). This is particularly true for product-by-process claims, which "claim a . . . product that resists definition by other than the process by which it is made." *In re Thorpe*, 777 F.2d 695, 697 (Fed. Cir. 1985). Thus, the preambles simply reflect the product made and defined by the claimed process and do not provide additional structure.

The rest of the '066 patent confirms that "pharmaceutical composition/product" are not necessary to give meaning to the claim. Besides the claims, the patent specification uses "pharmaceutical composition" only once when providing a definition for "pharmaceutically acceptable." *See* JTX2, 5:13-17. "Pharmaceutical product" only appears in the claims. (*see* generally, JTX2). This lack of use underscores that the terms are not essential to the claims. *See*

1

*Arctic Cat*, 919 F.3d at 1329-30 (finding the preamble non-limiting where specification's description of language in the preamble was "distinctly limited"). While the specification uses the term "product," it does so to refer to treprostinil itself, not treprostinil formulated with other components. JTX2 at 4:16-18 (the "product of step (b)" is treprostinil), 5:66-67 (referring to "higher purity" of the "product of the process according to the present invention, enumerated at step 53 of Example 6 for UT-15), 9:1-4 (the "product of step (b)" is treprostinil), 17:38-40 ("process provides better quality of final product"). Indeed, the entire specification is directed synthesizing treprostinil or a treprostinil salt, as recited in claims 1 and 9. *See generally id*. Even UTC understands the preambles do not recite additional essential structure beyond the preparation of treprostinil or treprostinil salt described in the body of the claims. (Tr. 793:20-25 (patent inventor Dr. Walsh explaining the patent describes a process to prepare treprostinil) (highlighted version attached hereto)).

To the extent UTC argues "pharmaceutical composition/product" provide antecedent basis to the claim body and thus limit the claim, UTC is wrong. The terms are generic in nature (and not otherwise described in the specification), and the process steps are directed only to synthesis of treprostinil or its salt. *See Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1359 (Fed. Cir. 2010) (rejecting antecedent basis argument where preamble was generic and did not define or refine claim scope); *Zimmer Surgical*, 2018 WL 3038515, at *5 (rejecting party's antecedent basis argument where the preamble language was not necessary to understand later reference to the term and the claim body defined a structurally complete invention). Moreover, to the extent UTC argues claim differentiation warrants giving weight to "pharmaceutical composition" and "pharmaceutical product," UTC is also wrong. *See Bristol-Myers Squibb Co v. Ben Venue Labs.*, 246 F.3d 1368, 1376 (Fed. Cir. 2001) (explaining the doctrine of claim differentiation is not a "hard and fast rule" of construction and cannot supplant other canons of construction). Here, the preambles provide no essential structure, and UTC offered no testimony that "product" and "composition" are different. (Tr. 926:11-19.) Further, this is not a case where claims 1 and 9 would have the same meaning or scope if the preamble was not given weight: claim 1 recites steps directed to impurities while claim 9 does not.[1] For these reasons, "pharmaceutical composition," and "pharmaceutical product" should not carry patentable weight.

---

[1] Courts that found "claims to 'pharmaceutical compositions' . . . typically distinct from claims to medicinal compounds themselves" involved claims that clearly recited a deliberate combination of multiple ingredients. *Mitsubishi Chem. Corp. v. Barr Labs., Inc.*, 435 Fed.Appx. 927, 930, 934 (Fed. Cir. 2011) (claim 3 of the asserted patent reciting "A pharmaceutical composition . . . comprising: [argatroban] and/or its salt together with ethanol, water, and a saccharide."); *see also Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1307 (Fed. Cir. 2001) (claim 7 of the '301 patent reciting "A pharmaceutical composition . . . comprising an effective amount of surface-active material as set forth in claim 1 and a pharmaceutically acceptable non-toxic carrier thereof"). Because the language of claims 1 and 9 do not set forth such a combination, the "pharmaceutical composition/product" preambles should not have any patentable weight.

## II. TREPROSTINIL IS A PHARMACEUTICAL COMPOSITION/PRODUCT COMPRISING TREPROSTINIL

Regardless of whether "pharmaceutical composition/product" is given patentable weight, the treprostinil disclosed in Moriarty satisfies these claim terms. Claims 1 and 9 use the transitional phrase "comprising," (JTX2, 17:51-52, 18:38-39, 62), and as explained in Liquidia's briefing, "comprising" in patent law is understood as permissive, not restrictive. D.I. 415 at 1; *see Invitrogen Corp. v. Biocrest Manufacturing, L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003) ("The transition 'comprising' . . . indicates that the claim is open-ended and allows for additional steps."); *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("Comprising" is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.). In other words, the claimed composition/product must have treprostinil, and could *optionally* have additional elements beyond treprostinil, none of which are recited in the claims or specification. Moriarty thus discloses the claimed "pharmaceutical composition/product" comprising treprostinil.

Further, there is no distinction between treprostinil and a composition/product comprising treprostinil in the '066 patent. Rather, the examples provide steps for a process for making treprostinil or treprostinil salt alone. *See* JTX2, 9:46-14:65 (Examples 1-5), 17:23 (Example 6, step 51, final yield is "UT-15"); Tr. 926:9-20. The '066 patent provides no description of making a further product or composition other than treprostinil or treprostinil salt. For example, there is no description of mixing either compound with excipients to turn it into a subcutaneous solution or a tablet.[2] Thus, a POSA reading the '066 claims in the context of the '066 specification would necessarily understand that the treprostinil is a "pharmaceutical composition/[product] comprising treprostinil," as claimed.

