MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

(302) 658-9200

MICHAEL J. FLYNN
(302) 351-9661
mflynn@morrisnichols.com

July 15, 2022

The Honorable Richard G. Andrews                    *Via E-Filing*
United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

      Re: *United Therapeutics Corp. v. Liquidia Techs., Inc.*, C.A. No. 20-755-RGA-JLH

Dear Judge Andrews:

      UTC submits this letter in response to the Court's July 12, 2022 Order (D.I. 421).

      The claims, specification, relevant law, and record evidence all show that the terms "pharmaceutical composition" and "pharmaceutical product" carry patentable weight by requiring more than the treprostinil free acid compound described in Moriarty. The claimed "treprostinil" cannot be the claimed "pharmaceutical composition" or "pharmaceutical product" because the claimed pharmaceutical compositions and products include additional components that make the treprostinil compound suitable for pharmaceutical use. Unlike the inventions claimed in the '066 patent, Moriarty discloses only a different synthesis for making an unstable treprostinil *free acid* compound that is not suitable for pharmaceutical use without further undisclosed pharmaceutical components and process steps. The Moriarty treprostinil free acid compound is not a pharmaceutical "composition" or "product" and thus cannot anticipate the '066 claims. Thus, Liquidia's sole anticipation theory that the "Moriarty Publication Product" is the same as the claimed "pharmaceutical composition" and "pharmaceutical product" of the '066 patent fails.[1]

### I. "Pharmaceutical Composition" & "Pharmaceutical Product" Carry Patentable Weight

      The plain language of claims 1 and 8 make clear that "pharmaceutical composition" and "pharmaceutical product"—terms appearing in the body of the claims—require more than what Moriarty discloses. First, the word choice and structure of the claims distinguish the "treprostinil" itself from the pharmaceutical composition/product. The claims separately recite a "starting batch of treprostinil," "treprostinil," "isolated treprostinil salt," "pharmaceutical composition," and "pharmaceutical product." The fact that the patentees chose different terms demonstrates that those terms have different meanings. *See Bd. of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008) ("Different claim terms are presumed to have different meanings."). It is well established that "claims are interpreted with an eye toward giving effect to all terms in the claim." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006). There is no basis to construe those different terms as having the same meaning.

      The claim language of claims 1 and 8 emphasizes the distinctions between "treprostinil,"

---

[1] Liquidia failed to assert, and thus waived, Moriarty as an anticipating reference in the Final Pre-Trial Order. *See* JPTO Ex. 3 at 27-57; Ex. 14 at 2-8; *see also* D.I. 424 (PFF) ¶ 88.

The Honorable Richard G. Andrews   Page 2
July 15, 2022

"pharmaceutical composition," and "pharmaceutical product." Claim 1 begins with a starting batch of treprostinil having one or more impurities from alkylation and hydrolysis steps, then forms an isolated treprostinil salt, and then using that isolated treprostinil salt to *prepare* the "pharmaceutical composition." Thus, the "pharmaceutical composition" is not just "treprostinil," it is something made from treprostinil. *Cf.* '066 patent (JTX-2), cl. 8 (requiring *preparation* of a "pharmaceutical product" from treprostinil salt). Claim 1 also requires that, after following the claimed steps, the level of one or more impurities are lower in the pharmaceutical composition than in the "starting batch of treprostinil."[2] The structure of the claims thus makes clear that the "pharmaceutical composition" is different from the "starting batch of treprostinil" that has not undergone the salt formation and isolation steps and that has not been combined with excipients such that it is pharmaceutically acceptable.[3]

The patent states that "in preparing a pharmaceutical composition" such acceptable compositions include additional components that are "generally safe, non-toxic and neither biologically nor otherwise undesirable and include being useful for veterinary use as well as human pharmaceutical use." JTX-2, 5:14-17; *see also* Tr. 795:6-9 (Walsh).[4] The specification thus describes properties possessed by the claimed pharmaceutical compositions and products supporting the patentable weight of these terms.

Further, the "preparing" limitations are directed to *combining* treprostinil with additional components to form a "pharmaceutical composition." *Digitech Image Techs. v. Elecs. for Imaging*, 758 F.3d 1344, 1349 (Fed. Cir. 2014) ("a composition of matter requires the combination of two or more substances"); *see also Takeda Pharm. Co. v. Teva Pharms. USA, Inc.*, 542 F. Supp. 2d 342, 348 n.4 (D. Del. 2008) (citing *Abbott Labs. v. Sandoz, Inc.*, 529 F. Supp. 2d 893, 903 (N.D. Ill. 2007) (finding the *Abbott*'s construction of a "'pharmaceutical composition' [to] mean[] an aggregated product formed from two or more substances for use as a drug in medical treatment" to be consistent with the plain and ordinary meaning)). Liquidia does not dispute this point. As Liquidia asserted, "a POSA would understand that the process of 'preparing a pharmaceutical product' begins when the TN is dissolved in water *and mixed with several excipients* (Step 1)." D.I. 412 (DFF) ¶ 145 (citing Tr. 448:11-449:9, 452:24-455:18 (Winkler); Tr. 147:3-18 (Nuckolls)) (emphasis added).

