# EXHIBIT A

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**FORM 10-Q**

(Mark One)

☒ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934** For the fiscal quarter ended March 31, 2022

or

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934** For the transition period from to

Commission File Number: 001-39724

**LIQUIDIA CORPORATION**
(Exact Name of Registrant as Specified in Its Charter)

| | |
|---|---|
| **Delaware** | **85-1710962** |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |
| **419 Davis Drive, Suite 100 Morrisville, North Carolina** | **27560** |
| (Address of Principal Executive Offices) | (Zip Code) |

Registrant's telephone number, including area code: **(919) 328-4400**
**N/A**
(Former name, former address and former fiscal year, if changed since last report)

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Common stock, $0.001 par value per share | LQDA | The Nasdaq Stock Market LLC |

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒ No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). Yes ☒ No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company" and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large Accelerated Filer ☐ | Accelerated Filer ☐ | Non-accelerated Filer ☒ | Smaller Reporting Company ☒<br>Emerging Growth Company ☒ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act ☒

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act). Yes ☐ No ☒

As of May 3, 2022, there were 64,344,476 shares of the registrant's common stock outstanding.

**Off-Balance Sheet Arrangements**

We did not have during the periods presented, and we do not currently have, any off-balance sheet arrangements, as defined in the rules and regulations of the SEC.

**Item 3. Quantitative and Qualitative Disclosures About Market Risk**

Not applicable.

**Item 4. Controls and Procedures.**

**Evaluation of Disclosure Controls and Procedures**

As of March 31, 2022, management, with the participation of the Chief Executive Officer and Chief Financial Officer, performed an evaluation of the effectiveness of the design and operation of the Company's disclosure controls and procedures as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act. Based on this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that the Company's disclosure controls and procedures were effective at the reasonable assurance level as of March 31, 2022.

**Changes in Internal Control over Financial Reporting**

There were no changes in our internal control over financial reporting during the quarter ended March 31, 2022 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

**PART II. OTHER INFORMATION.**

**Item 1. Legal Proceedings.**

**YUTREPIA-Related Litigation**

In June 2020, United Therapeutics filed a complaint for patent infringement against the Company in the U.S. District Court for the District of Delaware (Case No. 1:20-cv-00755-RGA) (the "Hatch-Waxman Litigation"), asserting infringement by the Company of U.S. Patent Nos. 9,604,901, entitled "Process to Prepare Treprostinil, the Active Ingredient in Remodulin®" (the "'901 Patent"), and 9,593,066, entitled "Process to Prepare Treprostinil, the Active Ingredient in Remodulin®" (the "'066 Patent"), relating to United Therapeutics' Tyvaso®, a nebulized treprostinil solution for the treatment of PAH. In July 2020, the Company filed an answer to United Therapeutics' complaint and also included counterclaims of invalidity, non-infringement, and Orange Book de-listing of the '901 Patent and '066 Patent. United Therapeutics seeks a judgment that the asserted patents are infringed and an injunction of FDA final approval and subsequent commercial launch of YUTREPIA product until after the latest to expire asserted patent. United Therapeutics' complaint is in response to the Company's NDA for YUTREPIA, filed with the FDA, requesting approval to market YUTREPIA, a dry powder inhalation of treprostinil for the treatment of PAH. The YUTREPIA NDA was filed under the 505(b)(2) regulatory pathway with Tyvaso® as the reference listed drug. Under the Hatch-Waxman Act, the FDA is automatically precluded from approving the YUTREPIA NDA for up to 30 months until October 2022, absent an earlier judgment unfavorable to United Therapeutics by the court. Although the Company believes its YUTREPIA dry powder inhaler for the treatment of PAH is highly differentiated from Tyvaso®, since the Company is seeking approval of the YUTREPIA NDA under the 505(b)(2) regulatory pathway, the YUTREPIA NDA is subject to the provisions of the Hatch-Waxman Act.

In July 2020, the U.S. Patent and Trademark Office (the "USPTO") issued U.S. Patent No. 10,716,793 (the "'793 Patent"), entitled "Treprostinil Administration by Inhalation", to United Therapeutics. In July 2020, United Therapeutics also filed an amended complaint in the Hatch-Waxman Litigation asserting infringement of the '793 Patent by the practice of YUTREPIA. The infringement allegation of the '793 Patent is separate from the 30-month regulatory stay on final approval of the NDA for YUTREPIA, which is only associated with the infringement allegations of the '901 Patent

and the ‘066 Patent. United Therapeutics’ motion to dismiss the Company’s invalidity defenses and counterclaims concerning the ‘793 Patent was denied by the U.S. District Court for the District of Delaware in November 2020.

In June 2021, the Court held a claim construction hearing. Following the claim construction hearing, the Court issued orders that three of the terms under consideration would be given their plain and ordinary meaning and ruling in the Company’s favor regarding the other two terms. Based on the Court’s construction of the terms, United Therapeutics filed a stipulation of partial judgment with respect to the ‘901 Patent in December 2021 under which United Therapeutics agreed to the entry of judgment of the Company’s non-infringement of the ’901 Patent. United Therapeutics preserved its appellate rights with respect to the ‘901 Patent in the event the Court’s construction of those terms is reversed.

In January 2022, the Company filed a motion seeking summary judgment of invalidity of claims 1-3, 6, and 8-9 of the ’066 patent and claims 1-4, 6, and 8 of the ’901 patent due to collateral estoppel. As previously disclosed, in March 2022, Magistrate Judge Hall issued a recommendation to deny the Company’s motion on grounds that United Therapeutics did not have timely notice of the Company’s collateral estoppel argument and on grounds that the prior decision that served as the basis for collateral estoppel was decided based on a different standard of proof than the standard of proof that will apply in the Hatch-Waxman Litigation. On May 12, 2022, Judge Andrews, who is presiding over the Hatch-Waxman Litigation, issued an order adopting the recommendation of Magistrate Judge Hall and denying the Company’s motion for summary judgment solely on grounds that United Therapeutics did not have timely notice of the Company’s collateral estoppel argument.

