IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 20-755-RGA-JLH |
| LIQUIDIA TECHNOLOGIES, INC., | ) ) | |
| Defendant. | ) ) | |

**LIQUIDIA'S OPENING BRIEF IN SUPPORT OF MOTION FOR A STAY
OF ENFORCEMENT OF PARAGRAPH 4 OF THE COURT'S
FINAL JUDGMENT PENDING APPEAL**

OF COUNSEL:
Sanya Sukduang
Jonathan Davies
Douglas W. Cheek
Adam Pivovar
Brittany Cazakoff
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202) 842-7800

Erik Milch
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5640
(703) 546-8000

Ivor Elrifi
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant Liquidia
Technologies, Inc*

Deepa Kannappan
Lauren Krickl
Kyung Taeck Minn
C<small>OOLEY</small> <small>LLP</small>
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Dated: September 9, 2022

I.      Introduction.................................................................................................................. 1

II.     Factual Background ....................................................................................................... 2

III.    Argument ...................................................................................................................... 4

A.      The Federal Circuit Is Likely to Affirm the PTAB's Decision Invalidating the '793 Patent
        ...................................................................................................................................... 5

B.      Liquidia Will Be Irreparably Harmed Absent a Stay...................................................... 8

C.      Staying Paragraph 4 of the Court's Final Judgment Would Not Substantially Injure UTC
        .................................................................................................................................... 10

D.      Stay of Judgment Favors the Public Interest................................................................. 14

IV.     Conclusion ................................................................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AgroFresh Inc. v. Essentiv LLC,*
  No. 16-CV-662, 2019 WL 2327654 (D. Del. May 31, 2019)................................................. 11

*Arista Networks, Inc. v. Cisco Sys., Inc.,*
  908 F.3d 792 (Fed. Cir. 2018)................................................................................................ 3

*Bayer Schera Pharma AG v. Sandoz, Inc.,*
  No. 08-CV-03710, 2010 WL 3447906 (S.D.N.Y. Sept. 2, 2010)........................................... 13

*BTG Int'l Ltd. v. Amneal Pharms. LLC,*
  No. 2019-1147 (Fed. Cir. Mar. 14, 2019) ............................................................................. 10

*Commil USA, LLC v. Cisco Sys., Inc.,*
  575 U.S. 632 (2015).......................................................................................................... 2, 9

*E.I. Dupont de Nemours & Co. v. Phillips Petroleum Co.,*
  835 F.2d 277 (Fed. Cir. 1987)................................................................................................ 8

*Redline Detection, LLC v. Star Envirotech., Inc.,*
  811 F.3d 435 (Fed. Cir. 2015)................................................................................................ 6

*Roland Mach. Co. v. Dresser Indus., Inc.,*
  749 F.2d 380 (7th Cir. 1984) ................................................................................................. 5

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.,*
  897 F.2d 511 (Fed. Cir. 1990).................................................................................... passim

**Statutes**

35 U.S.C. § 315(e)(2)............................................................................................................... 4

**Other Authorities**

H.R. Rep. No. 98-857, Part II at 9 (1984)................................................................................. 12

**Regulations**

37 C.F.R. § 42.71(d) ............................................................................................................... 6

37 C.F.R. § 90.3(b)(1)............................................................................................................. 9

# I.  INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 62, Liquidia seeks a stay of enforcement of Paragraph 4 of the Court's Final Judgment setting the effective date of final approval of Liquidia's NDA to be "not earlier than the expiration date" of U.S. Patent No. 10,716,793 ("the '793 patent"). (D.I. 436.)  On July 19, 2022, the U.S. Patent Trial and Appeal Board ("PTAB") found all claims of the '793 patent unpatentable as obvious over the prior art under 35 U.S.C. § 103.  (D.I. 425, Ex. 1 ("'793 FWD").)  The Court, here, reached a different conclusion concerning the validity of the '793 patent under 35 U.S.C. § 112.  However, weighing the factors considered in deciding motions to stay pursuant to Federal Rule of Civil Procedure 62, an immediate stay of enforcement of Paragraph 4 of the Court's Final Judgment is warranted before and during the pendency of appeal of the PTAB's '793 FWD and this Court's opinion of validity and infringement of the '793 patent. Liquidia is likely to succeed on appeal, and both the equities of the parties and the public interest favor a stay.

