IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-755 (RGA) (JLH) |
| | ) | |
| LIQUIDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## UTC'S ANSWERING BRIEF IN OPPOSITION TO LIQUIDIA'S MOTION FOR STAY

OF COUNSEL:

William C. Jackson
Eric Levi
GOODWIN PROCTER LLP
1900 N Street NW
Washington, DC 20036
(202) 346-4216

Douglas H. Carsten
Mandy H. Kim
Arthur Dykhuis
Jiaxiao Zhang
Katherine Pappas
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA 92612
(949) 851-0633

Ian B. Brooks
Adam W. Burrowbridge
Joshua Revilla
Timothy M. Dunker
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8000

September 23, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff United Therapeutics Corporation*

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     UTC IS ENTITLED TO ITS NON-DISCRETIONARY REMEDY UNDER
        SECTION 271(E)(4)(A) ....................................................................................... 3

        A.      Paragraph 4 of the Judgment Is Required By 35 U.S.C. § 271(e)(4)(A) and
                Cannot Be Stayed Under Rule 62 .......................................................................... 4

        B.      Rule 62 Does Not Permit a Stay Pending the Outcome of an Unrelated,
                Hypothetical Appeal ................................................................................................ 8

III.    THE TRADITIONAL STAY FACTORS WEIGH AGAINST A STAY ......................... 9

        A.      Liquidia Failed to Show a Likelihood of Success on Appeal from This
                Court's Final Judgment ........................................................................................... 9

                1.      Liquidia argued likelihood of success for the wrong decision .................. 9

                2.      Liquidia has not made a "strong showing" that it will prevail in the
                        IPR ....................................................................................................... 12

        B.      Liquidia Will Not Be Irreparably Harmed Absent a Stay .................................... 13

        C.      UTC Will Be Substantially Injured by a Stay ...................................................... 15

        D.      The Public Interest Favors Denying a Stay .......................................................... 16

IV.     CONCLUSION ................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Labs. v. Sandoz, Inc.*,
544 F.3d 1341 (Fed. Cir. 2008)............................................................................................17

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
2014 WL 1369721 (D. Del. Apr. 7, 2014)...........................................................................16

*Camelbak Prods., LLC v. Ignite USA, LLC*,
2016 WL 7047969 (P.T.A.B. Sept. 30, 2016) .....................................................................10

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015)..............................................................................................................11

*E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*,
835 F.2d 277 (Fed. Cir. 1987).................................................................................................6

*Eli Lilly & Co. v. Medtronic, Inc.*,
1988 WL 281578 (E.D. Pa. Apr. 15, 1988) .........................................................................18

*Endo Pharms., Inc. v. Amneal Pharms., LLC*,
2016 WL 1732751 (S.D.N.Y. Apr. 29, 2016)..................................................................2, 16

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988).............................................................................................10

*Graff v. City of Chicago*,
800 F. Supp. 584 (N.D. Ill. 1992) .........................................................................................10

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
397 F. Supp. 2d 537 (D. Del. 2005)......................................................................................17

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001).............................................................................................10

*Janssen Pharmaceutica, N.V. v. Apotex, Inc.*,
540 F.3d 1353 (Fed. Cir. 2008)..........................................................................................3, 17

*Kingdomware Techs., Inc. v. United States*,
579 U.S. 162 (2016)................................................................................................................4

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26 (1998)..................................................................................................................4

*In re Lister*,
    583 F.3d 1307 (Fed. Cir. 2009)..................................................................................12

*In re Magnum Oil Tools Int'l, Ltd.*,
    829 F.3d 1364 (Fed. Cir. 2016)..................................................................................13

*Mytee Prods. v. Harris Rsch.*,
    2010 WL 11509027 (S.D. Cal. June 25, 2010).........................................................10

*Nexans Inc. v. Belden Inc.*,
    2014 WL 651913 (D. Del. Feb .19, 2014) ................................................................16

*Novartis Pharms. Corp. v. Accord Healthcare Inc.*,
    2020 WL 8187586 (D. Del. Dec. 10, 2020)...............................................2, 14, 17

*In re Omeprazole Pat. Litig.*,
    536 F.3d 1361 (Fed. Cir. 2008)....................................................................................5

*Pfizer Inc. v. Apotex Inc.*,
    731 F. Supp. 2d 754 (N.D. Ill. 2010) ..........................................................................6

*Polymer Techs., Inc. v. Bridwell*,
    103 F.3d 970 (Fed. Cir. 1996).....................................................................................3

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
    2009 WL 2047635 (C.D. Cal. Jul. 8, 2009)..............................................................13

*Singleton v. Wulff*,
    428 U.S. 106 (1976)...................................................................................................10

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
    897 F.2d 511 (Fed. Cir. 1990)....................................................................6, 9, 11, 14

*Standard Havens Products, Inc. v. Gencor Industries, Inc.*,
    1990 WL 10024018 (Fed. Cir. Feb. 22, 1990)..........................................................11

*Sunoco Partners Mktg. & Terminals LP v. Powder Springs Logistics LLC*,
    2020 WL 3060458 (D. Del. Jun. 9, 2020) ................................................................15

*Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*,
    887 F.3d 1117 (Fed. Cir. 2018)...............................................................................4, 5

*Webster v. Toros*,
    No. 21-5040 (D.C. Cir. Sept. 20, 2022) ...................................................................13

*XY, LLC v. Trans Ova Genetics, L.C.*,
    890 F.3d 1282 (Fed. Cir. 2018)............................................................................11, 13

