IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UNITED THERAPEUTICS CORPORATION,

Plaintiff,

v.

LIQUIDIA TECHNOLOGIES, INC.,

Defendant.

C.A. No. 20-755-RGA-JLH

**LIQUIDIA'S REPLY BRIEF IN SUPPORT OF MOTION FOR A STAY OF ENFORCEMENT OF PARAGRAPH 4 OF THE COURT'S FINAL JUDGMENT PENDING APPEAL**

OF COUNSEL:
Sanya Sukduang
Jonathan Davies
Douglas W. Cheek
Adam Pivovar
Brittany Cazakoff
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202) 842-7800

Erik Milch
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5640
(703) 546-8000

Ivor Elrifi
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant Liquidia Technologies, Inc*

Deepa Kannappan
Lauren Krickl
Kyung Taeck Minn
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Dated: September 28, 2022

TABLE OF CONTENTS

Page

I. Stays of 271(e)(4)(A) Orders Are Permitted by the Federal Circuit ................................. 1

II. FRCP 62 and the Court's Broad Discretionary Powers Permit Entry of a Stay Pending the '793 IPR Appeal ................................................................................................. 2

III. The *Hilton* Factors Warrant a Stay Pending Appeal.......................................................... 3

A. The PTAB's Invalidation of the '793 Patent Demonstrates Liquidia's Likelihood of Success ................................................................................................................ 3

B. Liquidia Has Demonstrated That It Will Be Irreparably Harmed Absent a Stay .............. 7

C. UTC Has Not Demonstrated That It Will Be Substantially Injured if the Court Stays Enforcement of Paragraph 4 of the Final Judgment .......................................................... 8

D. Stay of Judgment Favors the Public Interest...................................................................... 9

IV. Conclusion ......................................................................................................................... 10

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amado v. Microsoft Corp.*,
517 F.3d 1353 (Fed. Cir. 2008)....................3

*Bayer Schera Pharma AG v. Sandoz, Inc.*,
No. 08-CV-03710, 2010 WL 3447906 (S.D.N.Y. Sept. 2, 2010)....................8

*Cargill, Inc. v. Sears Petroleum & Transport Corp.*,
No. 5:03 CV 0530, 2004 WL 3507329 (N.D.N.Y. Aug. 27, 2004)....................5

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015)....................7

*E.I. Dupont de Nemours & Co. v. Phillips Petroleum Co.*,
835 F.2d 277 (Fed. Cir. 1987)....................4, 5

*Ferring B.V. v. Watson Lab'ys, Inc. – Fla.*,
No. 14-1416, D.I. 22 (Fed. Cir. Apr. 28, 2014) (Ex. BB)....................1, 7

*Ferring B.V. v. Watson Lab'ys, Inc. – Fla.*,
No. 3:11-cv-00481 (D. Nev. Apr. 14, 2014) (Ex. AA)....................1

*Hilton v. Braunskill*,
481 U.S. 770, 776 (1987)....................1, 2

*Mytee Prods., Inc. v. Harris Rsch., Inc.*,
No. 06-cv-1854, 2010 WL 11509027 (S.D. Cal. June 25, 2010) ....................4, 5

*Novartis Pharmaceuticals Corporation v. Accord Healthcare Inc.,* 2020 WL
8187586 (D. Del. Dec. 10, 2020)....................2, 7

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
No. CV 02-01087, 2009 WL 2047635 (C.D. Cal. July 8, 2009)....................5

*SmithKline Beecham Corp. v. Apotex Corp.*,
247 F. Supp. 2d 1011 (N.D. Ill. 2003), *vacated and aff'd on other grounds*,
403 F.3d 1331 (Fed. Cir. 2005)....................2

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
897 F.2d 511 (Fed. Cir. 1990)....................3, 4

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*,
482 F.3d 1330 (Fed. Cir. 2007) ....................7

**Statutes**

35 U.S.C. § 271(e)(4)(A) ....................................................................................1, 2, 6, 7

**Other Authorities**

H.R. Rep. No. 112-98 (2011)....................................................................................9

Federal Rule of Civil Procedure 62 ....................................................................1, 2, 3

