IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-755-RGA |
| | ) | |
| LIQUIDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**LIQUIDIA'S REPLY BRIEF IN SUPPORT OF MOTION FOR POST JUDGMENT RELIEF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B)**


OF COUNSEL:
Sanya Sukduang
Jonathan Davies
Adam Pivovar
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202) 842-7800

Erik Milch
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5640
(703) 546-8000

Ivor Elrifi
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant Liquidia Technologies, Inc.*

Lauren Krickl
Brittany Cazakoff Kyung
Taeck Minn COOLEY LLP
3175 Hanover Street Palo
Alto, CA 94304-1130
(650) 843-5000

Dated: January 23, 2024

**TABLE OF CONTENTS**

**Page**


I. THE INVALID ’793 PATENT CAN NO LONGER SUPPORT ENJOINING THE FDA FROM GRANTING FINAL NDA APPROVAL OF YUTREPIA™ ............. 1

A. Liquidia’s Motion Is Not Premature Because the ’793 Patent Is Invalid .............. 1

B. The ’793 Patent Is No Longer Enforceable ........................................................... 2

C. Liquidia Has Satisfied the Requirements of Rule 60(b) ........................................ 4

II. CLAIM CANCELLATION UNDER 35 U.S.C. § 318 IS NOT REQUIRED .................. 8

III. CONCLUSION ............................................................................................................ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bldg. & Const. Trades Council of Phil. & Vicinity, AFL-CIO v. N.L.R.B.*,
64 F.3d 880 (3d Cir. 1995)....4

*Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found.*,
402 U.S. 313 (1971)....1, 10

*Coltec Industries, Inc. v. Hobgood*,
280 F.3d 262 (3d Cir. 2002)....6, 7

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015)....5

*ePlus, Inc. v. Lawson Software, Inc.*,
789 F.3d 1349 (Fed. Cir. 2015)....1, 2, 9

*MaxLinear, Inc. v. CF CRESPE LLC*,
880 F.3d 1373, 1376 (Fed. Cir. 2018)....10

*Mendenhall v. Barber-Greene Co.*,
26 F.3d 1573 (Fed. Cir. 1994)....1, 2, 7, 10

*Prism Techs., LLC v Sprint Spectrum, L.P.*,
757 F. App'x 980 (Fed. Cir. 2019) ....7

*Sec. People, Inc. v. Iancu*,
971 F.3d 1355 (Fed. Cir. 2020)....9

*United States v. Swift & Co.*,
286 U.S. 106 (1932)....2

*United Therapeutics Corp. v. Liquidia Techs., Inc.*,
74 F.4th 1360 (Fed. Cir. 2023) ....2

*United Therapeutics Corp. v. Liquidia Techs., Inc.*,
C.A. No. 1:23-cv-00975-RGA, D.I. 8 (D. Del. Nov. 30, 2023) ....3

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
913 F.3d 1067 (Fed. Cir. 2019)....5

*Worden v. Searls*,
121 U.S. 14 (1887)....4

*XY, LLC v. Trans Ova Genetics, L.C.*,
890 F.3d 1282 (Fed. Cir. 2018)....2, 8

## TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

21 U.S.C. § 355(c)(3)(C)(ii)(I) ....................4, 9, 10

35 U.S.C.
§ 271(e)(4)(A) ....................1
§ 315(b) ....................6
§ 315(e)(2) ....................6
§ 318 ....................8, 9, 10
§ 318(b) ....................9

**Other Authorities**

21 C.F.R. § 314.107(b)(3)(iii)(A) ....................9

Federal Rule of Civil Procedure
60 ....................5
60(b) ....................2, 4, 6, 8
60(b)(5) ....................4, 6, 8
60(b)(6) ....................1, 6, 7, 8