Both UTC and Liquidia's experts agreed that the pharmaceutical composition of claim 1 and the pharmaceutical product of claim 9 can be just treprostinil. UTC's Dr. Nuckolls testified that "Claim 1, the pharmaceutical composition" "could" "just be Treprostinil." Tr. 104:22-105:8. Dr. Winkler similarly testified that "the product of [the '066] product-by-process claims . . . could just be Treprostinil or . . . Treprostinil free acid." Tr. 462:15-24. Similarly, UTC's fact witnesses, Dr. Walsh and Mr. Bunce (UTC's *only* witnesses addressing validity of the '066 patent) provided testimony that was limited to treprostinil or its salt (not treprostinil combined with other excipients) when attempting to describe a structural or functional difference between the claimed product and the product made by its prior process in Chicago. *See* Tr. 799-804; Tr. 783:15-786:17; 790:14-791:1. Their testimony thus confirms that the treprostinil API is the relevant pharmaceutical composition/product to assess validity here. UTC cannot now argue the contrary.

In sum, every trial witness agreed that treprostinil alone is the relevant "pharmaceutical composition/product" under the '066 claims. UTC's contention otherwise is purely attorney

---

[2] To the extent UTC asserts that the specification need not disclose such steps because they would have been readily known to a POSA at the time of the '066 patent's invention, the same rationale holds true for Moriarty as it also disclosed treprostinil (UT-15) in an FDA approved product: Remodulin®. DTX258, 2, 3 (highlighted version attached hereto).

3

argument, raised for the first time in its post-trial opposition brief. *See* D.I. 413, 7-9. It should be rejected as both wrong (for the reasons above), and as raised too late. *Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 679-80 (2d Cir. 1985) (district court erred in considering claim raised for first time in post-trial brief); *Baker v. Goldman, Sachs & Co.*, 771 F.3d 37, 48 (1st Cir. 2014) (affirming district court's rejection of plaintiff theory first presented in post-trial brief); *U.S. Bank Nat'l Assoc. v. 2150 Josua's Path, LLC*, No. 13-cv-1598, 2020 WL 5417085, at *10 (E.D.N.Y. July 2, 2020) ("No doubt aware that the Court will not consider arguments raised for the first time in post-trial briefs . . . .") (citing *Grand Light*, 771 F.2d at 679-80).

Thus, even if the Court finds that the preambles of claims 1 and 9 have patentable weight, it should find that treprostinil is a pharmaceutical composition/product comprising treprostinil.[3]

### III. MORIARTY'S UT-15 TREPROSTINIL IS A PHARMACEUTICAL COMPOSITION/PRODUCT COMPRISING TREPROSTINIL

Finally, if the Court finds that "pharmaceutical composition/product comprising treprostinil" requires something more than treprostinil alone, Moriarty teaches such a pharmaceutical composition/product. As Liquidia briefed (D.I. 415, 1 (citing DTX258,13)), Moriarty teaches making 99.7% pure treprostinil, necessarily including 0.3% of substances other than treprostinil—i.e. the very "impurities" that UTC argues differentiate pure treprostinil API from the claimed pharmaceutical composition of claim 1 (D.I. 413, 8-9). Moriarty also discloses that the UT-15 treprostinil synthesized by its disclosed process is used in Remodulin®, an FDA-approved product that is undisputedly a pharmaceutical composition/product. DTX258, 2 ("UT-15 has also been variously known as Uniprost, BW-15AU, LRX-15, U-62840, 15AU81, and finally Remodulin."), 3 ("UT-15 (7) has a longer biological half-life and is not degraded upon passage through the lungs." (citing "*Remodulin: stable form of prostacyclin*; United Therapeutics Corp. Web Site March 23, 2001.")); Tr. 460:17-21, 496:17-497:4 (Winkler). Moriarty teaches a POSA that its UT-15 is to be delivered as a pharmaceutical composition/product to a patient. *See, e.g., id.* at 3 ("To date, UT-15 (**7**) has proven effective in the treatment of pulmonary hypertension"; "UT-15 is delivered subcutaneously via a microinfusion device thus avoiding the risk of sepsis infection encountered with catheter delivery."). As such, Moriarty discloses as much, if not more than the '066 patent, concerning a "pharmaceutical composition/product."

In conclusion, Liquidia respectfully requests that the Court find that the preamble terms "pharmaceutical composition" and "pharmaceutical product" do not carry patentable weight; and that even if they did, the UT-15 treprostinil disclosed in Moriarty is a pharmaceutical composition/product comprising treprostinil.

---

[3] If the Court finds that the terms "composition" and "product" have patentable weight and that treprostinil is not a "pharmaceutical composition/product comprising treprostinil," UTC has failed to prove infringement of '066 claims 1-3 and 6, because UTC did not assess the impurities in Liquidia's bulk powder "composition" or final capsule "product." *See* D.I. 411, 1-3.

                          Respectfully submitted,

                          */s/ Nathan R. Hoeschen*

                          Nathan R. Hoeschen (No. 6232)

cc:    Clerk of the Court (by CM/ECF)
        All Counsel of Record (by CM/ECF and e-mail)