Claim 7 further confirms that the term "pharmaceutical composition" carries patentable weight. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term."). Claim 7 narrows the "pharmaceutical composition" to "a pharmaceutical solution." As Liquidia acknowledges, a solution is formed using water or other solvents along with the API. *See* D.I. 412 (DFF) ¶ 149 ("Dissolving TN to make the stock solution

---

[2] Consistently, evidence from '066 embodiments demonstrates a physical difference from treprostinil API synthesized without the novel salt formation and isolation purification steps—for example, 3AU90/*epi*-treprostinil is reliably lower in the claimed composition than was possible using prior art purification. *See* D.I. 414, ¶¶ 104-115; D.I. 413 at 22-24; D.I. 409, ¶¶ 28-33.

[3] Liquidia never alleged—much less proved—that the specific impurities remaining in the Moriarty Product after column chromatography purification are the same as the specific impurities remaining in the "pharmaceutical composition" after salt formation.

[4] The antecedent "pharmaceutical" similarly adds patentable weight to the term "product." The term "product" in the specification refers to chemical products. *E.g.* JTX-2 3:15-19, 7:35-36.

means that the mixture is no longer TN—it is dissociated treprostinil and sodium ions, mixed with other materials (i.e., 'excipients') to prepare the pharmaceutical product, LIQ861.") (citing Tr. 450:6-15 (Winkler); Tr. 741:7-16 (Gonda)).[5] There are no examples in the specification—let alone the claims—describing a bare API compound as a "pharmaceutical composition."

Indeed, courts have recognized that "pharmaceutical compositions" include pharmaceutically acceptable components in addition to the active pharmaceutical ingredient (API). *See, e.g.*, *Galderma Labs., L.P. v. Actavis Labs. UT, Inc.*, 2016 WL 3583795, at *5 (D. Del. June 30, 2016) ("pharmaceutical composition" is "a composition comprising a pharmaceutical compound and a pharmaceutically acceptable carrier"); *In re Fenofibrate Patent Litig.*, 2011 WL 10901800, at *1 (S.D.N.Y. Aug. 23, 2011) ("pharmaceutical composition" is "all of the active and inactive ingredients in the final dosage form"); *Abbott Labs.*, 529 F. Supp. 2d at 903 ("pharmaceutical composition" is "an aggregated product formed from two or more substances for use as a drug in medical treatment"); *see also Wyeth LLC v. Alembic Pharms., Ltd.*, No. 16-cv-01305, D.I. 98 at 1, D.I. 75 (D. Del. June 27, 2018) (Andrews, J.) (adopting construction for "pharmaceutical composition" limiting the term to "a pharmaceutically acceptable composition containing the specified compound *and one or more excipients*.") (emphasis added) (Exs. A-B).

Courts have also construed "pharmaceutical composition" to require medicinal suitability for administration or treating a patient. *E.g.*, *Mitsubishi Chem. Corp. v. Barr Labs., Inc.*, 718 F. Supp. 2d 382, 413 (S.D.N.Y. 2010) (stating "the Federal Circuit noted that the dictionary defines 'pharmaceutical' as 'medicinal drug'" and construing "pharmaceutical composition for injection" to mean "a composition that is suitable for treating medical conditions by injection") (citing *Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*, 363 F.3d 1306, 1310 (Fed. Cir. 2004)); *In re Bendamustine Consol. Cases*, C.A. No. 13-2046-GMS, 2015 WL 3509277, at *2, *5 (D. Del. June 3, 2015) (construing "pharmaceutical composition" as "a composition that is made under conditions such that it is suitable for administration to humans"); *Takeda Pharm.*, 542 F. Supp. 2d at 348 (construing "a pharmaceutical composition" as "a medicinal drug product in a state suitable for administration to a patient").

## II.     Treprostinil Alone Is Not a Pharmaceutical Composition or Pharmaceutical Product

Treprostinil free acid alone—as described in Moriarty—cannot be a "pharmaceutical composition" or a "pharmaceutical product." As explained above, the claims and specification show that treprostinil is only a *component* of the claimed pharmaceutical composition and product.