Trial proceedings in the Hatch-Waxman Litigation were held from March 28-31, 2022. At the conclusion of the trial, the Court set a post-trial briefing schedule, with all briefing to be concluded on June 15, 2022. The Company currently expects that a decision regarding the Hatch-Waxman Litigation will be issued prior to the expiration of the 30-month regulatory stay, in October 2022.

At trial, the Company presented evidence of non-infringement and invalidity with respect to both the’066 patent and the ‘793 patent, the two patents that remain at issue in the Hatch-Waxman Litigation. In the event that the Court finds all of the asserted claims of both the ‘066 patent and the ‘793 patent are either not infringed or invalid, then the 30-month stay will be lifted and the FDA will be able to grant final FDA approval of YUTREPIA. In the event that the Court finds any of the asserted claims of the ‘066 patent or ‘793 patent are valid and infringed, then the Court is expected to issue an order that the effective date of final YUTREPIA approval will not be earlier than the date of expiration of the patent that has been found to be valid and infringed, which would be in the year 2027 in the case of the ‘793 patent and in the year 2028 in the case of the ‘066 patent.

In March 2020, the Company filed two petitions for *inter partes* review with the Patent Trial and Appeal Board (the “PTAB”) of the USPTO. One petition was for *inter partes* review of the ‘901 Patent, and sought a determination that the claims in the ‘901 Patent are invalid, and a second petition was for *inter partes* review of the ‘066 Patent, and sought a determination that the claims in the ‘066 Patent are invalid. Both the ‘901 Patent and ‘066 Patent are owned by United Therapeutics, and both patents are related to U.S. Patent No. 8,497,393 which was granted to United Therapeutics and subsequently invalidated by the USPTO in an *inter partes* review instituted in 2016 by SteadyMed Ltd. In October 2020, the PTAB instituted an *inter partes* review of the ‘901 Patent and concurrently denied institution on the ‘066 Patent, stating that the ‘066 petition has not established a reasonable likelihood that it would prevail in showing that at least one of the challenged claims is unpatentable. In October 2021, the PTAB issued a final written decision concluding that seven of the claims in the ‘901 patent were unpatentable, leaving only the narrower dependent claims 6 and 7, both of which require actual storage at ambient temperature of treprostinil sodium. In November 2021, United Therapeutics submitted a rehearing request with respect to the PTAB’s decision in the *inter partes* review of the ‘901 Patent. The rehearing request is currently pending with the PTAB.

In January 2021, the Company filed a petition for *inter partes* review with the PTAB relating to the ‘793 patent, seeking a determination that the claims in the ‘793 patent are invalid. In August 2021, the PTAB instituted an *inter partes* review of the ‘793 Patent, finding that the Company had demonstrated a reasonable likelihood that it would prevail with respect to showing that at least one challenged claim of the ‘793 patent is unpatentable as obvious over the combination of certain prior art cited by the Company in its petition to the PTAB. A final written decision determining the validity of the

challenged claims of the ‘793 patent is expected within 12 months from institution. However, even in the event the PTAB does find that all of the claims of the ‘793 patent are invalid, such a decision would not override an order of the Court in the Hatch-Waxman Litigation that YUTREPIA may not be approved due to infringement of the ‘793 patent unless and until the decision of the PTAB is affirmed on appeal.

**Trade Secret Litigation**

In December 2021, United Therapeutics filed a complaint in the Superior Court in Durham County, North Carolina, alleging that the Company and a former United Therapeutics employee, who later joined the Company as an employee many years after terminating his employment with United Therapeutics, conspired to misappropriate certain trade secrets of United Therapeutics and engaged in unfair or deceptive trade practices. In January 2022, the Company’s co-defendant in the lawsuit removed the lawsuit to the United States District Court for the Middle District of North Carolina. Subsequently, in January 2022, United Therapeutics filed an amended complaint eliminating their claim under the federal Defend Trade Secrets Act and a motion seeking to have the case remanded to North Carolina state court. In April 2022, the Court granted United Therapeutics’ motion to have the case remanded to North Carolina state court. On May 10, 2022, the Company filed a motion to dismiss all of the claims made by United Therapeutics in the lawsuit. The motion remains pending with the Court.

**RareGen Litigation**

In April 2019, Sandoz and Liquidia PAH (then known as RareGen) filed a complaint against United Therapeutics and Smiths Medical in the District Court of New Jersey (Case No. No. 3:19-cv-10170), (the “RareGen Litigation”), alleging that United Therapeutics and Smiths Medical violated the Sherman Antitrust Act of 1890, state law antitrust statutes and unfair competition statutes by engaging in anticompetitive acts regarding the drug treprostinil for the treatment of PAH. In March 2020, Sandoz and Liquidia PAH filed a first amended complaint adding a claim that United Therapeutics breached a settlement agreement that was entered into in 2015, in which United Therapeutics agreed to not interfere with Sandoz’s efforts to launch its generic treprostinil, by taking calculated steps to restrict and interfere with the launch of Sandoz’s competing generic product. United Therapeutics developed treprostinil under the brand name Remodulin® and Smiths Medical manufactured a pump and cartridges that are used to inject treprostinil into patients continuously throughout the day. Sandoz and Liquidia PAH allege that United Therapeutics and Smiths Medical entered into anticompetitive agreements (i) whereby Smiths Medical placed restrictions on the cartridges such that they can only be used with United Therapeutics’ branded Remodulin® product and (ii) requiring Smiths Medical to enter into agreements with specialty pharmacies to sell the cartridges only for use with Remodulin®.