First, Liquidia is likely to succeed on the merits in any appeal of the PTAB's '793 FWD of invalidity of the '793 patent because the '793 FWD is well-reasoned and factually supported by an extensive record, the Federal Circuit has affirmed the PTAB on all issues in roughly 73% of all IPR appeals since the AIA was passed, and the sole issue UTC raised in its IPR rehearing request (challenging only one of several independent grounds the PTAB relied on to confirm the "prior art" status of the cited references) cannot alter the PTAB's finding of invalidity.  Additionally, due to the likelihood of Liquidia prevailing in any appeal by UTC of the '793 FWD, Liquidia would also be likely to ultimately succeed in any appeal on non-infringement of the '793 patent as Liquidia cannot be liable for infringement of an invalid patent.  *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015); *see also* D.I. 433 at 11 n.7.

Second, due to UTC's ability to delay final resolution of the '793 IPR, Liquidia will be irreparably harmed without a stay. YUTREPIA™ (formerly known as LIQ861) is Liquidia's flagship product, taking years to develop at considerable expense, and Liquidia will suffer irreparable loss of goodwill with physicians and patients if they cannot gain access to YUTREPIA™ despite the invalidity of the '793 patent.

Third, UTC's allegations of potential loss of market share and loss of consumer goodwill are speculative, at best, contradicted by their own public statements, and belied by the absence of any automatic substitution and resulting precipitous loss of market share because YUTREPIA™ is not a generic version of Tyvaso®.

Finally, as discussed herein and reflected in emails from PAH patients and caregivers, the public interest favors a stay because entry of Liquidia's YUTREPIA™ product into the market would offer pulmonary hypertension patients a new and improved product to treat this chronic, life-threatening disease, and promote competition, ultimately resulting in reduced patient costs. For the reasons presented herein, Liquidia's requested stay of enforcement of Paragraph 4 of the Court's Final Judgment should be granted.[1]

## II.    FACTUAL BACKGROUND

Liquidia filed its NDA for YUTREPIA™ (LIQ861) on January 24, 2020. (D.I. 322-1, Ex. 1 at ¶ 2.) *After* Liquidia filed its NDA, and *after* UTC first initiated this lawsuit, the '793 patent issued on July 21, 2020, based on an application filed January 31, 2020, and UTC added it to this case shortly thereafter. (*Id.* at ¶ 35; D.I. 16.) On August 26, 2020, UTC moved to dismiss

---

[1] Pursuant to D. Del. LR 7.1.1, counsel for Liquidia conducted a telephonic meet and confer with counsel for UTC on September 7, 2022 regarding the instant motion, and the parties were unable to reach agreement.

Liquidia's invalidity defenses with respect to the '793 patent based on assignor estoppel (D.I. 28), which the Court denied, noting "determination that Defendant is in privity with a named inventor of the '793 patent will require a fact intensive evaluation of their relationship and a balancing of the equities." (D.I. 45 at 3.) Despite the Court's denial, UTC continued to pursue its assignor estoppel defense and included this theory in its pre-trial submissions, indicating its intent to present this issue at trial. (D.I. 322, Ex. 4 at ¶¶ 136-140.)[2]

Because of UTC's assignor estoppel allegations, Liquidia was faced with the risk of being unable to present any invalidity case to this Court. As such, and because assignor estoppel does not apply to IPR proceedings, Liquidia filed IPR2021-00406 with respect to the '793 patent on January 7, 2021. *Arista Networks, Inc. v. Cisco Sys., Inc.*, 908 F.3d 792, 804 (Fed. Cir. 2018) ("[A]ssignor estoppel has no place in IPR proceedings."). The IPR was instituted on August 11, 2021, with the '793 FWD expected in August 2022, after the trial here. ('793 FWD at 2.)