**Statutes**

35 U.S.C. § 141(c) ....................................................................................................13

35 U.S.C. § 271(e)(4)(A) ...............................................................................1, 4, 5, 14

35 U.S.C. § 271(e)(4)(B) ...............................................................................................1

35 U.S.C. § 311(b) ......................................................................................................12

35 U.S.C. § 318(b) ......................................................................................................13

35 U.S.C. § 319 ...........................................................................................................10

**Other Authorities**

21 C.F.R. § 314.107(b)(3)(iii) ...............................................................................1, 4, 6

21 C.F.R. § 314.107(b)(3)(iv) ...................................................................................1, 6

21 C.F.R. § 314.107(e)(1)(vi), (e)(2) ...........................................................................6

37 C.F.R. § 42.71(d) ...................................................................................................13

Fed. R. App. P. 8(a) ......................................................................................................8

Fed. R. Civ. P. 62(d) .............................................................................................1, 4, 8

I.     **INTRODUCTION**

Liquidia's request for a "stay of enforcement" of ¶ 4 of the final judgment (D.I. 436) should be denied as inconsistent with the statute, federal regulations, and rules.

First, there is no authority holding that the order required by 35 U.S.C. § 271(e)(4)(A)—as opposed to an equitable injunction—can be stayed pending appeal. As this Court recognized shortly before Liquidia's motion, § 271(e)(4)(A) creates a "non-discretionary" remedy UTC is entitled by statute. D.I. 432 at 1. The statute is clear that, upon a finding of infringement in such a case, "the court *shall order* the effective date of any approval of the drug … involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed[.]" 35 U.S.C. § 271(e)(4)(A) (emphasis added). This statutory remedy is distinct from the "injunctive relief [that] may be granted" under the statute. 35 U.S.C. § 271(e)(4)(B). The federal regulations are consistent, specifying that the FDA may not approve the NDA for a product found to infringe unless and until the Federal Circuit issues a mandate finding invalidity, unenforceability, or non-infringement—or until after the date identified in the court's § 271(e)(4)(A) order. 21 CFR § 314.107(b)(3)(iii), (iv). Liquidia has not provided any valid reason justifying its extraordinary request to stay the remedy Congress chose nor any authority where a court has relied on Fed. R. Civ. P. 62 ("Rule 62") to do so. Liquidia's motion should be denied on this basis alone.

Second, Liquidia's motion is inconsistent with the text of the rule. Rule 62—the purported basis for Liquidia's motion—permits a stay "[w]hile an appeal is pending from [the] … final judgment that grants … [the] injunction." Fed. R. Civ. P. 62(d). Yet Liquidia requests a stay tied to a hypothetical appeal from an administrative decision from a different tribunal.

Even if the Court were to consider the factors typically analyzed when deciding whether to stay an injunction, all four factors mandate denial of the stay. Liquidia spends not a single

sentence addressing the first factor—likelihood of success—and why it contends this Court's conclusions are likely to be reversed on appeal. Instead, Liquidia argues that it will prevail in a separate matter that is not on appeal and remains pending before the Patent Trial and Appeal Board ("PTAB"). Liquidia has failed to make any showing, let alone a "strong showing," of likelihood of success in its appeal of *this Court's* trial opinion and final judgment.

Nor can Liquidia meet the second factor: irreparable harm absent a stay of the judgment. Liquidia failed to prevail on its '793 non-infringement and invalidity arguments before this Court. Paragraph 4 of the Court's Judgment is the statutory remedy that Congress provided for that result. Imposing that remedy fulfills Congressional intent and does not represent irreparable harm. *Novartis Pharms. Corp. v. Accord Healthcare Inc.*, 2020 WL 8187586, at *4 (D. Del. Dec. 10, 2020) ("fulfilling congressional intent will not irreparably harm [the movant]"). Any harm allegedly experienced by Liquidia is also of its own making. Liquidia could have sought a stay of this case during the pendency of the IPR proceedings or initiated the IPR earlier in this case but elected not to do so. The Court should not countenance Liquidia's efforts to reverse course. Furthermore, Liquidia relies on the nonsensical stance that it will lose goodwill with patients it does not currently serve by not being able to sell a product it does not currently sell. Liquidia's other factual arguments are simply irrelevant to whether Liquidia will suffer irreparable harm.

UTC, on the other hand, would be substantially injured by a stay. Not only would a stay deprive UTC of its statutory remedy under § 271(e)(4)(A)—which alone is substantial injury—it would also negatively impact UTC's market share and goodwill with patients. To be clear, Liquidia aims to launch its infringing product at the first available opportunity and compete directly with UTC in the marketplace. *See, e.g.*, *Endo Pharms., Inc. v. Amneal Pharms., LLC*, 2016 WL 1732751, at *5 (S.D.N.Y. Apr. 29, 2016) ("Competition is logically tied to injury, since

directly competitive companies are most likely to be rivals for market share, sales, customers, profits, business opportunities, goodwill, and brand power."); *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996) ("Competitors change the marketplace. Years after infringement has begun, it may be impossible to restore a patentee's … exclusive position by an award of damages and a permanent injunction."). These injuries decisively tip the third factor against entering a stay.