## I. STAYS OF 271(e)(4)(A) ORDERS ARE PERMITTED BY THE FEDERAL CIRCUIT

UTC contends that "Paragraph 4 of the Judgment Is Required By 35 U.S.C. § 271(e)(4)(A) and Cannot Be Stayed Under Rule 62." D.I. 442 at 4. UTC is wrong as a matter of law. The Federal Circuit has stayed § 271(e)(4)(A) orders in factual situations less favorable than those at issue here. In *Ferring B.V. v. Watson Laboratories, Inc.*, the District of Nevada found in favor of the Hatch-Waxman plaintiff and entered a § 271(e)(4)(A) injunction. *Ferring B.V. v. Watson Lab'ys, Inc. – Fla.*, No. 3:11-cv-00481 (D. Nev. Apr. 14, 2014) (Ex. AA). In that case, the asserted patents were found valid, and the defendants had not otherwise invalidated the asserted patents in a parallel *inter partes* review ("IPR") proceeding or provided any more persuasive evidence of success on appeal than what was presented to the district court during trial. Nonetheless, the Federal Circuit granted Watson's emergency motion to stay "the district court's April 14, 2014 order imposing an injunction and resetting FDA approval for Watson's generic tranexamic acid product . . . pending disposition of the appeal." *Ferring B.V. v. Watson Lab'ys, Inc. – Fla.*, No. 14-1416, D.I. 22, at *2 (Fed. Cir. Apr. 28, 2014) (Ex. BB) (reciting the factors to grant a stay pending appeal pursuant to *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).[1] The Federal Circuit's stay of the § 271(e)(4)(A) injunction contradicts UTC's primary position.[2] The Federal Circuit's decision in *Ferring* also undercuts UTC's other arguments, including that Liquidia's "requested stay would turn the statutory scheme on its head . . . ." D.I. 442 at 7-8.

---

[1] Ferring, like UTC here, argued that § 271(e)(4)(A) injunctions are mandatory and cannot be stayed pending appeal. Ferring Answering Brief (Ex. GG) at *13-16; *see also id*. at Watson Opening Brief (Ex. FF); Watson Reply Brief (Ex. HH). Clearly, in granting Watson's requested stay, the Federal Circuit did not agree.

[2] UTC's reliance on Liquidia's statements made after the Court's decision does not negate the Court's ability to enter a stay of injunction. *See* D.I. 442 at 5. Absent a stay of injunction pending appeal, as requested here, Liquidia's ability to "seek final approval" is contingent upon the outcomes of the various appeals.

The Federal Circuit's decision to stay enforcement of the § 271(e)(4)(A) order is consistent with the statute, which imposes no timing requirement for enforcement of judgment. 35 U.S.C. § 271(e)(4)(A); *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1050 (N.D. Ill. 2003), *vacated and aff'd on other grounds*, 403 F.3d 1331 (Fed. Cir. 2005) ("If Congress had wanted to extinguish judicial discretion to withhold the order postponing the entry of the generic drug, it could have done so very easily . . . . Congress did not do that."). Thus, consistent with Federal Circuit precedent, the Court can stay its judgment in favor of UTC with respect to the '793 patent before disposition of the appeal.

Finally, the District of Delaware's treatment of § 271(e)(4)(A) confirms that there is no *per se* prohibition, as UTC suggests, of staying the Court's judgment under FRCP 62 simply because this is a Hatch-Waxman case. In *Novartis Pharmaceuticals Corporation v. Accord Healthcare Inc.*, Judge Kent A. Jordan, sitting by designation from the Third Circuit, considered Accord's motion to stay entry of the § 271(e)(4)(A) injunction. No. CV 18-1043 (KAJ), 2020 WL 8187586 (D. Del. Dec. 10, 2020). Despite Novartis' arguments, like UTC's here, that the § 271(e)(4)(A) order cannot be stayed because they are mandatory, Judge Jordan applied the *Hilton* factors in assessing whether to grant a stay. *Id*. at *2 (citing *Hilton*, 481 U.S. at 776). Although Judge Jordan ultimately decided that the *Hilton* factors did not favor a stay in that case, his treatment of § 271(e)(4)(A) and Accord's motion make clear that this Court has the right to stay judgment in Hatch-Waxman cases under FRCP 62.