# I. THE INVALID '793 PATENT CAN NO LONGER SUPPORT ENJOINING THE FDA FROM GRANTING FINAL NDA APPROVAL OF YUTREPIA™

## A. Liquidia's Motion Is Not Premature Because the '793 Patent Is Invalid

Contrary to UTC's principal argument, Liquidia's request that the Court lift the injunction based on the '793 patent that is currently blocking final FDA approval for Yutrepia™ is not premature. *See e.g.*, D.I. 465 at 1, 10. "It is well established that an injunction ***must be set aside*** when the legal basis for it has ceased to exist." *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1354–1355 (Fed. Cir. 2015) (emphasis added); *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1577 (Fed. Cir. 1994) (recognizing that upholding an injunction based on an invalid patent would be at odds with the court's historical treatment of patents it recently declared invalid); *see also Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 334–346 (1971) (discussing the economic policy rationale for applying collateral estoppel based on prior invalidity judgments). Here, there is no dispute between the parties that the PTAB issued a FWD invalidating all claims of the '793 patent and that the Federal Circuit affirmed that decision. D.I. 462 at 1–2; D.I. 465 at 2–3. UTC has conceded this point. *See* D.I. 465 at 3. Thus, the parties agree that the '793 patent has been found to be invalid in a decision that has collateral estoppel effect. Accordingly, and consistent with the purpose of Federal Rule of Civil Procedure 60(b)(5)–(6), because the '793 patent has been finally determined to be invalid, the legal basis for the Court's liability of infringement finding and injunction under 35 U.S.C. § 271(e)(4)(A) no longer exists, warranting relief from the Judgment.

UTC asserts that in *ePlus*, cancellation of claims was required—not so. D.I. 465 at 9. In *ePlus*, the sole patent claim that gave rise to the injunction was found invalid by the PTO in a reexamination proceeding. 789 F.3d at 1354. But when assessing whether the injunction in *ePlus* was still enforceable, the Federal Circuit stated "[A] court does not abdicate its power to revoke

or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong." *Id*. at 1355 (quoting *United States v. Swift & Co.*, 286 U.S. 106, 114–15 (1932)). The *ePlus* court also pointed to its earlier decision in *Mendenhall*, where the Federal Circuit determined that the injunction had to be reversed because the patent forming the basis for injunction had been finally adjudicated invalid by a different ***district court***. *Id*. (citing *Mendenhall*, 26 F.3d at 1584). Indeed, in *Mendenhall*, the collateral estoppel impact necessitating reversal of the injunction "arose upon the district court's judgment of invalidity" of the asserted claims in a different infringement suit. *Mendenhall*, 26 F.3d at 1578, n.5. That same reasoning applies here, given the Federal Circuit's affirmance of the PTAB's '793 patent FWD and the immediate collateral estoppel effect that decision has. Accordingly, Liquidia's motion is not premature and relief under Rule 60(b) can be granted.

### B. The '793 Patent Is No Longer Enforceable

UTC contends that the "claims of the '793 patent remain in force[,]" and, as such, this is "fatal" to Liquidia's motion. D.I. 465 at 4, 9. UTC's position is legally incorrect. As the Federal Circuit has explained, "an affirmance of an invalidity finding, whether from a district court or the Board, has a collateral estoppel effect on all pending or co-pending actions." *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1294 (Fed. Cir. 2018).[1] UTC, this Court, and the Federal Circuit have all cited, with approval, *XY* for this principle. D.I. 428 at 1; D.I. 433 at 36; *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 74 F.4th 1360, 1372 (Fed. Cir. 2023). In fact, UTC

[1] Liquidia does not concede that the IPR FWD itself does not have immediate preclusive effect. While this Court and the Federal Circuit have inferred such a holding in this case, for the reasons that will be presented in Liquidia's petition for a writ of certiorari to the Supreme Court, those decisions run counter to the decisions of the Supreme Court and other courts of appeals. However, for purposes of the present motion, the Federal Circuit's affirmance of the IPR FWD has immediate preclusive effect and warrants granting Liquidia's requested relief.

has stated in this very matter that: "Consistent with the Federal Circuit's guidance, district courts do not apply collateral estoppel effect to the PTAB's ruling ***until the ruling is affirmed***[.]" D.I. 428 at 2 (emphasis added). As UTC recognized, because the PTAB's FWD invalidating all claims of the '793 patent has been affirmed, the '793 patent is invalid and can no longer be enforced. UTC's attempt to now argue otherwise should not be countenanced.