Nor would a POSA think to administer treprostinil alone. Liquidia's own expert, Dr. Gonda, explained at trial that treprostinil is not suitable for pharmaceutical administration as a pure compound because it requires excipients, which further distinguishes between treprostinil and the "pharmaceutical composition[s]" and "pharmaceutical product[s]" recited in the claims:

> Treprostinil is a very potent drug. In other words, you use a very small quantity. …
> *Therefore, you cannot use just Treprostinil just alone*. You have to dilute it somehow. You have to put it into a bulking agent, which we call a carrier or an excipient. So you would then have to pick a carrier that you would think or you would know is safe[.]

---

[5] POSAs understand that solvents, such as water, are excipients that result in a solution. Tr. 147:6-8 ("And the stock bottle is water plus *other* excipients, correct? … [Y]es.") (emphasis added).

Tr. 735:21-736:1 (emphasis added). This expert testimony is consistent with the '066 patent's disclosure describing "preparing pharmaceutical compositions" with components that are "safe, non-toxic and neither biologically nor otherwise undesirable and include being useful for veterinary use as well as human pharmaceutical use." JTX-2, 5:14-17. Dr. Gonda's explanation that "you would … have to pick a carrier" is also consistent with Dr. Nuckolls' testimony that the "pharmaceutical composition" is prepared upon the addition of excipients. Tr. 147:9-13.[6]

The claim term "treprostinil" cannot be either a "pharmaceutical composition" or "pharmaceutical product." *See* JTX-2 at 17:57-59 (separately identifying "treprostinil" and a "salt thereof"); *see also id.* at 11:50-12:24, 14:1-33, 17:33-38. Dr. Gonda testified that treprostinil free acid alone—i.e., the substance disclosed in Moriarty—is problematic "because of the instability and propensity of UT-15 free acid, meaning Treprostinil, to form dimers[.]" Tr. 742:21-743:5 (Gonda); *see also* JTX-2 at 4:57-63. Dr. Gonda further explained that "[a] POSA wouldn't want to use that kind of a form because … it's a chemically different form, and could cause efficacy problems as well as safety problems." Tr. 743:6-11. Thus, even Liquidia's expert agrees that treprostinil itself is not useful as a pharmaceutical and thus cannot be a "pharmaceutical composition" or "pharmaceutical product."

In fact, Liquidia's post-trial brief argues that the treprostinil sodium API from Yonsung is neither a "pharmaceutical composition" nor a "pharmaceutical product" until it is processed by Liquidia. Liquidia repeatedly states that the isolated treprostinil sodium from Yonsung is not a "pharmaceutical composition." D.I. 411 at 2-3 (referring to "TN (which is not the 'pharmaceutical composition')"); *see also Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) ("[C]laims are construed the same way for both invalidity and infringement.").

Thus, "treprostinil" is not a "pharmaceutical composition[/product]" comprising treprostinil, and the Moriarty Publication Product cannot anticipate the claims of the '066 patent. The Moriarty Product is only the treprostinil free acid compound itself. DTX-258 at 3; Tr. 461:1-462:14 (Winkler). Moriarty does not describe anything about salt formation, "pharmaceutical compositions" or "pharmaceutical products" that would stabilize treprostinil free acid in order to be administered to patients. *See generally* DTX-258; *cf.* JTX-2 at 4:57-63; 5:14-17; 17:52-53, 57-58, 18:62-63. Thus, Liquidia has failed to show by clear and convincing evidence that Moriarty anticipates the claimed "pharmaceutical composition" or a "pharmaceutical product."

Moriarty discloses only an experimental treprostinil free acid compound, which alone is indisputably incapable of pharmaceutical use, whereas the '066 patent claims a structurally different pharmaceutical composition/product that must include at least a pharmaceutically acceptable salt and/or excipients. The treprostinil disclosed in Moriarty cannot and does not anticipate the claimed pharmaceutical compositions or pharmaceutical products comprising treprostinil.

---

[6] Further, it is undisputed that LIQ861 includes excipients and is a "pharmaceutical product" at the *end* of the PRINT process when packaged and ready to be sold and administered to patients. Tr. 101:12-16 (Nuckolls); D.I. 411 at 10-11; Tr. 134:18-135:1 (Nuckolls); 453:22-454:19 (Winkler). The specification also supports this understanding of "pharmaceutical product" by explaining that the invention satisfies demand for the commercial pharmaceutical product Remodulin®, "which has "great importance from a medicinal point of view[.]" '066 Patent at 1:66-2:3.

The Honorable Richard G. Andrews  Page 5
July 15, 2022

                                                        Respectfully,

                                                        Michael J. Flynn (#5333)
                                                        *Counsel for United Therapeutics Corp.*

cc:      Clerk of the Court
          All counsel of record