In January 2020, the Court denied Liquidia PAH’s and Sandoz’s motion for a preliminary injunction and United Therapeutics’ and Smiths Medicals’ motion to dismiss. In November 2020, Sandoz and Liquidia PAH entered into a binding term sheet (the “Term Sheet”) with Smiths Medical in order to resolve the outstanding RareGen Litigation solely with respect to disputes between Smiths Medical, Liquidia PAH and Sandoz. In April 2021, Liquidia PAH and Sandoz entered into a Long Form Settlement Agreement (the “Settlement Agreement”) with Smiths Medical to further detail the terms of the settlement among such parties as reflected in the Term Sheet. Pursuant to the Term Sheet and the Settlement Agreement, the former RareGen members and Sandoz received a payment of $4.25 million that was evenly split between the parties. In addition, pursuant to the Term Sheet and Settlement Agreement, Smiths Medical disclosed and made available to Sandoz and Liquidia PAH certain specifications and other information related to the cartridge that Smiths Medical developed and manufactures for use with the CADD-MS 3 Infusion pump (the “CADD-MS 3 Cartridge”). Pursuant to the Settlement Agreement, Smiths Medical also granted Liquidia PAH and Sandoz a non-exclusive, royalty-free license in the United States to Smiths Medical’s patents and copyrights associated with the CADD-MS 3 Cartridge and certain other information for use of the CADD-MS 3 pump and the CADD-MS 3 Cartridges. Smiths also agreed in the Settlement Agreement to provide information and assistance in support of Liquidia PAH’s efforts to receive FDA clearance for the RG Cartridge and to continue to service certain CADD-MS 3 pumps that are available for use with the Treprostinil Injection through January 1, 2025. Liquidia PAH and Sandoz agreed, among other things, to indemnify Smiths from certain liabilities related to the RG Cartridge.

In September 2021, United Therapeutics filed a motion for summary judgment with respect to all of the claims brought by Sandoz and Liquidia PAH against United Therapeutics. At the same time, Sandoz filed a motion for summary

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

DATE: May 12, 2022

**LIQUIDIA CORPORATION**
By:/s/ Roger A. Jeffs, Ph.D.
Roger A. Jeffs, Ph.D.
Chief Executive Officer

DATE: May 12, 2022

**LIQUIDIA CORPORATION**
By:/s/ Michael Kaseta
Michael Kaseta
Chief Financial Officer

# EXHIBIT B

# Liquidia Receives Favorable Ruling in Inter Partes Review against United Therapeutics Patent

July 19, 2022

MORRISVILLE, N.C., July 19, 2022 (GLOBE NEWSWIRE) -- Liquidia Corporation (NASDAQ: LQDA) announced today that the U.S. Patent Trial and Appeal Board (PTAB) ruled in its favor in the *Inter Partes* Review (IPR) proceeding against U.S. Patent No. 10,716,793 ('793 patent) owned by United Therapeutics Corporation (UTC) and listed in the Orange Book for Tyvaso® (treprostinil inhalation solution). In its ruling, the PTAB found that, based on the preponderance of the evidence, all the claims of the '793 patent have been shown to be unpatentable.

Roger Jeffs, Chief Executive Officer of Liquidia said: "We are very pleased with this decision by the PTAB. Today's decision is another step down the path towards YUTREPIA's potential final regulatory approval. We will continue to vigorously defend our right to commercialize YUTREPIA as soon as possible and look forward to hearing the final decision from the district court in the Hatch-Waxman litigation."

The PTAB's decision with respect to the '793 patent does not resolve the on-going district court litigation brought by UTC related to YUTREPIA. In June 2020, UTC filed a lawsuit against Liquidia under Hatch-Waxman for infringement of Patents No. 9,604,901 ('901 patent) and 9,593,066 ('066 patents). Upon initiation of the lawsuit, the U.S. Food and Drug Administration (FDA) triggered a statutory regulatory stay on the final approval of YUTREPIA until October 27, 2022, or earlier resolution or settlement of the ongoing litigation. UTC later amended the lawsuit to include the '793 patent when it was granted in July 2020.

In December 2021, UTC agreed to the entry of judgment of Liquidia's non-infringement of the '901 patent based on the Court's construction of certain terms in the patent. Thus, only the '066 and '793 patents remain at issue in the Hatch-Waxman proceedings in district court. In the event that the Court finds any of the asserted claims of the '066 patent or '793 patent are valid and infringed, then the Court is expected to issue an order that the effective date of final YUTREPIA approval will not be earlier than the date of expiration of the patent that has been found to be valid and infringed, which would be in the year 2027 in the case of the '793 patent and in the year 2028 in the case of the '066 patent.

Today's decision by the PTAB would not override an order of the Court in the Hatch-Waxman litigation that YUTREPIA may not be approved due to infringement of the '793 patent unless and until the decision of the PTAB is affirmed on appeal.

**About YUTREPIA™ (treprostinil) inhalation powder**
YUTREPIA is an investigational, inhaled dry powder formulation of treprostinil delivered through a proven, convenient, palm-sized device. On November 5, 2021, the FDA issued a tentative approval for YUTREPIA, which is indicated for the treatment of pulmonary arterial hypertension (PAH) to improve exercise ability in adult patients with New York Heart Association (NYHA) Functional Class II-III symptoms. YUTREPIA was designed using Liquidia's PRINT® technology, which enables the development of drug particles that are precise and uniform in size, shape, and composition, and that are engineered for optimal deposition in the lung following oral inhalation. Liquidia has completed INSPIRE, or Investigation of the Safety and Pharmacology of Dry Powder Inhalation of Treprostinil, an open-label, multi-center phase 3 clinical study of YUTREPIA in patients diagnosed with PAH who are naïve to inhaled treprostinil or who are transitioning from Tyvaso (nebulized treprostinil). YUTREPIA was previously referred to as LIQ861 in investigational studies.

**About Liquidia Corporation**
Liquidia Corporation is a biopharmaceutical company focused on the development and commercialization of products in pulmonary hypertension and other applications of its PRINT® Technology. The company operates through its two wholly owned subsidiaries, Liquidia Technologies, Inc. and Liquidia PAH, LLC. Liquidia Technologies has developed YUTREPIA™ (treprostinil) inhalation powder for the treatment of pulmonary arterial hypertension (PAH). Liquidia PAH provides the commercialization for pharmaceutical products to treat pulmonary disease, such as generic Treprostinil Injection. For more information, please visit www.liquidia.com.