Expecting the '793 FWD before the Court's decision, UTC contended in the Pre-Trial Order that IPR estoppel would apply to the '793 patent before issuance of the '793 FWD. (D.I. 322-1, Ex. 4 at ¶ 146.) During the pretrial conference, the Court indicated that it would wait for the PTAB decision and apply IPR estoppel even if Liquidia raised obviousness of the '793 patent at trial. (Ex. A (Pretrial Conference Transcript) at 10-11 ("I have zero interest in racing the PTAB to a decision here. . . . [Y]ou [Liquidia] can put your case on. There's no guarantee that I will actually decide it. But, and to the extent you have, of course, non, you know, 112 or defenses or something else, you can obviously put them on because the PTAB won't decide because they're not barred and PTAB won't rule on those.").) Following the Court's guidance, Liquidia pursued

---

[2] UTC did not ultimately try the issue of assignor estoppel.

only written description and enablement invalidity theories with respect to the '793 patent at trial to avoid wasting the Court's and parties' time on obviousness arguments that the Court would eventually preclude due to IPR estoppel. 35 U.S.C. § 315(e)(2).[3] Despite invalidating the claims of the '793 patent at the PTAB, Liquidia now faces an inequitable outcome precipitated by UTC's threat of an unfounded assignor estoppel defense—an order staying final FDA approval of YUTREPIA™ until 2027, when the belatedly issued and already invalidated '793 patent claims expire. (D.I. 436 at ¶ 4.) Not only, as discussed herein, do the factors weigh in favor of granting Liquidia's requested stay, but staying enforcement of Paragraph 4 of the Court's Final Judgment through appeal would promote innovation, grant patients access to a life-saving therapy, and prevent the continued monopolization of the inhaled treprostinil market based on an invalid patent.

## III. ARGUMENT

This Court should grant Liquidia's motion to stay enforcement of Paragraph 4 of the Final Judgment because Liquidia satisfies the four-factor test: (1) Liquidia is likely to succeed on the merits on appeal; (2) Liquidia will be irreparably harmed without a stay; (3) UTC will not be substantially injured by the stay of enforcement; and (4) the public interest supports a stay. *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990). Each factor need not be given equal weight, and the strength of one factor may diminish the showing necessary for another. *Id*. at 512-13 ("The more likely the [movant] is to win, the less heavily need the balance of harms weigh in his favor; the less likely [the movant] is to win, the more need it weigh in his favor.") (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387-88 (7th Cir. 1984)). The "four stay factors can effectively merge…[in] assess[ing] movant's chances for

---

[3] The Court applied IPR estoppel to the '901 patent, indicating estoppel applies to both successful and unsuccessful IPRs. (D.I. 335 at 1-2.)

success on appeal and weighs the equities as they affect the parties and the public." *Id*. at 513 (citations and quotation marks omitted).

Further, the four-factor test the Court applies in assessing a stay of judgment is different from the three-factor test the Court previously applied when deciding whether to stay its decision on the '793 patent. (*See* D.I. 432.) There, two of the three factors pertained to simplifying issues for trial and whether a trial date had been set. (*Id.*) As the Court noted, those two factors "heavily favor denial of the stay[,]" as trial had already been completed. (*Id.*) Here, simplification of issues and timing of trial are not considered. Further, the four-factor test also requires the Court to balance the equities between the parties as well as the public interest in granting the stay, considerations not previously evaluated in the Court's prior decision.

## A. THE FEDERAL CIRCUIT IS LIKELY TO AFFIRM THE PTAB'S DECISION INVALIDATING THE '793 PATENT

The PTAB's '793 FWD finding all claims of the '793 patent obvious over U.S. Patent No. 6,521,212 ("the '212 patent") in combination with Voswinckel JESC and Voswinckel JAHA, is based on well-reasoned factual findings reached after considering extensive briefing, expert declarations and depositions, and oral argument. (*See generally* '793 FWD; Ex. B ('212 Patent); Ex. C (Voswinckel JESC); Ex. D (Voswinckel JAHA)). And on appeal, the Federal Circuit reviews factual findings to determine if they were supported by substantial evidence. *Redline Detection, LLC v. Star Envirotech., Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015) ("If the evidence in [the] record will support several reasonable but contradictory conclusions, we will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative.") (citation omitted). That Liquidia prevailed before the PTAB is alone sufficient to support Liquidia's likelihood of success on appeal.