The public interest—the fourth factor—also favors denying a stay. The public interest benefits from enforcement of the Hatch-Waxman Act, which reflects Congress's careful balancing of interests relating to drug innovation, patents, and generic drugs. *See Janssen Pharmaceutica, N.V. v. Apotex, Inc.*, 540 F.3d 1353, 1361 (Fed. Cir. 2008) ("[T]he Hatch–Waxman Act struck a careful balance between encouraging the development of new drugs and enabling the marketing of low-cost generic drugs."). Moreover, pulmonary hypertension patients already have several options for treatment, including an inhaled dry powder treprostinil product (UTC's Tyvaso DPI® product, which launched in June 2022). There is no strong public interest in a second, yet-to-be-approved or marketed dry powder formulation of treprostinil, and Liquidia's motion fails to allege, let alone prove, any such interest.

Liquidia's proposed stay of the statutory remedy is inconsistent with the relevant statute, is unsupported by the rule on which Liquidia relies, and is not justified even if the Court were to examine the traditional injunction factors.  Liquidia's request should be denied.

## II.    UTC IS ENTITLED TO ITS NON-DISCRETIONARY REMEDY UNDER SECTION 271(e)(4)(A)

Liquidia's requested relief is unavailable for two independent reasons. First, ¶ 4 of the Judgment is an order required by statute and is not an injunction that can be suspended under Rule 62. *Compare* § 271(e)(4)(A) (requiring an order barring approval) *with* § 271(e)(4)(B) (permitting

3

injunctive relief); *see also* 21 CFR § 314.107(b)(3)(iii). Second, Rule 62 permits staying an injunction "[w]hile an appeal is pending *from [the] … final judgment that grants … [the]* injunction." Fed. R. Civ. P. 62(d) (emphasis added). The rule provides no basis to stay a judgment pending the outcome of a future appeal in an entirely separate case before a different tribunal.

A.   <u>Paragraph 4 of the Judgment Is Required By 35 U.S.C. § 271(e)(4)(A) and Cannot Be Stayed Under Rule 62</u>

Section 271(e)(4)(A) provides a mandatory statutory remedy. Liquidia's equitable arguments—which, in any event, are flawed as discussed below—do not override Congress's express instruction that the court "shall order" a post-expiration effective approval date upon finding infringement in a pre-launch case like this one. 35 U.S.C. § 271(e)(4)(A). As the Federal Circuit has stated, "upon a finding of patent infringement under § 271(e)(2), the district court *must* order remedies in accordance with § 271(e)(4)." *Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1138 (Fed. Cir. 2018) (emphasis added); *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 27 (1998) (use of the "mandatory" term "shall" "normally creates an obligation impervious to judicial discretion").

Liquidia chose to avail itself of the procedures of the Hatch-Waxman Act that it now seeks to stay. Liquidia chose to file its new drug application under Section 505(b)(2) of the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 355(b)(2), so that it could rely on UTC's clinical data and shortcut the typical drug approval process. That choice triggered application of the other provisions of the Hatch-Waxman Act. *See* D.I. 439. Consistent with the Hatch-Waxman statutory framework, Liquidia submitted a Paragraph IV certification regarding the '793 patent. D.I. 433 at 2. That certification was a technical act of infringement supporting this Court's jurisdiction. Following a

4

trial on the merits, this Court found the '793 patent not invalid and infringed. D.I. 433 at 44-45, 48, 53. Thus, the procedures and remedies in § 271(e) apply. *Vanda*, 887 F.3d at 1138 ("Section 271(e)(4) contains no carve-out for patents that issue after the date of submission of the original ANDA."); *see also In re Omeprazole Pat. Litig.*, 536 F.3d 1361, 1367 (Fed. Cir. 2008) ("If the FDA has not approved the ANDA before the district court determines that the patent has been infringed, the FDA may not approve the ANDA until the effective date specified by the district court under section 271(e)(4)(A)."). Indeed, shortly before Liquidia's motion, this Court expressly held that the remedy provided in § 271(e)(4)(A) is a "non-discretionary" remedy to be applied following the Court's conclusion that Liquidia will infringe a valid UTC patent. D.I. 432 at 1-2 ("If I find that the '793 patent is valid and infringed, UTC is entitled to a non-discretionary injunction delaying final FDA approval." (citing 35 U.S.C. § 271(e)(4)(A)). That non-discretionary order under § 271(e)(4)(A) stands in contrast to the discretionary injunctive relief that "may" be granted under § 271(e)(4)(B) using traditional equitable principles.

Liquidia's own public statements demonstrate that it recognizes the Court was required to enter ¶ 4 of its final judgment and issue an injunction pursuant to § 271(e)(4)(A). In a public call the day after the Court's decision, Liquidia's general counsel correctly stated, "We think the statute here requires … Judge Andrews … [to] issue an injunction based on the '793 [patent]." Ex. A at 7. Liquidia also recognized in its press release on the Court's decision that Liquidia's "ability to seek final approval for [its product] will be contingent upon either the affirmation of the PTAB's earlier decision in the *inter partes* review (IPR) regarding the '793 patent or the reversal of Judge Andrews' decision regarding the '793 patent[.]" Ex. B at 1.

Facing the clearly mandatory nature of § 271(e)(4)(A), it is no surprise that Liquidia cited no case law holding that Rule 62 permits a court to override that statute. Liquidia's cases—

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990) and *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278-79 (Fed. Cir. 1987)—involve discretionary injunctions entered in non-Hatch-Waxman cases using traditional equitable principles. This distinction is critical because an order under § 271(e)(4)(A) is a statutorily mandated remedy, whereas an injunction under § 271(e)(4)(B) or in non-Hatch-Waxman patent cases under § 283 is left to the court's discretion. *Pfizer Inc. v. Apotex Inc.*, 731 F. Supp. 2d 754, 761 (N.D. Ill. 2010) ("[Section] 271(e)(4)(B), like § 283, states that courts *may grant* injunctions against the infringer to prevent the defendant from doing various things, including selling the drug or product at issue. Section 271(e)(4)(A), on the other hand, concerns the date of approval, not whether the injunction issues: it *requires* courts finding infringement to specifically order the approval date of the infringing drug to be after the patent's expiration.") (first emphasis in original, second emphasis added). This Court must abide by Congress's instruction that it "shall order" Liquidia's approval date to be not earlier than the expiration date of the '793 patent.