## II. FRCP 62 AND THE COURT'S BROAD DISCRETIONARY POWERS PERMIT ENTRY OF A STAY PENDING THE '793 IPR APPEAL

UTC contends that, even if FRCP 62 does permit a stay of judgment pending appeal of this case, FRCP 62 does not permit this Court to enter a stay pending the '793 IPR appeal because it is from a separate tribunal, referencing the '793 IPR appeal as an "unrelated, hypothetical appeal."

D.I. 442 at 8. FRCP 62 is not so limited because district courts are afforded "wide discretion" in granting stays pending appeal, and thus UTC's narrow interpretation of FRCP 62 is incorrect. *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1358 (Fed. Cir. 2008) (affirming the extension of a stay issued pursuant to FRCP 62 after completion of the appeals process). To the extent, however, the Court agrees with UTC's interpretation of FRCP 62, Liquidia requests a stay during pendency of the district court appeal only, as requested in Liquidia's opening brief. D.I. 439 at 1.

## III. THE *HILTON* FACTORS WARRANT A STAY PENDING APPEAL

As explained in Liquidia's opening brief (D.I. 439), staying enforcement of Paragraph 4 of the Final Judgment is warranted because (1) Liquidia is likely to succeed on the merits on appeal; (2) Liquidia will be irreparably harmed without a stay; (3) UTC will not be substantially injured by the stay of enforcement; and (4) the public interest supports a stay. *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990) (reciting *Hilton* factors). And, as recognized by UTC (D.I. 442 at 9 n.2) and the Federal Circuit in *Standard Havens*, each factor "need not be given equal weight." *Standard Havens*, 897 F.2d at 512.

### A. THE PTAB'S INVALIDATION OF THE '793 PATENT DEMONSTRATES LIQUIDIA'S LIKELIHOOD OF SUCCESS

Side stepping the likelihood that the Federal Circuit will affirm the PTAB's decision (*see* D.I. 439, Ex. I), UTC argues that the '793 IPR decision is not relevant to Liquidia's likelihood of success. D.I. 442 at 9-13 ("It is irrelevant whether Liquidia is likely to succeed in an appeal arising from another, separate proceeding, let alone a separate proceeding that is not yet final and appealable."). Again, UTC's interpretation of this Court's discretion to enter a stay pending appeal is impermissibly narrow. In both *Standard Havens* and *DuPont*, the Federal Circuit stayed district court injunctions pending appeal in light of separate (and not yet final) actions taken by the PTO evidencing the asserted patent's invalidity. *See* D.I. 439 at 7-8 (discussing *Standard Havens* and

*DuPont* in detail). While UTC asserts that the Federal Circuit granted the stay in *Standard Havens* because the PTO's reexamination proceeding involved the "same issue to be raised on appeal from the district court[,]" the Federal circuit made no such finding. *See* D.I. 442 at 10-11. Instead, the Federal Circuit noted only that the PTO "*sua sponte*, ordered reexamination" based on a patent "which [wa]s pertinent prior art." *Standard Havens*, 897 F.2d at 514. The Federal Circuit did not state the basis for the jury verdict and instead, in finding likelihood of success, held that the PTO's reexamination raised a "substantial question" as to obviousness. *Id.* Similarly in *DuPont*, which UTC did not substantively address, the Federal Circuit found a likelihood of success based solely on a "conflict between the PTO examiner's rejection of DuPont's claims as invalid in view of prior art and the district court's ruling of validity." *E.I. Dupont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987). The rationale in *Standard Havens* and *DuPont* applies more so here because the PTAB issued a Final Written Decision ("FWD") invalidating the asserted '793 patent claims, whereas the PTO proceedings in *Standard Havens* and *DuPont* were still pending before the PTO when the stay of judgment was entered. Contrary to UTC's position, Federal Circuit precedent supports Liquidia's strong showing of a likelihood of success based on the '793 FWD.