UTC's own actions prove that the '793 patent is no longer legally enforceable. As this Court is aware, UTC filed on November 20, 2023, an Amended Complaint again asserting the '793 patent against Liquidia. *See United Therapeutics Corp. v. Liquidia Techs., Inc.*, C.A. No. 1:23-cv-00975-RGA, D.I. 8 (D. Del. Nov. 30, 2023). Liquidia filed a motion to dismiss Counts I and II of the amended complaint directed to UTC's allegations of infringement of the '793 patent. *Id.*, D.I. 13. Recognizing that it can no longer legally assert the '793 patent against Liquidia because of the preclusive nature of the Federal Circuit's affirmance of the PTAB's '793 FWD, UTC has voluntarily dismissed its '793 infringement claims. *Id.* at D.I. 17. UTC dismissed its '793 complaint despite the fact that its request for rehearing *en banc* is pending (filed on January 19, 2024), the Federal Circuit has not issued its mandate, the PTO Director has not yet cancelled the '793 patent claims, and the '793 patent has not been de-listed from the Orange Book.[2] And by dismissing its infringement claims concerning the '793 patent, this would immediately remove any barrier from the FDA granting final NDA approval for Yutrepia™—that is, any barrier but for the

[2] UTC contends that because the '793 patent is still listed in the Orange Book for Tyvaso®, an ANDA applicant would still have to provide a Paragraph IV certification to UTC. D.I. 465 at 14. While technically true, because of the Federal Circuit's affirmance of the PTAB's FWD invalidating the '793 patent, collateral estoppel prevents UTC from asserting that patent against the ANDA applicant, thereby allowing the FDA to grant final FDA approval of the ANDA. Liquidia should be in the same position.

Court's current injunction in this action. These are the very type of extraordinary circumstances that warrant relief from judgment under Rule 60(b).

### C. Liquidia Has Satisfied the Requirements of Rule 60(b)

Because the Federal Circuit's affirmance has an immediate effect nullifying the legal basis for this Court's Final Judgment, Liquidia has satisfied the requirements of Rule 60(b). UTC attempts to make much of the fact that the Court's injunction was statutorily based. *See* D.I. 465 at 5, 10. But Rule 60(b) makes no such distinction, and UTC cites no case establishing Rule 60(b) is inapplicable to statutorily based injunctions.[3]

As UTC points out, in the context of Rule 60(b)(5), the Third Circuit instructs courts to consider a number of factors in assessing relief, including "the circumstances leading to entry of the injunction and the nature of the conduct sought to be prevented; the length of time since entry of the injunction; whether the party subject to its terms has complied or attempted to comply in good faith with the injunction; and the likelihood that the conduct or conditions sought to be prevented will recur absent the injunction" as well as "whether the conduct previously enjoined has become legal due to a change in the law." D.I. 465 at 5, 10 (quoting *Bldg. & Const. Trades Council of Phil. & Vicinity, AFL-CIO v. N.L.R.B.*, 64 F.3d 880, 888 (3d Cir. 1995)). Liquidia satisfies these requirements.

Contrary to UTC's contention (D.I. 465 at 10), the circumstances leading to the entry of the infringement and injunction ruling have changed because the '793 patent is no longer valid—claim cancellation by the PTO is not needed for invalidity. *See Worden v. Searls*, 121 U.S. 14, 24-

---

[3] UTC's emphasis of the statutory basis for the injunction as rationale to maintain the injunction is particularly inapt here given the express language in that very statutory regime: the approval of the enjoined product should occur on "the date on which the court of appeals decides that the patent is invalid." *See* 21 U.S.C. Section 355(c)(3)(C)(ii)(I).