**Cautionary Statements Regarding Forward-Looking Statements**
This press release may include forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995. All statements contained in this press release other than statements of historical facts, including statements regarding our future results of operations and financial position, our strategic and financial initiatives, our business strategy and plans and our objectives for future operations, are forward-looking statements. Such forward-looking statements, including statements regarding clinical trials, clinical studies and other clinical work (including the funding therefor, anticipated patient enrollment, safety data, study data, trial outcomes, timing or associated costs), regulatory applications and related submission contents and timelines, including the potential for eventual FDA approval of the NDA for LIQ861, the timeline or outcome related to our patent litigation pending in the U.S. District Court for the District of Delaware or appeals of PTAB decisions, the issuance of patents by the USPTO and our ability to execute on our strategic or financial initiatives, involve significant risks and uncertainties and actual results could differ materially from those expressed or implied herein. The favorable decision of the PTAB in the IPR for the '793 patent is not determinative of the outcome of any appeal of that decision or the Hatch-Waxman litigation between Liquidia and UTC. The words "anticipate," "believe," "continue," "could," "estimate," "expect," "intend," "may," "plan," "potential," "predict," "project," "should," "target," "would," and similar expressions are intended to identify forward-looking statements. We have based these forward-looking statements largely on our current expectations and projections about future events and financial trends that we believe may affect our financial condition, results of operations, business strategy, short-term and long-term business operations and objectives and financial needs. These forward-looking statements are subject to a number of risks discussed in our filings with the SEC, including the impact of the coronavirus (COVID-19) outbreak on our Company and our financial condition and results of operations, as well as a number of uncertainties and assumptions. Moreover, we operate in a very competitive and rapidly changing environment and our industry has inherent risks. New risks emerge from time to time. It is not possible for our management to predict all risks, nor can we assess the impact of all factors on our business or the extent to which any factor, or combination of factors, may cause actual results to differ materially from those contained in any forward-looking statements we may make. In light of these risks, uncertainties and assumptions, the future events discussed in this press release may not occur and actual results could differ materially and adversely from those anticipated or implied in the forward-looking statements. Nothing in this press release should be regarded as a representation by any person that these goals will be achieved, and we undertake no duty to update our goals or to update or alter any forward-looking statements, whether as a result of new information, future events or otherwise.

**Contact Information**

**Media & Investors:**
Jason Adair
Vice President, Corporate Development and Strategy
919.328.4400
jason.adair@liquidia.com

Liquidia CORPORATION

Source: Liquidia Corporation

# EXHIBIT C

Table of Contents

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**FORM 10-Q**

(Mark One)

☒ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934** For the fiscal quarter ended June 30, 2022

or

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934** For the transition period from to

Commission File Number: 001-39724

**LIQUIDIA CORPORATION**
(Exact Name of Registrant as Specified in Its Charter)

| | |
|---|---|
| **Delaware** | **85-1710962** |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |
| **419 Davis Drive, Suite 100**<br>**Morrisville, North Carolina** | **27560** |
| (Address of Principal Executive Offices) | (Zip Code) |

Registrant's telephone number, including area code: **(919) 328-4400**
**N/A**
(Former name, former address and former fiscal year, if changed since last report)

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Common stock, $0.001 par value per share | LQDA | The Nasdaq Stock Market LLC |

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒ No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). Yes ☒ No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company" and "emerging growth company" in Rule 12b-2 of the Exchange Act.

Large Accelerated Filer ☐ Accelerated Filer ☐ Non-accelerated Filer ☒ Smaller Reporting Company ☒
Emerging Growth Company ☒

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act ☒

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act). Yes ☐ No ☒

As of August 1, 2022, there were 64,362,336 shares of the registrant's common stock outstanding.

***YUTREPIA-Related Litigation***

In June 2020, United Therapeutics filed a complaint for patent infringement against the Company in the U.S. District Court for the District of Delaware (Case No. 1:20-cv-00755-RGA) (the "Hatch-Waxman Litigation"), asserting infringement by the Company of U.S. Patent Nos. 9,604,901, entitled "Process to Prepare Treprostinil, the Active Ingredient in Remodulin®" (the "'901 Patent"), and 9,593,066, entitled "Process to Prepare Treprostinil, the Active Ingredient in Remodulin®" (the "'066 Patent"), relating to United Therapeutics' Tyvaso®, a nebulized treprostinil solution for the treatment of PAH. In July 2020, the Company filed an answer to United Therapeutics' complaint and also included counterclaims of invalidity, non-infringement, and Orange Book de-listing of the '901 Patent and '066 Patent. United Therapeutics seeks a judgment that the asserted patents are infringed and an injunction of FDA final approval and subsequent commercial launch of YUTREPIA product until after the latest to expire asserted patent. United Therapeutics' complaint is in response to the Company's NDA for YUTREPIA, filed with the FDA, requesting approval to market YUTREPIA, a dry powder inhalation of treprostinil for the treatment of PAH. The YUTREPIA NDA was filed under the 505(b)(2) regulatory pathway with Tyvaso® as the reference listed drug. Under the Hatch-Waxman Act, the FDA is automatically precluded from approving the YUTREPIA NDA for up to 30 months until October 2022, absent an earlier judgment unfavorable to United Therapeutics by the court. Although the Company believes its YUTREPIA dry powder inhaler for the treatment of PAH is highly differentiated from Tyvaso®, since the Company is seeking approval of the YUTREPIA NDA under the 505(b)(2) regulatory pathway, the YUTREPIA NDA is subject to the provisions of the Hatch-Waxman Act.

In July 2020, the U.S. Patent and Trademark Office (the "USPTO") issued U.S. Patent No. 10,716,793 (the "'793 Patent"), entitled "Treprostinil Administration by Inhalation", to United Therapeutics. In July 2020, United Therapeutics filed an amended complaint in the Hatch-Waxman Litigation asserting infringement of the '793 Patent by the practice of YUTREPIA. The infringement allegation of the '793 Patent is separate from the 30-month regulatory stay on final approval of the NDA for YUTREPIA, which is only associated with the infringement allegations of the '901 Patent and the '066 Patent. United Therapeutics' motion to dismiss the Company's invalidity defenses and counterclaims concerning the '793 Patent was denied by the U.S. District Court for the District of Delaware in November 2020.

In June 2021, the Court held a claim construction hearing. Following the claim construction hearing, the Court issued orders that three of the terms under consideration would be given their plain and ordinary meaning and ruling in the Company's favor regarding the other two terms. Based on the Court's construction of the terms, United Therapeutics filed a stipulation of partial judgment with respect to the '901 Patent in December 2021 under which United Therapeutics agreed to the entry of judgment of the Company's non-infringement of the '901 Patent. United Therapeutics preserved its appellate rights with respect to the '901 Patent in the event the Court's construction of those terms is reversed.