5

The strength of the '793 FWD, and thus Liquidia's likelihood of success on appeal, is further evidenced by UTC's request for rehearing. In its request for rehearing, UTC was required to "specifically identify **all matters** the party believes the Board misapprehended or overlooked, and the place where each matter was previously addressed in a motion, an opposition, a reply, or a sur-reply." 37 C.F.R. § 42.71(d) (emphasis added.) UTC did not challenge the PTAB's fact-finding or other substantive issues addressing the issue of obviousness. That is, UTC did not challenge the PTAB's findings and conclusions regarding what the prior art disclosed to a POSA, the motivation to combine the prior art with a reasonable expectation of success, nor the PTAB's assessment of secondary considerations. Instead, UTC identified only one matter it contends the PTAB overlooked or misapprehended in the '793 FWD—the prior art status of the two abstracts relied on by Liquidia: Voswinckel JESC and Voswinckel JAHA. (*See generally* Patent Owner's Request for Rehearing, IPR2021-00406, Paper 79 (P.T.A.B. Aug. 18, 2022) (Ex. E).)

Even there, however, UTC only challenged one of three independent reasons the PTAB relied upon to confirm the public accessibility of the cited prior art. The PTAB found both abstracts were published (and thus publicly available) in major pulmonary hypertension journals (Journal of the European Society of Cardiology and Journal of American Heart Association) over a year before the critical date (May 15, 2006). ('793 FWD at 3 nn.4-5.) The PTAB also held that the abstracts were publicly presented at major pulmonary hypertension conferences (European Society of Cardiology Congress and Scientific Sessions of the American Heart Association) in 2004. (*Id.* at 9.) Finally, the PTAB found that both abstracts were expressly cited in "research aid" publications available before May 2006, further establishing the public availability of the abstracts before the critical date. (*Id*. at 10-11 (discussing "research aids" citing Voswinckel JESC and Voswinckel JAHA).) This third and final ground for finding public accessibility (research

aids) is the only basis for UTC's rehearing request and, as such, even if considered by the PTAB, will not change the outcome of the '793 FWD. (*See generally* Ex. E.) Nonetheless, the PTAB's factual findings concerning the public accessibility of the two Voswinckel abstracts are well-supported by substantial evidence. ('793 FWD at 8-12.)

Liquidia's likelihood of success on any appeal of the '793 FWD is further supported by recent statistics from the Federal Circuit. (Ex. I, Daniel F. Klodowski et al., *Federal Circuit PTAB Appeal Statistics Through April 30, 2022* (May 31, 2022).) In IPR appeals through April 30, 2022, the Federal Circuit affirmed the PTAB on every issue in 708 (72.76%) cases. (*Id.*) In sum, Liquidia is very likely to prevail in any UTC appeal of the '793 FWD.

Courts in similar positions, where a PTO proceeding implicated the moving party's likelihood of success, have granted motions to stay entry of judgment. *Standard Havens* and *DuPont* are highly informative where conflicting views on the validity of an asserted patent between the district court and PTO warranted stays of injunctions on appeal. In *Standard Havens*, after the district court entered judgment in favor of the patent holder, the alleged infringer appealed and moved for a stay pending appeal. *Standard Havens*, 897 F.2d at 511. Because the Commissioner ordered reexamination of the asserted patent during pendency of the litigation, the Federal Circuit found that the accused infringer met the likelihood of success standard and that the balance of the harms tipped in its favor. *Id*. at 514-15. In *DuPont*, the reissue application for the asserted patent was rejected by the Patent Office, but the asserted patent was found valid and infringed by the district court. *E.I. Dupont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278-79 (Fed. Cir. 1987). Because of the "substantial legal questions" raised by the conflict between the Patent Office and district court, the Federal Circuit issued a stay of the permanent injunction pending appeal. *Id*. Here, consistent with Federal Circuit case law, the different

opinions between this Court and the PTAB concerning the validity of the '793 patent support the grant of a stay of enforcement of judgment.[4] These decisions further confirm that a final decision from a patent office proceeding is not needed to assess likelihood of success on appeal—collateral estoppel is not part of and not necessary for the Court's evaluation of the four-factor test here.

Finally, due to Liquidia's likelihood of success in any UTC '793 FWD appeal, Liquidia is also likely to succeed on appeal of this Court's opinion on infringement of the '793 patent. This is because if the '793 FWD is affirmed on appeal, rendering final the invalidity of that patent, Liquidia cannot be liable for induced infringement.[5] *See Commil*, 575 U.S. at 644.