Liquidia's equitable arguments also cannot contravene the applicable federal regulations. The Code of Federal Regulations states that if a district court finds infringement, and that judgment is appealed, "the 505(b)(2) application … may be approved on: … The date on which the mandate is issued by the court of appeals entering judgment that the patent is invalid, unenforceable, or not infringed (including any substantive determination that there is no cause of action for patent infringement or invalidity)[.]" 21 C.F.R. § 314.107(b)(3)(iii). And if the final judgment is not reversed, Liquidia's application may not be approved until the date in the court's § 271(e)(4)(A) order. 21 C.F.R. § 314.107(b)(3)(iv). Here, the Court found infringement of the '793 patent and Liquidia either has already provided to the FDA, or must provide today, a copy of this Court's final judgment and § 271(e)(4)(A) order. 21 C.F.R. § 314.107(e)(1)(vi), (e)(2) (requiring

submission of "any court order pursuant to 35 U.S.C. 271(e)(4)(A)" to the FDA "within 14 days of the date of entry by the court"). Section 271(e)(4)(A) and these federal regulations are mandatory and unambiguous: FDA may not approve Liquidia's 505(b)(2) application until the date specified in ¶ 4 of the final judgment unless the Court's decision is reversed on appeal.

Given the unambiguous statutory and regulatory framework, this Court need not entertain Liquidia's last-ditch attempt to reverse the outcome of its unsuccessful litigation strategy. Liquidia chose what arguments to make and what to waive before this Court. Liquidia knew that an IPR would not result in cancelled claims until appeals from the PTAB decision are exhausted or waived. *E.g.*, D.I. 428 at 1-2; D.I. 433 at 36. Liquidia also knew this Court would be required to enter an order pursuant to § 271(e)(4)(A) for any asserted patent found to be valid and infringed. Liquidia could have maintained its '793 patent obviousness arguments here instead of abandoning them at trial. But Liquidia chose to pursue them only in an IPR gambling that the PTAB's laxer burden of persuasion was beneficial.[1] Liquidia made a strategic choice to opt for a lower burden of persuasion, but that choice came with consequences, such as the need to resolve any appeal in advance of final FDA approval. Rule 62 provides no avenue to undo the effects of Liquidia's litigation strategy, and even if it did, Liquidia should not be excused from its strategic choices.

Granting the requested stay would also be inequitable. Liquidia's requested stay would turn the statutory scheme on its head by placing Liquidia in a *better* position than before trial. Before

---

[1] Liquidia's motivation for pursuing the IPR is irrelevant, but Liquidia's claim that the assignor estoppel defense drove it to file the IPR is specious. First, Liquidia filed its IPR petition in January 2021, several months after the Court denied UTC's motion to dismiss based on assignor estoppel in November 2020. Second, Liquidia filed IPR petitions against the '066 and '901 patents too, where assignor estoppel was not at issue. Further, as noted previously, Liquidia dropped its obviousness arguments on the '793 patent only on the second day of trial. *E.g.*, D.I. 428 at 3 (citing Trial (Vol. II) Tr. 598:7-24; D.I. 406 at i, 2). These strategic choices demonstrate that Liquidia filed the '793 patent IPR to take advantage of the lower burden of proof in an IPR, not out of concerns about assignor estoppel or to streamline the proceedings.

trial, the 30-month stay prevented Liquidia from launching its infringing product. The parties presented their evidence and arguments at trial, including Liquidia's non-infringement and invalidity defenses for the '793 patent. And Liquidia lost on the '793 patent. A § 271(e)(4)(A) order barring approval is the consequence of that loss. Liquidia's motion seeks to selectively stay that order—effectively obtaining a win on the '793 patent *and* retaining its win on the other patents—and therefore permit Liquidia to launch its product, which has been finally adjudicated as infringing. It makes no sense to permit such a launch where the statutory scheme—primarily the 30-month stay and the § 271(e)(4)(A) order—is designed to prevent launch until there is a final adjudication and to block launch if there is infringement. There is no equity in permitting Liquidia to selectively convert its loss to a win.

### B. Rule 62 Does Not Permit a Stay Pending the Outcome of an Unrelated, Hypothetical Appeal

Liquidia seeks a stay of unprecedented duration: it asks that ¶ 4 of the Judgment be stayed pending not only the appeal from this Court, but *also* pending a separate potential future appeal from the PTAB. D.I. 439 at 1 (seeking a stay "before and during the pendency of appeal of the PTAB's '793 FWD"). Even if Rule 62 applies, it does not reach that far. Rather, it gives the Court the power to stay an injunction "[w]hile an appeal is pending *from [the] … final judgment that grants* … [the] injunction." Fed. R. Civ. P. 62(d) (emphasis added). Liquidia has identified no rule or statute giving the Court the power to stay its judgment even after the judgment's appeal is resolved. Nor would the court of appeals itself grant a stay that outlasts "the pendency of [the] appeal" and the issuance of the mandate. *See* Fed. R. App. P. 8(a) advisory committee's note (1967). Liquidia's request for a stay that outlasts all proceedings in this case regardless of the outcome has no basis in rule, statute, or precedent.