The *Mytee* case cited by UTC is non-binding[3] and, more importantly, does not stand for the proposition that likelihood of success must be based on the district court decision. D.I. 442 at 10 (citing *Mytee Prods., Inc. v. Harris Rsch., Inc.*, No. 06-cv-1854, 2010 WL 11509027, at *2 (S.D. Cal. June 25, 2010)). In *Mytee*, the court said the PTO "***may*** ultimately find the Harris patents invalid[,]" but here, as the Court is aware, the PTAB has already found the claims of the

---

[3] Unlike *Mytee*, the Federal Circuit's decision in *DuPont* arises from a case before this Court. *DuPont*, 835 F.2d at 277-78.

’793 patent unpatentable. *Mytee*, 2010 WL 11509027, at *2. And, as noted above, controlling Federal Circuit precedent made clear that differing opinions on invalidity are sufficient, on their own, to establish a likelihood of success. *DuPont*, 835 F.2d at 278-79.

UTC’s further contention that statistics regarding IPR appeals are “irrelevant to Liquidia’s alleged likelihood of success” is incorrect. D.I. 442 at 13 (citing *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, No. CV 02-01087, 2009 WL 2047635, at *3 (C.D. Cal. July 8, 2009)). UTC does not dispute that in IPR appeals through April 30, 2022, the Federal Circuit affirmed the PTAB on every issue in 72.76% of cases—a figure highly relevant to Liquidia’s likelihood of success. D.I. 439, Ex. I. In *Revolution*, the Central District of California merely declined to stay execution of judgment after the PTO initiated a reexamination proceeding on the asserted patent, which was still pending before the PTO. *Revolution*, 2009 WL 2047635, at *3. Unlike *Revolution*, the PTAB has already found all claims of the ’793 patent unpatentable. Courts in similar circumstances have relied on statistics regarding appeals to the Federal Circuit in issuing stays of injunctions pending appeals. *See, e.g.*, *Cargill, Inc. v. Sears Petroleum & Transport Corp.*, No. 5:03 CV 0530, 2004 WL 3507329, at *12 (N.D.N.Y. Aug. 27, 2004) (relying, in part, on Federal Circuit reversal rate to assess likelihood of success in granting a stay of injunction pending appeal).

Separate from the PTAB’s ’793 FWD and Liquidia’s likelihood of success on that appeal, UTC relegates to a footnote Liquidia’s additional argument that the Federal Circuit’s affirmance of the ’793 FWD will directly lead to reversal of this Court’s finding of infringement of that patent. *See* D.I. 442 at 11 n.4. Contrary to UTC’s position, affirmance of the PTAB’s ’793 FWD will not “moot” an appeal of this Court’s decision. *Id.* The Federal Circuit will still need to issue an opinion on Liquidia’s appeal of this case, reversing the Court’s finding of infringement and

vacating the Court's § 271(e)(4)(A) judgment—this is success on the merits of non-infringement not mootness of the issue.

Finally, UTC's assertion that the PTAB found "public accessibility" of two prior art references based solely upon "research aids" is incorrect. D.I. 442 at 12 (claiming that, "the Board's decision relies expressly and exclusively on two research aids to find public accessibility.") The Board correctly noted that a reference is publicly accessible if it was "disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it." D.I. 425, Ex. 1 at 9 (citation omitted). And to determine public accessibility, the PTAB relied on the fact that the abstracts were publicly presented. *Id.*[4] The Board went into great detail concerning Liquidia's separate argument that the two abstracts in question were publicly presented and thus publicly available. *Id*. at 9-10. The Board also stated that Liquidia's "evidence showing citation to the references in other publicly accessible documents is ***merely additional*** evidence supporting Petitioner's original theory that a person of ordinary skill in the art could have located the references. *Id.* at 10 (emphasis added). And the Board expressly found three different, factual bases for concluding that the abstracts were publicly accessible. *Id.* Given the PTAB's well-reasoned, multi-faceted and factually supported decision, UTC's attack on only one reason the PTAB relied upon for finding public accessibility in its FWD does not detract from Liquidia's likelihood of success.

---

[4] Contrary to UTC's position in footnote 5, the PTAB did not rely on a "public presentation" as prior art, but instead factually found that the abstracts were "publicly presented" and thus publicly accessible. D.I. 425, Ex. 1 at 9.