27 (1887) (finding a reissue patent invalid and a preliminary injunction was unwarranted as a matter of law as the "right to the injunction . . . was founded on the validity of [the] patent."); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015) ("To be sure, if at the end of the day, an act that would have been an infringement or an inducement to infringe pertains to a patent that is shown to be invalid, there is no patent to be infringed."). The injunction has already been in place for over a year, giving UTC extended exclusivity based on an invalid patent. Furthermore, Liquidia and the FDA have unquestionably complied with the injunction. Finally, the conduct sought to be prevented—blocking final FDA approval of Yutrepia™—cannot recur because, as discussed above, UTC has already dismissed another patent infringement lawsuit brought against Liquidia involving the '793 patent, which can lead to direct and unencumbered final FDA approval. These circumstances lend support to granting Liquidia's Rule 60 Motion.

UTC's reliance on *WesternGeco L.L.C. v. ION Geophysical Corp.*, 913 F.3d 1067, (Fed. Cir. 2019), for the proposition that this Court cannot reopen the case to grant Liquidia's requested relief until the '793 patent claims are cancelled is misplaced. D.I. 465 at 12. In *WesternGeco*, the issue was whether the parties' agreement regarding the payment of a reasonable royalty could be reversed because of invalidation of the patents at issue. 913 F.3d at 1071–72. As the Federal Circuit noted, *the parties stipulated to the payment of a reasonable royalty*, which was reflected in a joint motion filed in *June 2017*, despite the fact that the PTAB IPR decision invalidating the patents had issued in *December 2015*. *Id.* Based on "these unique circumstances," the Federal Circuit did not disturb that agreement. *Id*. Here, there has been no agreement between the parties, and the PTAB's '793 patent FWD issued *before* this Court rendered its decision and entered judgment. Now that the IPR FWD has been affirmed, the "unique circumstances" in this case warrant relief from judgment under Rule 60(b)(5) and (6).

UTC further contends that relief under Rule 60(b)(6) is not warranted based on Liquidia's decision to bring an IPR proceeding. D.I. 465 at 1, 6, 11. But UTC cites no authority to support its position that Liquidia's decision to bring an IPR proceeding somehow limits the preclusive effect of the decision in that IPR proceeding.[4] Even if there was such authority, UTC misconstrues the facts. Liquidia's decision to file an IPR petition was based on UTC's strategic choice to file a motion to dismiss Liquidia's invalidity counterclaim and defense with respect to the '793 patent on the basis of assignor estoppel. D.I. 29. The Court denied UTC's Motion (D.I. 45), but UTC continued to asserted assignor estoppel throughout the pre-trial process. D.I. 322, Ex. 4 (Plaintiff's Statement of Contested Issues of Law) at ¶¶ 136-140. Because assignor estoppel does not apply to IPR proceedings, Liquidia filed its ultimately successful petition. Moreover, that Liquidia did not present obviousness to the district court was again based on UTC's strategic decision to file a pre-trial motion in limine seeking to apply IPR estoppel *before* the '793 IPR had been decided. D.I. 439 at 2–4. Importantly, Liquidia never abandoned its arguments before this Court and the PTAB that the '793 patent was invalid. This is in stark contrast to the parties in *Coltec Industries, Inc. v. Hobgood*, 280 F.3d 262, 267 (3d Cir. 2002), cited by UTC, who voluntarily dismissed their claims of unconstitutionality of the Coal Act, but then subsequently sought relief under Rule 60(b) based on a later decision rendering the Coal Act unconstitutional. *Id.* at 271–724. The Third Circuit affirmed the denial of Coltec's Rule 60(b)(6) motion because Coltec was attempting to "escape the effects of a bargain it regretted in hindsight[,]" thereby failing to meet the exceptional

[4] In fact, Congress intended IPRs to take place concurrently with district court proceedings. *See, e.g.* 35 U.S.C. §§ 315(b) (requiring IPR to be sought within one year of service of a patent infringement complaint); § 315(e)(2) (precluding a challenger from asserting invalidity grounds in district court that they could have raised in the IPR). Liquidia's choice to file an IPR aligns with congressional intent. Any decision penalizing Liquidia's choice of procedure discourages future litigants from pursing an IPR before the PTAB, which in turn increases the burden on district courts and costs on the parties.

circumstances aspect of the rule. *Id.* at 273–274. Those facts are not present here and thus Rule 60(b)(6) applies.