Trial proceedings in the Hatch-Waxman Litigation were held from March 28-31, 2022. At the conclusion of the trial, the Court set a post-trial briefing schedule, which was completed on June 15, 2022. The Company currently expects that a decision regarding the Hatch-Waxman Litigation will be issued prior to the expiration of the 30-month regulatory stay in October 2022.

At trial, the Company presented evidence of non-infringement and invalidity with respect to both the'066 patent and the '793 patent, the two patents that remain at issue in the Hatch-Waxman Litigation. In the event that the Court finds all of the asserted claims of both the '066 patent and the '793 patent are either not infringed or invalid, then the 30-month stay will be lifted and the FDA will be able to grant final FDA approval of YUTREPIA. In the event that the Court finds any of the asserted claims of the '066 patent or '793 patent are valid and infringed, then the Court is expected to issue an order that the effective date of final YUTREPIA approval will not be earlier than the date of expiration of the patent that has been found to be valid and infringed, which would be in the year 2027 in the case of the '793 patent and in the year 2028 in the case of the '066 patent.

In March 2020, the Company filed two petitions for *inter partes* review with the Patent Trial and Appeal Board (the "PTAB") of the USPTO. One petition was for *inter partes* review of the '901 Patent, and sought a determination that the claims in the '901 Patent are invalid, and a second petition was for *inter partes* review of the '066 Patent, and sought a determination that the claims in the '066 Patent are invalid. Both the '901 Patent and '066 Patent are owned by United

Therapeutics, and both patents are related to U.S. Patent No. 8,497,393 which was granted to United Therapeutics and subsequently invalidated by the USPTO in an *inter partes* review instituted in 2016 by SteadyMed Ltd. In October 2020, the PTAB instituted an *inter partes* review of the '901 Patent and concurrently denied institution on the '066 Patent, stating that the '066 petition has not established a reasonable likelihood that it would prevail in showing that at least one of the challenged claims is unpatentable. In October 2021, the PTAB issued a final written decision concluding that seven of the claims in the '901 patent were unpatentable, leaving only the narrower dependent claims 6 and 7, both of which require actual storage at ambient temperature of treprostinil sodium. In November 2021, United Therapeutics submitted a rehearing request with respect to the PTAB's decision in the *inter partes* review of the '901 Patent. The rehearing request was denied on June 14, 2022. The Company expects that United Therapeutics will file for an appeal of the PTAB's decision, which is due on August 16, 2022.

In January 2021, the Company filed a petition for *inter partes* review with the PTAB relating to the '793 patent, seeking a determination that the claims in the '793 patent are invalid. In August 2021, the PTAB instituted an *inter partes* review of the '793 Patent, finding that the Company had demonstrated a reasonable likelihood that it would prevail with respect to showing that at least one challenged claim of the '793 patent is unpatentable as obvious over the combination of certain prior art cited by the Company in its petition to the PTAB. Oral argument with respect to the *inter partes* review of the '793 patent was held in May 2022. In July 2022, the PTAB ruled in the Company's favor, concluding that based on the preponderance of the evidence, all the claims of the '793 patent have been shown to be unpatentable. The PTAB's decision would not override an order of the Court in the Hatch-Waxman Litigation that YUTREPIA may not be approved due to infringement of the '793 patent unless and until the decision of the PTAB is affirmed on appeal.

***Trade Secret Litigation***

In December 2021, United Therapeutics filed a complaint in the Superior Court in Durham County, North Carolina, alleging that the Company and a former United Therapeutics employee, who later joined the Company as an employee many years after terminating his employment with United Therapeutics, conspired to misappropriate certain trade secrets of United Therapeutics and engaged in unfair or deceptive trade practices. In January 2022, the Company's co-defendant in the lawsuit removed the lawsuit to the United States District Court for the Middle District of North Carolina. Subsequently, in January 2022, United Therapeutics filed an amended complaint eliminating their claim under the federal Defend Trade Secrets Act and a motion seeking to have the case remanded to North Carolina state court. In April 2022, the Court granted United Therapeutics' motion to have the case remanded to North Carolina state court. On May 10, 2022, the Company filed a motion to dismiss all of the claims made by United Therapeutics in the lawsuit. The motion remains pending with the Court.

***RareGen Litigation***

In April 2019, Sandoz and Liquidia PAH (then known as RareGen) filed a complaint against United Therapeutics and Smiths Medical in the District Court of New Jersey (Case No. No. 3:19-cv-10170), (the "RareGen Litigation"), alleging that United Therapeutics and Smiths Medical violated the Sherman Antitrust Act of 1890, state law antitrust statutes and unfair competition statutes by engaging in anticompetitive acts regarding the drug treprostinil for the treatment of PAH. In March 2020, Sandoz and Liquidia PAH filed a first amended complaint adding a claim that United Therapeutics breached a settlement agreement that was entered into in 2015, in which United Therapeutics agreed to not interfere with Sandoz's efforts to launch its generic treprostinil, by taking calculated steps to restrict and interfere with the launch of Sandoz's competing generic product. United Therapeutics developed treprostinil under the brand name Remodulin® and Smiths Medical manufactured a pump and cartridges that are used to inject treprostinil into patients continuously throughout the day. Sandoz and Liquidia PAH allege that United Therapeutics and Smiths Medical entered into anticompetitive agreements (i) whereby Smiths Medical placed restrictions on the cartridges such that they can only be used with United Therapeutics' branded Remodulin® product and (ii) requiring Smiths Medical to enter into agreements with specialty pharmacies to sell the cartridges only for use with Remodulin®.