## B.    LIQUIDIA WILL BE IRREPARABLY HARMED ABSENT A STAY

Absent a stay, Liquidia will be irreparably harmed because Liquidia's first NDA product, YUTREPIA™, will not enter the market until at least all appeals of the '793 IPR have been exhausted, a timeline UTC controls. *Standard Havens*, 897 F.2d at 512 (listing "whether the applicant will be irreparably injured absent a stay" as factor to stay judgment). YUTREPIA™ is Liquidia's lead investigational product, developed using its proprietary PRINT® technology and received tentative approval from the FDA on November 8, 2021.[6] Liquidia is a small biopharmaceutical company based in North Carolina consisting of roughly 50 employees.[7] As such, being able to market its YUTREPIA™ product is especially urgent for a small company like Liquidia. In contrast, UTC has multiple products on the market and receives over a billion dollars

---

[4] Granting a stay of judgment would not contravene this Court's trial opinion because the Court addressed different issues of validity than those raised before the PTAB.

[5] As previously presented, Liquidia does not concede that a final decision of invalidity on appeal from the PTAB is required to negate the specific intent element of induced infringement under 35 U.S.C. § 271(b).

[6] Ex. J, Liquidia Corporation, Form 10-K (Mar. 17, 2022) at 4, 7.

[7] *Id*. at 14.

in yearly revenue from its treprostinil drug estate.[8]  Further, Liquidia's goodwill with prescribing doctors and patients will be irreparably harmed in the absence of stay of enforcement of Paragraph 4 of this Court's Judgment because of their expectation and desire to use this life-saving drug.  In other words, Liquidia stands to suffer a much greater injury—one that cannot be adequately quantified or compensated—if a stay is not granted than UTC would suffer if a stay is granted.

The irreparable harm suffered by Liquidia is further exacerbated by UTC's efforts to prolong the '793 FWD appeal.  UTC filed its request for rehearing of the PTAB's '793 FWD, a request that cannot impact the PTAB's ultimate decision on invalidity, on August 18, 2022, and a decision from the PTAB has not yet issued.[9]  Although the PTAB "envisions" that requests for rehearing will be decided in "approximately one month[,]"[10] the one-month goal is rarely achieved because "[n]o statute or rule establishes a time limit for the Board to decide a request for rehearing."  (Ex. M, Tom Owens, *PTAB Usually Misses the One-Month Pendency Goal for Requests for Rehearing* (Oct. 6, 2016).)[11]  The Federal Circuit has expressed significant frustration over the PTAB's delay in deciding rehearing requests.[12]

---

[8] Ex. K, United Therapeutics Corporation, Form 10-K (Feb. 24, 2022) at 52.

[9] If the rehearing is denied, UTC will have 63 days from the PTAB's decision on rehearing to file its notice of appeal.  37 C.F.R. § 90.3(b)(1).

[10] Ex. L, PTAB Consolidated Trial Practice Guide (Nov. 2019) at 90.

[11] Mansinghani et al. found that in 2017, the average time for the PTAB to issue a rehearing decision after a FWD was 117.63 days from the rehearing request.  (*See* Ex. G, Roshan S. Mansinghani et al., *Tracking Successful Requests for Rehearing in Inter Partes Review*, 11 LANDSLIDE 39, 40 (2018).)

[12] Ex. H, Oral Argument Transcript, *BTG Int'l Ltd. v. Amneal Pharms. LLC*, No. 2019-1147 (Fed. Cir. Mar. 14, 2019) at 32:23-33:8 ("The Board issued all three IPRs in the final written decision in January of 2018. . . . I can think of [no] good reason the Board lollygagged and took 10 full months before it issued its—the [re]hearing decisions in December of 2018."), 34:22-35:1 ("Wouldn't that seem to significantly undermine Congress' goal to have an expeditious and fully resolved IPR proceeding within the PTO to avoid unnecessary duplicative district court litigation?").

The IPR proceeding for U.S. Patent No. 9,604,901, which UTC previously asserted against Liquidia (and then stipulated to non-infringement) in this litigation, demonstrates the delay that Liquidia will have to suffer should this Court not stay enforcement of Paragraph 4 of the Court's Final Judgment. In the '901 IPR, the PTAB issued its FWD on October 8, 2021. (D.I. 205.) Thereafter, UTC filed a request for rehearing on November 8, 2021, and the Board denied UTC's request for rehearing June 14, 2022—i.e., over 7 months after the FWD issued. *Liquidia Technologies, Inc. v. United Therapeutics Corp.*, IPR2020-00770, Paper 49 (P.T.A.B. June 14, 2022) (Ex. F). It was not until August 15, 2022 that UTC filed its notice of appeal to the Federal Circuit for the PTAB's '901 IPR decision. UTC was able to prolong filing its appeal to the Federal Circuit in the '901 IPR for nearly a year after the PTAB's FWD and appears to be pursuing the same delay strategy for the '793 patent, whether it is likely to succeed or not. As a result, UTC would achieve its goal of extending its exclusivity over the inhaled treprostinil market based on an invalid patent, and irreparably harm Liquidia.