### III.     THE TRADITIONAL STAY FACTORS WEIGH AGAINST A STAY

To the extent the Court considers a stay notwithstanding the mandate in § 271(e)(4)(A), courts typically consider four factors when considering a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Standard Havens*, 897 F.2d at 512 (citation omitted). All of the factors weigh against Liquidia's requested stay providing another independent basis to deny the motion.

#### A.     Liquidia Failed to Show a Likelihood of Success on Appeal from This Court's Final Judgment

The first factor considers whether Liquidia has made a "strong showing" of likelihood of success on appeal. *Standard Havens*, 897 F.2d at 512-513.[2] It has failed to make any showing that it is likely to prevail in the appeal in this case, much less a "strong showing," and instead mistakenly relies on another ongoing administrative proceeding.

##### 1.     Liquidia argued likelihood of success for the wrong decision

Liquidia has no argument whatsoever that this Court's decision was wrong and that Liquidia is likely to succeed in an appeal from *this Court's* decision. Instead, Liquidia argues whether the PTAB's decision was correct. But the issues addressed in the IPR were not litigated before this Court and will not be before the Federal Circuit in Liquidia's appeal of this Court's decision. They are not yet before *any* court because the PTAB is still considering whether to grant rehearing on a potentially dispositive issue. It is irrelevant whether Liquidia is likely to succeed in

---

[2] Liquidia could face a lower burden if the other factors "militate in movant's favor" or the irreparable harm to Liquidia is great enough. *Id.* Because the other factors do not militate in Liquidia's favor and because Liquidia faces no irreparable harm, Liquidia must meet the higher standard of proof. But even if a lower standard applies, Liquidia still falls short.

an appeal arising from another, separate proceeding, let alone a separate proceeding that is not yet final and appealable.[3] *See, e.g.*, *Mytee Prods. v. Harris Rsch.*, 2010 WL 11509027, at *2 (S.D. Cal. June 25, 2010) (explaining that "the likelihood of success on an appeal from the judgment in this case is not increased by a reexamination proceeding before the USPTO that involves different prior art. The USPTO may ultimately find the Harris patents invalid but that proceeding is not part of the issues on appeal before the Federal Circuit"); *see Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988) ("Litigation and reexamination are distinct proceedings, with distinct parties, purposes, procedures and outcomes."); *Graff v. City of Chicago*, 800 F. Supp. 584, 586-87 (N.D. Ill. 1992) (focusing on whether movant was likely to succeed "on the merits of whether *this court* erred") (emphasis added). Considering that the issues and evidence in the IPR were not presented to this Court at trial, Liquidia could not raise them as grounds for reversing this Court's decision. *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F. 3d 1323, 1344 (Fed. Cir. 2001) ("The Supreme Court has stated that '[i]t is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.'") (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)).

Nor does Liquidia explain why the Court should assess likelihood of success on appeal in this matter based a finding in a separate proceeding that is not currently appealable. Liquidia's

---

[3] UTC identified several flaws in the PTAB's decision and sought rehearing of a specific, discrete legal error given the legal standard for granting rehearing and the procedure's purpose. *See, e.g.*, *Camelbak Prods., LLC v. Ignite USA, LLC*, 2016 WL 7047969 at 4 (P.T.A.B. Sept. 30, 2016) ("A Request for Rehearing is not an opportunity to express mere disagreement with our Final Written Decision or with our weighing of the evidence. The proper course is for Patent Owner to appeal, not to file a Request for Rehearing to re-argue issues that already have been considered and decided.") (citing 35 U.S.C. § 319). Presumably, whichever way the PTAB rules following that rehearing, then and only then will the non-prevailing party appeal the PTAB ruling to the Federal Circuit. As Liquidia's own motion recognizes, there is no way to project the timing of such a decision. *See, e.g.,* D.I. 439 at 9 (noting "a decision from the PTAB has not yet issued," and "[n]o statute or rule establishes a time limit").

sparse caselaw provides no such justification. In Liquidia's primary case, *Standard Havens*, the Federal Circuit reviewed a stay of the district court's judgment, entered after a jury verdict, and considered whether the movant was likely to succeed in an appeal. 897 F.2d at 514. The court discussed a reexamination proceeding only because it involved the same issue to be raised on appeal from the district court: obviousness over the *very same prior art* that was addressed at trial and considered by the jury. *Id.* (identifying Hepburn patent as prior art); Br. for Plaintiff-Appellee, *Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 1990 WL 10024018, at *11 (Fed. Cir. Feb. 22, 1990) (describing extensive testimony regarding Hepburn patent at trial). Thus, the PTO's decision to institute reexamination based on the Hepburn patent helped to show a likelihood of success on appeal *based on the Hepburn patent*. Here, there is no overlap between the PTAB's decision and this case because at trial Liquidia dropped the arguments it was making in the IPR; Liquidia's post-trial briefing on invalidity does not in any way address the grounds or prior art it relied upon before the PTAB in the IPR. *See generally* D.I. 406, D.I. 415.