### B. Liquidia Has Demonstrated That It Will Be Irreparably Harmed Absent a Stay

Liquidia will be irreparably harmed absent a stay because its first NDA product YUTREPIA™ will not enter the market until at least all appeals of the '793 IPR have concluded. *See* D.I. 439 at 8-10. UTC's contention that Liquidia's inability to launch is "merely the operation of the laws carefully crafted by Congress" overlooks that the '793 patent has been invalidated by the PTAB using a procedure crafted by Congress and acknowledged by the Supreme Court as a "proper procedure" for invalidation.[5] D.I. 442 at 13-14 (citing *Novartis*, 2020 WL 8187586, at *3-4); *see also Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644-45 (2015). Preventing Liquidia's YUTREPIA™ product from entering the market because of an invalid patent contravenes the "central purpose" of the Hatch-Waxman Act of "enabl[ing] competitors to bring . . . drugs to market as quickly as possible." *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1344 (Fed. Cir. 2007) (quoting 149 Cong. Rec. S15885 (Nov. 25, 2003)). The Federal Circuit's entry of a stay of the § 271(e)(4)(A) order pending appeal in *Ferring*, rejecting a similar argument regarding the congressional intent of the Hatch-Waxman Act, also belies UTC's contention that a stay would be contrary to congressional intent. *Ferring*, C.A. No. 14-1416, D.I. 22 (Ex. BB).

UTC's other arguments are similarly unpersuasive. First, UTC has significant "control" over the appeals timeline (D.I. 442 at 14) because UTC could have appealed the '793 FWD directly to the Federal Circuit or consented to an expedited appeal briefing schedule for this case rather than oppose. *See* Ex. CC. Second, the loss of goodwill among patients and others that Liquidia stands to suffer absent a stay is not "nonsensical" as UTC contends. D.I. 442 at 14. PAH patients

---

[5] As presented in Liquidia's opening brief, UTC's advancement of its assignor estoppel argument, through pre-trial briefing, necessitated Liquidia's IPR on the '793 patent. D.I. 439 at 2-4.

and doctors are well aware of YUTREPIA™, and the letters from PAH patients and doctors, articulating their desire to have YUTREPIA™ on the market, demonstrates the harm Liquidia stands to suffer. *See* D.I. 439, Ex. Q, Ex. Y, Ex. Z; Ex. DD. Finally, Liquidia's public statements about its financial ability to "get into 2024" does not detract from the significant challenges that Liquidia will encounter if enjoined. D.I. 442 at 14.

### C. UTC Has Not Demonstrated That It Will Be Substantially Injured if the Court Stays Enforcement of Paragraph 4 of the Final Judgment

UTC contends that launch of YUTREPIA™ could harm sales of Tyvaso® and Tyvaso DPI®. *Id.* at 15. But UTC's position is directly contradicted by its public statements—statements UTC ignores in its opposition. D.I. 442 at 15-16. When discussing the potential launch of Liquidia's YUTREPIA™, UTC executives have noted that it was not a "zero-sum game," but instead there are "tens of thousands of patients that are out there for [UTC] and other competitors." D.I. 439, Ex. V at 7 (highlighted portion). Additionally, in December 2021, UTC confirmed to investors, with respect to YUTREPIA™/LIQ861, that "there is room in the space for more than one competitor[.]" (D.I. 439, Ex. W at 1 (highlighted portion).) Thus, UTC has publicly acknowledged that it is unlikely to suffer loss of market share, goodwill, or "substantial injury" upon a stay of judgment pending appeal. At the very least, these statements significantly minimize the nature of any injury to UTC, and certainly any such possible injury does not outweigh the other factors the Court considers.

The cases cited by UTC (D.I. 442 at 15-16) are inapplicable because they do not address similar facts: the sole patent preventing Liquidia from entering the market has been found invalid by PTAB, and UTC has made public statements regarding its products' "resilience" and room in the market for competition. Even in the unlikely event that UTC overturns the '793 IPR decision, UTC is "nonetheless protected" because UTC "may still recover damages." *Bayer Schera Pharma*

*AG v. Sandoz, Inc.*, No. 08-CV-03710, 2010 WL 3447906, at *3 (S.D.N.Y. Sept. 2, 2010) (quoting H.R. Rep. No. 98-857, Part II at 9 (1984)). Thus, the balance of harms tips dramatically in Liquidia's favor, as Liquidia stands to suffer a much greater injury if the Court does not stay enforcement of Paragraph 4 of the Final Judgment.