UTC's other attack on Liquidia's motion under Rule 60(b)(6) appears to be based on the position that in the cases cited by Liquidia, Federal Circuit affirmance had a preclusive effect only because appeals were pending at the same time. *See* D.I. 465 at 12. Not so. In *Mendenhall*, the Federal Circuit determined that the "application of collateral estoppel in this case is not precluded by reason of the entry of a final judgment." 26 F.3d at 1581; *see also Prism Techs., LLC v Sprint Spectrum, L.P.,* 757 F. App'x 980, 987 (Fed. Cir. 2019).

Finally, as presented in Liquidia's opening brief, relief from judgment is especially warranted here given the inequities that maintaining the Final Judgment would cause. D.I. 462 at 7–8. The facts here prove Liquidia does stand "differently" from other potential defendants. D.I. 465 at 14. As discussed above, based on Liquidia's motion to dismiss, UTC voluntarily dismissed its '793 patent infringement allegations against Liquidia in a second lawsuit. *See* §I.B., *supra*. And UTC would not be able to assert the '793 patent against any other 505(b)(2) NDA applicant or generic ANDA applicant because of the collateral estoppel effect of the now affirmed PTAB's '793 FWD, thus removing the '793 patent as a basis to prevent final FDA approval for any other applicant. UTC, however, is attempting to continue to enjoin Liquidia based solely on the '793 patent when it legally cannot do the same against others. UTC cannot on the one hand dismiss a legally improvident lawsuit based on the '793 patent and, on the other hand, continue to assert that this Court must continue to enforce an injunction against Liquidia based on that same patent. Any decision denying the relief requested leads to an absurd result allowing third parties to escape liability on the '793 patent based on the work done by Liquidia, only to have Liquidia wait longer

for entry into the market. Accordingly, Liquidia respectfully requests its motion under Rule 60(b)(5) and (6) be granted.

## II. CLAIM CANCELLATION UNDER 35 U.S.C. § 318 IS NOT REQUIRED

UTC maintains that the Federal Circuit's affirmance of invalidity has no effect, and thus relief under Rule 60(b) cannot be granted until the claims are canceled by the PTO under 35 U.S.C. § 318, which occurs after UTC has an opportunity to petition for rehearing, the Federal Circuit issues its mandate, and all appeals are exhausted.[5] That these actions are outstanding does not negate the immediate preclusive effect the '793 Patent Federal Circuit Decision has on this action and does not warrant denial of Liquidia's requested relief. In *XY*, the Federal Circuit dismissed a co-pending appeal on the same day it issued its affirmance of the PTAB's decision on that same patent—it did not wait for any decision on rehearing, mandate, or claim cancellation. *XY*, 890 F.3d at 1294. Similarly, UTC dismissed its '793 patent infringement allegations against Liquidia in a recently filed suit, and did not wait for a decision on rehearing, did not wait for the Federal Circuit's mandate, and did not wait for claim cancellation under § 318. *See* § I.B. If UTC believed all of these procedural requirements must be met before the Federal Circuit's affirmance has any legal effect, then it certainly would not have voluntarily dismissed its recently filed '793 patent action. The same rationale applies here—the potential pendency of other procedural actions does not diminish either the finality or the binding effect of the '793 Patent Federal Circuit Decision.

Additionally, it is not claim cancellation that makes a patent invalid, but a judgment of invalidity—a judgment currently before this Court. Courts have consistently held that

---

[5] UTC filed its request for rehearing *en banc* of the Federal Circuit's decision affirming the PTAB's '793 patent FWD on January 19, 2024. UTC contends Liquidia cited no statistics related to the likelihood that UTC's rehearing request of a non-precedential decision will be denied. D.I. 465 at 8. UTC misunderstands Liquidia's argument, though, which is based on what the Federal Circuit has already done, not what it will do in the future. Also, it is noteworthy that UTC cites no case where panel or *en banc* rehearing of a non-precedential decision was granted.