In January 2020, the Court denied Liquidia PAH's and Sandoz's motion for a preliminary injunction and United Therapeutics' and Smiths Medicals' motion to dismiss. In November 2020, Sandoz and Liquidia PAH entered into a binding term sheet (the "Term Sheet") with Smiths Medical in order to resolve the outstanding RareGen Litigation solely with respect to disputes between Smiths Medical, Liquidia PAH and Sandoz. In April 2021, Liquidia PAH and Sandoz

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

DATE: August 11, 2022

**LIQUIDIA CORPORATION**
By:/s/ Roger A. Jeffs, Ph.D.
Roger A. Jeffs, Ph.D.
Chief Executive Officer

DATE: August 11, 2022

**LIQUIDIA CORPORATION**
By:/s/ Michael Kaseta
Michael Kaseta
Chief Financial Officer

# EXHIBIT D

# Q2 2022 Earnings Call

## Company Participants

- Jason Adair, SVP of Corporate Development & Strategy
- Michael Kaseta, CFO
- Rajeev Saggar, CMO
- Roger Jeffs, CEO & Director
- Russell Schundler, General Counsel & Corporate Secretary

FINAL

## Other Participants

- Greg Harrison, Analyst
- Julian Harrison, Analyst
- Matt Kaplan, Analyst
- Serge Belanger, Analyst

## Presentation

### Operator

Good morning. Welcome, everyone, to the Liquidia Corporation Second Quarter 2022 Financial Results and Corporate Update Conference Call. (Operator Instructions) I would like to remind everyone that the conference call is being recorded. I will now hand the call over to Jason Adair, Senior Vice President, Corporate Development and Strategy.

### Jason Adair {BIO 19545511 <GO>}

Thank you, Angela [ph]. It is my pleasure to welcome everyone to Liquidia's Second Quarter 2022 financial results and corporate update conference call. Joining the call today are Chief Executive Officer, Roger Jeffs; Chief Medical Officer, Dr. Rajeev Saggar; General Counsel, Rusty Schundler, Chief Financial Officer, Mike Kaseta, and other members of Liquidia management. Before we begin, please note that today's conference call will contain forward-looking statements including those statements regarding future results and forward-looking financial information as well as the company's future performance and/or achievements.

These statements are subject to known and unknown risks and uncertainties, which may cause our actual results or performance to be materially different from any future results or performance expressed or implied on this call. For additional information, including a detailed discussion of our risk factors, please refer to the company's documents filed with the Securities and Exchange Commission, which can be accessed on our website. I would now like to turn the call over to Roger for our prepared remarks, after which, he will open up the call for your questions.

Bloomberg Transcript

FINAL

Bloomberg Transcript

## Roger Jeffs {BIO 2018787 <GO>}

Thank you, Jason. Good morning, everyone. Over the last three months, we've continued to gain momentum across all areas of the company as we build towards our primary objective of preparing for the potential launch of YUTREPIA, an inhaled dry powder formulation of treprostinil. I'll share just a few examples of our progress. In the marketplace, we continued to build the awareness and reputation of Liquidia amongst key stakeholders involved in delivering treatments for PAH while also increasing utilization of Treprostinil Injection. In the clinical arena, we published data from the completed INSPIRE trial in the Journal Pulmonary Circulation, which validates the enduring value and therapeutic potential for YUTREPIA to be a game changer for PAH patients. In the regulatory area, the FDA confirmed that no additional studies will be required to seek label expansion to treat patients with PH-ILD in March 2024.

In legal forums, we advanced down the path towards YUTREPIA's final approval with the PTAB invalidating all claims of the '793 patent. On the balance sheet, we continued to build for launch while being efficient with our use of capital. And inside the company, we continued to build a high-performing culture, hiring key people to enable both near- and long-term success of our products and pipeline. Speaking of hires, I want to introduce you to one of our key new hires, our new Chief Medical Officer, Dr. Rajeev Saggar. Rajeev and I have known each other for years, and he's always impressed me with his determination to make a difference in patients' lives. When I saw the opportunity to include him on our team, I took it immediately. Rajeev brings the strength of knowledge, experience and curiosity that will help take Liquidia to the next level. Since most of our investors have not had the chance to meet Rajeev, I've asked him to share his impressions so far. Rajeev?

## Rajeev Saggar

Thank you, Roger. I'm very excited to join Liquidia at a pivotal moment in the company's evolution. We are just steps away from the potential introduction of YUTREPIA as a central and critical treatment modifier of the prostacyclin pathway. With immediate focus on the potential launch of YUTREPIA, we are committed to the continued scientific research and education efforts in pulmonary hypertension for patients, clinicians and the broad community. YUTREPIA was first introduced to the PH community in 2015, and just two years later, started enrollment in the INSPIRE trial, the first program to explore the benefits of an inhaled dry powder formulation of treprostinil for patients who were naive to prostacyclin therapy or transitioning from nebulized TYVASO.

During that time, I was a pulmonary specialist and clinical scientist with a focused interest in pulmonary hypertension, and along with many other investigators, was thrilled to participate in the study. Now as the Chief Medical Officer, I am pouring over the robust clinical data that include longitudinal patient exposures to YUTREPIA exceeding three years between the INSPIRE study and ongoing extension trial. In fact, we recently announced a publication of the completed INSPIRE trial, which included patients treated between 8 and 18 months before rolling into the extension trial. In reviewing the data, I was pleased to confirm that YUTREPIA can be safely titrated across doses comparable to 3 to 24 breaths of TYVASO, indicating that a wide range of therapeutic doses can be easily administered in just a few breaths from 1 or 2 capsules of YUTREPIA as compared to nebulizers.

FINAL

Bloomberg Transcript

YUTREPIA treatment is also durable. In fact, of the 121 patients enrolled, more than 90% completed treatment at the primary month 2 endpoint. When combined with the exposure data from the extension study, we saw that more than 75% of patients completed treatment of at least 12 months. Lastly, YUTREPIA is attractive to patients. After only 2 weeks, nearly all of the transition patients preferred or strongly prefer the DPI over the nebulizer. Only 1 patient reported no preference after 2 weeks, but at four months, 100% of transition patients preferred YUTREPIA. We believe this data demonstrates the patient's unmet need and potential for rapid adoption when available.

All of this data has been enabled by our proprietary PRINT formulation of unified dry powder particles, ideally sized in the respirable range to enhance drug exposure while using an inhaler very familiar to clinicians who have treated tens of thousands of COPD and asthma patients with a similar device. We believe that YUTREPIA's profile will help build on the body of knowledge in medical literature that higher inhaled doses may lead to better clinical outcomes. Though we are not required to generate new clinical data to seek pulmonary hypertension associated with interstitial lung disease in the YUTREPIA label, we will look for opportunities to fully explore YUTREPIA with the help of the wider community. Roger?