### C. STAYING PARAGRAPH 4 OF THE COURT'S FINAL JUDGMENT WOULD NOT SUBSTANTIALLY INJURE UTC

UTC alleged in its August 26, 2022 letter that a stay of issuance of the Court's decision on the '793 patent would result in "potential for loss of market share and an erosion of goodwill." (D.I. 431 at 2 (quoting *AgroFresh Inc. v. Essentiv LLC*, No. 16-CV-662, 2019 WL 2327654, at *3 (D. Del. May 31, 2019)).) With respect to the "potential for loss of market share," UTC's position ignores the fact that YUTREPIA™ is not a generic drug. Unlike traditional generic drugs, pharmacists will not automatically substitute Liquidia's YUTREPIA™ for UTC's Tyvaso® or Remodulin®. And even if YUTREPIA™ was a generic of UTC's Tyvaso® or Remodulin®, it is speculative as to whether the requested stay would result in a loss of sales. In discussing the launch

of generic competition to UTC's Remodulin® product, UTC has repeatedly touted the lack of an impact on UTC's sales. During UTC's March 31, 2021 JPMorgan Napa Valley Forum, its Chief Medical Officer, Gil Golden, stated that even upon entry of generic Remodulin®, "there's been essentially no impact of the generic Remodulin on current Remodulin prescriptions." (Ex. U at 5 (highlighted portion).) Going even further, Michael Benkowitz, UTC's President and COO stated in November 2021 that UTC continues "to be very pleased with the performance and resilience of Remodulin over the past several years as generic competition has entered the market[,]" going so far as to point out that even with generic Remodulin, "we see no change there. And in fact, in some months, some quarters, we've actually seen some uptick." (Ex. V at 3, 8 (highlighted portion).) Clearly, even upon generic competition, UTC does not foretell a loss of market share.

Additionally, UTC has made public statements specific to YUTREPIA™ that run counter to their allegations of loss of market share. For instance, when discussing the potential launch of Liquidia's YUTREPIA™, Mr. Benkowitz noted that it was not a "zero-sum game," but instead there are "tens of thousands of patients that are out there for [UTC] and other competitors." (*Id.* at 7 (highlighted portion).) At the December 2021 JEF Virtual Denver Health Care Conference, Jefferies discussed Q4 2021 expectations with Michael Benkowitz (President & COO), James Edgemond (CFO & Treasurer), and Dewey Steadman (Head of IR), and UTC confirmed, with respect to YUTREPIA™/LIQ861, that "there is room in the space for more than one competitor." (Ex. W at 1 (highlighted portion).) These public statements do not warn of a potential loss of market share, but instead indicate the market is large enough for Liquidia's entry. Accordingly, any argument by UTC that it will suffer significant market share or revenue loss if Liquidia's stay is granted is, therefore, incorrect at worse, speculative at best, and inconsistent with their own public statements.

11

Finally, UTC's potential loss of market share argument overlooks tactics it used to build its market share for its suite of treprostinil products. In particular, the Department of Justice initiated a "Kickback" investigation against UTC and its use of a 501(c)(3) organization from 2010-2014[13] to reimburse Medicare patients for the co-pays they incurred purchasing UTC's treprostinil products, which is a prohibited act. (Ex. T.) Acting United States Attorney William D. Weinreb stated that "UT used a third party to do exactly what it knew it could not lawfully do itself," and "the third-party foundation used UT's money to cover the co-pays of patients taking UT drugs. UT's payments to the foundation were not charity for PAH patients generally, but rather were a way to funnel money to patients taking UT drugs." (*Id.*) UTC settled the DOJ claim for $210M. (*Id.*) Because there is no non-UTC inhaled treprostinil therapy on the market today, UTC has been able to maintain this previously developed market share. As such, there is no basis for UTC to assert that it will suffer injury if the Court stays enforcement of Paragraph 4 of the Court's Final Judgment.