The relevant appeal is the one from this Court's judgment. Liquidia has given no reason to believe it will succeed in *this* appeal, and it cannot premise success on a potential ruling in a different, hypothetical future appeal, which the Federal Circuit will decide, if it comes to fruition, at an unknown time.[4] By seeking a stay that will last longer than the appeal from this Court's

---

[4] The only argument Liquidia makes for a likelihood of success on appeal of *this Court's* decision is that an affirmance of the PTAB's decision would mean Liquidia cannot induce infringement. D.I. 439 at 8. This argument also fails. An affirmance of the PTAB's decision would moot an appeal of this Court's decision, *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1294 (Fed. Cir. 2018), but it would not demonstrate error in this Court's reasoning. There are no overlapping issues: the PTAB's decision does not involve the infringement or § 112 issues considered by this Court. "When infringement is the issue, the validity of the patent is not the question to be confronted." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 642-43 (2015) (explaining that infringement and validity are two separate inquiries). And, as noted above, the PTAB decision may be reversed on reconsideration and is not yet on appeal. As such, a later appeal of the PTAB's ruling cannot affect Liquidia's likelihood of success in the already-pending, earlier appeal in this matter.

judgment—*i.e.*, a stay until after the *future potential* appeal from the PTAB is resolved, *see* D.I. 438, at 1; D.I. 439, at 1—Liquidia tacitly acknowledges that it has no basis for arguing that the PTAB decision will drive the outcome of the appeal *from this Court*.

2.    Liquidia has not made a "strong showing" that it will prevail in the IPR

Even if the Court were to consider Liquidia's likelihood of success in any appeal from the PTAB's decision, Liquidia has failed to make the required showing. Liquidia is incorrect regarding the PTAB's supposed alternative bases for finding two critical references to be publicly accessible prior art. D.I. 439 at 6. The Board's statements that two alleged prior art references were "published" are insufficient, as references must also be publicly accessible, and public accessibility is precisely what was disputed in the PTAB. *In re Lister*, 583 F.3d 1307, 1311 (Fed. Cir. 2009) ("[T]o qualify as a printed publication within the meaning of § 102, a reference 'must have been sufficiently accessible to the public interested in the art.'"). The Board's reference to "public presentation" is likewise not an alternative holding. The Board merely noted Liquidia's argument but did not adopt it.[5] D.I. 425-1 (FWD) at 9. Instead, the Board's decision relies expressly and exclusively on two research aids to find public accessibility. *Id.* at 11-12. Those research aids are the subject of UTC's pending request for rehearing, which points out the flaw in the Board's reliance on research aids from *after* the § 102(b) critical date to show alleged public accessibility *before* the critical date. D.I. 439, Ex. E at 10, 13-14 (UTC's Request for Rehearing). And even if the Board does not modify its decision in UTC's favor on rehearing, there are several other grounds

---

[5] It is statutorily forbidden for the Board to rely on a "public presentation" as prior art. An IPR proceeding can proceed "only on the basis of prior art consisting of patents or printed publications," not public presentations or use. 35 U.S.C. § 311(b).

arising out of the arguments in UTC's Patent Owner Response, Sur-reply, and made at the IPR hearing that UTC will raise on appeal.[6]

Instead of addressing the merits of the PTAB's decision and why any predicted UTC arguments may not succeed, Liquidia cites statistics that are untethered to the facts of the PTAB's decision on the '793 patent and therefore irrelevant to Liquidia's alleged likelihood of success. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 2009 WL 2047635, at *3 (C.D. Cal. Jul. 8, 2009) ("Plaintiff relies on statistics untethered to the facts of this case about the general rate of success during reexamination at the PTO. This is unpersuasive.") (internal record citations omitted). Liquidia's statistics, like its other arguments, fail to make the required showing of likelihood of success on appeal from this Court's judgment and therefore do not justify a stay.

### B.    Liquidia Will Not Be Irreparably Harmed Absent a Stay

The second factor, whether Liquidia has shown it will be irreparably harmed, also favors denying a stay because Liquidia will suffer no irreparable harm even if Liquidia eventually obtains final approval for its LIQ861 product before the expiration date of the '793 patent.

Liquidia chose to litigate anticipation and obviousness in the IPR and not here. It did so knowing that no '793 patent claims would be canceled until, if ever, the resolution of the appeals process. D.I. 433 at 36 (citing, *e.g.*, *XY*, 890 F.3d at 1294, and 35 U.S.C. § 318(b)). The alleged

---

[6] There is no basis to Liquidia's implication that any UTC appeal to the Federal Circuit would be limited to the grounds identified in UTC's Request for Rehearing. Rehearing requests are wholly permissive. 37 CFR § 42.71(d). Requiring *all* potential grounds for appeal to be exhausted in a wholly permissive rehearing petition in order to preserve those issues for appeal would overload the PTAB with make-work. *See* Ex. C, *Webster v. Toros*, No. 21-5040, *slip op.* at 7 n.1 (D.C. Cir. Sept. 20, 2022) (explaining that parties do not waive appellate arguments by not making them in a permissive request for summary affirmance); 35 U.S.C. § 141(c) ("A party to an inter partes review ... who is dissatisfied with the final written decision ... may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit."); *In re Magnum Oil Tools Int'l, Ltd*., 829 F.3d 1364, 1377 (Fed. Cir. 2016) ("Nowhere does the statute granting parties the right to appeal a final written decision in an IPR require that the party first file a request for rehearing before the Board[.]").

harm Liquidia identifies—an inability to launch due to this Court's order to the FDA—is merely the operation of the laws carefully crafted by Congress and Liquidia's election to pursue some of its invalidity arguments before the PTAB. 35 U.S.C. § 271(e)(4)(A); *Novartis*, 2020 WL 8187586, at *3-4 (holding that "[f]or the reasons described by [non-movant], fulfilling congressional intent will not irreparably harm [the movant]," and agreeing with non-movant that "this alleged harm 'is no different than any other Hatch-Waxman litigation where a patentee wins[,]' and the 'normal result of a statutory command cannot ... form[ ] the basis of an argument to undo the statute'").