**D. STAY OF JUDGMENT FAVORS THE PUBLIC INTEREST**

Contrary to UTC's positions, denying Liquidia's request for a stay would not serve the public "in enforcement of the law and patent rights[,]" because the '793 patent is invalid.[6] D.I. 442 at 16-17. In short, despite professing to be a public benefit company, UTC argues that enforcement of patent laws is of a greater interest than allowing PAH patients to obtain access to new therapies. UTC's position is untenable given the evidence presented with Liquidia's motion. More specifically, Liquidia submitted emails from PAH patients and healthcare practitioners with its opening motion expressing a clear interest in having access to YUTREPIA™. D.I. 439, Ex. Q; Ex. Y; Ex. Z. Indeed, one patient even referenced frustration over the pending litigation, demonstrating a stronger public interest in obtaining access as opposed to enforcing an injunction. D.I. 439, Ex. Q. UTC's summary dismissal of the concerns expressed by patients and health care practitioners in these emails as not to be believed (D.I. 442 at 18), only further demonstrates that UTC equates public interest with maintaining its monopoly based on an invalid patent as opposed to listening or addressing to the needs of PAH patients.

UTC further contends that PAH patients and caregivers now have access to UTC's Tyvaso DPI® as well as UTC's Orenitram®, UTC's Remodulin® and UTC's Tyvaso®, and thus patient and

---

[6] As Congress noted in enacting the America Invents Act, "questionable patents [we]re too easily obtained and [were] too difficult to challenge[,]" and IPR proceedings combat this by "providing a more efficient system for challenging patents that should not have issued[.]" H.R. Rep. No. 112-98 at 38-40 (2011). Thus, there is an equal public interest in removing invalid patents, as Liquidia did here.

caregiver needs are satisfied. D.I. 442 at 18. UTC's position is contradicted by medical professionals: 16 physicians specializing in pulmonary hypertension attested that "YUTREPIA, in part due to its unique PRINT formulation, is the first low-resistance dry powder inhaler to provide patients a wider and higher range of therapeutic doses that can be more easily administered in just a few breaths compared to nebulizers." Ex. DD ("We believe that YUTREPIA's profile will help build on the body of knowledge and medical literature that higher inhaled doses may lead to better clinical outcomes, quality of life, and overall survival."). Three of the physicians (Drs. Sahay, Shapiro, and Shah), that signed the letter and participated in clinical studies for both UTC's Tyvaso DPI® and Liquidia's YUTREPIA™, are well-aware of the differences between the two products and still express a strong public interest in having access to YUTREPIA™. *Compare* Ex. EE at 1 (Sahay, Shapiro, and Shah), *with* Ex. DD at 4 (same).

Finally, the cases cited by UTC do not demonstrate a public interest in denying Liquidia's motion given the facts here. D.I. 442 at 17 (collecting cases). Those cases did not involve patents found unpatentable. *Id.* Unsurprisingly, UTC cites to no case in which a Court found the public interest would be served by protecting a patent found invalid by the PTAB. Because the '793 patent is invalid, protecting UTC's monopoly over inhaled treprostinil does nothing more than quell innovation and harm PAH patients.

## IV. CONCLUSION

For at least these reasons and the reasons provided in Liquidia's opening brief (D.I. 439), Liquidia respectfully requests that the Court stay enforcement of Paragraph 4 of the Final Judgment.

/s/ Nathan R. Hoeschen
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant Liquidia Technologies, Inc*

OF COUNSEL:
Sanya Sukduang
Jonathan Davies
Douglas W. Cheek
Adam Pivovar
Brittany Cazakoff
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202) 842-7800

Erik Milch
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5640
(703) 546-8000

Ivor Elrifi
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Deepa Kannappan
Lauren Krickl
Kyung Taeck Minn
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Dated: September 28, 2022