"cancellation" of a patent under § 318(b) is a "nondiscretionary formality[,]" that does not affect the binding effects of the decision itself. *Sec. People, Inc. v. Iancu*, 971 F.3d 1355, 1361 (Fed. Cir. 2020) (citing 35 U.S.C. § 318(b)). For purposes of judicial review, for instance, "the certificate of cancellation is irrelevant to the finality of the agency's action, as no agency decision-making is involved in deciding to issue the certificate." *Id*. Maintaining that an agency's ministerial act of cancellation is necessary for a party to be estopped from asserting infringement of an invalid patent undermines the PTAB's authority and the effect of the Federal Circuit's decision affirming a FWD. UTC misconstrues the law by pointing out immaterial differences between the cases Liquidia relies on and the case at hand. That cancellation of claims happened in previous cases, such as *ePlus* and *Fresenius*, does not mean that cancellation of claims is required to give effect to Federal Circuit's decision of invalidity and has no bearing on whether the Federal Circuit's affirmance here has a preclusive effect once issued.[6] The nondiscretionary formality of claim cancellation under § 318 is not a prerequisite preventing this Court from lifting its injunction.[7]

UTC's reliance on the statute addressing de-listing of an Orange Book patent has no relevance here. D.I. 465 at 8. Final FDA approval of a 505(b)(2) NDA is not predicated, in any way, upon de-listing the asserted Orange Book listed patents, and instead, as emphasized above, it is a judgment of invalidity that has a preclusive effect. *See* 21 U.S.C. § 355(c)(3)(C)(ii)(I);

[6] The Court has also stated that "[i]f the Federal Circuit upholds the invalidity of the asserted '793 claims as obvious, it appears that Liquidia could launch its product." D.I. 460 at 2.

[7] The Hatch-Waxman Act expressly addresses this point, directing that final FDA approval of a 505(b)(2) NDA is granted on "the date on which the court of appeals decides that the patent is invalid." *See* 21 U.S.C. § 355(c)(3)(C)(ii)(I). At latest, the Court should be guided by the FDA's internal regulations and act upon the issuance of the Federal Circuit's mandate associated with its affirmance of the PTAB's '793 patent FWD. *See* 21 C.F.R. § 314.107(b)(3)(iii)(A) (calling for final FDA approval on "the date on which the mandate is issued by the court of appeals entering judgment that the patent is invalid, unenforceable, or not infringed").

*Blonder-Tongue*, 402 U.S. at 350 (finding issue preclusion applies where a party "fac[es] a charge of infringement of a patent that has once been declared invalid."); *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018) ("[A]s a result of collateral estoppel, a judgment of invalidity in one patent action renders the patent invalid in any later actions based on the same patent." (citation omitted)); *Mendenhall*, 26 F.3d at 1577 ("[O]nce the claims of a patent are held invalid in a suit involving one alleged infringer, an unrelated party who is sued for infringement of those claims may reap the benefit of the invalidity decision under principles of collateral estoppel."). In sum, UTC's § 318 arguments are a red herring. Claim cancellation is not required to provide Liquidia relief from the injunction imposed by the Court and UTC's recent actions concerning the '793 patent prove this so.

## III. CONCLUSION

For these reasons and those presented in Liquidia's opening brief, Liquidia respectfully requests that the Court grant post judgment relief.

Respectfully yours,

*/s/ Nathan R. Hoeschen*

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant Liquidia Technologies, Inc.*

OF COUNSEL:
Sanya Sukduang
Jonathan Davies
Adam Pivovar
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202) 842-7800

Erik Milch
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5640
(703) 546-8000

Ivor Elrifi
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Lauren Krickl
Brittany Cazakoff
Kyung Taeck Minn
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Dated: January 23, 2024