## Roger Jeffs {BIO 2018787 <GO>}

Thank you, Rajeev. Beautifully stated. It's exciting to think where we can guide the company with your help. But first and foremost, we need to get the product approved. I'd now like to ask Rusty Schundler, our General Counsel, who's been overseeing our legal case to summarize our key legal advances in just this past quarter.

## Russell Schundler {BIO 22214915 <GO>}

Thanks, Roger. We have recently taken 2 major steps toward resolving the outstanding claims brought by United Therapeutics. First, we have submitted all post-trial briefings in our Hatch-Waxman litigation in the United States District Court for the District of Delaware. As previously disclosed, trial was completed at the end of March. Thus, with the submission of all post-trial briefings, the Court now has all of the material required to reach a decision on the alleged infringement of the API manufacturing patent, which we refer to as the '066 patent, and the method of use patent, which we refer to as the '793 patent. The trial materials and transcripts are available from the court and we believe demonstrate all claims asserted are invalid and/or not infringed.

We do not know when Judge Andrews will issue his ruling, but do expect that it will come before the end of October when the regulatory stay expires. Second, we successfully concluded the inter partes review of the '793 patent with the Patent Trial and Appeal Board, or PTAB, ruling in July that all claims are unpatentable. The PTAB's ruling is not binding on the court in the Hatch-Waxman litigation and would not override an order of the court that YUTREPIA may not be approved due to infringement of the '793 patent unless and until the decision of the PTAB is affirmed on appeal.

However coupled with United Therapeutics' prior stipulation of partial judgment in favor of Liquidia with respect to the '901 patent, another patent that was initially asserted against

FINAL

Bloomberg Transcript

Liquidia, the PTAB's ruling means that even before the decision in the Hatch-Waxman litigation, Liquidia has now received favorable rulings with respect to 2 of the 3 patents initially asserted by United Therapeutics against Liquidia. We will continue to keep you updated on any material developments as we approach the court's decision.

## Roger Jeffs {BIO 2018787 <GO>}

Thank you, Rusty. I'd now like to ask Mike Kaseta to highlight a few points from the Second Quarter.

## Michael Kaseta {BIO 20437086 <GO>}

Thank you, Roger. Good morning, everyone. Our Second Quarter 2022 financial results can be found in the press release issued earlier today and on our Form 10-Q to be filed with the SEC after market close today. In those documents, you will see that revenue was $3.9 million for the three months ended June 30, 2022, compared to $3.4 million for the same quarter in 2021. Revenue related primarily to the sale of Treprostinil Injection under the profit split agreement with Sandoz. It is important context that despite the decrease in our profit split percentage from 80-20 to 50-50 in Q3 2021, quarterly revenues have increased each quarter since the launch of subcutaneous. We continue to see consistent demand with more than 500 patients on treatment and increasing support from payer mandates for generic use.

Cost of revenue was $0.7 million for the quarter, which was the same compared to Second Quarter of 2021. Research and development expenses were $5.2 million compared with $4.6 million, a $0.6 million increase from the same quarter last year split between timing of manufacturing related to the YUTREPIA program and a onetime charge for personnel-related costs. General and administrative expenses were $6.9 million compared with $4.4 million, a $2.5 million increase of which just over half was due to increases in commercial, marketing and personnel expenses in preparation for the potential commercialization of YUTREPIA. Other expenses in the quarter totaled $0.5 million, an increase of $0.3 million over the same quarter last year related to a higher interest expense on our debt with Silicon Valley Bank.

All totaled, we incurred a net loss in the Second Quarter of 2022 of $9.4 million or $0.15 per basic and diluted share, compared to a net loss of $6.5 million or $0.13 per basic and diluted share for the Second Quarter of 2021. Turning to our balance sheet. We ended the Second Quarter well prepared to execute on our plans. As of June 30, cash and cash equivalents totaled $103.8 million as compared to $57.5 million as of December 31, 2021. We believe that the cash on hand, combined with revenue from Treprostinil Injection, will support operations into 2024. I would now like to turn the call back over to Roger.

## Roger Jeffs {BIO 2018787 <GO>}

Thank you, Mike. At this time, I would now like to open it up for questions. Operator, first question, please.

FINAL

Bloomberg Transcript

## Questions And Answers

### Operator

(Operator Instructions) Your first question comes from the line of Greg Harrison with Bank of America.

### Q - Greg Harrison {BIO 21167630 <GO>}

First, I wanted to ask how quickly can you launch if the Hatch-Waxman decisions are favorable? And what preparations are underway? I know the press release mentioned new hires in sales. Are those contingent on resolution of the trial and a full approval?

### A - Roger Jeffs {BIO 2018787 <GO>}

Greg, this is Roger. Thank you for the question. So the launch timing from -- once we have a successful resolution of the Hatch-Waxman trial, we believe will be between weeks to a maximum of, say two months. And really, that's just us resubmitting for final approval. There'll be a small bit of final safety data that we'll submit along with that. We've already discussed how our labeling will be finalized. So I don't think there's going to be any labeling revisions required. So it's -- we think we'll be on the shorter end of that 2-week to 2-month spectrum. Then, secondly, in terms of your question of prep. We have hired key leadership positions.

So obviously with bringing Rajeev in with his expertise, which you could hear very eloquently in his summary of the data today we're bringing in what we call regional business directors, which are the key regional sales heads for the different areas of the country. We are out now interviewing and scaling our sales force through contingent offers as you surmised. So those are going to be contingent on final resolution of the Hatch-Waxman trial because as we have been, and we'll continue to be, we're trying to be efficient with our use of capital. So we are preparing. I think the other thing that you should notice, we are preparing commercial product and we will have commercial product ready for the market upon the resolution of the Hatch-Waxman trial. Thank you for the question, Greg.

### Operator

Your next question will come from the line of Serge Belanger with Needham & Company.

### Q - Serge Belanger {BIO 15024362 <GO>}

A couple of questions on the ongoing legal proceedings. First, on the timing of the District Court decision. Just curious, I think there was a recent post-trial briefing demanded by the District Court judge. Curious if that potentially portends an earlier decision than October? Then, secondly, maybe just talk about how different the '066 patent that remains an issue in the District Court litigation, how it differs to '901 and '793.