To the extent there is any loss of market share or revenue (*i.e.*, lost sales), UTC's loss can be readily compensated by monetary damages. In the context of the 30-month stay, Congress recognized that "in the event that the FDA approves a generic because of the expiration [of the stay] without a court decision, and it is later determined that the patent is valid" that the "patent holder is nonetheless protected" because "the patent owner may still recover damages from the generic [manufacturer]." *Bayer Schera Pharma AG v. Sandoz, Inc.*, No. 08-CV-03710, 2010 WL 3447906, at *3 (S.D.N.Y. Sept. 2, 2010) (quoting H.R. Rep. No. 98-857, Part II at 9 (1984)). That rationale applies equally if not more so here because UTC is "nonetheless protected" even in the

---

[13] Tyvaso® was FDA approved in 2009.

unlikely event that UTC succeeds in an appeal of the '793 FWD at the Federal Circuit. And if monetary damages can protect a company like UTC from generic entry and automatic substitution, that "protection" is even greater here where YUTREPIA™ is a branded product without automatic substitution.

UTC's contention that it will suffer a loss in consumer goodwill also overlooks that Liquidia's YUTREPIA™ product materially differs from UTC's Tyvaso® product. Specifically, Liquidia's YUTREPIA™ product represents an improvement to patient care, utilizing a different route of administration (dry powder inhaler) and proprietary formulation developed using Liquidia's PRINT® process. (Ex. N, Tr. 711:12-20 (Hill); Tr. 717:25-718:25, 722:10-19 (Gonda).) Because consumers will not mistake Liquidia's YUTREPIA™ for UTC's Tyvaso® or Remodulin® products, and Liquidia's product represents an *improvement* for patients, UTC does not stand to suffer an erosion of consumer goodwill from staying entry of judgment with respect to the '793 patent. Further, in public statements, UTC has recognized the "brand loyalty" for its products, specifically noting with respect to Remodulin® that, even in light of generic competition, UTC had "growth ahead of [it] over the long term with Remodulin." (Ex. X at 8 (highlighted portion).) And to the extent UTC did not lose consumer goodwill in light of generic competition and the DOJ kickback investigation and subsequent settlement, it is unlikely that granting Liquidia's requested stay would significantly impact UTC's consumer goodwill. And, as discussed above, the loss of consumer goodwill is starker for Liquidia than UTC—UTC is the market incumbent and has held that position for more than a decade with multiple treprostinil products.

On balance, Liquidia will suffer more immediate and non-compensable harm from the denial of a stay than UTC will suffer from the grant of a stay, and these factors weigh in favor of

granting the requested stay.

### D.   STAY OF JUDGMENT FAVORS THE PUBLIC INTEREST

Public interest favors Liquidia's motion to stay.  A stay of enforcement of Paragraph 4 of the Court's Final Judgment would benefit the public by providing a new and improved product for treatment of pulmonary hypertension with inhaled treprostinil.  In recent studies, researchers found that "[t]he favorable safety profile and patient preference ratings as well as the exploratory efficacy analyses suggest that the profile of Yutrepia represents an important advance in inhaled prostacyclin therapy for patients with PAH either in the setting of transitioning from current nebulized prostacyclin therapy or the initiation of therapy."  (Ex. O, Nicholas S. Hill et al., *INSPIRE: Safety and tolerability of inhaled Yutrepia (treprostinil) in pulmonary arterial hypertension (PAH)*, 12 PULMONARY CIRCULATION e12119, *9 (2022) ("The administration of Yutrepia with an easy-to-use dry-powder inhaler offers clinicians an inhaled PAH therapy that may be preferred by many patients based on its added convenience and potential to facilitate a more active lifestyle.").)  Additionally, in assessing Quality of Life (QoL) in PAH patients who either started on YUTREPIA[TM] (naïve) or transitioned from Tyvaso®, clinically meaningful physical and emotional improvements in QoL were seen based on the Minnesota Living With Heart Failure Questionnaire.  (Ex. P (INSPIRE Trial Poster).)  The authors concluded that "[t]reatment with LIQ861 may help improve HRQoL, which has been shown to be impaired in PAH patients."  (*Id.*)  Because Liquidia's YUTREPIA[TM] product is an improvement, both therapeutically and in QoL, for treatment of pulmonary hypertension (and not just a generic copy), the public interest is served by a stay of enforcement of Paragraph 4 of the Court's Final Judgment. Indeed, granting the stay would not only benefit PAH patients clinically, but also ultimately lead to lower drug costs resulting from having therapeutic options that are not controlled by a single

14

company.