Liquidia's allegation that UTC "controls" (D.I. 439 at 8) the timeline for appeal likewise fails to establish irreparable harm because it is both incorrect and irrelevant. Those timelines are controlled by the PTAB, the Federal Circuit, and the Federal Rules of Appellate Procedure. UTC has no ability to force the PTAB or Federal Circuit to make decisions faster. And even if UTC did control the timeline, that would not translate to "irreparable harm."

Liquidia's bald and bold allegation that it will lose goodwill among patients and others is nonsensical. Liquidia cannot claim to lose goodwill with customers it does not currently serve for a product it does not currently sell. Moreover, Liquidia has announced that it does not expect to be able to launch until after appeals, around mid-2024. Ex. B at 1. Thus, not granting a stay is entirely consistent with what Liquidia has told its potential customers and cannot constitute loss of goodwill.

Unlike in *Standard Havens*, where absent a stay the movant would have gone bankrupt and possibly "extinct[]," 897 F.2d at 515, Liquidia has assured the public that it has ample resources to continue operations into at least 2024. Ex. A at 8-9 (stating that Liquidia's cash on hand "should enable us to get into 2024"). Moreover, Liquidia has other sources of revenue, such as a generic version of treprostinil for parenteral administration. Thus, a stay is not necessary to prevent any

14

irreparable harm, and the statutory order barring approval of Liquidia's infringing product merely maintains the status quo.

### C.   UTC Will Be Substantially Injured by a Stay

By contrast, UTC will be substantially injured if the Court were to stay enforcement of ¶ 4 of its final judgment. Because the Court found the '793 patent not invalid and infringed, UTC is entitled to an order barring final FDA approval. Staying that order and withholding that statutory remedy would harm UTC by allowing Liquidia to launch despite its infringement of the '793 patent. *See supra* § II.A; *Sunoco Partners Mktg. & Terminals LP v. Powder Springs Logistics LLC*, 2020 WL 3060458, at *8 (D. Del. Jun. 9, 2020) (finding that plaintiff patent owner "would suffer undue prejudice from a stay, which might eliminate [plaintiff]'s opportunity to seek injunctive relief," and because the parties "appear to compete"). Indeed, this Court previously recognized that "[i]f I find that the '793 patent is valid and infringed, UTC is entitled to a non-discretionary injunction delaying final FDA approval. … UTC would be prejudiced if I stay my decision and withhold this statutory remedy, thus allowing Liquidia to launch its product prior to any resolution of the invalidity and infringement issues litigated at trial." D.I. 432 at 1-2. That decision is law of the case. But even if it were not, it is legally and factually correct.

None of Liquidia's arguments to the contrary hold water. The degree to which generic entry impacted sales of an entirely different product, Remodulin® (treprostinil) Injection, says nothing about whether or not Liquidia's market entry with an infringing product would harm UTC's sales of different products, Tyvaso® and Tyvaso DPI®. This is particularly true where, unlike the generic entries into the Remodulin® market, Liquidia has repeatedly stressed that its LIQ861 product is not a generic version of UTC's products. *E.g.*, D.I. 439 at 2 (It "is not a generic version of Tyvaso®"); *id.* at 14 (Liquidia's product is "not just a generic copy"). Absent ¶ 4 of the final judgment, Liquidia would be actively marketing its product despite this Court's infringement

15

finding. It is a stretch, moreover, to call UTC's lost sales "speculative" where: (a) UTC already has a dry powder inhaled treprostinil product on the market, (b) UTC and Liquidia would compete in the inhaled treprostinil market, and (c) Liquidia's product would be the first inhaled treprostinil competitor for UTC's Tyvaso® and Tyvaso DPI® products. *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, 2014 WL 1369721, at *4 (D. Del. Apr. 7, 2014) ("[C]ourts hesitate to grant stays where the parties are direct competitors.") (citation omitted); *Nexans Inc. v. Belden Inc.*, 2014 WL 651913, at *3 (D. Del. Feb. 19, 2014) (when parties are competitors, "there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement, including the potential for loss of market share and an erosion of goodwill.") (citations and quotations omitted). In fact, Liquidia's position as UTC's first inhaled treprostinil competitor highlights why UTC would stand to lose market share and lose more goodwill than Liquidia, which has not launched any inhaled treprostinil products.[7] As Liquidia acknowledges, "there is no non-UTC inhaled treprostinil therapy on the market today." D.I. 439 at 12. But allowing Liquidia to sell its product could reduce UTC's market share and impact its goodwill. Courts have found those factors to constitute substantial injury to the patent holder. *E.g.*,. *Endo Pharms.*, 2016 WL 1732751, at *5-8 (finding that presence in the market causing lost market share, profits, and goodwill supported irreparable harm and substantial injury supporting denial of stay).