### A - Roger Jeffs {BIO 2018787 <GO>}

FINAL
Bloomberg Transcript

Yes. Thanks for the question, Serge. Rusty, I'll ask you to address those, please.

## A - Russell Schundler {BIO 22214915 <GO>}

Thanks, Serge. So on your first question regarding the timing of District Court decision, it's hard to predict when the court is going to rule. You're correct that the court did ask for some supplemental briefing, I think it was in July. But that does not necessarily mean that the decision will come earlier. Again we think it will be before the end of the 30-month stay at the end of October. But beyond that, could theoretically be any day. So again it's just hard to predict because the courts are busy and they have a lot of competing demands on their time. On the second question on the differences between '066 patent and the '901 and the '793. The '066 and '901 are both methods of manufacturing, the treprostinil API.

The '793 patent is a method-of-treatment patent. So the '793 patent is quite a bit different from the '066 and '901 patents. The '066 and '901 patents are very similar as to what they cover, but the language of the claims is different. So if you look at the claim construction and what that meant as far as what the '901 patent covered versus the '066, there are some differences. So I'm not sure if that answers your question, but they do cover very similar things. But again there are some key differences in the way the claims were structured in those 2 patents.

## A - Roger Jeffs {BIO 2018787 <GO>}

Thank you, Rusty.

## Operator

Your next question comes from the line of Matt Kaplan with Ladenburg Thalmann.

## Q - Matt Kaplan {BIO 3024688 <GO>}

Just as you kind of enter your -- performing the preparation for commercialization, can you give us some sense in terms of the feedback that you're getting on the profile of YUTREPIA versus TYVASO, and what the response is from the treatment community so far.

## A - Roger Jeffs {BIO 2018787 <GO>}

Yes. Thanks, Matt. So I'll start and maybe then I'll ask Rajeev also to comment since he's very close, obviously to a number of the KOLs. So I think for us, the things that resonate with the physicians and the patient community is the therapeutic -- what I'll call the therapeutic flexibility of YUTREPIA, its ability to titrate its AE profile and its durability of use, which Rajeev mentioned in his opening comments. And the next thing that really resonates nicely is the ease of use. So the portability, the low-resistance device, just the encapsulated blister pack product, which is just easy to carry as well. It doesn't spill, there's no orientation requirement. So there's a number of what we call preferential aspects that the community is looking forward to. But Rajeev, maybe if you have any color that you'd like to add to that.

FINAL

Bloomberg Transcript

## A - Rajeev Saggar

Yes. Thanks, Roger. Thanks, Matt, for the question. I agree, Roger, with everything you said. I think what is exciting to the community is another opportunity to provide this form of inhaled treprostinil through a low-resistance device, specifically YUTREPIA. I think the ability to provide the 4 strengths of different capsules, at least up to the 106-microgram dose, and then to be able to continue to titrate the doses beyond what is typically known as 9 to 12 breaths that we've seen with TYVASO, I think it's going to be well received.

Typically, practitioners have been taught that TYVASO effectively has a ceiling because of its inability to titrate on the TYVASO nebulizer. This is the first time we're going to be able to offer patients the opportunity to continue to match their clinical symptoms and needs by up titrating TYVASO as deemed -- sorry, up titrate YUTREPIA as deemed fit by the provider. So we're really excited about that and that's the feedback from the KOLs.

## A - Roger Jeffs {BIO 2018787 <GO>}

Great. Thanks for the question, Matt. Appreciate it.

## Operator

Your next question comes from the line of Julian Harrison with BTIG.

## Q - Julian Harrison {BIO 22623531 <GO>}

Welcome to Liquidia, Dr. Saggar. Most of my questions have already been asked, but I'm just wondering if you could talk now a little more about the key details of the provisional label for YUTREPIA, such as maybe the highest dose indicated and what that corresponds to in nebulized TYVASO breaths equivalent or anything else you're able to share at this time?

## A - Roger Jeffs {BIO 2018787 <GO>}

Yes. So I'll just say what we've said publicly, which is that the label will include doses up -- describe the exposure during the INSPIRE trial up to 212 micrograms 4 times a day. So that would be an equivalent of 24 breaths or more of TYVASO given 4 times a day. We're obviously doing it in only 2 to 4 breaths per session with a very quick time to set up. There's very little cleaning, you only clean at the end of the day. So a bit what I like to call a game changer, really completely changes the delivery profile of inhaled treprostinil, both to be flexible therapeutically in terms of dose and also in terms of ease of administration.

Then as Rajeev said, we have 4 capsule strengths that will accommodate these escalating doses. So -- and as I mentioned, those are being prepped now for launch. So we will be ready full force when we launch the product to initiate patients on therapy, to transition TYVASO patients as well as to have hospital supply if needed. So again really working hard to focus all our attention on the launch of YUTREPIA and blessed with the product profile that the product ports. Thanks for the question.

## Operator

There are no further questions at this time. Mr. Jeffs, I'll turn the call back to you.

## A - Roger Jeffs {BIO 2018787 <GO>}

Thank you, Angela [ph]. I'd like to thank everyone for joining us on the call today. We absolutely appreciate your continued interest in Liquidia, and we'll certainly update you on our progress throughout the year. Thank you for calling. Have a nice day. Bye, bye.

FINAL

## Operator

This concludes today's conference. You may now disconnect.

*This transcript may not be 100 percent accurate and may contain misspellings and other inaccuracies. This transcript is provided "as is", without express or implied warranties of any kind. Bloomberg retains all rights to this transcript and provides it solely for your personal, non-commercial use. Bloomberg, its suppliers and third-party agents shall have no liability for errors in this transcript or for lost profits, losses, or direct, indirect, incidental, consequential, special or punitive damages in connection with the furnishing, performance or use of such transcript. Neither the information nor any opinion expressed in this transcript constitutes a solicitation of the purchase or sale of securities or commodities. Any opinion expressed in the transcript does not necessarily reflect the views of Bloomberg LP. © COPYRIGHT 2022, BLOOMBERG LP. All rights reserved. Any reproduction, redistribution or retransmission is expressly prohibited.*

Bloomberg Transcript