The interested public has expressed their desire for YUTREPIA™.  Given its size, the PAH patient community is well-informed on the availability of new treatments for their disease and are advocating for access to YUTREPIA™ to "'live' a quality life," because they "have very few [drugs] and not every one works for every patient."  (Ex. Y.)  One PAH patient put the issue into perspective in terms of the number of expected deaths due to PAH that may occur during the pendency of the appeals.  (Ex. Q ("There are approximately 40,000 people in the U.S. with PAH.  The average three-year death rate of this disease is 21%.  This means that in the three years that Yutrepia will have been caught up in litigation, 8,400 people will die from PAH.").)  And a nurse and PH Support Group Leader treating PH patients for 20 years wants access to YUTREPIA™ for her patients "as the more treatment options available, the more it brings HOPE to these patients that are dealing with this horrible disease."  (Ex. Z.)  These communications from PAH patients and caregivers demonstrate the strong public interest in obtaining access to YUTREPIA™ because of the drug's ability to improve patient treatment, quality of life, and convenience over existing therapies and further supports a stay.[14]

Further, to the extent UTC contends that enforcing the invalid '793 patent during the pendency of the IPR appeal promotes innovation, UTC has already held exclusive patent rights over treatment of pulmonary hypertension with inhaled treprostinil for the past two decades.[15]  UTC first patented treatment of pulmonary hypertension with an inhaled powder of treprostinil

---

[14] UTC touts that it is the "first publicly-traded biotech or pharmaceutical company to take the form of a public benefit corporation (PBC)[,]" which is designed to benefit the public in some way.  (*See* Ex. R.)  By seeking to enforce an injunction on Liquidia based on a patent that has already been found to be invalid, UTC's actions run counter to the PBC mission it presents publicly.

[15] UTC first acquired the patents "covering the use of treprostinil for PAH" from GlaxoSmithKline PLC in January 1997.  (Ex. S, United Therapeutics Corporation, Form 10-K (Feb. 25, 2016) at 15.)

with the '212 patent. ('212 Patent (Ex. B) at claims 6 and 9 ("6. A method for treating pulmonary hypertension in a mammal comprising delivering to said mammal an effective amount of UT-15 or its pharmaceutically acceptable salt or ester by inhalation." "9. The method of claim 6, wherein said UT-15 is inhaled in powder form comprising particles less than 10 micrometers in diameter.").)[16] The '212 patent expired in March 2019—approximately 2.5 years ago. To date, no treatment of pulmonary hypertension with inhaled treprostinil has been finally approved by any company other than UTC. The application leading to the '793 patent was filed *after* Liquidia filed its NDA for YUTREPIA™ and the PTAB has already held every claim of the '793 patent unpatentable as obvious. Thus, protecting the '793 patent during the pendency of the '793 FWD appeal does nothing more than quell innovation and withhold Liquidia's life-saving drug from the pulmonary hypertension patient population.

## IV.   CONCLUSION

For at least the reasons set forth above, Liquidia respectfully requests that this Court stay enforcement of Paragraph 4 of the Court's Final Judgment during pendency of the '793 patent appeals. Liquidia further requests that, during the pendency of this stay, no order shall be provided to the U.S. Food and Drug Administration setting the approval date of Liquidia's NDA for not earlier than the expiration date of the '793 patent.

---

[16] UTC's '212 patent was one of the primary references relied upon by the PTAB in rendering the claims of the '793 patent invalid for obviousness. ('793 FWD at 46.)

Respectfully submitted,

/s/ Nathan R. Hoeschen
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant Liquidia*
*Technologies, Inc*

OF COUNSEL:
Sanya Sukduang
Jonathan Davies
Douglas W. Cheek
Adam Pivovar
Brittany Cazakoff
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202) 842-7800

Erik Milch
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5640
(703) 546-8000

Ivor Elrifi
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Deepa Kannappan
Lauren Krickl
Kyung Taeck Minn
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Dated: September 9, 2022