### D.   The Public Interest Favors Denying a Stay

The public interest also favors denying Liquidia's request for a stay. Initially, the public

---

[7] Liquidia's arguments regarding UTC's allegedly improper efforts to provide co-pay assistance to a non-profit are irrelevant and a blatant attempt to malign UTC. UTC disputes Liquidia's description of the investigation. It is also a bizarre allegation given that the purportedly improper charitable donations were made when Liquidia's current CEO, Roger Jeffs, was co-CEO at UTC and oversaw business operations.

has an interest in enforcement of the law and patent rights. *See, e.g.*, *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 397 F.Supp.2d 537, 550 (D. Del. 2005) ("[T]he public interest lies in protecting patent rights through the grant of injunctive relief so inventors have incentive to create."); *id. at* 547 ("Granting injunctive relief protects the value of the patent, and allows the public to garner the attendant benefits."). Section 271(e)(4)(A) was the result of careful deliberation and balancing of the various interests of drug innovators, makers of follow-on products (whether generic ANDA holders or 505(b)(2) applicants), and the public. *Janssen*, 540 F.3d at 1361; *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1363 (Fed. Cir. 2008) ("The patent laws promote … progress by offering a right of exclusion for a limited period as an incentive to inventors to risk the often enormous costs in terms of time, research, and development.") (citation omitted); *Novartis*, 2020 WL 8187586, at *4 ("nor would it be in the public's interest to change the 'careful balance' created by Congress, which includes entrusting enforcement of final judgments to the FDA"); *id.* at *2 ("I would undermine congressional intent and the public interest were I to grant [movant's] motion [to stay]"). The public interest favors following Congress's instructions and imposing a stay pursuant to § 271(e)(4)(A).

There is no public interest that would be satisfied by allowing Liquidia to avoid the statutory remedy resulting from this Court's decision finding the '793 patent valid and infringed. Liquidia's citation to an article written by its testifying expert, Dr. Hill, does not establish any public interest in its product, as the article compares Liquidia's product only to the inhaled solution form of Tyvaso® and prostacyclin naïve patients on non-prostacyclin oral therapies. D.I. 439, Ex. O at *1 (describing patients that "transitioned to Yutrepia from nebulized treprostinil (Transition) or added Yutrepia to prostacyclin naïve patients on ≤2 nonprostacyclin oral therapies."). The article does not compare Liquidia's product to UTC's dry powder inhaled product, Tyvaso DPI®.

As mentioned above, Tyvaso DPI® has launched, and patients have access to an inhaled dry powder formulation of treprostinil and the benefit of a small, portable, unpowered inhaler, and administration of a dose in one breath. Ex. D (Tyvaso DPI® web site). Moreover, Liquidia provides no basis to believe that the reasons the email authors (D.I. 439, Exs. Q, Y, Z) desire Liquidia's product are not already satisfied by Tyvaso DPI®. Nor is there any evidence Liquidia's product would "save lives," as there are several drugs for the treatment of PAH already on the market, including Remodulin® and generic forms thereof, Orenitram®, Tyvaso®, and Tyvaso DPI®.[8] Simply put, there are a number of available treprostinil therapies already available to patients, and the public interest is well served by the Court's Order, which implements Congressional intent and orders Liquidia's approval date to be no earlier than the expiration of the '793 patent.

## IV.    **CONCLUSION**

For the reasons above, the Court should deny Liquidia's requested Rule 62 stay.

---

[8] Even if it did, there is still a public interest in patent enforcement. *Eli Lilly & Co. v. Medtronic, Inc.*, 1988 WL 281578, at *12 (E.D. Pa. Apr. 15, 1988) (concluding that the public interest weighs in favor of the right to exclude even for patents on lifesaving products such as heart defibrillators).

OF COUNSEL:

William C. Jackson
Eric Levi
GOODWIN PROCTER LLP
1900 N Street NW
Washington, DC 20036
(202) 346-4216

Douglas H. Carsten
Mandy H. Kim
Arthur Dykhuis
Jiaxiao Zhang
Katherine Pappas
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA 92612
(949) 851-0633

Huiya Wu
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 813-8800

Ian B. Brooks
Adam W. Burrowbridge
Joshua Revilla
Timothy M. Dunker
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8000

Harrison Gunn
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000


September 23, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff United Therapeutics Corporation*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 23, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 23, 2022, upon the following in the manner indicated:

| | |
|---|---|
| Karen E. Keller, Esquire | *VIA ELECTRONIC MAIL* |
| Nathan R. Hoeschen, Esquire | |
| Emily S. DiBenedetto, Esquire | |
| SHAW KELLER LLP | |
| I.M. Pei Building | |
| 1105 North Market Street, 12th Floor | |
| Wilmington, DE  19801 | |
| *Attorneys for Defendant Liquidia* | |
| *Technologies, Inc.* | |

| | |
|---|---|
| Sanya Sukduang, Esquire | *VIA ELECTRONIC MAIL* |
| Jonathan Davies, Esquire | |
| Douglas W. Cheek, Esquire | |
| Adam Pivovar, Esquire | |
| Brittany Cazakoff, Esquire | |
| COOLEY LLP | |
| 1299 Pennsylvania Avenue, NW, Suite 700 | |
| Washington, DC  20004-2400 | |
| *Attorneys for Defendant Liquidia* | |
| *Technologies, Inc.* | |

| | |
|---|---|
| Erik Milch, Esquire | *VIA ELECTRONIC MAIL* |
| COOLEY LLP | |
| 11951 Freedom Drive, 14th Floor | |
| Reston, VA  20190-5640 | |
| *Attorneys for Defendant Liquidia* | |
| *Technologies, Inc.* | |

| | |
|---|---|
| Ivor Elrifi, Esquire | *VIA ELECTRONIC MAIL* |
| COOLEY LLP | |
| 55 Hudson Yards | |
| New York, NY  10001-2157 | |
| *Attorneys for Defendant Liquidia* | |
| *Technologies, Inc.* | |

1

Lauren Krickl, Esquire                                    *VIA ELECTRONIC MAIL*
Deepa Kannappan, Esquire
Brittany Cazakoff, Esquire
Kyung Taeck Minn, Esquire
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

          */s/ Michael J. Flynn*

          _____

          Michael J. Flynn (#5333)